# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

DINO RIKOS,

     Plaintiff,

vs.

PROCTER & GAMBLE COMPANY,

     Defendant.

Case No. 1:11-cv-226

Judge Timothy S. Black

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (Doc. 10)

This civil action is currently before the Court on Defendant's motion to dismiss (Doc. 10) and the parties' responsive memoranda (Docs. 15, 17).

## I.    FACTUAL BACKGROUND <u>AS ALLEGED</u> BY PLAINTIFF

This action arises out of alleged misrepresentations made by Defendant in its marketing and sale of a product known as "Align." Align is a daily food supplement, which Procter & Gamble claims is made of a special formulation of "probiotic" bacteria that builds and maintains a healthy digestive system. P&G states on the product label and in its advertisements that these digestive benefits are clinically and scientifically proven.

Plaintiff alleges that these claims are false and misleading and therefore asserts claims for violation of the Consumers Legal Remedies Act ("CLRA") (California Civil Code Section 1750, *et seq.*) and the Unfair Competition Law ("UCL") (Bus. & Prof.

Code Section 17200, *et seq.*), and breach of express warranty created by P&Gs advertising.

P&G, through a broad based campaign, advertises that Align contains a "Unique Patented Probiotic" that it calls "Bifantis." (Doc. 9 at ¶ 1). On the Align package, P&G promises that Align will help:

> *Build and maintain a healthy digestive system
>
> *Restore your natural digestive balance
>
> *Protect against occasional digestive upsets

(*Id.* at ¶ 2).

P&G also advertises that Align's digestive benefits are "clinically proven" and touts Align with its trademarked phrase "GREAT DIGESTION THROUGH SCIENCE." (*Id.* at ¶¶ 2, 23, 24). P&G further advertises that Align is "Recommended by Gastroenterologists" and that there is "Proof: Bifantis has been the subject of several clinical studies and has been featured in peer-reviewed journals. Please see Bifantis.com for full details." (*Id.* at ¶ 24). On its website, P&G provides purported scientific information and data, including what it calls "Clinical Data Publications," that P&G claims are proof of the claimed digestive health benefits. (*Id.* at ¶¶ 35-37).

P&G's claims are made through a broad based advertising campaign. P&G prominently and conspicuously makes these claims on every Align package, and emphasizes and repeats them through a variety of advertising media including television commercials, point of sale displays, and the Internet. (*Id.* at ¶ 4).

Plaintiff alleges that the Align label makes claims that are false and misleading. For example, P&G's own "clinical trial" concluded that there were no statistically significant differences between the control group and the group ingesting the "Bifantis" bacteria, B. Infantis. (*Id*. at ¶ 36). As to the "Clinical Data Publications," neither provides proof (clinical or otherwise) of the Align claims. Both studies analyzed patients with irritable bowel syndrome, and not Align's target audience, the general population. (*Id*. at ¶ 37). A 2006 study tested endpoints irrelevant to P&G's advertised claims and tested amounts of the bacteria materially different from the amount in a serving of Align (which the authors stressed was important to the study findings). (*Id*.) A 2005 study found that those persons receiving the Align bacteria did not experience any improvement in the bowel movement markers. (*Id*; *see also* ¶¶ 38, 39) (allegations concerning "preclinical data publications" and "review articles" identified by P&G as purported substantiation for its Align claims).

Plaintiff alleges that Align is nothing but sugar-filled capsules injected with a small amount of unremarkable bacteria. Nonetheless, customers pay $30 for a 28-count package. (*Id*. at ¶ 6). Plaintiff read the claims on the Align label, believed they were true, and purchased Align in reliance on P&G's advertised claims, expecting that he was paying for a product that had proven digestive health benefits. (*Id*. at ¶ 10).

-3-

## II.   STANDARD OF REVIEW

Defendant moves the Court for an order dismissing the amended complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

### A.   Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that an action may be dismissed for lack of subject matter jurisdiction. Under the Federal Rules, "[p]laintiffs have the burden of proving jurisdiction in order to survive a Rule 12(b)(1) motion." *Weaver v. Univ. of Cincinnati*, 758 F. Supp. 446, 448 (S.D. Ohio 1991) (citing *Moir v. Greater Cleveland Reg'l. Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)). "The plaintiff bears the burden of establishing, by a preponderance of the evidence, the existence of federal subject matter jurisdiction." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986))

### B.   Fed. R. Civ. P. 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint.

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

-4-

555 (2007)). That is, "a plaintiff's obligation to provide the grounds of [her] entitlement

to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Although the court

must accept well-pleaded factual allegations of the complaint as true for purposes of a

motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as

a factual allegation." *Id*.

After assuming the veracity of all well-pleaded factual allegations, the second step

is for the court to determine whether the complaint pleads "a claim to relief that is

plausible on its face." *Iqbal*, 129 S.Ct. at 1949, 1950 (citing *Twombly*, 550 U.S. at 556,

570). A claim is facially plausible when the plaintiff "pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

### III. ANALYSIS

#### A. Lack of Substantiation

Defendant argues that Plaintiff fails to meet the plausibility pleading requirement

expressed in *Twombly* and *Iqbal*. The Sixth Circuit has held that courts "cannot dismiss

for factual implausibility 'even if it [would] strike [ ] a savvy judge that recovery is very

remote and unlikely.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F. 3d 625, 630 (6th

Cir. 2009) (citing *Twombly*, 550 U.S. at 556). At the motion to dismiss stage, the court is

not concerned with a challenge to a plaintiff's factual allegations. *Golden v. City of*

*Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Rather, the court looks to whether the complaint states a claim upon which relief can be granted. *Id.*

Defendant alleges that Plaintiff's complaint is premised entirely on allegations that P&G's labeling and advertising claims for Align are not adequately substantiated. (Doc. 9 at ¶¶ 1, 3, 13, 17, 18, 20, 22, 23, 25, 28, 29-41). Defendant maintains that, in a false advertising action, a plaintiff must plead and prove that the advertising statements at issue are false or misleading, not merely that they lack adequate scientific substantiation. *Fracker v. Bayer Corp.*, No. CV F 08-1564, 2009 U.S. Dist. LEXIS 125633, at *20-21 (E.D. Cal. Oct. 2, 2009).[1] Accordingly, Defendant argues that the allegations that Align's advertising claims lack scientific substantiation are not a sufficient basis upon which to state claims.

