UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DINO RIKOS,                                    :         Case No. 1:11-cv-226
                                               :
    Plaintiff,                                 :
                                               :         Judge Timothy S. Black
vs.                                            :
                                               :
THE PROCTER & GAMBLE COMPANY,                  :
                                               :
    Defendant.                                 :

This civil case is before the Court on Defendant The Procter & Gamble Company's Motion to Strike the Class Allegations in Plaintiff's First Amended Class Action Complaint (Doc. 58) and the parties' responsive memoranda (Docs. 63, 64, 68 and 70).  For the reasons stated here, Defendant's motion is **GRANTED**.

**I.      BACKGROUND**

Defendant Procter & Gamble manufactures an over-the-counter digestive care product called Align.  (Doc. 9 at 2).  In March 2009, Procter & Gamble began nationally marketing Align with advertising and labeling claiming that it can help build and maintain a healthy digestive system, restore your natural digestive balance, and protect against occasional digestive upsets.  (*Id.*).  Procter & Gamble's advertisements state that only Align contains the patented probiotic bacteria Bifantis, and that Align provides "great digestion through science."  (*Id.*).

On September 21, 2010, Plaintiff Dino Rikos filed this action in the Southern District of California on behalf of himself and other similarly situated persons. (Doc. 1 at 2; Doc. 9 at 3). Plaintiff filed the suit as a putative class action under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure, proposing a class consisting of:

> <u>All persons who purchased Align until the date notice is disseminated</u>. Excluded from the class are defendant's officers, directors and employees and those who purchased Align for the purpose of resale. (Doc. 9 at 15) (emphasis added).

Plaintiff alleges that the members of the class are so numerous that their individual joinder is impracticable, that Plaintiff's claims are typical of the members of the class, that Plaintiff will fairly and adequately represent members of the class, and that a class action is a superior method for resolving the claims. (Doc. 9 at 15-16). Plaintiff also alleges that common questions of law or fact predominate, including:

(a) whether Procter & Gamble had adequate substantiation for its claims prior to making them;
(b) whether the claims discussed above are true, or are misleading, or reasonably likely to deceive:
(c) whether Procter & Gamble's alleged conduct violates public policy;
(d) whether the alleged conduct constitutes violations of the laws asserted herein;
(e) whether Procter & Gamble engaged in false or misleading advertising;
(f) whether Plaintiff and class members have sustained monetary loss and the proper measure of that loss;
(g) whether Plaintiff and class members are entitled to restitution;
(h) whether Plaintiff and class members are entitled to an award of punitive damages;
(i) whether Plaintiff and class members are entitled to declaratory and injunctive relief. (Doc. 9 at 15-16).

Plaintiff's proposed nationwide class action seeks to halt allegedly false and misleading advertising concerning Align and to obtain redress for those who have purchased it. (*Id.* at 3). Specifically, Plaintiff brings claims alleging: (1) Defendant's advertising of Align violated the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. § 1750, *et seq.*; (2) Defendant's business practices violated the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. § 17200 *et seq.*; and (3) Defendant breached Align's express warranties by not providing a product that could provide the benefits described. (*Id.* at 17-21). Plaintiff seeks unspecified damages, restitution and disgorgement of Procter & Gamble's revenues, declaratory and injunctive relief enjoining the allegedly unlawful practices, and attorneys' fees and costs. (*Id.* at 21-22).

On April 13, 2011, the Southern District of California granted Defendant's Motion to Transfer Venue to the Southern District of Ohio. (*See* Doc. 25). Defendant had also filed a Motion to Dismiss the First Amended Class Action Complaint (Doc. 10), arguing that the Court lacked federal subject matter jurisdiction and that Plaintiff had failed to state a claim upon which relief may be granted. (Doc. 28 at 4). Specifically, Defendant argued that: (1) Plaintiff failed to meet the pleading requirements expressed by *Bell Atlantic v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); (2) Plaintiff's claims should be dismissed under the primary jurisdiction doctrine; (3) Plaintiff lacks Article III standing because he did not suffer personal injury or economic harm; (4) Plaintiff lacks standing to seek injunctive relief because he does not

-3-

and cannot allege a threat of future injury; (5) Plaintiff lacks statutory standing for his causes of action under California law; (6) Plaintiff failed to state a claim under the UCL; (7) Plaintiff failed to plead a claim under the CLRA; (8) Plaintiff failed to properly plead a claim for breach of express warranty; and (9) Plaintiff was prohibited from pursuing a nationwide class action for California state law claims. (*See generally* Doc. 28).

