BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (CA 149343)
LESLIE E. HURST (CA 178432)
THOMAS J. O'REARDON II (CA 247952)
701 B Street, Suite 1700
San Diego, CA  92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

FUTSCHER LAW PLLC
DAVID A. FUTSCHER (OH 0039653)
913 N. Oak Drive
Villa Hills, KY  41017
Telephone: 859/912-2394
david@futscherlaw.com

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| DINO RIKOS, TRACEY BURNS, and LEO JARZEMBROWSKI, On Behalf of Themselves, All Others Similarly Situated and the General Public,<br><br>Plaintiffs,<br><br>v.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>Defendant. | Case No.:   11-CV-00226-TSB<br><br>CLASS ACTION<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date:      May 5, 2014<br>Time:      1:30 p.m.<br><br>Judge:      Honorable Timothy S. Black<br>Courtroom: 815<br>Date Filed:  September 21, 2010<br>Trial Date:  December 8, 2014 |

# [REDACTED]

BLOOD HURST & O'REARDON, LLP

00072018

**S.D. OHIO CIV. R. 7.2(a)(3) OVER LENGTH MEMORANDUM SUMMARY**

Pursuant to S.D. Ohio Civ. R. 7.2(a)(3) and this Court's Civil Procedures, Plaintiffs respectfully submit this summary regarding their over length reply in support of motion for class certification. As this Court is aware, Plaintiffs seek to represent five single-state classes of consumers. Rather than file separate motions, Plaintiffs file the following 50 page memorandum in response to defendant's 65 page opposition.

Section I (pages 1-5) is the introduction. It is undisputed that there is only one reason to purchase Align – for the advertised digestive health benefits. All Class members were injured by spending money on the falsely advertised product. P&G's arguments in opposition to class certification focus on causation or reliance requirements (which, if required, can be proven with classwide evidence), purported individual injuries (all Class members lost money by purchasing a falsely advertised product), that Class members do not keep receipts (this is not the test for ascertainability in this Circuit), and trial manageability issues that do not exist.

Section II (pages 5-6) sets forth the reasons why class certification is appropriate, particularly under the recent Supreme Court decisions in *Dukes*, *Comcast*, and *Amgen*. Class treatment is appropriate because the predominating common issues that can be tried in a class trial are whether P&G promised digestive health benefits, whether the promises were material, and whether those promises were true, false or likely to deceive. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013).

Section III (pages 6-13) adresses the typicality and adequacy requirements. The claims of Plaintiffs and Class members are the same. All bought a product alleged to be fraudulently advertised by P&G, and were damaged in the amount of the purchase price. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852-53 (6th Cir. 2013); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006). Plaintiffs each purchased Align because of the digestive health message, and suffered injury by purchasing a falsely advertising product. Plaintiffs are also adequate class representatives who have retained counsel with substantial experience litigating consumer class actions, including obtaining certification in the analogous *Fitzpatrick*, *Johnson*, *Johns*, *Godec*, and *Nelson* class actions.

BLOOD HURST & O'REARDON, LLP

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

BLOOD HURST & O'REARDON, LLP

1  P&G's arguments about the credibility or conflicts of Plaintiffs are overstated and legally

2  unavailing. *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 431 (6th Cir. 2012).

3  Section IV (page 13) discusses why Rule 23(a)(1)'s numerosity requirement is readily

4  satisfied. Millions of packages of Align have been sold to consumers since 2009. Even the

5  sale of just "thousands" of products readily meets the numerosity requirement. *In re*

6  *Whirlpool*, 722 F.3d at 852.

7  Section V (pages 13-25) addresses P&G's argument that the proposed Class is

8  overbroad and unascertainable. Here, all Class members were injured because they all bought

9  the same falsely advertised product that has no intrinsic value. Whether or not a consumer was

10  satisfied is irrelevant because a product's placebo effect provides no defense to one who

11  engages in false advertising. The proper inquiry is whether the product sold was falsely

12  advertised. *Ries v. Ariz. Bevs. United States LLC, Hornell Brewing Co.*, 287 F.R.D. 523, 536

13  (C.D. Cal. 2012). Further, claims that consumers who were satisfied with a product lack

14  Article III standing also misstates the nature of the injury, as all Class members were exposed

15  to the same misrepresentation at issue and were all paid money for a falsely advertised

16  product. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012). Lastly, the

17  proposed Class is "defined by classic categories of objective criteria" and, accordingly,

18  satisfies the ascertainability prerequisite. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532,

19  539 (6th Cir. 2012).

20  Section VI (page 25) sets forth why Rule 23(a)(2)'s commonality requirement is

21  satisfied. Namely, the question of whether Align provides the advertised digestive health

22  benefit is a common question apt to drive resolution of the litigation as it is relevant to each of

23  the claims at issue. *In re Whirlpool*, 722 F.3d at 853; *Fitzpatrick v. General Mills, Inc.*, 263

24  F.R.D. 687, 696 (S.D. Fla. 2010); *Johnson v. General Mills, Inc.*, 275 F.R.D. 282, 287 (C.D.

25  Cal. 2011).

26  Section VII (pages 25-48) analyzes why certification is proper under Rule 23(b)(3)'s

27  predominance requirement. Here, the predominating common issues shared by Plaintiffs and

28  each Class member are whether P&G represented through its advertising and labeling that

BLOOD HURST & O'REARDON, LLP

1   Align promotes digestive health (to date, a contention it has not disputed) and whether the

2   advertising message is truthful or not deceptive. As the courts in *Johnson*, *Johns*, *Nelson*,

3   *Fitzpatrick*, and *Wiener v. Dannon Co.*, 255 F.R.D. 658 (C.D. Cal. 2009), each recognized,

4   both of these predominant and binary questions may be resolved by class wide evidence. P&G

5   does not contend that Align is effective for some, but not others. Further, both of the parties'

6   experts agree that determining the truth or falsity of the advertising is done by reviewing the

7   scientific studies at issue.

8       Pages 26-31 explain that what message was conveyed presents a predominating issue

9   and can be determined on a class-wide basis using P&G's own marketing research. Further,

10  the digestive health message was placed on every package and repeated throughout Align's

11  television, Internet, print advertisements, and medical marketing advertisements. The

12  evidence, therefore, demonstrates the consistent, clear message that P&G intended to convey:

13  that Align provides digestive health benefits. Additionally, the message's veracity presents

14  predominating issues because questions of science are inherently demonstrated on a

15  generalized, classwide basis. Both parties' science experts agree that by reviewing the closed-

16  universe of scientific studies at issue (P&G's science expert believes there are just six human

17  clinical studies at issue), it can be determined "in one stroke" whether P&G's digestive health

18  message is truthful and not deceptive.

19      Pages 31-41 address the fact that reliance and causation, where required, present

20  predominating issues that can be established with class wide evidence. Although P&G argues

21  that certain of Plaintiffs' claims require reliance or causation, and therefore individual issues

22  necessarily predominate, this misstates the legal requirements under many of the claims and

23  courts have repeatedly rejected the contention P&G asserts. Where reliance is required,

24  Plaintiffs are entitled to a class wide presumption of reliance based on the uniform, material

25  message. *See, e.g., Mass Mut. Life Ins. Co. v. Sup. Ct.*, 97 Cal. App. 4th 1282 (2002).

26  Whether a reasonable person would find the digestive health message material (it is the only

27  reason to purchase Align) is a class wide question that can be easily determined based on

28  P&G's voluminous market research and internal documents. However, for purposes of class

00072018

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1  certification, the Court need not determine if the digestive health advertising campaign was in

2  fact material, false or deceptive. *Johnson*, 275 F.R.D. at 289. Likewise, under Florida's

3  FDUTPA, causation is proven objectively and actual reliance is not required, merely a

4  showing that the practice would – in theory – deceive an objectively reasonable consumer.

5  *Fitzpatrick*, 635 F.3d at 1282.

6      Pages 41-42 summarize why Class members' injury presents a classwide issue. That

7  some consumers may believe Align worked for them does not contradict Plaintiffs' claims that

8  Class members have been deceived and Align has a significant placebo effect.

9  Notwithstanding placebo effects or customer satisfaction "[t]he efficacy claims would still be

10  misleading because the products are not inherently effective, their results instead being

11  attributable to the psychosomatic effect produced by the advertising and marketing of the

12  products." *Forcellati v. Hyland's, Inc.*, No. 12-1983, 2014 U.S. Dist. LEXIS 50600, at *30-31

13  (C.D. Cal. Apr. 9, 2014) (quoting *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1100 (9th Cir.

14  1994)). The predominate and classwide issue is whether Class members received the product

15  that was advertised.

16      Pages 43-48 discuss that determination of the proper remedies presents another

17  classwide issue. Aggregate damages or restitution are appropriate and readily calculable.

18  While the jury "may not render a verdict based on speculation or guesswork" the jury "may

19  make a just and reasonable estimate of the damages based on relevant data…[and] act upon

20  probable and inferential, as well as direct and positive proof." *Bigelow v. RKO Radio*

21  *Pictures, Inc.*, 327 U.S. 251, 264 (1946); *Broan Mfg. Co. v. Associated Distributors, Inc.*, 923

22  F.2d 1232, 1235-36 (6th Cir. 1991) (same). Here, P&G admittedly maintains granular

23  wholesale and retail sales data to which its aggregate liability can be tied. Further, Plaintiffs

24  are also entitled to full refunds as Align does not work as advertised and there is only one

25  reason for purchase (digestive health). A full refund measure of damages is appropriate where

26  the products in question have no intrinsic value other than the advertised use. *Khoday v.*

27  *Symantec Corp.*, No. 11-180, 2014 U.S. Dist. LEXIS 43315, at *102-05 (D. Minn. Mar. 31,

28  2014) (citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013)). Lastly, determining

BLOOD HURST & O'REARDON, LLP

1  individual damages or restitution awards does not defeat certification because this amount can

2  be reasonably calculated from the sales records of P&G, retailers, and companies like Nielsen.

3  P&G's interest is not in the amount a particular Class member may receive, but in the

4  aggregate amount awarded against it. *Hilao v. Estate of Marcos*, 103 F.3d 767, 786-87 (9th

5  Cir. 1996).

6  Section VIII (pages 48-50) discuss why P&G's superiority arguments are incorrect.

7  "Use of the class method is warranted particularly because class members are not likely to file

8  individual actions – the cost of litigation would dwarf any potential recovery." *In re*

9  *Whirlpool*, 722 F.3d at 861. Individual issues do not predominate. Further, P&G's argument

10  about confusion because of differing jury instructions is overblown. There are only seven

11  claims at issue for the Classes. This Court routinely instructs juries on as many claims.

12  Several of those claims (*e.g.*, California's UCL) are tried to the bench, not a jury. Further, the

13  evidence on the discrete claims is minimal and largely overlaps. The Court may also empanel

14  separate juries for the separate Classes or issue the two special instructions that P&G's

15  opposition suggests are necessary.

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

v

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

BLOOD HURST & O'REARDON, LLP

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 1

II. PLAINTIFFS SATISFY *DUKES* AND *COMCAST* ........................................ 5

III. THE TYPICALITY AND ADEQUACY PREREQUISITES ARE SATISFIED .......... 6

    A. Plaintiffs' Claims Are Typical ............................................................. 6

    B. Adequacy .............................................................................................. 7

        1. Plaintiffs Are Adequate Class Representatives ........................ 8

            a. Mr. Rikos Is an Adequate Class Representative .......... 8

            b. Ms. Burns Is an Adequate Class Representative ........ 10

            c. Mr. Jarzembowski Is an Adequate Class Representative ........... 11

        2. Proposed Class Counsel Satisfy the Adequacy Requirement ................. 11

IV. THE NUMEROSITY REQUIREMENT IS EASILY SATISFIED ............................. 13

V. THE CLASS IS NOT OVERBROAD OR UNASCERTAINABLE ............................ 13

    A. The Class Members Were Injured ....................................................... 14

    B. Article III Standing Does Not Defeat Class Certification ................... 16

    C. The Class Is Ascertainable ................................................................. 18

VI. THE COMMONALITY REQUIREMENT IS SATISFIED ........................................ 25

VII. THE PREDOMINANCE REQUIREMENT IS SATISFIED ...................................... 25

    A. The Message Conveyed Presents a Predominating Classwide Issue that Can Be Determined on a Classwide Basis ....................................................... 26

    B. The Veracity of the Digestive Health Message Can Be Adjudicated with Classwide Evidence ........................................................................... 30

    C. Reliance and Causation, to the Extent Required, Present Predominating Issues that Can Be Established with Classwide Evidence ................................. 31

        1. Reliance and Causation, Where Required, Does Not Defeat Predominance ........................................................................... 31

            a. The California CLRA .................................................. 31

            b. The North Carolina UDTPA ....................................... 32

            c. Breach of Express Warranty ....................................... 34

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

00072018

BLOOD HURST & O'REARDON, LLP

2.   Causation, Where Required, Does Not Preclude Certification ............. 34

a.   The Illinois ICFA ........................................................ 34

b.   The Florida FDUTPA ................................................. 35

c.   The New Hampshire CPA ............................................ 36

d.   The California UCL .................................................... 36

3.   The Classes Are Entitled to a Presumption of Classwide Reliance ............................................................................. 37

D.   Whether Consumers Were Injured Presents a Classwide Issue ........................ 41

E.   The Question of the Proper Remedies Present Classwide Issues ..................... 43

1.   Aggregate Monetary Relief Is Appropriate and Readily Calculable ............................................................................. 43

2.   Class Members Are Entitled to Full Refunds ....................................... 46

3.   Determining Individual Damages Awards Does Not Defeat Certification ............................................................................. 47

F.   California's Express Warranty Notice Requirement Does Not Present Individualized Issues ............................................................................. 48

VIII.   A CLASS ACTION IS MANAGABLE AND SUPERIOR TO OTHER METHODS OF ADJUDICATION ........................................................................ 49

IX.   CONCLUSION ........................................................................................ 50

00072018

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
No. 09-395, 2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July 18, 2013) .............................. 21

*Adams v. Albertson*,
No. 10-4787, 2012 U.S. Dist. LEXIS 50904 (N.D. Cal. Apr. 11, 2012) ............................ 40

*Akkerman v. Mecta Corp., Inc.*,
152 Cal. App. 4th 1094 (2007) .......................................................................................... 30

*United States ex rel. American Textile Mfrs. Inst. v. Limited*,
179 F.R.D. 541 (S.D. Ohio 1998) ........................................................................................ 8

*Amgen, Inc. v. Conn. Retirement Plans & Trust Funds*,
133 S. Ct. 1184 (2013) .................................................................................................... 2, 5

*Astiani v. Kashi Co.*,
291 F.R.D. 493 (S.D. Cal. 2013) ........................................................................................ 21

*Baker v. Home Depot USA, Inc.*,
No. 11-6768, 2013 U.S. Dist. LEXIS 9377 (N.D. Ill. Jan. 24, 2013) ................................ 35

*Bandow v. FDIC*,
No. 1:08-CV-02771, 2008 U.S. Dist. LEXIS 105656 (N.D. Ohio Dec. 22, 2008) ............ 23

*Beattie v. CenturyTel, Inc.*,
511 F.3d 554 (6th Cir. 2007) ........................................................................................ 7, 11

*Beer v. Bennett*,
160 N.H. 166 (2010) .......................................................................................................... 50

*Bigelow v. RKO Radio Pictures, Inc.*,
327 U.S. 251 (1946) ..................................................................................................... 44, 45

*Black v. Iovino*,
219 Ill. App. 3d 378 (1991) ............................................................................................... 44

*Boundas v. Abercrombie & Fitch Stores, Inc.*,
280 F.R.D. 408 (N.D. Ill. 2012) .................................................................................. 22, 24

*Broan Mfg. Co. v. Associated Distributors, Inc.*,
923 F.2d 1232 (6th Cir. 1991) ........................................................................................... 44

*Bruno v. Quten Research Inst., LLC*,
280 F.R.D. 524 (C.D. Cal. 2011) ....................................................................................... 16

*Bumpers v. Cmty. Bank of N. Va.*,
747 S.E.2d 220 (2013) ........................................................................................... 32, 33, 34

Case No. 1:11-cv-226-TSB
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

BLOOD HURST & O'REARDON, LLP

00072018

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013)................................................................................... 5, 25, 36

*Cabral v. Supple, LLC*,
No. 12-00085-MWF, 2013 U.S. Dist. LEXIS 184170 (C.D. Cal. Feb. 14, 2013)........ *passim*

*Cabral v. Supple*,
No. 12-00085-MWF, 2012 U.S. Dist. LEXIS 137365 (C.D. Cal. Sept. 19, 2012)............. 12

*Caldera v. J.M. Smucker Co.*,
No. 12-4936, 2014 U.S. Dist. LEXIS 53912 (C.D. Cal. Apr. 15, 2014) ...................... 46, 47

*Campion v. Old Republic Home Prot. Co.*,
272 F.R.D. 517 (S.D. Cal. 2011)................................................................................. 37, 42

*Carrera v. Bayer Corp.*,
727 F.3d 300 (3d Cir. 2013)................................................................................ 19, 20, 23

*Cartwright v. Viking Indus.*,
No. 07-2159, 2009 U.S. Dist. LEXIS 83286 (E.D. Cal. Sept. 11, 2009)............................ 48

*CE Design Ltd. v. King Architectural Metals, Inc.*,
637 F.3d 721 (7th Cir. 2011)........................................................................................... 9

*Cerdant, Inc. v. DHL Express (USA), Inc.*,
No. 2:08-cv-186, 2010 U.S. Dist. LEXIS 95087 (S.D. Ohio Aug. 25, 2010) .................... 19

*Chow v. Neutrogena Corp.*,
No. 12-04624, 2013 U.S. Dist. LEXIS 17670 (C.D. Cal. Jan. 22, 2013) .......................... 32

*Clark v. Experian Info. Solutions, Inc.*,
256 Fed. Appx. 818 (7th Cir. 2007) ............................................................................... 35

*Cohen v. DIRECTV, Inc.*,
178 Cal. App. 4th 966 (2009)........................................................................................ 37

*Colgan v. Leatherman Tool Group, Inc.*,
135 Cal. App. 4th 663 (2006)........................................................................................ 46

*In re Colonial Partnership Litig.*,
No. H-90-829, 1993 U.S. Dist. LEXIS 10884 (D. Conn. Feb. 10, 1993)............................ 9

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013) ........................................................................................... 5, 6, 43

*Committee on Children's Television, Inc. v. General Foods Corp.*,
35 Cal. 3d 197 (1983) ................................................................................................... 38

*Cortez v. Purolator Air Filtration Prods. Co.*,
23 Cal. 4th 163 (2000) .................................................................................................. 45

BLOOD HURST & O'REARDON, LLP

00072018                     PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

*Crawford v. Bell,*
  599 F.2d 890 (9th Cir. 1979) ............................................................................. 8

*Daar v. Yellow Cab,*
  67 Cal. 2d 695 ( 1967) ..................................................................................... 20

*Daffin v. Ford Motor Co.,*
  458 F.3d 549 (6th Cir. 2006) ........................................................................ 6, 42

