# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DINO RIKOS, *et al.*                     :          Case No. 1:11-cv-226
                                         :
              Plaintiffs,                :          Judge Timothy S. Black
                                         :
vs.                                      :
                                         :
THE PROCTER & GAMBLE                     :
COMPANY,                                 :
                                         :
              Defendant.                 :

## ORDER GRANTING PLAINTIFFS' MOTION
## FOR RULE 23 CLASS CERTIFICATION (Doc. 110)

Before the Court is Plaintiffs' motion for class certification (Doc. 110) and the

parties' responsive memoranda.  (Docs. 127 and 137).  Additionally, the Court held a

hearing on class certification on May 5, 2014.  Upon careful review, the Court concludes

that this case is appropriate for certification as a five single-state class action, and,

accordingly, Plaintiffs' motion for class certification is **GRANTED** for the reasons

stated below.

Plaintiffs seek certification of five single-state classes of consumers who

purchased Defendant's product Align in California, Florida, Illinois, North Carolina, and

New Hampshire from March 1, 2009 to the date notice is first provided to the classes.

Excluded from the proposed classes are Defendant, its officers, directors, and employees,

and those who purchased Align for the purpose of resale.  Plaintiffs also seek to be

appointed class representatives for the claims they assert, and Plaintiffs move the Court to

appoint Timothy G. Blood, Esq., of Blood Hurst & O'Reardon, LLP, as class counsel.

# I.     BACKGROUND FACTS[1]

Align is an over-the-counter probiotic supplement manufactured by Defendant, which contains the probiotic strain Bifidobacterium infantis 35624 (trademarked as Bifantis®).  (Doc. 125 at ¶ 4).  The World Health Organization ("WHO") defines probiotics as "[l]ive microorganisms which, when administered in adequate amounts, confer a health benefit on the host."  (Doc. 110-2 at 20).  Align's development started in 1999 when Defendant entered into a research agreement with Alimentary Health Limited ("Alimentary Health"), which researches and develops proprietary probiotic and pharmabiotic treatments.  (Doc. 125 at ¶ 5).  Through its research, Alimentary Health identified Bifidobacterium infantis 35624, and, in 2005, Defendant entered into a licensing agreement with Alimentary Health to manufacture and market products containing Bifidobacterium infantis 35624.  (*Id.* at ¶¶ 6-7).  Under this agreement, Defendant created the probiotic supplement that became Align.  (*Id.* at ¶ 7).

Align was first made available to consumers in September 2005, and it was sold through the Align eStore (www.aligngi.com) and a toll-free number.  (*Id.* at ¶ 9; Doc. 124 at ¶¶ 11 and 19).  In addition, Defendant's sales representatives personally met with doctors in three test cities to introduce Align.  (Doc. 124 at ¶ 19; Doc. 125 at ¶ 9).  Within four months of the introduction of the product through these channels, sales of Align expanded to 49 states.  (Doc. 125 at ¶ 9).  Over the next few years, Defendant's sales

---

[1] The facts set forth here are undisputed and drawn from the parties' pleadings (*see* Docs. 110 and 127).

representatives continued to meet with doctors in additional cities, and Defendant expanded the product's availability to pharmacists and certain online retailers, in addition to the Align eStore.  (Doc. 124 at ¶ 20; Doc. 125 at ¶ 10).

Defendant introduced Align in retail stores and advertised via mass media in three test markets in late 2007, and then launched in retail stores nationwide with a corresponding mass media campaign in April 2009.  (Doc. 124 at ¶ 20; Doc. 125 at ¶¶ 10 and 11).  Align also continued to be sold through online retailers the Align eStore (until June 2010) and the P&G eStore (www.pgestore.com) from January 2010 to September 2013.  (Doc. 125 at ¶ 11).  Defendant's sales representatives continued to meet with doctors, primarily gastroenterologists and primary care physicians.  (Doc. 124 at ¶¶ 11 and 21; Doc. 125 at ¶ 11).  Defendant now markets Align through mass media, including print and television advertisements.  (Doc. 124 at ¶ 63; Doc. 125 at ¶ 11).

Defendant has marketed Align to both professionals and consumers since the national launch of the product in April 2009.  (Doc. 124 at ¶¶ 11, 21, and 63). Defendant's professional marketing has focused on in-person visits by Defendant's sales representatives with gastroenterologists and primary care physicians.  (Doc. 124 at ¶¶ 64 and 66; Doc. 125 at ¶¶ 9-10 and 12).  Materials prepared specifically for doctors focused on the scientific substantiation for the probiotic strain in Align (Bifidobacterium infantis 35624), and provided citations and/or links to the published scientific studies concerning probiotics and Bifidobacterium infantis 35624.  (Doc. 125 at ¶ 14).

When Align launched nationally in April 2009, the consumer advertising emphasized defending against five specific signs of digestive imbalance: constipation, diarrhea, urgency, gas and bloating.  (Doc. 124 at ¶ 71).  After September 2009, the advertising focused more generally on digestive balance, and added the statement that Align is the "#1 Gastroenterologist Recommended" brand.  (*Id.* at ¶ 72).  The Align packaging also includes a money-back guarantee.  (*Id.*).

Nearly half of consumers who purchase Align are repeat purchasers.  (Doc. 124 at ¶¶ 14 and 46; Doc. 126 at ¶ 16).  A high repeat purchase rate generally indicates satisfaction, and the market research on Align confirms this product satisfaction.  (Doc. 124 at ¶¶ 14 and 47-56).  Consumers report that that the product improved their digestive health, and in many cases, their quality of life.  (Doc. 114 at ¶ 18).[2]

---

[2]  The question whether or not Align actually provides benefit to digestive health is not yet properly before the Court.  "**In determining the propriety of a class action, the question is not whether the** plaintiff or **plaintiffs** have stated a cause of action or **will prevail on the merits, but rather whether the requirements of Rule 23 are met.**"  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, (1974) (emphasis supplied).  **The Court** may consider "only those matters relevant to deciding if the prerequisites of Rule 23 are satisfied" and **"may not 'turn the class certification proceedings into a dress rehearsal for the trial on the merits.'"**  *In re Whirlpool*, 722 F.3d at 851-52 (*quoting Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 811 (7th Cir. 2012) and *citing Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) (emphasis supplied)); *see also Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2007); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 553-54 (6th Cir. 2006).

## II.    REQUIREMENTS FOR CLASS CERTIFICATION

A plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 of the Federal Rules of Civil Procedure are met.  *Coleman v. Watt,* 40 F.3d 255, 258 (8th Cir. 1994).  In considering the Fed. R. Civ. P. 23 requirements, the Court acknowledges that "[w]hen there is a question as to whether certification is appropriate, the Court should give the benefit of the doubt to approving the class."  *In re Workers' Comp.,* 130 F.R.D. 99, 103 (D. Minn. 1990) (citations omitted).  Consumer protection claims are ideal for class certification.  *See, e.g., Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *System Fed'n No. 91, Ry. Emp. Dept. v. Reed*, 180 F.2d 991, 995 (6th Cir. 1950); *Delahunt v. Cytodyne Techs*., 241 F. Supp. 2d 827 (S.D. Ohio 2003).  Class treatment is particularly appropriate where "the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct."  *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971); *see also Amchem*, 521 U.S. at 617 (policy at core of class actions is to permit adjudication of small claims); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., 722 F.3d 838, 861 (6th Cir. 2013); *Butler v. Sears, Roebuck & Co*., 727 F.3d 796, 801-02 (7th Cir. 2013).

