1  BLOOD HURST & O'REARDON, LLP
   TIMOTHY G. BLOOD (CA 149343)
2  LESLIE E. HURST (CA 178432)
   THOMAS J. O'REARDON II (CA 247952)
3  701 B Street, Suite 1700
   San Diego, CA  92101
4  Tel: 619/338-1100
   619/338-1101 (fax)
5  tblood@bholaw.com
   lhurst@bholaw.com
6  toreardon@bholaw.com

7  Attorneys for Plaintiffs and the Class

8  [Additional counsel appear on signature page.]

9

10                    **UNITED STATES DISTRICT COURT**

11                    **SOUTHERN DISTRICT OF OHIO**

12  DINO RIKOS, TRACEY BURNS, and          Case No.:  11-CV-00226-TSB
    LEO JARZEMBROWSKI, On Behalf of
13  Themselves, All Others Similarly Situated   **CLASS ACTION**
    and the General Public,
14                                             **THIRD AMENDED CLASS ACTION**
                    Plaintiffs,                **COMPLAINT**
15
           v.
16                                             Judge:       Honorable Timothy S. Black
                                               Courtroom:   815
17  THE PROCTER & GAMBLE                       Date Filed:  September 21, 2010
    COMPANY,                                   Trial Date:  TBD
18                  Defendant.
                                               **DEMAND FOR JURY TRIAL**
19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

Plaintiffs Dino Rikos, Tracey Burns, and Leo Jarzembowski ("plaintiffs"), by and through their attorneys, bring this action on behalf of themselves, all others similarly situated and the general public against defendant The Procter & Gamble Company ("Procter & Gamble"), and state:

## NATURE OF THE ACTION

1. This is a consumer protection class action addressing the advertisements Procter & Gamble makes about its over-the-counter "digestive care" product called Align®. Through its advertising and labeling, Procter & Gamble claims that Align provides "digestive care" by helping to:

- **Build and maintain** a healthy digestive system

- **Restore** your natural digestive balance

- **Protect** against occasional digestive upsets

Procter & Gamble claims in its advertising, including the packaging for Align, that these health benefits result because "Only Align Contains Bifantis®, a Unique, Patented Probiotic," that **restore[s] your natural balance and bring peace to your digestive system**." Procter & Gamble has no support for these claims, even though it states that it does, going so far as to claim it has clinical proof. Procter & Gamble's representations are false, misleading and reasonably likely to deceive the public.

2. In March 2009, Procter & Gamble began nationally marketing Align. Prominently placed on its product packaging and in its other advertisements, Procter & Gamble stated and continues to state that Align contains the unique and patented probiotic bacteria "Bifantis®." Procter & Gamble advertised and continues to advertise that "Align is different because only Align contains Bifantis, a patented probiotic strain," that "brings peace to your digestive system" and provides a "restored natural balance to your digestive system." For marketing its Align product, Procter & Gamble uses its trademarked phrase "GREAT DIGESTION THROUGH SCIENCE™."

3. In truth, the ingredient matrix found in Align has never been substantiated, clinically or otherwise, and Procter & Gamble has no legitimate basis to make these claims. In

BLOOD HURST & O'REARDON, LLP

fact, the only purported clinical trial that Procter & Gamble discusses on its website concerns the effects of Bifantis® in treating symptoms of inflammatory bowel disease ("IBS"), rather than the general population, to whom the advertisements are targeted. Even then, the study concludes that "[n]o statistically significant differences between [placebo and Bifantis] groups were observed at any time-point" relating to daily IBS symptom assessments. Results from this Procter & Gamble funded study are not published in a peer-reviewed scientific journal.

4. Procter & Gamble conveyed and continues to convey its deceptive claims about Align through a variety of media, including the Internet, in-store sampling, point of sale displays, and on the Align® probiotic supplement's labels and labeling. These representations appear prominently and conspicuously on every Align container.

5. Through this advertising, Procter & Gamble has conveyed one message: Align, with its probiotic bacteria cultures, provides clinically proven digestive health benefits to the general public. Attached as Exhibit 1 to the First Amended Complaint is a collection of some of the advertisements and labeling containing the false and deceptive advertising claim. *See* Docket Entry ("D.E") No. 9-1.

6. Procter & Gamble's advertising and marketing campaign is designed to cause consumers to buy Align as a result of this deceptive message, and Procter & Gamble has succeeded. Despite being nothing more than a sugared capsule filled with naturally occurring bacteria, a 28-count package of Align retails for approximately $30. According to Procter & Gamble, even before its nationwide retail launch, Align was the No. 1 gastroenterologist-recommended probiotic supplement.

7. Plaintiffs bring this action on behalf of themselves and other similarly situated consumers in the United States to halt the dissemination of this false and misleading advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased Align. Plaintiffs allege violations of the California Consumers Legal Remedies Act, California's Unfair Competition Law, Florida's Deceptive and Unfair Trade Practices Act, Florida's Statutory False Advertising prohibition, Illinois' Consumer Fraud and Deceptive Business Practices Act, the New

2

Case No. 1:11-cv-226-TSB

THIRD AMENDED CLASS ACTION COMPLAINT

Hampshire Consumer Protection Act, North Carolina's Consumer Protection Act, and breach of the express warranty created by its advertising, including its labeling.

