IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)

| | | |
|---|---|---|
| DINO RIKOS, on Behalf of Himself, all Others Similarly Situated and the General Public, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CASE NO. 1:11-cv-226 (Judge Timothy S. Black) |
| THE PROCTER & GAMBLE COMPANY, | ) ) ) | |
| Defendant. | ) | |

## OBJECTION TO PROPOSED SETTLEMENT AND MOTION FOR ATTORNEYS' FEES

Christopher T. Cain ("Cain"), pursuant to (1) the Notice of Proposed Settlement of Class Action, (2) Rule 23(d) of the Federal Rules of Civil Procedure, and (3) equity, and respectfully submits this Objection to the Proposed Settlement and Motion for Attorneys' Fees.

    Christopher T. Cain, *Pro se*
    SCOTT & CAIN
    Suite 601
    550 Main Street
    Knoxville, TN 37902
    Tel: (865) 525-2150

TABLE OF CONTENTS

I. PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. THE *CY PRES* PROVISION IS UNFAIR AND UNREASONABLE AND MAKES THE SETTLEMENT INADEQUATE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A. Allocation of $5 Million to $15 Million Via *Cy Pres* Awards Selected By the Defendant Is Unfair and Unreasonable Because Class Members Will Not Have Been Fully-Compensated Before That Allocation. . . . . . . . . . . . . . . . . . . . 3

    B. The Unfettered Discretion Afforded the Defendant Improperly Allows the Identity of *Cy Pres* Recipients to Be Concealed Until After Settlement Approval. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C. The Class Notice Is Deficient Because It Does Not Identify Proposed Cy Pres Recipients and Therefore Precludes Class Members From Having an Opportunity to Object to Them. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV. THE CLEAR-SAILING PROVISION, COMBINED WITH OTHER SIGNS OF CLASS COUNSEL'S SELF-INTERESTS, COMPELS REJECTION OF THE SETTLEMENT AND FEE AWARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

NOTICE OF INTENTION TO APPEAR AT THE FINAL APPROVAL HEARING. . . . . . . . 12

DECLARATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

I. **PRELIMINARY STATEMENT**

Cain is a member of the Class, having purchased Align® within the United States, other than solely for purposes of resale, from March 1, 2009 to June 6, 2016. Cain objects to the settlement for the following reasons:

- The *cy pres* provision of the proposed settlement renders the proposed settlement unfair, inadequate, and unreasonable because it would result in funds being distributed to one or more *cy pres* recipients in lieu of fully compensating Class members for their losses. This large *cy pres* component, of between $5,000,000 and $15,000,000, depending on whether total claims are less than $10,000,000 or exceed $15,000,000, should instead be distributed to Class members to pay the full value of their losses;

- The *cy pres* provision unreasonably grants the Defendant "sole discretion to select the recipients of, and form and combination of, the Guaranteed DHIC provided" and proposed recipients are not identified to permit scrutiny;

- The Class notice was deficient because it did not identify the recipients that would receive the *cy pres* distributions; and

- The proposed settlement's clear-sailing clause, by which the Defendant promises not to object to Class Counsel's requested attorneys' fee award, is yet a further sign of collusion, requiring heightened scrutiny of the settlement's terms, including inquiry and possibly discovery into exactly what the Defendant received in exchange (to the detriment of Class members) for that promise.

For all of these reasons, and those that follow, the proposed settlement should be rejected.

II. **STANDARD OF REVIEW**

Before a district court approves a settlement, the court must find that the settlement is "'fair, reasonable, and adequate.'" *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (quoting Fed. R. Civ. P. 23(e)(1)©). The burden of proving the fairness of the settlement is on the proponents. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 719 (6th Cir. 2013).

