BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (CA 149343)
LESLIE E. HURST (CA 178432)
THOMAS J. O'REARDON II (CA 247952)
501 West Broadway, Suite 1490
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

*Attorneys for Plaintiffs and the Class*

[Additional counsel appear on signature page.]

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| DINO RIKOS, TRACEY BURNS, and LEO JARZEMBROWSKI, On Behalf of Themselves, All Others Similarly Situated and the General Public,<br><br>       Plaintiffs,<br><br>       v.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>       Defendant. | Case No. 11-CV-00226-TSB<br><br><u>CLASS ACTION</u><br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND REQUEST FOR AWARD OF ATTORNEYS' FEES AND EXPENSES**<br><br>Date:      April 16, 2018<br>Time:     10:00 a.m.<br>Judge:   Hon. Timothy S. Black<br>Courtroom: 815 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......................................................................................... 1

II. THE OBJECTORS ARE PROFESSIONAL OBJECTORS ........................... 1

    A.    Patrick Sweeney, Esq. ................................................................ 2

    B.    Pamela Sweeney, "Pro Se" ...................................................... 4

    C.    Christopher Cain, Esq. ............................................................. 4

    D.    Arianna Gallagher and Simina Vourlis, Esq. ........................... 6

    E.    Adam Brunet ............................................................................ 6

III. THE OBJECTIONS ARE MERITLESS AND SHOULD BE OVERRULED ............... 6

    A.    The Lack of Objections Indicates the Settlement's Fairness ............... 6

    B.    The Objections Should Be Overruled Because They Were Filed for Improper Purposes ................................................................ 7

    C.    The Brunet Objection Should Be Rejected as Untimely ................... 8

    D.    Patrick and Pamela Sweeney Have Not Demonstrated Class Membership, and Therefore Lack Standing to Object ................... 9

    E.    The Objectors Do Not Meet Their Burden ...................................... 10

        1.    The Settlement's Cash Awards Are Fair and Reasonable ................... 10

        2.    The Digestive Health Improvement Contributions Are Fair and Reasonable ........................................................... 13

        3.    Cash Refund Distribution Process ...................................... 15

        4.    The Requested Attorneys' Fees Are Fair and Reasonable ................... 16

            a)    Patrick Sweeney Misunderstands Plaintiffs' Fee Request ......... 16

            b)    Pamela Sweeney's One-Line Objection Lacks Merit ................ 17

            c)    Cain's Clear-Sailing Objection ...................................... 17

            d)    Gallagher's Fee Objections Lack Merit ................................. 19

            e)    Brunet's Fee Objections Lack Merit ...................................... 21

IV. CONCLUSION ................................................................................... 22

BLOOD HURST & O'REARDON, LLP

00133399

**Cases**

*In re Baby Prods. Antitrust Litig.*,
  708 F.3d 163 (3d Cir. 2013) .......................................................................................... 11

*Bank Melli Iran v. Pahlavi*,
  58 F.3d 1406 (9th Cir. 1995) ......................................................................................... 10

*Barnes v. FleetBoston Fin. Corp.*,
  No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072
  (D. Mass. Aug. 22, 2006) ................................................................................................ 2

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ............................................................................................... 20, 21

*Bronson v. Board of Educ.*,
  604 F. Supp. 68 (S.D. Ohio 1984) ................................................................................ 13

*Brown v. Hain Celestial Group, Inc.*,
  No. 3:11-cv-03082-LB, 2016 U.S. Dist. LEXIS 19275
  (N.D. Cal. Feb. 17, 2016) ............................................................................................... 3

*In re Centocor Secs. Litig.*,
  No. 92-CV-1071, 1993 U.S. Dist. LEXIS 7229
  (E.D. Pa. June 2, 1993) ................................................................................................... 8

*Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*,
  944 F.2d 1525 (9th Cir. 2001) ......................................................................................... 9

*Devlin v. Scardelletti*,
  536 U.S. 1 (2001) ............................................................................................................ 2

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
  183 F.3d 1 (1st Cir. 1999) ............................................................................................... 2

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
  130 F.R.D. 366 (S.D. Ohio 1990) ................................................................................... 7

*Ebarle v. Lifelock, Inc.*,
  No. 15-cv-00258-HSG, 2016 U.S. Dist. LEXIS 128279
  (N.D. Cal. Sept. 20, 2016) ............................................................................................ 13

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*,
  137 F.R.D. 240 (N.D. Ohio 1991) ................................................................................ 13

*Feder v. Elec. Data Sys. Corp.*,
  248 Fed. Appx. 579 (5th Cir. 2007) ........................................................................... 9, 10

00133399

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

*Fladell v. Wells Fargo Bank, N.A.*,
  No. 0:13-cv-60721-MORENO, 2014 U.S. Dist. LEXIS 156307
  (S.D. Fla. Oct. 29, 2014) ....................................................................................19

*In re Ford Motor Co. Spark Plug & Three Valve Engine Prods. Liab. Litig.*,
  No. 1:12-MD-2316, 2016 U.S. Dist. LEXIS 188074
  (N.D. Ohio Jan. 26, 2016) ..................................................................................12

*Gascho v. Global Fitness Holdngs, LLC*,
  822 F.3d 269 (6th Cir. 2016).......................................................15, 18, 20, 21

*Gooch v. Life Investors Ins. Co. of Am.*,
  672 F.3d 402 (6th Cir. 2012).........................................................................18, 19

*Granada Invest., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) ............................................................................13

*Hainey v. Parrott*,
  617 F. Supp. 2d 668 (S.D. Ohio 2007) ................................................................6

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998).............................................................................7

*Harris v. J.B. Robinson Jewelers*,
  627 F.3d 235 (6th Cir. 2010)...............................................................................9

*Haynes v. Shoney's*,
  No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749
  (N.D. Fla. Jan. 25, 1993) ....................................................................................8

*Hester v. Vision Airlines, Inc.*,
  No. 2:09-CV-00117-RLH, 2017 U.S. Dist. LEXIS 160686
  (D. Nev. Sept. 22, 2017) ....................................................................................15

*In re High-Tech Empl. Antitrust Litig.*,
  No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118052
  (N.D. Cal. Sept. 2, 2015).....................................................................................22

*In re Initial Pub. Offering Sec. Litig.*,
  728 F. Supp. 2d 289 (S.D.N.Y. 2010)................................................................2

*Int'l Union v. GMC*,
  No. 07-CV-14074-DT, 2008 U.S. Dist. LEXIS 92590
  (E.D. Mich. July 31, 2008) .................................................................................17

*Lane v. Facebook*,
  696 F.3d 811 (9th Cir. 2012)........................................................................11, 14

*Larsen v. Trader Joe's Co.*,
  No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538
  (N.D. Cal. July 11, 2014) ....................................................................................3

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

*In re Law Office of Jonathan E. Fortman, LLC*,
No. 4:13MC00042 AGF, 2013 U.S. Dist. LEXIS 13903
(E.D. Mo. Feb. 1, 2013) .........................................................................................7

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998).............................................................................12

*Lonardo v. Travelers Indem. Co.*,
706 F. Supp. 2d 766 (N.D. Ohio 2010) ...............................................................20

*Malchman v. Davis*,
761 F.2d 893 (2d Cir. 1985) .................................................................................18

*Marshall v. NFL*,
787 F.3d 502 (8th Cir. 2015)...........................................................................11, 14

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007) .................................................................................20

*Mercury Interactive Securities Litigation*,
618 F.3d 988 (9th Cir. 2010)................................................................................22

*Miller v. Ghirardelli Chocolate Co.*,
No. 12-cv-04936-LB, 2015 U.S. Dist. LEXIS 20725
(N.D. Cal. Feb. 20, 2015) .......................................................................................9

*Moulton v. United States Steel Corp.*,
581 F.3d 344 (6th Cir. 2009).................................................................................20

*In re Netflix Privacy Litig.*,
No. 5:11-cv-0379-EJD, 2013 U.S. Dist. LEXIS 168298
(N.D. Cal. Nov. 25, 2013) .......................................................................................8