Defendant alleges that, in a false advertising case, plaintiff must plead and prove that the advertising statements are "false or misleading"[2] – which is exactly what Plaintiff pleads. (*See, e.g.*, Doc. 1 at ¶ 1 (P&G's "representations are false, misleading and

---

[1] In *Fraker*, the FTC issued a cease and desist order directing Bayer to halt advertising until it provided substantiation for its claims. Bayer violated the order, the government sued, and the case settled, resulting in a consent decree. *Id.* at 2-4. Plaintiff attempted to use the cease and desist order and consent decree as the basis of a false advertising case. Fraker's complaint was "lifted directly from the prior [FTC] actions" wihout "any independent verification of the contnents." *Id.* at 12. The court struck the allegations lacking independent verification, leaving too few allegations to state a claim. *Id.* at 13.

[2] *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1344 (2003). In *King Bio Pharm*, plaintiff alleged that defendant made false advertising claims concerning the effectiveness of 50 of its homeopathic products. However, at trial, plaintiff "presented no evidence concerning the efficacy of King Bio's products." *Id.* at 1347. Plaintiff contended that it need not present any evidence that the advertisements were false or deceptive, and, instead, the burden of proof should be shifted to defendant to prove that its remedies were effective as claimed. The court disagreed, reaching the unremarkable conclusion that a plaintiff at trial must prove the allegations of the complaint, which may be established by any variety of evidence, including "testing, scientific literature, or anecdotal evidence." *Id.* at 1348.

reasonably likely to deceive the public.")). Accordingly, this Court declines to find that Plaintiff's complaint was filed under an alleged "lack of scientific substantiation" theory.

### B.    Primary Jurisdiction Doctrine

Alternatively, Defendant argues that Plaintiff's claims should be dismissed under the primary jurisdiction doctrine. Primary jurisdiction is a "prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decision-making responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc.*, 307 F.3d 775, 780 (9th Cir. 2002).

Dismissal on primary jurisdiction grounds "does not speak to the jurisdictional power of the federal courts," but rather "structures the proceedings as a matter of judicial discretion, so as to engender an orderly and sensible coordination of the work of agencies and courts." *United States v. Bessemer & L. E. R.R.*, 717 F.2d 593, 599 (D.C. Cir. 1983). The doctrine applies when a court's jurisdiction over a matter overlaps with the jurisdiction of an administrative agency. *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956). To justify application of the primary jurisdiction doctrine, "[t]he particular agency deferred to must be one that Congress has vested with the authority to regulate an industry or activity such that it would be inconsistent with the statutory scheme to deny the agency's power to resolve the issues in question." *United States v.*

*Gen. Dynamics Corp.*, 828 F.2d 1356, 1363 (9th Cir. 1987).[3] Traditionally, a court weighs four factors when applying the doctrine: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek*, 307 F.3d at 781.

Plaintiff claims that the doctrine is not properly invoked in this case because the Court does not need an agency's expertise to resolve his UCL, CLRA, or warranty claims. The doctrine "is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit" but instead "is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). Plaintiff's claims rest on the determination of whether P&G's advertisements are likely to deceive a reasonable consumer – and "this is not a technical area in which the FDA has greater technical expertise than the courts – [as] every day courts decide whether conduct is misleading." *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009)

---

[3] The Food and Drug Administration ("FDA") and the Federal Trade Commission ("FTC") share jurisdiction over the regulation of dietary supplements. Under the Food, Drug, and Cosmetic Act, as amended by the Dietary Supplement Health and Education Act, the FDA has primary responsibility for the labeling of dietary supplements. 21 U.S.C. § 343(r)(6).

(declining to apply primary jurisdiction doctrine in false advertising case concerning definition and deceptive use of the term "natural").[4]

Defendant argues that Plaintiff has alleged that the advertising claims for Align lack adequate scientific substantiation, and it is this issue – the substantiation of dietary supplement advertising claims – that falls within the primary jurisdiction of the FDA and FTC. Again, as this Court discussed *supra* at Section III.A, that is not the issue before the Court. Additionally, courts have declined to apply the primary jurisdiction doctrine when the party seeking agency referral does not provide evidence that "the FDA has actually taken any interest in investigating the claims or issues presented here." *Pom Wonderful v. Ocean Spray Cranberries, Inc.*, 642 F.Supp. 2d 1112, 1123 (C.D. Cal. 2009). Courts have also declined to apply the doctrine where the case is based on state law or legal questions that would not be finally resolved by the agency. *Id.* at 1123 (plaintiff's state law false advertising claims "would not necessarily be resolved in the event of an FDA ruling"); *Lockwood*, 597 F.Supp.2d at 1035 ("even if the FDA were to formally define 'natural,' federal law would not dispose of plaintiff's state law claims").

---

[4] *See also, Chacanaca v. The Quaker Oats Co.*, No. C 10-0502 RS, 2010 U.S. Dist. LEXIS 111981, at *33 (N.D. Cal. Oct. 14, 2010) (plaintiffs advanced a "relatively straightforward claim: they assert that defendant has violated FDA regulations and marketed a product that could mislead a reasonable consumer. This is a question courts are well-equipped to handle.").

Accordingly, the Court finds that the primary jurisdiction doctrine is not applicable in the instant case.[5]

## C.    Article III Standing

Next, Defendant claims that Plaintiff fails to establish Article III standing because there are no factual allegations of either personal injury or economic harm. Article III standing requires that a party demonstrate that it: (1) has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Fieger v. Michigan Supreme Court*, 553 F.3d 955, 962 (6th Cir. 2009).