On May 4, 2011, this Court entered an Order granting Defendant's motion with respect to claims for injunctive relief and denying the motion in all other aspects. (Doc. 28 at 34). With regard to Defendant's arguments that Plaintiff could not assert a nationwide class action for violations of the CLRA and the UCL, the Court wrote:

> Despite the sense that Defendant's argument appears meritorious on its face, the Court has not yet been apprised of the members of the prospective class, and it is therefore premature to rule upon a factual issue that is not properly before the Court . . . Rather than rule on the issues in the abstract, the Court will withhold a decision until the Court is presented with a motion for class certification and related briefing. (*Id.*).

On December 21, 2011, Defendant filed a Motion to Strike the Class Allegations in Plaintiff's First Amended Complaint (Doc. 58), and a Motion to Stay Discovery Pending a Resolution on the Defendant's Motion to Strike (Doc. 60). The parties fully briefed both motions. (*See* Docs. 61, 62, 63, and 64). On January 31, 2012, the Court granted Defendant's Motion to Stay Discovery. (*See* Doc. 65).

## II. STANDARD OF REVIEW

Rule 23 of the Federal Rules of Civil Procedure governs class actions brought in federal court. To obtain class certification, the Plaintiff must establish the following

prerequisites set out in Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See also Pilgrim v. Universal Health Card*, LLC, 660 F.3d 943, 945 (6th Cir. 2011).

In addition to the prerequisites of Rule 23(a), a party seeking class certification must also show that the class action is maintainable under one of the three provisions of Rule 23(b). *Pilgrim,* 660 F.3d at 945. Plaintiff argues that this action may be maintained under either Rule 23(b)(2) or Rule 23(b)(3), which state:

>  (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
>  (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>  (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>  (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>  (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>  (D) the likely difficulties in managing a class action.

Rule 23 is more than a mere pleading standard, and a party seeking class certification must demonstrate sufficient facts to meet its requirements. *Wal-Mart Stores,*

*Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). The Court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class, and should make such a determination "at an early practicable time." *Id*.; Fed. R. Civ. P. 23(c)(1)(A). Either party may freely move for resolution of the class-certification question at any stage of the proceedings, and the class action allegations may be stricken prior to a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met. *Pilgrim*, 660 F.3d at 949. *See also, e.g., Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 941-44 (9th Cir. 2009); *Sanders v. Apple, Inc*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009).

### III.   ANALYSIS

Defendant seeks to strike Plaintiff's class allegations because: (1) California statutes cannot be constitutionally applied to all class members; (2) individual questions of law predominate the class claims; (3) individual questions of fact predominate the class claims; and (4) the proposed class is overbroad. (Doc. 58 at 3).

#### A.   Claims brought under California statute

Plaintiff asserts claims on behalf of a nationwide class under two California consumer protection statutes: the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. § 1750, *et seq.* and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. § 17200, *et seq*. However, due process concerns create constitutional limitations on a state's application of its law to the claims of nonresident class members in a nationwide class action.

"To apply its law constitutionally to the claims of nonresident class members, the forum state must have a 'significant contact or aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts creating state interests, in order to ensure that the choice of [forum] law is not arbitrary or unfair." *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 612-613 (1987) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-822 (1985)).

Defendant argues that a nationwide class of all Align purchasers is inappropriate because the CLRA and the UCL cannot be constitutionally applied to the claims of class members who neither reside in California nor purchased the product there. (Doc. 58 at 12). The Court agrees.

In *Norwest Mortgage Inc. v. Superior Court*, the California Court of Appeals found that a nationwide class alleging violations of the UCL could not be certified because it included non-California residents injured outside California's borders. 72 Cal. App. 4th 214, 227 (Cal. Ct. App. 1999). In that case, plaintiffs alleged that Norwest Mortgage's Forced Placement Insurance program violated the UCL and sought to bring a class action on behalf of all borrowers throughout the United States for whom the defendant purchased insurance. *Id*. at 216. Plaintiffs argued that the fact that the defendant was incorporated and conducted business in California provided a sufficient aggregation of contacts to constitute due process for the claims of non-California residents. *Id*. The court disagreed, noting that while those contacts were sufficient to

establish personal jurisdiction, the due process calculation is a separate inquiry. *Id.*; *Shutts*, 472 U.S. at 821.

While conducting business in the forum state will establish personal jurisdiction, the forum state "may not take a transaction with little or no relationship to the forum and apply the law of the forum to satisfy the procedural question that there be a 'common question of law or fact.'" *Id*. Instead, the party seeking to apply the forum law must demonstrate that the significant contacts of the defendant relate to the claims asserted by the members of the plaintiff class. *Id*. In *Norwest*, the plaintiff could not establish any contacts between California and the actions giving rise to non-resident class-members' claims because all insurance decisions and transactions were conducted outside of California. *Cf., Clothesrigger*, 191 Cal. App. 3d at 613 (finding that the application of California law satisfied due process where the claims asserted by every nationwide class member related to conduct occurring in California).