*Davis v. Southern Bell Tel. & Tel. Co.,*
  No. 89-2839, 1993 U.S. Dist. LEXIS 20033 (S.D. Fla. Dec. 23, 1993) ............................ 47

*In re Deepwater Horizon,*
  739 F.3d 790 (5th Cir. 2014) ...................................................................... 16, 17

*Delarosa v. Boiron,*
  275 F.R.D. 582 (C.D. Cal. 2011) ......................................................................... 41

*DeliverMed Holdings, LLC v. Medicate Pharm., Inc.,*
  No. 10-684, 2012 U.S. Dist. LEXIS 12261 (S.D. Ill. Feb. 1, 2012) ............................... 49

*Duffey v. Pope,*
  No. 11-16, 2012 U.S. Dist. LEXIS 137469 (S.D. Ohio Sept. 25, 2012) ............................ 19

*Ebin v. Kangadis Food, Inc.,*
  No. 13-2311, 2014 U.S. Dist. LEXIS 25838 (S.D.N.Y. Feb. 24, 2014) granted ...................... 21

*In re Ferrero Litig.,*
  278 F.R.D. 552 (S.D. Cal.) ............................................................................... 29

*Fischer v. International Tel & Tel Corp.,*
  72 F.R.D. 170 (E.D.N.Y.1976) ............................................................................ 10

*Fitzpatrick v. General Mills, Inc.,*
  263 F.R.D. 687 (S.D. Fla. 2010) ................................................................... passim

*Fitzpatrick v. General Mills, Inc.,*
  635 F.3d 1279 (11th Cir. 2011) ................................................... 22, 33, 35, 38

*Fitzpatrick v. General Mills, Inc.,*
  No. 09-cv-60412 (S.D. Fla.) ............................................................................. 41

*Forcellati v. Hyland's, Inc.,*
  No. 12-1983, 2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014) ........................ passim

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
  528 U.S. 167 (2000) ..................................................................................... 17

*FTC v. Figgie Int'l,*
  994 F.2d 595 (9th Cir. 1993) ............................................................................ 47

BLOOD HURST & O'REARDON, LLP

00072018

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

*FTC v. Kuykendall*,
    371 F.3d 745 (10th Cir. 2004).............................................................................. 44

*FTC v. Pantron I Corp.*,
    33 F.3d 1088 (9th Cir. 1994)................................................................. 3, 4, 15, 42

*Galvan v. KDI Distribution Inc.*,
    No. 08-999, 2011 U.S. Dist. LEXIS 127602 (C.D. Cal. Oct. 25, 2011)............................. 23

*Gasperoni v. Metabolife*,
    No. 00-71255, 2000 U.S. Dist. LEXIS 20879 (E.D. Mich. Sept. 27, 2000)...................... 22

*Geernaert v. Mitchell*,
    31 Cal. App. 4th 601 (1995)................................................................................... 1

*Godec v. Bayer Corp.*,
    No. 10-224, 2011 U.S. Dist. LEXIS 131198 (N.D. Ohio Nov. 11, 2011) .................... 22, 31

*Gooch v. Life Investors Ins. Co. of Am.*,
    672 F.3d 402 (6th Cir. 2012).................................................................................. 9

*Guido v. L'Oreal, USA, Inc.*,
    284 F.R.D. 468 (C.D. Cal. 2012) ......................................................................... 37

*Hair Excitement, Inc. v. L'Oreal U.S.A., Inc.*,
    158 N.H. 363 (2008) ........................................................................................... 49

*Hale v. Enerco Group, Inc.*,
    288 F.R.D. 139 (N.D. Ohio 2012) ....................................................................... 30

*Hauter v. Zogarts*,
    14 Cal. 3d 104 (1975) ......................................................................................... 34

*Henderson v. Demars*,
    No. 11-80589, 2013 U.S. Dist. LEXIS 38564 (S.D. Fla. Mar. 20, 2013).................... 49

*Henderson v. Gruma Corp.*,
    No. 10-04173, 2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) ................... 12

*Henderson v. United States Fid. & Guar. Co.*,
    488 S.E.2d 234 (1997) ........................................................................................ 32

*Hilao v. Estate of Marcos*,
    103 F.3d 767 (9th Cir. 1996).......................................................................... 24, 47

*Hodge v. Superior Court*,
    145 Cal. App. 4th 278 (2006).............................................................................. 49

*Horvath v. LG Elecs. MobileComm U.S.A., Inc.*,
    No. 11-1576, 2012 U.S. Dist. LEXIS 19215 (S.D. Cal. Feb. 13, 2012) ..................... 34

BLOOD HURST & O'REARDON, LLP

00072018

xi

No. 1:11-cv-226-TSB

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

*Hutson v. Rexall Sundown, Inc.*,
  837 So. 2d 1090 (Fla. Ct. 4th Dist. App. 2003) ................................................... 6

*Jackshaw Pontiac, Inc. v. Cleveland Press Publishing Co.*,
  102 F.R.D. 183 (N.D. Ohio 1984) ..................................................................... 12

*Jacobs v. Physicians Weight Loss Ctr. of Am., Inc.*,
  173 N.C. App. 663 (2005).................................................................................. 33

*Johns v. Bayer Corp.*,
  280 F.R.D. 551 (S.D. Cal. 2012)........................................................... 17, 18, 30

*Johnson v. General Mills, Inc.*,
  275 F.R.D. 282 (C.D. Cal. 2011) ................................................................*passim*

*Johnson v. General Mills, Inc.*,
  276 F.R.D. 579 (C.D. Cal. 2011) ....................................................................... 32

*Jordan v. Global Natural Resources, Inc.*,
  102 F.R.D. 45 (S.D. Ohio 1984) ........................................................................ 23

*Karhu v. Vital Pharm., Inc.*,
  No. 13-60768, 2014 U.S. Dist. LEXIS 26756 (S.D. Fla. Mar. 3, 2014)............... 19

*Keegan v. Am. Honda Motor Co.*,
  284 F.R.D. 504 (C.D. Cal. 2012) ................................................................. 49, 50

*Keith v. Buchanan*,
  173 Cal. App. 3d 13 (1985)................................................................................ 34

*Kendrick v. Std. Fire Ins. Co.*,
  No. 06-141, 2012 U.S. Dist. LEXIS 135694 (E.D. Ky. Sept. 30, 2010) ............. 16

*Khoday v. Symantec Corp.*,
  No. 11-180, 2014 U.S. Dist. LEXIS 43315 (D. Minn. Mar. 31, 2014) ............... 47

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004)..................................................................... 24, 48

*Kurczi v. Eli Lilly Co.*,
  160 F.R.D. 667 (N.D. Ohio 1995) ..................................................................... 12

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ...................................................................................... 27

*Lackowski v. Twinlab Corp.*,
  No. 00-75058, 2001 U.S. Dist. LEXIS 25634 (E.D. Mich. Dec. 28, 2001)......... 22

*Lanovaz v. Twinings N. Am., Inc.*,
  No. 12-2646, 2014 U.S. Dist. LEXIS 1639 (N.D. Cal. Jan. 6, 2014) ................. 12

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

00072018

*Lawrence v. Philip Morris USA, Inc.*,
    164 N.H. 93 (2012) ........................................................................................................ 42

*Lewis v. Goldsmith*,
    95 F.R.D. 15 (D.N.J. 1982) .......................................................................................... 10

*Loreto v. P&G*,
    No. 09-815, 2013 U.S. Dist. LEXIS 162752 (S.D. Ohio Nov. 15, 2013) ..................... 17

*Lou v. Ma Labs., Inc.*,
    No. 12-05409, 2014 U.S. Dist. LEXIS 2665 (N.D. Cal. Jan. 8, 2014) ........................ 12

*Majdipour v. Jaguar Land Rover N. Am., LLC*,
    No. 12-7849, 2013 U.S. Dist. LEXIS 146209 (D.N.J. Oct. 9, 2013) ............................ 34

*Malchman v. Davis*,
    761 F.2d 893 (2d Cir. 1985) *cert. denied,* 106 S. Ct. 1798 (1986) .............................. 10

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012) ......................................................................................... 24

*Martinez v. Rick Case Cards, Inc.*,
    278 F. Supp. 2d 1371 (S.D. Fla. 2003) ........................................................................ 46

*Mass Mut. Life Ins. Co. v. Sup. Ct.*,
    97 Cal. App. 4th 1282 (2002) ...................................................................................... 31

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ........................................................................................ 18

*McCrary v. Elations Co., LLC*,
    No. 13-00242, 2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) ............... *passim*

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008) ......................................................................................... 43

*McManus v. Sturm Foods, Inc.*,
    292 F.R.D. 606 (S.D. Ill. 2013) ................................................................................... 33

*McNeil v. Guthrie*,
    945 F.2d 1163 (10th Cir. 1991) ...................................................................................... 8

*In re Milo's Kitchen Dog Treats*,
    No. 12-1011, 2014 U.S. Dist. LEXIS 39195 (W.D. Pa. Feb. 11, 2014) ....................... 32

*Minkler v. Kramer Labs., Inc.*,
    No. 12-9241, 2013 U.S. Dist. LEXIS 90651 (C.D. Cal. Mar. 1, 2013) ........................ 30

*Mirfashi v. Fleet Mortg. Corp.*,
    356 F.3d 781 (7th Cir. 2004) ........................................................................................ 23

BLOOD HURST & O'REARDON, LLP

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

00072018

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Moheb v. Nutramax Labs., Inc.*,
   No. 12-3633, 2012 U.S. Dist. LEXIS 167330 (C.D. Cal. Sept. 4, 2012)............................. 30

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ......................................................................................................... 23

*Mulligan v. Choice Mortg. Corp. USA*,
   No. 96-596, 1998 U.S. Dist. LEXIS 13248 (D.N.H. Aug. 11, 1998) ................................. 36

*Nelson v. Mead Johnson Nutrition Co.*,
   270 F.R.D. 689 (S.D. Fla. 2010) ............................................................................. 30, 35, 36

*O'Shea v. Epson Am., Inc.*,
   No. 09-8063, 2011 U.S. Dist. LEXIS 105504 (C.D. Cal. Sept. 19, 2011).......................... 17

*Oshana v. Coca-Cola Co.*,
   472 F.3d 506 (7th Cir. 2006).............................................................................................. 7

*Pagan v. Abbott Labs., Inc.*,
   287 F.R.D. 139 (E.D.N.Y. 2012) ...................................................................................... 36

*Pfaff v. Whole Foods Mkt. Group, Inc.*,
   No. 1:09-cv-02954, 2010 U.S. Dist. LEXIS 104784 (N.D. Ohio Sept. 29, 2010)......... 13, 22

*Phillips v. Philip Morris Cos.*,
   No. 10-1741, 2014 U.S. Dist. LEXIS 25980 (N.D. Ohio Feb. 28, 2014) ............................ 42

*In re POM Wonderful LLC*,
   No. 10-ML-2199, 2014 U.S. Dist. LEXIS 40415 (C.D. Cal. Mar. 25, 2014)................. 46, 47

*Powers v. Hamilton Cnty. Public Defender Comm'n*,
   501 F.3d 592 (6th Cir. 2007)............................................................................................. 25

*Ramos v. Philip Morris Cos., Inc.*,
   743 So. 2d 24 (Fla. Dist. Ct. App. 1999) ........................................................................... 24

*Ries v. Arizona Beverage USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) ................................................................................. 12, 21

*Rivera v. Bowen*,
   664 F. Supp. 708 (S.D.N.Y. 1987)....................................................................................... 8

*Romberio v. UNUMprovident Corp.*,
   385 Fed. Appx. 423 (6th Cir. 2009).................................................................................... 19

*S37 Mgmt. v. Advance Refrigeration Co.*,
   961 N.E.2d 6 (Ill. App. Ct. 2011)....................................................................................... 35

*In re Scrap Metal Antitrust Litig.*,
   527 F.3d 517 (6th Cir. 2008).............................................................................................. 44

No. 1:11-cv-226-TSB
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

00072018

BLOOD HURST & O'REARDON, LLP

*In re Sears, Roebuck & Co. Tools Marketing & Sales Practices Litig.*,
   MDL 1703, 2012 U.S. Dist. LEXIS 39561 (N.D. Ill. Mar. 22, 2012) ................................. 36

*Stanich v. Travelers Indem. Co.*,
   259 F.R.D. 294 (N.D. Ohio 2009) ....................................................................................... 8

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011)...................................................................................*passim*

*Stewart v. Cheek & Zeehandelar, LLP*,
   252 F.R.D. 387 (S.D. Ohio 2008) ..................................................................................... 19

*Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*,
   174 N.C. App. 49 (2005)............................................................................................ 33, 44

*Sutton v. St. Jude Med. S.C., Inc.*,
   419 F.3d 568 (6th Cir. 2005).............................................................................................. 16

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ..................................................................................... 27, 33, 37, 38

*Toback v. GNC Holdings, Inc.*,
   No. 13-80526, 2013 U.S. Dist. LEXIS 131135 (S.D. Fla. Sept. 13, 2013) ....................... 35

*Vasquez v. Superior Court*,
   4 Cal. 3d 800 (1971) .................................................................................................... 27, 31

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)............................................................................................... 24

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ................................................................................................... 5, 31

*Walker v. Fleetwood Homes of N.C., Inc.*,
   362 N.C. 63 (2007) ............................................................................................................ 33

*Weiner v. Snapple Bev. Corp.*,
   No. 07-8742, 2010 U.S. Dist. LEXIS 79647 (S.D.N.Y. Aug. 5, 2010) ............................. 21

*Weinstat v. Dentsply Int'l, Inc.*,
   180 Cal. App. 4th 1213 (2010)........................................................................................... 34

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013)....................................................................................*passim*

*Wiener v. Dannon Co.*,
   255 F.R.D. 658 (C.D. Cal. 2009) ......................................................................... 18, 34, 41, 48

*Wiener v. The Dannon Co., Inc.*,
   No. 08-cv-415 (C.D. Cal.).................................................................................................. 41

No. 1:11-cv-226-TSB

00072018

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

BLOOD HURST & O'REARDON, LLP

*Wolin v. Jaguar Land Rover North Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010)............................................................................ 42

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012)........................................................................*passim*

*Zeisel v. Diamond Foods, Inc.*,
    No. 10-1192, 2011 U.S. Dist. LEXIS 60608 (N.D. Cal. June 7, 2011) .............. 21

**Statutes and Rules**

815 ILCS 505/10a ...................................................................................... 45, 46

Cal. Bus. & Prof. Code §17203 .......................................................................... 45

Cal. Civ. Code §1780(a)(3) ................................................................................. 45

Cal. Civ. Code §1780(a)(5) ................................................................................. 46

Fla. Stat. §501.211 ............................................................................................. 45

G.S. §75-1.1 ................................................................................................. 32, 33

Fed. R. Civ. P. 15(a)(2) ........................................................................................ 8

Fed. R. Civ. P. 23 .......................................................................... 5, 18, 22, 49

Fed. R. Civ. P. 23(a)(2) ....................................................................................... 25

Fed. R. Civ. P. 23(b)(3) ....................................................................................... 25

**Other Authorities**

37 Am. Jur. 2d, Fraud and Deceit §190 (1968) ................................................... 1

5 *Moore's Federal Practice* §23.21[1] (3d ed. 1997) ........................................ 18

Alba Conte & Herbert B. Newberg, *3 Newberg on Class Actions*, (4th ed. 2002)........ 18, 24, 49

*Manual for Complex Litigation* §21.222 (4th ed. 2004) ......................................... 18

Restatement (Second), Torts §534 (1977) ............................................................. 2

00072018

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

1  Plaintiffs respectfully submit this reply in support of their motion for class certification
2  of claims asserted against Procter and Gamble, Inc. ("P&G" or "defendant").

3  **I.  INTRODUCTION**

4  After all of the briefing, there remain two primary issues to be tried: what does P&G
5  claim Align does, and does Align do what P&G claims?  If these questions can be determined
6  at a class trial, then this action should be certified as a class action.  The large volume of
7  evidence from both sides demonstrates that the answer is yes.  Tellingly, P&G does not
8  contend that Align is advertised to do a variety of different things or that consumers believe
9  Align does a variety of different things.  In fact, it does not contend, let alone offer evidence,
10  that a single Class member purchased Align for any reason other than its stated purpose: to
11  improve digestive health.  Rather, P&G asserts that while the message is the same, the
12  messenger varies.  Despite the source, albeit the label (which all purchasers see), television
13  commercials, radio ads, magazine and Internet ads, through word-of-mouth promoted by
14  P&G's social media advertising, from doctors educated by P&G about Align or from a
15  combination of these sources, the message is the same.  And it is the same carefully crafted,
16  finely honed message created and promulgated by P&G.

17  Throughout its opposition, P&G repeats the mantra that "[s]ubstantial numbers of
18  consumers became aware of and purchased Align based on sources of information unrelated to
19  the advertising at issue." (*See, e.g.*, Opp. at 2).  But the uncontroverted evidence is that all of
20  these purchase decisions resulted from P&G's sophisticated, multi-layered and "holistic"
21  marketing plan, which included causing others to repeat P&G's advertising message.  And
22  P&G's marketing plan worked exactly as P&G planned.  One does not escape liability because
23  it caused others to repeat an untrue statement.  *Geernaert v. Mitchell*, 31 Cal. App. 4th 601,
24  605 (1995)[1] ("defendant will not escape liability if he makes a misrepresentation to one person
25  *intending* that it be repeated and acted upon by the plaintiff"); 37 Am. Jur. 2d, Fraud and
26  Deceit §190 (1968) ("It has been repeatedly held that where a party makes false

27
28  _____
   [1]  Internal quotes and citations omitted and emphasis in original unless otherwise specified.

BLOOD HURST & O'REARDON, LLP

representations to another with the intent or knowledge that they be exhibited or repeated to a third party for the purpose of deceiving him, the third party, if so deceived to his injury, can maintain an action in tort against the party making the false statements…"); 3 Restatement (Second), Torts §534 (1977) ("one who makes a fraudulent misrepresentation intending or with reason to expect that more than one person or class of persons will be induced to rely on it . . . is subject to liability for pecuniary loss to any one such persons justifiably relying upon the misrepresentation"). Likewise, the fact that physicians believed P&G's advertising claims does not mean that the message varied, but that P&G's marketing efforts were convincing – a fact that compels, rather than defeats certification.

As for whether Align does what P&G claims, both parties agree that this issue can be determined on a generalized, classwide basis like any other issue of science. That is why both parties rely on scientific studies to argue their case. In fact, the parties generally rely on the same body of scientific studies. Dr. Merenstein also agrees that the question of whether Align does what P&G claims it does can be determined on a classwide basis. Ex. 1 (Merenstein Depo.) at 226:3-10 (██████████████████████████████████████

████████████████████████████████        ████████████    ████

████████████████[2] While P&G proclaims that the science demonstrates that Align works, in reality, all of the science demonstrates that it does not work. There have been only a few studies with patient-oriented outcomes (*i.e.*, impact on constipation or diarrhea), potential, positive for P&G. But for many reasons, those few studies are deeply flawed. Not a single study result has been repeated, demonstrating that the outcome for the particular study was mere chance. Instead, study after study (even those conducted by P&G) has demonstrated that Align does not work. But resolution of this question is left for another day. *Amgen, Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013).