As previously emphasized, "**[i]n determining the propriety of a class action, the question is not whether the** plaintiff or **plaintiffs** have stated a cause of action or **will prevail on the merits, but rather whether the requirements of Rule 23 are met.**"

5

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, (1974) (emphasis supplied). **The Court** may consider "only those matters relevant to deciding if the prerequisites of Rule 23 are satisfied" and **"may not 'turn the class certification proceedings into a dress rehearsal for the trial on the merits.'"** *In re Whirlpool*, 722 F.3d at 851-52 (*quoting Messner v. Northshore Univ. HealthSys*., 669 F.3d 802, 811 (7th Cir. 2012) and *citing Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) (emphasis supplied)); *see also Beattie v. CenturyTel, Inc*., 511 F.3d 554, 560 (6th Cir. 2007); *Daffin v. Ford Motor Co*., 458 F.3d 549, 553-54 (6th Cir. 2006).

As a preliminary matter, this Court must determine whether the proposed classes are ascertainable. *See*, *e.g.*, *Romberio v. UnumProvident Corp.*, 385 Fed. Appx. 423, 431 (6th Cir. 2009); *Cerdant, Inc. v. DHL Express (USA), Inc.*, No. 2:08-cv-186, 2010 U.S. Dist. LEXIS 95085, at *14-15 (S.D. Ohio Aug. 25, 2010). Then, Fed. R. Civ. P. 23 establishes a two-step analysis to determine whether class certification is appropriate. "First, plaintiffs must satisfy the four prerequisites of Federal Rule Civil Procedure 23(a). Second, the action must satisfy at least one of three subdivisions of Federal Rule Civil Procedure 23(b)." *In re Retek Inc. Sec. Litig.,* 236 F.R.D. 431, 434 (D. Minn. 2006).

**A.    Ascertainability**

Ascertainability is not satisfied if the putative classes, as defined, are overbroad. *See*, *e.g.*, *McGee v. East Ohio Gas Co*., 200 F.R.D. 382, 388 (S.D. Ohio 2001); *Givens v. Van Devere, Inc.*, No. 1:11-cv-666, 2012 U.S. Dist. LEXIS 131934, at *40 (N.D. Ohio

Apr. 27, 2012).  Nor is the ascertainability requirement satisfied if the class members

cannot be reliably and feasibly identified.  *See, e.g.*, *Carrera v. Bayer Corp.*, 727 F.3d

300, 307-08 (3d Cir. 2013).

Defendant argues that the classes are overbroad and therefore that no class should

be certified because (1) not all class members were injured because they benefitted from

or are satisfied with Align or received refunds; (2) some class members lack Article III

standing; and (3) class membership cannot be reliably or feasibly ascertained.  (Doc. 127

at 15-20).

### 1.    Injury

Consumer happiness is not the touchstone in a false advertising case.  **<u>The

question is whether the defendant falsely advertised the product</u>**:

> The focus of the [California] UCL and [false advertising law] is on the
> actions of the defendants, not on the subjective state of mind of the class
> members.  All of the proposed class members would have purchased the
> product bearing the alleged misrepresentations.  Such a showing of
> concrete injury under the UCL and [false advertising law] is sufficient to
> establish Article III standing.  Accordingly, the Court need not examine
> whether each putative class member was unsatisfied with the product in
> order to find that common issues predominate.

*McCrary v. Elations Co., LLC*, No. 13-00242, 2014 U.S. Dist. LEXIS 8443, at *44-45,

*41-44 (C.D. Cal. Jan. 13, 2014) (*quoting Ries v. Arizona Beverage USA LLC*, 287

F.R.D. 523, 536 (N.D. Cal. 2012) and citing *In re Google AdWords Litig.*, No. 08-3369,

2012 U.S. Dist. LEXIS 1216, at *30-31 (N.D. Cal. Jan. 5, 2012)).  Courts "need not

examine whether each putative class member was unsatisfied with the product in order to

find that common issues predominate." *Id.* at \*44-45; *see also Johnson v. General Mills, Inc.*, 275 F.R.D. 282, 289 (C.D. Cal. 2011) ("individualized proof of deception and reliance are not necessary for Mr. Johnson to prevail on the class claims.  Again, the common issue that predominates is whether General Mills' packaging and marketing communicated a persistent and material message that YoPlus promoted digestive health"); *Cabral v. Supple*, No. 12- 00085-MWF, 2012 U.S. Dist. LEXIS 137365, at \*9-11 (C.D. Cal. Sept. 19, 2012) (rejecting defendant's argument that "satisfied customers" were not injured and finding that "[t]he truth or falsity of Supple's advertising will be determined on the basis of common proof – i.e., scientific evidence that the Beverage is 'clinically proven effective' (or not) – rather than on the question whether repeat customers were satisfied").

Further, neither Defendant nor its expert, Dr. Merenstein, contends that Align works for some, but not others.  This is consistent with Defendant's advertising, which makes unqualified claims that Align will provide improved digestive health.  Dr. Merenstein also agrees that **the question of whether Align works is a classwide one**. (Doc 137-2 at 15-16).  The issue of whether class members actually "benefitted from" Align – regardless of their perception – is a classwide question of science, because it applies to all class members.  *Johnson*, 275 F.R.D. at 288-89 ("**General Mills could defeat the claims of the entire class by proving that YoPlus promotes digestive health in the manner that General Mills allegedly represented**") (emphasis supplied);

8

*Cabral*, 2013 U.S. Dist. LEXIS 184170 at *10-11 (whether beverage was "clinically proven effective" was common issue); *see also FTC v. Pantron I Corp.*, 33 F.3d 1088, 1100 (9th Cir. 1994) ("Where, as here, a product's effectiveness arises solely as a result of the placebo effect, a representation that the product is effective constitutes a 'false advertisement' even though some consumers may experience positive results"). Although repeat purchasers may mean some customers were satisfied or believed the product was effective, "this (arguable) inference does not threaten class ascertainability or demonstrate that most or all potential class members lack standing." *Cabral*, 2013 U.S. Dist. LEXIS 184170 at *8-9. Moreover, whether Defendant is correct and proof of repurchase means Align works as advertised is itself a classwide question. *Id.* at *10-11.

Finally, the fact that Defendant has paid refunds to a small fraction of the proposed classes does not defeat certification. (Doc. 126 at ¶¶ 6 and 20). Defendant would simply have an offset defense with regard to those amounts, which would reduce the class judgment. Alternatively, upon an adequate showing that full refunds have been paid, these class members could simply be excluded from the classes, as the Court may modify a class definition if it so wishes. *Kendrick v. Std. Fire Ins. Co.*, No. 06-141, 2012 U.S. Dist. LEXIS 135694, at *35-36 (E.D. Ky. Sept. 30, 2010) ("The definition of the class ultimately is to be determined by the court, not the parties").

2.      **Article III Standing**

Defendant next argues that certification is not appropriate because proposed class

members do not have Article III standing if they benefited from or were happy with

Align or received Defendant's advertising message from somewhere other than the label.

(Doc. 127 at 17-18).  "The class representative must allege an individual, personal injury

in order to seek relief on behalf of himself or any other member of the class."  *Sutton v.*

*St. Jude Med. S.C., Inc*., 419 F.3d 568, 570 (6th Cir. 2005).  Other Circuits agree that the

Article III standing inquiry focuses on the class representative's standing, not each

member of the class.  *See Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 532 (C.D.