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class of plaintiffs (defined below) are citizens of states different from Procter & Gamble. Further, greater than two-thirds of the Class members reside in states other than the state in which Procter & Gamble is a citizen.

9.      By order dated April 13, 2011, the Southern District of California granted Procter & Gamble's motion to transfer venue to this Court. Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this district and because defendant:

(a)      is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district;

(b)      does substantial business in this district; and

(c)      is subject to personal jurisdiction in this district.

## PARTIES

10.      Plaintiff Dino Rikos is a resident of the state of Illinois. During the Class period, and in San Diego, California, and Naperville, Illinois, Plaintiff Rikos was exposed to and saw Procter & Gamble's claims by reading the Align label, purchased Align at various drug stores in San Diego, California, and Naperville, Illinois in reliance on these claims, and suffered injury in fact and lost money as a result of the unfair competition described herein. Plaintiff Rikos purchased Align at various times beginning in or about the second half of 2009, and continued to purchase Align for close to, but less than one year.

11.      Plaintiff Tracey Burns is a resident of the state of Florida. During the Class period, and in Mooresville, North Carolina, and Orland, Florida, Plaintiff Burns was exposed to and saw Procter & Gamble's claims by viewing the Align print and television

advertisements, and reading the Align label, purchased Align in Mooresville, North Carolina, and Orland, Florida in reliance on these claims, and suffered injury in fact and lost money as a result of the unfair competition described herein. In or about early April 2011, Plaintiff Burns first purchased Align at the CVS on 274 North Main Street, Mooresville, NC 28155 and also at the Wal-Mart on 169 Norman Station Blvd., Mooresville, NC 28117. Thereafter, and beginning in or about May 2011, Plaintiff Burns purchased Align continuously through approximately December 2011, primarily at the Publix Super Market on 2873 S. Orange Ave., Orlando, FL 32806-5403. Each time she purchased Align, Plaintiff Burns paid approximately $40 for the 42-count size of Align.

12.     Plaintiff Leo Jarzembowski is a resident of the state of New Hampshire. During the Class period, and in New Hampshire, Plaintiff Jarzembowski was exposed to and saw Procter & Gamble's claims by reading the Align label, purchased Align at Walgreens in Milford, NH, Rite-Aid in Milford, NH and/or CVS on Route 101-A in Merrimack, NH, in reliance on these claims, and suffered injury in fact and lost money as a result of the unfair competition described herein. Plaintiff Jarzembowski purchased Align at various times beginning in or about January or February 2011, and continued to purchase Align until approximately late summer 2011. Plaintiff Jarzembowski paid approximately $30 for 30-day supplies of Align.

13.     Defendant Procter & Gamble is a global company headquartered in Cincinnati, Ohio with operations in approximately 80 countries. Procter & Gamble is the self-described largest consumer packaged goods company in the world. Procter & Gamble designs, manufactures, markets and sells beauty and grooming, health and well-being, and household care products, including Align. In 2009, Procter & Gamble spent $7.5 billion on advertising, and had sales exceeding $76.7 billion.

## FACTUAL ALLEGATIONS

14.     In March 2009, on the heels of very successful marketing launches of "functional," "probiotic" products by food industry giants, and following two years of a scripted marketing plan selling Align exclusively through its website, a toll-free number, and

BLOOD HURST & O'REARDON, LLP

doctors specializing in stomach ailments, Procter & Gamble announced the U.S. retail launch of Align. According to Align's brand manager at Procter & Gamble, "People take vitamins on a regular basis to help keep their bodies in shape. This dietary supplement can help your body, just like a vitamin." The brand manager also stated, "[w]e know consumers with episodic digestive problems are looking for real solutions, and Align is a clinically proven option…. Because Align is grounded in real science and meets a real consumer health need, we expect it to become a cornerstone brand in our personal health care portfolio."

15. Since the launch, Procter & Gamble has consistently conveyed the message to consumers throughout the United States that Align, with its unique, patented probiotic bacteria Bifantis®, provides probiotic protection and builds and maintains a healthy digestive system. According to Procter & Gamble, the benefits of Align are backed by clinical proof supporting the "patented probiotic strain exclusively found in Align." These claims are not substantiated and are factually baseless.

16. The use of bacteria for probiotic use is in its scientific infancy. In fact, scientists have yet to settle on a definition of probiotic. The World Health Organization's definition of probiotics is "Live microorganisms, which, when administered in adequate amounts, confer a health benefit on the host." The National Center for Complementary and Alternative Medicine ("NCCAM"), one of the centers that makes up the National Institutes of Health, adds that probiotics have an ultimate goal of prevention and treatment of disease.

17. On its packaging and labeling, Procter & Gamble defines probiotics: "**What are probiotics?** Simply put, probiotics are good bacteria essential for many vital body functions, including healthy digestion." On its website, Procter & Gamble provides a substantially similar definition of probiotics: "What Is a Probiotic? Simply put, probiotics are good bacteria that confer a health benefit and are essential for many vital body functions, including healthy digestion."