### III. THE *CY PRES* PROVISION IS UNFAIR AND UNREASONABLE AND MAKES THE SETTLEMENT INADEQUATE.

> *"Cy pres distributions, while in our view permissible, are inferior to direct distributions to the class because they only imperfectly serve the purpose of the underlying causes of action—to compensate class members."*[1]

The Class notice provides that in addition to cash refunds, the settlement provides:

> "P&G will make Digestive Health Improvement Contributions ("DHIC"). The DHIC will be targeted to benefit directly the Settlement Class; namely, U.S. consumers who suffer from Irritable Bowel Syndrome ("IBS") or who regularly seek assistance and care for their digestive health. P&G will provide the Guaranteed DHIC in the form of: (1) intellectual property and/or know-how; (2) research or education grants; or (3) product donations to research or educational institutions or programs working to improve digestive health.
>
> P&G will make guaranteed, up-front DHIC worth $5 million. Intellectual property will be valued by a qualified independent appraiser. If the amount of eligible refund claims is below $10 million, then P&G will contribute additional DHIC so that the total aggregate contributions to the Settlement Class (including Cash Refunds and all DHIC) shall reach $15,000,000. For example, if eligible Cash Refund Claims total $9,000,000, then P&G will contribute $1,000,000 worth of additional DHIC. If the aggregate amount of eligible refund claims exceeds $15 million, each eligible Settlement Class Member's award shall be reduced on a pro rata basis to reach a total of $15 million and P&G will contribute, approximately dollar-for-dollar above $15,000,000, additional DHIC up to a maximum of $25,000,000 total value (including cash refunds and all DHIC) to the Settlement Class.

[Notice, at p.3; Doc. 166-2, at Page ID#: 6893-94; 6895-96].

What is more, the settlement restricts Class members' ability to object to the *cy pres* recipients and places complete discretion with the Defendant, stating the Defendant:

---

[1] *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 169 (3rd Cir. 2013).

-2-

> "sole discretion to select the recipients of, and form and combination of, the Guaranteed DHIC provided, including any combination of (1)-(3), above, subject to prior review and approval by Class Counsel. Class Counsel shall not unreasonably withhold such approval, which may be withheld for good cause only."

[Doc. 166-2, at Page ID#: 6894].[2]

### A. Allocation of $5 Million to $15 Million Via *Cy Pres* Awards Selected By the Defendant Is Unfair and Unreasonable Because Class Members Will Not Have Been Fully-Compensated Before That Allocation.

Although the *cy pres* doctrine has its place, it is, by definition, inferior to any remedy that directly compensates Class members. There is no dispute that direct distributions to the Class are preferred over *cy pres* distributions. Here, Class members may receive a maximum of $49.26 for

---

[2]The Settlement Agreement also specifies how the *cy pres* award(s) must be valued:

> 6. Determination of Value of DHIC.
>
> a. The determination of the value of intellectual property shall be supported by a report from Charles River Associates, an independent third-party appraiser experienced and qualified in valuing intellectual property. The report by the independent appraiser shall be timely provided to Class Counsel.
>
> b. Research and Education Grants shall be valued at the dollar amount of such grant actually paid by P&G.
>
> c. Product Donations to Research and Educational Institutions or Programs shall be valued at the price at which P&G sells the products to wholesalers and/or distributors.
>
> d. Know How shall be valued at the reasonable cost of time spent by P&G personnel, but at no time shall Know How be valued greater than actual cost to P&G. Charles River Associates, an independent third-party appraiser experienced and qualified in valuing intellectual property, shall review and support the valuation of Know How provided by P&G.

[Doc. 166-2, at Page ID#: 6896].

-3-

their losses, depending upon their specific number of purchases and their dates of purchase. However, the parties concede that the refund value of each package is merely **_50%_** of the "average retail price of Align® during the relevant time period." In other words, Class members are, at most, compensated for just half of their losses.