*Olden v. Gardner*,
294 Fed. Appx. 210 (6th Cir. 2008) ........................................................................6

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015).................................................................................20

*Oster v. Huntington Bancshares Inc.*,
No. 2:15-cv-2746, 2017 U.S. Dist. LEXIS 76651
(S.D. Ohio May 19, 2017)......................................................................................10

*Physicians of. Winter Haven LLC v. Steris Corp.*,
No. 1:10 CV 264, 2012 U.S. Dist. LEXIS 15581
(N.D. Ohio Feb. 6, 2012) .......................................................................................20

*In re Polyurethane Foam Antitrust Litig*,
178 F. Supp. 3d 635 (N.D. Ohio 2016)...................................................................7

*In re Polyurethane Foam Antitrust Litig.*,
168 F. Supp. 3d 985 (N.D. Ohio 2016)..............................................7, 12, 15, 20

*Priddy v. Edelman*,
  883 F.2d 438 (6th Cir. 1989)................................................................12

*In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998)................................................................19

*Redman v. RadioShack Corp.*,
  768 F.3d 622 (7th Cir. 2014)................................................................18

*Roberts v. Electrolux Home Prods., Inc.*,
  No. SACV12-1644-CAS(VBKx), 2014 U.S. Dist. LEXIS 130163
  (C.D. Cal. Sep. 11, 2014)................................................................3, 7

*Rodriguez v. Infinite Care, Inc.*,
  No. 15-1824, 2016 U.S. Dist. LEXIS 159223
  (E.D. Pa. Nov. 17, 2016)................................................................15

*In re S. Ohio Corr. Facility*,
  173 F.R.D. 205 (S.D. Ohio 1997) ................................................................10

*Schuh v. HCA Holdings, Inc.*,
  No. 3:11-cv-01033 (M.D. Tenn.)................................................................6

*Stotts v. Memphis Fire Dep't*,
  679 F.2d 541 (6th Cir. 1982)................................................................10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. 3:07-md-1827 SI, 2011 U.S. Dist. LEXIS 154288
  (N.D. Cal. Dec. 27, 2011) ................................................................22

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
  Practices, & Prods. Liab. Litig.*,
  No. 8:10ML 02151 JVS, 2013 U.S. Dist. LEXIS 123298
  (C.D. Cal. July 24, 2013) ................................................................11, 14, 15

*In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair
  Debt Collection Practices Act (FDCPA) Litig.*,
  No. 2:13-MD-2426-DBH, 2016 U.S. Dist. LEXIS 17837
  (D. Me. Feb. 10, 2016)................................................................3, 9

*Vasco v. Power Home Remodeling Grp. LLC*,
  No. 15-4623, 2016 U.S. Dist. LEXIS 141044
  (E.D. Pa. Oct. 12, 2016)................................................................22

*Vassalle v. Midland Funding, LLC*,
  No. 3:11-cv-00096, 2014 U.S. Dist. LEXIS 146543
  (N.D. Ohio Oct. 14, 2014) ................................................................13

*Velma-Alma Indep. Sch. Dist. No. 15. v. Texaco, Inc.*,
  162 P.3d 238 (Okla. Civ. App. 2007) ................................................................17

BLOOD HURST & O'REARDON, LLP

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999).................................................................................18, 20, 21

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
No. 1:08-WP-65000 (MDL 2001), 2016 U.S. Dist. LEXIS 130467
(N.D. Ohio Sept. 23, 2016) ....................................................................................1, 9, 12

*In re Yahoo Mail Litig.*,
No. 13-CV-4980-LHK, 2016 U.S. Dist. LEXIS 115056
(N.D. Cal. Aug. 25, 2016).............................................................................................3, 9

*Yarrington v. Solvay Pharms., Inc.*,
697 F. Supp. 2d 1057 (D. Minn. 2010) .............................................................................8

**Federal Rules**

Fed. R. Civ. P. 23(h) ..........................................................................................................22

Fed. R. Evid. 602 ...............................................................................................................10

**Secondary Sources**

2 Newberg on Class Actions (3d ed)
§ 11.58 .........................................................................................................................17

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, (4th ed. 2002)
§ 15:34 .........................................................................................................................18
§ 15:37 ...........................................................................................................................2

7B Charles Alan Wright, Arthur Miller, and May Kay Kane,
Fed. Prac. & Proc. § 1797.1 ........................................................................................17

Janet Cooper Alexander, *Rethinking Damages in Securities Class Actions*,
48 Stan. L. Rev. 1487 (1996) ......................................................................................18

Brian T. Fitzpatrick, *The End of Objector Blackmail?*,
62 Vand. L. Rev. 1623 (2009) .......................................................................................1

Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, *Managing
Class Action Litigation: A Pocket Guide for Judges* (3d ed. 2010) ........................2

*Manual for Complex Litigation* § 21.643....................................................................7

BLOOD HURST & O'REARDON, LLP

00131658

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## I.    INTRODUCTION

As set forth in Plaintiffs' Motion for Final Approval of Class Action Settlement ("Opening Brief") (Doc. 1637-1), the Settlement readily meets the "fair, reasonable, and adequate" standard and has been well received by the Settlement Class.[1] With more than a month left in the claims period, the claims administrator estimates that P&G will pay out $13 million in Cash Refunds, and $11.8 million of DHIC relief is ready to be distributed. Only one Class Member requested to opt-out of the Settlement and there are no well-intentioned objections. The only objections are from "professional" or "serial" objectors who troll class action settlements, file boilerplate objections, wait for the trial court to overturn their objections, then file a notice of appeal to leverage the delay to demand a payment to go away, with no intention of improving the settlement. These objections have no merit and should be overruled, and the Settlement should be granted final approval.

## II.    THE OBJECTORS ARE PROFESSIONAL OBJECTORS

Class members exercising their right to object to a settlement play a valuable role in ensuring that the settlement is fair and adequate. However, unscrupulous current and former attorneys make a living exploiting the right to object by filing unsubstantiated objections and then threaten to delay implementation of the settlement through the appellate process.[2] These vexatious objections needlessly burden the judicial system, and ultimately hurt class members.

The Federal Judicial Center and countless state and federal courts have written about serial objectors, including those in this case, and warn courts to "[w]atch out … for canned objections from professional objectors who seek out class actions to extract a fee by lodging

---

[1]    All capitalized terms herein have the same meaning as set forth in the Stipulation of Settlement (hereinafter "Settlement," "Settlement Agreement," or "SA") that was filed with the Court on September 29, 2017. *See* Doc. No. 166-2 (the Settlement).

[2]    Judge Christopher Boyko of the Northern District of Ohio described the modus operandi of the serial objector: "In nearly every class action settlement today, professional objectors file objections (often frivolous ones) simply in order to obtain standing to appeal the district court's final approval order. The professional objector hopes that class counsel, in order to settle the appeal and gain access to the fee award, will pay the objector to go away." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000 (MDL 2001), 2016 U.S. Dist. LEXIS 130467, at *63-64 (N.D. Ohio Sept. 23, 2016); *see also* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623, 1624 (2009) (same).

generic, unhelpful protests.'" Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 17 (3d ed. 2010); *see also In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) ("I concur with the numerous courts that have recognized that professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients."). Courts are further cautioned to be "wary of self-interested professional objectors who often present rote objections to class counsel's fee requests and add little or nothing to the fee proceedings." *Managing Class Action Litigation*, at 24.