Plaintiff, as a purchaser of Align, alleges "injury in fact" in the form of economic injury. Plaintiff purchased Align in reliance on P&G's claims that the product provides defined health benefits, when these advertisements were allegedly false and deceptive. (Doc. 9 at ¶ 10). Accordingly, Plaintiff maintains that its purchase of the product is the economic harm, because it was not provided as advertised. (*Id.*)

There is a considerable body of case law that holds that economic injury confers Article III standing. *Linton v. Comm'n of Health & Env't*, 973 F.2d 1311, 1316 (6th Cir.

---

[5] Defendant cites just one product labeling case involving primary jurisdiction. That case concerned "whether Redline and/or its ingredients should be approved as safe . . ., these issues are best suited for the FDA." *Aaronson v. Vital Pharms., Inc.*, No. 09-cv-1333, 2010 U.S. Dist. LEXIS 14160, at *7 (S.D. Cal. Feb. 17, 2010). Whether or not Align is "safe" is not the issue before the Court.

1992) (an economic injury can satisfy the requirements of Article III, but such injury must be fairly traceable).[6] Defendant claims that economic injury does not confer Article III standing where a Plaintiff simply "purchased a product." (Doc. 15 at 14). *See, e.g., Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 176 (D.D.C. 2003) ("Without alleging that a product failed to perform as advertised, a plaintiff has received the benefit of his bargain and has no basis to recover purchase costs."). However, in *Purdue Pharma*, plaintiff did not allege that he saw or relied on the alleged false ads. *Id.* at 177. In the instant case, Plaintiff maintains that he "was exposed to and saw Procter & Gamble's claims by reading the Align label, purchased Align in this District in reliance on these claims, and suffered injury in fact and lost money as a result of the unfair competition." (Doc. 9 at ¶ 10). Plaintiff's allegations are straight-forward – he maintains that he purchased Align in reliance on the claims on the label, that the label was false and misleading, and that he should get his money back.

Accordingly, this Court finds that Plaintiff has alleged a sufficient economic injury to confer standing.

---

[6] *See, e.g., Mathison v. Linnborn*, No. SA CV08-0369, 2008 U.S. Dist. LEXIS 108511, at *9 (C.D. Cal. Aug. 18, 2008) ("a plaintiff might be injured by purchasing a good that was not as represented due to a latent defect – i.e., a reduction in value."); *Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.*, 588 F.Supp.2d 1111, 1117 (C.D. Cal. 2008) ("Plaintiffs also properly allege damages for the purchase price of the toys that allegedly were defective and not fit for their represented use. Plaintiffs' claim is straightforward - they allege that they purchased toys that were unsafe and unusable and should get their money back.").

Defendant also claims that Plaintiff lacks standing to seek injunctive relief,[7] because he does not and cannot allege a threat of future injury. (Doc. 15 at 15). *See, e.g, Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951 (S.D. Cal. 2007) ("It is unclear how prospective relief will redress [plaintiff's] injury since she is now fully aware of [alleged false advertising].").[8] It must be "likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167 (2000).

Plaintiff argues that injunctive relief is the primary form of relief provided by California's consumer protection statutes and should therefore survive the motion to dismiss.[9] The amended complaint alleges that "[u]nless a classwide injunction is issued,

---

[7] Doc. 9 at ¶ 59 ("[P]laintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices."); ¶ 75 ("Plaintiff seeks an order requiring Procter & Gamble to immediately cease such acts . . . and requring [it] to engage in a corrective advertising campaign."), Prayer for Relief at ¶ D (seeking an order "enjoining defendants from continuing the unlawful practices as set forth herein.").

[8] The Court notes that in *Cattie*, the plaintiff did not plead reliance on the false advertisements at issue. *Id.* at 946. After ruling on reliance, which was dispositive of all claims, the court raised the issue of plaintiff's separate standing to pursue injunctive relief *sua sponte*. The court did not dismiss the claim for injunctive relief, but permitted the parties to file points and authorities on the issue. *Id.* at 951-952. The case was dismissed before briefing and the standing issue was never decided by the court.

[9] *See Tocabbo II*, 46 Cal. 4th at 219-20 ("the primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction . . . [t]he purpose of such relief, in the context of a UCL action, is to protect California's consumers against unfair business practices by stopping such practices in their tracks."). The California Supreme Court has interpreted the statute to provide a liberal standing doctrine. *Barquis v. Merch. Collection Ass'n of Oakland, Inc.*, 496 P.2d 817, 827 (Cal. 1972). "Actions for injunction under this section may be prosecuted by the Attorney General or any district attorney . . . by any person acting for the interests of itself, its members or the general public." *Id.*

defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled." (Doc. 9 at ¶ 52). However, the standing of unnamed class members will not suffice to give the Court jurisdiction to grant injunctive relief. *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief. Any injury unnamed members of this proposed class may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek.").[10]

While this Court grapples with this analysis based on the express language of the California statute, the case law appears clear on its face, and Plaintiff fails to produce any authority to the contrary.[11] Accordingly, the Court finds that Plaintiff lacks standing to seek injunctive relief.

---

[10] *Compare, Wilner v. Sunset Life Ins. Co.*, 78 Cal. App.4th 952, 969 (Cal. 2000) (indicating that plaintiff could pursue a representative action to the extent she sought forward looking injunction relief applicable to the general public.).

[11] "A plaintiff might have standing to pursue a request for an injunction under California's UCL in California state court but not necessarily have Article III standing to pursue them in federal court." *Chavez v. Nestle USA*, No. 09-9192, 2011 U.S. Dist. LEXIS 9773, at *31 (C.D. Cal. Jan. 10, 2011) (citing *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-1002 (9th Cir. Cal. 2001) ("So a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury.")).

### D.    Statutory Standing

In addition to Article III standing, when stating a claim for violation of a statute, a plaintiff must plead that the statute in question also grants plaintiff the right to sue. Just because a plaintiff satisfies Article III jurisdiction, does not mean that he has statutory standing. *Laster v. T-Mobile, Inc.*, No. 05cv1167, 2009 U.S. Dist. LEXIS 116228, at *12 (S.D. Ca. Dec. 14, 2009).