As in *Norwest*, Plaintiff seeks to invoke California law on behalf of non-resident class members for injuries occurring entirely outside of California. The First Amended Complaint (Doc. 9) acknowledges that Procter & Gamble is headquartered in Ohio and makes no allegations that any of the relevant marketing, packaging, or product development decisions about Align were made in California. Plaintiff has therefore failed to allege any basis for determining that sufficient contacts exist between California and the claims of non-resident class members who purchased Align outside of California.

Plaintiff asserts that Defendant's arguments are premature because any determination of due process requires a fact-intensive analysis that cannot be conducted prior to discovery. (Doc. 63 at 9-10). However, the Sixth Circuit's recent decision in *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011), holds that a district court may strike class allegations prior to discovery when discovery will not "alter the central defect in th[e] class claim." In *Pilgrim*, the plaintiffs argued that the rigorous analysis required by Rule 23 could not be conducted prior to discovery, but the court noted that their claims were "governed by. . . a largely legal determination, and no proffered or potential factual development offers any hope of altering that conclusion, one that generally will preclude class certification." *Id*.

Similarly, whether the California statutes may constitutionally apply to non-resident class members who purchased Align in their home states is a largely legal determination. While it is true that discovery may define the class more precisely, the fact remains that a nationwide class consisting of all purchasers of Align will inevitably include non-California residents who purchased the product outside of California. Plaintiff's objection to Defendant's arguments "goes to the timing, not the substance, of it." *Pilgrim*, 660 F.3d at 949.[1]

---

[1] The Court acknowledges that its prior ruling on Defendant's Motion to Dismiss (Doc. 28) provided that this issue would properly be determined upon full briefing of a motion concerning class certification. However, that analysis is altered by the Sixth Circuit's recent decision in *Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949 (6th Cir. 2011), as discussed above.

Accordingly, the Court finds that a nationwide class may not be certified for Plaintiff's claims listed in Count I and Count II of the complaint.[2]

**B.     Express Warranty Claims**

Defendant also argues that Plaintiff's claim for breach of express warranty (Count III) cannot be brought on behalf of a nationwide class because a choice of law analysis demonstrates that individual questions of law predominate. (Doc. 58 at 17).[3]

When a putative class action contains members from several states, the Court must undertake a choice of law analysis to determine which states' laws apply to plaintiff's claims. Generally, federal courts sitting in diversity should apply the choice of law rules of the state in which they sit. *Muncie Power Prod. Inc. v. United Tech Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). However, because this case was transferred to this district

---

[2] Even if Plaintiff could satisfy the Constitutional limitations on its claims, he would be unable to bring claims under the UCL on behalf non-resident class members who purchased Align outside of California. California courts ordinarily presume that the Legislature did not intend for California statutes to have force or operation outside California. *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (Cal. Ct. App. 1999). The courts therefore do not construe a statute as regulating conduct outside the state unless a contrary intention is clearly expressed or can reasonably be inferred from the language or purpose of the statute. *Id*. at 223. The UCL contains no such expression, and it cannot be applied to claims "for injuries suffered by non-California residents, caused by conduct occurring outside of California's borders, by defendants whose headquarters and principal places of operation are outside of California." *Id*. at 225.

[3] Defendant also argues that under a choice of law analysis, individual questions of law will predominate Plaintiff's claims under Counts I and II (Doc. 58 at 13). However, because the Court has determined that the CLRA and the UCL cannot be constitutionally applied to a nationwide class, it is unnecessary to conduct a choice of law analysis with regard to those claims. *See Clothesrigger, Inc. v. GTE Corp.*, 191 Cal App. 3d 605, 619 (Cal. Ct. App. 1987) (only if the "application of California law would be constitutional [will] the court . . . determine whether California law will apply under California choice of law rules").

from the Southern District of California, this Court will apply California's choice of law rules. *See In re Benedictin Litigation*, 857 F.2d 290, 306 (6th Cir. 1998).

California applies a three-part test to determine choice of law in the absence of an agreement among the parties. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1233 (9th Cir. 2001); *Wash. Mut. Bank v. Superior Court*, 15 P.3d 1071, 1080 (Cal. 2001). The court must: (1) determine if the laws of other states "materially differ" from California law; (2) if the laws materially differ, determine each state's respective interest in application of its law; and (3) if the laws materially differ and both states have an interest in the litigation, apply the law of the state whose interest would be "more impaired" if its law were not applied. *Carijano*, 642 F.3d at 1233. The proponent of using another state's law bears the initial burden of demonstrating material differences between the statutes. *Id*.