---

[2]     Unless otherwise noted, all references to "Ex." and "Exs." are to the Declaration of Thomas J. O'Reardon II in Support of Plaintiffs' Motion for Class Certification, filed concurrently ("O'Reardon Declaration").

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

BLOOD HURST & O'REARDON, LLP

Perhaps because of what the science reveals, P&G relies heavily on the placebo effect of probiotics in an attempt to defeat certification. The argument is that Align may be a fraud, but if people believe it, then there is no harm. Not surprisingly, the law is to the contrary. *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1100 (9th Cir. 1994) ("Where, as here, a product's effectiveness arises solely as a result of the placebo effect, a representation that the product is effective constitutes a 'false advertisement' even though some consumers may experience positive results."). P&G does not escape liability because probiotics have a particularly strong placebo effect or that P&G is particularly adept at perpetrating a false advertising message. Even P&G's expert agrees that a placebo effect does not mean the ingredient, here a "probiotic," is effective. Ex. 1 (Merenstein Depo.) at 86:20-87:5.

P&G's other arguments, which boil down to three, fare no better. P&G argues that reliance or, depending on the claim, causation cannot be proven on a classwide basis. In so doing, P&G ignores the fact that some of the claims do not have such a requirement and, for those that do, applies the wrong legal standards for establishing reliance or causation on a classwide basis. The claims alleged are consumer fraud claims intended to be brought as class actions. The California Consumers Legal Remedies Act, for example, contains the standards for class certification for all California class actions in the statute, itself.

P&G also glosses over the facts of this case, which make this action particularly well-suited for class treatment. For example, in every probiotic food or supplement false advertising case, the sophisticated marketing companies like General Mills or Dannon delivered their advertising message through multiple sources, including word-of-mouth and physicians. However, unlike here, each of those products could have been purchased for a variety of reasons in addition to the advertised probiotic health benefit. For example, a consumer could have purchased Dannon's Activia yogurt because he or she liked the taste of Activia. Here, regardless of the source of P&G's advertising message, the only reason to purchase Align is for the advertised digestive health benefits. Align has no other purpose. *Compare, e.g.*, *Fitzpatrick v. General Mills, Inc.*, 263 F.R.D. 687, 697 (S.D. Fla. 2010) ("The Court is not convinced that the bulk of Florida consumers – particularly those that decided to

00071957

BLOOD HURST & O'REARDON, LLP

1  buy Yo-Plus…are so inattentive or simple-minded, especially after repeated exposure, to fail

2  to absorb the prominent digestive health message common to General Mills' Yo-Plus

3  advertisements."); *Cabral v. Supple, LLC*, No. 12-00085-MWF, 2013 U.S. Dist. LEXIS

4  184170, at *15 (C.D. Cal. Feb. 14, 2013) ("Common sense dictates that the alleged

5  misrepresentation (practically speaking, that the Beverage would do what it was advertised to

6  do) would be material to not only the reasonable purchaser but every purchaser.").

7      Next, relying on inadmissible consumer testimonials, P&G argues that whether absent

8  Class members were injured requires an individual inquiry because certain consumers stated

9  they were happy with or benefitted from Align. While placebo effects from probiotic products

10  are well-documented, their existence does not make Align's advertising truthful and does not

11  relieve P&G of liability. *Pantron*, 33 F.3d at 1100. Further, Plaintiffs seek judgment in a

12  lump sum on behalf of the Class, which is a juridical entity. P&G is free to present evidence

13  that the sum should be less than requested based on relevant evidence and defenses. The

14  allocation of that lump sum among Class members is a post-judgment matter in which P&G

15  has little or no interest.

16      P&G further argues that the Class is not ascertainable because Class members do not

17  keep receipts. That is not ascertainability. If it were, small-value consumer claims would

18  never be capable of certification. A class is ascertainable if it is defined so that class

19  membership can be determined by reference to objective criteria. *Young v. Nationwide Mut.*

20  *Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012). This Class is ascertainable because only those

21  people who purchase Align are members of the Class. A purchase is an objective act, not

22  subjective.

23      Finally, P&G argues that trial would be unmanageable because some of the laws of the

24  five states at issue have reliance or causation requirements, one has a knowledge or intent

25  requirement, and some have scienter requirements. Absent extraordinary circumstances, not

26  present here, manageability problems should not defeat certification. First, the parties are not

27  entitled to a jury trial on several of the claims. Second, juries frequently decide cases with

28  multiple causes of action that have different requirements. This case is not particularly

BLOOD HURST & O'REARDON, LLP

1  complex, and many of the issues P&G raises are not seriously contested. For example, some

2  consumer protection statutes require an intent to sell the product. P&G cannot seriously

3  contend it did not intend to sell Align. Finally, a court has many trial tools available to govern

4  the presentation of evidence, including trying the different state classes separately.

5      Plaintiffs' motion should be granted.

6  **II.    PLAINTIFFS SATISFY *DUKES* AND *COMCAST***

7      In its summary and throughout its opposition, P&G offers interpretations of *Wal-Mart*

8  *Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) and *Comcast Corp. v. Behrend*, 133 S. Ct. 1426

9  (2013), that have been flatly rejected by the Sixth Circuit and other courts. *Dukes*, a Fed. R. of

10  Civil Proc. 23(b)(2) action where the U.S. Supreme Court decertified "one of the most

11  expansive class actions ever," and *Comcast*, an antitrust suit where the Supreme Court held

12  that a class cannot be certified where there are entire groups of class members where no

13  damage theory would apply, do not alter the class certification analysis in this case. Following

14  *Dukes* and *Comcast*, the Supreme Court issued *Amgen*, 133 S. Ct. 1184, another opinion

15  addressing class certification issues, which P&G neglects to cite. As the Sixth Circuit stated,

16  these opinions "now clarify that some inquiry into the merits may be necessary to decide if the

17  Rule 23 prerequisites are met. *Amgen*, however, admonishes district courts to consider at the

18  class certification stage only those matters relevant to deciding if the prerequisites of Rule 23

19  are satisfied." *In re Whirlpool*, 722 F.3d at 851. It remains true that "a merits inquiry is not

20  *required* to decide class certification." *Id.* at 852.

21      Another Circuit opinion post-*Walmart* and *Comcast* decision reaffirmed that

22  "predominance is [not] determined simply by counting noses." *Butler v. Sears, Roebuck &*

23  *Co.*, 727 F.3d 796, 801 (7th Cir. 2013). "An issue 'central to the validity of each one of the

24  claims' in a class action, if it can be resolved 'in one stroke,' can justify class treatment." *Id.*

25  (quoting *Dukes*, 131 S. Ct. at 2551). Based on substantial evidence, Plaintiffs have

26  demonstrated that the predominating issues – whether P&G promised digestive health benefits

27  and whether those promises were true – can be resolved in one stroke. *Butler*, 727 F.3d at 801

28  ("There is a single, central, common issue of liability: whether the Sears washing machine was

BLOOD HURST & O'REARDON, LLP

00071957

1    defective."), and 800 ("In contrast [to plaintiffs' failure to base damages on the challenged

2    conduct in *Comcast*], any buyer of a Kenmore washing machine who experienced a mold

3    problem was harmed by a breach of warranty alleged in the complaint.").

4    **III.    THE TYPICALITY AND ADEQUACY PREREQUISITES ARE SATISFIED**

5            **A.    Plaintiffs' Claims Are Typical**

6            Typicality is satisfied because the claims of Plaintiffs and the Class arise from the same

7    alleged common practice of falsely advertising the digestive health benefits of Align. *Daffin v.*

8    *Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006). In arguing that the typicality requirement

9    is not met, P&G repeats the factual argument it makes throughout its Opposition – that there

10   may be members of the Class "who are satisfied and received benefits from the products."

11   (Opp. at 50). First, the question is not whether one who does not yet know he or she has been

12   defraud is satisfied, but whether the purchaser received the product that was advertised.

13   Whether Align does what P&G promised is the predominant classwide issue to be adjudicated.

14   Here, anyone who bought Align has the same claim and has suffered the same injury if Align

15   does not provide the promised benefit. *See* §§V.A, VII.D, below.

16           P&G relies on *Hutson v. Rexall Sundown, Inc.*, 837 So. 2d 1090, 1093 (Fla. Ct. 4th

17   Dist. App. 2003). In *Hutson*, plaintiff alleged that Rexall violated the Florida Deceptive and

18   Unfair Trade Practices Act ("FDUPTA") when it sold vitamin supplements called "Calcium

19   900" and "Calcium 1200." Plaintiff contended that a consumer would be lead to believe that

20   each capsule would contain either 900 or 1200 milligrams of calcium. However, the labels on

21   the supplements clearly stated the amount of calcium each capsule contained (300 or 600,

22   respectively). *Id.* at 1091. The court found that if a consumer read the label, he or she would

23   have known the amount of calcium per capsule and would not have been defrauded or suffered

24   damages. As a result, the proposed class representative's claims would not be typical of the

25   claims of those who read the label. *Id.* at 1092-93. The court found that the plaintiff also was

26   not adequate to represent purchasers of the Calcium 1200 product, because he did not purchase

27   that product. *Id.* at 1093. Here, the labels contain the same false message as P&G's other

28   advertising and there is only one product at issue.

BLOOD HURST & O'REARDON, LLP

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

1   P&G also relies on *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006), which is

2   similarly distinguishable.  Plaintiff in *Oshana* alleged that Coca-Cola failed to disclose to

3   consumers that Diet Coke from a soda fountain did not contain the same artificial sweetener as

4   bottled Diet Coke.  The *Oshana* court found based on the evidence presented that the class

5   would include millions who were not deceived because the class would include "people who

6   knew fountain Diet Coke contained saccharin and bought it anyway." *Id.* at 514.  Here, this is

7   not an omissions case, but a misrepresentation case where P&G made affirmative deceptive

8   statements about Align.  P&G has not produced any evidence that any consumer knew Align

9   did not work, but bought it anyway.

10  Second, P&G argues that many Class members indirectly received P&G's advertising

11  message in deciding to purchase Align, but Plaintiffs received the message directly from the

12  labels, so the Plaintiffs' claims are not typical of those of the Class.  The evidence is

13  uncontroverted that all Class members purchased because they believed Align would promote

14  digestive health, regardless of the how they received the message.  How one received the false

15  message is not relevant to the claim.  P&G fails to refute that Class members' claims are

16  "fairly encompassed by the named plaintiffs' claims." *In re Whirlpool*, 722 F.3d at 852

17  (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)).

18  **B.   Adequacy**

19  Adequacy of representation is a narrow prerequisite that examines "whether class

20  counsel are qualified, experienced and generally able to conduct the litigation, and [] whether

21  the class members have interests that are not antagonistic to one another." *Beattie v.*

22  *CenturyTel, Inc.*, 511 F.3d 554, 562-63 (6th Cir. 2007).  In trying to make something from

23  nothing, P&G fails to raise any actual conflict between the proposed Class Representatives and

24  the Class.  It attacks the Plaintiffs for minor or non-existent issues.  It attacks proposed Class

25  Counsel for pursuing the injunctive relief portion of the California CLRA and UCL claim in

26  state court after P&G successfully asked this Court to dismiss those remedies for lack of

27  Article III standing, which does not create a conflict, but demonstrates their commitment to the

28  litigation.

BLOOD HURST & O'REARDON, LLP

1    **1.    Plaintiffs Are Adequate Class Representatives[3]**

2        **a.    Mr. Rikos Is an Adequate Class Representative**

3        P&G claims that Mr. Rikos has an irreconcilable conflict of interest with the Class

4    because he filed an action for injunctive relief after P&G successfully moved to sever his

5    request for injunctive relief for lack of Article III standing.  (Opp. at 52-53; *see also* Dkt. 28 at

6    12-13 (order on Motion to Dismiss)).  P&G fails to cite any case law holding that a conflict

7    arises if the class representative seeks injunctive relief on behalf of the class he represents.

8    The very notion of it is absurd.  P&G would not be making this argument if the prayer for

9    injunctive relief under the CLRA and UCL were still in this case.  The best P&G can do is cite

10   to a case where the proposed class representative filed a class action and a separate action

11   seeking only individual relief, which is plainly not the situation here.  By pursuing the

12   injunctive relief remedies in state court, Mr. Rikos is protecting the interests of absent class

13   members who, without injunctive relief and corrective advertising, would not receive the full

14   relief to which they are entitled under the statutes.  *See Crawford v. Bell,* 599 F.2d 890 (9th

15   Cir. 1979); *accord, McNeil v. Guthrie,* 945 F.2d 1163, 1166 n.4 (10th Cir. 1991) ("class

16   members may bring individual actions for equitable relief when their claims are not being

17   litigated within the boundaries of the class action"); *Rivera v. Bowen,* 664 F. Supp. 708, 710

18   (S.D.N.Y. 1987) ("it would be improper to foreclose the parties from pursuing separate claims

19   where such claims are not encompassed and litigable within the original action," citing

20   *Crawford*).  There simply is no conflict.

21       Moreover, Mr. Rikos has clearly demonstrated his willingness to vigorously pursue this

22   action.  He has responded to written discovery, had his medical records poured over by

23   strangers even though he makes no claim for personal injury, and sat for an all-day deposition

24   covering almost every bowel movement and stomach condition he has had since 2009.  Mr.

25   Rikos' interrogatory responses were the result of confusion on the part of Mr. Rikos (he did

26

27   _____

[3]      Should any proposed Class Representative be found inadequate, Plaintiffs request leave
28   to substitute another member of the Class to act as the class representative.  Fed. R. Civ. P.
     15(a)(2); *United States ex rel. American Textile Mfrs. Inst. v. Limited*, 179 F.R.D. 541, 550
     (S.D. Ohio 1998); *Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 318 (N.D. Ohio 2009).

BLOOD HURST & O'REARDON, LLP

not remember prior lawsuits he was involved with (some of them from over 20 years ago)) and counsel's error in not listing another similar class action – an error that was harmless because P&G's counsel was fully aware of it and discussed it with Plaintiffs' counsel. Further, the interrogatory responses were timely corrected with supplemental responses.

P&G's credibility arguments are overstated and legally unavailing. "Only when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate." *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 431 (6th Cir. 2012) (finding the plaintiff adequate despite many "dubious" statements and omissions in that plaintiff's deposition testimony); *In re Colonial Partnership Litig.,* No. H-90-829, 1993 U.S. Dist. LEXIS 10884, at *19-21 (D. Conn. Feb. 10, 1993). The standard for finding a person inadequate because of a lack of credibility is a high one:

> [F]ew plaintiffs come to court with halos above their heads; fewer still escape with those halos untarnished. For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims.

*CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011).

Here, P&G gripes most about Mr. Rikos' failure to recall information or to turn over documents concerning other lawsuits he has been a part of including one from 1992, as well as his wife's 1995 bankruptcy petition in which he was listed as a co-debtor. *See* Ex. 2 (Rikos Depo.) at 282:15-283:12, 298:2-301:14. When these issues came up in his deposition, Mr. Rikos candidly admitted that he had made a "mistake," that he had forgotten about these other cases (which related to his business and have nothing to do with the claims in *this* case) and that his discovery responses "should be corrected." *Id.* at 296:2-297:5.[4] Mr. Rikos then promptly corrected them. Defendant's Ex. 36 at 10. P&G does not explain how these

---

[4] Notably, some of the other cases Mr. Rikos was a part of were filed *after* Mr. Rikos had provided his original discovery response and, thus, do not present a credibility issue at all.

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

00071957

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1    omissions "severely" undermine Mr. Rikos' credibility such that they will "jeopardize the

2    interests" of members of the Class.

3         The issue regarding the signed verifications is also a red herring. It is true that Mr.

4    Rikos had his son – only *after* reviewing the attached responses to satisfy himself as to their

5    veracity, and only *after* giving full authority – sign discovery response verifications on his

6    behalf. This was not proper, but Mr. Rikos did that hoping to better fulfill his duties as a class

7    representative by promptly returning the verifications to his lawyers, not to shirk them. Ex. 2

8    (Rikos Depo.) at 332:3-15; 333:16-337:11. Proposed Class Counsel did not know what

9    occurred. O'Reardon Decl., ¶3. Once it became known, Mr. Rikos provided new verifications

10   re-attesting to the original information. Defendant's Ex. 36 at 10. Given the circumstances,

11   including his years of service to this case, Mr. Rikos is an adequate class representative.

12                        **b.        Ms. Burns Is an Adequate Class Representative**

13        P&G next makes a byzantine attack on Ms. Burns. (Opp. at 59-61). Ms. Burns'

14   partner – to whom she is not married – works in the support staff at Morgan & Morgan. Ms.

15   Burn's partner's sister and sister's husband also are non-legal employees at Morgan &

16   Morgan. These attenuated relationships form the basis of P&G's argument against Ms. Burns.

17   An issue arises in this context when the class representative has a financial interest in the

18   outcome of the action beyond being a member of the class, such as when the class

19   representative is a partner in the law firm that is counsel of record. Ms. Burns, or even her

20   partner or partner's sister or partner's brother-in-law, are not lawyers, are not partners at

21   Morgan & Morgan and have no financial interest in any potential award of attorneys' fees. Ex.

22   3 (Burns Depo.) at 9:4-14, 12:5-6, 12:16-22, 83:14-21. *Cf. Fischer v. International Tel & Tel

23   Corp.,* 72 F.R.D. 170 (E.D.N.Y.1976) (plaintiff adequate even though class counsel is his son

24   where there was no indication that the plaintiff would have any financial interest in any fee

25   recovered by son); *Malchman v. Davis,* 761 F.2d 893 (2d Cir. 1985) *cert. denied,* 106 S. Ct.

26   1798 (1986) (plaintiffs who are brothers of class counsel, sister of chauffeur of class counsel,

27   mother-in-law of class counsel are adequate where depositions revealed that the plaintiffs were

28   "zealous" class representatives); *Lewis v. Goldsmith,* 95 F.R.D. 15 (D.N.J. 1982) (nephew of

00071957

class counsel adequate).  Consumers who know people who work at law firms have as much of a right to access the courts through class actions as anyone else.  In fact, in cases like this, where a sophisticated fraud is ongoing and the public is fooled by the defendant's misrepresentations, other than people with some connection to a firm specializing in consumer fraud, few members of the public would know the truth.

### c.    Mr. Jarzembowski Is an Adequate Class Representative

P&G makes a similar attack against Mr. Jarzembowski.  (Opp. at 61-63).  Mr. Jarzembowski's girlfriend is a part time member of a cleaning crew who works a couple of hours a day cleaning the office of the O'Brien Law Firm.  Neither Mr. Jarzembowski nor his girlfriend is a lawyer. Ex. 4 (Jarzembowski Depo.) at 65:3-66:5.  Neither Mr. Jarzembowski nor his girlfriend is related in any way to counsel.  They do not so much as socialize with counsel.  *Id.* at 113:13-114:2.

Mr. Jarzembowski's girlfriend simply overheard counsel talking about Align – which she knew her boyfriend had taken.  On her own, she mentioned it to Mr. Jarzembowski.  *Id.* at 67:2-68:2.  Mr. Jarzembowski's girlfriend has no financial interest in the outcome of this lawsuit.  *Id.* at 112:21-113:12.  Mr. Jarzembowski is an adequate class representative.