Cal. 2011) ("the majority of authority indicates that it is improper for this Court to

analyze unnamed class members' Article III standing where, as here, Defendants do not

successfully challenge the putative class representative's standing") (*citing Lewis v.*

*Casey*, 518 U.S. 343, 395 (1996) (Souter, J., concurring) (class certification "does not

require a demonstration that some or all of the unnamed class could themselves satisfy

the standing requirements for the named plaintiffs") and *Stearns v. Ticketmaster Corp*.,

655 F.3d 1013, 1021 (9th Cir. 2011) (observing that the Ninth Circuit has repeatedly held

that "[i]n a class action, standing is satisfied if at least one named plaintiff meets the

requirements…. Thus, we consider only whether at least one named plaintiff satisfies the

standing requirements")); *In re Deepwater Horizon*, 739 F.3d 790, 800-02 (5th Cir. 2014)

(collecting cases).  Defendant concedes that absent proposed class members do not have

10

to submit evidence of personal standing. (Doc. 127 at 18). Indeed, regardless of the approach, individual inquiry is not required because, at a minimum, standing is established if the class representative has standing and the class is defined in such a way that anyone within it would have standing. *Deepwater Horizon*, 739 F.3d at 801.

Here, any purchaser of a falsely advertised product would have standing under the false advertising laws where, as here, the class is defined as the purchasers of that product. And here, the evidence is uncontroverted that there is only one reason to buy Align: for its advertised digestive health benefits. All proposed class members spent money on the allegedly falsely advertised product. Such economic loss is a classic form of injury-in-fact and confers Article III standing. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 560 (S.D. Cal. 2012). All proposed class members were necessarily exposed to and purchased Align with the alleged false and deceptive digestive health statements on the packaging and labeling. *Johns*, 280 F.R.D. at 558 (granting class certification where "at a minimum, everyone who purchased the Men's Vitamins would have been exposed to the prostate claim that appeared on every package from 2002 to 2009"); *Wiener v. Dannon Co.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009) (same).

### 3.     Class Membership

Fed. R. Civ. P. 23 presumes the existence of "a definite or ascertainable class." 1 Rubenstein, *Newberg on Class Actions* §3:2 (5th ed. 2013). "[A] class must exist," and

11

it must "be susceptible of precise definition.'" 5 *Moore's Federal Practice* §23.21[1] (3d ed. 1997). The requirement "focus[es] on the question of whether the class can be ascertained by objective criteria" as opposed to "subjective standards (e.g., a plaintiff's state of mind) or terms that depend on resolution of the merits (e.g., persons who were discriminated against)." Newberg, §3:3; *Manual for Complex Litigation* §21.222 (4th ed. 2004).

The Sixth Circuit's ascertainability criteria were applied in *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012). The district court certified the proposed classes, and, on appeal, the defendants challenged ascertainability. The Sixth Circuit rejected the defendants' argument that the classes were impermissibly indefinite, holding that "[f]or a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." *Id*. at 538. Because plaintiff's classes were "defined by classic categories of objective criteria," including location, geographical boundaries, the local tax for that district, and the local tax charged, they were adequately defined (and by objective criteria). *Id*. at 539. The Sixth Circuit also considered the administrative feasibility of the class and defendant's argument that it would be required to review millions of policies to determine which policyholders were overcharged. The court held the district court properly rejected these arguments and noted "the size of a potential class and the need to review individual files to identify its members are not reasons to deny

class certification." *Id.* Courts throughout the country have routinely used this

definition.[3] Courts in this Circuit routinely certify classes of purchasers of over-the-

counter products where it will be impossible to identify and notice every member of the

class.[4] To deny certification on ascertainability grounds in this case would be to abandon

---

[3] *See, e.g.*, *Ebin v. Kangadis Food, Inc.*, No. 13-2311, 2014 U.S. Dist. LEXIS 25838, at *13-15 (S.D.N.Y. Feb. 24, 2014) (granting certification of a class of purchasers of olive oil because accepting the argument that without receipts a class is unmanageable "would render class actions against producers almost impossible to bring" although "the class action device, at its very core, is designed for cases like this where a large number of consumers have been defrauded but no one consumer has suffered injury sufficiently large as to justify bringing an individual lawsuit"); *Ries*, 287 F.R.D. at 535-36 (granting certification of a false advertising case involving purchases of AriZona Iced Tea, and rejecting arguments that most class members do not have proof they are in the class because they do not have receipts, and that the class was overbroad because it includes absent class members who lack Article III standing); *Forcellati v. Hyland's, Inc.*, No. 12-1983, 2014 U.S. Dist. LEXIS 50600, at *13-14 (C.D. Cal. Apr. 9, 2014) (rejecting defendant's argument that the class is unascertainable because there are no purchase records); *McCrary*, 2014 U.S. Dist. LEXIS 8443 at *22-27, 41-44 (rejecting ascertainability argument and finding that "it is enough that the class definition describes 'a set of common characteristics sufficient to allow' a prospective plaintiff to 'identify himself or herself as having a right to recover based on the description'"); *Astiani v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) (granting certification of a false advertising case involving purchases of Kashi food products, and rejecting argument that the class definition was unascertainable because defendant does not have records of consumer purchases); *Zeisel v. Diamond Foods, Inc.*, No. 10-1192, 2011 U.S. Dist. LEXIS 60608, at *13-17, 19-21 (N.D. Cal. June 7, 2011) (granting certification of a false advertising case involving purchases of walnuts, and rejecting arguments that absent class members were not injured and lacked standing, and the class was unascertainable because defendant did not track consumer purchases); *Ackerman v. Coca-Cola Co.*, No. 09-395, 2013 U.S. Dist. LEXIS 184232, at *61-62 (E.D.N.Y. July 18, 2013) (the class was ascertainable because "[w]hile it may be difficult to locate those individuals, since most will not have kept receipts or other documentation of their purchases, the criteria used to define the class are objective"); *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417-18 (N.D. Ill. 2012) (same).

[4] *See, e.g.*, *Godec v. Bayer Corp.*, No. 10-224, 2011 U.S. Dist. LEXIS 131198, at *22-23 (N.D. Ohio Nov. 11, 2011) (vitamin products); *Pfaff v. Whole Foods Mkt. Group, Inc.*, No. 1:09-cv-02954, 2010 U.S. Dist. LEXIS 104784, at *16-17 (N.D. Ohio Sept. 29, 2010) (cases of wine and grocery items); *Lackowski v. Twinlab Corp.*, No. 00-75058, 2001 U.S. Dist. LEXIS 25634 (E.D. Mich. Dec. 28, 2001) (dietary supplements); *Gasperoni v. Metabolife*, No. 00-71255, 2000 U.S. Dist. LEXIS 20879, at *25 (E.D. Mich. Sept. 27, 2000) (dietary supplements).

the law in the Sixth Circuit that only requires that the class definition describe objective

criteria that allows a prospective class member to identify himself or herself as having a

right to recover or opt out based on the description.  *Young*, 693 F.3d at 538.

Additionally, beyond ignoring the Sixth Circuit's test for ascertainability, to accept

Defendant's argument that the proposed classes are not ascertainable would require

dispensing with the Sixth Circuit's admonition underlying its ascertainability analysis:

> It is often the case that class action litigation grows out of systemic failures
> of administration, policy application, or records management that result in
> small monetary losses to large numbers of people.  To allow that same
> systemic failure to defeat class certification would undermine the very
> purpose of class action remedies.  We reject Defendants' attacks on
> administrative feasibility… . *Id.* at 540.