18. Scientists have not yet mapped the tens of thousands of bacteria strains in the human body's intestinal flora, and do not know whether increasing one type of bacteria provides health benefits. It is also not known whether increasing one type of bacteria can prove

BLOOD HURST & O'REARDON, LLP

harmful. The European Food Safety Authority ("EFSA"), established by the European Union to promote food safety and evaluate food claims, reports that "The numbers/proportions of bacterial groups that would constitute a 'balanced/healthy' intestinal flora have not been established. Increasing the number of any groups of bacteria is not in itself considered as beneficial." EFSA states that:

> The gastrointestinal tract is populated with a large number of microorganisms and it normally acts as an effective barrier against generalized systemic infections. It is not possible to provide the exact number of bacterial groups that would constitute a beneficial microbiota.

19.     There is almost no scientific support for the notion that healthy people, such as those targeted by Procter & Gamble, benefit from bacterial supplements, such as the bacteria at issue. If probiotic bacteria do have any health benefits, they must survive the digestive tract in sufficient quantities to achieve the possible benefit. However, there is no consensus on the quantities of probiotics people might need to ingest, or for how long, in order to achieve a probiotic effect, if probiotics have any such effect in healthy people.

20.     Using the term as a marketing tool, and without regard to whether it actually delivers any probiotic benefits, Procter & Gamble calls its product "Align® probiotic supplement." In fact, Procter & Gamble has no legitimate basis to claim that the bacteria with which it laces Align has any beneficial effects when people consume it, that it helps or replaces bacteria naturally found in the human body, that it reduces the growth of "harmful" bacteria, promotes healthy digestion or restores the digestive system.

### PROCTER & GAMBLE'S CLAIMS ABOUT ALIGN

21.     Procter & Gamble claims Align, "**Naturally helps: Build & maintain** a health digestive system; **Restore** your natural digestive balance; [and] **Protect** against occasional digestive upsets." According to Procter & Gamble, "10 years of research went into the formulation of Align®, the only probiotic supplement with patented Bifantis®."

22.     Despite inadequate testing, Procter & Gamble states that Align is beneficial for healthy and unhealthy people alike; Align is "for people with healthy digestive function who

BLOOD HURST & O'REARDON, LLP

00127036

are looking for help with occasional digestive upsets or who are interesting in promoting their digestive health."

23.    Align is described in a medical manner as coming in a "capsule" form. The label on each package of Align substantially appears as follows:



24.    On every Align label, Procter & Gamble also prominently claims:

**A few words on good bacteria**

Your body needs beneficial bacteria for a number of things, including healthy digestion. But they're fragile. Common issues, such as diet, antibiotic use, changes in routine, travel and stress can disrupt your natural balance of good

BLOOD HURST & O'REARDON, LLP

bacteria. Bifantis®, only found in Align®, is a probiotic that naturally replenishes your digestive system with healthy bacteria.

**Why take Align®?**

With just one capsule a day each day, Align helps to build and maintain your digestive health with active probiotic bacteria that support your body's own natural defenses, providing ongoing protection against occasional digestive upsets.

**What are probiotics?**

Simply put, probiotics are good bacteria essential for many vital body functions, including health digestion.

**What makes Align Digestive Care special?**

Align contains the patented, pure-strain probiotic bacteria Bifantis® (*Bifidobacterium infantis* 35624), which helps naturally balance your digestive system. Bifantis was developed by Gastroenterologists and, when taken daily, will help your body build and maintain a healthy digestive system.

Procter & Gamble did not and does not have substantiation for these statements, which are false and misleading and reasonably likely to deceive the average consumer.

25.    Procter & Gamble deceptively describes Align and Bifantis® on its www.aligngi.com and www.bifantis.com websites. These websites are available to the general public and Procter & Gamble's advertisements in other media promote these websites. Without sufficient testing or substantiation, Procter & Gamble makes the following similar claims on its websites:

///

///

///

BLOOD HURST & O'REARDON, LLP

00127036



26.     On the Align packaging and websites, Procter & Gamble claims that the bacteria culture in Align was developed by doctors and is supported by clinical proof. The Align advertising statements – conspicuously stated on the product label and websites – include:

- Bifantis was developed by Gastroenterologists and, when taken daily, will help your body build and maintain a healthy digestive system.

- **Proof:** Bifantis has been the subject of several clinical studies and has been featured in peer-reviewed journals. Please see Bifantis.com for full details.

- Recommended by Gastroenterologists

- **GREAT DIGESTION THROUGH SCIENCE™**

BLOOD HURST & O'REARDON, LLP

9                          Case No. 1:11-cv-226-TSB
THIRD AMENDED CLASS ACTION COMPLAINT

27.     In addition to making untested and unsubstantiated claims, Procter & Gamble's advertising claims that Align has a "Money-Back Guarantee," is likely to deceitfully induce a placebo effect on consumers, irrespective of any actual probiotic effect.

28.     On Align packaging, reprinted below, Procter & Gamble states "SATISFACTION – **GUARANTEED** – MONEY BACK."

29.     On the Align website, Procter & Gamble also promotes the limited "money-back guarantee":

- **Find Digestive Peace …**
    **or Your Money Back.**
- **Peace of Mind at Checkout**
    We proudly stand behind the performance of Align® and believe that our patented supplement can help you with your occasional digestive upsets.

30.     The front page of the Align website also contains purported testimonials from consumers regarding the benefits of Align:

- *"Align has changed my life. I never thought I'd be able to do the things I love worry-free!"*

The Align website has a page entitled "Align Rating & Reviews" where Procter & Gamble states that "Others have experienced an occasional digestive imbalance and have found Align to be an effective solution." The Align ratings and testimonials reinforce the deceptive advertising, misrepresenting Align's ability to combat and ward off digestive system deficiencies. These statements are not adequately supported by the scientific evidence or otherwise substantiated.