For certain, any settlement's allocation plan must itself meet Rule 23 standards. "Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable, and adequate." *See In re Lucent Technologies, Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 649 (D. N.J. 2004). The allocation plan at issue here expressly contemplates steering a minimum of $5 million (and up to $15 million) away from Class members to unknown *cy pres* recipients chosen by the Defendant.[3]

The Third Circuit addressed a district court's consideration of a *cy pres* award in the context of a class action settlement in *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3rd Cir. 2013):

> one of the additional inquiries for a thorough analysis of settlement terms is the degree of direct benefit provided to the class. In making this determination, a district court may consider, among other things, the number of individual awards compared to both the number of claims and the estimated number of class members, the size of the

---

[3]The *cy pres* remedy is not inherently flawed. It is "permitted in situations where class recovery cannot feasibly be distributed to individual class members or where unclaimed funds remain following distribution to the class." *In re Matzo Food Products Litig.*, 156 F.R.D. 600, 605-06 (D.N.J.1994). *See also Friedman v. Lansdale Parking Auth.*, No. CIV. A. 92-7257, 1995 WL 141467, at *2 (E.D. Pa. 1995) ("Cy pres distribution, also called "fluid class recovery," is appropriate when disbursement of the fund to the class has been ineffective, the purpose of the fund has not been achieved, and it is possible to indirectly benefit the non-claiming class members by awarding the fund residue to a third party."). *Cf. In re Pharmaceutical Industry Avg. Wholesale Price Lit.*, 588 F.3d 24, 34-35 (1st Cir. 2009) (approving cy pres of unclaimed funds because district court had ensured full treble recovery of class members first); American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.07 (2010).

> individual awards compared to claimants' estimated damages, and the claims process used to determine individual awards. Barring sufficient justification, cy pres awards should generally represent a small percentage of total settlement funds.

*Id.* at 174. The Court continued, stating that a court may urge implementation of:

> a settlement structure that attempts to maintain an appropriate balance between payments to the class and cy pres awards. For instance, it could condition approval of a settlement on the inclusion of a mechanism for additional payouts to individual class members if the number of claimants turns out to be insufficient to deplete a significant portion of the total settlement fund.

*Id.*

In the end, the Third Circuit vacated the district court's orders approving the settlement and the fund allocation plan, finding the district court "did not have the factual basis necessary to determine whether the settlement was fair to the entire class. Most importantly, it did not know the amount of compensation that will be distributed directly to the class." *Id.* at 175.

Perhaps, if the settlement fully compensated Class members for their losses before providing for *cy pres* awards, the cy pres provision might pass muster. Here, because Class members are only partially compensated before anywhere from $5 million to $15 million is directed to unidentified entities selected by the Defendant, the provision is unfair and unreasonable on its face. Notably, other Courts of Appeals have approved *cy pres* distributions where all class members submitting claims have already been *fully compensated* for their damages by prior distributions. *See, e.g., In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 34-35 (1st Cir. 2012).[4] A *cy pres* distribution

---

[4] A *cy pres* distribution which would only become operational once all class members have been fully compensated is, as such, unobjectionable. *See In re Tyco Intern. Ltd. Multidistrict Litig.*, 535 F. Supp.2d 249, 262 (D. N. H. 2007) ("The plan calls for the continued re-distribution of unclaimed funds to class members according to their pro rata shares, until the costs of such redistributions make it economically unfeasible to continue doing so. If and when

is, as the Third Circuit recognized, considered appropriate in that circumstance because additional individual distributions would "overcompensat[e] claimant class members at the expense of absent class members." *In re Baby Prods.*, at 176 (citing *In re Lupron Id.* at 35).

Similarly, the Court in this case lacks the factual basis necessary to determine whether the settlement is fair to Class members because it does not know the amount of compensation that will be distributed to Class members. What the Court does know, however, is that not a single Class member will receive a refund covering more than half of her losses.

Simply put, there is no defensible reason to have any *cy pres* component in this settlement until reasonable measures are taken to ensure that all Class members have been fully – not partly or even halfway – compensated for their losses. If Class members are entitled to compensation, and that compensation can be feasibly distributed without unreasonable administrative burdens, the parties' desire to assign a large portion of the settlement funds to unidentified third parties – to be designated by the Defendant in its sole discretion – is without lawful foundation.