"[M]eritless objections tend to delay providing benefits to bone fide and deserving class members inasmuch as settlements commonly do not provide for payments of any benefits until the judgment entered approving a settlement is final and not subject to further appeal." 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, § 15:37 (4th ed. 2002); *see also Devlin v. Scardelletti*, 536 U.S. 1, 23 n.5 (2001) (Scalia, J., dissenting) (observing that professional objectors' penchant for filing "canned" briefs and baseless objections often leads to baseless appeals in the quest for a fee); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 6-7 (1st Cir. 1999) ("[W]e recognize that a class member and his or her attorney conceivably could object to a proposed settlement solely to set up an appeal designed to obtain a nuisance value recovery and/or advantageous fee arrangement."); *Barnes v. FleetBoston Fin. Corp.*, No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072, at *3-4 (D. Mass. Aug. 22, 2006) ("[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing."). Each of the objectors here is a professional objector whose sole purpose is to extract a fee by delaying implementation of the Settlement.

### A.    Patrick Sweeney, Esq.

Patrick Sweeney is a former attorney, convicted felon and well-known serial objector, having filed objections on behalf of himself, his wife (who separately objects here), his

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

children, or purported class members to at least 42 settlements. *See* Blood Reply Dec., ¶2 and Ex. A thereto (listing and attaching Patrick Sweeney's objections).[3] Courts have repeatedly found that Sweeney is a serial objector who files bad faith, meritless objections to hold up settlements in return for extortion payments. *See In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK, 2016 U.S. Dist. LEXIS 115056, at *26 (N.D. Cal. Aug. 25, 2016) ("[D]iscovery reveals Sweeney is a serial objector. During Sweeney's deposition, Sweeney revealed that he had objected in 25 federal cases across the country."); *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538, at *22-23 n.4 (N.D. Cal. July 11, 2014) (overruling objections and recognizing that "attorney Patrick Sweeney also has a long history of representing objectors in class action proceedings"); *Roberts v. Electrolux Home Prods., Inc.*, No. SACV12-1644-CAS(VBKx), 2014 U.S. Dist. LEXIS 130163, at *34 (C.D. Cal. Sep. 11, 2014) (overruling Mr. Sweeney's objections and noting his "long history of representing objectors"); *Brown v. Hain Celestial Group, Inc.*, No. 3:11-cv-03082-LB, 2016 U.S. Dist. LEXIS 19275, at *29 (N.D. Cal. Feb. 17, 2016) (identifying Sweeney as part of a group of "professional objectors" and finding that "courts across the country… have repeatedly turned aside [his] efforts to upend settlements"); *In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Collection Practices Act (FDCPA) Litig.*, No. 2:13-MD-2426-DBH, 2016 U.S. Dist. LEXIS 17837, at *21 n.16 (D. Me. Feb. 10, 2016) (ruling that Sweeney's "listed objections are without merit and appear to be a form document … that he has filed in other class action settlements").

Nonetheless, here, even Mr. Sweeney thinks the Settlement should be approved, although he does not realize it. He has no objection to the Settlement itself. Instead, he asserts that Plaintiffs' Counsel should receive no more than $4.25 million in attorneys' fees. Mr. Sweeney fails to realize that Plaintiffs' Counsel seek less than $4.14 million in attorneys' fees, with the remainder sought consisting of out-of-pocket expenses, to which he does not object.

---

[3] "Blood Reply Dec." refers to the concurrently filed Declaration of Timothy G. Blood in Support of Motion for Final Approval. For details on Mr. Sweeney's activities, *see* Paragraphs 2-5 and Exhibits A-I to the Blood Reply Declaration.

BLOOD HURST & O'REARDON, LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.     Pamela Sweeney, "Pro Se"**

Mr. Sweeney's wife, Pamela, is a serial objector in her own right, having objected to at least 18 settlements in just the past five years. *See* Blood Reply Dec., ¶6 and Ex. J thereto (listing and attaching Pamela Sweeney objections); *see also* Ex. K (*Snyder's-Lance* Order) at 1 (Denying Mrs. Sweeney's effort to quash a subpoena for her deposition, the court noted that "[t]his is the third motion to quash filed in this court within this past week by Ms. Sweeney or Patrick Sweeney."). Courts have described her objections as "frivolous" and "boilerplate" that have nothing to do with the actual settlement at issue. *Id.*, Ex. L (court in *Edwards v. National Milk* found that Pamela Sweeney "fails to raise non-frivolous issues," certified her appeal as "frivolous," and imposed an appeal bond—that Sweeney failed to pay anyway); Ex. K (Pamela Sweeney's objections were "boilerplate objections [that] have not persuaded this court."); Ex. M (*Friedman v. Guthy-Renker*, Final Approval Order) at 12 n.6 and 16 (objection was "devoid [of] any real argument" and "too vague for the Court to properly analyze.").

Like her husband, Pamela admits to a history of dismissing her objections in exchange for extracting payoffs from class counsel. Ex. N (Pamela Sweeney Apr. 10, 2017, deposition in *Friedman v. Guthy-Renker*) at 21:13-17 (testifying she had settled three of her objections). All her objections have been overruled, and on at least twelve occasions she has filed a notice of appeal to prevent settlement implementation. Blood Reply Dec., ¶7. She often is not a member of the class she objects to, files untimely objections, and has had her appeals dismissed by the Third, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits for failure to prosecute. The Second Circuit issued an order to show cause why her objection should not be dismissed. Eleven days later Sweeney filed a notice of voluntary dismissal (presumably because of a payoff). *Id.*

**C.     Christopher Cain, Esq.**

Christopher Cain is a serial objector who has filed objections to at least 8 settlements. *See* Blood Reply Dec., ¶9 and Ex. O thereto (listing and attaching Cain's objections). Cain has been excoriated by numerous federal courts across the country for filing frivolous, recycled objections to extort a payoff.

PLAINTIFFS' REPLY ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

1    In *Hill v. State St. Corp.*, No. 1:09-cv-12146-GAO (D. Mass.), the court overruled

2    Cain's objections and imposed a $75,300 appeal bond when Cain appealed the final approval

3    order. The court found "[t]he arguments raised in the Franzes' objections [filed by Cain],

4    which I expect they also will raise on appeal, were frivolous," and explained why an appeal

5    bond was therefore appropriate:

6        Further, Cain's status as a serial objector supports the conclusion that a bond is
         appropriate here. As the lead plaintiffs observe, Cain recycles many of his
7        arguments across various class actions. While objectors play an important role
         in class action settlements, serial objectors can prevent an otherwise fair
8        settlement from moving forward.

9    *See* Ex. P (*Hill v. State St.*, Appeal Bond Order) at 3-4. Many other courts have found Cain's

10   tactics troubling:

11       • *Chambers v. Whirlpool Corp.*, No. 8:11-cv-1733 (C.D. Cal.):

12       Noting that Cain's objector client, Allen McDonald (a serial objector himself),
         "failed to comply with discovery obligations imposed on them as objectors and
13       struck their objections on the record." Cain also disregarded the Court's order
         to not file any other documents. The Court determined Cain's appeal was
14       "clearly frivolous" and certified it as such. *See* Ex. Q at 3-4.

15       • *Mehigan v. Ascena Retail Group, Inc.*, No. 2:15-cv-00724-MAK (E.D. Pa.):
16
17       In an order imposing an appeal bond on Cain and other serial objectors, the
         court noted their extortionate, "coercive" tactics: "We expect valid objections
         may increase the value of the class benefit. Unfortunately, too often the
18       objectors are represented by lawyers who file objections to many class action
         settlements simply to be bought out at a higher premium than other class
19       members. When this tactic fails, they file appeals challenging established legal
         issues hoping the delay may coerce the settling parties to pay them a premium
20       from the Settlement Fund. When we view an appeal as a coercive tactic with
         little merit, we may grant a motion requiring the appealing objector to post a
21       bond to cover the class' costs and demonstrated administrative expenses
22       incurred on appeal." *See* Ex. R at 1.

23       • *In re Netflix Privacy Litig.*, No. 5:11-cv-379 (N.D. Cal.):

24       After overruling their objections to the settlement, the court ordered Cain and
         other serial objectors to each post appeal bonds of $21,519 and to respond to
25       discovery requests. Cain appealed that order as well. The Court subsequently
         denied Cain's *pro hac vice* motion, finding "sufficient reason to question
26       Attorney Cain's ability to observe the duties and responsibilities required by an
         attorney admitted in this district." *See* Blood Reply Dec., ¶11(d) and Ex. S.