#### 1.    UCL Standing

The Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "Any violation of the false advertising law" necessarily violates the UCL. *Williams v. Gerber Prod. Co.*, 552 F.3d 934 (9th Cir. 2008). A private action for relief under the UCL may be maintained only if the person bringing the action "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. In 2004, the UCL standing requirements were amended by Proposition 64. "[W]here once private suits could be brought by 'any person acting for the interests of itself, its members or the general public,' now private standing is limited to any 'person who has suffered injury in fact and has lost money or property' as a result of unfair competition." *Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011).

"To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Id.* at 322. The first is an injury-in-fact requirement, and the second is a causation requirement. *In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009) ("[T]he simple language of Proposition 64 required each class member to show injury in fact and causation."). "Injury in fact" is "one of the three 'irreducible minimum' requirements for federal standing under Article III" and the "text of proposition 64 establishes expressly that in selecting this phrase the drafters and voters intended to incorporate the established federal meaning." *Kwikset*, 246 P.3d at 885.

### a. Lost Money

"[P]laintiffs who can truthfully allege they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise, have 'lost money or property' within the meaning of Proposition 64 and have standing to sue." *Kwikset*, 246 P.3d at 881. The injury in fact requirement of UCL standing overlaps with Article III standing requirements.

> If a party has alleged or proven a personal, individualized loss of money or property in any nontrivial amount, he or she has also alleged or proven injury in fact. Because the lost money or property requirement is more difficult to satisfy than that of injury in fact, for courts to first consider whether lost money or property has been sufficiently alleged or proven will often make sense. If it has not

-15-

> been, standing is absent and the inquiry is complete. If it has been,
> the same allegations or proof that suffice to establish economic
> injury will generally show injury in fact as well (*ibid.*), and thus it
> will again often be the case that no further inquiry is needed.

*Id.* at 887.

Defendant argues that Plaintiff's payment of money is not "lost money" if he received the "benefit of the bargain," *i.e.*, he got what he paid for. (Doc. 15 at 16). However, the "benefit of the bargain" reasoning has been criticized and rejected by other courts in determining UCL standing. *See, e.g., Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1348, fn. 30 (2009) (rejecting the "benefit of the bargain" reasoning); *Aron v. U-Haul Co. of California*, 143 Cal. App. 4th 796, 802-03 (2006) (payment of money due to the defendant's acts of unfair competition establishes UCL standing).[12] Moreover, even if the "benefit of the bargain" reasoning applies, Plaintiff maintains that he did not receive the product he paid for – he paid for a product that would provide proven digestive health benefits, but he did not get the promised health benefits. (Doc. 9 at ¶ 79).

Accordingly, Plaintiff has alleged sufficient facts to establish a loss of money.

### b. Reliance

To plead reliance, plaintiff must allege a causal connection between her exposure to the false claims and her purchase of the products. *Laster*, 407 F. Supp. 2d at 1194.

---

[12] *Morey v. NextFoods Inc.*, No. 10cv761, 2010 U.S. Dist. LEXIS 67990 at *5 (S.D. Cal. June 7, 2010) ("Plaintiff's allegations that she purchased GoodBelly products in reliance on NextFood's advertising is sufficient to create standing under both federal and California law.")

"Actual reliance" is evaluated "in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *Tobacco II Cases*, 207 P.3d 20 at 306, 328. An inference of reliance arises when there is a showing that a reasonable person would attach importance to a misrepresentation's existence or nonexistence in determining his choice of action. *Id.* at 327.

Plaintiff alleges that he read and relied on the statement on the Align label prior to his purchase.[13] (Doc. 9 at ¶ 10). Plaintiff maintains that these allegations are sufficient to establish causal connection between reading the product label and purchasing the product in reliance on the statements made thereon. Defendant contends that these allegations are insufficient because Plaintiff must identify the "specific representations on the Align label" upon which he relied. (Doc. 17 at 10). Defendant argues that only where the "plaintiff alleges exposure to a *long-term advertising campaign*, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements."[14] *Tobacco II*, 46 Cal. 4th at 328 (emphasis added). *See, e.g., Brownfield v. Bayer Corp.*, No. 2:09cv444, 2009 U.S. Dist. LEXIS 63057, at *10 (E.D. Cal. July 2, 2009) ("bare and vague conclusions" that the plaintiff purchased product based on defendant's "misrepresentations" and "omissions"

---

[13] *See also* Doc. 9 at Ex. 1, which reflects 10 photographs of Align packaging/labeling with the language upon which Plaintiff relied in making his purchase.

[14] "[O]*nly* the named Plaintiff in a class action suit must show *actual reliance* on deceptive advertising." *Id.* at 306.

-17-

insufficient to show reliance because "[s]uch conclusory allegations fail to allege what Plaintiffs saw, heard, and relied upon in making their purchases.").[15]

Plaintiff argues that individualized reliance on specific misrepresentations is not required to satisfy the reliance requirement. For example, in *Morey*, plaintiff alleged that she "was exposed to and saw NextFood's claims by reading the product label, purchased GoodBelly products in reliance on these claims, and suffered injury in fact and lost money as result of the unfair competition." 2010 U.S. Dist. LEXIS 67990 at 4. The court found that although "Plaintiff's allegations regarding reliance and injury are indeed short and plain, . . . they nonetheless give NextFoods sufficient notice of the claim" and lay "out the required causal connection between reading the product label and purchasing the product in reliance on these claims." *Id.*[16]

Based on the case law, it is unclear whether Plaintiff is required to plead reliance with specificity. Moreover, even if the Court finds that pleading with specificity is required – Plaintiff having attached the actual label upon which he relied, appears to meet such a standard. Given that the holding in *Morey* is most recent (June 7, 2010), and

---

[15] However, in *Brownfield*, plaintiffs did not allege any facts that they viewed either of the ads at issue prior to purchasing the product or that they purchased in reliance on the challenged aspects of the ads and were injured as a result.