        **1.**    **Material Differences**

Procter & Gamble argues that there are "substantial and material variations in states' express warranty laws" on elements such as reliance, privity, and notice. (Doc. 58 at 17-18). Laws are said to "materially differ" only where the variations would make a difference in the instant litigation. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590 (9th Cir. 1012).

Defendant argues that there are at least four material variations in the express warranty laws of the states. First, California provides an exception to the requirement of

privity for purchases where the plaintiff relied on the product's labels or advertising, while other states bar claims for breach of express warranty in the absence of privity and a third category have no requirement of privity at all. (Doc. 58, Ex. 2 at 1). Second, California holds that statements of mere "puffery" do not constitute an express warranty, while other states hold that a warranty is created when the natural tendency of the statement is to induce a purchase. (*Id*. at 2). Third, while reliance is not an element of an express warranty claim in California, some states require plaintiff to demonstrate reliance, others apply a burden shifting method, and others still presume reliance. (*Id*. at 3). Finally, California requires plaintiffs in express warranty actions to give notice to the manufacturer, while other states require notice only to the seller, and some do not require notice at all. (*Id*. at 5).

Plaintiff argues that Defendant cannot satisfy its burden to show that the variations in state law are material prior to discovery because such determinations are fact-bound; Plaintiff alleges that the Court cannot know which variations will make a difference in this litigation without knowing more precisely what is at issue. (Doc. 68 at 3). However, in *Mazza*, the Ninth Circuit determined, without conducting a factual analysis, that variations in the elements required to satisfy a cause of action constituted material differences among the statutes. 666 F.3d at 591. In that case, the appellate court found that differences in state consumer protection statutes involving reliance and remedies were material because, for example, "in a case where the plaintiff did not rely on an

alleged misrepresentation, the reliance requirement will spell the difference between the success and failure of the claim." *Id*. Here, the variations in the elements of express warranty actions are similarly material. In instances where a plaintiff acted without privity, reliance, or sufficient notice, the presence of any of those requirements will bar the claim and likewise "spell the difference between success and failure."

Plaintiff relies on California case law to argue that reliance is presumed under certain circumstances, and discovery is necessary to demonstrate that those circumstances exist here. (Doc. 63 at 15). However, whether or not reliance is presumed under California law does not alter the analysis that California law and the laws of other states substantially differ on whether reliance is required. No discovery will change the simple fact that different states have different elements for claims of breach of express warranty, and the Court finds that these variations are material.

        **2.**        **Interests of Foreign Jurisdictions**

California's choice of law rules require the Court to next determine each state's respective interests in applying its own laws. "Every state has an interest in having its law applied to its resident claimants." *Mazza*, 666 F.3d 581, 591-592 (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001)). Further, each state has an interest in setting the appropriate level of liability for companies conducting business within its territory. *Id.; McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 91 (Cal. 2010). Allowing each state to apply its own laws "assure[s] individuals and commercial entities

operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future." *McCann*, 48 Cal. 4th at 91.

The Court therefore finds that each state where Align was purchased or sold has an interest in applying its own express warranty laws.

### 3. Which State Interest is Most Impaired

The final inquiry under California's choice of law analysis requires the Court to determine which state's interest is most impaired if its law is not applied. California law considers the state where the last event necessary to make the actor liable occurred to be the state with the predominant interest. *Mazza*, 666 F.3d at 593. In a consumer products case, the last events necessary for liability are communication of the advertisements to the claimants and their purchase of the products. *Id*. at 594. Accordingly, the states where Align was purchased have the predominant interest in the application of their laws to transactions between their citizens and Procter & Gamble. Conversely, California's interest in regulating the conduct of companies that do business within its borders does not require the application of California law to the claims of foreign residents concerning acts that took place in other states. *Id*. Therefore, each class member's express warranty claim should be governed by the laws of the jurisdiction in which the transaction took place.

Accordingly, individual questions of law predominate Plaintiff's claims brought under Count III.  Therefore, Plaintiff is unable to satisfy the requirements of Rule 23, and a nationwide class may not be certified.

### III.     CONCLUSION

For the reasons stated, the Court finds that claims alleging a nationwide class asserting violations of the CLRA, the UCL, and breach of express warranty cannot satisfy the predominance requirements of Rule 23.  Therefore, Defendant's Motion to Strike the Class Allegations in the First Amended Complaint is **GRANTED**.

The Court makes no determination as to whether a more narrow class, for example, one containing only California residents, would satisfy the requirements of Rule 23. Accordingly, Plaintiff is granted leave to move to amend the complaint **within 30 days** of entry of this Order.

**IT IS SO ORDERED**.


Date     2/28/12                                    *s/ Timothy S. Black*
                                                    Timothy S. Black
                                                    United States District Judge