### 2.    Proposed Class Counsel Satisfy the Adequacy Requirement

For class counsel, the adequacy requirement is met if they "are qualified, experienced and generally able to conduct the litigation."  *Beattie*, 511 F.3d at 562-63.  P&G does not argue that proposed Class Counsel do not meet these criteria.  Instead, it argues they have created a conflict of interest by filing an injunctive-relief only action against P&G on behalf of Plaintiff Rikos.  (Opp. at 63-64).

Class Counsel filed the California state court action in order to protect the interest of the California Class, and then only after the Court granted P&G's motion to dismiss the California injunctive relief claims for lack of Article III standing.  (Dkt. 28 at 12-13).  P&G argued that Plaintiff Rikos lacked Article III standing because he cannot allege a threat of future injury to himself since he now knows of P&G's fraud.  (*Id.* at 12).  This Court admittedly "grapple[d] with this analysis based on the express language of the California

BLOOD HURST & O'REARDON, LLP

00071957

1   statute," but nonetheless found Plaintiff Rikos lacked standing in federal court to seek

2   injunctive relief. (*Id.* at 13). Other courts have ruled differently. *Ries v. Arizona Beverage*

3   *USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012); *Henderson v. Gruma Corp.*, No. 10-04173,

4   2011 U.S. Dist. LEXIS 41077, at *19-21 (C.D. Cal. Apr. 11, 2011); *Cabral v. Supple*, No. 12-

5   00085-MWF, 2012 U.S. Dist. LEXIS 137365, at *5-6 (C.D. Cal. Sept. 19, 2012); *Lanovaz v.*

6   *Twinings N. Am., Inc.*, No. 12-2646, 2014 U.S. Dist. LEXIS 1639, at *30-32 (N.D. Cal. Jan. 6,

7   2014). Accordingly, on behalf of Mr. Rikos, counsel filed an injunctive relief action under the

8   UCL and CLRA in state court.

9       *Kurczi v. Eli Lilly Co.*, 160 F.R.D. 667, 678-79 (N.D. Ohio 1995), cited by P&G, is

10  distinguishable. In *Kurczi*, plaintiff's counsel were found inadequate for what they failed to do

11  to protect the interests of the class: "Not only has the proposed class [counsel] failed to

12  research legal issues adequately and to construct thoughtful pleadings, they have proved to be

13  incapable of handling the workload involved in processing the extensive discovery material

14  which necessarily arises in an action such as this." *Id.* at 679. The *Kurczi* counsel also filed

15  "identical" actions in state court. *Id.* at 678-79. Here, in contrast, proposed Class Counsel

16  represent the Plaintiff in a complimentary, not identical, action brought to allow the Class to

17  obtain their full remedies under California's consumer protection statutes.

18      Similarly, in *Lou v. Ma Labs., Inc.*, No. 12-05409, 2014 U.S. Dist. LEXIS 2665 (N.D.

19  Cal. Jan. 8, 2014), proposed class counsel represented two different sets of plaintiffs at the

20  same time, with the same claims, against the same defendant. *Id.* at *6-7. The court held that

21  "[a] class in this case deserves to be championed by its counsel unencumbered by their duties

22  to other clients." *Id.* at *7. Here, it is the same client and the same class whom counsel seek

23  to champion.

24      In *Jackshaw Pontiac, Inc. v. Cleveland Press Publishing Co.*, 102 F.R.D. 183 (N.D.

25  Ohio 1984), among other problems, proposed class counsel represented different plaintiffs in

26  different actions against the same pool of finite assets, an obvious conflict. *Id.* at 192-93. In

27  contrast, here no limited fund issue exists and the injunctive relief action does not seek

28  monetary relief.

BLOOD HURST & O'REARDON, LLP

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

1    The adequacy requirement is met.

2    **IV.    THE NUMEROSITY REQUIREMENT IS EASILY SATISFIED**

3    P&G next argues that its sale of over ▐▐▐▐▐ packages of Align nationwide

4    provides insufficient support to demonstrate numerosity for the five states at issue. (Opp. at

5    64). "[T]housands" of products sold will satisfy the numerosity requirement. *In re Whirlpool*,

6    722 F.3d at 852; *see also Pfaff v. Whole Foods Mkt. Group, Inc.*, No. 1:09-cv-02954, 2010

7    U.S. Dist. LEXIS 104784, at *9-10 (N.D. Ohio Sept. 29, 2010) (rejecting argument that

8    receipts are needed to prove numerosity). Other evidence supports the obvious conclusion that

9    numerosity is met. ▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐

10   ▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐ *See* Ex. 5 at PG-381287 and PG-38129.

11   Numerosity is easily satisfied. When asked to admit numerosity, P&G refused to admit or

12   deny the request for admission and refused to answer the corresponding interrogatory. *See*

13   Exs. 6-7.

14   **V.    THE CLASS IS NOT OVERBROAD OR UNASCERTAINABLE**

15   P&G argues that the Classes are overbroad and unascertainable for three reasons: 1)

16   not all Class members were injured because they benefitted from/are satisfied with Align or

17   received refunds, 2) some Class members lack Article III standing; and 3) Class membership

18   cannot be reliably or feasibly ascertained. These very arguments are regularly rejected in this

19   type of consumer protection action. *See, e.g., McCrary v. Elations Co., LLC*, No. 13-00242,

20   2014 U.S. Dist. LEXIS 8443, at *22-27, 41-44 (C.D. Cal. Jan. 13, 2014) (certifying false

21   advertising case involving over-the-counter joint health products, and rejecting arguments that

22   1) the class was unascertainable because defendant does not have records of individual

23   consumers; 2) some absent class members lacked standing because they purchased based on

24   the recommendation of a doctor or friend; and 3) did not suffer injury because some were

25   happy with the product).

26   ///

27   ///

28   ///

BLOOD HURST & O'REARDON, LLP

13

No. 1:11-cv-226-TSB

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

**A.     The Class Members Were Injured**

P&G argues that the Classes are overbroad, and therefore no class should be certified, because they include consumers who did not suffer injury as they were happy with Align or received a refund.  (Opp. at 15-17).[5]

First, consumer happiness is not the touchstone in a false advertising case.  In a false advertising case, the question is whether the defendant falsely advertised the product:

> The focus of the [California] UCL and [false advertising law] is on the actions of the defendants, not on the subjective state of mind of the class members.  All of the proposed class members would have purchased the product bearing the alleged misrepresentations.  Such a showing of concrete injury under the UCL and [false advertising law] is sufficient to establish Article III standing.  Accordingly, the Court need not examine whether each putative class member was unsatisfied with the product in order to find that common issues predominate.

*McCrary*, 2014 U.S. Dist. LEXIS 8443, at *44-45 (quoting *Ries*, 287 F.R.D. at 536 (citing *In re Google AdWords Litig.*, No. 08-3369, 2012 U.S. Dist. LEXIS 1216, at *30-31 (N.D. Cal. Jan. 5, 2012)).  Courts "need not examine whether each putative class member was unsatisfied with the product in order to find that common issues predominate." *McCrary*, 2014 U.S. Dist. LEXIS 8443, at *44-45; *see also Johnson v. General Mills, Inc.*, 275 F.R.D. 282, 289 (C.D. Cal. 2011) ("individualized proof of deception and reliance are not necessary for Mr. Johnson to prevail on the class claims.  Again, the common issue that predominates is whether General Mills' packaging and marketing communicated a persistent and material message that YoPlus promoted digestive health"); *Cabral*, 2013 U.S. Dist. LEXIS 184170 at *9-11 (rejecting defendant's argument that "satisfied customers" were not injured and finding that "[t]he truth or falsity of Supple's advertising will be determined on the basis of common proof – *i.e.*, scientific evidence that the Beverage is 'clinically proven effective' (or not) – rather than on the question whether repeat customers were satisfied").

Further, neither P&G nor its expert, Dr. Merenstein, contends that Align works for some, but not others.  This is consistent with P&G's advertising, which makes unqualified

---

[5]     P&G makes this same argument in connection with damages, manageability and typicality.  (Opp. at 40-43 (damages), 47-48 (manageability), and 50-51 (typicality)); *See* §§III.A, V.A, VII.E.1 herein.

BLOOD HURST & O'REARDON, LLP

00071957

1    claims that Align will provide improved digestive health.  Dr. Merenstein also agrees that the

2    question of whether Align works is a classwide one.  Ex. 1 (Merenstein Depo.) at 225:22-

3    226:10.

4            Similarly, P&G's argument, based on hearsay testimonials from purported purchasers

5    who may have thought they benefitted from Align, is a red herring.  The fact that someone was

6    thoroughly convinced by P&G's fraud does not relieve P&G from liability.  The issue of

7    whether Class members actually "benefitted from" Align is a classwide question of science,

8    because it applies to all Class members.  *Johnson*, 275 F.R.D. at 288-89 ("General Mills could

9    defeat the claims of the entire class by proving that YoPlus promotes digestive health in the

10   manner that General Mills allegedly represented"); *Cabral*, 2013 U.S. Dist. LEXIS 184170, at

11   *10-11 (whether beverage was "clinically proven effective" was common issue); *see also*

12   *Pantron*, 33 F.3d at 1100 ("Where, as here, a product's effectiveness arises solely as a result of

13   the placebo effect, a representation that the product is effective constitutes a 'false

14   advertisement' even though some consumers may experience positive results.").

15           P&G also speculates that if consumers repurchased Align it means the product worked.

16   (Opp. at 15 ███████████████████████████  In support of this speculative

17   argument, P&G cites the testimony of its marketing expert – not its science expert.  The same

18   argument was recently rejected in *Cabral*.  There, the court found that although repeat

19   purchasers may mean some customers were satisfied or believed the product was effective

20   "this (arguable) inference does not threaten class ascertainability or demonstrate that most or

21   all potential class members lack standing."  *Cabral*, 2013 U.S. Dist. LEXIS 184170, at *8-9.

22   Moreover, whether P&G is correct and proof of repurchase means Align works as advertised is

23   itself a classwide question.  *Id.* at *10-11 ("The truth or falsity or Supple's advertising will be

24   determined on the basis of common proof – i.e., scientific evidence that the Beverage is

25   'clinically proven effective' (or not) – rather than on the question whether repeat customers

26   were satisfied or received multiple shipments of the Beverage because of automatic

27   renewals.") (citing *Johnson*, 275 F.R.D. at 289).  Anecdotes are no replacement for science.

28

BLOOD HURST & O'REARDON, LLP

15                                                         No. 1:11-cv-226-TSB

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

1    Finally, the fact that P&G has paid refunds to a very small fraction of the Class does

2    not defeat certification.[6]   P&G would simply have an offset defense with regard to those

3    amounts, which would reduce the class judgment.  Alternatively, upon an adequate showing

4    that full refunds have been paid, these class members could simply be excluded from the

5    Class.[7]

6    **B.  Article III Standing Does Not Defeat Class Certification**

7    P&G next argues that certification is not appropriate because Class members do not

8    have Article III standing if they benefited from or were happy with Align or received P&G's

9    advertising message from somewhere other than the label.  (Opp. at 17-18).  P&G is wrong on

10   the law and ignores the facts.

11   P&G quotes *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005): "The

12   Article III standing requirements apply equally to class actions."  However, P&G omits the

13   next sentence from *Sutton*: "The class representative must allege an individual, personal injury

14   in order to seek relief on behalf of himself or any other member of the class."  *Id.*   Other

15   Circuits agree that the Article III standing inquiry focuses on the class representative's

16   standing not each member of the class.  *See Bruno v. Quten Research Inst., LLC*, 280 F.R.D.

17   524, 532 (C.D. Cal. 2011) ("the majority of authority indicates that it is improper for this

18   Court to analyze unnamed class members' Article III standing where, as here, Defendants do

19   not successfully challenge the putative class representative's standing") (citing *Lewis v. Casey*,

20   518 U.S. 343, 395 (1996) (Souter, J., concurring) (class certification "does not require a

21   demonstration that some or all of the unnamed class could themselves satisfy the standing

22   requirements for the named plaintiffs") and *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013,

23   1021 (9th Cir. 2011) (observing that the Ninth Circuit has repeatedly held that "[i]n a class

24   action, standing is satisfied if at least one named plaintiff meets the requirements…Thus, we

25   consider only whether at least one named plaintiff satisfies the standing requirements")); *In re*

---

26   [6]    P&G has sold over ▮▮▮▮ packages of Align, but provided refunds to only ▮▮▮▮
27   customers nationwide.  *See* Penagos Decl., ¶¶6, 20.
     [7]    The Court may modify the Class definition if it so wishes.  *Kendrick v. Std. Fire Ins.*
28   *Co.*, No. 06-141, 2012 U.S. Dist. LEXIS 135694, at *35-36 (E.D. Ky. Sept. 30, 2010) ("The
     definition of the class ultimately is to be determined by the court, not the parties.").

**PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION**

BLOOD HURST & O'REARDON, LLP

00071957

1   *Deepwater Horizon*, 739 F.3d 790, 800-02 (5th Cir. 2014) (collecting cases).  P&G concedes

2   absent Class members do not have to submit evidence of personal standing.  (Opp. at 18).

3   Regardless of the approach, individual inquiry is not required because, at a minimum, standing

4   is established if the class representative has standing and the Class is defined in such a way

5   that anyone within it would have standing.  *In re Deepwater Horizon*, 739 F.3d at 801.  Here,

6   any purchaser of a falsely advertised product would have standing under the false advertising

7   laws where, as here, the class is defined as the purchasers of that product.  P&G's suggestion

8   that any appellate court has held that absent class member standing requires a person by person

9   analysis which would preclude certification is incorrect.

10        Here, the factual issue is not a close call.  The evidence is uncontroverted that there is

11   only one reason to buy Align: for its advertised digestive health benefits.  ***All*** Class members

12   spent money on the falsely advertised product.  Such economic loss is a classic form of injury-

13   in-fact and confers Article III standing.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*

14   *(TOC), Inc.*, 528 U.S. 167, 184 (2000); Dkt. 28 (motion to dismiss order dated May 4, 2011) at

15   10-11 (Article III's injury in fact requirement satisfied by alleging plaintiff "purchased Align

16   in reliance on the claims on the label, that the label was false and misleading, and that he

17   should get his money back"); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 560 (S.D. Cal. 2012)

18   (same).

19        P&G primarily relies on this Court's opinion in *Loreto v. P&G*, No. 09-815, 2013 U.S.

20   Dist. LEXIS 162752 (S.D. Ohio Nov. 15, 2013).  *Loreto* is factually distinguishable, but

21   nonetheless illustrates why Article III standing is not an impediment in this case.  In *Loreto*,

22   plaintiff challenged a discrete advertising statement that "[t]he vast majority, if not all, putative

23   class members…were never exposed to" because the challenged statement "was not an

24   advertising claim made in connection with the Products" and therefore "Plaintiffs cannot prove

25   that all consumers in New Jersey paid a 'price premium' caused by that statement."  *Id.* at *10-

26   11; *see also id.* at *12-13 (at most, "less than ¼ of 1% of all purchasers" were exposed to the

27   statement at issue).  P&G also cites *O'Shea v. Epson Am., Inc.*, No. 09-8063, 2011 U.S. Dist.

28   LEXIS 105504, at *34-37 (C.D. Cal. Sept. 19, 2011), another factually inapplicable opinion

BLOOD HURST & O'REARDON, LLP

00071957

17

No. 1:11-cv-226-TSB

**PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION**

BLOOD HURST & O'REARDON, LLP

1    where there was no evidence that class members saw the misrepresentation at issue. The same

2    cannot be said here. *All* Class members were necessarily exposed to and purchased Align with

3    the alleged false and deceptive digestive health statements on the packaging and labeling.

4    *Johns*, 280 F.R.D. at 558 (granting class certification where "at a minimum, everyone who

5    purchased the Men's Vitamins would have been exposed to the prostate claim that appeared on

6    *every package* from 2002 to 2009"); *Wiener v. Dannon Co.*, 255 F.R.D. 658, 669 (C.D. Cal.

7    2009) (same).[8]  Additionally, P&G's argument is not that someone bought Align for a reason

8    other than the promise of digestive health, but merely that the source of their information

9    about Align varied.

10       All Class members were relieved of their money by P&G's deceptive conduct. *See*

11   *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012).  P&G's classwide

12   argument that Align provides benefits concerns whether it is ultimately liable for false

13   advertising.  Thus, the Class is defined such that absent Class members have standing.

14       **C.    The Class Is Ascertainable**

15       Rule 23 presumes the existence of "a definite or ascertainable class."  1 Rubenstein,

16   *Newberg on Class Actions* §3:2 (5th ed. 2013).  "[A] class must exist," and it must "be

17   susceptible of precise definition.'"  5 *Moore's Federal Practice* §23.21[1] (3d ed. 1997).  The

18   requirement "focus[es] on the question of whether the class can be ascertained by objective

19   criteria" as opposed to "subjective standards (e.g., a plaintiff's state of mind) or terms that

20   depend on resolution of the merits (e.g., persons who were discriminated against)."  *Newberg*,

21   §3:3; *Manual for Complex Litigation* §21.222 (4th ed. 2004).  Here, the Class is defined by

22   purely objective criteria and easily satisfies the ascertainability test binding on this Court.

23       In *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012), the Sixth Circuit

24   considered a number of classes suing multiple insurance companies who allegedly charged an

25   _____

26   [8]    With as much muster as it can derive, in bold, italicized and underlined wording, P&G
     states that Plaintiffs misrepresent the holding of *Wiener*.  (Opp. at 4 n.7).  Notwithstanding
     P&G's indignation, just like the courts in other probiotic class actions (*Johnson* and
27   *Fitzpatrick*), the court in *Wiener* found that all Rule 23 requirements were met.  The court held
     that the one plaintiff was typical for only one of two products and denied certification of the
28   class as defined with leave for plaintiff's counsel to substitute an additional class
     representative.  *Wiener*, 255 F.R.D. at 673.