In fact, because certification is appropriate in situations where direct notice is not

possible, it is well-established that notice by publication or posting notice at retailers

satisfies due process.[5]  Further, claim forms and affidavits reviewed by class action

claims administrators for indicia of fraud are routinely accepted methods of proving class

---

[5] *See Galvan v. KDI Distribution Inc*., No. 08-999, 2011 U.S. Dist. LEXIS 127602, at *11-13 (C.D. Cal. Oct. 25, 2011) ("while Krossland cannot directly identify the class members, it can [] identif[y] the retailers who sold its cards…[n]otice can be distributed through the same channels Krossland uses to advertise its products: posting class notice at retail stores where Krossland cards are sold, notifying past purchasers to identify themselves in order to participate"); *Bandow v. FDIC*, No. 1:08-CV-02771, 2008 U.S. Dist. LEXIS 105656, at *7 (N.D. Ohio Dec. 22, 2008) (finding publication notice satisfied due process where potential class members were unknown); *Jordan v. Global Natural Resources, Inc*., 102 F.R.D. 45, 51 (S.D. Ohio 1984) (same); *Mirfashi v. Fleet Mortg. Corp*., 356 F.3d 781, 786 (7th Cir. 2004) ("When individual notice is infeasible, notice by publication in a newspaper of national circulation…is an acceptable substitute"); *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 317 (1950) ("This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning").

membership and amount awarded.[6]  If needed, the Court has a number of management

tools available to address distribution issues, including using a special master to review

individual claims.  *Klay v. Humana, Inc*., 382 F.3d 1241, 1273 (11th Cir. 2004); *In re*

*Visa Check/MasterMoney Antitrust Litig*., 280 F.3d 124, 141 (2d Cir. 2001).

Accordingly, the Court finds that the proposed classes here – all consumers who

purchased the product within the relevant time period and in the relevant states – are

"defined by classic categories of objective criteria," and Plaintiffs therefore satisfy the

implied prerequisite of ascertainability.  *Young*, 693 F.3d at 539.

## B.     Fed. R. Civ. P. 23(a)

This case also satisfies the four requirements for class certification under Rule

23(a) – *i.e.*, numerosity, commonality, typicality, and adequacy of representatives.

### 1.     Numerosity

Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all

members is impracticable."  The plaintiff is not required to "establish that it is impossible

to join all members of the proposed class[,]" but simply that joinder "would be difficult

and inconvenient."  *Day v. NLO*, 144 F.R.D. 330, 333 (S.D. Ohio 1992).

---

[6] *See Hilao v. Estate of Marcos*, 103 F.3d 767, 786-87 (9th Cir. 1996); Alba Conte & Herbert B. Newberg, *3 Newberg on Class Actions*, §10:12 (4th ed. 2002) ("A simple statement or affidavit may be sufficient where claims are small…"); *Ramos v. Philip Morris Cos., Inc*., 743 So. 2d 24, 29-30 (Fla. Dist. Ct. App. 1999) (an affidavit alleges facts "sufficient to support class membership"); *Boundas*, 280 F.R.D. at 417-18 ("anybody claiming class membership [who does not have written proof] will be required to submit an appropriate affidavit, which can be evaluated during the claims administration process if Boundas prevails at trial"); *Forcellati*, 2014 U.S. Dist. LEXIS 50600 at *19-20.

While no strict numerical test exists, "thousands" of products sold will satisfy the numerosity requirement. *In re Whirlpool*, 722 F.3d at 852; *see also Pfaff*, 2010 U.S. Dist. LEXIS 104784 at *9-10 (rejecting argument that receipts are needed to prove numerosity). Between 2009 and 2013, Defendant sold over 9.5 million (9,500,000) packages of Align. (Doc. 110-16 at 15-21). Moreover, California, Florida, Illinois, and North Carolina were among the top ten states in terms of online sales of Align. (Doc. 137-2 at 53 and 57). The numerosity requirement is readily satisfied.

## 2. Commonality

Fed. R. Civ. P. 23(a)(2) is satisfied where there are "questions of law or fact common to the class," an element which is known as "commonality." Commonality is determined by whether the issues raised have "the capacity [in] a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Sprague v. GMC*, 133 F.3d 388, 398 (6th Cir. 1998) (test is whether there is a "common issue the resolution of which will advance the litigation"). "To demonstrate commonality, plaintiffs must show that class members have suffered the same injury." *In re Whirlpool*, 722 F.3d at 852. "[T]here need be only one common question to certify a class." *Id*. at 853. "The mere fact that questions peculiar to individual class members could remain does not necessarily defeat a finding a commonality." *Goldson v. Fed. Home Loan Mortg. Corp*., No. 2:08-cv-844, 2010 U.S Dist. LEXIS 108206, at *21 (S.D. Ohio Sept. 28, 2010).

This prerequisite is readily met in this case. As stated in *Wiener*, a case with similar consumer protection claims of digestive health benefits derived from a "probiotic" food product, "[t]he proposed class members clearly share common legal issues regarding … alleged deception and misrepresentations in … advertising and promotion of the Products." 255 F.R.D. at 664-65.[7] Here, determining whether Align provides any digestive health benefit is a common question that will advance the litigation. (*See also* Doc. 85 at ¶ 47) (listing other common issues).

### 3. Typicality

Fed. R. Civ. P. 23(a)(3) requires that "the claims … of the representative parties be typical of the claims … of the class." Although they are separate and distinct requirements, commonality and typicality "tend to merge" and are often discussed together. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

A proposed class representative's claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and

---

[7] *See also Fitzpatrick v. General Mills, Inc*., 635 F.3d 687, 696 (S.D. Fla. 2010) ("Whether General Mills' claim that YoPlus aids in the promotion of digestive health is 'deceptive' is a mixed question of law and fact common to every class member"); *Nelson v. Mead Johnson Nutrition Co*., 270 F.R.D. 689, 693 (S.D. Fla. 2010) (common questions included "whether Defendant's representations about Enfamil® LIPIL® were true"); *Johns*, 280 F.R.D. at 557 ("the predominating common issues include whether Bayer misrepresented that the Men's Vitamins 'support prostate health' and whether the misrepresentations were likely to deceive a reasonable consumer"); *Johnson*, 275 F.R.D. at 287 (common questions included "whether General Mills communicated a representation [] that YoPlus promoted digestive health" and "if the representation was material, whether it was truthful"); *Godec*, 2011 U.S. Dist. LEXIS 131198 at *16 ("whether the prostate-health message on the packaging gave rise to an express warranty is a common question that can be resolved with common evidence").

17

[the] claims are based on the same legal theory." *Little Caesar Entpr., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997); *see also Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561-62 (8th Cir. 1982) (quoting C. Wright & A. Miller, *Federal Practice & Procedure* § 1764 at n.21.1 (Supp. 1982)) ("The burden of showing typicality is not an onerous one. It does, however, require something more than general conclusory allegations that unnamed [plaintiffs] have been [wronged]").

"Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatex Corp.,* 167 F.R.D. 51, 57 (N.D. Ill. 1996). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir. 1996). The requirement of typicality focuses on the conduct of a defendant and whether a proposed class representative has been injured by the same kind of conduct alleged against the defendant as other members of the proposed class. *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 491 (S.D. Ill. 1999) ("The Court should concentrate on the defendants' alleged conduct and the plaintiffs' legal theory to satisfy Rule 23(a)(3)"). This is why a finding that commonality exists generally results in a finding that typicality also exists. *Violette v. P.A. Days, Inc.*, 214 F.R.D. 207, 214 (S.D. Ohio 2003).

Typicality "is generally considered to be satisfied 'if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory.'" *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561-62 (8th Cir. 1982). Here, Plaintiffs and the proposed classes assert the same claims that arise from the same course of conduct – Defendant's representations about the digestive health benefits of Align. (Doc. 110-16 at 25-27 (the Align packaging "said that it aids in your digestive system, so I believed what it said on there. I trusted [] their advertising."); 3-28; 45-48). Defendant advertised to all that the proprietary probiotic bacteria in Align provides proven digestive health benefits. The question is not whether each class member was satisfied with the product, but rather whether the purchaser received the product that was advertised. Moreover, as the purported digestive health benefits communicated to consumers from Defendant via various channels (including print, television, and internet advertising, word of mouth, and doctor recommendations) are undisputely the only reason any consumer would have purchased Align, exactly how each class member received that message is irrelevant. For each member within the proposed classes to recover under the claims at issue, each must prove the same elements as the named Plaintiffs.

### 4. Adequacy of Representatives

Fed. R. Civ. P. 23(a)(4) requires the Court to determine whether "the representative parties will fairly and adequately protect the interests of the class." This

requirement calls for a two pronged inquiry: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). Fed. R. Civ. P. 23(a)(4) tests "the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977). These two requirements are met here.

### a.    Dino Rikos

Defendant alleges that Mr. Rikos has an irreconcilable conflict of interest with the relevant proposed classes because he filed an action for injunctive relief in California state court after Defendant successfully moved to dismiss his request for injunctive relief from this lawsuit for lack of Article III standing. (Doc. 127 at 52-53; Doc. 28 at 12-13). However, by pursuing the injunctive remedies in state court, Mr. Rikos is protecting the interests of absent class members who otherwise would not receive the full relief to which they are entitled to under the statutes if their allegations are true. *See Crawford v. Bell*, 599 F.2d 890 (9th Cir. 1979); *accord, McNeil v. Guthrie*, 945 F.2d 1163, 1166 n.4 (10th Cir. 1991) ("class members may bring individual actions for equitable relief when their claims are not being litigated within the boundaries of a class action"); *Rivera v. Bowen*, 664 F. Supp. 708, 710 (S.D.N.Y. 1987) ("it would be improper to foreclose the

parties from pursuing separate claims where such claims are not encompassed and litigable within the original action") (*citing Crawford*, 599 F.2d at 890).

Moreover, Mr. Rikos has sufficiently demonstrated his willingness to vigorously pursue this action. Defendant claims Mr. Rikos has credibility issues that create a conflict of interest between him and the relevant proposed class members, citing his failure to identify other lawsuits he is or has been party to on interrogatory responses, failure to disclose at his deposition that his discovery verifications were signed by his son, and what Defendant describes as "inconsistent testimony" and insufficient production during discovery. (Doc. 127 at 20). However, "[o]nly when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate." *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 431 (6th Cir. 2012) (finding the plaintiff adequate despite many "dubious" statements and omissions in that plaintiff's deposition testimony); *In re Colonial Partnership Litig.*, No. H-90-829, 1993 U.S. Dist. LEXIS 10884, at *19-21 (D. Conn. Feb. 10, 1993). The standard for finding a person inadequate because of a lack of credibility is a high one:

> [F]ew plaintiffs come to court with halos above their heads; fewer still escape with those halos untarnished. For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims.

*CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011).

Here, Plaintiffs assert that Mr. Rikos' interrogatory responses were the result of confusion on the part of Mr. Rikos and counsel's error in not listing another similar class action (an error that they allege was harmless because Defendant's counsel was fully aware of it and discussed it with Plaintiffs' counsel).  (Doc. 137 at 26).  Further, Plaintiffs assert that the interrogatory responses were timely corrected with supplemental responses and that when these issues came up in his deposition, Mr. Rikos candidly admitted that he had made a "mistake," that he had forgotten about these other cases, and that his discovery responses "should be corrected."  (*Id.* at 23-24).  Finally, Plaintiffs assert that although it is true that Mr. Rikos improperly had his son – only after reviewing the attached responses to satisfy himself as to their veracity, and only after giving full authority – sign discovery response verifications on his behalf, he did so hoping to better fulfill his duties as a class representative by promptly returning the verifications to his lawyers, not to shirk them.  (*Id.* at 29-34).

The Court finds that Mr. Rikos is an adequate class representative as his credibility issues do not rise to the level necessary under *Gooch* to create a representational conflict of interest.  672 F.3d at 431.

### b.    Tracey Burns

Defendant challenges Ms. Burns's adequacy as a representative because her partner – to whom she is not married – and her partner's sister and sister's husband work in the support staff at the firm she retained to represent her in this case.  (Doc. 127 at 80).

22

An issue arises in this context when the class representative has a financial interest in the outcome of the action beyond being a member of the class, such as when the class representative is a partner in the law firm that is counsel of record. Ms. Burns, or even her partner or partner's sister or brother-in-law, are not lawyers, are not partners at the relevant firm, and have no financial interest in any potential award of attorneys' fees. (Doc.137-2 at 37-39); *cf. Fischer v. International Tel & Tel Corp.*, 72 F.R.D. 170 (E.D.N.Y.1976) (plaintiff adequate even though class counsel is his son where there was no indication that the plaintiff would have any financial interest in any fee recovered by son); *Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985) *cert. denied*, 106 S. Ct. 1798 (1986) (plaintiffs who are brothers of class counsel, sister of chauffeur of class counsel, and mother-in-law of class counsel are adequate where depositions revealed that the plaintiffs were "zealous" class representatives); *Lewis v. Goldsmith*, 95 F.R.D. 15 (D.N.J. 1982) (nephew of class counsel adequate).

The Court finds Ms. Burns is an adequate class representative.

### c. Leo Jarzembrowski

Defendant makes a similar attack against Mr. Jarzembowski. (Doc. 127 at 61-63). Mr. Jarzembowski's girlfriend is a part time member of a cleaning crew who works a couple of hours a day cleaning the office of the O'Brien Law Firm. (Doc. 137 at 28). Neither Mr. Jarzembowski nor his girlfriend is a lawyer. (Doc. 137-2 at 42-43). Neither Mr. Jarzembowski nor his girlfriend is related in any way to counsel, nor does either

socialize with counsel. (*Id.* at 47-48). Mr. Jarzembowski's girlfriend simply overheard counsel talking about Align – which she knew her boyfriend had taken. On her own, she mentioned it to Mr. Jarzembowski. (*Id.* at 44-45). Mr. Jarzembowski's girlfriend has no financial interest in the outcome of this lawsuit. (*Id.* at 46-47).

The Court finds that Mr. Jarzembowski is an adequate class representative.