**SUBSTANTIATION FOR THE CLAIMS DOES NOT EXIST**

31.     According to a June 2006 report on probiotics published by the American Academy of Microbiology "there is no conclusive evidence that altering the microbiota of a healthy human adult is beneficial." The report, entitled "Probiotic Microbes: The Scientific Basis," was prepared by the American Academy of Microbiology, a leadership group of the

BLOOD HURST & O'REARDON, LLP

American Society of Microbiology, which is the leading professional association of microbiologists.

32.     Procter & Gamble deceptively conveys the marketing message that Align has been clinically tested and proven. For example, the product labeling states "Clinically proven to naturally defend against 5 signs of digestive imbalance." And on its website, Procter & Gamble provides purported scientific information and data, including "clinical publications," regarding Bifantis®.

33.     There are no proper clinical studies that provide substantiation, clinical or otherwise, for Align's digestive health claims.

34.     There is widespread consensus within the legitimate scientific community concerning the proper research and testing that must be conducted to substantiate a claim made for a given effect ascribed to a probiotic bacteria. As the American Society for Microbiology concluded in a symposium focusing on purported probiotic bacteria used in food:

> There is a pronounced need for large, carefully designed (randomized, placebo controlled) clinical trials of probiotics that undertake broad sampling of host microbiota, have clear end points, and have well informed participants who consent to treatment. Investigations like these are needed to overcome the placebo effect [of probiotic treatments] and other barriers to the thorough investigation of probiotic products.[1]

35.     A properly conducted clinical or scientific trial – *e.g.*, one capable of providing substantiation for Procter & Gamble's claims – is the well-designed, randomized controlled trial ("RCT").[2] In RCTs, human study subjects similar to each other are randomly assigned to receive either the test substance or a placebo. Double-blind RCTs, where neither the patient nor the administering researcher knows which intervention is placebo, is preferred and considered more accurate than a single-blind RCT. Procter & Gamble has not so much as attempted to undertake such a process for Align.

---

[1]     R. Walker & M. Buckley, "Probiotic Microbes: The Scientific Basis," at 19 (colloquium convened before the American Society of Microbiology, Nov. 5-7, 2005).

[2]     M. Araya, et al., "Guidelines for the Evaluation of Probiotics in Food" (Food and Agriculture Organization of the United Nations and World Health Organization, Report of a Joint Working Group, April 30 and May 1, 2002), http://www.who.int/ foodsafety/fs_management/en/probiotic_guidelines.pdf (last visited March 29, 2012).

BLOOD HURST & O'REARDON, LLP

36.     According to a leading group of international scientists and researchers, there should be a proven correlation in human trials when claiming probiotic health benefits in food products:

> The principle outcome of efficacy studies on probiotics should be proven benefits in human trials, such as statistically and biologically significant improvement in condition, symptoms, signs, well-being or quality of life; reduced risk of disease or longer time to next occurrence; or faster recovery from illness. Each should have a proven correlation with the probiotic tested.[3]

37.     On its bifantis.com website, Procter & Gamble identifies clinical publications which purportedly substantiate the advertising claims for Align. As explained below, a review of the studies identified by Procter & Gamble demonstrates the falsity of its claims.

38.     On its website, Procter & Gamble cites to an unpublished purported "clinical trial" involving *B. infantis*, which it funded.[4] The cited trial involved persons with IBS symptoms, not the general health population to whom Procter & Gamble markets Align. Moreover, the Procter & Gamble trial concluded that the group receiving B. infantis did ***not*** report greater relief in IBS symptoms. That is, the Procter & Gamble trial concluded that "[n]o statistically significant differences between [the control group and *B. infantis* group] were observed at any time-point" relating to daily IBS symptom assessments. Regarding "[w]eekly IBS symptom assessments" the Procter & Gamble trial concluded that "[n]o statistically significant differences were observed between groups during any week except for one parameter at Week 3." And regarding "[m]icrobiology measures," the Procter & Gamble trial concluded that "[o]nly 1 measure was statistically different in B. infantis-IBS subjects at Week 4, Week 8, or Follow-up."

39.     On its website, Procter & Gamble cites to two "*Bifidobacterium infantis* 35624 Clinical Data Publications." Neither study provides proof, clinical or otherwise, for the Align claims. The first study (Whorwell, Altringer, et al. 2006), looked at women who were primary

---

[3]     *Id.*

[4]     A double-blind, randomized, placebo-controlled study of the effects of Bifantis (*Bifidobacterium infantis* 35624) on fecal microflora and gastrointestinal symptoms in adults with irritable bowel syndrome. P&G Study 2005054. Summary available at http://www.bifantis.com/probiotic-scientific-data.php#additional (last visited August 25, 2010).

BLOOD HURST & O'REARDON, LLP

care IBS patients – not the audience to whom Procter & Gamble markets Align – and tested endpoints that are irrelevant for purposes of providing substantiation for Procter & Gamble's advertising claims. Notwithstanding, the study tested *Bifidobacterium infantis 35624* at amounts (referred to as "colony-forming units" or "CFUs") different than what is present in Align® probiotic supplement. The study authors expressly emphasized the variability of results depending on the amount of CFUs: "The lack of benefits observed with the other dosage levels of the probiotic highlight the need for clinical data in the final dosage form." The second study (O'Mahony, McCarthy, et al. 2005) also fails to provide substantiation for the claims. Like the first purported clinical data publication, the second study analyzed persons with IBS, not the population to which Procter & Gamble markets Align. Moreover, the study arm receiving the Align bacteria did not experience any improvement in all bowel movement markers.