### B. The Unfettered Discretion Afforded the Defendant Improperly Allows the Identity of *Cy Pres* Recipients to Be Concealed Until After Settlement Approval.

To the extent *cy pres* distributions are allowed, they must be carefully chosen to account for the nature of the lawsuit, the objectives of underlying statutes and the interests of absent class

---

that point is reached, then the balance of the fund will be subject to a cy pres remedy."); *Government Employees Hosp. Ass'n v. Serono Intern., S.A.*, 246 F.R.D. 93, 95 (D. Mass. 2007) (Settlement amount "specifically allocated" to class members; "This amount was expected to be sufficient to fully pay all of the claims"; "Any excess was to be distributed as a cy pres fund"). *See also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (cy pres award made only after "great efforts to ensure that individual consumers" were rewarded and "in light of the very weakness of the claims" of some subclass members). Here, because the settlement already contains a method to distribute funds to Class members, using *cy pres* to direct funds that should rightfully be directed to Class members is inappropriate.

members, including their geographic diversity. *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (cy pres distributions allowed but inferior; must be specifically justified); *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) (concerns regarding *cy pres* beneficiaries not placated by settlement provision that charities will be identified later and approved by court); *In re Lupron Mktg. & Sales Pract. Litig.*, 677 F.3d 21, 33 (1st Cir. 2012) (when feasible, interests of *cy pres* recipients should reasonably approximate those being pursued by class); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011) (*cy pres* distribution must target plaintiff class; must be "driving nexus" between *cy pres* beneficiaries and class); *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682 (8th Cir. 2002) (emphasizing importance of tailoring *cy pres* distribution to nature of underlying suit). Here, the proposed settlement provides no information at all regarding the proposed *cy pres* recipient. It provides only that the Defendant will choose the beneficiaries "subject to prior review and approval by Class Counsel." When the selection of *cy pres* beneficiaries is not tethered to the nature of the lawsuit and the interests of absent class members, the selection process may answer to the whims and self-interests of the parties, counsel or the Court. *See Nachshin*, 663 F.3d at 1039. By not identifying the proposed cy pres recipient, the parties have restricted the Court's ability to conduct the searching inquiry required to approve such a distribution. *See Dennis*, 697 F.3d at 867. In addition, the failure to designate a proposed *cy pres* recipient deprives Class members of notice and the ability to object.

Class Counsel's negotiation of a *cy pres* fund that does not serve to benefit Class members may have violated their fiduciary duty to Class members. By engineering a *cy pres* component that surrenders practically all discretion as to amounts and recipients to the Defendant, Class Counsel and the Class representatives failed to put the interests of the Class first, raising severe Rule 23(a)(4)

concerns.[5]

### C. The Class Notice Is Deficient Because It Does Not Identify Proposed Cy Pres Recipients and Therefore Precludes Class Members From Having an Opportunity to Object to Them.

Because the identity of any *cy pres* recipient speaks directly to whether the settlement complies with the Rule 23 standards, this lack of specificity also undermines the adequacy of Class notice. The Court should reject this settlement because it improperly creates contingent *cy pres* recipients, because the failure to identify those recipients precludes Class members from exercising their right to object. A *cy pres* award "will be rejected when the proposed distribution fails to provide the 'next best' distribution." *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990). Any such distribution must "adequately target the plaintiff class." *Id.* But here, Class members are entirely without notice of the *cy pres* recipients, as their identities apparently will not be determined by the Defendant until after the objection deadline has passed. This is wrong.