27

28

- *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033 (M.D. Tenn.):

In case where class counsel argued that Cain's objector clients lacked standing because they actually profited from their purchases of the stock at issue, the court ordered Cain to post an $80,000 appeal bond. Cain dismissed the appeal nine days later. *See* Blood Reply Dec., ¶12.

**D.    Arianna Gallagher and Simina Vourlis, Esq.**

Arianna Gallagher is the only objector represented by counsel. Her lawyer is the serial objector, Simina Vourlis. This is at least the fifth settlement Vourlis has objected to since November 2014. *See* Blood Reply Dec., ¶13 and Ex. T thereto (listing and attaching Vourlis' objections). None of Vourlis' objections have been upheld. In three of the prior four objections, Vourlis represented purported class members who themselves are serial objectors. *Id.*, ¶14. Gallagher herself is friends with the wife of someone recently behind an objection to another of Class Counsel's settlements. *Id.*, ¶15 and Ex. U.

**E.    Adam Brunet**

This is the first time we are aware of that Mr. Brunet has filed an objection, but he is no stranger to praying on class members. Mr. Brunet works for Lex Recovery Group, LLC ("Lex Group"). *See* Blood Reply Dec., ¶16 and Ex. V thereto. According to Lex Group's website, it "monitors, prepares, and files claims for class action refunds on behalf of a wide range of companies." *See* https://www.lexrecoverygroup.com/about (last visited April 4, 2018). Lex Recovery is a claims aggregators, also known as a "bulk filers" that charges class members to "assist" them with filing claims in cases like this one. These companies have been roundly criticized for using deceptive practices to convince people that they need help (for a fee) when they do not.

**III.    THE OBJECTIONS ARE MERITLESS AND SHOULD BE OVERRULED**

**A.    The Lack of Objections Indicates the Settlement's Fairness**

The number of class members that object to a settlement may be considered in determining whether the settlement is fair, reasonable, and adequate. *Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008). The absence of a large number of objections raises a strong presumption about the fairness of a proposed settlement. *Hainey v. Parrott*, 617 F.

Supp. 2d 668, 675 (S.D. Ohio 2007) ("a small number of objections, particularly in a class of this size, indicates that the settlement is fair, reasonable and adequate"); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) (the absence of objections is a factor given "substantial weight in approving the settlement"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness").

After a robust notice program, only one person opted out of the Settlement, and no well-intentioned Settlement Class Member lodged an objection. *See* Doc. 170-9 (Declaration of Carla Peak on Implementation of Settlement Notice Plan); Kimbrough Dec., ¶3. The only objections were made by serial objectors. The positive reaction of the Settlement Class supports approval of the Settlement.

**B.      The Objections Should Be Overruled Because They Were Filed for Improper Purposes**

Legitimate objectors play a valuable role in ensuring that a settlement is fair, reasonable, and adequate. Objections filed for improper purposes, such as extorting fees, do not. The Manual for Complex Litigation advises courts to distinguish between objections that "are made for improper purposes, and benefit only the objectors and their attorneys (*e.g.*, by seeking additional compensation to withdraw even ill-founded objections)" and those with "a desire to win significant improvements in the class settlement." *Manual for Complex Litigation* § 21.643 at 326. In determining an objector's motive, a court may consider an objector's past history of objections. Objections, like those here, that are made for improper purposes should be overruled. *See In re Law Office of Jonathan E. Fortman, LLC*, No. 4:13MC00042 AGF, 2013 U.S. Dist. LEXIS 13903, at *3 (E.D. Mo. Feb. 1, 2013) ("[C]ourts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first."); *In re Polyurethane Foam Antitrust Litig*, 178 F. Supp. 3d 635, 639 (N.D. Ohio 2016) ("[A] history of misconduct strongly suggests . . . [lack of] good faith."); *Roberts*, 2014 U.S. Dist. LEXIS 130163, at *34-

BLOOD HURST & O'REARDON, LLP

00133399

35 ("[T]he fact that [Mr. Sweeney] is also a serial objector in class action matters raises additional issues as to the legitimacy of the objection."); *In re Netflix Privacy Litig.*, No. 5:11-cv-0379-EJD, 2013 U.S. Dist. LEXIS 168298, at *6 (N.D. Cal. Nov. 25, 2013) (noting that past history is relevant to determine objector's "role in objecting to this and other class settlements").

The objections here are lodged by persons who make a living objecting to settlements solely to obtain a fee, and not to improve the settlement for the benefit of the class. *See* § II above. The objectors here have long track records of improper objections. Because the objections here fit their modus operandi, they should be denied.

### C.    The Brunet Objection Should Be Rejected as Untimely

Brunet's objection was not filed timely. "For an objection to a settlement to be considered by the Court on the merits, it must be timely." *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (collecting cases); *Haynes v. Shoney's*, No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749, at *6 (N.D. Fla. Jan. 25, 1993) (objection filed two days after the deadline "would be reason enough to reject [the] objection"); *In re Centocor Secs. Litig.*, No. 92-CV-1071, 1993 U.S. Dist. LEXIS 7229, at *10 n.5 (E.D. Pa. June 2, 1993) (refusing to consider untimely objection).

Pursuant to the Preliminary Approval Order, objections "must be filed with the Clerk of the Court and served on the Parties' counsel … no later than [March 17, 2018]." *See* Doc. 167 (Preliminary Approval Order), § V.3. The Preliminary Approval Order stated that objectors "must timely file" their objections, and untimely objections would "not be considered." *Id.*, §§ V.1-3. The Court-approved Class Notice also stated that objections were due March 17, 2018. *See* www.AlignSettlement.com (short and long-form Class Notices). Brunet's objection was not filed with the Court until March 22, 2018. *See* Doc. 175 (the Clerk of the Court's file stamp for the Brunet Objection states March 22, 2018, at 11:29 am). Mr. Brunet is very familiar with class action deadlines, so his untimeliness should not be forgiven. He offers no reason for his untimeliness and never asked for leave of court to file late. To the contrary, his objection specifically acknowledges "the filing deadline (March 17,

BLOOD HURST & O'REARDON, LLP

2018) for class members' objections." *See* Doc. 175 at PageID 7372. Brunet also did not timely serve his objection, providing further basis to reject it. Blood Reply Dec., ¶17.

The Brunet objection should be overruled because it is untimely.

**D.    Patrick and Pamela Sweeney Have Not Demonstrated Class Membership, and Therefore Lack Standing to Object**

Patrick and Pamela Sweeney, like the other objectors, have the burden to demonstrate class membership in order to object. *In re Whirlpool Corp.*, 2016 U.S. Dist. LEXIS 130467, at *39-40; *In re Yahoo Mail*, 2016 U.S. Dist. LEXIS 115056, at *26 ("The burden is on the objector to prove that he has standing to object.") (citation omitted). The Sweeneys fail to do so here.