[16] Plaintiff also cites *Morgan v. AT&T Wireless Serv. Inc.*, 177 Cal. App. 4th 1235, 1258 (2009), for the proposition that "Plaintiff is not required as AT&T asserts, to plead the specific advertisments or representations they relied upon in making their decision to purchase the [product]." Defendant claims, and the Court agrees, that *Morgan* is inapplicable because the court found that *Tobacco II's* more relaxed standard for allegations of reliance applied since the plaintiff in that case adequately alleged reliance on a "long-term advertising campaign." *Id.* at 1258.

alleges identical violations (CLRA, UCL, and breach of an express warranty), the Court finds that Plaintiff has plead reliance with sufficient specificity to survive the motion to dismiss.

### c.    Advertising Campaign

Next, Defendant contends that if Plaintiff in fact has standing to challenge P&G's alleged false advertising, such claim is limited to the advertisements made on the product's label and does not extend to other forms of advertisements. (Doc. 15 at 17). This same argument was recently alleged in *Morey*, where the court held that at the pleading stage, a plaintiff is "not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements." *Morey*, 2010 U.S. Dist. LEXIS 67990 at *5.

Applying Defendant's reasoning, every class action would need a representative for every type of advertisement – radio, television, labeling, internet, newspaper, etc. In the instant case, Plaintiff alleged that all of the advertisements for Align carried the same message and misrepresentations.[17] (Doc. 9 at ¶¶ 4-5). *See, e.g., Fitzpatrick v. General Mills, Inc.*, 263 F.R.D. 687, 694 (S.D. Fla. 2010) (a plaintiff seeking to prove the

---

[17] "Procter & Gamble conveyed and continues to convey its deceptive claims about Align through a variety of media, including the Internet, in-store sampling, point of sale displays, and on the Align probiotic supplement's labels and labeling. These representations appear prominently and conspicuously on every Align container. Through this advertising, Procter & Gamble has conveyed one message: Align, with its probiotic bacteria cultures, provides clinically proven digestive health benefits to the general public. Attached as Exhibit 1 is a collection of some of the advertisements and labeling containing the false and deceptive advertising claim." (Doc. 9 at ¶¶ 4, 5).

-19-

deceptiveness of an advertisement "may rely on any evidence concerning that message, including advertisements to which he or she was not personally exposed.").

Defendant argues that given the fact that the product packaging for Align has changed over time, Plaintiff's identification of the specific advertising statements on which he relied is essential. For example, in *Johns v. Bayer Corp*, No. 09CV1935, 2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010), the court found that the plaintiff lacked standing to pursue claims based on advertisements other than those on the product packaging since he "cannot expand the scope of his claims to include . . . advertisements relating to a product that they did not rely upon." *Id.* at 13. However, the plaintiff in *Johns* did not allege that he saw *any* advertisements for the product, that he read the packaging on the product, that he even considered purchasing the product, or that he relied upon any radio, television, or internet advertisement in connection with his purchase of the product. Therefore, *Johns* is distinguishable from the instant case, in that Plaintiff "expressly alleges that he "was exposed to and saw Procter & Gamble's claims by reading the Align label, purchased Align in this District in reliance on these claims, and suffered injury in fact." (Doc. 9 at ¶ 10). Moreover, Plaintiff alleges that all of the advertising statements carried the same message, which is sufficient to state a claim at this stage. *See, e.g., Fitzpatrick*, 263 F.R.D. at 693.

## 2. *CLRA Standing*

The Consumers Legal Remedies Act ("CLRA") contains similar language establishing a standing requirement. California requires a plaintiff suing under the CLRA

for misrepresentations in connection with a sale to plead and prove he relied on a material misrepresentation. *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668, 22 Cal. Rptr. 2d 419 (Cal. App. 4th Dist., 1993) (holding no material misrepresentation was made to plaintiff suing under the CLRA because he did not believe the allegedly misleading statement). Here, because Plaintiff's claims are based on allegations of false advertising, Plaintiff must allege that he relied on the false advertising. *Laster*, 407 F. Supp. 2d at 1194. As discussed *supra* at Section III.D.1.b, Plaintiff's allegations sufficiently establish actual reliance on the allegedly misleading product label.

### D.    Fed. R. Civ. P. 8 and 9

Next, Defendant claims that Plaintiff's conclusory allegations fail to state a plausible claim for relief pursuant to Rule 8 or the particularity requirements of Rule 9(b).

Rule 8 provides that in order to state a claim for relief in a pleading it must contain "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1) & (2). To survive a motion to dismiss the plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. While this Court acknowledges that vague and conclusory statements are insufficient to state a claim for relief, the Court finds that Plaintiff's claims are neither vague nor conclusory and allege sufficient facts to proceed.

Federal Rule of Civil Procedure 9(b)'s heightened-pleading standards apply to claims for violation of the UCL or CLRA that are grounded in fraud.[18]  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-06 (9th Cir. 2009).  Courts have specifically held that claims for false advertising brought pursuant to the UCL and CLRA "sound in fraud" and are subject to Rule 9(b)'s heightened-pleading standard.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.  A plaintiff must set forth more than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false."[19]  *Vess*, 317 F.3d at 1106.  However, Rule 9(b) only requires that allegations regarding the circumstances constituting the fraud be "specific enough to give defendants notice of the particular

---

[18]  Under California law, the "indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages."  *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996) (citing *Bank of the West v. Valley Nat'l Bank of Arizona*, 41 F.3d 471, 477 (9th Cir. 1994)).