00071957

BLOOD HURST & O'REARDON, LLP

excessive fee on a Kentucky tax. The district court certified the classes, and on appeal, the defendants challenged ascertainability. The Sixth Circuit rejected defendants' argument that classes were impermissibly indefinite. Quoting *Moore's Federal Practice*, the Sixth Circuit held "[f]or a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." *Young*, 693 F.3d at 538. Because plaintiff's classes were "defined by classic categories of objective criteria," including location, geographical boundaries, the local tax for that district, and the local tax charged, they were adequately defined by objective criteria. *Id.* at 539. The Sixth Circuit also considered the administrative feasibility of the class and defendant's argument they would be required to review millions of policies to determine which policyholders were overcharged. The court held the district court properly rejected these arguments and noted "the size of a potential class and the need to review individual files to identify its members are not reasons to deny class certification." *Id.* at 539.[9]

P&G relies heavily on the Third Circuit's ascertainability discussion in *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013), a holding at odds with *Young*.[10] According to P&G, unless absent class members have receipts or the defendant keeps a record of buyers,

---

[9] Courts in this Circuit find a class definition unworkable only when it is a failsafe class. For example, in *Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 387, 392 (S.D. Ohio 2008), Judge Algenon Marbley of this District stated that the proposed class definition would require the court to determine whether property of each putative class member was actually exempt from garnishment or attachment. Although "[t]o say that the class must be ascertainable does not mean that the party moving for class certification must specifically name each of the class's members" ascertainability failed in *Stewart* because "the touchstone of ascertainability is whether the class is objectively defined, so that it does not implicate the merits of the case or call for individualized assessments to determine class membership." *Id.* at 391; *see also Duffey v. Pope*, No. 11-16, 2012 U.S. Dist. LEXIS 137469, at *9 (S.D. Ohio Sept. 25, 2012) (class definition was unworkable because it would require individual examination about whether defendant filed collection suits within the applicable statute of limitations); *Romberio v. UNUMprovident Corp.*, 385 Fed. Appx. 423, 430-31 (6th Cir. 2009) (in a case challenging non-uniform and loosely-defined practices class definition would require individual determinations about whether disability claims were improperly denied for profit-driven reasons); *Cerdant, Inc. v. DHL Express (USA), Inc.*, No. 2:08-cv-186, 2010 U.S. Dist. LEXIS 95087, at *18 (S.D. Ohio Aug. 25, 2010) (class not ascertainable where statute limited claims to those who challenged conduct within 180 days and determination of that fact would require individual inquiry).

[10] P&G also cites *Karhu v. Vital Pharm., Inc.*, No. 13-60768, 2014 U.S. Dist. LEXIS 26756, at *7-10 (S.D. Fla. Mar. 3, 2014). The court in *Karhu* simply adopted *Carrera*, which, as explained, conflicts with the law of this Circuit.

00071957
PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

1   ascertainability can never be satisfied. (Opp. at 20). The court in *McCrary* considered

2   *Carrera* and the same argument P&G makes here, and, quoting language nearly identical to

3   the Sixth Circuit's analysis in *Young*, found the argument at odds with the law:

> *Carrera* eviscerates low purchase price consumer class actions in the Third
> Circuit…While this may now be the law in the Third Circuit, it is not currently
> the law in the Ninth Circuit. In this Circuit, it is enough that the class definition
> describes a set of common characteristics sufficient to allow a prospective
> plaintiff to identify himself or herself as having a right to recover based on the
> description.

8   *McCrary*, 2014 U.S. Dist. LEXIS 8443, at *24-25 (quoting *Moreno v. AutoZone, Inc.*, 251

9   F.R.D. 417, 421 (N.D. Cal. 2008)). As another court recently stated when rejecting *Carrera's*

10  application and applying the well-established ascertainability test, "[g]iven that facilitating

11  small claims is '[t]he policy at the very core of the class action mechanism,' we decline to

12  follow *Carrera*." *Forcellati v. Hyland's, Inc.*, No. 12-1983, 2014 U.S. Dist. LEXIS 50600, at

13  *14 (C.D. Cal. Apr. 9, 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617

14  (1997)).

15      Before and after *Carrera*, numerous other courts have expressly rejected the argument

16  that ascertainability depends on whether class members keep receipts. In fact, the California

17  Supreme Court's seminal opinion in *Daar v. Yellow Cab*, 67 Cal. 2d 695, 706 ( 1967) was the

18  first to deal with this argument head-on. *Daar* was a class action regarding alleged taxicab

19  overcharges. Nearly fifty years ago, the court in *Daar* rejected the same argument raised here

20  by P&G, stating:

> Defendant apparently fails to distinguish between the necessity of establishing
> the existence of an ascertainable class and the necessity of identifying the
> individual members of such class as a prerequisite to a class suit. If the
> existence of an ascertainable class has been shown, there is no need to identify
> its individual members in order to bind all members by the judgment. The fact
> that the class members are unidentifiable at this point will not preclude a
> complete determination of the issues affecting the class. Presumably an
> accounting in the suit at bench will determine the total amount of the alleged
> overcharges; any judgment will be binding on all the users of taxicabs within
> the prior four years.

27  *Daar*, 67 Cal. 2d at 706. Since *Daar*, courts have routinely followed this definition of

28  ascertainability. For example, over objections that class members would not have receipts, the

BLOOD HURST & O'REARDON, LLP

1   court in *Ebin v. Kangadis Food, Inc.*, No. 13-2311, 2014 U.S. Dist. LEXIS 25838, at *13-15

2   (S.D.N.Y. Feb. 24, 2014) granted certification of a class of purchasers of olive oil because

3   accepting the argument that without receipts a class is unmanageable "would render class

4   actions against producers almost impossible to bring" although "the class action device, at its

5   very core, is designed for cases like this where a large number of consumers have been

6   defrauded but no one consumer has suffered injury sufficiently large as to justify bringing an

7   individual lawsuit." *See also id.* (stating that *Weiner v. Snapple Bev. Corp.*, No. 07-8742,

8   2010 U.S. Dist. LEXIS 79647 (S.D.N.Y. Aug. 5, 2010), an opinion cited by P&G here,

9   conflicts with Second Circuit instructions and would render consumer class actions impossible

10  to bring); *Ries*, 287 F.R.D. at 535-36 (granting certification of a false advertising case

11  involving purchases of AriZona Iced Tea, and rejecting arguments that most class members do

12  not have proof they are in the class because they do not have receipts, and that the class was

13  overbroad because it includes absent class members who lack Article III standing); *Forcellati*,

14  2014 U.S. Dist. LEXIS 50600, at *13-14 (rejecting defendant's argument that the class is

15  unascertainable because there are no purchase records); *McCrary*, 2014 U.S. Dist. LEXIS

16  8443, at *22-27, 41-44 (rejecting ascertainability argument and finding that "it is enough that

17  the class definition describes 'a set of common characteristics sufficient to allow' a

18  prospective plaintiff to 'identify himself or herself as having a right to recover based on the

19  description'"); *Astiani v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) (granting

20  certification of a false advertising case involving purchases of Kashi food products, and

21  rejecting argument that the class definition was unascertainable because defendant does not

22  have records of consumer purchases); *Zeisel v. Diamond Foods, Inc.*, No. 10-1192, 2011 U.S.

23  Dist. LEXIS 60608, at *13-17, 19-21 (N.D. Cal. June 7, 2011) (granting certification of a false

24  advertising case involving purchases of walnuts, and rejecting arguments that absent class

25  members were not injured and lacked standing, and the class was unascertainable because

26  defendant did not track consumer purchases); *Ackerman v. Coca-Cola Co.*, No. 09-395, 2013

27  U.S. Dist. LEXIS 184232, at *61-62 (E.D.N.Y. July 18, 2013) (the class was ascertainable

28  because "[w]hile it may be difficult to locate those individuals, since most will not have kept

BLOOD HURST & O'REARDON, LLP

21

No. 1:11-cv-226-TSB

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

1   receipts or other documentation of their purchases, the criteria used to define the class are

2   objective"); *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417-18 (N.D. Ill.

3   2012) (same).

4       Moreover, P&G's ascertainability argument cannot be squared with the Eleventh

5   Circuit's decision in *Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279 (11th Cir. 2011).  As

6   here, that case involved Florida-law claims alleging deceptive advertising of an over-the-

7   counter "probiotic" yogurt product touted for its digestive health benefits.  As here, the

8   defendant argued that certification was improper because "individualized fact-finding" was

9   required "to ascertain the members of the class."  *Id.* at 1282.  The Eleventh Circuit disagreed,

10  finding the district court's order "scholarly," "sound," and "well within the parameters of Rule

11  23's requirements."  *Id.* at 1282-83.  The only flaw it saw, easily fixable on remand, was that

12  the class definition's wording included a subjective component (whether consumers bought

13  yogurt "to obtain its claimed digestive health benefit") that is impermissible under the

14  traditional understanding of ascertainability.  *Id.*  The Eleventh Circuit approved of the class if

15  "defined as 'all persons who purchased [the product] in the State of Florida.'"  *Id.* at 1283 &

16  n.1.

17      In fact, contrary to *Carrera*'s reasoning, courts in this Circuit routinely certify classes

18  of purchasers of over-the-counter products where it will be impossible to identify and notice

19  every member of the class.  *See, e.g., Godec v. Bayer Corp.*, No. 10-224, 2011 U.S. Dist.

20  LEXIS 131198, at *22-23 (N.D. Ohio Nov. 11, 2011) (vitamin products); *Pfaff*, 2010 U.S.

21  Dist. LEXIS 104784 at *16-17 (cases of wine and grocery items); *Lackowski v. Twinlab Corp.*,

22  No. 00-75058, 2001 U.S. Dist. LEXIS 25634 (E.D. Mich. Dec. 28, 2001) (dietary

23  supplements); *Gasperoni v. Metabolife*, No. 00-71255, 2000 U.S. Dist. LEXIS 20879, at *25

24  (E.D. Mich. Sept. 27, 2000) (dietary supplements); *see also* Ex. 8 (listing 41 certified

25  consumer classes where purchasers were unlikely to have retained receipts).  To deny

26  certification on ascertainability grounds in this case would be to abandon the law in the Sixth

27  Circuit that only requires that the class definition describe objective criteria that allows a

28  prospective class member to identify himself or herself as having a right to recover or opt out

BLOOD HURST & O'REARDON, LLP

1  based on the description. *Young*, 693 F.3d at 538. "[T]he fact that particular persons may

2  make false claims of membership does not invalidate the objective criteria used to determine

3  inclusion." *McCrary*, 2014 U.S. Dist. LEXIS 8443, at *25-26. Thus, the Court should find

4  that by the definition's objective criteria, the Class can be ascertained.

5  Additionally, beyond ignoring the Sixth Circuit's test for ascertainability, to accept

6  P&G's argument and adopt *Carrera* requires dispensing with the Sixth Circuit's admonition

7  underlying its ascertainability analysis:

8      It is often the case that class action litigation grows out of systemic failures of
administration, policy application, or records management that result in small

9      monetary losses to large numbers of people. To allow that same systemic
failure to defeat class certification would undermine the very purpose of class

10      action remedies. We reject Defendants' attacks on administrative feasibility…

11  *Young*, 693 F.3d at 540.

12  In fact, because certification is appropriate in situations where direct notice is not

13  possible, it is well-established that notice by publication or posting notice at retailers satisfies

14  due process. *See Galvan v. KDI Distribution Inc.*, No. 08-999, 2011 U.S. Dist. LEXIS

15  127602, at *11-13 (C.D. Cal. Oct. 25, 2011) ("while Krossland cannot directly identify the

16  class members, it can [] identif[y] the retailers who sold its cards…[n]otice can be distributed

17  through the same channels Krossland uses to advertise its products: posting class notice at

18  retail stores where Krossland cards are sold, notifying past purchasers to identify themselves in

19  order to participate"); *Bandow v. FDIC*, No. 1:08-CV-02771, 2008 U.S. Dist. LEXIS 105656,

20  at *7 (N.D. Ohio Dec. 22, 2008) (finding publication notice satisfied due process where

21  potential class members were unknown); *Jordan v. Global Natural Resources, Inc.*, 102

22  F.R.D. 45, 51 (S.D. Ohio 1984) (same); *Mirfashi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th

23  Cir. 2004) ("When individual notice is infeasible, notice by publication in a newspaper of

24  national circulation…is an acceptable substitute."); *Mullane v. Cent. Hanover Bank & Trust*

25  *Co.*, 339 U.S. 306, 317 (1950) ("This Court has not hesitated to approve of resort to

26

27

28

BLOOD HURST & O'REARDON, LLP

23
No. 1:11-cv-226-TSB
PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

1  publication as a customary substitute in another class of cases where it is not reasonably

2  possible or practicable to give more adequate warning.").[11]

3        Further, claim forms and affidavits reviewed by class action claims administrators for

4  indicia of fraud are routinely accepted methods of proving class membership and amount

5  awarded. *Hilao v. Estate of Marcos*, 103 F.3d 767, 786-87 (9th Cir. 1996); Alba Conte &

6  Herbert B. Newberg, *3 Newberg on Class Actions*, §10:12 (4th ed. 2002) ("A simple statement

7  or affidavit may be sufficient where claims are small…"); *Ramos v. Philip Morris Cos., Inc.*,

8  743 So. 2d 24, 29-30 (Fla. Dist. Ct. App. 1999) (an affidavit alleges facts "sufficient to support

9  class membership"); *Boundas*, 280 F.R.D. at 417-18 ("anybody claiming class membership

10  [who does not have written proof] will be required to submit an appropriate affidavit, which

11  can be evaluated during the claims administration process if Boundas prevails at trial");

12  *Forcellati*, 2014 U.S. Dist. LEXIS 50600, at *19-20.[12]  If needed, the Court has a number of

13  management tools available to address distribution issues, including using a special master to

14  review individual claims. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1273 (11th Cir. 2004); *In re*

15  *Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001).  As a practical

---

[11]      P&G argues that it has a due process right to challenge each individual's class membership. (Opp. at 19). P&G cites *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012).  But this is not what *Marcus* held.  In *Marcus*, the Third Circuit held that even if plaintiff could show a common, classwide defect with the tires at issue, "without resort to individual proofs, [plaintiff could not show] that this defect caused the class members' damages" because a "tire can 'go flat' for myriad reasons" unrelated to a defect.  *Id.* at 603-04. Accordingly, in *Marcus*, aggregate damages were not appropriate and defendant had a due process right to challenge individual damages claims.  Unlike the defendant in *Marcus*, here P&G has no due process right that stands in the way of certification because "its aggregate liability is tied to a concrete, objective set of facts – its total sales – that will remain the same no matter how many claims are submitted." *Forcellati*, 2014 U.S. Dist. LEXIS 50600, at *15-16 (citing *Hilao*, 103 F.3d at 786).  Further, unlike in *Marcus* where a flat tire may not have occurred as a result of the alleged defect, plaintiffs and P&G's expert agrees that whether P&G's advertising is false can be determined by a review of the closed set of scientific studies.

[12]      The claims screening process discussed in *Forcellati* could be used and expanded on in this case.  That is, a properly conducted administration process would screen out: (1) any claim form that stated Align was purchased from a retailer that does not sell the Align (by cross-checking them with P&G's wholesale sales records); (2) any claim form that stated an Align package version was purchased from a retailer that does not sell the package version (by cross-checking them with P&G's wholesale sales records); (3) any claim form that stated an Align purchase was made during the time a retail did not sell Align or the package version claimed; (4) duplicate claims; and (5) known frequent filers.  *Forcellati*, 2014 U.S. Dist. LEXIS 50600, at *21.  As in *Forcellati*, claimants could be required to submit claims under penalty of perjury and P&G's "records could also be used to screen out any consumers who have already received refunds pursuant to [P&G's] refund program." *Id.* at *21 n.3.

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

BLOOD HURST & O'REARDON, LLP

1  matter, "even though some inaccurate or fraudulent claims may go undetected, a diluted

2  recovery is surely preferable to absent class members' only realistic alternative: no recovery at

3  all." *Forcellati*, 2014 U.S. Dist. LEXIS 50600, at *20.

4  The proposed Class here is "defined by classic categories of objective criteria." *Young*,

5  693 F.3d at 539. Accordingly, Plaintiffs satisfy the implied prerequisite of ascertainability.

6  **VI.  THE COMMONALITY REQUIREMENT IS SATISFIED**

7  P&G next contests Rule 23(a)(2) commonality merely by summarizing the arguments

8  it makes regarding Rule 23(b)(3) predominance. (Opp. at 21-23). Whether Align can provide

9  the advertised digestive health benefits is a common (and predominate) question. While not

10 necessary, this common question is relevant to *each* of the claims at issue. (Open. Mem. at 23

11 (collecting cases each noting that this very question is a common, classwide question)). P&G

12 argues that proving whether Align provides the advertised health benefits (or not), "glosses

13 over the relevant law governing [plaintiffs'] claims" because Plaintiffs' must satisfy other

14 elements, including reliance, causation or injury. (Opp. at 22-23). Although one common

15 question suffices, Plaintiffs never argue that proving P&G's advertising is false or deceptive

16 ends the inquiry. Instead, P&G is correct that elements such as reliance, causation and injury

17 must be proven. Here, each of those elements, where required, can be proven on a classwide

18 basis. *See* §VII.C, below. Rule 23(a)(2) is easily satisfied.

19 **VII.  THE PREDOMINANCE REQUIREMENT IS SATISFIED**

20 A Rule 23(b)(3) class is appropriate when the questions common to the class are "at the

21 heart of the litigation." *Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592,

22 619 (6th Cir. 2007). The requirement demands only predominance of common questions, not

23 exclusivity or unanimity of them. *In re Whirlpool*, 722 F.3d at 858 ("[a] plaintiff class need

24 not prove that each element of a claim can be established by classwide proof"); *Butler*, 727

25 F.3d at 801 ("predominance requires a qualitative assessment too; it is not bean counting").

26 Here, the predominating common questions shared by Plaintiffs and each Class member are

27 whether P&G represented through its advertising and labeling that Align promotes digestive

28 health (a contention it does not dispute) and whether the advertising message is deceptive.

25

No. 1:11-cv-226-TSB

**PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION**

1    P&G does not argue that the predominance requirement is not met because Class

2    members had many different understandings of what Align was supposed to do.  Instead, it

3    argues that all Class members received P&G's marketing message from different sources.  The

4    message, however, was the same.  This establishes, rather than defeats, predominance.

5    P&G then argues that Align does what it claims it does, or at least some Class members

6    may think so.  This, a merits issue, is the predominating classwide issue in the case, which also

7    establishes predominance.  P&G even uses evidence that will apply to all Class members in

8    making its argument – a fact with which P&G's expert agrees.  It submits 60 pre-clinical and

9    clinical studies that it asserts "demonstrate that *Bifidobacterium infantis* 35624 provides

10   digestive health benefits."  (Opp. at 7).  According to P&G's Dr. Merenstein, "the totality of

11   the evidence supports the claims P&G makes for Align.  Merenstein Decl., ¶23; Open. Mem.

12   at 12.

13   Lastly, P&G argues that because some of the claims require proof of reliance,

14   causation and injury, predominance is *per se* defeated.  P&G gets the elements of several

15   claims wrong and ignores the legal standards for proving reliance, causation and damage on a

16   classwide basis.

17   **A.    The Message Conveyed Presents a Predominating Classwide Issue that**
18   **Can Be Determined on a Classwide Basis**

19   P&G maintains that, in accordance with its marketing plan, the market research

20   demonstrates that not all people purchased Align primarily as a result of its labeling or print,

21   radio or television advertisement, but also because a doctor, friend, or anonymous online

22   recommendation convinced them to buy Align.  But the question is, why would one buy

23   Align?  The answer is, to improve their digestive health.  P&G does not dispute this.  Despite

24   the artificial hair-splitting and misleading conclusion of P&G's marketing expert, Dr.