### d.  Proposed Class Counsel

Fed. R. Civ. P. 23(g) complements Fed. R. Civ. P. 23(a)(4)'s adequate representation requirement by focusing on class counsel. Under Fed. R. Civ. P. 23(g), the Court must determine that counsel possesses the abilities to fairly and adequately represent the interests of the class. For class counsel, the adequacy requirement is met if they "are qualified, experienced and generally able to conduct the litigation." *Beattie*, 511 F.3d at 562-63. Defendant does not challenge proposed class counsel Timothy Blood's well-demonstrated adequacy by this standard, but rather argues that proposed class counsel have created a conflict of interest by filing an injunctive relief-only action against Defendant on behalf of Plaintiff Rikos in state court. (Doc. 127 at 63-64). But Counsel filed the California state court action in order to protect the interests of the proposed California class, and then only after the Court granted (without prejudice) Defendant's motion to dismiss the California injunctive relief claims from this action for lack of Article III standing. (Doc. 28 at 12-13). For the reasons discussed above with regard to Mr. Rikos, the filing of this complementary action does not create a conflict of

24

interest for purposes of representational adequacy.

Based on careful consideration of the relevant factors, the Court grants Plaintiffs'
motion for the appointment of Timothy Blood, Esq. as class counsel.  Additionally, the
proposed class representatives are adequate and satisfy the requirements of Fed. R. Civ.
P. 23(a)(4).

## C.    Fed. R. Civ. P. 23(b)

When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as
a class action when it qualifies under any one of three conditions set forth in Rule 23(b).
Plaintiffs seek class certification under Federal Rule of Civil Procedure 23(b)(3).  Under
this class type, certification is appropriate if: (i) questions of law or fact common to the
members of the class predominate over any questions affecting only individual members;
and (ii) a class action is superior to other available methods for the fair and efficient
adjudication of the controversy.  *Beattie*, 511 F.3d at 564-67.

### 1.    Predominance of Common Questions

"Predominance is a test readily met in certain cases alleging consumer or
securities fraud … ."  *Amchem*, 521 U.S. at 625.  This requirement is satisfied when the
questions common to the class are "at the heart of the litigation."  *Powers v. Hamilton
Cnty. Public Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007); *In re Whirlpool*, 722
F.3d at 858 ("the predominance inquiry must focus on common questions that can be
proved through evidence common to the class").  An issue "central to the validity of each

25

one of the claims" in a class action, if it can be resolved "in one stroke," can justify class treatment.  *Butler*, 727 F.3d at 801.  The predominance inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy." *Amchem*, 521 U.S. at 623.  "[T]he fact that a defense may arise and may affect class members differently does not compel a finding that individual issues predominate over common ones."  *Beattie*, 511 F.3d at 564.  The requirement demands only predominance of common questions, not exclusivity or unanimity of them.  *In re Whirlpool*, 722 F.3d at 858 ("[a] plaintiff class need not prove that each element of a claim can be established by classwide proof"); *Butler*, 727 F.3d at 801 ("predominance requires a qualitative assessment too; it is not bean counting").

Here, the predominating common issues shared by Plaintiffs and each class member are whether Defendant represented through its advertising and labeling that Align promotes digestive health and whether the advertising message is truthful or not deceptive.  The resolution of these questions does not **rise or fall on** the individualized conduct of class members, but on Defendant's conduct and **the objective medical science about whether Align works**.  These questions are binary: either the advertising message was made or it was not, and **the digestive health claim is either true or not**. Accordingly, it is "patently true" that "proof that certain representations were made and, whether made truly or falsely, [can] be established without resort to the testimony of individual class members."  *Amato v. General Motors Corp.*, 11 Ohio App. 3d 124, 126

26

(1982).[8] "[T]his is not a case like *Amchem* [] in which different class members were exposed to different products such that the uncommon issue of causation predominated over the lesser shared issues." *Daffin*, 458 F.3d at 554.

###  a.  Reliance

Reliance is not an element of the causes of action brought under the California Unfair Competition Law ("UCL"), the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), nor the New Hampshire Consumer Protection Act ("CPA"). If Defendant's advertisements concerning the digestive health benefits of Align are "likely to deceive" a reasonable consumer, it is liable under these laws without proof of individual reliance, deception or damages. *In re Tobacco II Cases*, 46 Cal. 4th 298. 312 (2009) (UCL); *Fitzpatrick*, 635 F.3d at 1282-83 (FDUPTA); *Connick v. Suzuki Motor Co*., 174 Ill. 2d 482, 501 (1996) (ICFA); *Mulligan v. Choice Mortg. Corp. USA*, No. 96-596, 1998 U.S. Dist. LEXIS 13248, at *34 (D.N.H. Aug. 11, 1998) (New Hampshire CPA). Similarly, reliance is not an element of the breach of warranty claim. *Weinstat v. Dentsply Int'l*,

---

[8] *See also In re Whirlpool*, 722 F.3d at 859 (upholding predominance "following *Amgen*'s lead" because "[e]vidence will either prove or disprove as to all class members whether the alleged design defects caused the collection of biofilm, promoting mold growth, and whether Whirlpool failed to warn consumers adequately of the propensity for mold growth in the [washing machines]"); *Nelson*, 270 F.R.D. at 697 ("The class members, however, need not submit individualized proof to establish causation … individual class members should be able to submit identical proof to establish that Defendant's representations about Enfamil® LIPIL® are not true"); *Fitzpatrick*, 263 F.R.D. at 701 (the predominant issue whether Yo-Plus provided digestive health benefits was a binary one about science); *Johns*, 280 F.R.D. at 557 ("these predominant questions are binary – advertisements were either misleading or not, and Bayer's prostate health claim is either true or false").

*Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) ("breach of express warranty arises in the context of contract formation in which reliance plays no role").

Where individual reliance is required, if a material misrepresentation was made to the class members who acted consistent with a belief that the representation was true, the claims may be presented on a class basis. *Klay*, 382 F.3d at 1259 (plaintiff may prove reliance "through common evidence (that is, through legitimate inferences based on the nature of the alleged misrepresentations at issue)").[9] "Materiality of the alleged misrepresentation generally is judged by a 'reasonable man' standard." *Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 157 (2010) (citing *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 977 (1997)); *Nevarez v. O'Connor Chevrolet*, 426 F. Supp. 2d 806, 817 (N.D. Ill. 2006) ("The test for materiality is an objective one – whether a reasonable person could be expected to rely on the information"); *Amato*, 11 Ohio App. 3d at 127-28 (affirming certification and approving use of circumstantial evidence to satisfy reliance requirement); *Patterson v. BP AM. Prod. Co.*, 240 P.3d 456, 465-66 (Colo. Ct. App. 2010) (same, collecting cases).

---

[9] *See also Occidental Land, Inc. v. Superior Court*, 18 Cal. 3d 355, 363, (1976); *Vasquez*, 4 Cal. 3d at 814-15 ("The rule in this state and elsewhere is that it is not necessary to show reliance upon false representations by direct evidence"); *Caledonia, Inc. v. Trainor*, 123 N.H. 116, 124 (1983) (circumstantial evidence may be used to prove fraud); *In re US FoodServ. Pricing Litig.*, 729 F.3d 108, 119- 20 (2d Cir. 2013) (common evidence in the form of customer payments constitutes circumstantial proof of customer reliance on inflated invoices); *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292 (2002) (causation/reliance as to each class member is commonly proved by the materiality of the misrepresentation); *Wiener*, 255 F.R.D. at 669-70 (same).