40.    Procter & Gamble's website also identifies "preclinical data publications" and "review articles" as purported substantiation for the marketing claim made on Align's packaging and labeling. None provide substantiation for the marketing claim:

- Debonnet, Garrett, et al. 2008: Analyzed potential antidepressant properties of *B. infantis* in rats, and concluded that the "preliminary" findings indicate there is "encouraging evidence" that the probiotic "may possess antidepressant properties."

- O'Mahony, Scully, et al. 2008: Analyzed cellular interactions in mice infused with *B. infantis* and infected with salmonella.

- O'Hara, O'Regan, et al. 2006: Non-clinical analysis of intestinal cells incubated with *B. infantis*.

- Sheil, MacSharry, et al. 2006: The effects of *B. infantis* consumption on colitis in mice prior to onset of chronic inflammation.

- O'Mahony, O'Callaghan, et al. 2005: In vivo lymph node cell reaction of humans with inflammatory bowel disease undergoing colectomy or small bowel resection to *B. infantis*.

BLOOD HURST & O'REARDON, LLP

- Gilman, Cashman 2006: The effect of *B. infantis* on calcium uptake in human intestinal-like cells in culture. Cells exposed to *B. infantis* did not experience calcium uptake.

- McCarthy, O'Mahony, et al. 2003: Analyzed *B. infantis*' ability to attenuate colitis in mice.

- MacConaill, Butler, et al. 2003: Analyzed the molecular biology of the *B. infantis* strain.

- Brenner, Moeller, et al. 2009: Review article concerning randomized controlled trials involving probiotics in the treatment of IBS.

- Brenner, Chey, 2009: Review article concerning *B. infantis*' reported effects on IBS symptoms.

- Parkes, Brostoff, et al. 2008: Review article exploring the role of the gut microbiota in IBS.

- O'Sullivan, O'Halloran, et al. 2005: Generalized review article concerning probiotics, acknowledging that "[k]nowledge of the normal [gut] flora is still relatively meager" and "controlled clinical trials are necessary to validate the benefit of probiotics."

- Dunne, Murphy, et al. 1999: Review article concerning the strategy adopted for selection of potentially effective probiotics.

41. The studies cited by Procter & Gamble do not constitute clinical substantiation for Align's marketing claims because, *inter alia*, the studies, preclinical or otherwise, involve human and animal disease states, test irrelevant endpoints, and do not analyze *B. infantis* in the quantity and medium delivered in Align.

42. Despite inadequate and inapposite testing, Procter & Gamble continues to unequivocally claim that with its proprietary bacterial strain, Align provides digestive system benefits to all persons.

BLOOD HURST & O'REARDON, LLP

43. Although it is just a tiny, sugared "capsule" of natural bacteria, Align retails for approximately $30 for a 28-count package.[5]

## CLASS ACTION ALLEGATIONS

44. Plaintiffs bring this lawsuit on behalf of themselves and the proposed Class members under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure. The proposed Class consists of:

> All persons who purchased within the United States and its territories P&G's Align, other than solely for purposes of resale, from March 1, 2009 to June 6, 2016.

45. Excluded from the Class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely Request for Exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

46. ***Numerosity.*** The members of the Class are so numerous that their individual joinder is impracticable. Plaintiffs are informed and believe, and on that basis allege, that the proposed Class contains many thousands of members. The precise number of Class members is unknown to plaintiffs.

47. ***Existence and Predominance of Common Questions of Law and Fact.*** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether Procter & Gamble had adequate substantiation for its claims prior to making them;

(b) whether the claims discussed above are true, or are misleading, or reasonably likely to deceive;

---

[5] *See, e.g.,* http://www.cvs.com ($29.99 for 28-count Align probiotic supplement) (last visited Aug. 30, 2010); http://www.walmart.com ($29.44 for 28-count Align probiotic supplement (last visited Aug. 30, 2010); http://www.walgreens.com ($29.99 for 28-count Align probiotic supplement (last visited Aug. 30, 2010); http://www.target.com ($29.49 for 28-count Align probiotic supplement (last visited Aug. 30, 2010).

BLOOD HURST & O'REARDON, LLP

00127036

(c)     whether Procter & Gamble's alleged conduct violates public policy;

(d)     whether the alleged conduct constitutes violations of the laws asserted herein;

(e)     whether Procter & Gamble engaged in false or misleading advertising;

(f)     whether plaintiffs and Class members have sustained monetary loss and the proper measure of that loss;

(g)     whether plaintiffs and Class members are entitled to restitution; and

(h)     whether plaintiffs and Class members are entitled to an award of punitive damages.

48.     ***Typicality*.** Plaintiffs' claims are typical of the claims of the members of the Class in that plaintiffs assert the same claims.

49.     ***Adequacy of Representation*.** Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained counsel highly experienced in complex consumer class action litigation, and plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class.

50.     ***Superiority*.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the defendant. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.