Notice gives class members "the information 'needed to decide, intelligently, whether to stay in or opt out. . . .'" *In re Diet Drugs Prods. Liab. Litig.*, 385 F.3d at 395 (3rd Cir. 2004) (quoting

---

[5]*See* Martin H. Redish, et al., *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla. L. Rev. 617 (2010) (cy pres "threatens to undermine the due process interests of absent class members by disincentivizing the class attorneys in their efforts to assure [classwide] compensation of victims of the defendant's unlawful behavior"); John Beisner, et al., *Cy Pres: A Not So Charitable Contribution to Class Action Practice* (2010); Sam Yospe, *Cy Pres Distributions in Class Action Settlements*, 2009 Columbia Bus. L. Rev. 1014; Editorial, *When Judges Get Generous; A better way to donate surpluses from class-action awards*, Wash. Post (Dec. 17, 2007) ("Federal judges are permitted to find other uses for excess funds, but giving the money away to favorite charities with little or no relation to the underlying litigation is inappropriate and borders on distasteful. In all but the rarest of circumstances, those funds should be made available to individual plaintiffs and not to outside organizations – no matter how worthy").

*Amchem Prods. v. Windsor*, 521 U.S. 591, 628 (1997)). It must be "'reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . .'" *Lachance v. Harrington*, 965 F. Supp. 630, 636 (E.D. Pa.1997) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). If the creation of *cy pres* beneficiaries could reasonably be predicted by operation of the settlement, those beneficiaries' identities should have been included in the notice. *Cf. In re Diet Drugs Prods. Liability Litig.*, 434 F. Supp.2d 323, 339 (E.D. Pa. 2006) (class doesn't have to receive notice of what "could only have been conjecture"; "predicting future events outside the reasonable contemplation of all the parties and the court was not required"). The *cy pres* remedy which the settlement provides for here is just the converse of the situation discussed in *Diet Drugs* immediately above: here, the *cy pres* remedy is not simply conjecture, it is a settlement term and rests inside the reasonable contemplation of all the parties.

The prospect of contingent *cy pres* awards to unnamed beneficiaries denies Class members the information they need in order to evaluate the proposed distribution. The identity of *cy pres* recipients is material to the settlement, and the court should not approve it without providing the class a full and fair opportunity to object to any material changes to it. *See, e.g., In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010).

## IV. THE CLEAR-SAILING PROVISION, COMBINED WITH OTHER SIGNS OF CLASS COUNSEL'S SELF-INTERESTS, COMPELS REJECTION OF THE SETTLEMENT AND FEE AWARD.

Class Counsel negotiated an agreement from the Defendant not to object to a $4.5 million fee request:

> "Class Counsel shall make, and Defendant agrees not to oppose, an application for an award of attorneys' fees and reimbursement of expenses not to exceed $4,500,000."

[Doc. 166-2, at Page ID#: 6906]. The language is known as a "clear-sailing" clause. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 130467, at *58-61 (N.D. Ohio Sept. 23, 2016); *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014) (in "a 'clear-sailing clause' . . . , the defendant agrees not to contest class counsel's request for attorneys' fees"). "[I]nclusion [of a clear sailing clause in a class action settlement] gives the district court a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class." *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 291 (6th Cir. May 13, 2016) (internal quotation marks omitted).

District courts must be especially wary when the parties agree not to contest fees in class actions. *See Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012). Judge Posner described the problem:

> Because it's in the defendant's interest to contest that request in order to reduce the overall cost of the settlement, the defendant won't agree to a clear-sailing clause without compensation – namely *a reduction in the part of the settlement that goes to the class members*, as that is the only reduction class counsel are likely to consider. The existence of such clauses thus illustrates the danger of collusion in class actions between class counsel and the defendant, to the detriment of the class members.

*Redman*, 768 F.3d at 637, *cert. denied sub nom. Nicaj v. Shoe Carnival, Inc.*, 135 S. Ct. 1429 (2015) (emphasis added).