Mr. Sweeney merely states that "[u]pon information and belief Patrick S. Sweeney … believes he is a member of the class." *See* Doc. 173 at 1, PageID 7336. Pamela Sweeney's statement (her "proof" of membership) is even less subscribed than her husband's: "I am a member of the class." *See* Doc. 173 at 12, PageID 7347. Courts have previously found that Mr. Sweeney's unadorned "belief" is insufficient to prove his standing to object. *Id.*; *see also In re TRS*, 2016 U.S. Dist. LEXIS 17837, at *20-21 n.16 (Sweeney did not have standing because "his claim to membership is based only 'on belief.'"). Either Mr. Sweeney or his objector clients have been caught without standing at least 13 times. *See* Blood Reply Dec., ¶3. As a former attorney and felon with a conviction for lying under oath, Mr. Sweeney knows he should not affirmatively state that he has purchased Align if he has not, so he concocted the overly-clever statement to try to get past the standing requirement. His attempt should be rejected. *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 2001) (where a "declaration is not based on personal knowledge, but on information and belief, [it] does not raise a triable issue of fact"); *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010) (a statement that "is not sworn, nor [] made under penalty of perjury … cannot be considered on summary judgment"); *Feder v. Elec. Data Sys. Corp.*, 248 Fed. Appx. 579, 581 (5th Cir. 2007) (settlement objector lacks standing because objector's "unsupported assertions of class membership" did not satisfy his "burden of

BLOOD HURST & O'REARDON, LLP

proving standing"); *Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936-LB, 2015 U.S. Dist. LEXIS 20725, at *29-30 (N.D. Cal. Feb. 20, 2015) (Striking objection for lack of standing where objector merely stated: "'I declare that I purchased, in the United States, at least one of the covered Ghirardelli products during the class period,' he does not identify which product he bought, or when, nor does he make the statement under penalty of perjury, so it does not constitute 'testimony.'") (citing Fed. R. Evid. 603) (requiring oath or affirmation).[4]

Mrs. Sweeney's description is no better—her objection does not so much as mention the word "Align." "Allowing someone to object to a settlement in a class action based on this weak, unsubstantiated evidence would inject a great deal of unjustified uncertainty into the settlement process." *Feder*, 248 Fed. Appx. at 581.

Because they fail to prove their class membership, the Court should strike the objections of Patrick and Pamela Sweeney for lack of standing.

**E.      The Objectors Do Not Meet Their Burden**

Once preliminarily approved, a class action settlement is presumptively reasonable. *Stotts v. Memphis Fire Dep't*, 679 F.2d 541, 551, 554 (6th Cir. 1982). "Consequently, one objecting to the decree bears the heavy burden of demonstrating that the decree is unreasonable." *Id*. at 554; *see also In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 211 (S.D. Ohio 1997) (same). The objectors do not meet their burden.

**1.      The Settlement's Cash Awards Are Fair and Reasonable**

As detailed in the opening briefs in support of preliminary and final approval, after years of hard-fought litigation and many hours of settlement negotiations, Class Counsel carefully weighed the proposed settlement against the likelihood of obtaining more for the

---

[4]      Mr. Sweeney's statement of class membership is inadmissible under Federal Rule of Evidence 602 because he states it is on information and belief, and not his personal knowledge. *See* Fed. R. Evid. 602 ("witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter"); *Oster v. Huntington Bancshares Inc.*, No. 2:15-cv-2746, 2017 U.S. Dist. LEXIS 76651, at *31 (S.D. Ohio May 19, 2017) ("The type of statements rendered inadmissible due to lack of personal knowledge are those provided solely 'on information and belief.'"); *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995) (declaration based on "information and belief [is] entitled to no weight").

BLOOD HURST & O'REARDON, LLP

Class in a timely manner and concluded the proposed Settlement was a good deal for the Class. Nonetheless, Cain asserts, with little more, that the Settlement cannot have any DHIC component until all Settlement Class Members "have been fully – not partly or even halfway – compensated for their losses." *See* Doc. 174 (Cain Objection) at 6, PageID 7356. To the extent Cain argues that each Settlement Class Member must be fully compensated to an amount he or she could hypothetically obtain if the Settlement Class prevailed on every claim at trial, that contention is without support.

Settlements with similar structures have been repeatedly upheld. *See*, *e.g.*, *Marshall v. NFL*, 787 F.3d 502, 509-10 (8th Cir. 2015) (affirming approval of a settlement that established organizations that would benefit class members, and rejecting argument that a settlement must provide direct payments to class members); *Lane v. Facebook*, 696 F.3d 811, 817 (9th Cir. 2012) (affirming approval of a settlement where class members received no payments at all, but funds went to establishing a charitable foundation to fund organizations educating the public about online privacy). The class settlement in the Toyota unintended acceleration litigation involved a standalone education component like the DHIC component here. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298, at *234-35, 265-67 (C.D. Cal. July 24, 2013). Like here, objections were made that the safety and education fund did not comply with *cy pres* requirements. The court overruled the objections and held the component "is not a *cy pres* fund" because it "did not diminish the cash payments to the Class," was "not made in lieu of any payments to the class," and was "simply one-part of a multi-part settlement of complex litigation that the Court must consider as a whole." *Id*. at *266-67.

The only authority Cain cites is a factually inapposite Third Circuit opinion, which "decline[d] to hold that *cy pres* distributions are only appropriate" when further individual distributions are economically infeasible. *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173 (3d Cir. 2013). In *Baby Products*, the vast majority of claimants received $5, while their damages exceeded $50. Further, because of a low claims rate, only $3 million out of $21.5 million would be distributed to class members, with approximately $18.5 million going

BLOOD HURST & O'REARDON, LLP

to *cy pres* beneficiaries—a fact the district court was not made aware of. *Id.* at 169-70, 175. Here, claimants receive refunds of 50% of Align's retail price with no proof of purchase required. Given the significant number of claimants, P&G will pay out approximately $13 million in these cash awards to over 299,000 Settlement Class Members, plus provide over $11 million in DHIC benefits. *See* concurrently submitted Declaration of Jacqueline Kimbrough on Status of Settlement Administration ("Kimbrough Dec."), ¶2; concurrently submitted Declaration of Robert B. Goldman ("Goldman Dec."), ¶¶11, 14.

Cain's objection, which amounts to a bare assertion that class members should receive more, is routinely rejected. The possibility "that the plaintiff might have received more if the case had been fully litigated is no reason not to approve the settlement." *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *see also In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1001 (N.D. Ohio 2016) ("'[T]hat the settlement could have been better … does not mean the settlement presented was not fair, reasonable or adequate[.]'") (citation omitted); *In re Ford Motor Co. Spark Plug & Three Valve Engine Prods. Liab. Litig.*, No. 1:12-MD-2316, 2016 U.S. Dist. LEXIS 188074, at *15 (N.D. Ohio Jan. 26, 2016) (overruling objection that a settlement should have provided full recovery); *In re Whirlpool Corp.*, 2016 U.S. Dist. LEXIS 130467, at *49-52 (overruling objections that a settlement's cash or rebate benefits were not enough, stating "there was a very real risk of complete non-recovery, and the ratio of actual recovery to best-possible recovery is above average"). "'[I]t is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair. Indeed, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.'" *In re Polyurethane Foam*, 168 F. Supp. 3d at 1001 (quoting *In re Bear Stearns Cos., Inc. Sec. Litig.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012)).

"'Settlement is the offspring of compromise', and therefore 'the question … is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.'" *In re Polyurethane Foam*, 168 F. Supp. 3d at 1001 (citation omitted); *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)

(""[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'") (citation omitted); *Bronson v. Board of Educ.*, 604 F. Supp. 68, 78 (S.D. Ohio 1984) (same). While a 100% refund from complete victory at trial was a theoretic possibility, there was also a very real risk of complete non-recovery for the Settlement Class. *See* Doc. 170 ("Pltfs' Final Approval Mtn.") at PageID 7157-59, 7169; *see also Ebarle v. Lifelock, Inc.*, No. 15-cv-00258-HSG, 2016 U.S. Dist. LEXIS 128279, at *15-16 (N.D. Cal. Sept. 20, 2016) (Overruling objection that a full refund should be provided: "[T]he request for a higher settlement amount fails to account for the risk, expense, complexity, and likely duration of further protracted litigation … [including] the risk that the case results in no payout for members because of an inability to prove actual injury[.]").

Cain's wish for a larger cash award is not evidence that the 50% cash refund award is unfair or unreasonable. Nor does the absence of full cash refunds mean the Settlement's separate, guaranteed DHIC component must or should be eliminated. Instead, the additional benefits provided by the Settlement's DHIC component are further reason why the Settlement, "'taken as a whole, is fair, reasonable and adequate to all concerned.'" *Vassalle v. Midland Funding, LLC*, No. 3:11-cv-00096, 2014 U.S. Dist. LEXIS 146543, at *9 (N.D. Ohio Oct. 14, 2014) (citation omitted); *see also Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) ("The individual components of an agreement are to be evaluated in light of the settlement as a whole."); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 245-46 (N.D. Ohio 1991) (a settlement "must be evaluated by examining the settlement in its entirety and not as isolated components").