[19]  Defendant argues that Plaintiff must identify when and where he saw the allegedly false and misleading statements on the product label, and when and where he purchased the product.  *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09MD2087, 2010 U.S. Dist. LEXIS 44037, at *32-33 (S.D. Cal. May 5, 2010) ("Plaintiff must state when . . . he saw, heard, and/or read and relied upon the allegedly frudulent material.").  While Plaintiff need not state each and every claim in exacting detail, he must at least plead the "who, what, when, where, and how" of the alleged false claims.  *Id.  See also Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (identification of "specific content of the false representations" required under Rule 9(b)).

misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

Plaintiff maintains that the amended complaint complies with Rule 9(b) by giving fair notice of the alleged misconduct. (Doc. 15 at 17-18). Plaintiff reprinted and attached the advertisements he relied on to the amended complaint. (Doc. 9 at ¶ 4). Additionally, Plaintiff alleged when and where the statements were made ("Internet, in-store sampling, point of sale displays, and on the Align probiotic supplement's labels and labeling") (*Id.* at ¶ 21) ("The label on each package of Align"); (*Id.* at ¶ 23) (Defendant "deceptively describes Align and Bifantis on its www.aligngi.com and www.bifantis.com websites"); (*Id.* at ¶ 12) (Defendant launched retail sales of Align "[i]n March 2009"); (*Id.* at ¶ 2) (the representations are ongoing, Defendant "continues to state" and "continues to advertise"). Plaintiff also explained why the statements regarding Defendant's product are likely to deceive the reasonable consumer. (*Id.* at ¶ 1) (Defendant "has no support for these claims"); (*Id.* at ¶ 3) ("In truth, the ingredient matrix found in Align has never been substantiated clinically or otherwise.").

Accordingly, as required pursuant to Rule 9(b), Plaintiff alleged in the amended complaint when he saw, read, and relied upon Align's material, and what information was false and misleading. Although Plaintiff's allegations could have been more detailed, they do meet Rule 9(b)'s pleading requirement. Additional details are the appropriate

subject of discovery, and this is not a case where Defendant will be forced to do discovery in the absence of a plausible claim for relief.

### E.     Failure to State a Claim under UCL

The UCL[20] proscribes unlawful business practices by borrowing violations of other laws and making them independently actionable under the UCL.[21]   *Cel-Tech Commc'ns, Inc. v.  Los Angeles Cellular Tel.* Co., 20 Cal. 4th 163 (1999).  If a plaintiff fails to establish a violation of some other law, the allegation of a UCL claim will also fail. *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1190 (N.D. Cal. 2009) ("[S]ince the court has dismissed all of Plaintiff's predicate violations, Plaintiff cannot state a claim under the unlawful business practices prong of the UCL.").  Plaintiff must state a viable predicate claim with respect to unlawful conduct on the part of the defendant in order to establish liability under the UCL.

Plaintiff claims that Defendant has violated Cal. Civil Code §§ 1572 (actual fraud),

---

[20]  The purposes of the UCL are "to safeguard the public against the creation of perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and discriminatory practices by which fair and honest competition is destroyed or prevents."  Cal. Bus. & Prof. Code § 17001.

[21]  "A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006).  "In permitting the restraining of all 'unfair' business practices' the UCL "undeniably establishes only a wide standard to guide courts of equity . . . [G]iven the creative nature of the scheming mind, the Legislature evidently concluded that a less inclusive standard would not be adequate." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel.* Co., 20 Cal. 4th 163, 181 (1999).

-24-

1573 (constructive fraud), 1709 (fraudulent deceit), 1710 (what constituted deceit),[22] 1711 (deceit upon the public), 1770 (unlawful practices); Business & Professions Code § 17200 *et seq*. (misleading advertising);[23] and Cal. Health & Safety Code § 110765 (misbranded food), 21 U.S.C. § 321 (definitions),[24] 21 U.S.C. § 343 (misbranded food).[25] (Doc. 9 at ¶ 6). Defendant argues that Plaintiff fails to state a claim under all but one of the borrowed laws (Cal. Health & Safety Code § 110765), on which he attempts to predicate his unlawful claim. (Doc. 10 at 20, fn. 10). First and foremost, because Defendant conceded that the Health & Safety Code is a proper predicate claim, Plaintiff has properly stated a cause of action under the UCL. However, the Court will examine each predicate claim for sufficiency, as Defendant requests that any improper claims be stricken from the amended complaint. (Doc. 17, fn. 6).

First, Defendant claims that a violation of the Federal Food, Drug and Cosmetic Act ("FDCA") (21 U.S.C. § 343) cannot serve as predicated under the UCL unlawful prong since the FDCA expressly precludes private enforcement. *Perez v. Nidek Co.*, 657

---

[22] This is a definition section for Cal. Civ. Code § 1709, and it is therefore inapplicable.

[23] "Virtually any state, federal or local [common] law can serve as the predicate for an action" under section 17200. *Podolsky v. First Health Care Corp.*, 50 Cal.App. 4th at 647 (1996).

[24] This is a definition section for 21 U.S.C. § 301 *et seq*., and it is therefore inapplicable.

[25] "It would be impossible to draft in advance detailed plans and specifications of all acts and conduct to be prohibited, since unfair or fraudulent business practices may run the gamut of human ingenuity and chicanery." *People ex rel. Mosk v. Nat'l Research Co of Cal.*, 201 Cal.App.2d 765, 772 (1962).

F.Supp. 2d 1156, 1164-66 (S.D. Cal. 2009) ("Plaintiffs' CLRA and UCL claims are dismissed because they impermissibly seek private enforcement of the FDCA . . . The Court will not permit Plaintiffs to privately enforce the FDCA and its regulations under the guise of state law claims.").[26]  However, *Perez* goes on to state that "[o]f course, not all claims that touch upon subject matter regulated by the FDCA are preempted.  For example, literally false or misleading statements made to promote drugs or devices are actionable if they do not depend on a determination by the court whether the FDCA has been violated." *Id.* at 1165.  In *Perez*, the plaintiffs' claims required the court to make determinations regarding whether modified lasers had been adulterated under section 501(f)(1)(B) of the FDCA – an issue that required FDCA determination in the first instance.  Conversely, in the instant case, Plaintiff's allegations that the advertising for Align is "literally false and misleading" does "not depend on a determination by the Court whether the FDCA has been violated." *Id. Perez* expressly carves out an exception for the instant case to proceed.  Accordingly, this predicate violation stands.