25   Solomon, the question here is whether Plaintiffs can present classwide evidence about whether

26   P&G conveyed a common message and whether that message has a basis in fact or is

27   otherwise deceptive.  Dr. Solomon's declaration strongly supports Plaintiffs' contention that

28   the question of what advertising message was conveyed by P&G's marketing campaign can be

BLOOD HURST & O'REARDON, LLP

00071957

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

1    adjudicated on a classwide basis. P&G will use testimony like Dr. Solomon's to argue that the
2    source of the misleading digestive health message should exonerate P&G in the event the fact
3    finder determines that Align does not provide the promised benefits, while Plaintiffs will argue
4    that P&G's marketing plan worked exactly as it intended. P&G intended to have a highly
5    sophisticated, multi-layered and "holistic" advertising campaign that included all of the
6    traditional elements (print advertisements and radio and television commercials consistent
7    with the product's label) in addition to creating word-of-mouth through social media and by
8    providing P&G's digestive health claim to practicing physicians that would be repeated to
9    their patients. Ex. 9 (███████████████████████████████████████████
10   ████████████████████████████████████████████████████████████████
11   ████████████████ Ex. 10; Ex. 11 at PG-34061-62, and Ex. 12 at PG-34589 and PG-34591.
12   Note that even Dr. Solomon does not contend that consumers purchased Align for any reason
13   other than the purported digestive health benefits. Regardless of the arguments, both sides will
14   use classwide evidence such as marketing studies to prove what message was conveyed to
15   class members. Frankly, this issue, while central to the case, does not seem to be disputed.

16       The uncontroverted evidence is that everyone purchased Align as a result of the
17   digestive health message and that the only reason it was purchased was to obtain the digestive
18   health benefits. This far exceeds the standard to recover in a false advertising case. *See In re*
19   *Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009); *Vasquez v. Superior Court*, 4 Cal. 3d 800, 814
20   n.9 (1971) (advertised message need only be one of the reasons for purchase); *Kwikset Corp.*
21   *v. Superior Court*, 51 Cal. 4th 310, 326-327 (2011) (same).

22       The evidence demonstrates that the consistent, clear message P&G intended to convey
23   and did convey was that Align provides digestive health benefits. (Open. Mem. at 6-12).
24   Numerous internal P&G documents reveal that the digestive health message was the primary
25   message received be all people who saw the advertisements (and not just those who ended up
26   purchasing Align). As described by P&G advertising executives, ████████████████
27   ████████████████████ Open. Mem., Ex. 32 at 5780; *see also* Ex. 13 at IPSOS303 ████████
28   ████████████████████████████████████████████████████████████

BLOOD HURST & O'REARDON, LLP

00071957



*Id.* at 353

Open. Mem., Ex. 36 at 286

Open. Mem., Ex. 32 at 5781

At base, every purchaser saw the packaging, which contained the advertising message. The message was then reinforced and repeated on P&G's television, Internet, and print advertisements and in all of its medical marketing materials. Open. Mem., Ex. 24 (Lacy Decl.) at ¶5 and Ex. 3 (Package: "Ongoing protection from episodic: Constipation; Diarrhea; Urgency; Gas & Bloating"); *id.* at ¶6 and Ex. 4 (Package: "**Naturally helps: Build & Maintain** a healthy digestive system; **Restore** your natural digestive balance; **Protect** against occasional digestive upsets"); *id.* at ¶7 and Ex. 5 (Package: "**Naturally helps: Build & Support** a healthy digestive system; **Maintain** digestive balance; **Fortify** your digestive system with healthy bacteria"); *id.* at ¶8 and Ex. 6 (Package: "**Naturally helps: Fortify** your digestive system with healthy bacteria **24/7**; **Build & support** a healthy digestive system; **Maintain** digestive balance"); *id.* at ¶25 and Ex. 13 (Print Ad: "Need help keeping your digestive balance? Align can help. Only Align has Bifantis®, a patented probiotic that naturally helps maintain digestive balance. Align works by fortifying your digestive system with healthy bacteria."); Ex. 14 at PG-59804 (Internet Ad: "Help bring peace to your digestive system. Align® with Bifantis®, a patented probiotic, promotes a healthy digestive system to help restore your natural balance."); Open. Mem., Ex. 24 (Lacy Decl.) at ¶17 and Ex. 25 at PG-49267 (Television Ad: "Need help keeping your digestive balance? Try the #1 gastroenterologist recommended probiotic, Align. Align naturally helps maintain digestive balance."); *id.* at ¶35 and Ex. 23 (Medical Marketing: "Recommend that patients and colleagues try the #1 recommended probiotic. Align® can naturally help your patients: Build

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

BLOOD HURST & O'REARDON, LLP

00071957

& maintain a healthy digestive system; Support their natural digestive balance; Supplement their digestive system with health bacteria.").[13]

The physician marketing was an integral part of P&G's marketing plan. According to internal P&G documents, the Bifantis/probiotic references provide ingredient support for the digestive health claim, and its reference to #1 Gastroenterologist recommended is "credentialing" Align and provides consumers with a "reason to believe" the digestive health message (known as the "RTB" in marketing shorthand). Ex. 18 at IPSOS8542 ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ Ex. 19 at IPSOS2873

████████████████████████████████████████████████████████████

████████████████████ Ex. 20 at PG-3543 ████████████████████████████

████████████████████████████████████████ Ex. 21 ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ Ex. 22 ████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████

As explained in Plaintiffs' opening brief, where, as here, Plaintiffs were exposed to a common advertising campaign, common issues predominate. *See also In re Ferrero Litig.*, 278 F.R.D. 552, 560 (S.D. Cal.) (predominance satisfied where class members had "common contention" that defendant "made a material misrepresentation regarding the nutritious benefits of Nutella® that violated the UCL, FAL and the CLRA" and "any injury suffered by a class member in this case stems from Defendant's common advertising campaign of Nutella®").

---

[13]     In a footnote, P&G argues that reliance or causation cannot be inferred because some class members who purchased online *may* not have seen "any or most of the packaging prior to purchasing the product." (Opp. at 36, n.32). P&G offers no evidence to support its speculation. The evidence is to the contrary. On its eStore, P&G advertised Align's digestive health benefits. *See* Ex. 15 (P&G's eStore webpage for Align from April 24, 2012); Ex. 16 (Screenshots of AlignGi.com); Ex. 17 at PG-57734-38; Ex. 14. At any rate, P&G's direct sales of Align through its online eStores totaled a ██████████ units nationwide. Penagos Decl., ¶¶12-13. This constitutes approximately ██████ of the total nationwide retail sales exceeding ██████ units.

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

BLOOD HURST & O'REARDON, LLP

00071957

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BLOOD HURST & O'REARDON, LLP

The cases P&G cites are inapposite. (Opp. at 31 (citing *Minkler v. Kramer Labs., Inc.*, No. 12-9241, 2013 U.S. Dist. LEXIS 90651, at *16 (C.D. Cal. Mar. 1, 2013) (the product was proven effective for some members of the proposed class); *Moheb v. Nutramax Labs., Inc.*, No. 12-3633, 2012 U.S. Dist. LEXIS 167330, at *20-21 (C.D. Cal. Sept. 4, 2012) (plaintiffs failed to show consumers relied on or cared about representations); *Akkerman v. Mecta Corp., Inc.*, 152 Cal. App. 4th 1094, 1102 (2007) (finding individual issues predominated where no evidence every class members was exposed to representations on electroconvulsive therapy machine), and at 36 (citing *Chow v. Neutrogena Corp.*, No. 12-04624, 2013 U.S. Dist. LEXIS 17670, at *4 (C.D. Cal. Jan. 22, 2013) (an inference of reliance was not appropriate where some class members may have purchased the product at issue because they favored the Neutrogena brand name, rather than because of the benefit statements at issue); *Hale v. Enerco Group, Inc.*, 288 F.R.D. 139, 148 (N.D. Ohio 2012) (an inference of reliance could not be made where there was no evidence that the representation was material to any consumer).[14]

### B. The Veracity of the Digestive Health Message Can Be Adjudicated with Classwide Evidence

Questions of science are inherently demonstrated on a generalized, classwide basis. Tests for whether a drug is safe and effective are performed on population samples, not separately done, patient by patient, each time before the drug is prescribed. As Plaintiffs' expert explains, by using the scientific method one can evaluate whether Align improves ones digestive health. (Dkt. 108-8 (Komanduri Decl.), ¶¶16-19). P&G does not dispute this fact. Instead, P&G argues the merits issue that the digestive health message is true. It does so with classwide evidence – the same set of scientific studies it has been using all along for "proof of claims" documents. *See* Open. Mem. at 12; Merenstein, Decl., ¶¶22-23, 34-36; s*ee also id.*, ¶¶40-41 (Dr. Merenstein lists the studies on which he relies for the conclusion that Align delivers the promised digestive health benefits); Ex. 1 (Merenstein Depo.) at 157:2-10, 164:10-

---

[14]    The two opinions by one judge, the Honorable John F. Walter, in *Minkler* and *Moheb* are isolated decisions where the merits of the action were ruled on. This Court should follow the substantial weight of authority, including *Johnson*, *Johns*, *Fitzpatrick*, *Nelson*, *McCrary* and *Forcellati*.

BLOOD HURST & O'REARDON, LLP

1   167:16, 225:22-226:10.  Therefore, although the merits are disputed, the parties agree the issue

2   can be determined on a classwide basis.[15]  *See Cabral*, 2013 U.S. Dist. LEXIS 184170, at *10-

3   11 ("[t]he truth or falsity of Supple's advertising will be determined on the basis of common

4   proof – *i.e.*, scientific evidence that the Beverage is 'clinically proven effective' (or not)");

5   *Godec*, 2011 U.S. Dist. LEXIS 131198, at *17 (certifying claims that vitamins provided

6   prostate-health benefits because "whether [Bayer] delivered a product that did not conform to

7   its description, is a scientific question common to the class members"); *Johnson*, 275 F.R.D. at

8   289 ("[t]he digestive health benefit of YoPlus, or the lack thereof, is a common issue that is

9   particularly appropriate for classwide resolution").[16]

10      **C.    Reliance and Causation, to the Extent Required, Present Predominating
11             Issues that Can Be Established with Classwide Evidence**

12      P&G argues that certain of Plaintiffs' claims require reliance and/or causation, and

13  therefore individual issues necessarily predominate.  (Opp. at 23-28).  P&G misstates the legal

14  requirements under many claims.  Courts have repeatedly rejected the contention P&G asserts.

15      **1.     Reliance and Causation, Where Required, Does Not Defeat
16             Predominance**

17      **a.     The California CLRA**

18      The CLRA's reliance requirement does not defeat predominance in this case.  Because

19  Plaintiffs have shown that a uniform message was conveyed, they are entitled to a classwide

20  presumption of reliance.  *Mass Mut. Life Ins. Co. v. Sup. Ct.*, 97 Cal. App. 4th 1282 (2002);

21  *Vasquez.*, 4 Cal. 3d 800.  In *Ticketmaster*, the Ninth Circuit held that courts can infer common

22  reliance in a CLRA claim "if the trial court finds that material misrepresentations have been

23

24  [15]    P&G argues that Plaintiffs misrepresented the NAD's findings by stating that P&G
     "unsuccessfully defended its digestive health claims."  (Opp. at 3, n.6).  In fact, according to
25   the NAD's press release, "[u]pon receipt of NAD's inquiry, P&G said it planned to
     discontinue the 'clinically proven' claims in all U.S. media, while it conducts further research
     on Align – a commitment NAD determined to be necessary and proper."  (Open. Mem., Ex.
26   43).
     [16]    P&G argues that *Johnson* should be disregarded because it was decided before *Wal-
27   Mart*, 131 S. Ct. 2541.  (Opp. at 4).  In fact, General Mills, the defendant in *Johnson*, moved
     for decertification based on that same argument – and lost.  *See Johnson*, 276 F.R.D. at 521-23
28   (section entitled "Neither *Wal-Mart* nor *Ticketmaster* Contradict This Court's Findings as to
     Commonality or Predominance").

31                                                     No. 1:11-cv-226-TSB

**PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION**

BLOOD HURST & O'REARDON, LLP

1    made to the entire class." 655 F.3d at 1022. "Materiality is established 'if a reasonable man

2    would attach importance to its existence or nonexistence in determining his choice of action in

3    the transaction in question.'" *Johnson v. General Mills, Inc.*, 276 F.R.D. 579, 522 (C.D. Cal.

4    2011) (quoting *Ticketmaster*, 655 F.3d at 1022).[17]

5         Here, Plaintiffs and the Class were exposed to a consistent advertising claim

6    disseminated through a sophisticated marketing campaign. (Open. Mem. at 6-12). Whether a

7    "reasonable person" would find that promise to be material is a classwide merits question.

8    *Ticketmaster*, 655 F.3d at 1020; *Johnson*, 275 F.R.D. at 287; *Cabral*, 2013 U.S. Dist. LEXIS

9    184170, at *13-15.

10              **b.       The North Carolina UDTPA**

11        Focusing on the North Carolina UDTPA's causation requirement, P&G cites *Bumpers*

12   *v. Cmty. Bank of N. Va.*, 747 S.E.2d 220 (2013), to argue that proof of actual reliance defeats

13   certification. (Opp. at 24-25). This argument fails for several reasons. First, *Bumpers* merely

14   held that plaintiffs were not entitled to summary judgment because they failed to present

15   undisputed evidence of reliance on the alleged misrepresentation. *Id.* at 226. *Bumpers*, an

16   individual action, does not address how reliance can be proven on a class basis. The law on

17   the relevant issue is no different in North Carolina than in other states that follow the Uniform

18   Deceptive Trade Practices Act. North Carolina's UDTPA, which prohibits "unfair or

19   deceptive acts or practices," is patterned off the FTC Act and is nearly identical to FDUPTA

20   and California's UCL and CLRA. G.S. §75-1.1. Reliance and how it is proven is the same.

21   *See In re Milo's Kitchen Dog Treats*, No. 12-1011, 2014 U.S. Dist. LEXIS 39195, at *20-22,

22   26-27 (W.D. Pa. Feb. 11, 2014) (reliance under California's UCL and CLRA "is equally

23   applicable to North Carolina's UDTPA"); *Henderson v. United States Fid. & Guar. Co.*, 488

24   S.E.2d 234, 239 (1997) ("[o]ur statute is patterned after Section 5 of the [FTC] Act"). "A

25

26   ───────────────
     [17]      Citing one unpublished, cursory district court opinion, *Chow*, 2013 U.S. Dist. LEXIS
27   17670, at *4, P&G argues that courts deny certification under the CLRA because of reliance.
     (Opp. at 29). The court in *Chow* held that an inference of reliance was not appropriate in that
28   case because some class members may have purchased the product at issue because they
     favored the Neutrogena brand name, rather than because of the benefit statements at issue. *Id.*
     at *4-5.

1    practice is deceptive [under North Carolina's UDTPA] if it has a tendency to deceive."

2    *Walker v. Fleetwood Homes of N.C., Inc.,* 362 N.C. 63, 72 (2007).  *See Ticketmaster*, 655 F.3d

3    at 1020 (the Supreme Court in *Tobacco II* "made it plain that…[under the UCL]it is necessary

4    only to show that members of the public are likely to be deceived"); *Tobacco II*, 46 Cal. 4th at

5    327 ("[a] presumption, or at least an inference, of reliance arises wherever there is a showing

6    that a misrepresentation was material"); *Fitzpatrick*, 635 F.3d at 1283 (under FDUPTA,

7    recovery does not hinge on individual reliance, and whether the "allegedly deceptive conduct

8    would deceive an objective reasonable consumer…[is] amenable to classwide proof").

9        *McManus v. Sturm Foods, Inc.*, 292 F.R.D. 606 (S.D. Ill. 2013), cited by P&G, is

10   instructive.  The court in *McManus* denied certification of a North Carolina class "[b]ecause

11   the UDTPA unambiguously requires actual reliance, and because the proposed class likely

12   includes great swaths of purchasers who did not rely on Defendants' alleged

13   misrepresentation," certification was not appropriate.  *Id*. at 616.  Here, the uncontroverted

14   evidence is that all Class members purchased Align for its promised digestive health benefits.

15        Further, P&G's actual reliance argument improperly assumes that Plaintiff's UDTPA

16   claim is based solely on representations alleged to constitute a "deceptive act or practice"

17   within the meaning of G.S. §75-1.1  While Plaintiff  alleges the Align advertisements were

18   "deceptive" within the meaning of North Carolina's UDTPA, Plaintiff also alleges that P&G's

19   conduct is "unfair" under the Act.  (Dkt. 85, ¶¶116-117).  As with the UCL, "[a] practice is

20   unfair [under the North Carolina UDTPA] when it offends established public policy as well as

21   when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to

22   consumers."  *Walker,* 362 N.C. at 72.  Thus, while actual reliance can be presumed here for

23   purposes of satisfying the causation requirement for the alleged deceptive representations,

24   actual reliance is not necessary to satisfy the causation requirement for P&G's alleged unfair

25   acts or practices.  *See Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 174 N.C. App.

26   49, 59-62 (2005); *Jacobs v. Physicians Weight Loss Ctr. of Am., Inc.*, 173 N.C. App. 663,

27   (2005).  In *Bumpers*, the court noted that plaintiffs failed to allege "unfair" practices for

28

BLOOD HURST & O'REARDON, LLP

33

No. 1:11-cv-226-TSB

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

1    excessive pricing, and proceeded to analyze just the proximate cause requirement under the

2    "deceptive" prong.  747 S.E.2d at 228-29.

3                           **c.    Breach of Express Warranty**

4        P&G claims that Plaintiff Rikos' express warranty claim fails because he cannot

5    demonstrate reliance on a classwide basis.  (Opp. at 25).  Reliance is not an element of a

6    breach of express warranty claim for consumer goods.  *Weinstat v. Dentsply Int'l, Inc.*, 180

7    Cal. App. 4th 1213, 1227 (2010).  Citing district court opinions, P&G nonetheless argues

8    reliance is only excused where there is privity of contract.  *Weinstat* made no such distinction,

9    nor have federal courts since *Weinstat* was decided.  *See Horvath v. LG Elecs. MobileComm*

10   *U.S.A., Inc.*, No. 11-1576, 2012 U.S. Dist. LEXIS 19215, at *16-17 (S.D. Cal. Feb. 13, 2012)

11   (reliance not required against a manufacturer); *Majdipour v. Jaguar Land Rover N. Am., LLC*,

12   No. 12-7849, 2013 U.S. Dist. LEXIS 146209, at *36 (D.N.J. Oct. 9, 2013) ("Neither *Keith* nor

13   *Wienstat* purport to limit their statements to situations in which there is privity."); *Wiener*, 255

14   F.R.D. at 669-70 (express warranty claims against a manufacturer).

15       Further, statements made in advertisements or on labels that a remote purchaser may

16   view before buying a product are presumed to have been part of the basis of the bargain

17   because such statements are intended to induce sales of the product.  *Keith v. Buchanan*, 173

18   Cal. App. 3d 13, 22 (1985).  "A buyer need not show that he would not have entered into the

19   agreement absent the warranty or even that it was a dominant factor inducing the agreement.