### b.     Causation

Where proof of causation is required, such requirements also do not defeat certification.  To satisfy the proximate cause requirement of the ICFA, Plaintiffs need only demonstrate "that they receive[d], directly or indirectly, communication or advertising from the defendant."  *Baker v. Home Depot USA, Inc.*, No. 11-6768, U.S. Dist. LEXIS 9377, at *9 (N.D. Ill. Jan 24, 2013) (quoting *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 555 (2009)).  "[T]o satisfy the FDUPTA's causation requirement, each plaintiff is required to prove only that the deceptive practice would – in theory – deceive an objective reasonable consumer."  *Fitzpatrick*, 635 F.3d at 1282.  The New Hampshire CPA causation requirement is not akin to proof of reliance; rather, "plaintiffs will have to carry a much less onerous burden, showing only that their injuries … [were] a consequence of [defendant's] allegedly unfair and deceptive practices."  *Mulligan v. Choice Mortg. Corp. USA*, No. 96-596, 1998 U.S. Dist. LEXIS 13248, at *34-35 (D.N.H. Aug. 11, 1998).  Finally, "relief under any of the [California] UCL's three prongs is available 'without individualized proof of deception, reliance and injury,' so long as the named plaintiffs demonstrate injury and causation."  *Guido v. L'Oreal USA, Inc.*, 284 F.R.D. 468, 482 (C.D. Cal. 2012) (*quoting Mass. Mut. Life Ins. Co.*, 97 Cal. App. 4th at 1289; *Tobacco II*, 46 Cal. 4th at 326).  Given the uniformity and ubiquity of Defendant's advertising message here, none of these state law causation requirements preclude classwide proof or defeat the predominance of common questions.

29

Common sense and Defendant's own labels and market research show that the only reason one would purchase Align is to obtain the advertised digestive health benefits – there is no other reason. Thus, the representation is material. Reliance is shown by circumstantial evidence that consumers purchased the product for the sole promised benefit. Certification is appropriate because materiality can be shown class-wide through a review of the labels and market research, and reliance can be shown "through legitimate inferences based on the nature of the alleged misrepresentations at issue." *Klay*, 382 F.3d at 1259. Certification is also appropriate "because without the alleged misrepresentations, there is no reason … to suggest that purchasers would have selected the Products over other [P&G] products or similar, generally less expensive, products by other brands." *Wiener*, 255 F.R.D. at 670; *see also Fitzpatrick*, 263 F.R.D. at 697 (same). Here, there is no reason to purchase Align but for its promised digestive health benefits.

### c.  Damages

"Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Beattie*, 511 F.3d at 564; *In re Whirlpool*, 722 F.3d at 860-1 (same); *In re Scrap Metal Antitrust Litig*., 527 F.3d 517, 535-36 (6th Cir. 2008) (same). Here, where "damages could be measured on a classwide basis," predominance is readily met. *In re Whirlpool*, 722 at 860. Align has no value other than its advertised purpose. **It is a capsule filled with bacteria and inert ingredients. If, as alleged, the bacteria does nothing, then the capsule is worthless**

and plaintiffs and the class members are entitled to a return of the purchase price paid under both damage and restitution theories.

Defendant argues that an award of damages or restitution in an aggregate sum is not appropriate because an aggregated amount would include payment from consumers who did not suffer injury, relying on *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008). However, in *McLaughlin*, aggregate damages were not appropriate because "[t]he distribution method at issue would involve an initial estimate of the percentage of class members who were defrauded (and who therefore have valid claims)." *Id.* at 231. That is not an issue here, as **either 0% or 100% of the proposed class members were defrauded**. There is no evidence that some proposed class members knew of the alleged falsity of Defendant's advertising yet purchased Align anyway.

Second, Defendant argues that its own records do not support aggregate damage and restitution amounts based on retail purchases in the five states at issue. (Doc. 127 at 40). However, Defendant's interest in not paying excess damages "would only be implicated if (i) its aggregate liability could not be reliably determined; or (ii) the defendant is entitled to unclaimed portions of the judgment." *Forcellati*, 2014 U.S. Dist. LEXIS 50600 at *15. Here, Defendant's liability amount, based either on total retail sales or a conservative wholesale sales measure for the five states at issue, can be readily determined. As a general matter, a wrongdoer cannot escape liability by stating that its

records do not permit calculating damages or restitution with exact precision.[10] The

"principle is an ancient one [] and is not restricted to proof of damage in antitrust suits"

that "[t]he most elementary conceptions of justice and public policy require that the

wrongdoer shall bear the risk of uncertainty which his own wrong has created." *Bigelow*

*v. RKO Radio Pictures, Inc*., 327 U.S. 251, 265 (1946). Accordingly, while the jury

"may not render a verdict based on speculation or guesswork" the jury "may make a just

and reasonable estimate of the damage based on relevant data…[and] act upon probable

and inferential, as well as direct and positive proof." *Id*. at 264; *Broan*, 923 F.2d at 1235-

36 (same). "Any other rule would enable the wrongdoer to profit by his wrongdoing at

the expense of his victim." *Bigelow*, 327 U.S. at 264; *Scrap Metal*, 527 F.3d at 533-34

(same).

Here, Defendant admittedly maintains granular wholesale and retail sales data to

which its aggregate liability can be tied. (Doc. 126 at ¶¶ 6-7; Doc. 123-1). Additionally,

Defendant tracks its own wholesale sales, and it receives nationwide retail sales data from

---

[10] *See Broan Mfg. Co. v. Associated Distributors, Inc*., 923 F.2d 1232, 1235-36 (6th Cir.
1991) (the rule that remote or speculative damages are not permitted "serves to preclude
recovery [] only where the fact of damage is uncertain, i.e., where the damage claimed is not the
certain result of the wrong, not where the amount of damage alone is uncertain"); *FTC v.
Kuykendall*, 371 F.3d 745, 765 (10th Cir. 2004) (approving use of gross receipts for damages
purposes because "[t]o the extent the large number of consumers affected by the defendants'
deceptive trade practices creates a risk of uncertainty, the defendants must bear that risk");
*Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C*., 174 N.C. App. 49, 61 (2005) ("the
measure of damages [under North Carolina's UDTPA] is broader than common law actions…In
cases where a claim for damages from a defendant's misconduct are shown to a reasonable
certainty, the plaintiff should not be required to show an exact dollar amount with mathematical
precision"); *Black v. Iovino*, 219 Ill. App. 3d 378, 392 (1991) (same, reviewing ICFA damages
award).

Costco and The Nielsen Company (which collects retail data for all U.S. retailers except

Costco).  (Doc. 126 at ¶ 5).  Defendant also conducted direct retail sales through its

website.  (Id. at ¶ 12).  For those direct sales, Defendant has the individual customer and

sales records, and the fact that only certain states are at issue here poses no problem.

Further, granular retail sales data on a state-specific basis is readily available from

Nielsen or its major competitor, IRI (whose data also includes Costco's store-level point-

of-sales data).  (Doc. 137 at 45).  For example, IRI can create a report that provides the

following information for a rolling four-week sales period for each package count version

of Align: net unit quantity; weighted average base price per unit; average price per unit;

and average price per unit, and any promotions.  (Doc. 137-3 at 136-44).  Individual

retailers also provide Defendant with periodic retail sales reports.  (*Id.* at 145-200).  Thus,

the fact finder would have a wealth of evidence from which a just and reasonable

estimate of damages or restitution could be made (if required).  *Bigelow*, 327 U.S. at 264.