51.     Unless stated otherwise, the claims asserted herein are applicable to all persons who purchased Align.

52.     Plaintiffs seek equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to defendant to provide full restitution to plaintiffs and Class members.

53.     Unless a class is certified, defendant will retain monies received as a result of its conduct that were taken from plaintiffs and proposed Class members.

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

**COUNT I**

**For Violations of the Consumers Legal Remedies Act – Civil Code §1750, *et seq*.**

54.     Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

55.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, Civil Code §1750, *et seq*. (the "Act"). Plaintiffs are consumers as defined by Civil Code §1761(d). Align is a good within the meaning of the Act.

56.     Procter & Gamble violated and continues to violate the Act by engaging in the following practices proscribed by §1770(a) of the Act in transactions with Plaintiffs and the Class which were intended to result in, and did result in, the sale of the Align®:

(a)     Representing that [Align has] . . . characteristics, . . . uses [or] benefits . . . which [it does] not have . . . .

(b)     Representing that [Align is] of a particular standard, quality or grade . . . if [it is] of another.

(c)     Advertising goods . . . with intent not to sell them as advertised.

(d)     Representing that [Align has] been supplied in accordance with a previous representation when it has not.

57.     Procter & Gamble violated the Act by making the representations described above when it knew, or should have known, that the representations were unsubstantiated, false and misleading.

58.     Pursuant to §1782(d) of the Act, Plaintiffs and the Class seek a Court order enjoining the above-described wrongful acts and practices of Procter & Gamble and for restitution and disgorgement.

59.     Pursuant to §1782 of the Act, by letter dated September 21, 2010, Plaintiffs notified Procter & Gamble in writing by certified mail of the particular violations of §1770 of the Act and demanded that Procter & Gamble rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act. On September 27, 2010, Procter & Gamble signed the certified mail receipt acknowledging receipt of the

letter. A true and correct copy of this letter is attached as Exhibit 2 to the First Amended Complaint. *See* D.E. No. 9-2.

60. Procter & Gamble has failed to rectify or agree to rectify the problems associated with the actions detailed above or give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act. Therefore, Plaintiffs further seek claims for actual, punitive and statutory damages, as appropriate.

61. Procter & Gamble's conduct is malicious, fraudulent and wanton, and provides misleading information that can lead to the delayed treatment of serious and life-threatening illness and diseases.

62. Pursuant to §1780(d) of the Act, attached as Exhibit 3 to the First Amended Complaint is the affidavit showing that this action was commenced in the proper forum. *See* D.E. No. 9-3.

## COUNT II

### For Violations of California Business & Professions Code §17200, *et seq*.

63. Plaintiffs repeat and reallege the allegations contained in the paragraphs above, as if fully set forth herein.

64. Business & Professions Code §17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." For the reasons discussed above, Procter & Gamble has violated each of these provisions of Business & Professions Code §17200.

65. Procter & Gamble has violated §17200's prohibition against engaging in unlawful acts and practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1710, 1711, 1770, Business & Professions Code §17200, *et seq.*, Health & Safety Code §110765, 21 U.S.C. §321, 21 U.S.C. §343, by misbranding food, in violation of federal law, and by violating the common law.

66.   Plaintiffs and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

67.   Procter & Gamble's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code §17200, *et seq.* in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

68.   As stated in this Complaint, Plaintiffs allege violations of consumer protection, unfair competition and truth in advertising laws in California and other states resulting in harm to consumers. Plaintiffs assert violations of the public policy of engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code §17200, *et seq.*

69.   There were reasonably available alternatives to further Procter & Gamble's legitimate business interests, other than the conduct described herein.

70.   Procter & Gamble's claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200.

71.   Procter & Gamble's advertising, including its labeling, as described herein, also constitutes unfair, deceptive, untrue and misleading advertising.

72.   Procter & Gamble's conduct caused and continues to cause substantial injury to Plaintiffs and the other Class members. Plaintiffs have suffered injury in fact and have lost money as a result of Procter & Gamble's unfair conduct.

73.   Procter & Gamble has thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling Plaintiffs to judgment and equitable relief against Procter & Gamble, as set forth in the Prayer for Relief.

BLOOD HURST & O'REARDON, LLP

19                                  Case No. 1:11-cv-226-TSB
THIRD AMENDED CLASS ACTION COMPLAINT

74. Additionally, pursuant to Business & Professions Code §17203, Plaintiffs and the Class are entitled to restitution.

## COUNT III

**For Violations of the Florida Deceptive and Unfair Trade Practices Act**
**Florida Statute §501.201, *et seq*.**

75. Plaintiffs repeat and reallege the allegations contained in the paragraphs above, as if fully set forth herein.

76. This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq*. ("FDUTPA"). The stated purpose of the FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

77. Plaintiffs and Class members are consumers as defined by Fla. Stat. §501.203. Align is a good within the meaning of the FDUTPA. Procter & Gamble is engaged in trade or commerce within the meaning of the FDUTPA.

78. Florida Statute §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." The FDUTPA also prohibits false and misleading advertising.

79. Florida Statute §501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act." Procter & Gamble's unfair and deceptive practices are likely to mislead – and have misled – the consumer acting reasonably in the circumstances, and violate Fla. Stat. §500.04 and 21 U.S.C. §343.