Because there is no evidence before the Court as to when the clear-sailing provision was finalized, the Court must assure itself that Class Counsel's attorney's fee was not pre-decided or that

-10-

counsel engaged in collusive and adverse actions in connection with this fee amount. It stands to reason that the Defendant received *something* of value and Class Counsel gave up *something* of value, *i.e.*, something beneficial to Class members, in return. After all, "[i]t is unlikely that a defendant will gratuitously accede to the plaintiffs' request for a 'clear sailing' clause without obtaining something in return. That something will normally be at the expense of the plaintiff class." *Malchman v. Davis*, 761 F.2d 893, 908 (2d Cir. 1985) (Newman, J., concurring).

In any event, absent evidence to the contrary, it must be assumed that the clear-sailing provision does not favor Class members. The clause demonstrates severe mis-alignment between the interests of Class members on one hand and those of Class Counsel on the other, deeply-rooted as strong indicia of collusion. Not surprisingly, the record is silent as to whether Class Counsel gave away something valuable in return for the Defendant's agreement not to contest their fee.

Significantly, as demonstrated above, the clear-sailing provision is but one of the problem that exists with this proposed settlement. In the end, by taking precautions to protect their own interests – structuring a proposed settlement which provides them $4.5 million but provides Class members a maximum of less than $50 a piece, giving the Defendant virtually unfettered discretion over *cy pres* funds purportedly intended to benefit Class members but which in fact will not only have little of no meaningful benefit to the Class but instead serve as a marketing tool for the Defendant's products, and inserting a "clear-sailing" provision into the proposed settlement – Class Counsel all but abandoned their duty to adequately represent Class members.

If this Court engages in the requisite scrutiny of the proposed settlement, it will inevitably find other signs of self-dealing or collusion. The Court cannot simply take Class Counsel at their word and sidestep its duty to uncover collusion.

## NOTICE OF INTENTION TO APPEAR AT THE FINAL APPROVAL HEARING IN *RIKOS v. THE PROCTER & GAMBLE COMPANY*

**NOTICE** is hereby given that the undersigned requests that he be allowed to participate via telephone at the Fairness Hearing currently scheduled for 10:00 a.m. on April 16, 2018.

Respectfully submitted, this 17th day of March, 2018.

_____
Christopher T. Cain, *Pro se*
SCOTT & CAIN
Suite 601
550 Main Street
Knoxville, TN 37902
Tel: (865) 525-2150

## DECLARATION

Under penalty of perjury, I do hereby state that I am a resident of the State of Tennessee and a citizen of the United States and that I purchased Align® within the United States, other than solely for purposes of resale, from March 1, 2009 to June 6, 2016.

Dated: March 17, 2018

Christopher T. Cain, *Pro se*
SCOTT & CAIN
Suite 601
550 Main Street
Knoxville, TN 37902
Tel: (865) 525-2150

## CERTIFICATE OF SERVICE

I, Christopher T. Cain, on March 17, 2018, mailed the original of the foregoing Objection, postage pre-paid, via First Class U.S. Mail, to the following:

> Clerk of the Court
> United States District Court
> for the Southern District of Ohio
> Potter Stewart U.S. Courthouse
> 100 East Fifth Street
> Cincinnati, OH 45202

I also certify that I mailed a copy of the foregoing Objection, via First Class U.S. Mail, postage prepaid, to the following:

> Timothy Blood
> Thomas J. O'Reardon II
> BLOOD HURST & O'REARDON, LLP
> 501 West Broadway, Suite 1490
> San Diego, CA 92101

> D. Jeffrey Ireland
> Erin E. Rhinehart
> FARUKI IRELAND COX
> RHINEHART & DUSING P.L.L.
> 201 E. Fifth Street, Suite 1420
> Cincinnati, OH 45202

This 17th day of March, 2018.

_____
Christopher T. Cain

Christopher Cain
Suite 601
550 Main Street
Knoxville, TN 37902

7017 3380 0000 2605 8125

CERTIFIED MAIL

RETURN RECEIPT REQUESTED

Clerk of the Court
United States District Court
Southern District of Ohio
Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, OHIO 45202





U.S. POSTAGE PAID
KNOXVILLE, TN
37950
MAR 17, 18
AMOUNT
$7.83
R2303S102145-19