Cain's objection should be overruled.

### 2. The Digestive Health Improvement Contributions Are Fair and Reasonable

Cain and Gallagher object to the DHIC. Cain spends much of his objection arguing there is no way to evaluate if there is a nexus between the DHIC and the interests of the Settlement Class because the identities of the DHIC recipients are being "concealed," and that Class Counsel have surrendered any role in the DHIC process. *See* Doc. 174 at 6-9, PageID

BLOOD HURST & O'REARDON, LLP

First, these benefits constitute a guaranteed, standalone Settlement benefit that can be increased, but not decreased, and do not impact or diminish Cash Refunds. As discussed in the preceding section, this type of settlement relief has been repeatedly upheld. *See, e.g.*, *Marshall*, 787 F.3d at 509-10; *Lane*, 696 F.3d at 817; *In re Toyota Motor Corp.*, 2013 U.S. Dist. LEXIS 123298, at *234-35, 265-67.

Second, there is no requirement that the DHIC recipients be pre-identified. The DHIC will be paid out pursuant to a process to determine appropriate recipients. In *Lane* and *In re Toyota Motor Co*., the ultimate recipients were not known at the time of settlement approval. Instead, the courts approved a process under the proposed settlements to select the recipients. The Settlement here is no different. Nonetheless, before the objections were filed, the parties began selecting a recipient for the DHIC relief and have concluded that the Ohio State Innovation Foundation ("OSIF"), a non-profit organization affiliated with The Ohio State University is a worthy recipient that will use DHIC benefits to support OSIF's research and programs in digestive health. *See* Doc. 176 at 5, PageID 7379.

Third, Cain is simply wrong that P&G has unfettered discretion over the DHIC process. Through a combination of Class Counsel oversight and approval, independent, expert appraisal, and independent cost valuation, the Settlement Agreement ensures the DHIC is anything but unfettered. How and to whom the DHIC is distributed is "subject to prior review and approval by Class Counsel." SA, § IV.A.1.a. Under the Settlement Agreement, Charles River Associates, an independent third-party appraiser, has valued (and will in the future value) the DHIC's intellectual property. SA, § IV.A.6.a; *see also* Goldman Dec., ¶¶4-14. Research and education grants are valued "at the dollar amount of such grant actually paid by P&G." SA, § IV.A.6.b. Product donations are valued at the wholesale price at which P&G sells to distributors. *Id.*, § IV.A.6.c. Charles River Associates also will and has analyzed the valuation of Know How, which shall not be "valued greater than the actual cost to P&G." *Id.*, § IV.A.6.d. P&G must also attest that it has complied with its DHIC obligations. SA, § IV.A.4. Cain's objection should be rejected.

///

BLOOD HURST & O'REARDON, LLP

Gallagher's objection to the DHIC likewise should be rejected. She offers that there are "far better cy pres recipients" than the proposed DHIC. *See* Doc. 171 (Gallagher Objection) at 3, PageID 7330. The DHIC is not *cy pres*. *See In re Toyota Motor Corp.*, 2013 U.S. Dist. LEXIS 123298, at *234-35, 265-67. But even if it were, it would easily meets the *cy pres* requirement of a sufficient nexus between the DHIC and the interests of the Settlement Class. *See Gascho v. Global Fitness Holdngs, LLC*, 822 F.3d 269, 278 n.3 (6th Cir. 2016) (*cy pres* award is used to distribute funds "to a charity that will advance the interests of the class"). The express aim of the Settlement's DHIC is to benefit digestive health and wellness with the ultimate goal of improving digestive wellness for individuals suffering from IBS or who regularly seek assistance and care for their digestive health. *See* Doc. 169 (Defendant's Motion for Final Approval) at 11. Thus, the DHIC provides real value that will benefit the Settlement Class and bears a substantial nexus to their interests and the nature of this lawsuit.

### 3. Cash Refund Distribution Process

Gallagher objects that there is no indication of how refund checks that are undeliverable or uncashed will be handled. *See* Doc. 171 (Gallagher Objection) at 4, PageID 7331. Handling undeliverable and uncashed checks is a routine matter for claims administrators, including the Court-approved Settlement Administrator, KCC. KCC has administered thousands of class action settlements. As it regularly does, KCC will employ its standardized process that includes forwarding returned checks to Claimants, using skip-tracing where necessary, and making a pro rata redistribution of uncashed Cash Refunds unless it is economically infeasible. *See* Kimbrough Dec., ¶5; SA, § VI.A.2 (part of KCC's Settlement Agreement obligations are to use its standard procedures for handling returned mail); *see also In re Polyurethane Foam*, 168 F. Supp. 3d at 1005-06 (overruling objection and approving redistribution process similar to the one here); *Rodriguez v. Infinite Care, Inc.*, No. 15-1824, 2016 U.S. Dist. LEXIS 159223, at *38 (E.D. Pa. Nov. 17, 2016) (same); *Hester v. Vision Airlines, Inc.*, No. 2:09-CV-00117-RLH, 2017 U.S. Dist. LEXIS 160686, at *6-7 (D. Nev. Sept. 22, 2017) (approving second distributions like that contemplated here). KCC's job is "to

BLOOD HURST & O'REARDON, LLP

00133399

BLOOD HURST & O'REARDON, LLP

1    ensure that as many claimants as reasonably possible deposit their settlement checks and the

2    amount claimed is fully distributed." Kimbrough Dec., ¶5.

3                    **4.      The Requested Attorneys' Fees Are Fair and Reasonable**

4            Standard practice for serial objectors is to attack class counsel's fee request, regardless

5    of the requested fee, work performed or value of the settlement. As previously detailed, Class

6    Counsel expended significant time litigating this case, including through extensive motion

7    practice and discovery, and will have spent considerably more time by the time final approval

8    is obtained, the Settlement is defended on appeal, and relief is distributed. *See* Doc. No. 166-1

9    (Declaration of Timothy G. Blood in Support of Motion for Preliminary Approval of Class

10   Action Settlement ("Blood Preliminary Approval Decl.")), ¶¶3-44, PageID 6870-6879; Doc.

11   166 (Preliminary Approval Mtn.) at PageID 6838-6842; Doc. 170-1 (Declaration of Timothy

12   G. Blood in Support of Motion for Final Approval of Class Action Settlement ("Blood Final

13   Approval Decl.")), ¶¶5-6 and 8, PageID 7181-7183. After deducting the requested expenses,

14   Class Counsel's requested fee amount of $4,138,879.94 represents a fractional multiplier of

15   0.87 of Plaintiffs' Counsel's lodestar of $4,759,972.50. *See* Blood Reply Dec., ¶20. The

16   requested amount of attorney's fees represents about 20% of the Settlement's total minimum

17   benefits. *See* Pltfs' Final Approval Mtn. at PageID 7166 (citing cases awarding fees of 30% or

18   more of the benefits made available).

19                    **a)      Patrick Sweeney Misunderstands Plaintiffs' Fee Request**

20           Patrick Sweeney makes one objection to the Settlement. He argues that Plaintiffs'

21   Counsel should receive no more than $4.25 million in fees. *See* Doc. 173 (Patrick Sweeney

22   Objection) at PageID 7344 ("the Objector would not object to a fee request in the amount of

23   $4,250,000.00"). It appears Mr. Sweeney fails to realize that Plaintiffs' Counsel request less

24   than $4.14 million in fees, with the balance of the $4.5 million sought consisting of

25   reimbursement of out-of-pocket costs. Once costs are deducted from the requested amount, the

26   fees sought are below the $4.25 million that Sweeney agrees is reasonable.