Next, Defendant argues that Plaintiff's predicate claims for fraud and deceit (Cal. Civ. Code §§ 1572, 1573, 1709, 1710, and 1711) should be dismissed because they are not plead with particularity. *Tietsworth v. Sears Roebuck & Co.*, No. 5:09cv00288, 2009 U.S. Dist. LEXIS 98532, at *21 (N.D. Cal. Oct. 13, 2009) (UCL claims predicated on

---

[26] "Section 337(a) of the FDCA provides that all proceedings for the enforcement, or to restrain violations of [the Act] shall be by and in the name of the United States." Courts have interpreted section 337(a) as prohibiting private rights of action under the FDCA and have dismissed state law claims that seek to enforce the FDCA or its regulations. *Id.*

violations of Cal. Civ. Code §§ 1572, 1709, 1710 are not adequately pled where plaintiffs "failed to allege the elements of fraud with the particularity required by Rule 9(b)"). This Court has already held that Plaintiff's claims were plead with particularity (*see* Section II.D), and accordingly these predicate violations stand.[27]

Third, defendant maintains that common law claims[28] cannot form the basis for a UCL "unlawful" claim. *Hartless v. Clorox Co.*, No. 06cv2705, 2007 U.S. Dist. LEXIS 81686, at *18 (S.D. Cal. Nov. 2, 2007) (holding that common law negligence provides an insufficient basis under the unlawful prong of the UCL). In *Hartless*, the court reviewed the various authority and concluded that common law claims independent of any law cannot serve as an unlawful predicate act. *Id.* at 17-18. However, relying on *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003), Plaintiff claims that violations of common law can serve as predicate violations under the UCL "unlawful" prong. (Doc. 15 at 20). "We conclude, therefore, that an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1159. Additionally, California appellate courts and the Ninth Circuit have held that systematic breach of consumer contracts violates the UCL. *See, e.g., Smith v. Wells Fargo Bank*, 135 Cal. App. 4th

---

[27] With the exception of Cal. Civ. Code § 1710, which, as explained *supra,* is not a substantive claim, and it is therefore ordered stricken from the amended complaint.

[28] Plaintiff claims that Defendant's systematic breach of its warranties is a predicate violation for purposes of the UCL's unlawful prong.

-27-

1463, 1483 (2005); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th

Cir. 2007) ("breach of contract may form the predicate for a UCL claim if the breach is

unlawful, unfair, or fraudulent"). The case law on this issue is contradictory, and this

Court declines to dismiss the common law predicate acts based on one unpublished

district court decision. Accordingly, the common law predicate violation stands and

Plaintiff has sufficiently alleged predicate violations such that he has properly stated a

claim under the UCL.

### F.      Monetary Damages Under CLRA

In order to bring a claim for monetary damages under the CLRA, a plaintiff must

comply with the notice requirement of Section 1782. California Civil Code § 1782(a)

requires that "[t]hirty days or more prior to the commencement of an action for damages

pursuant to [the CLRA], the consumer shall . . . : 1) [n]otify the person alleged to have

employed or committed methods, acts, or practices declared unlawful . . . of the particular

alleged violations[; and] (2) [d]emand that the person correct, repair, replace or otherwise

rectify the goods or services alleged to be in violation." The notice must be in writing and

sent by certified or registered mail, return receipt requested, to the place where the

transaction occurred or to the person's principal place of business in California. *Von

Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1303 (S.D. Cal. 2003). "The purpose of the

notice requirement is to give the manufacturer or vendor sufficient notice of alleged

defects to permit appropriate corrections or replacements." *Outboard Marine Corp. v.*

*Superior Court*, 52 Cal. App. 3d 30, 40 (1975).

In his first complaint, Plaintiff sought "restitution and disgorgement." (Doc. 1, Prayer for Relief at C). Plaintiff did not comply with the CLRA notice requirements, as he alleges that notice was not required because he did not seek "damages" under the CLRA in the original complaint. *See, e.g., In Re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008) ("The Court does not agree that the first amended consolidated class action complaint demands damages under the CLRA. The [complaint] demands restitution and disgorgement . . . which do not appear to be 'damages' for the purposes of the CLRA."); *Util. Consumers' Action Network v. Sprint Solutions, Inc.*, No., 07-cv-2231, 2008 U.S. Dist. LEXIS 34159, at *6 (S.D. Cal. Apr. 25, 2008) ("While the claim[s] for damages and restitution are overlapping to some extent, they are identified as separate forms of relief. Cal. Civ. Code § 1780(a). Prefiling notice is not required for a CLRA claim for restitution. Accordingly, the claim for restitution under the CLRA may proceed.").[29] Along with the original complaint, Plaintiff notified Defendant of the CLRA violations, requested that they be rectified, and informed Defendant that the complaint would be amended to seek damages under the CLRA if P&G did not agree to correct the violations within 30 days. (Doc. 1 at ¶¶ 58-61). When Defendant failed to

---

[29] *See also Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 1001 (N.D. Cal. 2007) ("A consumer may not bring a damages suit under the CLRA without first giving the alleged violator at least thirty days' notice to cure the alleged violations, but a suit for injunctive relief may be brought without providing such notice.").

-29-

rectify or agree to rectify the problems after 30 days, Plaintiff added a claim for CLRA damages in his amended complaint. (Doc. 9 at ¶ 61). Plaintiff sent a CLRA notice letter on September 21, 2010, the same day he filed the amended complaint. (Doc. 9 at ¶ 58, Ex. 2).

Conversely, Defendant alleges that Plaintiff's claims for monetary damages under the CLRA should be dismissed with prejudice because he was required to serve his CLRA notice letter at the time he filed his original complaint, because the CLRA notice requirement also applies to restitution and disgorgement. The court in *Laster* held that:

> Section 1780, which list[s] the available remedies for violations of the section, includes "actual damages," injunctive relief, and restitution of property. To interpret Section 1782's notice requirement for "damages" to be limited to "actual damages" would render the word "actual" in Section 1780 redundant. In addition, if the Legislature intended Section 1782's reference to "damages" to include only "actual damages" it is unclear why it would specifically exempt only injunctive relief from the notice requirement in Section 1782(d). Accordingly, the Court finds that the notice requirement applies to monetary damages, regardless of whether such damages are calculated based upon the unjust enrichment of Defendant or the Plaintiffs' loss. Plaintiffs' restitution claim under CLRA is therefore dismissed with prejudice."