20   A warranty statement is deemed to be part of the basis of the bargain and to have been relied

21   upon as one of the inducements for the purchase of the product."  *Id.* at 23; *see also Hauter v.*

22   *Zogarts*, 14 Cal. 3d 104, 115 (1975) (since California's adoption of the UCC, proof of reliance

23   on specific promises is not required).  Here, the digestive health message was throughout

24   P&G's advertising campaign and on every Align package purchased by Class members.

25            **2.    Causation, Where Required, Does Not Preclude Certification**

26                           **a.    The Illinois ICFA**

27       To satisfy the proximate cause requirement under the ICFA, Plaintiffs need only

28   demonstrate "that they receive[d], directly or indirectly, communication or advertising from

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

the defendant." *Baker v. Home Depot USA, Inc.*, No. 11-6768, 2013 U.S. Dist. LEXIS 9377, at *9 (N.D. Ill. Jan. 24, 2013) (quoting *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 555 (2009)). Here, Plaintiffs all received the same digestive health message from P&G because they all purchased Align. Further, as even P&G concedes, some class members indirectly received the advertising message through sources such as by word-of-mouth and doctors.

P&G argues that causation may not be inferred under the ICFA. (Opp. at 35). P&G's only citation is to *Clark v. Experian Info. Solutions, Inc.*, 256 Fed. Appx. 818, 821 (7th Cir. 2007). *Clark* was limited to its facts. The court stated that causation could not be inferred under the facts of that case because some class members may not have been deceived about the need to affirmatively cancel credit protection service because either they wanted the service or read the disclaimer which told them they needed to affirmatively cancel the service. *Id.* at 821-22. Courts subsequent to *Clark* have certified ICFA claims over arguments regarding individual deception issues "[w]here liability is premised on a common practice uniformly applied." *S37 Mgmt. v. Advance Refrigeration Co.*, 961 N.E.2d 6, 15-16 (Ill. App. Ct. 2011) (affirming class certification of ICFA claims where plaintiff alleged that defendant misrepresented or omitted billing charges).

### b. The Florida FDUTPA

As explained in the opening brief, under Florida's FDUTPA, causation is proven objectively and actual reliance is not required. For example, the Eleventh Circuit reviewed and affirmed a district court opinion that "to satisfy the FDUPTA's causation requirement, each plaintiff is required to prove only that the deceptive practice would – in theory – deceive an objective reasonable consumer." *Fitzpatrick*, 635 F.3d at 1282 (affirming reasoning of lower court, 263 F.R.D. 687, 695). *See also Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 697 (S.D. Fla. 2010) ("The class members, however, need not submit individualized proof to establish causation [under FDUTPA]."); *Toback v. GNC Holdings,*

1  *Inc.*, No. 13-80526, 2013 U.S. Dist. LEXIS 131135, at *8-9 (S.D. Fla. Sept. 13, 2013) (same

2  and citing the Eleventh Circuit's *Fitzpatrick* opinion).[18]

3  ### c.  The New Hampshire CPA

4  P&G argues that because proof of causation is required, the NHCPA claim cannot be

5  certified. (Opp. at 30). As explained in Plaintiffs' opening brief, the causation requirement

6  under the NHCPA is not akin to proof of reliance. (Open. Mem. at 20). Rather, "plaintiffs

7  will have to carry a much less onerous burden, showing only that their injuries…was a

8  consequence of [defendant's] allegedly unfair and deceptive practices." *Mulligan v. Choice*

9  *Mortg. Corp. USA*, No. 96-596, 1998 U.S. Dist. LEXIS 13248, at *34-35 (D.N.H. Aug. 11,

10  1998).

11  Additionally, *Pagan v. Abbott Labs., Inc.*, 287 F.R.D. 139, 149 (E.D.N.Y. 2012), cited

12  by P&G (Oppo. Mem. at 27), does not hold that NHCPA claims cannot be certified. There,

13  plaintiffs alleged that the Similac infant formula they purchased was represented as safe but

14  was not in fact safe because contained beetle parts. However, not all of the packages of

15  Similac in the class contained beetle parts – many were fine and there was no way to

16  determine which were contaminated. *Id.* at 142. Accordingly, the court found that to prove

17  their claim under the NHCPA, "it is not enough for the Plaintiffs to merely show that the class

18  members…purchased recalled Similac; the Plaintiffs need to demonstrate that the recalled

19  Similac that the class members purchased actually contained beetle parts." *Id.* at 149. By

20  contrast here, Align can either deliver the digestive health benefits or it cannot. It does not

21  vary from package to package.

22  ### d.  The California UCL

23  P&G concedes that reliance is not an element of the UCL cause of action, but argues

24  that a "causal link" must be established for claims under the UCL. (Opp. at 28). The UCL is a

---

[18]  P&G relies on *In re Sears, Roebuck & Co. Tools Marketing & Sales Practices Litig.*, MDL 1703, 2012 U.S. Dist. LEXIS 39561 (N.D. Ill. Mar. 22, 2012) for its discussion of FDUPTA's causation requirement. However, as the *Sears* court noted, unlike in *Fitzpatrick* and *Nelson*, at issue in *Sears* were thousands of different tools and only a portion of some advertising contained the "Made in the USA" representations at issue. *Id.* at *31-33. As in *Nelson* and *Fitzpatrick*, here there is only one product at issue and the representations at issue were made across all of the product's advertising.

BLOOD HURST & O'REARDON, LLP

1  strict liability statute. "Importantly, relief under any of the UCL's three prongs is available

2  'without individualized proof of deception, reliance and injury,' so long as the named plaintiffs

3  demonstrate injury and causation." *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 482 (C.D.

4  Cal. 2012) (quoting *Mass. Mut. Life Ins. Co.*, 97 Cal. App. 4th at 1289; *Tobacco II*, 46 Cal. 4th

5  at 326) (same). Thus, causation is a standing requirement for the named plaintiff – not an

6  element of the UCL that must be individually demonstrated for absent class members.

7  *Ticketmaster*, 655 F.3d at 1021; *Tobacco II*, 46 Cal. 4th at 320; *Guido*, 284 F.R.D. at 475

8  (plaintiffs satisfied standing based on claimed economic injury where they testified if they had

9  known the truth about the product at issue they would have paid less or not purchased the

10  product).[19] P&G does not contest that Plaintiff Rikos satisfies any causation requirement. *See*

11  Ex. 2 (Rikos Depo.) at 58:21-59:18.

### 3.  The Classes Are Entitled to a Presumption of Classwide Reliance

13  P&G argues that Plaintiffs cannot demonstrate reliance on a classwide basis. (Opp. at

14  31-36). P&G asserts that although consumers purchased Align because they thought it would

15  deliver the advertised digestive health benefits, they received P&G's intended advertising

16  message through a variety of sources, which include doctor or friend recommendations, prior

17  personal experience, and online articles or testimonials about Align. (Opp. at 31-35). Thus,

18  according to P&G, a presumption or inference of reliance or causation is not appropriate here.

19  As in *Johnson*, here "the common issue that predominates is whether [P&G's]

20  packaging and marketing communicated a persistent and material message that [Align]

21  promotes digestive health." *Johnson*, 275 F.R.D. at 289 (substituting "P&G's" for "General

22  Mills'" and "Align" for "YoPlus"). For purposes of class certification, the Court need not

---

24  [19]    P&G cites the factually distinguishable opinions from *Campion v. Old Republic Home
25  Prot. Co.*, 272 F.R.D. 517 (S.D. Cal. 2011) and *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th
966 (2009). In *Campion*, the court noted that reliance could not be presumed because
26  individual determinations for each class member had to be made about whether the insurer
wrongfully denied each claim in order to establish liability. *Campion*, 272 F.R.D. at 531; *see
27  also id.* at 537 (distinguishing those facts from "where there was a single uniform material
omission and the defendants might only be able to defeat the showing of causation as to a few
28  individual class members"). In *Cohen*, the court affirmed a finding that common issues did
not predominate under the UCL where the class would include those who were "never exposed
in any way to an allegedly wrongful business practice." *Cohen*, 178 Cal. App. 4th at 980.

No. 1:11-cv-226-TSB

BLOOD HURST & O'REARDON, LLP

00071957

1  determine if the digestive health advertising campaign was in fact material, false or deceptive.

2  *Id.* at 289 n.4. Whether a "reasonable person" would find that promise to be material is a

3  classwide merits question. *Ticketmaster*, 655 F.3d at 1020; *see also Johnson*, 275 F.R.D. at

4  287-89; *Fitzpatrick*, 635 F.3d at 1283; *Tobacco II*, 46 Cal. 4th at 327.

5  P&G argues that its market research shows that some consumers may have heard about

6  Align's digestive health attributes through word-of-mouth or recommendation. P&G does not

7  escape liability, however, if one person sees the advertisement and repeats the deceptive claim

8  to another who, in turn, purchases the product. *Committee on Children's Television, Inc. v.*

9  *General Foods Corp.*, 35 Cal. 3d 197, 219 (1983) (citing Restatement 2d Torts §533).

10  Advertising campaigns count on their messages being conveyed in this manner. In fact, P&G

11  ██████████████████████████████████ Ex. 23 at PG-3749 ███████

12  ████████████████████████████████████████████████████████████

13  ███████████████████████████████████████████ 3751 ███████████

14  ████████████████████████████████████████████████████████████

15  ██████████████████████████████████████████ Ex. 24 ███████████

16  ██████████████████████████████████████

17  Not surprisingly, P&G intended to convey the same marketing message to consumers

18  and doctors. According to P&G, ████████████████████████████████████

19  ██████████████████████████████ Ex. 25 at PG-25890; Ex. 26 at PG-64914

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████████████;[20] *see also* §VII.A above

22

─────────────────

23  [20] As Ex. 26 ████

24  ██████████████████████████████████████████████ Ex. 41 (Messer
Depo.) at 69:23-70:17; Ex. 42 (Burgio Depo.) at 235:6-23, 239:4-8.

25  ██████████████████████████████ *Id.* at 227:8-19; Ex. 1 (Merenstein Depo.) at 188:15-
189:14.

26

27  ██████████████████ Ex. 1 (Merenstein Depo.) at 154:24-156:5. ASC-1 was conducted the

28  same researchers that conducted a large-scale healthy population study on General Mills'
probiotic YoPlus yogurt. As here, the results demonstrated the probiotic product did not work
and the study was not published.

38

No. 1:11-cv-226-TSB

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

1  (discussing medical marketing attached to the Lacy Declaration).  As one court wrote in

2  rejecting the very argument P&G asserts here, "Plaintiff's claims of falsity concern the

3  efficacy of the product…Defendant cannot reasonably argue that a putative class member

4  would purchase a product that does not work, regardless of who recommended it."  *McCrary*,

5  2014 U.S. Dist. LEXIS 8443, at *43-44.

6       P&G's marketing expert, Dr. Solomon, opines that some Align purchasers learned

7  about Align through medical professionals.  (Opp. at 31 (citing Solomon Decl., ¶¶33-44)).

8  This conclusion is deceptive.



PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

00071957

BLOOD HURST & O'REARDON, LLP



9  But Dr. Solomon misses the point. The relevant question is the purpose people

10 purchased Align, and there is no dispute that all Class members purchased Align for the

11 advertised digestive health benefits.

12  P&G also speculates that "some" absent Class members may have purchased Align in

13 part based on online reviews. (Opp. at 11). In support, P&G cites two pieces of evidence.

14 First, P&G cites the declaration from its expert, Dr. Solomon. The only evidence Dr. Solomon

15 discusses on this point is ███████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████████████████

17 ██████ *See* Solomon Decl., ¶41. The second piece of evidence cited by P&G is to its

18 attorney's declaration and 19 cherry-picked hearsay online reviews from several thousand she

19 gathered in support of P&G's opposition brief. (Opp. at 11 (citing Skolout Decl., ¶22)). As a

20 threshold matter, the testimonials should be stricken as inadmissible hearsay. *Adams v.*

21 *Albertson*, No. 10-4787, 2012 U.S. Dist. LEXIS 50904, at *6 (N.D. Cal. Apr. 11, 2012)

22

---
22



BLOOD HURST & O'REARDON, LLP

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

00071957

BLOOD HURST & O'REARDON, LLP

1  (quoting *United States v. Jackson*, 208 F.3d 633, 637 (7th Cir. 2000) (anonymous comment

2  posted on a website "is adequate for almost nothing, even under the most liberal interpretations

3  of the hearsay exception rules")).  These testimonials merely state that people learned about

4  Align's purported health benefits from others, but do not state that people recommend Align

5  for anything other than its promised digestive health benefits.

**D.  Whether Consumers Were Injured Presents a Classwide Issue**

7  P&G argues that injury cannot be shown on a classwide basis because many consumers

8  benefitted from and are satisfied with Align.  (Opp. at 36-38).

9  The district court in *Fitzpatrick*, affirmed by the Eleventh Circuit, rejected this same

10  argument.  The argument "does not preclude a finding of predominance; that question is

11  largely encompassed by the predominant – and, according to Plaintiff, binary – issue of

12  whether science supports General Mills' claims that Yo-Plus aids in the promotion of digestive

13  health."  *Fitzpatrick*, 263 F.R.D. at 701 ("The FDUPTA claim rises or falls based

14  predominantly on issues for which classwide proof is appropriate; an answer to the paramount

15  question of whether Yo-Plus works as advertised will directly and substantially impact every

16  class member's liability case and entitlement to relief"); *see also Cabral*, 2013 U.S. Dist.

17  LEXIS 184170, at *10-11 (truth or falsity is based on common proof – scientific evidence –

18  not customer satisfaction or repeat purchases).[23]  Under similar facts and allegations as those

19  here, other courts reject P&G's same argument.  *See Delarosa v. Boiron*, 275 F.R.D. 582, 594

20  (C.D. Cal. 2011) ("Defendant's arguments that it can present proof that Coldcalm worked for

21  some individual class members goes to the merits of Plaintiff's claim, not to the common

22  _____

23  [23]  P&G argues that *Johnson*, *Fitzpatrick* and *Wiener* are inapposite because in those cases
defendants did not submit evidence that consumers benefitted from the product at issue.  (Opp.
24  at 4).  To the contrary, defendants in each case made this same argument.  The court in
*Johnson* held that "General Mills has contended that any [] representations was true and well-
25  supported by scientific evidence," and the court in *Fitzpatrick* held that the argument
(supported by *purported* online testimonials) that "Yo-Plus might have worked for some
26  consumers, does not preclude a finding of predominance."  *See Johnson*, 275 F.R.D. at 287
n.3; *Fitzpatrick*, 263 F.R.D. at 701; Dkt. 52 at 22-23 in *Fitzpatrick v. General Mills, Inc.*, No.
27  09-cv-60412 (S.D. Fla.) (defendant produced customer feedback showing that "many
customers felt YoPlus resolved their digestive health issues").  Citing its science expert's
28  testimony, defendant in *Wiener* also argued that "[t]he benefit claims for Activia are supported
by approximately 12 clinical studies."  *See* Dkt. 87 at 3 in *Wiener v. The Dannon Co., Inc.*, No.
08-cv-415 (C.D. Cal.).

41                                           No. 1:11-cv-226-TSB

1  question as to the overall efficacy of the product"); *Wolin v. Jaguar Land Rover North Am.,*

2  *LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) (defendant's arguments regarding plaintiff's

3  evidence of a common defect relate to the merits of the claim and do not overlap with the

4  predominance test). *See also In re Whirlpool*, 722 F.3d at 855 (where "the issues regarding

5  alleged design flaws are common to the class…[t]he existence of currently satisfied [washer]

6  owners in Ohio did not preclude the district court from certifying the Ohio class"), 856 ("If

7  defective design is ultimately proved, all class members have experienced injury as a result of

8  the decreased value of the product purchased."); *Daffin*, 458 F.3d at 554 (same).

9  As a factual matter, whether some consumers believe Align works does not contradict

10  Plaintiffs' claims that Class members have been deceived. Align's significant placebo effect is

11  a part of that deception. P&G cannot escape liability because of the placebo effect. *Pantron*,

12  33 F.3d at 1098, 1100. Notwithstanding placebo effects or customer satisfaction "[t]he

13  efficacy claims would still be misleading because the products are 'not *inherently* effective,'

14  their results instead 'being attributable to the psychosomatic effect produced by the advertising

15  and marketing of the products.'" *Forcellati*, 2014 U.S. Dist. LEXIS 50600, at *30-31 (quoting

16  *Pantron*, 33 F.3d at 1100).

17  P&G relies on three cases for its contention that determining injury requires individual

18  assessments. Each is inapplicable. *See Phillips v. Philip Morris Cos.*, No. 10-1741, 2014 U.S.

19  Dist. LEXIS 25980, at *27-29 (N.D. Ohio Feb. 28, 2014) (whether class members were

20  injured required individualized inquiries because "[i]t will [] be impossible to distinguish

21  between the class members who did fully compensate [through subconsciously increasing their

22  tar and nicotine levels by increasing the puff volume or frequency] and those who did not

23  without conducting individualized hearings on the smoking habits and practices of the

24  members of the putative class"); *Lawrence v. Philip Morris USA, Inc.*, 164 N.H. 93, 97, 101

25  (2012) (same); *Campion*, 272 F.R.D. at 533 ("Plaintiff's theory that he and the class members

26  'faced a risk' of not receiving benefits under the home warranty plans is too speculative to

27  entitle them to restitution")). Here, there is no reason to inquire into individual habits or

28  circumstances of Class members, and either the challenged message was true or false.

BLOOD HURST & O'REARDON, LLP

No. 1:11-cv-226-TSB

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

00071957

### E.  The Question of the Proper Remedies Present Classwide Issues

P&G argues that Plaintiffs' damages theory does not meet *Comcast*, 133 S. Ct. 1426. (Opp. at 38-44).  In *Comcast*, plaintiff there failed to tie antitrust injury to any specific group of class members, so no classwide damages model was presented for any group.  *Id.* at 1434-35.  Contrary to P&G's argument, *Comcast* did not change the well-settled rule that individual damages calculations do not preclude class certification.  (Opp. at 38, n.33).  To the contrary, as the Sixth Circuit held, *Comcast* reaffirms that principle. *See In re Whirlpool*, 722 F.3d at 860-61 (quoting *Comcast*, "Recognition that individual damages calculations do not preclude certification under Rule 23(b)(3) is well nigh universal.").

Here, calculation of monetary relief is relatively straightforward because the purchase price can be readily calculated from sales data in the possession of P&G and third parties.  *See, e.g.*, §VII.E.1 below; O'Reardon Decl., ¶2 and Ex. 35 (explaining the detailed state-specific retail sales data possessed by Nielsen-competitor, IRI).