Finally, the UCL, CLRA, FDUPTA, ICFA, and New Hampshire CFA also provide

for an award of restitution or other equitable remedies.  Cal. Bus. & Prof. Code §17203

(UCL); Cal. Civ. Code §1780(a)(3) (CLRA); Fla. Stat. §501.211 (FDUPTA); 815 ILCS

505/10a (ICFA); N.H.R.S.A. 358-A:10 (NHCFA).  Courts have considerable discretion

in determining these amounts.  *See, e.g., Cortez v. Purolator Air Filtration Prods. Co.*, 23

Cal. 4th 163, 179-80 (2000) (court's discretion "is very broad" under the UCL to fashion

an equitable award for "deterrence of and restitution for unfair business practices");

*Colgan v. Leatherman Tool Group, Inc*., 135 Cal. App. 4th 663, 700 (2006) (UCL and CLRA); *Martinez v. Rick Case Cards, Inc*., 278 F. Supp. 2d 1371, 1373-74 (S.D. Fla. 2003) (FDUPTA); 815 ILCS 505/10a (ICFA: "[t]he court, in its discretion may award…any other relief which the court deems proper"); Cal. Civ. Code §1780(a)(5) (CLRA: same).

Defendant also argues that under the laws at issue, Plaintiffs and proposed class members must calculate the difference between the price each proposed class member paid for Align and the value of Align (the out-of-pocket rule), or the difference in value between Align as received and as promised (the benefit of the bargain rule).  According to Defendant, because Align provides some value, a full refund would be inappropriate. Plaintiffs, on the other hand, allege that because Align does nothing, it has no value. Whether Defendant or Plaintiffs are correct presents a classwide issue.  There is only one reason to take Align, and neither party asserts that proposed class members purchased Align for any reason other than digestive health.  In *Khoday v. Symantec Corp*., No. 11-180, 2014 U.S. Dist. LEXIS 43315, at *102-05 (D. Minn. Mar. 31, 2014), the court granted class certification of California UCL and CLRA claims, finding that plaintiffs set forth a classwide measure of damages because a full refund measure of damages "would likely be appropriate here, where the products in question have no intrinsic value other than the advertised use."  *See also FTC v. Figgie Int'l*, 994 F.2d 595, 606 (9th Cir. 1993) (notwithstanding any de minimis value, purchasers of falsely advertised heat detectors

were entitled to full purchase price restitution).  Accordingly, the propriety (or not) of

the proposed classes' entitlement to full refund damages or restitution can and should

be determined in one stroke.

Defendant further argues that the Court cannot reliably calculate individual

damage awards because Align has been sold in a variety of sizes and for a variety of

prices, and most proposed class members are unlikely to have receipts.  (Doc. 127 at 43-

45).  However, Plaintiffs will be asking the jury for judgment in an aggregate sum, and

not separate individual amounts.  Defendant's interest is not in the amount a particular

proposed class member may receive, but in the aggregate amount awarded against it.

*Hilao*, 103 F.3d at 786-87.  As stated above, this amount can be reasonably calculated

from Defendant's sales records and those of retailers and companies like Nielsen which

track retail sales of Align or, if necessary, derived from Defendant's gross revenues –

apparently a very conservative measure.  And once an aggregate fund is calculated,

distributing the fund is a post-trial exercise and a routine matter for claims administrators.

*See Davis v. Southern Bell Tel. & Tel. Co*., No. 89-2839, 1993 U.S. Dist. LEXIS 20033,

at *21-*22 (S.D. Fla. Dec. 23, 1993) (calculation of damages is "mechanical … once the

fact-finder determines the amount of the overcharge").[11]

---

[11] *See also In re Pharm. Industry Average Wholesale Price Litig*., 582 F.3d 156, 197 (1st Cir. 2009); *Hilao*, 103 F.3d at 786; *In re Terazosin Hydrochloride Antitrust Litig*., 220 F.R.D. 672, 699 (S.D. Fla. 2004) ("Assuming the jury renders an aggregate judgment, allocation will become an intra-class matter accomplished pursuant to a court-approved plan of allocation"); *In re Sugar Industry Antitrust Litig*., 73 F.R.D. 322, 353-54 (E.D. Pa. 1976) ("Upon the establish-ment of such aggregate damages as may be assessed against defendants, the problem of alloca-tions among classes and distribution within each class largely becomes a plaintiffs' problem").

### d. California's Express Warranty Notice Requirement

Finally, Defendant argues that California's notice requirement for breach of express warranty claims means that individual issues will predominate for a discrete portion of the proposed California class. (Doc. 127 at 45-46). Defendant agrees that notice is not required when a consumer purchases from a third-party retailer, but contends that the fraction of a percent of proposed class members who purchased directly from Defendant's online website from California are required to provide notice, raising individual inquiries for that subset of the proposed class. On the contrary, however, this is a common issue that compels certification. Plaintiffs contend that the notice to be sent by Plaintiff Rikos on behalf of the proposed class is sufficient, while Defendant contends that it is not. The Court need make one ruling, which will apply to all proposed class members falling into this group. *See Cartwright v. Viking Indus.*, No. 07- 2159, 2009 U.S. Dist. LEXIS 83286, at *27-28 (E.D. Cal. Sept. 11, 2009) (granting class certification of express and implied warranty claims and stating "whether plaintiffs and the class were required to give notice [for breach of warranty claims] and/or whether they provided sufficient notice are questions that are likely common to the class").

### 2. Superiority of Class Action

Fed. R. Civ. P. 23(b)(3) sets forth the factors to determine whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." These factors include: (i) the class members' interest in individually

36

controlling separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action.

The Fed. R. Civ. P. 23(b)(3) "superiority" factors weigh in favor of certification here.  First, the value of the claims of individual class members is too small to justify individual litigation.  "Use of the class method is warranted particularly because class members are not likely to file individual actions – the cost of litigation would dwarf any potential recovery."  *In re Whirlpool*, 722 F.3d at 861.  It is far more efficient to litigate this action in one case, rather than many (or more likely, "'zero individual suits' because of litigation costs").  *Id*.  Here, there simply is no other available method of adjudication.  Second, although this case presents some complexity concerns, they are not unmanageable.  The California UCL and New Hampshire CFA claims are not tried to a jury.  *Hodge v. Superior Court*, 145 Cal. App. 4th 278, 284 (2006); *Hair Excitement, Inc. v. L'Oreal U.S.A., Inc*., 158 N.H. 363, 368-69 (2008).  The question whether Defendant's conduct is unfair or deceptive under the North Carolina UDTPA is also not for the jury. (Doc. 127 at 49).  The jury will therefore be instructed on, at most, five claims.  The Court will provide to specific instructions to clarify the elements of these claims.

Based on the foregoing, Plaintiffs' class action qualifies for certification under Fed. R. Civ. P. 23(b)(3).

### III.    CONCLUSION

This case is well suited for class certification because it will simplify and streamline the judicial proceedings for all persons.  Accordingly, the Court **GRANTS** Plaintiffs' motion for class certification (Doc. 110), certifies the five proposed classes pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), and hereby appoints Plaintiff Dino Rikos as class representative of the California and Illinois classes, Plaintiff Tracey Burns as class representative of the Florida and North Carolina classes, Plaintiff Leo Jarzembrowski as class representative of the New Hampshire class, and Plaintiffs' counsel Timothy Blood, Esq. as class counsel.

**IT IS SO ORDERED.**

Date:  6/19/14                               *s/ Timothy S. Black*
                                            Timothy S. Black
                                            United States District Judge