80. Procter & Gamble has violated the FDUTPA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

BLOOD HURST & O'REARDON, LLP

81.     Plaintiffs and the Class have been aggrieved by Procter & Gamble's unfair and deceptive practices and acts of false advertising in that they paid for Align.

82.     The harm suffered by Plaintiffs and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Procter & Gamble, as more fully described herein.

83.     Pursuant to Fla. Stat. §501.211(1), Plaintiffs and the Class seek an order for restitution, disgorgement, and damages.

84.     Additionally, pursuant to Fla. Stat. §§501.211(2) and 501.2105, Plaintiffs and the Class make claims for damages, attorneys' fees and costs.

**COUNT IV**

**For Violations of Florida Statutory False Advertising,
Florida Statute §§817.06 and 817.40-817.47**

85.     Plaintiffs repeat and reallege the allegations contained in the paragraphs above, as if fully set forth herein.

86.     This cause of action is brought pursuant to Florida's Statutory False Advertising prohibition, Fla. Stat. §§817.06, 817.40 – 817.47. Fla Stat. §817.41(1), provides, in relevant part, that:

> It shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement. Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses.

87.     As fully explained herein, Procter & Gamble has made, disseminated or caused to be made or disseminated advertising which is false and misleading. Such false and misleading advertising has been made to Plaintiffs and Class members. Procter & Gamble's misrepresentations and omissions were designed with the intent that Plaintiffs and Class members rely on the same and purchase Align as a result of the false and deceptive advertisements.

BLOOD HURST & O'REARDON, LLP

00127036

88. Plaintiffs and the Class have been aggrieved by Procter & Gamble's misleading advertising in that they paid for Align.

89. Plaintiffs and the Class make claims for restitution, disgorgement, damages, attorneys' fees and costs.

**COUNT V**

**For Violations of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*.**

90. Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

91. Plaintiffs and Class members are consumers within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Illinois Consumer Fraud Act").

92. The Illinois Consumer Fraud Act prohibits:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

93. As a result of the deceptive and misleading promises and affirmations of fact made by Procter & Gamble on the Align labels and throughout the Align marketing campaign, as described above, Procter & Gamble has deceived Plaintiffs and Class members.

94. Procter & Gamble intentionally engaged in these unfair and deceptive acts and made false or misleading representations, intending that Plaintiffs and Class members rely on the deception.

95. Procter & Gamble's deceptive conduct occurred in the course of engaging in trade or commerce.

BLOOD HURST & O'REARDON, LLP

96.     Plaintiffs and the Class have purchased Align and suffered actual damages, proximately caused by Procter & Gamble's unfair and deceptive acts and practices.

97.     Additionally, Plaintiffs and the Class make claims for damages, attorneys' fees and costs.

## COUNT VI

### For Violations of the New Hampshire Consumer Protection Act, N.H.R.S.A. 358-A, *et seq*.

98.     Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

99.     The New Hampshire Consumer Protection Act (the "Act") makes it unlawful for "any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce." N.H.R.S.A. 358-A:2.

100.    Procter & Gamble is a "person" under the Act. Procter & Gamble's marketing and selling of Align is "trade" and "commerce" within the meaning of the Act.

101.    Procter & Gamble's unfair or deceptive acts or practices as described herein violate the Act. Procter & Gamble violated §358-A:2 of the Act in the conduct of trade or commerce with Plaintiffs and the Class through, among other things:

V.      Representing that [Align] has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that [it does] not have…

VII.    Representing that [Align is] of a particular standard, quality or grade . . . if [it is] of another.

IX.     Advertising goods . . . with intent not to sell them as advertised.

102.    Furthermore, N.H.R.S.A. 638:6, entitled "Deceptive Business Practices," declares a person guilty of a class B misdemeanor if, in the course of business, he:

(d)     Sells, offers or exposes for sale adulterated or mislabeled commodities…; or

(e)     Makes a false or misleading statement in any advertising addressed to the public…for the purpose of promoting the purchase or sale or property or services.

BLOOD HURST & O'REARDON, LLP

00127036

BLOOD HURST & O'REARDON, LLP

1  Procter & Gamble's violations of N.H.R.S.A. 638:6 constitute independent violations of the

2  Act.

3      103.    Procter & Gamble violated the Act by representing through its advertisements

4  Align as described above when it knew, or should have known, that the representations and

5  advertisements were unfair and/or deceptive.

6      104.    Procter & Gamble's unfair and/or deceptive acts or practices as described

7  herein caused and continue to cause substantial injury to Plaintiffs and the other Class

8  members. Plaintiffs and the other Class members have suffered injury in fact and have lost

9  money as a result of Procter & Gamble's unfair and/or deceptive conduct.

10     105.    Thus, pursuant to N.H.S.R.A. 358-A:10 and 358-A:10-a, Plaintiffs and the

11  other Class members are entitled to damages and equitable relief and an order requiring

12  Procter & Gamble to engage in a corrective advertising campaign.

13     106.    As provided by N.H.R.S.A. 358-A:10-a, Plaintiffs may bring this class action

14  under N.H.R.S.A. 358-A:10 because Procter & Gamble has continuously engaged in

15  uniformly unfair and/or deceptive acts or practices throughout the relevant period, which have

16  caused similar injury to the other Class members.

17     107.    Moreover, because Procter & Gamble's unfair and/or deceptive conduct was

18  willful or knowing, Plaintiffs and the other Class members are entitled to treble damages.