27   ///

28   ///

**b)     Pamela Sweeney's One-Line Objection Lacks Merit**

Pamela Sweeney submits a one-line objection: "I think the attorney's [*sic*] for the class are getting too much money." Doc. 173 at PageID 7347.[5] This conclusory objection does not meet the requirements set forth in the Court's Preliminary Approval Order and established case law, and therefore should be rejected. *See* Doc. 167 (Preliminary Approval Order) at § V.2 (requiring that objections include "a statement of the objection and the grounds supporting the objection" and all "documents upon which the objection is based"); *Velma-Alma Indep. Sch. Dist. No. 15. v. Texaco, Inc.*, 162 P.3d 238, 243 (Okla. Civ. App. 2007) (affirming trial court decision that a "generalized, conclusory" objection "lacked necessary specificity" and was invalid where it failed to list cases or details supporting any argument); *Int'l Union v. GMC*, No. 07-CV-14074-DT, 2008 U.S. Dist. LEXIS 92590, at *83-84 (E.D. Mich. July 31, 2008) ("With respect to objections stating no specific grounds or asserting only the general 'unfairness' of the settlement, because 'there is no way for the court to determine the basis for these objections or whether any such objections have merit, they are of little use.'") (citation omitted); 7B Charles Alan Wright, Arthur Miller, and May Kay Kane, Fed. Prac. & Proc. § 1797.1 ("Only clearly presented objections . . . will be considered."); 2 Newberg on Class Actions 3d, § 11.58 ("General objections without factual or legal substantiation carry little weight.").

As an experienced professional objector, Mrs. Sweeney knows she must do more. Her objection should be overruled.

**c)     Cain's Clear-Sailing Objection**

Cain objects to the proposed fee award because of the inclusion of a "clear-sailing" provision. *See* Doc. 174 ("Cain Objection") at PageID 7359-7361. Clear sailing provisions are routinely included in class action settlements and are not prohibited. To the contrary, they facilitate settlement:

---

[5]     Pamela Sweeney's one-line objection appears after her husband's objection at the end of Docket Entry 173.

BLOOD HURST & O'REARDON, LLP

00133399

BLOOD HURST & O'REARDON, LLP

1      This practice [of including clear sailing provisions] serves to facilitate
2      settlements and avoids a conflict, and yet it gives the defendant a predictable
3      measure of exposure of total monetary liability for the judgment and fees in a
case. To the extent it facilitates completion of settlements, this practice should
not be discouraged.

4 *Newberg*, § 15:34, p. 112; *see also* Janet Cooper Alexander, *Rethinking Damages in Securities*

5 *Class Actions*, 48 Stan. L. Rev. 1487, 1534 (1996) ("settlement agreement[s] typically

6 include[] a 'clear sailing' clause."); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291,

7 1293 n.3 (11th Cir. 1999) (The clauses "are sometimes included in class action settlements so

8 that defendants have a more definite idea of their total exposure."); *Malchman v. Davis*, 761

9 F.2d 893, 905 n.5 (2d Cir. 1985) (same). "Simply put, not every 'clear sailing' provision

10 demonstrates collusion." *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir.

11 2012); *see also Gascho*, 822 F.3d at 291 ("Though some courts have 'disfavored' clear sailing

12 agreements and kicker clauses, their inclusion absent more—as is the case here—does not

13 show that the court abused its discretion in approving the settlement.").

14      The cases Cain cites are inapposite. In *Gascho*, the Sixth Circuit affirmed settlement

15 approval, finding that objector's concern about the clear-sailing provision was "unwarranted"

16 because the district court found the class relief was substantial and class counsel's fee request

17 was appropriate. 822 F.3d at 291. Similarly, in *Gooch*, the Sixth Circuit held that "not every

18 'clear sailing' provision demonstrates collusion," and affirmed settlement approval where the

19 fee was reasonable, litigation was hard-fought, and there was no evidence of collusion.

20 672 F.3d at 426. *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014) is

21 inapplicable. The settlement there was reached before any motions were decided, and provided

22 $10 coupons that expired after 6-months. Accordingly, *Redman* held that although clear-

23 sailing provisions were not prohibited, they did merit additional scrutiny "at least in a case

24 such as this, involving a non-cash settlement award." *Id.* Lastly, Cain cites the concurring

25 opinion from *Malchman*, 761 F.2d at 908 (Newman, J., concurring). The Second Circuit in

26 *Malchman* affirmed settlement approval and the fee award, and in so doing, both the majority

27 and concurring opinions did not find the existence of a clear-sailing provision to be

28 dispositive. *Id.* at 905 n.5. Indeed, the Sixth Circuit has noted the *Malchman* majority's view

BLOOD HURST & O'REARDON, LLP

1    that clear-sailing provisions may be "'essential to the completion of the settlement, because the

2    defendants want to know their total maximum exposure and the plaintiffs do not want to be

3    sandbagged.'" *Gooch*, 672 F.3d at 425 (quoting *Malchman*, 761 F.2d at 905 n.5).

4        Cain also argues incorrectly there is no evidence "as to when the clear-sailing provision

5    was finalized" and therefore "the Court must assure itself that Class Counsel's attorney's fee

6    was not pre-decided or that counsel engaged in collusive and adverse actions in connection

7    with this fee amount." Cain Objection at PageID 7360-7361. The undisputed evidence is that

8    Class Counsel negotiated the clear sailing provision after the parties agreed on the principal

9    terms of the Settlement with the assistance of a mediator. *See* Blood Preliminary Approval

10    Decl., ¶42; *see also In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*,

11    148 F.3d 283, 335 (3d Cir. 1998) (affirming district court's reliance on the settling parties'

12    sworn affidavits about the timing of fee negotiations, and overruling objection to clear sailing

13    provision since there was "no indication the parties began to negotiate attorneys' fees until

14    after they had finished negotiating the settlement agreement"); *Fladell v. Wells Fargo Bank,*

15    *N.A.*, No. 0:13-cv-60721-MORENO, 2014 U.S. Dist. LEXIS 156307, at *14 (S.D. Fla. Oct.

16    29, 2014) ("[A]lthough the Settlement Agreement contains a 'clear-sailing' provision, that is

17    immaterial. There was no collusion in the settlement negotiations and the Parties began

18    negotiations regarding attorneys' fees only after finishing negotiating the Settlement itself.").

19        Cain submits no evidence of collusion and there is no sign of collusion. Instead, it is

20    crystal clear that this Settlement is the product of extensive and hard-fought litigation and

21    careful and extensive negotiation. Cain's boilerplate objection should be overruled.

22                **d)**      **Gallagher's Fee Objections Lack Merit**

23        Gallagher argues the Court should only consider the amount of cash awards paid to

24    Class Members when determining the amount of attorney's fees to award Plaintiffs' Counsel

25    and the Court should ignore the DHIC relief and costs of settlement administration. *See* Doc.

26    171 at 4, PageID 7331. The Sixth Circuit has rejected these arguments. Further, given the

27    amount of claims submitted, the fee request is plainly reasonable.

28

00133399

BLOOD HURST & O'REARDON, LLP

In determining the value of a settlement, a court should consider all amounts benefiting the class, including those amounts typically born by the class, such as attorneys' fees and notice and administration costs. *See Gascho*, 822 F.3d at 282 ("Attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs of administration."); *Moulton v. United States Steel Corp.*, 581 F.3d 344, 351-52 (6th Cir. 2009) (including the requested fees and expenses for purposes of calculating the fee award as a percentage of the fund); *In re Polyurethane Foam*, 168 F. Supp. 3d at 1008-09 (overruling objection that a common benefit fee percentage should be assessed after subtracting fees, expenses, incentive awards, and notice costs); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 802-03 (N.D. Ohio 2010) (defendant's payment of notice, administration, and attorneys' fees are "benefit[s] to the settlement class" and should be included purposes of calculating the fee award as a percentage of the fund); *Physicians of. Winter Haven LLC v. Steris Corp.*, No. 1:10 CV 264, 2012 U.S. Dist. LEXIS 15581, at *21 (N.D. Ohio Feb. 6, 2012) (attorneys' fees and administrative costs "represent[] a benefit to the class and must, therefore, be included in the total common benefit amount used to calculate a percentage of the fund award of attorneys' fees"); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) (Affirming calculation of the fee award "as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses.").