2008 U.S. Dist. LEXIS 103712, at 52.

*Laster* (August 11, 2008) was decided after both *Kennedy* (August 7, 2007) and *Utility Consumer's Action Network* (April 25, 2008), and, therefore, Defendant asks that

this Court adopt its reasoning.[30]  However, this Court finds the reasoning in *Laster* to be

misplaced as explainted in *Kennedy*.  "[A]s to requests for other equitable relief, such as

restitution . . . the CLRA does not specify any presuit notice requirement."  *Kennedy v.*

*Natural Balance Pet Foods, Inc.,* No. 07-cv1082, 2007 U.S. Dist. LEXIS 57766, at *8 (S.

D. Cal. Aug. 8, 2007).  Moreover, the California legislature specifically enumerated the

different types of CLRA actions in Cal. Civil Code § 1781, which distinguishes between

actions seeking "damages," "injunctive relief," and "restitution," and the legislature's

specific requirement of notice only in actions "for damages" in Section 1782(a).  *Id.*

Accordingly, absent statutory language requiring presuit notice, this Court declines to

imply a notice requirement to Plaintiff's claim for restitution under the CLRA.

G.      **Breach of Express Warranty**

Defendant claims that Plaintiff fails to properly plead the elements of a claim for

breach of express warranty, and, instead, only conclusorily alleged the existence of a

warranty.  Under California law, to prevail on a breach of express warranty claim a

plaintiff must prove: (1) the seller's statement constitutes an affirmation of fact or

promise, or a description of the goods; (2) the statement was part of the basis of the

bargain; and (3) the warranty was breached.  *Weinstat v. Dentsply Intern. Inc.*, 180 Cal.

App. 4th 1213, 1227 (2010); California Uniform Commercial Code § 2313; *see also*

---

[30] "A district court's opinion is not binding on other district courts."  *Krangel v. Lester Crown*, 791 F. Supp. 1436, 1449 (S.D. Cal. 1992).

*Keith v. Buchanan*, 173 Cal.App.3d 13, 20 (1985). Reliance is not an element of a

warranty claim. "[B]reach of express warranty arises in the context of contract formation

in which reliance plays no role." *Weinstat*, 180 Cal. App. 4th at 1230 (plaintiff did not

receive product warranties until after the product was purchased and delivered.

Nonetheless, "[t]he precise time when the words of description or affirmation are made . .

. is not material. The sole question is whether the language. . . i[s] fairly to be regarded as

part of the contract.").

Specifically, Defendant argues that Plaintiff has failed to identify the express

affirmations of fact in the advertisements that constitute an alleged warranty and because

Plaintiff failed to do so, his express warranty claim fails on this basis alone. (Doc. 10 at

24). Moreover, Defendant maintains that Plaintiff has not adequately alleged facts

demonstrating how any alleged warranty was breached, that he relied on any alleged

warranty, or that he was injured as a result of any such breach. (*Id.*)

In the amended complaint, Plaintiff alleges that

> [he] and each member of the Class, formed a contract with
> defendants at the time plaintiff and the other members of the
> Class purchased Align. The terms of that contract include the
> promises and affirmations of fact made by Procter & gamble
> on its Align product labels and through other marketing
> campaigns, as described above. This advertising, including
> labeling, constitutes express warranties, became part of the
> basis of the bargain, and is part of a standardized contract
> between plaintiff and the members of the Class on the one hand,
> and Procter & Gamble on the other.

(Doc. 9 at ¶ 77).

-32-

Contrary to Defendant's argument otherwise, the Court finds that Plaintiff's amended complaint clearly alleges what benefits were expected.[31] (Doc. 9 at ¶¶ 19-28). Plaintiff has identified the particular advertisement upon which he relied (*Id.* at ¶ 21), and he has described with the requisite specificity the content of that particular advertisement. Moreover, the Court has already concluded that Plantiff has adequately pled reliance, injury, and causation. (*See* Sections II.D.1.a; b, *supra*). Although Plaintiff did not directly quote the "exact terms" of Defendant's warranty, the Court finds that Plaintiff's allegations are sufficient. Accepting all material allegations in the complaint as true while construing them in the light most favorable to Plaintiff, the amended complaint states a claim for breach of express warranty as to Defendant that is plausible on its face. Therefore, Defendant's motion to dismiss the claim for breach of express warranty is denied.

## H.    Class Action

Finally, Defendant argues that Plaintiff cannot pursue California state law claims under the UCL and CLRA on behalf of a proposed class that includes out-of-state residents. California statutory remedies may be invoked by out-of-state parties, but only when they are harmed by conduct occurring in California. *Diamond Multimedia Sys. v. Superior Court*, 19 Cal. 4th 1036, 1059 (1999). The complaint does not contain any

---

[31] For example, "[b]uild and maintain a health [sic] digestive system; Restore your natural digestive balance; [and] Protect against occasional digestive upsets." (Doc. 9 at ¶ 19).

allegations that P&G's alleged conduct occurred in California, and given the lack of a nexus between California and out-of-state class members who did not suffer an injury within the state, Defendant argues that California law does not apply to their claims.

Despite the sense that Defendant's argument appears meritorious on its face, the Court has not yet been apprised of the members of the prospective class, and it is therefore premature to rule upon a factual issue that is not properly before the Court. *See, e.g., Lockwood*, 597 F.Supp.2d at 1035 (refusing to strike class allegations on defendant's argument that a class could not be certified as a matter of law. The court would consider the issues "on a fully-briefed and supported motion concerning class certification."). Rather than rule on the issue in the abstract, the Court will withhold a decision until the Court is presented with a motion for class certification and related briefing.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, Defendant's motion to dismiss (Doc. 10) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, Defendant's motion is **GRANTED** with respect to Plaintiff's claim for injunctive relief and **DENIED** on all other grounds.

**IT IS SO ORDERED.**

Date: 5/4/11

Timothy S. Black
United States District Judge

-34-