#### 1.  Aggregate Monetary Relief Is Appropriate and Readily Calculable

P&G next argues that an award of damages or restitution in an aggregate sum is not appropriate.  P&G states that Plaintiffs' citations are to antitrust and securities cases, but does not explain why that matters.  The reasoning in those cases holds here.  Next, P&G argues that an aggregated amount would include payment from consumers who did not suffer injury. P&G relies on one opinion, *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008). However, in *McLaughlin*, aggregate damages were not appropriate because "[t]he distribution method at issue would involve an initial estimate of the ***percentage of class members*** who were defrauded (and who therefore have valid claims)."  *Id.* at 231 (emphasis added).  That factor is not an issue here.  100% of Class members were defrauded.  There is no evidence (and it defies common sense) that some Class members knew of the falsity of P&G's advertising yet purchase Align anyway.  Thus, unlike in *McLaughlin*, because there are no individual issues, there is no danger that P&G would "be overpaying in the aggregate."  *Id.* at 232.  *See also id.* ("Moreover, in this case, the district court determined that 'evidence of the

BLOOD HURST & O'REARDON, LLP

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

1    percentage of the class which was defrauded and the amount of economic damages it suffered

2    appears to be quite weak.'"").[24]

3         Second, P&G argues that its own records do not support aggregate damage and

4    restitution amounts based on retail purchases in the five states at issue. (Opp. at 40). While

5    P&G has an interest in not paying excess damages, "this interest would only be implicated if

6    (i) its aggregate liability could not be reliably determined; or (ii) the defendant is entitled to

7    unclaimed portions of the judgment." *Forcellati*, 2014 U.S. Dist. LEXIS 50600, at *15. Here,

8    P&G's liability amount, based either on total retail sales or a conservative wholesale sales

9    measure for the five states at issue, can be readily determined.

10        As a general matter, a wrongdoer cannot escape liability by stating that its records do

11   not permit calculating damages or restitution with exact precision.[25]  The "principle is an

12   ancient one [] and is not restricted to proof of damage in antitrust suits" that "[t]he most

13   elementary conceptions of justice and public policy require that the wrongdoer shall bear the

14   risk of uncertainty which his own wrong has created." *Bigelow v. RKO Radio Pictures, Inc.*,

15   327 U.S. 251, 265 (1946).  Accordingly, while the jury "may not render a verdict based on

16   speculation or guesswork" the jury "may make a just and reasonable estimate of the damage

17   based on relevant data…[and] act upon probable and inferential, as well as direct and positive

18   proof." *Id.* at 264; *Broan*, 923 F.2d at 1235-36 (same).  "Any other rule would enable the

19   wrongdoer to profit by his wrongdoing at the expense of his victim." *Bigelow*, 327 U.S. at

20   264; *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 533-34 (6th Cir. 2008) (same).

21

22   [24]    P&G could always argue that the amount of damages awarded should be less.  For example, P&G could assert a set off defense because some Class members received refunds.

23   [25]    *See Broan Mfg. Co. v. Associated Distributors, Inc.*, 923 F.2d 1232, 1235-36 (6th Cir.

24   1991) (the rule that remote or speculative damages are not permitted "serves to preclude recovery [] only where the *fact* of damage is uncertain, *i.e.*, where the damage claimed is not the certain result of the wrong, not where the *amount* of damage alone is uncertain"); *FTC v.*

25   *Kuykendall*, 371 F.3d 745, 765 (10th Cir. 2004) (approving use of gross receipts for damages purposes because "[t]o the extent the large number of consumers affected by the defendants'

26   deceptive trade practices creates a risk of uncertainty, the defendants must bear that risk"); *Sunbelt*, 174 N.C. App. at 61 ("the measure of damages [under North Carolina's UDTPA] is

27   broader than common law actions…In cases where a claim for damages from a defendant's misconduct are shown to a reasonable certainty, the plaintiff should not be required to show an exact dollar amount with mathematical precision."); *Black v. Iovino*, 219 Ill. App. 3d 378, 392

28   (1991) (same, reviewing ICFA damages award).

1    Here, P&G admittedly maintains granular wholesale and retail sales data to which its

2    aggregate liability can be tied.  Penagos Decl., ¶¶6-7; Skolout Decl., Ex. 28.  Additionally,

3    P&G tracks its own wholesale sales, and receives nationwide retail sales data from Costco and

4    The Nielsen Company (who collects retail data for all U.S. retailers except Costco).  *See*

5    Penagos Decl., ¶5.  P&G also conducted direct retail sales through its website.  *Id.*, ¶12; Ex. 30

6    at PG-158504 ████████████████████████████

7    ████████████████████████    For those direct sales, P&G has the individual customer

8    and sales records, and the fact that only certain states are at issue here poses no issue.  Further,

9    granular retail sales data on a state-specific basis is readily available from Nielsen or its major

10   competitor, IRI (whose data also includes Costco's store-level point-of-sales data).  For

11   example, IRI can create a report that provides the following information for a rolling four-

12   week sales period for each package count version of Align: net unit quantity; weighted average

13   base price per unit; average price per unit; and average price per unit, and any promotions.  *See*

14   O'Reardon Decl., ¶2; Ex. 35 (describing available retail sales data); Ex. 36 (example IRI retail

15   sales data report); Ex. 37 (IRI press release entitled, "IRI Costco Collaborative Retail

16   Exchange™ (CRX): Exclusive Program Delivers Direct Access to Costco Data" states that IRI

17   collects 12 point-of-sale measures daily from Costco, including unit sales, dollar sales, and

18   average retail price).  Individual retailers also provide P&G with periodic retail sales reports.

19   ████████████████████████████████████████████████

20   ████████  ████████  ████  ████  ████  ████  ████  ████  █ █  ████

21   ████████████████████████████    Thus, the fact finder has

22   a wealth of evidence from which a just and reasonable estimate of damages or restitution may

23   be made.  *Bigelow*, 327 U.S. at 264.

24   Finally, the UCL, CLRA, FDUPTA, ICFA, and New Hampshire CFA also provide for

25   an award of restitution or other equitable remedies.  Cal. Bus. & Prof. Code §17203 (UCL);

26   Cal. Civ. Code §1780(a)(3) (CLRA); Fla. Stat. §501.211 (FDUPTA); 815 ILCS 505/10a

27   (ICFA); N.H.R.S.A. 358-A:10 (NHCFA).  Courts have considerable discretion in determining

28   these amounts.  *See, e.g.*, *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 179-

BLOOD HURST & O'REARDON, LLP

1    180 (2000) (court's discretion "is very broad" under the UCL to fashion an equitable award for

2    "deterrence of and restitution for unfair business practices"); *Colgan v. Leatherman Tool*

3    *Group, Inc.*, 135 Cal. App. 4th 663, 700 (2006) (UCL and CLRA); *Martinez v. Rick Case*

4    *Cards, Inc.*, 278 F. Supp. 2d 1371, 1373-74 (S.D. Fla. 2003) (FDUPTA); 815 ILCS 505/10a

5    (ICFA: "[t]he court, in its discretion may award…any other relief which the court deems

6    proper"); Cal. Civ. Code §1780(a)(5) (CLRA: same).

### 2.    Class Members Are Entitled to Full Refunds

8        P&G argues that under the laws at issue, Plaintiffs and Class members must calculate

9    the difference between the price each Class member paid for Align and the value of Align (the

10   out-of-pocket rule), or the difference in value between Align as received and as promised (the

11   benefit of the bargain rule).  According to P&G, because Align provides some value, a full

12   refund would be inappropriate.  Plaintiffs allege that because Align does nothing, it has no

13   value.  Whether P&G is correct or Plaintiffs are presents a classwide issue.

14       On April 21, 2014, P&G filed a notice of supplemental authority (Dkt. 128), submitting

15   *Caldera v. J.M. Smucker Co.*, No. 12-4936, 2014 U.S. Dist. LEXIS 53912 (C.D. Cal. Apr. 15,

16   2014) and *In re POM Wonderful LLC*, No. 10-ML-2199, 2014 U.S. Dist. LEXIS 40415 (C.D.

17   Cal. Mar. 25, 2014).  According to P&G, these opinions reject the notion that full refunds

18   should be awarded in class actions.  To the contrary, these cases illustrate the types of

19   situations were full refunds are appropriate and those where partial refunds are appropriate.

20   *Caldera* and *POM* each involve products that provide uses to class members aside from the

21   benefits touted in the subject advertisements.  Further, class members may have purchased for

22   reasons wholly unrelated to the alleged misrepresentations at issue.   *Caldera* involved

23   shortening and *POM* involved pomegranate juice.  *Caldera*, 2014 U.S. Dist. LEXIS 53912, at

24   *10 (In a case involving shortening products falsely advertised as healthful even though they

25   contain trans fat or high frutctose corn syrup, "class members would [not] necessarily be

26   entitled to a full refund of their purchase price.  Thus, Defendant's sales data alone would not

27   provide sufficient information to measure classwide damages."); *In re POM*, 2014 U.S. Dist.

28   LEXIS 40415, at *14 (full refund does not accurately measure classwide damages from

BLOOD HURST & O'REARDON, LLP

No. 1:11-cv-226-TSB

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

00071957

1    purchase of alleged falsely advertised pomegranate juice because regardless of the advertised

2    health benefits consumers received value in the form of hydration, vitamins and minerals).

3    Unlike *Caldera* and *POM*, there is only one reason to take Align. Neither party asserts that

4    Class members purchased Align for any reason other than digestive health.

5        *Khoday v. Symantec Corp.*, No. 11-180, 2014 U.S. Dist. LEXIS 43315, at *102-05 (D.

6    Minn. Mar. 31, 2014) is similar to this case. In *Khoday*, the court granted class certification of

7    California UCL and CLRA claims, citing *Comcast* finding that plaintiffs set forth a classwide

8    measure of damages because a full refund measure of damages "would likely be appropriate

9    here, where the products in question have no intrinsic value other than the advertised use." *See*

10    *also FTC v. Figgie Int'l*, 994 F.2d 595, 606 (9th Cir. 1993) (notwithstanding any de minimis

11    value, purchasers of falsely advertised heat detectors were entitled to full purchase price

12    restitution). Accordingly, the Class' entitlement to full refund damages or restitution can and

13    should be determined in one stroke.

14        **3.**      **Determining Individual Damages Awards Does Not Defeat**

15                **Certification**

16        P&G argues that the Court cannot reliably calculate individual damage awards because

17    Align has been sold in a variety of sizes and for a variety of prices, and most Class members

18    are unlikely to have receipts. (Opp. at 43-45). The Court does not need to. Plaintiffs will be

19    asking the jury for judgment in an aggregate sum, and not separate individual amounts.

20    P&G's interest is not in the amount a particular Class member may receive, but in the

21    aggregate amount awarded against it. *Hilao v. Estate of Marcos*, 103 F.3d 767, 786-87 (9th

22    Cir. 1996). As stated above, this amount can be reasonably calculated from the sales records

23    of P&G, retailers, and companies like Nielsen who track retail sales of Align or, if necessary,

24    derived from P&G's gross revenues – a very conservative measure with which P&G cannot

25    dispute. *See* §VII.E.1, above. Once an aggregate fund is calculated, distributing the fund is a

26    post-trial exercise and a routine matter for claims administrators. *See also Davis v. Southern*

27    *Bell Tel. & Tel. Co.*, No. 89-2839, 1993 U.S. Dist. LEXIS 20033, at *21-*22 (S.D. Fla.

28    Dec. 23, 1993) (calculation of damages is "mechanical . . . once the fact-finder determines the

BLOOD HURST & O'REARDON, LLP

1   amount of the overcharge"); *Chavez*, 268 F.R.D. at 379 ("at least one measure of damages that

2   is determinable by objective criteria . . . [is] the price differential between the premium paid

3   for the Blue Sky line of beverages and the lower price of Hansen's mainstream line of

4   beverages"). The *Wiener* court recognized that this was an issue "inherent in calculating

5   damages for a class action based on consumer products sold at varying prices," but believed

6   the calculations of the difference in the value of the yogurt as advertised and as received were

7   not as individualized as Dannon implied, and that a workable method of computing damages

8   (for both the consumer fraud and express warranty claims) could be achieved. *Wiener*, 255

9   F.R.D. at 670-71; *Klay*, 382 F.3d at 1273 (if necessary, individual damages can be handled by

10   a special master).

11   **F.    California's Express Warranty Notice Requirement Does Not Present**

12   **Individualized Issues**

13   P&G argues that California's notice requirement for breach of express warranty claims

14   means that individual issues will predominate for a discrete portion of the California Class.

15   (Opp. at 45-46). It agrees that notice is not required when a consumer purchases from a third-

16   party retailer, but contends that the fraction of a percent of Class members who purchased

17   directly from P&G's online website from California are required to provide notice, raising

18   individual inquiries for that subset of the Class. In reality, this is a common issue that compels

19   certification. Plaintiffs contend that the notice sent by plaintiff Rikos on behalf of the Class is

20   sufficient, while P&G contends that it is not. The Court need make one ruling, which will

21   apply to all Class members falling into this group. *See Cartwright v. Viking Indus.*, No. 07-

22   2159, 2009 U.S. Dist. LEXIS 83286, at *27-28 (E.D. Cal. Sept. 11, 2009) (granting class

23   certification of express and implied warranty claims and stating "whether plaintiffs and the

24   class were required to give notice [for breach of warranty claims] and/or whether they

25   provided sufficient notice are questions that are likely common to the class").

26   ///

27   ///

28   ///

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

## VIII. A CLASS ACTION IS MANAGABLE AND SUPERIOR TO OTHER METHODS OF ADJUDICATION

P&G contends that this case does not meet Rule 23's superiority requirement for two reasons. First, repeating other arguments, it asserts that "[t]he numerous factual inquiries that would be required of each class member in this case render a class action unmanageable." (Opp. at 47-48). As explained, individualized issues do not predominate.

Second, P&G contends that because the laws at issue have varying elements, instructing the jury "would be unworkable, and application of the differing laws would confuse a jury." (Opp. at 48-49). Generally, "[t]he benefit of any doubts as to manageability should be resolved in favor of upholding the class, subject to later possible reconsideration." 3 *Newberg, supra* §7:26. But here, there should be no doubts. Far more complex cases than this one are successfully tried to a jury.

First, not all of the claims will be tried to a jury. The California UCL and New Hampshire CFA claims are not tried to a jury.[26] The question whether P&G's conduct is unfair or deceptive under the North Carolina UDTPA is also not for the jury. (Opp. at 49). Plaintiffs may also elect to try the Illinois and Florida claims to a judge or jury (although Plaintiffs elect a jury). *DeliverMed Holdings, LLC v. Medicate Pharm., Inc.*, No. 10-684, 2012 U.S. Dist. LEXIS 12261, at *11 (S.D. Ill. Feb. 1, 2012); *Henderson v. Demars*, No. 11-80589, 2013 U.S. Dist. LEXIS 38564, at *44 (S.D. Fla. Mar. 20, 2013). The jury will be instructed on at most five claims and maybe only three. Obviously, juries can and routinely are instructed on three to five claims.

Additionally, this is not a particularly complex case to try. At this point, P&G has not contested the message its advertisements convey. Therefore, the primary issue in the case is the science issue – whether Align works. P&G's expert has identified just six clinical studies and the law in each of the states is largely the same. *See, e.g., Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 550 (C.D. Cal. 2012) ("There are no material differences in the consumer protection laws of [California, Florida and New York] other than the applicable statute of

---

[26] *Hodge v. Superior Court*, 145 Cal. App. 4th 278, 284 (2006); *Hair Excitement, Inc. v. L'Oreal U.S.A., Inc.*, 158 N.H. 363, 368-69 (2008).

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

1  limitations."). *Id*. at 541 ("with small differences in wording, all three states appear to employ

2  the same causation and reliance standard."); §VII.C.2.b, above (North Carolina's UDTPA

3  largely overlaps the UCL, CLRA, and FDUPTA).

4      P&G claims that the following differences will confuse the jury: 1) the New Hampshire

5  CPA requires knowledge or intent to deceive; 2) the Illinois CFA requires that defendant

6  intended plaintiff to rely on the deception; 3) the California, Florida, and North Carolina laws

7  have no scienter requirement; 4) under the North Carolina UDTPA, the Court determines

8  whether a practice is unfair or deceptive; 5) and the laws have different causation or reliance

9  requirements.  (Opp. at 49).  As discussed above, because the digestive health benefit claim is

10  material, reliance or causation, where necessary, can be demonstrated for all applicable claims.

11  *See* §VII.C, above.   Even assuming P&G is correct about the other "differences," these

12  differences amount to just *two* special instructions (the New Hampshire CPA (a bench claim)

13  requires knowledge or intent to deceive, and the Illinois CFA requires that defendant intend

14  plaintiff to rely on the deception).[27]   Nonetheless, if a legitimate concern arose, separate juries

15  could be empanelled for the separate Classes.

16  **IX.  CONCLUSION**

17      For each of the foregoing reasons, Plaintiffs' motion for class certification should be

18  granted, Plaintiffs should be appointed the representatives of the Classes and Timothy G.

19  Blood of Blood Hurst & O'Reardon, LLP should be appointed Class Counsel.

20

21  Dated:  April 25, 2014        FUTSCHER LAW PLLC
                                     DAVID A. FUTSCHER (OH 0039653)

22

23                                 By:          *s/ David A. Futscher*

24                                     DAVID A. FUTSCHER

25                                 913 N. Oak Drive
                               Villa Hills, KY  41017

26                                 Telephone: 859/912-2394
                               david@futscherlaw.com

27

28    [27]    A reckless disregard for the truth also satisfies the degree of knowledge or intent required to prove a New Hampshire CPA claim.  *Beer v. Bennett*, 160 N.H. 166, 171 (2010).

BLOOD HURST & O'REARDON, LLP

00071957

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (CA 149343)
LESLIE E. HURST (CA 178432)
THOMAS J. O'REARDON II (CA 247952)
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

NICHOLAS & TOMASEVIC, LLP
CRAIG M. NICHOLAS (178444)
ALEX M. TOMASEVIC (245598)
225 Broadway, 19th Floor
San Diego, CA 92101
Telephone: 619/325-0492
619/325-0496 (fax)
cnicholas@nicholaslaw.org
atomasevic@nicholaslaw.org

BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
ANDREW S. FRIEDMAN
ELAINE A. RYAN
PATRICIA N. SYVERSON (203111)
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: 602/274-1100
602/798-5860 (fax)
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

MORGAN & MORGAN, P.A.
J. ANDREW MEYER
RACHEL L. SOFFIN
One Tampa City Center
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: 813/223-5505
813/223-5402 (fax)
ameyer@forthepeople.com
rsoffin@forthepeople.com

O'BRIEN LAW FIRM, PC
EDWARD K. O'BRIEN
One Sundial Avenue, 5th Floor
Manchester, NH 03103
Telephone: 603/668-0600
603/672-3815 (fax)
eobrien@ekoblaw.com

*Attorneys for Plaintiffs*

BLOOD HURST & O'REARDON, LLP

**CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2014, the foregoing documents were electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List. Further, on April 25, 2014, plaintiffs' counsel caused unsealed versions of the foregoing documents in paper form and on a CD to be sent via Federal Express overnight mail to the Clerk's Office of the United States District Court for the Southern District of Ohio, located at Potter Stewart U.S. Courthouse, 100 East Fifth Street, Cincinnati, Ohio 45202, for delivery to Chambers after docketing.

I hereby certify that on April 25, 2014, and pursuant to the parties' agreement to accept service by electronic means, counsel for the parties were also provided with unsealed versions of the following documents:

- Plaintiffs' Reply in Support of Motion for Class Certification; and
- Select Exhibits to the Declaration of Thomas J. O'Reardon II.

*s/ David A. Futscher*
DAVID A. FUTSCHER

No. 1:11-cv-226-TSB
PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION

BLOOD HURST & O'REARDON, LLP

00071957