19  Plaintiffs are also entitled to recover costs and reasonable fees.

20                                **COUNT VII**

21         **For Violations of North Carolina's Consumer Protection Statute,**
22              **N.C. Gen. Stat. §75-1.1, *et seq*.**

23     108.    Plaintiffs reallege and incorporate by reference the allegations contained in the

24  paragraphs above as if fully set forth herein.

25     109.    This cause of action is brought pursuant to North Carolina's consumer

26  protection statute, N.C. Gen. Stat. §75-1.1, *et seq.* (the "North Carolina Act").

27     110.    Plaintiffs are persons within the meaning of the North Carolina Act.

28

111.     The North Carolina Act, §75-1.1, declares that "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." Procter & Gamble's marketing, advertising, and sale of Align is "commerce" as defined by the North Carolina Act.

112.     Procter & Gamble violated the North Carolina Act by representing through their advertisements of Align when such representations and advertisements were unsubstantiated, false, and misleading.

113.     Procter & Gamble's conduct, including misrepresenting the efficacy of Align in the course of commerce, inflicted real injury and damage upon Plaintiffs and the Class.

114.     Thus, as a result of Procter & Gamble's unlawful conduct, Plaintiffs and the Class are entitled to judgment, full restitution and damages, including treble damages. N.C. Gen. Stat. § 75-16 ("if damages are assessed in such case judgment shall be rendered in favor the plaintiff and against the defendant for treble the amount fixed by the verdict").

115.     Plaintiffs and Class members also seek costs, including attorneys' fees and expenses.

116.     Procter & Gamble has willfully engaged in the unfair and deceptive acts and practices that constitute violations of the North Carolina Act.

117.     Procter & Gamble knew or should have known that its unfair and deceptive acts and practices were frivolous and malicious.

## COUNT VIII

### Breach of Express Warranty

118.     Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

119.     Plaintiffs, and each member of the Class, formed a contract with Defendant at the time Plaintiffs and the other members of the Class purchased Align. The terms of that contract include the promises and affirmations of fact made by Procter & Gamble on its Align product labels and through other marketing campaigns, as described above. This advertising, including labeling, constitutes express warranties, became part of the basis of the bargain, and

is part of a standardized contract between Plaintiffs and the members of the Class on the one hand, and Procter & Gamble on the other.

120.    All conditions precedent to Procter & Gamble's liability under this contract has been performed by Plaintiffs and the Class.

121.    Procter & Gamble breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing the Align product which could provide the benefits described above.

122.    As a result of Procter & Gamble's breach of its contract, Plaintiffs and the Class have been damaged in the amount of the purchase price of the Align they purchased.

**PRAYER FOR RELIEF**

Wherefore, plaintiffs pray for a judgment:

A.    Certifying the Class as requested herein;

B.    Awarding Plaintiffs and the proposed Class members damages;

C.    Awarding restitution and disgorgement of Procter & Gamble's revenues to Plaintiffs and the proposed Class members;

D.    Awarding attorneys' fees and costs; and

E.    Providing such further relief as may be just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

Dated: September 29, 2017          BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (CA 149343)
LESLIE E. HURST (CA 178432)
THOMAS J. O'REARDON II (CA 247952)

By:          *s/Timothy G. Blood*
TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com

BLOOD HURST & O'REARDON, LLP

1  toreardon@bholaw.com

2  *Attorneys for Plaintiffs and the Class*

3  FUTSCHER LAW PLLC
   DAVID A. FUTSCHER

4  913 N. Oak Drive
   Villa Hills, KY 41017

5  Tel: 859/912-2394
   david@futscherlaw.com

6  NICHOLAS & TOMASEVIC, LLP
   CRAIG M. NICHOLAS (178444)

7  ALEX M. TOMASEVIC (245598)
   225 Broadway, 19th Floor

8  San Diego, CA 92101
   Tel: 619/325-0492

9  619/325-0496 (fax)
   cnicholas@nicholaslaw.org

10  atomasevic@nicholaslaw.org

11  MORGAN & MORGAN, P.A.
    RACHEL L. SOFFIN

12  One Tampa City Center
    201 N. Franklin St., 7th Floor

13  Tampa, FL 33602
    Tel: 813/223-5505

14  813/223-5402 (fax)
    rsoffin@forthepeople.com

15  O'BRIEN LAW FIRM, PC
    EDWARD K. O'BRIEN

16  One Sundial Avenue, 5th Floor
    Manchester, NH 03103

17  Tel: 603/668-0600
    603/672-3815 (fax)

18  eobrien@ekoblaw.com

19  SAMUEL ISSACHAROFF
    40 Washington Square South

20  New York, NY 10012
    Tel: 212/998-6580

21  sil3@nyu.edu

22  BONNETT, FAIRBOURN, FRIEDMAN
      & BALINT, P.C.

23  ANDREW S. FRIEDMAN
    ELAINE A. RYAN

24  PATRICIA N. SYVERSON (203111)
    2325 E. Camelback Road, Suite 300

25  Phoenix, AZ 85016
    Tel: 602/274-1100

26  602/798-5860 (fax)
    afriedman@bffb.com

27  eryan@bffb.com
    psyverson@bffb.com

28  *Additional Attorneys for Plaintiffs*

BLOOD HURST & O'REARDON, LLP

00127036

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed September 29, 2017.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com