Further, the Sixth Circuit instructs that fees may be awarded based on a percentage of the total benefit made available to class members, and not just the amounts claimed by class members. *Gascho*, 822 F.3d at 282-88 (analyzing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 477-78, 480, 482 (1980), *Moulton*, 581 F.3d at 351-52, *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007), and *Waters*, 190 F.3d at 1296-97); *Lonardo*, 706 F. Supp. 2d at 801 (approving class counsel's valuation proposal that "adheres to the *Boeing* principle by incorporating the value of the Available Benefit into the assessment of the Benefit

BLOOD HURST & O'REARDON, LLP

1  Fund").[6] It is a "foundational principle" that "there is value in providing a class member the

2  ability to make a claim, whether she takes advantage of it or not." *Gascho*, 822 F.3d at 288.[7]

3  Finally, given the claims rate, Gallagher's objection is moot. The amount expected to

4  be paid to class members is $13 million. *See* Kimbrough Dec., ¶2. This amount, plus the

5  requested attorneys' fees, and notice and claim administration costs exceeds $18,300,000.

6  Therefore, the requested fee, without including the value of the DHIC, represents 22.6% of the

7  benefit to the Settlement Class and is well within the range of fees awarded.

8  ### e) Brunet's Fee Objections Lack Merit

9  In a boilerplate pleading largely lacking in discussion tailored to the Settlement,

10  Mr. Brunet argues there is a "clear disparity" between the class award and Class Counsel's fee.

11  Without discussing any actual Settlement provision, he asserts that the settlement pays out

12  only attorneys' fees, and nothing more. *See* Doc. 175 (Brunet Objection) at PageID 7369.

13  Mr. Brunet also includes a boilerplate argument that the motion for attorney's fees must be

14  filed before objections are due, but Plaintiffs' Counsel failed to do so. Mr. Brunet is wrong on

15  both counts.

16  The Settlement obviously provides for far more than just attorney's fees. Further, the

17  motion for attorneys' fees with the supporting brief and declarations was filed on March 2,

18  2018 (*see* Doc. 170), 20 days before Mr. Brunet filed his objection. Oddly, Mr. Brunet admits

19  he reviewed the motion for attorney's fees before filing his objection (PageID 7371), but

20  nonetheless argues "To date, class counsel has not presented any adequate and/or adequately

21  tested information to evaluate reasonableness for their proposed fee." *Id*. Mr. Brunet's

22  argument is frivolous on its face and should be rejected. Neither he nor the other serial

23

24

---

25  [6]    As other indicia of this Settlement's fairness, unlike the reversionary settlement funds in *Gascho*, *Boeing* and *Waters*, unclaimed Cash Refunds here will not revert to P&G.

26  [7]    Using the conservative "midpoint" formula approved for valuing the reversionary

27  settlement in *Gascho*, the proposed fee award here amounts to less than 13.5% of the Settlement's benefits: $14 million midpoint between Cash Refunds available and claimed,

28  $4,500,000 fees and expenses, $800,000 notice and administration, and $11.8 million DHIC benefits. *Gascho*, 822 F.3d at 288.

00133399

objectors had any problem accessing the motion for attorneys' fees. It appears Mr. Brunet just did not bother to read it.

Mr. Brunet's gripe appears to be that although the fee motion was publicly available on PACER before the deadline, some other unknown Class Member perhaps did not see it because it was not also on the Settlement Website.[8] This argument is regularly rejected. The Ninth Circuit opinion cited by Brunet, In *Mercury Interactive Securities Litigation*, 618 F.3d 988 (9th Cir. 2010), "says only that a class counsel's fee motion be filed before the objection deadline." *In re High-Tech Empl. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118052, at *56 (N.D. Cal. Sept. 2, 2015) (emphasis omitted); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-1827 SI, 2011 U.S. Dist. LEXIS 154288, at *4-5 (N.D. Cal. Dec. 27, 2011) ("Nothing in the *Mercury Interactive* decision requires a motion for attorneys' fees to be posted on a class action website."); *Vasco v. Power Home Remodeling Grp. LLC*, No. 15-4623, 2016 U.S. Dist. LEXIS 141044, at *25-26 (E.D. Pa. Oct. 12, 2016) (overruling objection that a fee motion must be posted on a case website). A fee motion available on the public docket "satisf[ies] the full-and-fair-opportunity requirement under Rule 23(h)." *In re TFT-LCD*, 2011 U.S. Dist. LEXIS 154288, at *4-5.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Motion for Final Approval be granted, the objections be overruled, and the Court enter a final judgment and order: (1) confirming certification of the Settlement Class; (2) confirming appointment of Plaintiffs Dino Rikos, Tracey Burns, and Leo Jarzembowski as Class Representatives, and Timothy G. Blood and Thomas J. O'Reardon II of Blood Hurst & O'Reardon, LLP as Class

///

///

///

///

---

[8] The fee motion was posted on the Settlement Website on March 22, 2018—25 days prior to the final approval hearing. *See* Blood Reply Dec., ¶ 23.

PLAINTIFFS' REPLY ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Counsel; (4) granting final approval of the Settlement; and (5) awarding the proposed attorneys' fees ($4,138,879.94), expenses ($361,120.06), and Plaintiffs' service awards ($2,500 each).

Respectfully Submitted,

Dated: April 9, 2018

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (CA 149343)
LESLIE E. HURST (CA 178432)
THOMAS J. O'REARDON II (CA 247952)

By:        *s/ Timothy G. Blood*
           TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

*Attorneys for Plaintiffs and the Class*

FUTSCHER LAW PLLC
DAVID A. FUTSCHER
913 N. Oak Drive
Villa Hills, KY 41017
Tel: 859/912-2394
david@futscherlaw.com

NICHOLAS & TOMASEVIC, LLP
CRAIG M. NICHOLAS (178444)
ALEX M. TOMASEVIC (245598)
225 Broadway, 19th Floor
San Diego, CA 92101
Tel: 619/325-0492
619/325-0496 (fax)
cnicholas@nicholaslaw.org
atomasevic@nicholaslaw.org

MORGAN & MORGAN, P.A.
RACHEL L. SOFFIN
One Tampa City Center
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Tel: 813/223-5505
813/223-5402 (fax)
rsoffin@forthepeople.com

O'BRIEN LAW FIRM, PC
EDWARD K. O'BRIEN
One Sundial Avenue, 5th Floor
Manchester, NH 03103
Tel: 603/668-0600
603/672-3815 (fax)

23        No. 1:11-cv-226-TSB

PLAINTIFFS' REPLY ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

eobrien@ekoblaw.com

SAMUEL ISSACHAROFF
40 Washington Square South
New York, NY 10012
Tel: 212/998-6580
sil3@nyu.edu

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN
ELAINE A. RYAN
PATRICIA N. SYVERSON (203111)
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Tel: 602/274-1100
602/798-5860 (fax)
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

*Additional Attorneys for Plaintiffs*

BLOOD HURST & O'REARDON, LLP

PLAINTIFFS' REPLY ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants as follows:

| | |
|---|---|
| Patrick S. Sweeney<br>1223 20th Street, Unit 101<br>Santa Monica, CA  90404 | *Objector in Pro Se* |
| Pamela Sweeney<br>2672 Mutchler Road<br>Madison, WI  53711 | *Objector in Pro Se* |
| Christopher T. Cain<br>Scott & Cain<br>550 Main Street, Suite 601<br>Knoxville, TN  37902 | *Objector in Pro Se* |
| Adam Brunet<br>14561 Elysium Pl.<br>Apple Valley, MN  55124 | *Objector in Pro Se* |

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed April 9, 2018.

*s/  Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel:  619/338-1100
619/338-1101 (fax)
tblood@bholaw.com