# Exhibit A

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE WESTERN DISTRICT OF WASHINGTON

10

11  MARK A. ARTHUR , CIRILO MARTINEZ, and      )   Case No. 10-CV-00198-JLR
    PARI NAJAFI  on behalf of themselves and all  )
12  others similarly situated,                   )
                                                 )
13              Plaintiffs,                       )   **OBJECTION OF PATRICK SWEENEY**
                                                 )   **AND SASHA MCBEAN TO PROPOSED**
14                                               )   **SETTLEMENT AND NOTICE OF INTENT**
                                                 )   **TO APPEAR**
15  v.                                           )
                                                 )   Date:  December 17, 2010
16  SALLIE MAE, INC.,                            )   Time:  9:30 a.m.
                                                 )   Judge:  Hon. James L. Robart
17              Defendant.                        )
                                                 )
18  _____

19
20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF CONTENTS</u>

2

3    I.    THE REVOCATION REQUEST FORM IMPOSES A LEGAL OBLIGATION
          INCONSISTENT WITH THE LANGUAGE OF THE TELEPHONE
4         CONSUMER PROTECTION ACT ……………………………………………… 3

5    II.   THE SETTLEMENT DENIES RELIEF TO BORROWERS WHO HAVE PAID THEIR
          LOANS …………………………………………………………………….    4
6

7    III.  THERE IS NO REASONED BASIS FOR EXCLUDING "NON-BORROWERS"
          FROM THE CLASS ENTITLED TO CASH PAYOUTS ……………………… 5
8

9    IV.   THE INJUNCTION APPEARS TO APPLY ONLY TO EXISTING BORROWERS
          AND DOES NOT ADDRESS FUTURE VIOLATIONS OF THE TCPA
10        BY SALLIE MAE ……………………………………………………………… 5

11   V.    INSUFFICIENT INFORMATION HAS BEEN PROVIDED TO EVALUTE
          THE REASONABLENESS OF THE ATTORNEYS' FEES REQUESTED …………… 6
12

13   VI.   THE REQUESTED MULTIPLIER IS EXCESSIVE, AS IS THE HOURLY
          BILLING RATES OF MANY PROFESSIONALS ………………………………………8
14

15        A.    High Hourly Rates Call for Scrutiny …………………………………….  8
          B.    The 6.31 Multiplier Is Vastly Excessive ………………………………… 8
16

17   VII.  THE COURT SHOULD REVIEW FEE SPLITTING AMONG ATTORNEYS ………  9

18   VIII. CLASS COUNSEL SEEKS TO RECOVER UNREIMBURSEABLE COSTS …………10
          A.    Copies  ………………………………………………………………… 10
19        B.    Legal Research  ………………………………………………………11
          C.    Other Costs Requested  ………………………………………………12
20

21   IX.   CONCLUSION…………………………………………………………… 13

22

23

24

25

26

27

28

i

**<u>TABLE OF AUTHORITIES</u>**

**CASES**

<u>Goodrich Mgmt. Corp. v. Afgo Mech. Services, Inc.</u>

2009 WL 2602200 at *5 (D.N.J. 2009) …………………………………………………………  3

<u>In re Mercury Interactive Corp. Securities Litigation</u>

618 F.3d 988 (9th Cir. 2010) …………………………………………………………… 2, 6

<u>In re HPL Technologies, Inc. Sec. Litig.</u>

366 F.Supp.2d 912, 921 (N.D.Cal. 2005) …………………………………………………  8

<u>In re Cendant Corporation PRIDES Litigation</u>

243 F.3d 722 (3d Cir. 2001) ………………………………………………………………  8

<u>Goldberger v. Integrated Resources, Inc.</u>

209 F.3d 43, 57 (2d Cir. 2000) ……………………………………………………………  8

<u>In re NASDAQ Market-Makers Anti-Trust Litig.</u>

187 F.R.D. 465, 489 (S.D.N.Y. 1999) ……………………………………………………  9

<u>In re Sumitomo Copper Litig.</u>

74 F.Supp.2d 393, 399 (S.D.N.Y. 1998) …………………………………………………  9

<u>Rodriguez v. West Publishing Corp.</u>

563 F.3d 948, 959-60 (9th Cir. 2009) …………………………………………………  9

<u>Carpenters Health & Welfare Fund vs The Coca-Cola Company</u>

587 F. Supp 1206 (N.D. Ga. 2008) ……………………………………………………… 10

<u>James vs. Wash Deport Holdings Inc.</u>

2007 U.S. Dist LEXIS 38809 S.D. Fl 2007) ………………………………………………  10

<u>U.S. v. Merritt Meridian Constr. Corp.</u>

95 F. 3d 153 (2d Cir. 1996) ……………………………………………………………… 11

<u>Standley v. Chilhowee R-IV School Dist.</u>

5 F. 3d 319, 325 & n. 7 (8th Cir. 1993) ………………………………………………  11

<u>Leftwich v. Harris-Stowe State College</u>

702 F. 2d 686, 695 (8th Cir. 1983) ……………………………………………………  11

ii

10-CV-00198-JLR
OBJECTION OF PATRICK SWEENEY AND SASHA MCBEAN TO PROPOSED SETTLEMENT
AND NOTICE OF INTENT TO APPEAR

Friskney v. American Park and Play, Inc.

2007 US Dist. LEXIS 14619, SD Fl. 2000) ……………………………………………11

Weinberger v. Great Northern Nekoosa Corp.

801 F. Supp. 804, 827-29 (D. Me. 1992) ……………………………………………11

Milliron v. T-Mobile USA, Inc.

2009 U.S. Dist. Lexis 101201 at *70, D. N.J. Sept 10, 2009 ……………………………… 11

In re Bicoastal Corp

121 B.R. 653, 656 (Bk. M.D.Fla. 1990) ……………………………………………… 12

Absher Const. Co. v. Kent School Dist. No. 415

79 Wash.App. 841, 845 (1995) ……………………………………………………… 12

## CONSTITUTIONS, STATUTES AND RULES

Telephone Consumer Protection Act
    47 U.S.C. §227(b)(1)(A)(iii) …………………………………………………….. 3
    47 U.S.C. §227(b)(3) ……………………………………………………….. 3

Federal Rules of Civil Procedure
    23(e)(3) ……………………………………………………………………….. 9

## OTHER AUTHORITY

23 F.C.C.R. at 564-65 ……………………………………………………………….. 3

iii

COME NOW, PATRICK SWEENEY and SASHA McBEAN ("Objectors") Class Members to this action, by and through their undersigned counsel, and hereby file these Objections to the Proposed Class Action Settlement, gives notice of their counsel's intent to appear at the December 17, 2010, final approval hearing, and request award of an incentive fee for serving as named class members.

Objector, PATRICK SWEENEY, represents to the court that he is a Class Member, qualified to make a claim as set forth in the NOTICE OF CLASS ACTION SETTLMENT; his address is 440 Science Drive, Suite 101, Madison, WI 53711, phone number 608-238-8262, but all mail should be sent to his attorney's address.

Objector, SASHA McBEAN, represents to the court that she is a Class Member, qualified to make a claim as set forth in the NOTICE OF CLASS ACTION SETTLMENT; her address is 14560 E. Reed Avenue, Truckee, CA 96161, phone number 760-815-5717, but all mail should be sent to her attorney's address.

Objectors object on the following grounds:

1.      The revocation request imposes a legal requirement not present in the Telephone Consumer Protection Act.  It requires an affirmative action to enjoin an activity already expressly prohibited.  Further, there is a limited time frame upon which to request the halt of harassing phone calls; based upon the language of the act, there should be no limitation upon when a consumer can request that the illegal calls stop.

2.      The class is under-inclusive.  The settlement denies cash relief to those borrowers who have ever been more than 180 days delinquent, and offers only a write-down of the balance.  This denies adequate relief to those borrowers who were more than 180 days delinquent, but have since paid off their balance.

3.    The class denies cash relief to those the act was designed to protect.  The settlement proposes a dedicated $85,000 cy pres payment to the Posse Fund to compensate those who were called, but had no "lending relationship" with Sallie Mae.  These calls are the most pernicious, and the ones designed to be stopped by the TCPA, for which the $500 monetary penalty was created.  There is no reasoned basis for excluding those who received calls, but should not have, from the cash settlement fund.

4.    The proposed injunction does not remedy the practice at issue.  The injunction appears to apply only to existing borrowers, who must complete a form to opt-out of receiving automated cell-phone calls.  How does this affect future borrowers?  Is Sallie Mae free to continue its practice until the next suit by the next round of borrowers?

5.    Insufficient information has been provided regarding the attorneys' fee lodestar.  While Lieff Cabraser submitted its time sheets (consistent with the holding in *Mercury Interactive*), none of the other firms have done so.  While there are scant questions regarding Lieff's records, the Class at this point lacks information regarding the total effort committed, together with potential duplication.

6.    The 6.31 multiplier requested is far above what is considered reasonable, as are several of the hourly rates submitted.

7.    Class Counsel seeks to recover costs which are not allowable.

8.    The fee-splitting arrangements between Class Counsel have not been disclosed, but must be disclosed and reviewed by the Court prior to approval.

/ / /

/ / /

/ / /

10-CV-00198-JLR
OBJECTION OF PATRICK SWEENEY AND SASHA MCBEAN TO PROPOSED SETTLEMENT
AND NOTICE OF INTENT TO APPEAR

# I.
## THE REVOCATION REQUEST FORM IMPOSES A LEGAL OBLIGATION INCONSISTENT WITH THE LANGUAGE OF THE TELEPHONE CONSUMER PROTECTION ACT

The Telephone Consumer Protection Act ("TCPA") provides in relevant part as follows: "It shall be unlawful for any person within the United States to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular phone." 47 U.S.C. §227(b)(1)(A)(iii). This is clear. The act specifically provides for a private right of action, with remedies for injunction, and money damages of $500, *for each occurrence.* 47 U.S.C. §227(b)(3). There is nothing in the act which requires any act by the consumer to take advantage of this prohibition, yet the Settlement Agreement requires precisely this:

> Sallie Mae shall not make use of "an automatic telephone dialing system and/or an artificial or prerecorded voice, to call the cellular telephones of Settlement Class Members who make a valid and timely Revocation Request."

Settlement at 7, section III(C)(1)(a). This means that Sallie Mae will not stop violating the plain language of the TCPA, <u>unless</u> the borrower asks them to. This itself constitutes a violation.

While the FCC has determined that a consumer gives "prior express consent" to call one's cell phone if that number was provided by the consumer during the transaction that resulted in the debt (FCC Declaratory Ruling, 23 F.C.C.R. at 564-65), there is no indication regarding which of these Sallie Mae borrowers have done this. The burden is on Sallie Mae to prove which borrowers provided that information. FCC Declaratory Ruling, 23 F.C.C.R at 565. The burden is NOT on the affected class members to prove that they did not.

As Sallie Mae bears the burden, and has no legal authority to impose legal requirements on the class members to take advantage of a law designed to prevent the precise harm which occurred herein,

---

3

Sallie Mae is not entitled to require the class members to opt out when they never opted in.  If Sallie Mae does not wish to go to the burden of sifting which borrowers provided cell phone numbers in the origination papers, then their burden is to stop the calls altogether, consistent with the language and purpose of the TCPA.

Accordingly, these Objectors contend that the requirement of submitting a request for exclusion from phone calls already prohibited constitutes an unlawful thwarting of the law designed to prevent this conduct.  If Sallie Mae can prove that some of its borrowers consented, it should be allowed to continue with those phone calls only.

## II.

## THE SETTLEMENT DENIES RELIEF TO BORROWERS WHO HAVE PAID THEIR LOANS.

The Settlement provides that borrowers who were ever more than 180 days delinquent are not entitled to a cash settlement.  The TCPA makes no such distinction.  As such, this distinction violates the purposes of the TCPA and must be struck.  *Everyone* who did not give their cell phone number is allowed to be free from these unwanted calls, not just those who are less late than others.

Apart from that fundamental unfairness and inserting subclasses into a law with no subclasses (those less deserving than others to get harassing phone calls), there are certainly borrowers who have been more than 180 days delinquent and have since paid off their debt.  These class members are left with no remedy.  This is unfair and unreasonable.  These borrowers who have paid their debt should be allowed to fill out a claim form opting for the cash payment, consistent with the language and purposes of the TCPA.

/ / /

10-CV-00198-JLR
OBJECTION OF PATRICK SWEENEY AND SASHA MCBEAN TO PROPOSED SETTLEMENT
AND NOTICE OF INTENT TO APPEAR

## III.

### THERE IS NO REASONED BASIS FOR EXCLUDING "NON-BORROWERS" FROM THE CLASS ENTITLED TO CASH PAYOUTS

The Settlement provides that if one received an automated phone call, but had no "lending relationship" with Sallie Mae, he gets no money.  Instead, Sallie Mae is making an omnibus contribution to the Posse Foundation to atone for this behavior (these Objectors support the selection of the cy pres recipient as consistent with the purposes of this lawsuit).  However, the law was designed to stop harassing cell phone calls from robots.  Nothing could be more harassing than receiving a call from Sallie Mae when one never borrowed money therefrom.  This sub-class is precisely the class of consumers the TCPA was designed to protect:  flatly harassing phone calls with no basis in reality.  Why, then, is this sub-class of consumers excluded from sharing in the cash payout?  Requiring Sallie Mae to provide cash settlements to those consumers who should never have been called supports the deterrent purposes stated in the Act.  *See, Goodrich Mgmt. Corp. v. Afgo Mech. Services, Inc.,* 2009 WL 2602200 at *5 (D.N.J. 2009).

As with the other unfair subclasses created among the borrowers which thwart the purposes of deterrence and vigilance, this one smacks of unfairness most of all.

## IV.

### THE INJUNCTION APPEARS TO APPLY ONLY TO EXISTING BORROWERS AND DOES NOT ADDRESS FUTURE VIOLATIONS OF THE TCPA BY SALLIE MAE

The Settlement appears to apply only to existing Class members who already received improper phone calls.  The "prospective" relief only applies to those who take affirmative (unrequired) action to opt-out of these already illegal calls.  This Settlement, then, does not speak to how Sallie Mae can treat borrowers taking out loans today, or next week, or next year.  Is Sallie Mae free to continue its practice

10-CV-00198-JLR
OBJECTION OF PATRICK SWEENEY AND SASHA MCBEAN TO PROPOSED SETTLEMENT
AND NOTICE OF INTENT TO APPEAR

1   of calling cell phones without authorization for these new borrowers?  In effect, there is nothing

2   prospective in the language of the settlement.  They are simply remedying what has already occurred,

3   and will not do it again, *to these borrowers*.  As such, this "prospective" relief is wholly illusory, and in

4   fact raises the specter of whether Class Counsel is simply biding its time for the next complaint in a year

5   or two based upon the same fact pattern, with another $5 million in fees.

6

7                                               **V.**

8   **INSUFFICIENT INFORMATION HAS BEEN PROVIDED TO EVALUATE THE
    REASONABLENESS OF THE ATTORNEYS' FEES REQUESTED**

9

10      The Ninth Circuit, in *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir.

11  2010), ruled that class members must be allowed the opportunity to object to the fee motion itself.  618

12  F.3d at 993-94.  This includes inquiry "into the bases for various charges" to ensure "that they are

13  adequately documented and supported," which is "essential for the protection of the rights of class

14  members." 618 F.3d at 994.  "It also ensures that the district court, acting as a fiduciary for the class, is

15  presented with adequate, and adequately-tested, information to evaluate the reasonableness of a

16  proposed fee." *Id.*

17

18      The Court must scrutinize the fees requested in this matter because the amount Class Counsel

19  received directly impacts the cash settlement each class member receives; if Counsel takes less, the class

20  takes more.  The *Mercury* court described the conflict, applicable in this common-fund case:

21

22              During the fee-setting stage of common-fund class action suits such as this
                one, plaintiff's counsel, otherwise a fiduciary for the class, becomes a
23              claimant against the fund created for the benefit of the class.  This shift
                puts plaintiff's counsel's understandable interest in getting paid the most
24              for its work representing the class at odds with the class' interest in
                securing the largest possible recovery for its members.  Because the
25              relationship between plaintiffs and their attorneys turns adversarial at the
                fee-setting stage, courts have stressed that when awarding attorneys' fees
26              from a common fund, the district court must assume the role of fiduciary
                for the class plaintiffs.  As a fiduciary for the class, the district court must
27

28

                                               6
                                                                        10-CV-00198-JLR
    OBJECTION OF PATRICK SWEENEY AND SASHA MCBEAN TO PROPOSED SETTLEMENT
                                        AND NOTICE OF INTENT TO APPEAR

1
2

    act with a jealous regard to the rights of those who are interested in the
    fund in determining what a proper fee award is.

3
4

618 F.3d at 994.  As Class Counsel admits, every dollar it receives reduces the pot available to the

5

claimant; every claim filed reduces a pro rata share just as every dollar paid to the attorneys reduces the

6

pro rata share.  This situation mandates that the Court engage in appropriate analysis to determine that

7

the fees are fair and reasonable.

8
9

   In connection with this, only one firm has submitted the relevant, and required, information

10

necessary to assess the reasonableness of the fee.  Attorney Jonathan Selbin of Lieff Cabraser submitted

11

a detailed declaration, together with itemized billing and cost records for the Court's scrutiny.  The other

12

firms merely provided a summary of an attorney or paralegal's time, together with a total.  This

13

submission is insufficient, and does not meet the requirements of *Mercury*.

14
15

   In these Objectors' analysis of the Lieff billing records, the only questionable series of entries

16

discovered are Barry Himmelstein's entries beginning on August 19, 2009, regarding "Jessica Kranz

17

complaint."  It is not revealed in any of the motions, applications, or petitions who Jessica Kranz is, or

18

why she is included in these bills on the Arthur case.  These entries call for further explanation, or

19

auditing.

20
21

   No billing sheets are available to scrutinize duplicated efforts, nor is any information provided

22

regarding the reasonableness of the time in relation to the work product.  The lack of information

23

prevents the Court from engaging in a meaningful analysis regarding whether the fees are in fact

24

reasonable.  Given the status of incomplete information, and the number of firms touching this case and

25

seeking fees, determination of whether the fee is reasonable is premature at this point.

26

/ / /

27
28

---

7

OBJECTION OF PATRICK SWEENEY AND SASHA MCBEAN TO PROPOSED SETTLEMENT
AND NOTICE OF INTENT TO APPEAR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# VI.

## THE REQUESTED MULTIPLIER IS EXCESSIVE, AS IS THE HOURLY BILLING RATES OF MANY PROFESSIONALS

### A. High Hourly Rates Call For Scrutiny.

These Objectors have concerns regarding the hourly rate of the paralegals.  Of assistance is the widely-accepted Laffey Matrix, which forms a benchmark of reasonable hourly rates in this Circuit. *See, In re HPL Technologies, Inc. Sec. Litig.* 366 F.Supp.2d 912, 921 (N.D.Cal. 2005).  (The current Matrix is attached as Exhibit A.)  The Laffey Matrix caps out at $161 per hour for paralegals.  Yet, Lieff Cabraser is requesting an average of $245 per hour, and up to $260 per hour.  More troubling is the paralegal rates sought by Terrell, Marshall & Daudt.  Paralegal Eden Nordby is being billed out at $275 per hour, after receiving a BA in 2005, while an attorney at this firm is billed out at $295, who received his JD in 2007.  These differences and variances from the Laffey Matrix of presumptively reasonable fees require further scrutiny by the Court, and perhaps justify an independent audit of the claimed fees.

### B. The 6.31 Multiplier is Vastly Excessive.

Class Counsel bases its attorneys' fee request on a 24.98% request from the common fund, and asserts that the Ninth Circuit has expressed a preference for this method.  Even in this situation, however, a lodestar cross-check is always the starting point for analysis of whether the requested fee is reasonable.  *See, In re Cendant Corporation PRIDES Litigation,* 243 F.3d 722 (3d Cir. 2001).  In fact, even Circuits preferring a percentage of the fund award require a lodestar cross-check to ensure that the fee is reasonable. *Id.* at 742.  *Accord, Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 57 (2d Cir. 2000).  Windfalls to class counsel are to be avoided.  *Id.* at 49.

Application of the 6.31 multiplier exposes what a windfall this is to attorneys and paralegals involved herein.  Applying it to Mr. Selbin's $650 hourly rate results in a rate of $4,101.50 per hour.

OBJECTION OF PATRICK SWEENEY AND SASHA MCBEAN TO PROPOSED SETTLEMENT
AND NOTICE OF INTENT TO APPEAR

The absurdity of the 6.31 multiplier is further illustrated once applied to the paralegal rate of $245 for Dan Schulman:  $1,545.95 per hour, for "returned calls to class members with questions about the settlement." (Decl. of Selbin, page 12.)  $1,500 per hour for returning calls is unjustifiable, and is plainly detrimental to the class.  This is a classic example of the windfalls to class counsel that courts advise against.

Experts, and courts, considering multipliers have noticed that a common range for multipliers is from 3 to 4.5.  *See, e.g., In re NASDAQ Market-Makers Anti-Trust Litig.,* 187 F.R.D. 465, 489 (S.D.N.Y. 1999); *In re Sumitomo Copper Litig.,* 74 F.Supp.2d 393, 399 (S.D.N.Y. 1998).  A multiplier as high as 6.31 is astonishing, considering that Class Counsel has not had to toil for years to see compensation, but rather resolved this suit in approximately one year.  A multiplier this high, on a case resolved this quickly, is simply unconscionable.

## VII.

## THE COURT SHOULD REVIEW FEE SPLITTING AMONG ATTORNEYS

Federal Rules of Civil Procedure, Rule 23(e)(3) requires that the fee-sharing agreements among class counsel be produced, to the extent there are any (a fair assumption given the number of firms involved):  "the parties seeking approval of a class action settlement must file a statement identifying any agreement made in connection with the proposal."  *Cf., Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 959-60 (9th Cir. 2009)("Failing to disclose the incentive arrangements in connection with class certification compounded the problems by depriving the court, and the class, of the safeguard of informed judicial consideration of the adequacy of class representation.").  Rule 23's language is mandatory, requiring production of all fee agreements regarding sharing fees with clients, incentive promises to clients, splitting fees with co-counsel, and any other financial arrangement touching the class action.

10-CV-00198-JLR
OBJECTION OF PATRICK SWEENEY AND SASHA MCBEAN TO PROPOSED SETTLEMENT
AND NOTICE OF INTENT TO APPEAR

Determination of the reasonableness of the fee request, and any apparent or potential conflicts, must be scrutinized prior to approval.

## VIII.

## CLASS COUNSEL SEEKS TO RECOVER UNREIMBURSEABLE COSTS

Every Class Counsel declaration seeks to recover costs which are not recoverable.

### A.  Copies.

Every declaration seeking costs seeks reimbursement for photocopies.  No information is provided regarding how much they are charging per page.  Absent this information, the request cannot be approved.  In several recent decisions, copying charges were limited to $.10 per copy.  Ten cents ($0.10) per copy is reasonable and should be reimbursed; higher amounts should be denied. The Court in *Carpenters Health & Welfare Fund vs The Coca-Cola Company*, 587 F. Supp 1206 (N.D. Ga. 2008) denied a request that in-house copying be reimbursed at $0.25 per page.   The Honorable Willis B. Hunt, Jr. stated that [p]aper, copier toner, wear and tear on a copier, and administrative assistant time are overhead costs that this Court will not reimburse.  Moreover [lead counsel's] out-of -pocket costs for copies could not have come close to reaching $0.25 per page. *Id.* at 1273.

See also *James vs. Wash Deport Holdings Inc. (*2007 U.S. Dist LEXIS 38809 S.D. Fl 2007), wherein the Court awarded Class Counsel reimbursement at the rate of $0.10 per copy.  After an extensive review of reported and unreported cases, the court concluded that the photocopying rate should approximate that of local print shops, unless the requesting party is able to provide factual support for the reasonableness of the higher in-house rate. Since no such evidence is yet on the record, the Court should award only $0.10 per page but must first inquire as to how many pages were copied.

/ / /

---

10

1

2    **B.  Legal Research**

3         All Class Counsel submit costs for online legal research.  These costs are not allowable.  In  *U.S.*

4    *v. Merritt Meridian Constr. Corp.,* 95 F. 3d 153 (2d Cir. 1996) the  court held that the  district court did

5    not abuse its discretion in denying in full request for Westlaw costs, since "computer research is merely

6    a substitute for an attorney's time… and is not a separately taxable cost. " *Id.* at 173.  Online research

7    should not be reimbursed because that would, in effect, be compensating class counsel for maintaining

8    their law library. This was also the conclusion of the Eighth Circuit when reviewing this exact question.

9    In *Standley v. Chilhowee R-IV School Dist.,* 5 F. 3d 319, 325 & n. 7 (8th Cir. 1993) (citing *Leftwich v.*

10   *Harris-Stowe State College*, 702 F. 2d 686, 695 (8th Cir. 1983)), the Eighth Circuit held that computer

11   costs are part of the attorneys' fees and not to be taxed separately.  In *Leftwich*, the Court stated that

12   "computer-aided research, like any other form of legal research, is a component of attorneys' fees and

13   cannot be independently taxed as an item of cost in addition to the attorneys' fee award" *Id.* at 695.  In

14   *Standley,* the Court  stated "the law of this Circuit is that computer-based legal research must be factored

15   into the attorneys' hourly rate, hence the cost of the computer time may not be added to the fee award."

16   5 F.3d at 325.  The Court expanded upon this in footnote 7 where it stated that time spent doing the

17   computer-based legal research is compensable as part of counsels' billable hours, and that the actual cost

18   for the on-line computer time "is a component of attorney fees and cannot be recovered in addition to

19   the fee award." *Id.* at fn 7.  In *Friskney v. American Park and Play, Inc (2007 US Dist. LEXIS 14619, SD*

20   *Fl. 2000),* the Court found that "expenses for computerized legal research are part of the general

21   overhead of a law firm and are **not** compensable."  (emphasis added).  *See also Weinberger v. Great*

22   *Northern Nekoosa Corp.* 801 F. Supp. 804, 827-29 (D. Me. 1992)(Disallowing all computerized

23   research expenses, which is "properly an item attributed to firm overhead"); *Milliron v. T-Mobile USA,*

24   *Inc.*(2009 U.S. Dist. Lexis 101201 at *70, D. N.J. Sept 10, 2009) (same).

25

26

27

28

---

10-CV-00198-JLR
OBJECTION OF PATRICK SWEENEY AND SASHA MCBEAN TO PROPOSED SETTLEMENT
AND NOTICE OF INTENT TO APPEAR

As stated in *In re Bicoastal Corp,* 121 B.R. 653, 656 (Bk. M.D.Fla. 1990):

> To accept the proposition that Lexis charges or any other computer research charges are compensable, one should also then conclude that the cost of acquisition of the lawyer's library and the cost of maintaining the library, even possibly, the depreciation of the law books would also be compensable. No one has ever urged such a proposition yet, but of course, if one should, it would be clearly rejected as being without any justification.

Accordingly, all requests for cost reimbursement for online research should be denied.

### C. Other costs requested.

As with other overhead disallowed, Class Counsel seek to recover other administrative costs, which should be denied as well. It bears noticing that every professional bills for <u>time</u> spent on the telephone, but then Lieff has submitted all of its telephone bills, as well. It is unfortunate that a firm seeking to recover $1500 per hour for returning phone calls, also has to bill out the telephone service. Under these circumstances, the telephone service should be considered overhead, since the professional time is billed out, just as with the analysis with online legal research. Nor should the telephone calls be allowed as provided. If this is what they bill regular, paying clients, it may not be representative of the actual cost. It would not be surprising that Leiff actually has a flat monthly telephone rate and that the true cost of these telephone calls is negligible and should be considered overhead.

Just as other administrative and overhead costs should be disallowed, the Court should examine whether the cost of a "research librarian" should be allowed. (Selbin Decl. at 14.) Similarly questionable is Beth Terrell's request to recover costs for "document clerks." These fee requests must be denied unless Class Counsel can make a showing that the work was "legal," rather than "clerical." *See, Absher Const. Co. v. Kent School Dist. No. 415*, 79 Wash.App. 841, 845 (1995):

The following criteria will be relevant in determining whether such services should be compensated:  (1)  the services performed by the non-lawyer personnel must be legal in nature; (2) the performance of these services must be supervised by an attorney; (3) the qualifications of the person performing the services must be specified in the request for fees in sufficient detail to demonstrate that the person is qualified by virtue of education, training, or work experience to perform substantive legal work; (4) the nature of the services performed must be specified in the request for fees in order to allow the reviewing court to determine that the services performed were legal rather than clerical; (5) as with attorney time, the amount of time expended must be set forth and must be reasonable; and (6) the amount charged must reflect reasonable community standards for charges by that category of personnel.

As recorded, it does not appear that the tasks listed were legally "substantive," as required.  Further analysis, or an independent audit, may be appropriate.

Apart from the apparently high hourly rates inflating the lodestar in this case, a 6.31 multiplier is uncommonly high, especially on a case that took less than a year to settle.  The language of the statute is very clear, as is the interpretation by the FCC.  Further, Class Counsel admits that this issue, or similar issues have been litigated before.  (Plaintiff's Motion for Attorneys' Fees, page 10, n.6, listing five similar cases.)

The court should bifurcate the hearing on the final approval of the settlement and the hearing on the award of attorney fees until such time as all time records are received, reviewed and tabulated. Approving and distributing the attorney fees should be consistent with an attorney's duty to put a client's interest first.

## IX.

## __CONCLUSION__

WHEREFORE, these Objectors respectfully request that this Court:

A.  Upon proper hearing, sustain these Objections;

10-CV-00198-JLR
OBJECTION OF PATRICK SWEENEY AND SASHA MCBEAN TO PROPOSED SETTLEMENT
AND NOTICE OF INTENT TO APPEAR

B.  Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

C.  Continue the Fairness Hearing until such time that these Objectors have had an opportunity to review Class Counsel's Complete Fee Application and for an opportunity to submit limited Discovery regarding said Fee Application; or in the alternative, continue the Hearing on the Class Counsel's Fee Application until after all Claims are received, reviewed and tabulated by the Administrator.

D.  Award an incentive fee to these Objectors for their service as named representatives of Class Members in this litigation.

Dated:   December 13, 2010                    By: /s/ Steve Dashiak
                                                       STEVE DASHIAK

                                              Steve Dashiak (WA 39836)
                                              PHILLIPS & WEBSTER
                                              900 SW 16th Street, Ste. 210
                                              Renton, WA 98057
                                              Phone: (425) 970-6716
                                              Email: stevedashiak@gmail.com

                                              Darrell Palmer
                                              LAWE OFFICES OF DARRELL PALMER
                                              603 N. Highway 101, Suite A
                                              Solana Beach, CA 92075
                                              Phone: (858) 792-5600
                                              Email: darrell.palmer@palmerlegalteam.com

                                              Chris Bandas
                                              BANDAS LAW FIRM
                                              500 N. Shoreline Blvd., Ste. Suite 1020
                                              Corpus Christi, TX 78471
                                              Phone: (361) 698-5200
                                              Email: cbandas@bandaslawfirm.com

                                              Attorneys for Objectors,
                                              Patrick Sweeney and Sasha McBean

---

14

1

## **CERTIFICATE OF SERVICE**

2

3        I hereby certify that on December 13, 2010, I electronically filed the foregoing, OBJECTION OF PATRICK SWEENEY AND SASHA MCBEAN TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR, with the Clerk of the Court of the United States District Court for the Western District of Washington by using the USDC CM/ECF system.  Service will be accomplished by the USDC CM/ECF system to the following CM/ECF filers:

4

5

6    **Class Counsel**
Daniel M. Hutchinson (dhutchinson@lchb.com)

7    Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor

8    San Francisco, CA 94111-3343

9

10   **Defense Counsel**
Julia B. Strickland (jstrickland@stroock.com)

11   Stroock & Stroock & Lavan LLP
2029 Century Park East, 16th Floor

12   Los Angeles, CA 90067

13   The foregoing documents will also be mailed by First-Class Mail, postage prepaid on today's date to the following:

14

15   Daniel M. Hutchinson
Lieff Cabraser Heimann & Bernstein, LLP

16   275 Battery Street, 29th Floor
San Francisco, CA 94111-3343

17

18   Julia B. Strickland
Stroock & Stroock & Lavan LLP

19   2029 Century Park East, 16th Floor
Los Angeles, CA 90067

20

21                            _____/s/ Steve Dashiak_____
Steve Dashiak

22                            Attorney for Objectors

23

24

25

26

27

28

10-CV-00198-JLR
OBJECTION OF PATRICK SWEENEY AND SASHA MCBEAN TO PROPOSED SETTLEMENT
AND NOTICE OF INTENT TO APPEAR



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

IN RE                              )         No. 12-md-2330-EMC N
CARRIER IQ, INC.,                  )
CONSUMER PRIVACY LITIGATION )

---

## OBJECTIONS OF PATRICK SWEENEY TO PROPOSED SETTLEMENT

---

NOW COMES, Pro Se Objector PATRICK S. SWEENEY and hereby files these objections to the proposed settlement in this matter.

## PROOF OF MEMBERSHIP IN CLASS

Under penalty of perjury Patrick S. Sweeney (herein referred to as "Objector" or "Patrick") has reviewed the notice and believe that he is a member of the class as defined in that certain Notice of Class Action and Proposed Settlement which is not dated (herein referred to as the "Notice"). Patrick has filed two claims, one regarding his law firms ATT account and one for his personal account. His claim numbers are CIQ-40050759-5 AND CIQ-40050756-0. Patrick's address, e-mail addresses and telephone numbers are listed at the conclusion of this objection.

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does **NOT** intend to appear at the Fairness Hearing presently scheduled for July 28, 2016 at 1:30 p.m. PDT before

Honorable Judge Chen at the United States Courthouse, 450 Golden Gate Avenue, Courtroom 5, 17th Floor San Francisco, CA 94102.

## REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor adequate:

1.   Claims administration process fails to require reliable future oversight, accountability and reporting about whether the claims process actually delivers what was promised. The proposed settlement orders no counsel, not various class counsel attorneys nor any defense attorney (notwithstanding the large amount of attorney fees to be earned by the numerous law firms involved in this case) to monitor the settlement process to its ultimate completion.

It would obviously be more prudent to withhold a portion of Class Counsel's fee until the entire distribution process is complete. Furthermore, it would also be judicious to require Class Counsel (and perhaps Defense Counsel as well) to report back to this Honorable Court with a final summary and accounting of the disbursement process (even if brief) in order to confirm that this matter has been successfully concluded and to allow this Honorable Court to "put its final stamp of approval" on the case.

Objector is aware that this is not the "usual" procedure in Class Action proceedings.  Nonetheless, Objector submits the suggested process is an improvement to the present procedure which is the status quo in Class Action cases. Also nothing in the above proposed procedure violates the letter or spirit of the Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711–1715,(the "Act")  Rule 23 F.R.C.P.(the "Rule") nor the body of case law that has developed in the class action arena (all three collectively referred herein as "Class Action Policy") Objector hereby urges this Honorable Court to adopt such a procedure as a "best practice standard " for Class Action settlements.

2.      The Settlement Administrator is not held to any specific timeframe to complete the settlement process.

3.      No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing the settlement. Objector hereby contends that the withholding of a reasonable sum of awarded attorney's fees would alleviate the concerns raised herein regarding Paragraphs Nos. 1 & 2 above.

4.      Attorney fees do not depend upon how much relief is actually paid to the Class Members. It appears that the proposed settlement will award class counsel its fee notwithstanding the amount of relief actually achieved by the Class. This practice would be considered inequitable at best and excessive at worse in many other areas of the law when awarding attorney fees.

5.      The fee calculation is unfair in that the percentage of the settlement amount is far too high (it is stated in the Notice that it is 25%, which is high, but if the percent is calculated by using monies actually awarded Class Members the percentage becomes much higher) By way of example: the Settlement Fund is $9 million dollars- attorney fees are $2.25 million; the cost of administration is already $1 million dollars; litigation expenses are $160,000 and Class Representative fees are $85,000. If all those sums are combined and subtracted from the $9 million Settlement Fund the amount left for distribution to Class Members is $5,505,000. $2.25 million of the actual dollars available to the Class Members represents a 40% attorney's fee.

The Objector hereby states that, of the 449 Docket Entries on PACER, very few entries were substantive in nature. The remaining entries were mostly procedural in nature. Although 449 is a fairly large number of Docket Entries it computes to an unfathomable $64,587 per Docket Entry.

6.   The fee request is not reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, hours accumulated and reasonable costs incurred), which can be evaluated by Class Members and the Court to determine the reasonable nature (or not) of the fee request.

7.   The Objector herein hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## CONCLUSION

**WHEREFORE,** This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1.   Sustain these Objections;
2.   Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.
3.   Award an incentive fee to this Objector for their role in improving the Settlement, if applicable.


Respectfully submitted by:

Patrick S. Sweeney, Pro Se
2590 Richardson Street
Madison, WI  53711
310-339-0548
patrick@sweeneylegalgroup.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 2, 2016, I caused to be filed the foregoing with the Clerk of the Court of the United States District Court for the Northern District of California sending this document via U.S. First Class Mail Delivery at the address provided in the Notice.

Patrick S. Sweeney, Pro Se

1  Joseph Darrell Palmer (SBN 125147)
   Law Offices of Darrell Palmer
2  2244 Faraday Avenue, Suite 121
   Carlsbad, CA 92008
3  Telephone: (858) 215-4064
   Facsimile: (866) 583-8115
4  Email:  darrell.palmer@palmerlegalteam.com

5

   Attorney for Objector Patrick S. Sweeney
6

7

8              UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

10

11  SHAWN ROBERTS, et al.;                )  Master File No. 12-CV-1644-CAS (VBKx)
                                          )
12              Plaintiffs,               )  CLASS ACTION
                                          )
13                                        )  **OBJECTION OF PATRICK S.**
    v.                                    )  **SWEENEY TO PROPOSED**
14                                        )  **SETTLEMENT AND NOTICE OF**
                                          )  **INTENT TO APPEAR**
15  ELECTROLUX HOME PRODUCTS,             )
    INC.,                                 )
16                                        )
                                          )
17              Defendants.               )  Date:  August 18, 2014
                                          )  Time:  10:00 a.m.
18  _____       )  Place:  Courtroom 5, 2nd Floor
                                          )  Judge:  Hon. Christina A. Snyder
19  This Document Relates To All Actions. )
                                          )
20

21

22

23

24

25

26

27

28

                                  0

FILED
CLERK, U.S. DISTRICT COURT

AUG – 1 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................. 1

    A. Summary of the Action and the Settlement ...................................... 1
    B. The Standard for Approving a Proposed Class Action Settlement .......... 2

II.    ARGUMENT ..................................................................... 3

    A. The Settlement Consideration is Illusory ...................................... 3

      1.  The rebates or online vouchers are coupons .................................... 3
      2.  The cleaning service is too little too late .......................................... 4
      3.  The reimbursement for fire damage is of little value .......................... 5

    B. There is no commonality ..................................................... 5

    C. Notice is grossly inadequate ................................................ 5

    D. The Safety Notice Procedures are Inadequate and Dangerous ............... 7

    E. The Fee Request is Unreasonable ............................................. 9

      1.  Class Counsel's Lodestar Information is Insufficient ......................... 11
      2.  Bernatowicz' valuation is Speculative and Excessive ...................... 12
      3.  This is a coupon settlement and value is based on redemption.................. 13

III.   JOINDER IN OTHER OBJECTIONS ................................................. 14

IV.    CONCLUSIONS ..................................................................... 14

i

1

# <u>TABLE OF AUTHORITIES</u>

2

## CASES

3

4
*Dennis v. Kellogg Co.*
5
697 F.3d 858, 862-63 (9th Cir. 2012) ............................................10

6
*Grant v. Bethlehem Steel Corp. v. Bethlehem Steel Corp.*
7
823 F.2d 20, 23 (2d Cir. 1987) ........................................  2

8
*Hecht v. United Collection Bureau*
9
691 F.3d 218, 222 (2d Cir. 2012) ......................................  5

10
*Humphrey v. Electrolux*
11
4:12-cv-00157 (E.D. Ark.) ..........................................  8

12
*In re Bluetooth Headset Prod. Liab. Litig.*
13
654 F.3d 935, 946-47 (9th Cir.2011) ....................................  2

14
*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*
15
55 F.3d 768 (3d Cir. 1995) ...........................................  10

16
*In re HP Inkjet Printer Litig.*
17
716 F.3d 1173, 1184 (9th Cir. 2013) .................................  10, 14

18
*In re Warner Communications Sec. Litig.*
19
798 F.2d 35, 37 (2d Cir.1986) ........................................  2

20
*Johnson v. Comerica*
21
83 F.3d 241 (8th Cir. 1996) ..........................................  10

22
*Mirfashi v. Fleet Mortgage Corp.*
23
356 F.3d 781, 785 (7th Cir. 2004) .....................................  2

24
*Mullane v. Cent. Hanover Bank*
25
339 U.S. 306, 315 (1950) ............................................  5

26
*Phillips Petroleum Co. v. Shutts*
27
472 U.S. 797, 811-12 & n.3 (1985) ....................................  5

28

ii

*Silber v. Mahon*
957 F.2d 697, 701 (9th Cir. 1992) ................................................. 2

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*
463 F.3d 646, 654 (7th Cir. 2006) ............................................. 3, 13


## STATUTES AND OTHER AUTHORITY

28 U.S.C. § 1712   ................................................... 3, 10, 14

28 U.S.C. §1712(a) ................................................... 10, 14

28 U.S.C. §1712(a)-(c) ................................................... 14

28 U.S.C. §1712(e) ................................................... 14

Fed. R. Civ. Proc. 23(e)(2) ................................................. 2


A Market-Based Approach to Coupon Settlements in Antitrust
and Consumer Class Action Litigation
Christopher R. Leslie, 49 UCLA L. Rev. 991, 1049 (2002) ............................. 14

iii

# I.  INTRODUCTION

Patrick S. Sweeney's address is 2935 South Fish Hatchery Road Unit #7, Madison, WI 53711, telephone: 608-695-3651.  Sweeney is the owner of Frigidaire Dryer model number GEF331AS1, with serial number XD22701555 as verified in his declaration.

## A.    Summary of the Action and the Settlement

Plaintiffs allege Electrolux manufactured and sold dryers containing defects causing the dryers to catch on fire, and that they have known about these dangers since the mid 1990's but have continued to manufacture and sell these dryers.  Plaintiffs allege that Electrolux "unlawfully profited" from the sale of the dryers,  breached warranties, was negligent, and violated various consumer protection statutes.  The company sold the defective dryers – described as ball-hitch freestanding clothes dryer –under various brand names, including Frigidaire, White Westinghouse, Kelvinator, Gibson, Tappan, Crosley or Kenmore.   Purchasers of the dryers between January 1, 2002 and December 31, 2011 (and current owners) are Class Members.  Class members who experience a fire caused by the dryers are divided into two subclasses, (1) those whose dryers caught on fire in the past, and (2) those who will experience a dryer fire in the future (until the cut-off date to make a claim under the terms ).

Settlement consideration:

1. First, a discount of either 10% or 20% ($350 maximum) on the purchase of a new Frigidaire or Electrolux-brand appliance or product;

2. One hour from Electrolux authorized service technician for cleaning dryer with specific conditions which occurred during first five years after purchase. Eligible performance problems include overheating, burning, or scorching of laundry loads, longer than normal dryer cycle times, abnormal lint buildup, sparking of the dryer's heating element, and burning of lint inside the dryer;

3. Class members whose dryers catch on fire and who can document expenses related to the fire, are eligible for reimbursement of up to $1,300 for "out-of-

1

1      pocket expenses," typically the expense of replacing the dryer.  Class members

2      who cannot document their fire-related expenses are eligible to receive $300

3      for fire related dryer damage;

4      4. Electrolux will send safety notices to identifiable Class Members informing

5      them that lint can build up inside the Dryers and the Dryers should be cleaned

6      by an authorized service professional at least every 18 months.

**B.  The Standard for Approving a Proposed Class Action Settlement**

In reviewing a proposed settlement, the district court has a duty to ensure the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2)  Appellate courts accord considerable deference to the district court's "knowledge of the litigants and of the strengths and weaknesses of their contentions". . . . and recognize that the district court "is in the best position to evaluate whether the settlement constitutes a reasonable compromise." *Grant v. Bethlehem Steel Corp. v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987).   "Because class actions are rife with potential conflicts of interest between class counsel and Class Members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfashi v. Fleet Mortgage Corp.* 356 F.3d 781, 785 (7th Cir. 2004).

The court must be protective of unnamed Class Members.  "In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that 'the settlement is fair and not a product of collusion, and that the Class Members' interests were represented adequately.'" *Grant, citing In re Warner Communications Sec. Litig.*, 798 F.2d 35, 37 (2d Cir.1986).   See also *Silber v. Mahon*, 957 F.2d 697, 701 (9th Cir. 1992) ("Both the class representative and the courts have a duty to protect the interests of absent Class Members.")  Settlements involving class certification for settlement only require additional scrutiny.  *See, e.g. In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir.2011).

2

## II. ARGUMENT

**A.    The Settlement Relief is Illusory**

### 1. The rebates or online vouchers are coupons

Although labeled rebates and vouchers, this a coupon settlement.  The settlement provides for a rebate of up to $350 on the purchase of a new Frigidaire or Electrolux brand clothes dryer.   Although the rebates can be used to make purchases from any retailer, information as to the current prices for eligible products (which can be found on the Electrolux website, available at *http://www.electroluxappliances.com/Washers-Dryers/Dryers/* visited on July 27, 2014), ranged from $999.00 to $1,649.00.  The 20% rebate based on a purchase price of $1,649.00 would be $329.80; the purchase price after the rebate would still be $1,319.00.  Rebates can be used besides other promotional offers or discounts, so consumers could qualify for a higher discount off the MSRP, but their refund would be reduced accordingly.  For a Electrolux Dryer priced at $999.00 the discount would be $199.80.  For purchase of Frigidaire appliances the actual value of the rebate is even less.  Dryers on the Frigidaire website, available at *http://www.frigidaire.com/Washers-Dryers/Dryers/* (visited on July 27, 2014), range in price from $1,149.00 to $699.00.  The rebate offered for the purchase of Frigidaire Dryers is only 10%, ranging from approximately $114.90 to $69.90.

For those not planning to purchase a new clothes dryer or home appliance in the next two years, there is an option to obtain a 10%-20% discount (again for maximum of $350 off the published sale price) on a future purchase through Electrolux's direct-to-consumer website.  These class members will need to make their purchase online from *www.ElectroluxAppliances.com* using an online code.

Although these coupons are "stackable", meaning they can be combined with other discounts, they cannot be valued at face value.  The Class Action Fairness Act, 28 U.S.C. § 1712 was born of the recognition that "[c]ompensation in kind is worth less than cash of the same nominal value." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006).  Coupons are problematic when class members must

3

spend their own money to realize any benefit from the settlement.  Here class members must spend hundreds of dollars to take advantage of the rebates.  Burned by the purchase of defendant's defective dryers, a sensible consumer probably will not return to the Electrolux or Frigidaire brand.  These coupons are an Electrolux marketing device. Coupon redemption will be low or nonexistent.

### 2. The cleaning service is too little too late

Electrolux has offered a one hour cleaning service for dryers with overheating, burning, or scorching of laundry loads, longer than normal dryer cycle times, abnormal lint buildup behind the rear of the clothes drum inside their dryers, sparking of an electric dryer model's heating element, burned or scorched lint inside the dryer, or even those who saw smoke or smelled a burning odor coming from their Dryers.  The parties admit one hour of service time will usually not cover the full cleaning cost.  Besides, if someone has already noticed these dangerous symptoms/conditions – wouldn't they have already repaired or replaced it?

Electrolux must disclose its contract rates with the technicians or the court cannot value this part of the settlement.  If the consumer rate is $100/hour but Electrolux only pays $60/hour, the value calculation has to use $60.

Based on the allegations, Electrolux should issue a product recall and repair or replace these dryers.  Dangerous products should be repaired or replaced.  Cleaning is a temporary fix; according to the agreed warning notice, consumers must pay a technician every 18 months for a cleaning.  Consumers unable to purchase a new product or afford appliance technicians are left vulnerable to a dangerous condition.

This offer is only available for Dryers less than 10 years old as of March 9, 2012, that experienced a qualifying performance problem during the first five years of purchase. As if any class member will remember a smoky smell in 2005 (or any other time)  If a Dryer was six years old when it smolders – no relief except a coupon. Electrolux is hoping to take advantage of repeat business sooner than normal, as dryers are expected to have a normal product life of approximately thirteen years.  The

4

1  inadequacy of this relief is highlighted: "Electrolux will not pay for the cost of repairs or
2  parts, but you will not be required to make any repairs or replace any parts in your dryer,
3  either." You're on your own if you keep using a dryer with a known fire hazard.

4  ### 3. *The reimbursement for fire damage is of little value*

5  For those Settlement Class Members who experience a Dryer fire in the future
6  (but within the first 10 years after purchase), Electrolux will reimburse them for out-of-
7  pocket expenses up to the lesser of the Dryer's purchase price or $1,300.  Given the
8  limitations on these funds, this will cover partial replacement costs only.

9  **B.    There is no Commonality**

10  Class certification may not be appropriate; there is no such thing as a typical home
11  fire.  The circumstances including comparative fault or contributory negligence issues
12  are complex, and have no commonality.  Class Members are being compensated for
13  damage to other property for this Settlement, ranging from $25,000 for Plaintiff Shannon
14  McCarthy to 1239.65 for Plaintiff Michelle McGowan, underscores the inadequacy of
15  the class action for handling these claims.  This settlement similarly fails for a lack of
16  adequate representation; class counsel and the class representatives are putting their own
17  interests in front of those of class members.

18  **C.    Notice is grossly inadequate**

19  Absent class members have a due process right to notice and an opportunity to opt
20  out of class litigation when the action is predominantly for money damages. *Phillips*
21  *Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 & n.3 (1985); *Hecht v. United Collection*
22  *Bureau*, 691 F.3d 218, 222 (2d Cir. 2012).  To be constitutionally compliant, notice must
23  be the "best practicable, reasonably calculated, under all the circumstances, to apprise
24  interested parties of the pendency of the action and afford them an opportunity to present
25  their objections." *Hecht*, 691 F.3d at 224 (*quoting Shutts*, 472 U.S. at 812). This must be
26  more than a "mere gesture": "The means employed must be such as one desirous of
27  actually informing the absentee might reasonably adopt to accomplish it." *Id.* (*quoting*
28  *Mullane v. Cent. Hanover Bank*, 339 U.S. 306, 315 (1950)).

The one page notice on the settlement website is wholly inadequate. A separate twelve page FAQ Form provides the information typically provided in a long form notice, but is inexplicably merely labeled FAQ Form, rather than Notice or Long Form Notice. A typical consumer will not recognize the FAQ Form as the detailed notice. This disguised notice and website format is unacceptable. It is different than every other settlement website. The FAQ Form (Spanish) would probably be more helpful if it were properly labeled in Spanish, Preguntas más frecuentes.

A settlement website that does not provide sufficient information to enable class members to evaluate the settlement is not the "best practicable". The settlement website includes the class notice and answers to frequently asked questions, and the claim form. On the page identified by the label "Court Documents", class counsel have provided:

- Settlement Agreement
- Preliminary Approval Order
- Class Counsel's Application for Attorneys' Fees and Expenses and for Service Awards; Memorandum of Points and Authorities in Support Thereof

Conspicuously absent, however, are the operative complaint and Class Counsel's motion for final approval. *In re Mercury Interactive Corp. Securities Litigation,* 618 F.3d 988 (9th Cir. 2010):

> The Advisory Committee Notes to the 2003 amendments to Rule 23(h) further support this reading of the rule. They elaborate that "[i]n setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion." Fed. R. Civ. P. 23, 2003 Advisory Committee Notes, ¶ 68. The Advisory Committee Notes further contemplate that, in appropriate cases, the court will permit an "objector discovery relevant to the objections." Id. ¶ 69. Clearly, the rule's drafters envisioned a process much more thorough than what occurred in this case.
>
> Commentators also agree with this logical interpretation of the rule. For example, Moore's Federal Practice counsels that "[a]ny objection deadline set by the court should provide the eligible parties with an adequate

6

1
2
3
4
5
6
7
8

opportunity to review all of the materials that may have been submitted in support of the motion and, in an appropriate case, conduct discovery concerning the fees request." 5 Moore's Federal Practice § 23.124[4] (Matthew Bender 3d ed. 2009). Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members. It also ensures that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee.

9
10
11
12
13
14
15
16

*Id* at 994. The fee motion filing did not give the class sufficient time to review the fee motion. And the final approval motion was not filed before the objection deadline. Central District local rule 6-1 require motions be filed 28 days before the hearing date. It was error to set the final approval filing date on August 8. (Doc 150 at 9) *See Mercury* FN2 at 995. By failing to publish the Complaint or the Motion for Final Approval on the settlement website, Class Counsel have prejudiced their clients, making it extremely difficult for class members to understand the claims they may be giving up in choosing not to opt-out of the settlement.

17

**D.     The Safety Notice Procedures are Inadequate and Dangerous**

18
19
20
21
22
23
24
25
26
27
28

Review of the Consolidated Second Amended Class Action Complaint suggests that certain features not just inadequate, but are dangerous. The Settlement merely perpetuates the Company's pattern of concealing the seriousness of the defects found in its dryers. The Safety Notice provided for under the Settlement advises Class Members to "At least every 18 months have an authorized service technician clean inside the dryer cabinet, especially between the drum and cabinet, the lint screen housing, and exhaust duct, where lint can build up. An excessive amount of lint buildup in these areas could cause inefficient drying and possible fire." According to information found , however, cleaning the units at 18 month intervals is ineffectual, and this information merely repeats the deceptive and inadequate warnings Electrolux in its earlier product safety warnings. Para. 103 alleges:

7

103. For example, Electrolux inserted a statement in its user guides that 'Every 18 months an authorized servicer should clean the dryer cabinet interior and exhaust duct.' Electrolux has been unable in prior depositions to provide any engineering basis for this statement or any explanation for why it inserted this statement in its user guide. Moreover, warranty data for Electrolux dryers showing that 80% of the fire warranty claims related to lint occurred within the first 18 months of use, demonstrate how having the Dryer serviced every 18 months does not eliminate or materially reduce the safety risks or remedy the Defects.

The Complaint points out that Electrolux relied on safety warnings of this sort to avoid liability in some lawsuits following dryer fires. According to the Complaint, the Company relied on "this baseless instruction to argue that it had no liability for the Defects, and asked a court to dismiss a plaintiff's complaint, because '[p]laintiff's allegation shows, at most, that she failed to heed the warnings and instructions in her Use & Care Guide' to have the Dryer serviced every 18 months. *Humphrey v. Electrolux*, 4:12-cv-00157 (E.D. Ark.) (Dkt. No. 17 at 8 n.3)." Electrolux made this argument even though it knew, or at the least should have known, that the 18 month period has no engineering basis and is nothing more than part of the company's strategy to conceal the Defects from consumers, shift the blame, and avoid liability for damages caused by its defective Dryers." Complaint, para. 104.

The information in these safety warnings is inadequate and deceptive and the settlement perpetuates this pattern. It allows the Company to limit vast potential liabilities, while refusing to retrofit or repair the defective products. Offering one cleaning is a wholly inadequate remedy, as the evidence shows many of the fires occur when the Dryers are less than 18 months old. The safety notice further implies that consumers can prevent the fires through cleaning, although the Complaint alleges that the consumers cannot prevent the fires. The Complaint shows that Electrolux' design, including its improper use of flammable plastics, create fire risks that cannot be eliminated or even significantly reduced through cleaning. The Complaint alleges:

8

76. The Electrolux ball hitch Dryers are also defective because Electrolux's design does not contain a fire within the dryer cabinet, but instead will aid in spreading any fire outside the Dryers.

77. The Electrolux design uses combustible plastic components in the air duct and blower housing that provide an additional fuel source for any fire and do not properly contain fires once ignited. These plastics not only catch fire but melt, and the hot molten plastic then spreads the fire inside the Dryer cabinet and helps the fire to spread out of the Dryer cabinet, where it can ignite surrounding items.

78. Indeed, the Electrolux Dryers failed fire containment testing that Electrolux performed in 1995 when molten plastic and flame escaped the Dryers, thereby proving that Electrolux's Dryers' design was defective and represented a serious safety hazard. Nonetheless, even though Electrolux was aware of how to eliminate this hazard, and even though Electrolux was aware of a fundamental engineering principle stating that all known safety hazards should be eliminated, if possible, through the selection of a design or material that removes the hazard altogether, Electrolux chose not to fix the safety hazard or to even warn the public or consumers who purchased the Dryers.

Class Counsel have agreed to a Settlement that pays them handsomely for their work, but allows the company to limit its liabilities and continue its pattern of disseminating improper information and concealing real safety risks.

**E.      The Fee Request is Unreasonable**

We have few measurable benefits to the Class yet Class Counsel ask for fees and costs of $8,000,000.00. They claim a lodestar of 12,000+ hours and request a 1.23 multiplier. Class counsel ignore CAFA and this coupon settlement. Class counsel: "fee shifting" is involved, such as this one—where the obligation to pay attorneys' fees is statutorily or otherwise transferred from the plaintiff or class to the defendant and is paid separately from the class's recovery—the lodestar multiplier method is an appropriate method for calculating the attorneys' fees." (Doc 153 at 15)  And "where the attorneys' fees are based upon significant injunctive relief providing a safety benefit and relief like a repair or monetary relief available to remedy a safety defect, the lodestar method is appropriate for determining Class Counsel's fees."  (Doc 153 at 16)

9

1    Settlements that create non-coupon value besides coupon value (i.e. those where a

2   separate portion of the attorney's fee award is attributable to non-coupon relief) are

3   subject to CAFA.  Where there is "a portion of [the] attorney's fee award . . . that is

4   attributable to the award of the coupons," 28 U.S.C. §1712(a), a court must scrutinize

5   that portion of the attorney's fee and base it "on the value to class members of the

6   coupons that are redeemed." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1184 (9th Cir.

7   2013). Because of the inherent dangers of settlements that award coupons, CAFA

8   requires a district court to base "the portion of any attorney's fee . . . attributable to the

9   award of coupons" on "the value to class members of the coupons that are redeemed."

10   28 U.S.C. §1712(a).

11    Claiming the fees were negotiated separately is irrelevant.  Each of the benefits

12   offered with the Settlement, including attorneys' fees, form part of a "constructive

13   common fund." *See, e.g., Dennis v. Kellogg Co.*, 697 F.3d 858, 862-63 (9th Cir. 2012)

14   (evaluating a "constructive common fund" settlement).  Similar arguments were made in

15   *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768

16   (3d Cir. 1995).  Third Circuit found that "Although class counsel and GM contend (and

17   the district court believed) that the fee was a separate agreement, thus superficially

18   resembling the separate awards in statutory fee cases, private agreements to structure

19   artificially separate fee and settlement arrangements cannot transform what is in

20   economic reality a common fund situation into a statutory fee shifting case." *Id.*, at 821.

21   Regarding the lodestar method: "the court must vigilantly guard against the lodestar's

22   potential to exacerbate the misalignment of the attorneys' and the class's interests." *Id.*

23   *Accord. Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996) ("[I]n essence the entire

24   settlement amount comes from the same source. The award to the class and the

25   agreement on attorney fees represent a package deal.").

26    Class Counsel claim "An independent valuation of the Dryer cleaning, fire

27   compensation, and injunctive relief benefits provided under this Settlement shows that it

28   has a full utilization value of over $155 million and a projected utilization value of over

10

$35 million." (Doc 153 at 21), citing Wallace Decl., Ex. D. Their expert's analysis is self-serving; CAFA cannot be distinguished.

### 1. *Class Counsel's Lodestar Information is Insufficient*

To support the lodestar, Class Counsel describe in narrative fashion their work during the litigation. There was no certification motion; their work focused on motions to dismiss and discovery during two years.

Class counsel brought and lost one discovery motion but claim victory because Electrolux produced previously unseen documents. (Doc 153 at 6)  Mr. Wallace offers a table of time spent litigating the case.  Wexler Wallace LLP claims 4,975.4 hours litigating the case and a lodestar of $1,971,985.00, plus expenses of $242,098.98. Average billable hours are $396; this number may also include paralegal or contract attorney billings.  Exhibit E to Wexler's Declaration provides some additional information, including the names and hourly billing rates of individuals who worked on the litigation, although the table does not indicate if the persons listed are even attorneys. Edward Wallace himself spent 347.1 hours litigating the case at a billing rate of $650. Most of the work was done by Amy Keller, 1452.4 hours at $475/hr and Dawn Goulet, 1272.6 hours $475/hr and Vanessa Romero, 856.15 hours at $150/hr.  Similar information is provided for other law firms.

There are no billing records or any explanation of the work performed. The court must demand and scrutinize detailed time sheets.

Expert testimony is not a CAFA pass.  The settlement value cannot be determined until the actual claims and rebates are tallied.

### 2. *Bernatowicz' valuation is Speculative and Excessive.*

Mr. Bernatowicz suggests a full utilization value of $155 million and projected utilization value of over $35 million.  His assumptions are flawed and lack foundation.

Bernatowicz suggests (there's no foundation) an estimated 791,413 class members are eligible for Dryer Cleaning.  Bernatowicz assumes a value of $100 for the hour of

11

1 | cleaning. His estimate that between 10 and 20% of eligible class members will claim the
2 | benefit also lacks foundation; it is pure speculation. This is not a government imposdd
3 | product recall. Is having your dryer cleaned be a benefit? It may prevent future fires but
4 | why are these dryers being left in homes? Class members are helping the Defendant
5 | minimize future expense. The projected value of $7,914,130 to $15,828,259 is not a
6 | benefit to consumers. Scheduling a cleaning is an onerous annoyance. Unlike a product
7 | recall, this cleaning will be a temporary fix. Class members are not being offered a
8 | repair or a product upgrade, it is a temporary fix that leaves them vulnerable to
9 | substantial fire risk.

10 | The assumptions used in determining the value of this settlement, including the
11 | Fire Compensation benefit are without foundation. The reports Bernatowicz relies on
12 | are not attached to this report; the court has no idea about the basis for his assumptions.
13 | Bernatowicz report does educate the court; Electrolux has spent approximately $9.3
14 | million in product replacement costs related to dryer fires for the period. For 2002 to
15 | 2013, there were an estimated 25,655 fires, multiplied by the $363 average out-of-pocket
16 | loss. The full utilization value for past fires is $9,322,952. Here Bernatowicz estimates
17 | that 50%-65% of all eligible class members will claim the compensation available to
18 | them under the settlement, so he estimates the value of this portion of the settlement at
19 | between $4,661,476 and $6,059,919.

20 | The value of this portion of the settlement for the period 2014 through 2022 is
21 | projected to be lower. For 2014 through 2022, Bernatowicz estimates 11,597 future
22 | fires; he again assumes an average $363 out-of-pocket loss. The projections are reduced
23 | by 1 -2% based on averted fires, with full utilization value of this portion of the
24 | settlement estimated between $4,136,100 and $4,175,197. Bernatowicz estimates that
25 | 50%-65% of all eligible class members will claim the compensation, an astounding
26 | claims rate assumption. And, after the cleaning and additional safety
27 | notices/instructions, over ten thousand fires are projected to occur in the next six years.
28 | This court cannot in good conscience, sanction an estimated 11,489 future fires.

Bernatowicz values the mailing of safety notices to Class Members at between $12.6 million and $18.9 million. This number is based on Startlingly, for the safety notice we learn that the average out of pocket loss from these fires is expected to be $12,174. (Although as noted above the class members who experience any such fire are only expected to recoup $363 in out-of-pocket expenses). Bernatowicz uses this much higher out-of-pocket loss figure to calculate the benefit of the settlement. Multiplying the estimated 11,489 future fires times the estimated average out of pocket loss from these fires of $12,174, *reduced by 45% because of the safety notices,* he reaches the startling conclusion that mailing safety notices provides a full utilization benefit to the class of $62,939,295. To come up with a projected utilization value for this portion of the settlement he assumes a participation rate of between 20% and 30%, yielding a value between $12,587,859 and $18,881,789.

These calculations as to the benefit of the settlement to the class are misleading. The only value or cost the court should consider is the cost of the notice. Electrolux' diminished liability is not a class benefit. Avoiding fires is not a benefit.

### 3. *This is a coupon settlement and value is based on redemption*

Class Counsel claim "The excellent monetary and safety-related injunctive relief achieved more than justifies Class Counsel's fee request." (Fee Motion, page 14.) The relief is not excellent. This is a coupon settlement which provides a coupon for an Electrolux cleaning (which may or may not cover the full cost of the cleaning), and a discount for the purchase of an Electrolux product. Some monetary relief is provided, but only for class members who experience the trauma of an actual fire in their homes – and even then the compensation is capped at $1,300 but estimated to be worth far less. The fact that the rebate offers merely a percentage off the purchase price of a new product – a fairly small percent at that, at 10% or 20% -- means that Class Members will have to spend hundreds of dollars to take advantage of this Settlement. *See Synfuel v. DHL Express* (USA), 463 F.3d 646, 654 (7th Cir. 2006) (Wood, J.) (A "discount on a proposed purchase" is typical coupon relief). The value of these coupons should be

13

1  looked at with skepticism.  Section §1712 was born of the recognition that
2  "[c]ompensation in kind is worth less than cash of the same nominal value." *Synfuel*, 463
3  F.3d at 654.

4       The primary problem with coupons is that they "mask[] the relative payment of
5  the class counsel as compared to the amount of money actually received by the class
6  members." *Inkjet*, 716 F.3d at 1184 (*quoting* Christopher R. Leslie, A Market-Based
7  Approach to Coupon Settlements in Antitrust and Consumer Class Action Litigation, 49
8  UCLA L. Rev. 991, 1049 (2002)). "[C]ourts aim to tether the value of an attorneys' fees
9  award to the value of the class recovery . . . Where both the class and its attorneys are
10  paid in cash, this task is fairly effortless . . . But where class counsel is paid in cash, and
11  the class is paid in some other way, for example, with coupons, comparing the value of
12  the fees with the value of the recovery is substantially more difficult." *Inkjet*, 716 F.3d at
13  1187.  "If a proposed settlement in a class action provides for a recovery of coupons to a
14  class member," then it is governed by CAFA. 28 U.S.C. §1712(a)-(c); accord §1712(e).
15  Here the settlement provides for two kinds of coupons: hence Section 1712 applies.
16  Where there is "a portion of [the] attorney's fee award . . . that is attributable to the
17  award of the coupons, a court must scrutinize that portion of the attorney's fee and base
18  it "on the value to class members of the coupons that are redeemed." 28 U.S.C.
19  §1712(a).  CAFA requires that coupons be valued at "the value to class members of the
20  coupons that are redeemed."

### III.    JOINDER IN OTHER OBJECTIONS

22       House joins in, adopts and incorporates by reference as though fully stated herein
23  each objection by other class members which are not inconsistent with these objections.

### IV.    CONCLUSIONS

25       The court should carefully scrutinize this settlement proposal and fee request.
26  This is a settlement that shields the Defendant from vast future liabilities while
27  conferring little benefit on the class.  For the foregoing reasons and all others to be

28

14

presented at oral argument, these objectors request that the court sustain their objections and grant the following relief:

- Upon proper hearing, sustain these Objections.
- Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.

July 28, 2014                          By:

                                       Joseph Darrell Palmer
                                       Attorney for Patrick S. Sweeney

15

1

## **CERTIFICATE OF SERVICE**

2

3    I certify that on July 28, 2014, I mailed the foregoing and the Declaration of

4    Patrick Sweeney to the Clerk of the Court of the United States District Court for the

5    Central District of California and to:

6        Edward A. Wallace
         Wexler Wallace LLP
7        55 West Monroe St., Ste. 3300
         Chicago, Illinois 60603
8

9        Michael T. Williams
         Wheeler Trigg O'Donnell LLP
10       370 Seventeenth Street, Suite 4500
11       Denver, Colorado 80202

12

13

14

15    July 28, 2014

16
                                        Joseph Darrell Palmer
17

18

19

20

21

22

23

24

25

26

27

28

16

**FILED**

**Patrick Sweeney**
**430 Matterhorn Dr**
**Verona WI 53593**
**patrick@sweeneylegalgroup.com**
**608-695-3961**

JUN 0 6 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

May 31, 2014

United States District Court
Clerk of Court's Office
Northern District of California,
San Francisco Division
450 Golden Gate Avenue
San Francisco, CA 95113

Re:   Trader Joe's Class Action
Larsen v Trader Joe's 3:11-cv-05188-WHO
        OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT AND NOTICE OF
        INTENT NOT TO APPEAR

Dear Judge William Orrick:

## I.    OVERVIEW

In California class action suits, a mixture of federal case law and equitable principles incorporated into state cases govern compensation of class counsel. Cohelan on California Class Actions § 10:1 (2013-2014 ed.) The "signs that class counsel have allowed pursuit of their own self-interests" that federal appellate courts of this State's Circuit have detected in failed settlements have made their presence known in this proposed settlement as well. As of the filing of this objection, Class counsel has not filed with the court nor posted on the settlement website the hourly detailed itemized statement of attorney fees and expenses notwithstanding the filing of a Motion for the Award of Attorneys' Fees, Reimbursement of Expenses and Incentive Awards. It is impossible for the class members to evaluate the reasonableness of the attorneys' fees without those detailed itemized statement of attorney's fees and expensive. Additionally, there are no firm and quantified estimates provided as to the size of the class, making it impossible to determine the value of the settlement, in turn, the percentage of that settlement the attorneys' fees represent. This settlement is therefore unfair and should not be approved.

## II.    CLASS MEMBERSHIP

At the time of purchase, lived at 430 Matterhorn Drive, Verona, WI 53593. I routinely shopped (and still do) at Trader Joe's and at the very least purchased the products listed in my claim as well as a plethora of other products many of which state or insinuate the products are " All Natural " or 100% Natural. Objector does not intend to appear at the fairness hearing although does request being added to the service list.

### III.   THE AGREEMENT STRUCTURE AND COUNSEL'S FAILURE TO FILE IMPORTANT DOCUMENTS MAKES VALUING THE SETTLEMENT NEARLY IMPOSSIBLE

Any agreement entered into with respect to the payment of attorneys' fees or the submission of an application for the approval of attorney's fees must be set forth in full in any application for settlement of an action that has been certified as a class action.

The architects of the settlement have created a notice problem for the class by structuring the settlement so the class members are without crucial information at the time of the objection deadline. Because the parties must show the settlement is fair, reasonable, and adequate, but the class is without vital information regarding the specifics of the attorneys' claims for fees, the fairness of the settlement, and the magnitude of the claims, class members lack the essential and minimal information required to have any idea whether the settlement is fair, reasonable, or adequate. This information won't be known at the time of the fairness hearing, due to the schedule that the settling parties have designed, and it cannot be known now.

### VI.   CONCLUSION

Although the above objection goes into some detail about the defects of the settlement as it stands, it is within the power of the settling parties to modify it slightly to make it a lawful and appropriate agreement. The "clear sailing" provision that the settlement contains, and the swollen attorneys' fees it provides for, are warning signs of self-dealing that demonstrate class counsel's less than zealous attention to the interests of the class. This settlement's generosity to its advocates cannot be reconciled with class counsel's duty to fairly and adequately protect the interests of the class. If this Court approves the settlement, it should award no more than 20% of the class benefit to class members' attorneys. More precisely, that means that the court should look at exactly how much money is being awarded to class members, divide that figure by 3, and set the resultant quotient as a ceiling above which attorney compensation should not be allowed to metastasize. Awards to attorneys should sum to no greater than 20% of the value of the settlement: class counsel should not be generously rewarded for engineering a settlement that sells the interests of its clients short.

In addition objector incorporates by references of all other objectors in this case

Respectfully,

Patrick Sweeney

cc: Class Counsel of Record

Objection to Class Action Settlement   2

UNITED STATES DISTRICT COURT

NORTHIMN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

FILED

2016 JAN 20  A 10: 51

CLERK SUSAN Y. SOONG
U.S. DISTRICT
CA. COURT

ROSMINAH BROWN and ERIC LOHELA,

on behalf of themselves and all others

similarly situated,

Plaintiffs,                           No. 3:11-cv-03082   LB

v.

THE HAIN CELESTIAL GROUP, INC.,

Defendant. -

## OBJECTIONS OF PATRICK S. SWEENEY TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

NOW COMES, Pro Se Objector, Patrick S. Sweeney, and hereby files these objections to the proposed settlement in this matter.

### PROOF OF MEMBERSHIP IN CLASS

Upon information and belief Patrick S. Sweeney ("Objector") believes he is a member of the class as defined in that certain Notice of Class Action Settlement which is undated. He has filed a timely claim, via the internet, pursuant to the directions in the Notice of Class Action Settlement.  His address and telephone number are listed at the conclusion of this objection.

### NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does not intend to appear at the Fairness Hearing presently scheduled for February 11, 2016 at 9:30 a.m. PST, at the United States District Court for the Northern District of California, Courtroom 15th Floor, Courtroom C, 450 Golden Gate Ave., San Francisco, CA 94102.

1

## REASONS FOR OBJECTING TO THE PROPOSED SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable and adequate.

1. Claims administration process fails to require reliable oversight, accountability, and reporting about whether the claims process actually delivers what was promised.

2. Timeframes and deadlines benefit Defendants and Class Counsel, but not Class Members; No timeframe for completing administration of the Monetary Relief is set, so Class Members cannot know when payment would arrive.

3. No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing settlement.

4. Attorney fees do not depend upon how much relief is actually paid to the Class Members.

5. The fee calculation is unfair in that the percentage of the settlement amount is far too high. The claims process is cumbersome, unreasonable and designed to deprive Class Members of the relief which the Settlement Agreement purports to provide.

6. Some direction regarding cy pres funds needs to be addressed.

7. Attorneys' fees are disproportionate to the value of the recovery of the Class.

8. The value of the Coupon Claims are not easily ascertained and to the extent these Coupon Claims make up part of the Settlement Fund they should not be given full credit as their actual value is pennies on a dollar. Applying a more accurate accounting makes the requested attorney fees of $3.54 million dollars approximately 45% of the true recovered value (this assumes that only approximately $300,000 of the $1.8 million in Coupon Claims is actually funded).

9. There appears to be no specific adjudication nor direction of any *cy pres* monies.

10. The objector hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

### CONCLUSION

**WHIMEFORE**, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;

2

2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3. Award an incentive fee to this Objector for him role in improving the Settlement, if applicable.

Dated:   January 12, 2016

Patrick S. Sweeney, Pro Se
2590 Richardson Street
Madison, WI 53711

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2016, I caused to be filed the foregoing with the Clerk of the Court of the United States District Court of California, Northern District by having the foregoing deposited in First Class, U. S. Mail with copies to Class Counsel and Defendant's Counsel via email at a later time.

Patrick Sweeney, Pro Se

3

2940 Richardson
Madison, WI 53711

9410234899

CLERK of COURTS
Northern District of California
450 Golden Gate Ave
San Francisco California
94102

12 JAN 2016 PM 7 L

FOREVER

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE

RECEIVED AND FILED

2015 DEC 28 P 2: 30

| | |
|---|---|
| JEAN LaROCQUE, by and through her appointed Power of Attorney, DEIDRE SPANG, on behalf of herself and all others similarly situated, | ) ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TRS RECOVERY SERVICES, INC. | ) |
| | ) |
| Defendants. | ) |

Civil Action No. _13-2426_

DEPUTY CLERK

## OBJECTION OF PATRICK S. SWEENEY TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

NOW COMES, Pro Se Objector PATRICK S. SWEENEY, hereby files these objections to the proposed settlement in this matter.

## PROOF OF MEMBERSHIP IN CLASS

Upon information and belief Patrick S. Sweeney, Pro Se ("Objector") has reviewed the Notice of Class Action Settlement and as a result believes that he is a member of the class as defined in that certain Notice of Class Action Settlement which is undated but is posted on the class action's website. He has timely file a claim. His address and telephone number are listed at the conclusion of this objection.

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does not intend to appear at the Fairness Hearing presently scheduled for January 21, 2016, at 10:00 a.m. EST before Honorable Judge Hornby

1

at the United States Courthouse for the District of Maine, 156 Federal Street, Portland, Maine

04101.

## I.

Reason for Objecting to Settlement:

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable and adequate.

1.  Claims administration process fails to require reliable oversight, accountability, and reporting about whether the claims process actually delivers what was promised.

2.  Timeframes and deadlines benefit Defendants and Class Counsel, but not Class Members; No timeframe for completing administration of the Monetary Relief is set, so Class Members cannot know when payment would arrive.

3.  No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing settlement.

4.  Attorney fees do not depend upon how much relief is actually paid to the Class Members.

5.  The fee calculation is unfair in that the percentage of the settlement amount is far too high.

6.

7.  Any fee awarded prior to knowing the amount of relief actually paid to Class Members must be limited to lodestar calculation.

8.  Fee request is not reasonable in the absence of documentation, including billing records, which can be evaluated by Class Members and the Court.

9.  Attorneys' fees are disproportionate to the value of the Recovery of the Class. The Settlement Fund is $3,340,000 but only $2,045,000 will be distributed to the Class Members. Thus $1,035 of $2,045,000 is actually 50.65 % of the amount available for distribution to the Class Members.

10. Notice is inadequate in that no alleged violated statutes are referenced, no briefing schedule is included and that an objector's only remedy is to write a letter setting forth objections.

The Objector herein hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## II.

### CONCLUSION

**WHEREFORE,** This Objector, for the foregoing reasons, respectfully requests that

the Court, upon proper hearing:

1. Sustain these Objections;

2. Enter such Orders as are necessary and just to adjudicate these Objections and to
   alleviate the inherent unfairness, inadequacies and unreasonableness of the
   proposed settlement.

3. Award an incentive fee to this Objector for her role in improving the Settlement, if
   applicable.

Dated:   December 22, 2015

By: _____
Patrick S. Sweeney, Pro Se
2590 Richardson Street
Madison, WI 53711
Telephone: (310)-339-0548
Facsimile: (561)395-9093
Email:patrickshanesweeney@gmail.com

### CERTIFICATE OF SERVICE

Dated:   December 22, 2015,

By: _____
Patrick S. Sweeney, Pro Se
2590 Richardson Street
Madison, WI 53711
Telephone: (310-339-0548
Facsimile: (561)395-9093
Email:patrickshanesweeney@gmail.com

### CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2015, I filed the foregoing with the Clerk of the
Court of the United States District Court for the District of Maine and to Class Counsel and
Defense Counsel at the addresses set forth below via U.S. First Class Mail.

By: _____

Patrick S. Sweeney, Pro Se
2590 Richardson Street
Madison, WI 53711

Clerk of Courts
United States District Court
 District of Florida
156 Federal Street
Portland, Maine 04101

Class Counsel:
Francis & Mailman, P.C.
100 Broad Street
19th Floor
Philadelphia PA  19110

Defense Counsel:
Donald R. Frederico
Pierce Atwood, LLP
100 Summer Street
Suite 2250
Boston, MA 02110

2590 RICHARDSON
MADISON, WI 53711



CLERK OF COURT
DISTRICT OF MAINE
156 FEDERAL ST
PORTLAND, ME 04101

USMS ME

04101$4168 C023

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

FILED

2015 NOV 17 PM 1: 42

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

IN RE: POLYURETHANE FOAM
ANTITRUST LITIGATION

)  MDL DOCKET NO. 2196
)
)  INDEX NO. 10-MD-2196 (JZ)
)

The Document Relates to:

ALL INDIRECT PURCHASER CLASS CASES

## OBJECTION OF PATRICK S. SWEENEY TO PROPOSED SETTLEMENT

NOW COMES, Pro Se Objector PATRICK S. SWEENEY, hereby files these
objections (the "Objections") to the proposed settlement in this matter.

## PROOF OF MEMBERSHIP IN CLASS

Upon information and belief Patrick S. Sweeney, of 2590 Richardson Street,
Madison, Wisconsin 53711 asserts he is a member of the class as defined in that certain Long
Form Legal Notice of Flexible Polyurethane Foam Class Action Settlement which is undated.
He has filed a claim via the Settlement Web Site and has been assigned the claim number of
"Claim Number 27885846". This claim was filed timely. His address and telephone number
are listed at the conclusion of this Objection.

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that, at this time, he does not intend to appear at the
Fairness Hearing presently scheduled for December 15, 2015, at Ashley U. S. Courthouse,
1716 Spielbusch Avenue, Toledo, Ohio 43604.

## ITEMS PURCHASED CONTAINING FLEXIBLE POLYURETHANE FOAM

The item purchased by Patrick S. Sweeney was one Sealy mattress. The item was purchased at American TV, Madison, WI, in the year 2002. The cost of the mattress was approximately $2800.

## REASONS FOR OBJECTING TO THE PROPOSED SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable and adequate:

1. Claims administration process fails to require reliable oversight, accountability, and reporting about whether the claims process actually delivers what was promised.
2. Timeframes and deadlines benefit Defendants and Class Counsel, but not Class Members; No timeframe for completing administration of the monetary relief is set, so Class Members cannot know when payment would arrive.
3. No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing settlement.
4. The fee calculation is unfair in that the percentage of the settlement amount is far too high.
5. Costs of litigation and attorney fees requested are not reasonable in the absence of documentation, including billing records, which can be evaluated by Class Members and the Court.
6. Attorneys' fees are disproportionate to the value of the recovery of the Class.
7. This Objector herein hereby adopts and joins in all other objections, if any, which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## CONCLUSION

**WHEREFORE,** This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;

2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3. Award an incentive fee to this Objector for his role in improving the Settlement, if applicable.

Dated:  November 11, 2015

By: _____

Patrick S. Sweeney, Pro Se
2590 Richardson Street
Madison, WI 53711
Telephone: (310)-339-0548
Facsimile: (561)395-9093
Email: patrickshanesweeney@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2015, I caused to be filed, this Objection, via U. S. Mail with the Clerk of the Court of the United States District Court for the Northern District of Ohio with a copy sent by U.S. Mail and electronically to Class Counsel, Marvin A. Miller, Miller Law Firm, 115 LaSalle Street, Suite 2910, Chicago, Illinois

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN
# DISTRICT OF FLORIDA
# FORT LAUDERDALE
# DIVISION

### CASE NO. 0:14-cv-61978-JIC (*Legg*)
### CASE NO. 0:15-cv-61375-JIC (*Rosen*)

CHRISTOPHER W. LEGG,
individually and on behalf of all
others similarly situated,

                        Plaintiff,

v.

SPIRIT AIRLINES, INC., a Delaware
corporation,

                    Defendant.

_____

JOSEPH ROSEN, individually and on
behalf of all others similarly situated,

                   Plaintiff,

v.

SPIRIT AIRLINES, INC., a Delaware
corporation,
                   Defendant.

_____

## OBJECTION OF KERRY ANN SWEENEY TO PROPOSED SETTLEMENT AND NOTICE OF INTENT NOT TO APPEAR AT FAIRNESS HEARING

NOW COMES, KERRY ANN SWEENEY by and through her undersigned counsel Patrick S. Sweeney, hereby files these objections to the proposed settlement in this matter.

### PROOF OF MEMBERSHIP IN CLASS

Upon information and belief and to the best of her recollection Kerry Ann Sweeney ("Objector") believes she is a member of the class as defined in that certain notice of class dated December 4, 2016 (sic) ("Notice"). She has filed a timely claim in this matter and her claim number is RJDOXFEN. Her address and is:

> Kerry Ann Sweeney
> 1223 20th Street
> Apt. 101
> Santa Monica, CA 90404

Further, all additional contact information is directed to the signature page of this document where Objector's counsel's contact information is contained. Objector hereby requests that all contract be directed at Objector's counsel.

### NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that neither she nor her undersigned counsel intend to appear at the Fairness Hearing presently scheduled for June 20, 2016 at 9:00 am EDT before Honorable James I. Cohn United States District Court

for the Southern District of Florida, U.S. Federal Building and Courthouse, 299

East Broward Blvd. Courtroom 203E, Fort Lauderdale, FL33301.


## REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor adequate:

1. Claims administration process fails to require reliable future oversight, accountability and reporting about whether the claims process actually delivers what was promised. The proposed settlement orders no counsel, not various class counsel attorneys nor any defense attorney, (notwithstanding the large amount of attorney fees to be earned by the numerous law firms involved in this case), to monitor the settlement process to its ultimate completion.

   It would obviously be more prudent to withhold a portion of Class Counsel's fee until the entire distribution process is complete. Furthermore, it would also be judicious to require Class Counsel   (and perhaps Defense Counsel as well) to report back to this Honorable Court with a final summary and accounting of the disbursement process (even if brief) in order to confirm that this matter has been successfully concluded and to allow this Honorable Court to "put its final stamp of approval" on the case.

   Objector is aware that this is not the "usual" procedure in Class Action proceedings.  Nonetheless, Objector submits the proposed process is an improvement to the usual procedure, which is the status quo in Class Action cases. Objector states that nothing in the above proposed procedure violates the letter or spirit of the Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711–1715, (the "Act")  Rule 23 F.R.C.P.(the "Rule") nor the body of case law developed (all three collectively referred herein as "Class Action Policy"). Accordingly, Objector hereby urges this Honorable Court to adopt such a procedure as a "best practice standard " for Class Action settlements.

2.     No amount of attorney fees is to be withheld to assure Class
       Counsel's continuing oversight and involvement in implementing
       the settlement. Objector hereby contends that the withholding of a
       reasonable sum of awarded attorney fees would elevate the
       concerns raised herein regarding Paragraphs No. 1 above.

3.     Attorney fees do not depend upon how much relief is actually paid
       to the Class Members. It appears that the proposed settlement will
       award Class Counsel its fee notwithstanding the amount of relief
       to Class Members. In any other area of the law when, awarding
       attorney fees, this practice would be considered inequitable at best
       and excessive at worse

4.     The Objector states that in the 140 (Legg case) and 134 (Rosen
       case) Docket Entries very few entries were substantive in nature.
       In fact, only the Plaintiff's Complaint(s), and Defendant's
       Answer, had any significant legal basis to its content. The
       remaining entries are procedural in nature. There was no Motion
       to Dismiss filed in this case. There were no prolonged discovery
       disputes to sort out. There was no Motion for Summary Judgment
       to be defended. There was no trial. The combined 274 Docket
       Entries (many were nearly duplicative between the Legg case and
       the Rosen case) computes to an unfathomable $9,100.00 per
       Docket Entry. This is hardly the record of a case justifying Class
       Counsel's attorney fees in the amount of $2,500,000.00 plus
       expenses.

       It is also notable that the Settlement was reached in principal in
       approximately 12 months following the commencement of this
       action. Furthermore, Class Counsel's Memorandum of Law in
       Support of the Motion for Attorney's Fees appears to be a
       catalogue of cases whereby other lawyers were successful in
       obtaining excessive fee awards and not a compelling recitation of
       why the fees and costs are appropriate in this specific case.

5.     The attorney fees and costs calculation is also unfair in that the
       percentage of the settlement amount is far too high. It is stated in
       the Notice that the cost and attorney fees are $2,500,000.00. That
       is thirty three percent per cent (33%) of the total settlement
       amount. This number on its face is simply too high. Moreover, if
       the percent is calculated as a percent of the actual dollars
       available to the Class Members then the percent becomes much
       higher. The attorney fees and costs, using this method, are sixty
       percent (60%) of the monies available to the Class Members. By

way of example, the Settlement Fund is $7.5 million dollars. Assuming the costs and expense of the litigation are $200,000.00 and administrative costs are $500,000.00 (the fact that Objector must make these assumptions points to the inadequate description of the Settlement in the Notice). The class representative award is $10,000.00 that means the net Settlement Funds available to the Class Members is $4,290,000.00.  $2,500,000.00 is approximately 59% of the net Settlement Funds available to the Class Members.

6.   No fee request is reasonable in the absence of documentation, including detailed billing records (not simply hourly rates of the professionals and hours accumulated), which can be evaluated by Class Members and the Court to determine the reasonable nature (or not) of the request.

7.   Some *cy pres* procedure needs to be articulated so that Class Members and the Court can intelligently comment, object or approve the appropriateness of the *cy pres* procedure, recipient and potential amount of the *cy pres* distribution. The *cy pres* distribution and recipient should have a direct and substantial nexus to the interests of absent class members and thus properly provide for the 'next best distribution' to the class. Whatever method is used to arrive at determining an appropriate *cy pres* procedure and recipient can be a legitimate discussion between informed parties and therefore appropriate. Allowing the process to be determined solely by the Court at a later date does not allow the Objector to be able to determine if the settlement is fair and reasonable nor consistent with Class Action Policy.

8.   The Objector hereby adopts and joins in all other objections that are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## CONCLUSION

**WHEREFORE**, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;

2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3. Award an incentive fee to this Objector for her role in improving the Settlement, if applicable.

Dated:  June 20, 2016

By: _____
Patrick S. Sweeney, Esquire
Florida Bar No. 593486
2590 Richardson Street
Madison, WI 53711
Phone: 310-339-0548
Fax: 561-395-9390
patrick@sweeneylegalgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2016, I electronically filed the foregoing, with the Clerk of the Court of the United States District Court for the Southern District of Florida by using the USDC CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the USDC CM/ECF system, to wit:

_/s/_

Patrick S. Sweeney

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA**

FILED

JOHN LOFTON, an individual, )
on his own behalf and on behalf )
of all others similarly situated, )
                                  )
  Plaintiffs,                    )
                                  )
v.                                )
                                  )
VERIZON WIRELESS LLC,             )
and DOES 1-100, inclusive,        )
                                  )
  Defendants.                   )
                                  )

MAY – 9 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

Case No. 13-05665 YGR

## OBJECTION OF PATRICK S. SWEENEY TO PROPOSED SETTLEMENT AND NOTICE OF INTENT NOT TO APPEAR AT FAIRNESSHEARING

NOW COMES, Pro Se Objector PATRICK S. SWEENEY, hereby files these objections to the proposed settlement in this matter.

### PROOF OF MEMBERSHIP IN THE CLASS

Upon information and belief Patrick S. Sweeney ("Objector") has reviewed that certain notice of class action and proposed settlement which is dated February 22, 2016 (the "Notice"). As a result, he believes that he is a member of the class, he has timely filed a claim and his Claim Number is 32907716

His address, e-mail address and telephone number are listed at the conclusion of this objection.

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does NOT intend to appear at the Fairness Hearing presently scheduled for May 24, 2016 at 2:00 p.m. PDT., at the United States District Courthouse for the Northern Division of California, 1301 Clay Street, Oakland, CA 94612.

## REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor adequate:

1. No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing the settlement. Objector hereby contends that the withholding of a reasonable sum of awarded attorney fees would elevate the concerns raised herein regarding Paragraphs Nos. 1 & 2 above.

2. Attorney fees do not depend upon how much relief is actually paid to the Class Members. It appears that the proposed settlement will award Class Counsel its fee notwithstanding the amount of relief. This practice would be considered inequitable at best and excessive

at worse in many other area of the law when awarding attorney fees.

3.   The fee calculation is unfair in that the percentage of the settlement amount is far too high. The Objector states that in the 212 Docket Entries very few entries were substantive in nature. Many were merely Docket Entries that were procedural in nature. This is hardly the record of a case justifying Class Counsel's requested Attorneys' Fees in the amount of $1,350,000 and related costs of almost $500,000.00.

It is also notable that the Settlement in principle was reached in less than two years following the commencement of this action. Furthermore, Class Counsel's Memorandum of Law in Support of the Motion for Attorney's Fees appears to be a catalogue of cases whereby other lawyers were successful in obtaining excessive fee awards and not a compelling recitation of why the fees and costs are appropriate in this specific case.

4.   No fee request is reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, hours accumulated and reasonable cost incurred), which can be evaluated by Class Members and the Court to determine the reasonable nature (or not) of the request.

5.   Some *cy pres* procedure needs to be articulated so that Class Members and the Court can intelligently comment, object or approve the appropriateness of the *cy pres* procedure, recipient and amount of the *cy pres* distribution. The *cy pres* distribution and recipient should have a direct and substantial nexus to the interests of absent class members and thus properly provide for the 'next best distribution' to the class. Whatever method is used to arrive at determining an appropriate *cy pres* procedure and recipient can be a legitimate discussion between informed parties and therefore appropriate. Allowing for no specific *cy pres* process to be determined in the Notice is not appropriate nor consistent with Class Action Policy.

6.   The Objector hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## CONCLUSION

**WHEREFORE**, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1.  Sustain these Objections;

2.  Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3.  Award an incentive fee to this Objector for his role in improving the Settlement, if applicable.


Respectfully submitted,


Patrick S. Sweeney, Pro Se
1223 20th Street Apt 101
Santa Monica, Ca 90404et
424-299-6269
eb5ventures@gmail.com




## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2016, I caused to be filed the foregoing with the Class Action Clerk, United States District Court for Northern District of California, 1301 Clay Street, Oakland, CA 94612 by sending this document via U.S. First Class Mail so that this document would be postmarked within the timeframe described in the Legal Notice published in this case.  In addition, when the Clerk files this document in the docket for this case all parties in this case who use the CM/ECF filing system will be noticed.

SWEEN EY
1223 20TH ST Apt 00
SANTA MONICA, CA
          92404



GLASS ACTION CLERK
UNITED STATES DISTRICT COURT
NORTHERN DIST. OF CALIFORNIA
1301 CLAY STREET
OAKLAND, CA 94612

94612$5200 C037

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

IN RE: MIDLAND CREDIT

MANAGEMENT, INC.                          Master File No. 1:12-cv-03852-GBD

NUNC PRO ~~~ C
APR 2 2 2016

CLASS ACTION

**FILED**

APR 2 6 2016

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

**OBJECTION OF PATRICK S. SWEENEY TO PROPOSED SETTLEMENT AND
NOTICE OF INTENT NOT TO APPEAR AT FAIRNESS HEARING**

NOW COMES, Pro Se Objector PATRICK S. SWEENEY and hereby files these objections to the proposed settlement in this matter.

## PROOF OF MEMBERSHIP IN THE CLASS

Upon information and belief Patrick S. Sweeney, *Pro Se* ("Objector") has reviewed that certain notice of class action and proposed settlement which is not dated. (the "Notice"). As a result, he believes that he is a member of the class, as it is defined in that Notice. He has filed a timely claim with the Settlement Administrator. His address, e-mail address and telephone number are listed at the conclusion of this objection.

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does NOT intend to appear at the Fairness Hearing presently scheduled for August 28, 2016 at 11:00 a.m. EST before Honorable Michael M. Anello, at the United States District Court for the Southern Division of California, in San Diego, California.92101.

# REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor adequate:

1.     Claims administration process fails to require reliable future oversight, accountability and reporting about whether the claims process actually delivers what was promised. The proposed settlement orders no counsel, not various class counsel nor any defense attorney (notwithstanding the large amount of attorney fees to be earned by the numerous law firms involved in this case) to monitor the settlement process to its ultimate completion.

    It would obviously be more prudent to withhold a portion of Class Counsel's fee until the entire distribution process is complete. Furthermore, it would also be judicious to require Class Counsel (and perhaps Defense Counsel as well) to report back to this Honorable Court with a final summary and accounting of the disbursement process (even if brief) in order to confirm that this matter has been successfully concluded and to allow this Honorable Court to "put its final stamp of approval" on the case.

    Objector is aware that this is not the "usual" procedure in Class Action proceedings. Nonetheless, Objector submits the suggested process is an improvement to the present procedure which is the status quo in Class Action cases. Also nothing in the above proposed procedure violates the letter or spirit of the Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711–1715,(the "Act")  Rule 23 F.R.C.P.(the "Rule") nor the body of case law developed (all three collectively referred to herein as "Class Action Policy"). Objector hereby urges this Honorable Court to adopt such a procedure as a "best practice standard for Class Action settlements.

2.     No timeframe for completing administration of the monetary relief is set, so Class Members cannot know when payment would arrive. Moreover the Settlement Administrator is not held to any specific timeframe to complete the settlement process.

3.     No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing the settlement. Objector hereby contends that the withholding of a reasonable sum of awarded attorneys fees would elevate the concerns raised herein regarding Paragraphs Nos. 1 & 2 above.

4.     Attorney fees do not depend upon how much relief is actually paid to the Class Members. It appears that the proposed settlement will award Class Counsel its fee notwithstanding the amount of relief. This practice would be considered inequitable at best and excessive at worse in many other area of the law when awarding attorney fees.

5.     The fee calculation is unfair in that the percentage of the settlement amount

is far too high. After a review of the Docket there appears to be only 347 docket entries. In addition, very few entries were substantive in nature. In fact, only the Plaintiff's Complaint(s), Defendant's Answer and, Defendant's Motion to Dismiss, Plaintiff's Motion to Approve Settlement and Award Attorney's Fees had any significant legal basis to its content. The remaining docket entries were procedural in nature. Regarding the Docket entries, approximately 55 were in the form of a Notice (usually a 1 or 2 page document); 21 were in reference to letters filed with Court (usually a brief correspondence with some reference to a procedural "housekeeping" matter); 41 entries were in regard to a *pro hoc vice* request; 52 entries were documents generated by the Court in the form of an order, minute entry or a filing of a transcript and, finally 7 were merely Court or the Clerks procedural items.

6.  There was no Motion for Summary Judgment. There was no prolonged discovery dispute. There was no trial. This is hardly the record of a case justifying Class Counsel's requested Attorneys' Fees in the amount of $2,750,000.

7.  No fee request is reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, hours accumulated and reasonable cost incurred), which can be evaluated by Class Members and the Court to determine the reasonable nature (or not) of the request.

8.  Some *cy pres* procedure needs to be articulated so that Class Members and the Court can intelligently comment, object or approve the appropriateness of the *cy pres* procedure, recipient and amount of the *cy pres* distribution. The *cy pres* distribution and recipient should have a direct and substantial nexus to the interests of absent class members and thus properly provide for the 'next best distribution' to the class. Whatever method is used to arrive at determining an appropriate *cy pres* procedure and recipient can be a legitimate discussion between informed parties and therefore appropriate. Allowing the process to be determined solely by Lead Class Counsel and Court overview is neither appropriate nor consistent with Class Action Policy.

9.  Attorneys' fees are disproportionate to the value of the Recovery of the Class (See Paragraphs 3, 4. 5 and 6 above).

10. There are no estimates or caps on the amount of costs and expenses that Class Counsel intends to request to be paid or reimbursed from the Settlement Fund. Not only should the costs and expenses be estimated as closely as possible but that estimate should be itemized in as much detail as possible. Also, a ceiling needs to be articulated in order to promote efficiency in the claim process. Finally, a final accounting should submitted to the Court for final approval.

11. The Notice is inadequate in that no alleged violated statutes are referenced, no briefing schedule is included and that an Objector's only remedy is to write a letter/brief setting forth objections. At the very least, the Settlement should require the Defendants to admit or deny certain facts regardless of

whether they admit to any specific violation of the Telephone Consumer Protection Act. These admissions, although not sufficient for any type of adjudication, are appropriate as a substantial penalty to the Defendant. Furthermore, identifying, articulating and admitting to the specific actions, will act as a deterrent to this Defendant and others who might contemplate committing the specified acts in the future.

12.     The Objector hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## CONCLUSION

**WHEREFORE**, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;

2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3. Award an incentive fee to this Objector for his role in improving the Settlement, if applicable.

Respectfully submitted,

Patrick S. Sweeney, Pro Se
2590 Richardson Street
Madison, WI 53711
310-339-0548
patrickshanesweeney@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2016, I caused to be filed the foregoing with the Clerk of the Court of the United States District Court for Southern District of California by sending this document via U.S. First Class Mail so that this document would be postmarked within the timeframe described in the Legal Notice published in this case. In addition,

4

when the Clerk files this document in the docket for this case all parties in this case who use the CM/ECF filing system will be noticed.

Patrick S. Sweeney, Pro Se



2590 Richardson Street
Madison, WISC.
53711

APR 2 6 2016
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
RECEIVED

Clerk of the Court
Courtroom 3A
U.S. District Court
Southern District of Calif
221 West Broadway
San Diego, CA 92101



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

FEB 2 5 2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JASON DOUGLAS, individually and on )
Behalf of all others similarly situated, )
                                    )
                Plaintiff, )
                                    )
v.                                  )    Case No. 14-cv-1741
                                 )    Hon. Gary Feinerman
                                 )    Hon. Jeffrey Cole
                                 )
THE WESTERN UNION COMPANY, )
a Delaware corporation, )
                                   )
                Defendant. )
                                   )

## OBJECTIONS OF PATRICK S. SWEENEY AND PAMELA A. SWEENEY TO PROPOSED SETTLEMENT AND NOTICE OF INTENTION TO APPEAR AT FAIRNESS HEARING

NOW COMES, Pro Se Objectors PATRICK S. SWEENEY and PAMELA A.

SWEENEY, hereby files these objections to the proposed settlement in this matter.

# PROOF OF MEMBERSHIP IN CLASS

Upon information and belief Patrick S. Sweeney (herein referred to as "Patrick") and
Pamela A. Sweeney (herein referred to as "Pamela") (herein collectively referred to, in the
singular, as the "Objector") have reviewed the notice and believe that they are members of the
class as defined in that certain Notice of Class Action and Proposed Settlement dated December
14, 2015 (herein referred to as the "Notice"). These representations are made under the penalty
of perjury. Patrick intends to file a Claim in this matter on or before February 22, 2016 (Claim
deadline according to the Notice). Pamela has already filed her Claim. Her Claim Number is
**WG7NO3TK**. Pamela and Patrick's address, e-mail addresses and telephone numbers are listed
at the conclusion of this objection.

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that they do **NOT** intend to appear at the Fairness Hearing

presently scheduled for April 11, 2016 at 10:30 a.m. CST before Honorable Gary Feinerman at

the Everett McKinley Dirksen United States Courthouse, Courtroom 2125, 219 South Dearborn

Street, Chicago, Illinois 60604.

## REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor
adequate:

1.     Claims administration process fails to require reliable future oversight,
accountability and reporting about whether the claims process actually delivers
what was promised. The proposed settlement orders no counsel, not various
class counsel attorneys nor any defense attorney (notwithstanding the large
amount of attorney fees to be earned by the numerous law firms involved in this
case) to monitor the settlement process to its ultimate completion.

    It would obviously be more prudent to withhold a portion of Class Counsel's fee
until the entire distribution process is complete. Furthermore, it would also be
judicious to require Class Counsel (and perhaps Defense Counsel as well) to
report back to this Honorable Court with a final summary and accounting of the
disbursement process (even if brief) in order to confirm that this matter has been
successfully concluded and to allow this Honorable Court to "put its final stamp
of approval" on the case.

    Objector is aware that this is not the "usual" procedure in Class Action
proceedings. Nonetheless, Objector submits the suggested process is an
improvement to the present procedure which is the status quo in Class Action
cases. Also nothing in the above proposed procedure violates the letter or spirit
of the Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and
1711–1715,(the "Act") Rule 23 F.R.C.P.(the "Rule") nor the body of case law
that has developed in the class action arena (all three collectively referred herein
as "Class Action Policy") Objector hereby urges this Honorable Court to adopt
such a procedure as a "best practice standard " for Class Action settlements.

2.   No timeframe for completing administration of the monetary relief is set, so
     Class Members cannot know when payment would arrive. Moreover, the
     Settlement Administrator is not held to any specific timeframe to complete the
     settlement process.

3.   No amount of attorney fees is to be withheld to assure Class Counsel's
     continuing oversight and involvement in implementing the settlement. Objector
     hereby contends that the withholding of a reasonable sum of awarded attorneys
     fees would alleviate the concerns raised herein regarding Paragraphs Nos. 1 & 2
     above.

4.   Attorney fees do not depend upon how much relief is actually paid to the Class
     Members. It appears that the proposed settlement will award class counsel its
     fee notwithstanding the amount of relief actually achieved by the Class. This
     practice would be considered inequitable at best and excessive at worse in many
     other areas of the law when awarding attorney fees.

5.   The fee calculation is unfair in that the percentage of the settlement amount is
     far too high (it is stated in the Notice that it is 35%, which is high, but if the
     percent is arrived at by using monies actually awarded class members the
     percentage is even higher).

     The Objector hereby states that, of the 68 docket entries on PACER, very few
     entries were substantive in nature. In fact, only the Plaintiff's Complaint,
     Defendant's Answer, Plaintiff's Motion to Strike Answer, Plaintiff's Motion
     for Preliminarily Approval of Settlement and Final Motion to Approve the
     Settlement and Award Attorney's Fees had any significant legal substance in its
     content (although the Motion to Approve Attorney's Fees did appear to have
     significant legal substance ). The remaining entries were mostly procedural in
     nature. This is hardly the type of case justifying Plaintiff's Attorneys' Fees in
     the amount of $2,891,000, plus an undetermined amount of fees and expenses.

     It is also notable that the Settlement was reached in principal in approximately
     19 months following the commencement of this action. Furthermore, Class
     Counsel's Memorandum of Law in Support of the Motion for Attorney's Fees
     appears to be a catalogue of cases whereby other lawyers were successful in
     obtaining excessive fee awards and not a compelling recitation of why the fees
     and costs are appropriate in this specific case.

6.     The fee request is not reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, hours accumulated and reasonable costs incurred), which can be evaluated by Class Members and the Court to determine the reasonable nature (or not) of the fee request.

7.     Some *cy pres* procedure needs to be articulated so that Class Members and the Court can intelligently comment, object or approve the appropriateness of the *cy pres* procedure, recipient and amount of the *cy pres* distribution. The *cy pres* distribution and recipient should have a direct and substantial nexus to the interests of absent class members and thus properly provide for the 'next best distribution' to the Class. Whatever method is used to determine an appropriate *cy pres* procedure and recipient should be a legitimate discussion between informed parties. Allowing the process to be determined at a later date by an undefined process is not an appropriate method nor consistent with Class Action Policy. It also gives no due process for any Class Member who might object to the *cy pres* process and result.

8.     Attorneys' fees are disproportionate to the value of the Recovery of the Class (See Paragraphs 3, 4. 5 and 6 above).

9.     The Objector herein hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## CONCLUSION

**WHEREFORE**, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;

2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3. Award an incentive fee to this Objector for their role in improving the Settlement, if applicable.


Respectfully submitted by:


Pamela A. Sweeney, Pro Se
2590 Richardson Street
Madison, WI 53711
310-339-0548
pam.1sweeney@gmail.com


Patrick A. Sweeney, Pro Se
2590 Richardson Street
Madison, WI 53711
310-339-0548
patrick@sweeneylegalgroup.com


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 22, 2016, I caused to be filed the foregoing with the Clerk of the Court of the United States District Court for the Northern District of Illinois by sending this document via U.S. First Class Mail Delivery thus complying within the timeframe described in the Legal Notice published in this case.

I also provided a copy of these documents to the counsel for the Plaintiffs and the Defendants via e-mail on February 22, 2016. All addresses for the recipients are as described below.

PLAINTIFF'S COUNSEL
Joseph J. Siprut, Esquire
SIPRUT PC
17 North State Street190 LaSalle Street, Suite 1600
Chicago, IL 60602

DEFENDANT'S COUNSEL
Mark Master, Esquire
Kathleen P. Lilly, Esquire
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611


U.S. DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
Clerk of Court's Office
EVERETT MCKINLEY DIRKSEN
UNITED STATES COURTHOUSE
219 South Dearborn Street
Chicago, IL 60604

SETTLEMENT ADMINISTRATOR
Western Union Text Message Settlement
C/O Epiq Systems, Inc.
PO Box 3145
Portland, OR 97208-3145


Patrick S. Sweeney, Pro Se
2590 Richardson Street
Madison, WI 53711
310-339-0548
patrick@sweeneylegalgroup.com



FILED
CLERK, U.S. DISTRICT COURT

MAY 3 1 2016

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

STEVE CHAMBERS, et al., on behalf
of themselves and all others similarly
situated,

    Plaintiffs,

v.

WHIRLPOOL CORPORATION, et al.,

)
)
)
)
)
)
)
)
)
)
)

Case No. 8:11-cv-01733-FMO

Honorable Fernando M. Olguin

---

## OBJECTIONS OF PATRICK SWEENEY TO PROPOSED SETTLEMENT

---

NOW COMES, Pro Se Objector PATRICK S. SWEENEY and hereby files these objections to the proposed settlement in this matter.

## PROOF OF MEMBERSHIP IN CLASS

Under penalty of perjury, Patrick S. Sweeney (herein referred to as "Objector" or "Patrick") has reviewed the notice and believes that he is a member of the class as defined in that certain Notice of Class Action which is not dated (herein referred to as the "Notice"). Patrick intends to file a Claim in this matter on or before June 27, 2016 which is the deadline to file a Claim in this matter.

The Objector has purchased one Class Dishwashers -a Kitchen Aid KUDI01 - FK31 (Serial Range Start) FS30 (Serial Range End) which was manufactured in 2000-2005. Objector also purchase a non-class dishwasher which experienced an Overheating Event. Both dishwashers were installed in the kitchen of 5763 Golden

Terrace Madison, WI 53711. It is the Objector's understanding that these transactions qualify him to be a member of the Class. Objector has requested documentation and serial numbers from his initial home construction contractor and the repair person who has installed the replacement Class Dishwasher I no longer live at that address). Patrick's address, e-mail addresses and telephone numbers are listed at the conclusion of this objection.

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does **NOT** intend to appear at the Fairness Hearing presently scheduled for August 25, 2016 at 10:00 a.m. PDT at the United States District Courthouse, California Central District, Courtroom 22, 313 North Spring Street, Las Angeles, CA 90012-4701.

## REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor adequate:

1.  Claims administration process fails to require reliable future oversight, accountability and reporting about whether the claims process actually delivers what was promised. The proposed settlement orders no counsel, not various class counsel attorneys nor any defense attorney (notwithstanding the large amount of attorney fees to be earned by the numerous law firms involved in this case) to monitor the settlement process to its ultimate completion.

    It would obviously be more prudent to withhold a portion of Class Counsel's fee until the entire distribution process is complete.

Furthermore, it would also be judicious to require Class Counsel (and perhaps Defense Counsel as well) to report back to this Honorable Court with a final summary and accounting of the disbursement process (even if brief) in order to confirm that this matter has been successfully concluded and to allow this Honorable Court to "put its final stamp of approval" on the case.

Objector is aware that this is not the "usual" procedure in Class Action proceedings. Nonetheless, Objector submits the suggested process is an improvement to the present procedure which is the status quo in Class Action cases. Also nothing in the above proposed procedure violates the letter or spirit of the Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711–1715,(the "Act") Rule 23 F.R.C.P.(the "Rule") nor the body of case law that has developed in the class action arena (all three collectively referred herein as "Class Action Policy") Objector hereby urges this Honorable Court to adopt such a procedure as a "best practice standard " for Class Action settlements.

2.   No timeframe for completing administration of the monetary relief is set, so Class Members cannot know when payment would arrive. Moreover, the Settlement Administrator is not held to any specific timeframe to complete the settlement process.

3.   No amount of Attorney's Fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing the settlement. Objector hereby contends that the withholding of a reasonable sum of awarded Attorney's Fees would alleviate the concerns raised herein regarding Paragraphs Nos. 1 & 2 above.

4.   Attorney fees do not depend upon how much relief is actually paid to the Class Members. It appears that the proposed settlement will award Class Counsel its fees notwithstanding the amount of relief

actually achieved by the Class. In fact the Notice is void of any total cost of the settlement to the Defendant. The Notice actually describes, for the most part an old fashion run of the mill coupon settlement ("Coupon Settlement"). Accordingly, it is impossible to determine the appropriateness of the $19 million dollar fee request by Class Counsel.

5.   It is impossible to determine whether the requested Attorney's Fees calculation is fair in that the percentage of the settlement amount is not stated. Not only is this inappropriate but the Notice is rendered void as being deficient regarding a material aspect of the settlement.

6.   The Objector hereby further states that because the Notice is void of the total settlement amount and detailed billing records, the Objector is left to determine the appropriateness of the fee request by reviewing the PACER Docket Entries and the brief "Expense, Hours and Lodestar" charts attached to Class Counsel Motion for Attorney's Fees. Neither of these is helpful to determine the fairness and reasonableness of the fee request. Therefore, in that the Notice is void and the tools to determine fairness of the fees do not exist this settlement should not be approved. The Court should order the parties to renegotiate a new settlement that is totally transparent and so the Class Member can determine if it fair and reasonable

In regard to the Docket Entries on PACER, there appears to be only 225 Docket entries. Further, it appears very few entries were substantive in nature. The remaining entries were mostly procedural in nature. In any event, the requested attorney's fee amount and the number of Docket Entries computes to an unfathomable $84,444.44 per Docket Entry. This resembles nothing like a Pacer Docket should look in a case where there are a potential of an award of $19,000,000.00 in Attorney's fees.

7.   The fee request is not reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, hours accumulated and reasonable costs incurred), which can be evaluated by Class Members and the Court to

determine the reasonable nature (or not) of the fee request. It is also arguably not reasonable as the amount of the coupon settlement has not as of yet be determined. Any request for attorney's fee ought to be withheld until the benefit to the Class can be determined with some certainty.

8. The payment to the named class plaintiff (Steve Chambers) for two websites is wholly inappropriate. Not only is it a conflict of interest but it also makes the Objector assume there "is something rotten in Denmark". The purchase of the websites by the Defendant has no place in this lawsuit settlement. As a result that provision of the settlement must be stricken.

9. Some *cy pres* procedure needs to be articulated so that Class Members and the Court can intelligently comment, object or approve the appropriateness of the *cy pres* procedure, recipient and amount of the *cy pres* distribution. The *cy pres* distribution and recipient should have a direct and substantial nexus to the interests of absent class members and thus properly provide for the 'next best distribution' to the Class. Whatever method is used to determine an appropriate *cy pres* procedure and recipient should be a legitimate discussion between informed parties. Allowing the process to be determined at a later date by an undefined process is not an appropriate method nor consistent with Class Action Policy. It also gives no due process for any Class Member who might object to the *cy pres* process and result.

10. Attorneys' fees may well be disproportionate to the value of the Recovery of the Class (See Paragraphs 3, 4. 5 and 6 above).

11. The Objector herein hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## CONCLUSION

**WHEREFORE**, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;
2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.
3. Award an incentive fee to this Objector for their role in improving the Settlement, if applicable.

Respectfully submitted by:

Patrick S. Sweeney, Pro Se
2590 Richardson Street
Madison, WI 53711
310-339-0548
patrick@sweeneylegalgroup.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 27, 2016, I caused to be filed the foregoing with the Clerk of the Court of the United States District Court for the Central District of California by sending this document via U.S. First Class Mail Delivery at the addresses provided in the Notice.

Patrick S. Sweeney, Pro Se

Susank 9
2590 Richardson St
Madison, WI 53711

FMO

RECEIVED
CLERK, U.S. DISTRICT COURT

MAY 3 1 2016

CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

9001284359 C004

CLERK OF COURTS
UNITED STATES COURTHOUSE
312 NORTH SPRING STREET
LOS ANGELES, CA 90012-4701



STANLEY LAW GROUP
MATTHEW J. ZEVIN, SBN: 170736
10021 Willow Creek Road, Suite 200
San Diego, CA  92131
Telephone:    (619) 235-5306
Facsimile:    (815) 377-8419
e-mail:        mzevin@aol.com

THE EMGE FIRM, LLP
DEREK J. EMGE, SBN: 161105
501 W. Broadway, Suite 1760
San Diego, CA  92101
Telephone:    (619) 595-1400
Facsimile:    (619) 595-1480
e-mail:        derek@emgelawfirm.com

Attorneys for Plaintiff Cynthia E. Spann
and Class Counsel

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA E. SPANN, on Behalf of Herself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> J.C. PENNEY CORPORATION, INC., a Delaware Corporation; and DOES 1 through 10, Inclusive, <br><br> Defendant. | Case No. SACV12 0215 FMO (KESx) <br><br> **CLASS ACTION** <br><br> **NOTICE OF RECEIPT OF OBJECTION** <br><br> JUDGE:     Honorable Fernando M. Olguin <br> CTRM:     22 – 5th Floor <br> Date:       August 25, 2016 <br> Time:       10:00 a.m. |

1    TO THE COURT, THE PARTIES AND THEIR COUNSEL, please take

2    notice that the Claims Administrator received an objection to the parties' Settlement

3    in this matter from Patrick S. Sweeney, postmarked June 30, 2016, a true and

4    correct copy of which is attached hereto as Exhibit "A."

5

6    DATED:  July 22, 2016                          The Emge Firm, LLP

7

8                                            By:    /s/ Derek J. Emge
                                                    Derek J. Emge
9                                                   501 W. Broadway, Suite 1760
10                                                  San Diego, CA 92101

11                                                  Attorneys for Plaintiff Cynthia
12                                                  E. Spann and Class Counsel

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



EXHIBIT A



30853                    010632

# THE UNITED STATES DISTRICT
# CENTRAL DISTRICT OF CALII

CYNTHIA E. SPANN, on Behalf
of Herself and All Others
Similarly Situated,

               Plaintiff,

v.

J.C. PENNEY CORPORATION, INC.,
a Delaware Corporation; and DOES
1 through 10, Inclusive,

               Defendants.

---

## OBJECTIONS OF PATRICK S. SWEENEY, PRO SE TO THE PROPOSED SETTLEMENT AND NOTICE OF INTENT NOT TO APPEAR AT FAIRNESS HEARING

---

## I.   PROOF OF MEMBERSHIP IN CLASS

Patrick S. Sweeney, Pro Se ("Objector") has reviewed the Notice of Class

Action Settlement ("Notice") in this matter and believes he is a member of the

class as defined in that Notice. He has filed a timely claims. His address and

telephone number are listed at the conclusion of this objection.

## II.   NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does not intend to appear at the

Fairness Hearing presently scheduled for August 25, 2016 at 10:00 p.m. PDT, at

United States Courthouse, Courtroom 22, 5th Floor 312 Spring Street, Los Angeles,

California.

## III.        INTRODUCTION

### A. Summary of the Action and the Settlement

Plaintiffs allege claims that JCPenney used false "regular" and "original" prices for its private and exclusive branded products. Plaintiffs further alleges that JCPenney engaged in a scheme of false price comparison advertising prior to February 2012 and then again starting in 2013 through 2014. Plaintiff claims that JCPenney's conduct violated various California laws that prohibit false advertising and unfair competition. JCPenney denies: (1) that it used false price comparison advertising, (2) that it has done anything wrong, and (3) that the Plaintiff or class has been harmed in any way. The Settlement consolidates several actions and precedes certification. Class Members will be compensated for a percentage of the amount they were charged for the insurance policies, either in cash if they paid the premiums, or as a credit if the amounts are still owed.  Class Counsel ask for fees and costs of $19 million.

### B. The Standard for Approving a Proposed Class Action Settlement

The district court has a duty to ensure the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e) (2) Appellate courts accord considerable deference to the district court's "knowledge of the litigants and of the strengths and weaknesses of their contentions". . . . and recognize that the district court "is in the best position to evaluate whether the settlement constitutes a reasonable compromise." *Grant v. Bethlehem Steel Corp.v. Bethlehem Steel Corporation*, 823 F.2d 20, 23 (2d Cir. 1987). "Because class actions are rife with potential conflicts of interest between class counsel and Class Members, district judges presiding over such actions are expected to give

careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfashi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004).

"Careful scrutiny by the court is 'necessary to guard against settlements that may benefit the class representatives or their attorneys at the expense of the absent class members.'" *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983) (quoting *U.S. v. City of Miami*, 614 F.2d 1322, 1331 (5th Cir. 1980), modified on other grounds, 664 F.2d 435 (5th Cir. 1981) (*en banc*)). "[T]he district judge has a heavy duty to ensure that any settlement is 'fair, reasonable, and adequate' and that the fee awarded plaintiffs' counsel entirely appropriate." *Piambino v. Bailey*, 757 F.2d 1112, 1139 (11th Cir. 1985). This duty is "akin to the high duty of care that the law requires of fiduciaries." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1320 (S.D. Fla. 2007) (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006))

Claiming a settlement is at "arm's length" without express collusion is not sufficient. Due to the defendants' indifference as to the allocation of funds between the class, the named representatives, and class counsel, it is enough that the settlement evinces "subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013). *Accord.*, *Piambino*, 757 F.2d at 1143 (noting defendants are "uninterested in what portion of the total payment will go to the class and what percentage will go to the class attorney.") (quoting *Foster v. Boise-Cascade, Inc.*, 420 F. Supp. 674, 686 (S.D. Tex. 1976), aff'd 577

F.2d 335 (5th Cir. 1978)).

"In reviewing a proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable." Am. Law Institute, Principles of the Law of Aggregate Litig. § 3.05(c) (2010) ("ALI Principles"). "The burden of proving the fairness of the settlement is on the proponents." *Pampers*, 724 F.3d at 718 (compiling cases and authorities); *see also Holmes*, 706 F.2d at 1147.

A higher level of scrutiny is necessary when a settlement is proposed before class certification. *See In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 786-807 (3d Cir. 1995) ("GM Trucks"). The Court should be mindful that "the class settlement process is 'more susceptible than adversarial adjudications to certain types of abuse.'" *Holmes*, 706 F.2d at 1147 (quoting *Pettway v. Am. Cast Iron Pipe Co.,* 576 F.2d 1157, 1169 (5th Cir. 1978)).

The six-factor test in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984), while often considered a guide to evaluation of class action settlements, is not exhaustive and does not provide an exclusive list of reasons to reject a settlement. *See Leverso v. Southtrust Bank,* 18 F.3d 1527, 1530-31 (11th Cir. 1994) (concluding the district court abused its discretion despite "thoroughly address[ing]" all six factors and concluding that each weighed in favor of approval). This Circuit requires that district courts "always consider the possibility that that an agreement reached by the class attorney is not in the best interest of the class," and beware of settlements that enrich class counsel more than the class. *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1215-16 (5th Cir. 1978). See also *Piambino*, 757 F.2d at 1140

Courts may refuse to approve a settlement if insufficient notice is provided to Class Members to protect their due process rights. Fed. R. Civ. Proc. 23(e) (1) specifies that "direct notice" of a proposed settlement must be provided "in a reasonable manner to all Class Members who would be bound by the proposal."

## IV.    ARGUMENT AND OBJECTIONS

### a. The Attorney's Fees Are Excessive.

The $13.5 million in fees is excessive. This fee amount would amount to 27% of the monetary recovery. This statement is misleading. Despite Class Counsel's claims that the settlement offers $50 million benefits to the class (including the value of the injunctive relief and in store credits), at this point, we have no information enabling us to determine the monetary benefit the class will receive for the in store credits Whatever it is it is certainly not a 100% on the dollar. $13.5 million will not be 27% of the Class Recovery.

By way of example; Assume the Class Counsel is awarded their requested $13.5 million in fees and litigation costs are 1,000,000, Add to that the cost of administrating the settlement which is $2,667,000 and Class member awards are $25,000. Further assume $10 million dollars is given in store credits and only $7 million of that is reclaimed. Then the $13.5 million dollar fee is actually 45.2% of the actual monies (including the discount for going to the Class Members. That percent is almost obscene.

Moreover, the fee application must be delayed until the court reviews all actual claims data. Once all information is known the Court can make a more informed decision.

It is unfair to base fees on a theoretical fund, class counsel cite the Approval Order in the *Saccoccio* case, *supra* (noting "The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class."), and *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 676 (1980). Some courts awarding fees on a percentage-of- recovery basis have based the award on an entire fund, not just the fund claimed by the class. E.g., *Boeing v. Van Gemert*, 444 U.S. 572 (1980) and *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999), cert. denied 530 U.S. 1223 (2000).

The rule enunciated in *Boeing* and in this Circuit's holding in *Waters* needs to be evaluated in light of recent changes to the Federal Rules of Civil Procedure and the enactment of the Class Action Fairness Act in 2005 (28 U.S.C. §1711 et seq.). In 2003 Congress amended Rule 23 with the creation of Rule 23(h). The new rules reflect a common-sense approach: attorneys' fees should be tied directly to what clients receive not potential benefits. prompted legislative rejection of compensating lawyers on the face value of the settlement, regardless of the take-up rate of the benefits by class members").

Even before Rule 23(h), *Boeing* and *Waters* did not apply where "no money was paid into escrow or any other account" and each member of the class has no claim to a set piece of the "lump-sum judgment." *Strong v. BellSouth Telcoms.*, 137 F.3d 844, 852 (5th Cir. 1998); *Waters*, 190 F.3d at 1296 ("[U]nlike the case at bar, Strong never established a "common fund" from which money would be drawn. The parties here established that $ 40 million was the fund upon which the individual claimants' awards would be

based.") As there is no real common fund established, even before Rule 23(h)
*Boeing* and *Waters* would not have supported the approach adopted here.

Long before the adoption of Rule 23(h), courts deferred or staggered
fees to account for success or failure of the claims process. E.g., *Duhaime v.
John Hancock Mut. Life Ins.Co.*, 989 F. Supp. 375, 380 (D. Mass. 1997);
*Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261,1283-84 (S.D. Ohio 1996), *aff'd
Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996).

Speculative, maximized estimates are not the appropriate measure of
benefit. *Baby Prods.*, 708 F.3d at 179 n.13 ("[T]he actual benefit provided to the
class is an important consideration when determining attorneys' fees.");; Federal
Judicial Center, Manual for Complex Litigation § 21.71 (4th ed. 2004) ("In cases
involving a claims procedure…, the court should not base the attorney fee award
on the amount of money set aside to satisfy potential claims. Rather the fee
should be based only on the benefits actually delivered.");; see also *Pampers*,
724 F.3d at 721 (rejecting settlement-value "assumptions…premised upon a
fictive world").

Where claims rates are especially low, courts have often adjusted fees
downwards. See, e.g., *Pearson v. Nbty, Inc.*, No. 11-cv-7972, 2014 U.S. Dist.
LEXIS 357, at *21-*27 (N.D. Ill. Jan. 3, 2014) (reducing 25% benchmark to
9.6% based on low claims rates); *Michel v. Wm Healthcare Solutions*, 2014 U.S.
Dist. LEXIS 15606 (S.D. Ohio Feb. 7, 2014) (reducing from 33.3% request to
15% where claims rate was only 3.9%); *Tarlecki v. Bebe Stores, Inc.*, No. C 05-
1777 MHP, 2009 U.S. Dist. LEXIS 102531, at *12 (N.D. Cal. Nov. 3, 2009)
(reducing fee request to less than 13%).

A fee award must be attuned to the result achieved for the class, to the

money the settlement puts in class members' hands. See, e.g., *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 179 (3d Cir. 2013); *cf.* 28 U.S.C. §1712(a). The Advisory Committee Notes explicitly state that:

> "In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility.
>
> Courts discharging this responsibility have looked to a variety of factors. **One fundamental focus is the result actually achieved for class members, a basic consideration** in any case in which fees are sought on the basis of a benefit achieved for class members."

Notes of Advisory Committee on 2003 Amendments to Rule 23(h). The notes advise courts to exercise caution in awarding fees, even to the extent of deferring the award of fees until class recovery can be determined:

> In many instances, the court may need to proceed with care in assessing the value conferred on class members. Settlement regimes that provide for future payments, for example, may not result in significant actual payments to class members. In this connection, the court may need to scrutinize the manner and operation of any applicable claims procedure. In some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known.

*Id.*; *accord Baby Prods.*, 708 F.3d at 179.

The continuing validity of *Boeing* and *Waters* is questionable. See, e.g., Samuel Isaacharoff, The Governance Problem in Aggregate Litigation, 81 FORDHAM L. REV. 3165, 3171-72 (2013) (describing *Boeing* as marking an "older line of cases" that eventually a more reasonable fee results from calculating a percentage of the actual recovery." *Wise v. Popoff*, 835 F. Supp. 977, 982 (E.D. Mich. 1993); *Waters*, 190 F.3d at 1296 (reciting the holding of *Strong v. BellSouth Telecomms.*, Inc., 137 F.3d 844 (5th Cir. 1998)).

The recent *Eubank v. Pella* is prescient. In that case, class counsel

claimed the value of the settlement to the class was $90 million, but when

claims were accounted for the settlement value was more between $1.5 and

$8.5 million. The trial court had accepted class counsel's representations about

the aggregate value of the settlement, and awarded attorney's fees well in

excess of the recovery achieved by the class.  Justice Posner remarked:

> "Not only did the settlement agreement not quantify the benefits to
> the class members, but the judge approved it before the deadline for
> filing claims. He made no attempt to estimate how many claims
> were likely to be filed, though without such an estimate no
> responsible prediction of the value of the settlement to the members
> of the class could be made."

Eubank, at *6.

The court should be concerned as to the fairness of the fees requested

where Counsel have not submitted lodestar information for the court's review.

This Circuit may follow a percentage of the fund method in common fund

cases, but where there is no "fund" the court should require substantiation of

the attorney's work. The court should not just rubber stamp an award of $13.5

million in attorneys' fees based on Class Counsel's representations this

represents only a small percentage of the benefits obtained for the class. Those

benefits have yet to be determined.

The settlement under review in *Eubank v. Pella Corp.*, compensated class

counsel and class representatives but left the compensation of the class unclear.

In *Eubank*, Justice Posner highlighted the important role that objectors play in

appealing inequitable settlements:

> "In this case, despite the presence of objectors, the district court
> approved a class action settlement that is inequitable—even
> scandalous. The case underscores the importance both of objectors
> (for they are the appellants in this case—without them there would
> have been no appellate challenge to the settlement) and of intense

judicial scrutiny of proposed class action settlements."

*Eubank*, at \*3.

In *Eubank*, Justice Posner concluded: "Class counsel sold out the class."
The Court should keep the inherent conflict between the interests of class
counsel and class members in mind in evaluating the Settlement. In
*Eubank* Justice Posner concluded: "Class counsel sold out the class."
*Eubank*, at 8.

Accordingly the Court should keep the inherent conflict between the
interests of class counsel and class members in mind in evaluating the Settlement.

## V.    JOINDER IN OTHER OBJECTIONS

Objector joins in and adopts other objections as though fully set forth

here, and all other well-founded and meritorious objections

## VI.    CONCLUSIONS

For the foregoing reasons and all others to be presented at oral

argument, these objectors request that the court sustain their objections and

grant the following relief:

- Upon proper hearing, sustain these Objections.
- Upon proper hearing, enter such Orders as are necessary and just to
  alleviate the inherent unfairness, inadequacies and
  unreasonableness of the Settlement

- Award any other relief to the Objector that the Court finds
  equitable.

Respecfully submitted
Dated: June 29 2016

Patrick Sweeney, Pro Se
2590 Richardson Street
Madison, Wisconsin
Phone 310-339-0548
patrickshanesweeney@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2016, I caused to be filed, per the instructions in the Notice published in this matter, the foregoing with the Settlement Administrator via U.S. First Class Mail. It is anticipated that it will then be forwarded to the Clerk of the Court of the United States District Court for Central District of California. Thus, when the Clerk files this document in the docket for this case all parties in this case who use the CM/ECF filing system will be noticed.

**Settlement Administrator**
JCPenney Settlement - Objections
c/o Heffler Claims Group
P.O. Box 0509
Philadelphia, PA 19105-0509

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

**RECEIVED**

JUL 1 4 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
YAHOO MAIL LITIGATION                    Case No. 13-CV-04980-LHK NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

---

### OBJECTION OF PATRICK S. SWEENEY TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

NOW COMES, Pro Se Objector PATRICK S. SWEENEY, ("Objector")

hereby files these objections to the proposed settlement in this matter (the "Objections").

### PROOF OF MEMBERSHIP IN CLASS

Upon a full review of that certain notice of class action which is not dated ("Notice")

Objector hereby asserts that he is a member of the class as defined in the Notice. He intends

to file a claim in this matter if and when one might be required.  It is the Objector's intent

that his representation that he is a class member in this matter ("Class Member") be asserted

as evidence of his membership in the class. His address and telephone number are listed at

the conclusion of this objection.

### NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does not intend to appear at the Fairness Hearing

presently scheduled for 1:30 p.m. on August 25, 2016 before the Honorable Lucy H. Koh,

United States District Court Judge, in Courtroom 4, in the Robert F. Peckham Federal

Building, 280 South First Street, San Jose, California.

## REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable and adequate.

1. Claims administration process fails to require reliable oversight, accountability, and reporting about whether the claims process actually delivers what was promised.


2. The fee calculation is unfair in that the percentage of the settlement amount is far too high. The Class Members may receive NO MONIES while the attorney's fees are at $4,000,000.00.

   This case has been litigated for only two years. After a review of the Pacer Docket there appears to be only 193 docket entries. In addition, very few entries were substantive in nature. In fact, only the Plaintiff's Complaint(s), Defendant's Motion to Dismiss (no Answer was even filed) and Plaintiff's Motion to Approve Settlement, Motion for Class Certification and Award Attorney's Fees had any significant legal basis to its content. The remaining docket entries were procedural in nature. The Objectors review indicates that there were only 101 entries generated by Counsel and many of those were generated by Defense Counsel. There was no prolonged discovery disputes. There was no trial. Yet the 193 docket entries equates to an astonishing $20,833.00 per docket entry. This is hardly the record of a case justifying Class Counsel's requested Attorneys' Fees in the amount of $4,000,000.

   The fee calculation is unfair in that the percentage of the settlement amount i.e. 100%- is far too high. In addition, no fee request is reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, hours accumulated and reasonable cost incurred), which can be evaluated by Class Members and the Court to determine the reasonable nature (or not) of the request. No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing settlement.

2

It is also notable that the Settlement was reached in principal in two years following the commencement of this action.


"There has been a great deal of criticism of class action litigation ... criticism focuses on the fees that lawyers receive for representing a class in such litigation... [When] a class action [is] filed as an action for compensatory damages [and] the settlement provides the class is to receive no compensatory award. Further, the attorney fee (which is purportedly based on a common fund theory) is for several million dollars and is based on purported "nontangible" benefits the class will purportedly receive. For example, in a case involving a vehicle subject to rollovers, class counsel negotiates a settlement whereby the class receives only an inspection of the vehicle to determine if it has been modified since the date of manufacturer, a warning sticker for the visor saying "watch out," and a toll free number they can call for a free tow if their vehicle rolls over. At the end of the proposed settlement, the class is still left with a dangerous, unmodified vehicle and provided no compensation for the defect. Yet, the class counsel contends the settlement is fair and worth millions in fees." In a settlement class, the amount of attorney fees to be requested appears facially excessive, the fees were negotiated with the defendant, and the defendant had agreed not to object to the fee request as part of the settlement. This type of arrangement is known as a "clear sailing" agreement. The majority view on such clear sailing agreements is that they create an appearance of class counsel putting his interest ahead of the class. On the other hand, a clear sailing agreement might not be improper if the fee is reasonable, the fact the defendant will not be objecting is disclosed, the class is given an opportunity to object to the fee, and the court provides oversight on ultimate approval of the amount awarded.

As previously stated, the presence of one or more of the above situations does not invariably lead to the conclusion that a settlement is unfair or that the class has been poorly represented. However, if several of these elements are present in the same case, additional scrutiny may be necessary if the interests of the class are to be protected See the Internet Legal Resource Guide.

3

3.  The objector herein hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## II.

## CONCLUSION

WHEREFORE, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1.  Sustain these Objections;

2.  Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3.  Award an incentive fee to this Objector for her role in improving the Settlement, if applicable.

Dated:   June 30, 2016.

By: _____

Patrick S. Sweeney, Pro Se

4

## CERTIFICATE OF SERVICE

I hereby certify that on July 1,2016 I filed the foregoing with the LHK Courtroom Deputy, United States District Court for the Northern District of California, Robert F. Peckham Federal Bldg, 280 S 1st Street, San Jose, CA 95113 Re: In re: Yahoo Mail Litigation, 5:13-CVvia U.S. First Class Mail.

By: _____
Patrick S. Sweeney



PATRICK S. SWEENEY, PRO SE
6666 Odana Road
Suite 116
Madison, WI 53719
Telephone: (310)-339-0548
Facsimile: (561)-395-9093
E-Mail: patrickshanesweeney@gmail.com

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA


JONATHAN RETTA, KIRSTEN
SCHOFIELD, and JESSICA
MANIRE on Behalf of
Themselves and all Others Similarly
Situated,

     Plaintiffs,                     Case No. 2:15-cv-01801-PSG-AJW

v.

MILLENNIUM PRODUCTS, INC.,
and WHOLE FOODS MARKET, INC.,

     Defendants.

_____

### OBJECTIONS OF PATRICK SWEENEY TO PROPOSED SETTLEMENT

_____

       NOW COMES, Pro Se Objector PATRICK S. SWEENEY on behalf of

himself and hereby files these objections to the proposed settlement in this

matter.

## PROOF OF MEMBERSHIP IN CLASS

Patrick S. Sweeney, Pro Se, (herein referred to as "Objector" or
"Patrick") has reviewed that certain notice of settlement of class action
lawsuit which is described as "given pursuant to an Order of the Court
dated February 1, 2017" (herein referred to as the "Notice"). As a result he
believes that he is a members of the class as defined in the Notice.  Patrick
has filed a timely Claim in this matter. Specifically, Patrick states under
oath that he purchased Classic Kombucha Original during the Class Period.
Patrick's address, e-mail addresses and telephone numbers are listed at the
conclusion of this objection.

## NOTICE OF INTENT NOT TO APPEAR

Objector hereby gives notice that he does **NOT** intend to appear at the
Fairness Hearing presently scheduled for July 31, 2017 at 1:30 p.m. in
Courtroom 6A, 6th Floor of the U.S. Courthouse, 350 West 1st Street, Los
Angeles, CA 90012. He, however, does and will, make himself available
via telephone in the event the Court or Counsel has any questions or
comments regarding this objection. Patrick can be reached Monday-
Saturday 8:30 a.m.- 6 p.m. CDT @ 310-339-0548. In addition Objector
will keep his phone line open during the time of the Fairness Hearing.

## REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor adequate:

1.  Claims administration process fails to require reliable future oversight, accountability and reporting about whether the claims process actually delivers what was promised. The proposed settlement orders no counsel, not various class counsel attorneys nor any defense attorney (notwithstanding the large amount of attorney fees to be earned by the numerous law firms involved in this case) to monitor the settlement process to its ultimate completion.

2.  No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing the settlement. Objector hereby contends that the withholding of a reasonable sum of awarded attorney's fees would alleviate the concerns raised herein regarding Paragraphs No. 1 above.

3.  Attorney fees do not depend upon how much relief is actually paid to the Class Members. It appears that the proposed settlement will award class counsel its fee notwithstanding the amount of relief actually achieved by the Class. This practice would be considered inequitable at best and excessive at worse in many other areas of the law when awarding attorney fees.

4.  The fee calculation is unfair in that the percentage of the settlement amount is far too high (it is stated in the Notice that it is 25%, of the total settlement amount which is high, but if that percent is arrived at by using monies actually awarded class members the percentage is even higher). By way of example: if cost of administration were $500,000.00; incentive awards $15,000 and attorney fees and litigation expenses were $114,000.00 the net monies available for distribution to the Class would be $5,558,500.00. The attorney fees would then be 37.1% of the monies actually available to be awarded to the Class.

5.    The Objectors hereby also state that, of the all the 102 Docket Entries
on PACER, very few entries were substantive in nature. On the
contrary, most of the Docket Entries are procedural in nature. Also
many of the docket entries were not submitted by the Plaintiff but
rather by the Defendant, the court and other third parties. In this case
there was only a complaint, (and amendments hereto) an Answer and
a "feeble" Motion to Dismiss. There was no:

(i)     motion practice;
(ii)    Motion for Summary Judgment
(iii)   Extensive discovery
(iv)   No deposition
(v)    No discover disputes
(vi)   No pre-trial or trial practice

Actually there are only 43 Docket Entries that the Objectors can
attribute solely to the Plaintiffs. Under this analysis the cost per
Docket Entries computes to an unfathomable amount of $47,965.00
per Docket Entry.

]

6.    The fee request is further complicated by the Pedro attorneys asking for
approximately $200,000.00 in additional fees. It is unclear to this
Objectoras to whoms "pot" that amount will be paid.

7.    The Objectors hereby adopts and joins in all other objections which
are based on sufficient precedent and theories of equity and law in
this case and hereby incorporates said objections by reference as if
they were fully described herein.

## CONCLUSION

**WHEREFORE**, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;

2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3. Award an incentive fee to this Objector for their role in improving the Settlement, if applicable.

Respectfully submitted by:

Patrick S. Sweeney, Pro Se
6666 Odana Road
Suite 116
Madison, WI  53719
310-339-0548
patrickshanesweeney@gmail.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 29, 2017, I caused to be filed the foregoing with the Clerk of the Court of the United States District Court for the Central District of California and to counsel by sending this document via U.S. First Class Mail Delivery to the addresses provided in the Notice. Also, Objector states that when the Clerk receives the objection and scans it into the CM/ECF system, thereby notifying all parties who are registered with CM/ECF system.

Patrick S. Sweeney, Pro Se

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST) | |
| LITIGATION ) | Master File No.    12-md-02311 |
| ) | Hon.  Marianne O. Battani |
| In Re: All Auto Parts Cases ) | 2:12-MD-02311-MOB-MKM |
| THIS DOCUMENT RELATES TO: ) | |
| ALL END PAYOR AUTO PARTS CASES ) | |

## OBJECTIONS OF PATRICK SWEENEY TO PROPOSED SETTLEMENT

NOW COMES, Pro Se Objector PATRICK S. SWEENEY and hereby files these objections to the proposed settlement in this matter.

## <u>PROOF OF MEMBERSHIP IN CLASS</u>

Under penalty of perjury Patrick S. Sweeney (herein referred to as "Objector" or "Patrick") have reviewed the notice and believe that he is a member of the class as defined in that certain Update Notice of Class Action and Proposed Settlement which is not dated (herein referred to as the "Notice"). Patrick intends to file a Claim in this matter on or before the deadline which is yet to be announced (Claim Deadline will be forthcoming according to the Notice). Patrick has, however registered with the Claims Administrator and has received information which appears to bear a code number which is **YAA00003155829.** Patrick purchased or leased the following Vehicles:

1. 2006 Land Rover LR 3 from Fields Automotive in 2005 in Madison, Wisconsin.

2. 2004 Chevy Tahoe from Ballweg Chevrolet in 2004 in Middleton , Wisconsin.

3. 2006 Chevy Suburban in 2006 from Ballweg Chevrolet in 2006 in Middleton, Wisconsin.

It is the Objector's understanding that these transaction qualify him to be a member of the Class as to all the automotive parts listed in the Notice. Objector has requested documentation from the dealerships but as of today he has not received them. Patrick's address, e-mail addresses and telephone numbers are listed at the conclusion of this objection.

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does **NOT** intend to appear at the Fairness Hearing presently scheduled for May 4, 2016 at 2:00 p.m. CDT before Honorable Marianne O. Battani at the United States Courthouse, Courtroom 272, 231 West Lafayette Blvd., Detroit, MI 48226.

## REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor adequate:

1. Claims administration process fails to require reliable future oversight, accountability and reporting about whether the claims process actually delivers what was promised. The proposed settlement orders no counsel, not various class counsel attorneys nor any defense attorney (notwithstanding the large amount of attorney fees to be earned by the numerous law firms involved in this case) to monitor the settlement process to its ultimate completion.

It would obviously be more prudent to withhold a portion of Class Counsel's fee until the entire distribution process is complete. Furthermore, it would also be judicious to require Class Counsel (and perhaps Defense Counsel as well) to report back to this Honorable Court with a final summary and accounting of the disbursement process (even if brief) in order to confirm that this matter has been successfully concluded and to allow this Honorable Court to "put its final stamp of approval" on the case.

Objector is aware that this is not the "usual" procedure in Class Action proceedings. Nonetheless, Objector submits the suggested process is an improvement to the present procedure which is the status quo in Class Action cases. Also nothing in the above proposed procedure violates the letter or spirit of the Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711–1715,(the "Act")  Rule 23 F.R.C.P.(the "Rule") nor the body of case law that has developed in the class action arena (all three collectively referred herein as "Class Action Policy") Objector hereby urges this Honorable Court to adopt such a procedure as a "best practice standard " for Class Action settlements.

2.    No timeframe for completing administration of the monetary relief is set, so Class Members cannot know when payment would arrive. Moreover, the Settlement Administrator is not held to any specific timeframe to complete the settlement process.

3.    No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing the settlement. Objector hereby contends that the withholding of a reasonable sum of awarded attorney's fees would alleviate the concerns raised herein regarding Paragraphs Nos. 1 & 2 above.

4.    Attorney fees do not depend upon how much relief is actually paid to the Class Members. It appears that the proposed settlement will

award class counsel its fee notwithstanding the amount of relief actually achieved by the Class. This practice would be considered inequitable at best and excessive at worse in many other areas of the law when awarding attorney fees.

5.    The fee calculation is unfair in that the percentage of the settlement amount is far too high (it is stated in the Notice that it is 33%, which is high, but if the percent is arrived at by using monies actually awarded class members the percentage is even higher).

The Objector hereby states that, of the 1286 Docket Entries on PACER, very few entries were substantive in nature. The remaining entries were mostly procedural in nature. Although 1286 is a fairly large number of Docket Entries it computes to an unfathomable $55,209 per Docket entry.

6.    The fee request is not reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, hours accumulated and reasonable costs incurred), which can be evaluated by Class Members and the Court to determine the reasonable nature (or not) of the fee request.

7.    Some *cy pres* procedure needs to be articulated so that Class Members and the Court can intelligently comment, object or approve the appropriateness of the *cy pres* procedure, recipient and amount of the *cy pres* distribution. The *cy pres* distribution and recipient should have a direct and substantial nexus to the interests of absent class members and thus properly provide for the 'next best distribution' to the Class. Whatever method is used to determine an appropriate *cy pres* procedure and recipient should be a legitimate discussion between informed parties. Allowing the process to be determined at a later date by an undefined process is not an appropriate method nor consistent with Class Action Policy. It also gives no due process for any Class Member who might object to the *cy pres* process and result.

8.    Attorneys' fees are disproportionate to the value of the Recovery of

the Class (See Paragraphs 3, 4. 5 and 6 above).

9.     The Settlement only bars the Defendants from acting in the same manner for a period of two (2) years. FURTHER, THE SETTLEMENT AGREEMENT'S RELEASES BAR FUTURE ANTITRUST CLAIMS FOR NEW PRODUCTS. These two elements of the Settlement Agreement should be stricken as unconscionable.

10.    The Objector herein hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## CONCLUSION

**WHEREFORE**, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;
2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.
3. Award an incentive fee to this Objector for their role in improving the Settlement, if applicable.

Respectfully submitted by:

Patrick S. Sweeney, Pro Se
2590 Richardson Street
Madison, WI  53711
310-339-0548
patrick@sweeneylegalgroup.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 11, 2016, I caused to be filed the foregoing with the Clerk of the Court of the United States District Court for the Eastern District of Michigan and the Settlement Administrator by sending this document via U.S. First Class Mail Delivery at the addresses provided in the Notice.

Patrick S. Sweeney, Pro Se



**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

ANAMARIA CHIMENO-BUZZI,
and LAKEDRICK REED, on behalf of
themselves and all others similarly situated,

                        Plaintiffs,                    Case No. 14-cv-23120-MGC

v.

HOLLISTER CO. and ABERCROMBIE & FITCH CO.,

                        Defendants.

---

**OBJECTION OF PATRICK S. SWEENEY TO PROPOSED SETTLEMENT AND
NOTICE OF INTENT NOT TO APPEAR AT FAIRNESS HEARING**

---

NOW COMES, Pro Se Objector PATRICK S. SWEENEY, hereby files these objections to the proposed settlement in this matter.

## PROOF OF MEMBERSHIP IN THE CLASS

Upon information and belief Patrick S. Sweeney ("Objector") has reviewed that certain notice of class action and proposed settlement which is not dated (the "Notice"). As a result, he believes that he is a member of the class, as it is defined in that Notice. He has filed a claim in this matter on or before May 15, 2016 (Claim deadline according to the Notice). His claim confirmation number is RW9XBXDN. His address, e-mail address and telephone number are listed at the conclusion of this objection.

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does NOT intend to appear at the Fairness Hearing presently scheduled for March 30, 2016 at 11:30 a.m. EST before Honorable Wilkie

D. Ferguson, Jr., at the United States District Court, Courtroom 11-2, 400 North Miami

Avenue, Miami, FL 33128..

# **REASONS FOR OBJECTING TO THE SETTLEMENT**

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor adequate:

1.   Claims administration process fails to require reliable future oversight, accountability and reporting about whether the claims process actually delivers what was promised. The proposed settlement orders no counsel, not various class counsel nor any defense attorney (notwithstanding the large amount of attorney fees to be earned by the numerous law firms involved in this case) to monitor the settlement process to its ultimate completion.

It would obviously be more prudent to withhold a portion of Class Counsel's fee until the entire distribution process is complete. Furthermore, it would also be judicious to require Class Counsel (and perhaps Defense Counsel as well) to report back to this Honorable Court with a final summary and accounting of the disbursement process (even if brief) in order to confirm that this matter has been successfully concluded and to allow this Honorable Court to "put its final stamp of approval" on the case.

Objector is aware that this is not the "usual" procedure in Class Action proceedings.  Nonetheless, Objector submits the suggested process is an improvement to the present procedure which is the status quo in Class Action cases. Also nothing in the above proposed procedure violates the letter or spirit of the Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711–1715,(the "Act")  Rule 23 F.R.C.P.(the "Rule") nor the body of case law developed (all three collectively referred to herein as "Class Action Policy"). Objector hereby urges this Honorable Court to adopt such a procedure as a "best practice standard "for Class Action settlements.

2.   No timeframe for completing administration of the monetary relief is set, so Class Members cannot know when payment would arrive. Moreover the Settlement Administrator is not held to any specific timeframe to complete the settlement process.

3.   No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing the settlement. Objector hereby contends that the withholding of a reasonable sum of awarded attorneys fees would elevate the concerns raised herein regarding Paragraphs Nos. 1 & 2 above.

4.  Attorney fees do not depend upon how much relief is actually paid to the Class Members. It appears that the proposed settlement will award Class Counsel its fee notwithstanding the amount of relief. This practice would be considered inequitable at best and excessive at worse in many other area of the law when awarding attorney fees.

5.  The fee calculation is unfair in that the percentage of the settlement amount is far too high. The Objector states that in the 133 docket entries very few entries were substantive in nature. In fact, only the Plaintiff's Complaint(s), Defendant's Answer and Plaintiff's Motion to Approve Settlement and Award Attorney's Fees had any significant legal basis to its content. The remaining docket entries were procedural in nature. This is hardly the record of a case justifying Class Counsel's requested Attorneys' Fees in the amount of $3,500,000.

    It is also notable that the Settlement was reached in principal in less than one year following the commencement of this action. Furthermore, Class Counsel's Memorandum of Law in Support of the Motion for Attorney's Fees appears to be a catalogue of cases whereby other lawyers were successful in obtaining excessive fee awards and not a compelling recitation of why the fees and costs are appropriate in this specific case.

6.  No fee request is reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, hours accumulated and reasonable cost incurred), which can be evaluated by Class Members and the Court to determine the reasonable nature (or not) of the request.

7.  Some *cy pres* procedure needs to be articulated so that Class Members and the Court can intelligently comment, object or approve the appropriateness of the *cy pres* procedure, recipient and amount of the *cy pres* distribution. The *cy pres* distribution and recipient should have a direct and substantial nexus to the interests of absent class members and thus properly provide for the 'next best distribution' to the class. Whatever method is used to arrive at determining an appropriate *cy pres* procedure and recipient can be a legitimate discussion between informed parties and therefore appropriate. Allowing the process to be determined solely by Lead Class Counsel is neither appropriate nor consistent with Class Action Policy.

8.  Attorneys' fees are disproportionate to the value of the Recovery of the Class (See Paragraphs 3, 4. 5 and 6 above).

9.  There are no estimates or caps on the amount of costs and expenses that Class Counsel intends to request to be paid or reimbursed from the Settlement Fund. Not only should the costs and expenses be estimated as closely as possible but that estimate should be itemized in as much detail as possible. Also, a ceiling needs to be articulated in order to promote efficiency in the claim process. Finally, a final accounting should be submitted to the Court for final approval.

10. The Notice is inadequate in that no alleged violated statutes are referenced, no briefing schedule is included and that an Objector's only remedy is to

write a letter/brief setting forth objections. At the very least, the Settlement should require the Defendants to admit or deny certain facts regardless of whether they admit to any specific violation of the Telephone Consumer Protection Act. These admissions, although not sufficient for any type of adjudication, are appropriate as a substantial penalty to the Defendant. Furthermore, identifying, articulating and admitting to the specific actions, will act as a deterrent to this Defendant and others who might contemplate committing the specified acts in the future.

11.   The Objector hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## CONCLUSION

**WHEREFORE**, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1.  Sustain these Objections;

2.  Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3.  Award an incentive fee to this Objector for his role in improving the Settlement, if applicable.

Respectfully submitted,

Patrick S. Sweeney, Pro Se
2590 Richardson Street
Madison, WI  53711
310-339-0548
patrickshanesweeney@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 29, 2016, I caused to be filed the foregoing with the Clerk of the Court of the United States District Court for Southern District of Florida by

4

sending this document via U.S. First Class Mail so that this document would be postmarked within the timeframe described in the Notice published in this case. In addition, when the Clerk files this document in the docket for this case all parties in this case who use the CM/ECF filing system will be noticed. In addition, the undersigned has sent a copy via U.S. First Class Mail to the counsel as describe below in accordance with the Notice.

CLERK OF THE COURT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
United States District Courthouse
400 North Miami Avenue
Miami, FL 33128

Settlement Administrator
P.O. Box 3656
Portland, OR 97208-3656

Meredith Slawe, Esquire
DRINKER, BIDDLE & REATH, LLP
ONE Logan Square
Suite 2000
Philadelphia, PA 19103

CLASS COUNSEL
Robert R. Ahdoot, Esquire
AHDOOT & WOLFSON, PC
1016 Palm Avenue
West Hollywood, CA 90069

Frank S. Hedin, Esquire
CAREY RODRIGUEZ MILIAN GONYA, LLP
1395 Brickell Avenue
Suite 700
Miami, FL    33131

Joseph J. Siprut Esquire
SIPRUT PC
17 North State Street
Suite 1600
Chicago, IL 60620

Signed by: _____
Patrick S. Sweeney

5

SWEENEY
2590 RICHARDSON ST
MADISON WI 53711

MILWAUKEE WI 530

01 MAR 2016 PM 5 L

RECEIVED

USMS
INSPECTED

CLERK OF COURT
Wilkie D. Ferguson JR
UNITED STATES DISTRICT COURTHOUSE
400 NORTH MIAMI AVENUE
Miami, FL 33128

33128771699

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

*FILED*

*SEP 27 2016*

*SUSAN Y. SOONG*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*
*OAKLAND CALIFORNIA*

| | |
|---|---|
| IN RE: LITHIUM ION BATTERIES ) | |
| ANTITRUST LITIGATION        ) | Case No. 13-MD-02420 YGR (DMR) |
| ) | MDL NO. 2420 |
| _____ ) | |
| This Document Relates to:      ) | |
| INDIRECT PURCHASER ACTIONS ) | |

## OBJECTIONS OF PATRICK S. SWEENEY, PRO SE TO THE PROPOSED SETTLEMENT AND NOTICE OF INTENT NOT TO APPEAR AT FAIRNESS HEARING

NOW COMES, Pro Se Objector PATRICK S. SWEENEY and hereby files these objections to the proposed settlement in this matter.

### I.   PROOF OF MEMBERSHIP IN CLASS

Patrick S. Sweeney, Pro Se ("Objector") has reviewed the Notice of Class Action Settlement ("Notice") in this matter and believes he is a member of the class as defined in that Notice. He intends to file a timely claim when the claims period is open. His address and telephone number are listed at the conclusion of this objection.

### II.   NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does not intend to appear at the Fairness Hearing presently scheduled for 2:00 p.m. PDT on November 8, 2016, at the United States Courthouse, 1301 Clay Street, Courtroom 1, 4th Floor, Oakland, CA 94612.

## REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor adequate:

1.   Claims administration process fails to require reliable future oversight, accountability and reporting about whether the claims process actually delivers what was promised. The proposed settlement orders no counsel, not various class counsel nor any defense attorney (notwithstanding the large amount of attorney fees to be earned by the numerous law firms involved in this case) to monitor the settlement process to its ultimate completion.

It would obviously be more prudent to withhold a portion of Class Counsel's fee until the entire distribution process is complete. Furthermore, it would also be judicious to require Class Counsel (and perhaps Defense Counsel as well) to report back to this Honorable Court with a final summary and accounting of the disbursement process (even if brief) in order to confirm that this matter has been successfully concluded and to allow this Honorable Court to "put its final stamp of approval" on the case.

Objector is aware that this is not the "usual" procedure in Class Action proceedings.  Nonetheless, Objector submits the suggested process is an improvement to the present procedure which is the status quo in Class Action cases. Also nothing in the above proposed procedure violates the letter or spirit of the Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711–1715,(the "Act")  Rule 23 F.R.C.P.(the "Rule") nor the body of case law developed (all three collectively referred to herein as "Class Action Policy"). Objector hereby urges this Honorable Court to adopt such a procedure as a "best practice standard "for Class Action settlements.

2.   The Notice is not adequate to inform a potential Class Member of the nature of the case. Further when using the MDL Case number as listed in the Notice almost nothing can be found on Pacer corresponding to that Case number.

3.   No amount of Attorney's Fees are to be withheld to assure Class Counsel's continuing oversight and involvement in implementing the settlement. Objector hereby contends that the withholding of a

reasonable sum of awarded attorneys fees would elevate the concerns raised herein regarding Paragraphs Nos. 1 & 2 above.

4.   Attorney Fees do not depend upon how much relief is actually paid to the Class Members. It appears that the proposed settlement will award Class Counsel its fee of $5.85 million dollars notwithstanding the amount of relief which is actually paid to the Class Members. This practice would be considered inequitable at best and excessive at worse in many other area of the law when awarding attorney fees.

5.   The Attorney's Fee calculation is unfair in that the percentage of the settlement amount is far too high. After a review of the Docket it is impossible to decipher how much work Class Counsel did to achieve the result. It is also notable that the Settlement was reached in principal in less than two years following the commencement of this action. Furthermore, Class Counsel's Memorandum of Law in Support of the Motion for Attorney's Fees appears to be a catalogue of cases whereby other lawyers were successful in obtaining excessive fee awards and not a compelling recitation of why the fees and costs are appropriate in this specific case.

6.   No fee request is reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, actual time entries, hours accumulated and reasonable costs incurred), which can be evaluated by Class Members and the Court to determine the reasonable nature (or not) of the request.

7.   Some *cy pres* procedure needs to be articulated so that Class Members and the Court can intelligently comment, object or approve the appropriateness of the *cy pres* procedure, recipient and amount of the *cy pres* distribution. The *cy pres* distribution and recipient should have a direct and substantial nexus to the interests of absent class members and thus properly provide for the 'next best distribution' to the class. Whatever method is used to arrive at determining an appropriate *cy pres* procedure and recipient can be a legitimate discussion between informed parties and therefore appropriate. Allowing the process to be determined solely by Lead Class Counsel and Court overview is neither appropriate nor consistent with Class Action Policy.

8.   There are no receipts supporting the requests for litigation costs

and expenses that Class Counsel intends to request to be paid or reimbursed from the Settlement Fund. Not only should the costs and expenses be estimated as closely as possible but that estimate should be itemized in as much detail as possible. Finally, a final accounting should submitted to the Court for final approval. Furthermore, it is unclear from the Notice who is paying for the cost of the settlement administration- the Defendant or the Settlement Fund.

9.     The Objector hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## CONCLUSION

**WHEREFORE**, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;

2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3. Award an incentive fee to this Objector for his role in improving the Settlement, if applicable.

Respectfully submitted,

Patrick S. Sweeney, Pro Se
6666 Odana Road
Suite 116
Madison, Wi 53719
310-339-0548
patrickshanesweeney@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2016, I caused to be filed the foregoing with the Class Action Clerk, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, pursuant to the instructions in the Notice.

Patrick S. Sweeney, Pro Se

MILWAUKEE WI 530

23 SEP 2016 PM 8 L

USA FOREVER

SWEENEY
6666 ODANA ROAD STE 116
MADISON, WI 53719

CLASS ACTION CLERK
USDC - NORTHERN DISTRICT OF
CALIFORNIA
1301 Clay Street
Oakland, CA 94612

94612$5200 C037

LITHIUM



## UNITED STATES DISTRICT COURT FOR
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| ROBERT MARTIN and KRISTIN ARMSTRONG individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiffs, ) | Case No. 6:14-cv-1290-ORL-31-KRS |
| v. ) | |
| ) | |
| GLOBAL MARKETING RESEARCH ) SERVICES, INC., a Florida corporation, ) ) | |
| Defendant. ) | |

## OBJECTIONS OF PATRICK S. SWEENEY TO THE PROPOSED SETTLEMENT AND NOTICE OF INTENTION NOT TO APPEAR AT FAIRNESS HEARING

COMES NOW, Pro Se Objector PATRICK S. SWEENEY, hereby files these objections to the proposed settlement in this matter.

## PROOF OF MEMBERSHIP IN CLASS

Patrick S. Sweeney (herein referred to as "Patrick" or "Objector") has reviewed the certain notice which is undated and entitled "Notice of Proposed Class Action Settlement" (herein referred to as the "Notice"). From the description in the Notice he believes he is a member of the Class. This representations are made under the penalty of perjury. Patrick has filed multiple claims as he had, during the claim period, a group account (AT&T) with 3 separate numbers and the claims website provided no opportunity to address this fact without simply filing multiple claims. His claim is that he received a text message during the claim period but he cannot be certain on what phone number. Accordingly, to be sure he

filed multiple claims. The receipt with the claim numbers are attached hereto as Composite Exhibit "A". Patrick's address, e-mail addresses and telephone number are listed at the conclusion of this objection. He believes he received the messages in 2013 or 2017.

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does **NOT** intend to appear at the Fairness Hearing presently scheduled for August 16, 2016 at 9:30 p.m. EDT at Courtroom 5A of the U.S. Courthouse, 401 West Central Blvd., Orlando, FL 32801.

## REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor adequate:

1.  No mechanism in place to file a claim that has come to a phone belonging to an account holder with multiple lines. Accordingly one must do as this Objector had to do and that is file multiple claims.

2.  The Settlement Administrator's phone bank does not allow a person to talk to a real person when looking for guidance with a claim.

3.  Attorney fees do not depend upon how much relief is actually paid

to the Class Members. It appears that the proposed settlement will award class counsel its fee notwithstanding the amount of relief actually achieved by the Class. This practice would be considered inequitable at best and excessive at worse in many other areas of the law when awarding attorney fees.

4.      The fee calculation is unfair in that the percentage of the settlement amount is far too high. It is stated in the Motion that it is 30%, which is high on its face, but if the percent is arrived at by using monies actually awarded class members the percentage is even higher. By way of example if the settlement administration costs are a million dollars and the award to the named plaintiffs is $20,000.00 then the percent paid to the Class Counsel is about 40% of the monies available to the Class.

5.      The fee request is not reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, hours accumulated and reasonable costs incurred), which can be evaluated by Class Members and the Court to determine the reasonable nature (or not) of the fee request.

6.      Some *cy pres* procedure needs to be articulated so that Class Members and the Court can intelligently comment, object or approve the appropriateness of the *cy pres* procedure, recipient and amount of the *cy pres* distribution. The *cy pres* distribution and recipient should have a direct and substantial nexus to the interests of absent class members and thus properly provide for the 'next best distribution' to the class. Whatever method is used to determine an appropriate *cy pres* procedure and recipient should be a legitimate discussion between informed parties. Allowing the process to be determined at a later date is not an appropriate method nor consistent with Class Action Policy. It also gives no due process for any Class Member object to the *cy pres* result.

7.      The Objector herein hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and

law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## CONCLUSION

**WHEREFORE**, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;

2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3. Award an incentive fee to this Objector for his role in improving the Settlement, if applicable.

Respectfully submitted by:

Patrick S. Sweeney, Pro Se
2590 Richardson Street
Madison, WI 53711
310-339-0548
patrick@sweeneylegalgroup.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 14, 2016, I caused to be filed the foregoing with the Clerk of the Court of the United States District Court for the

Middle District of Florida by sending this document via U.S. First Class Mail Delivery thus complying within the timeframe described in the Legal Notice published in this case. The attorney listed in the notice also were sent copies by U.S. First Class mail.

I also provided a copy of these documents to the counsel for the Plaintiffs and the Defendants via e-mail on July 14, 2016.

_____

Patrick S. Sweeney, Pro Se

# Martin v. Global Marketing Research Services Inc.

**Your claim has been submitted. Your Claim ID is: GLN-40003303-8**

Please include the above claim number in all future correspondence with the Claims Administrator.

A confirmation email will be sent to the email address provided shortly.

# Martin v. Global Marketing Research Services Inc.

**Your claim has been submitted. Your Claim ID is: GLN-40003287-2**

Please include the above claim number in all future correspondence with the Claims Administrator.

A confirmation email will be sent to the email address provided shortly.

# Martin v. Global Marketing Research Services Inc.

**Your claim has been submitted. Your Claim ID is: GLN-40003293-7**

Please include the above claim number in all future correspondence with the Claims Administrator.

A confirmation email will be sent to the email address provided shortly.

UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | | |
|---|---|---|
| Francis W. Hooker, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:13-cv-00003 |
| | ) | |
| | ) | |
| SIRIUS XM RADIO INC., | ) | |
| | ) | |
| Defendant. | ) | |

RECEIVED

NOV - 7 2016

CLERK, U.S. DISTRICT COURT

**OBJECTION OF PATRICK S. SWEENEY, PRO SE TO PROPOSED
SETTLEMENT & NOTICE OF INTENT NOT TO APPEAR AT
FAIRNESS HEARING**

NOW COMES, Pro Se Objector PATRICK S. SWEENEY and
hereby files these objections to the proposed settlement in this matter.

**PROOF OF MEMBERSHIP IN THE CLASS**

PATRICK S. SWEENEY, PRO SE ("Objector") has reviewed that
certain notice of class action and proposed settlement which is undated (the
"Notice"). As a result, he believes that he is a member of the class, as it is
defined in that Notice. He has a timely claim. His Claim Number is
VZ8WNDHE. Objector's phone number used in his claim is 608-695-3961.His
address, e-mail address and telephone number are listed at the conclusion of this
objection.

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does NOT intend to appear at the

Fairness Hearing presently scheduled for December 20, 2016 at 10:00 a.m. EST

at the United States District Court for the Eastern Division of Virginia, Walter

E. Hoffman, United States Courthouse, 600 Granby Street, Norfolk Virginia,

VA 23510.


## REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair,
reasonable nor adequate:

1.  Claims administration process fails to require reliable future
    oversight, accountability and reporting about whether the claims
    process actually delivers what was promised. The proposed
    settlement orders no counsel, not various class counsel nor any
    defense attorney (notwithstanding the large amount of attorney
    fees to be earned by the numerous law firms involved in this
    case) to monitor the settlement process to its ultimate completion.

    It would obviously be more prudent to withhold a portion of
    Class Counsel's fee until the entire distribution process is
    complete. Furthermore, it would also be judicious to require
    Class Counsel (and perhaps Defense Counsel as well) to report
    back to this Honorable Court with a final summary and
    accounting of the disbursement process (even if brief) in order to
    confirm that this matter has been successfully concluded and to
    allow this Honorable Court to "put its final stamp of approval" on
    the case.

    Objector is aware that this is not the "usual" procedure in Class
    Action proceedings.  Nonetheless, Objector submits the
    suggested process is an improvement to the present procedure
    which is the status quo in Class Action cases. Also nothing in the
    above proposed procedure violates the letter or spirit of the Class
    Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453,
    and 1711–1715,(the "Act")  Rule 23 F.R.C.P.(the "Rule") nor the

body of case law developed (all three collectively referred to herein as "Class Action Policy"). Objector hereby urges this Honorable Court to adopt such a procedure as a "best practice standard "for Class Action settlements.

2.   No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing the settlement. Objector hereby contends that the withholding of a reasonable sum of awarded attorneys fees would elevate the concerns raised herein regarding Paragraphs No. 1 above.

3.   Attorney fees do not depend upon how much relief is actually paid to the Class Members. It appears that the proposed settlement will award Class Counsel its fee notwithstanding the amount of relief. This practice would be considered inequitable at best and excessive at worse in many other area of the law when awarding attorney fees.

4.   The fee calculation is unfair in that the percentage of the settlement amount is far too high. After a review of the Docket there appears to be a limited number Docket Entries. In addition, very few of the Docket Entries are substantive in nature. The remaining Docket Entries were merely procedural in nature Further regarding the Docket Entries, many were in the form of a Notice (usually a 1 or 2 page document); several others were in reference to letters filed with Court (usually a brief correspondence with some reference to a procedural "housekeeping" matter); many others Docket Entries were in regard to a *pro hoc vice* requests or changes in counsel; dozens of entries were documents generated by the Court in the form of an order, minute entry or a filing of a transcript and, finally there were  many Docket Entries from the Court or the Clerk's Office regarding procedural items. This is hardly the record of a case justifying Class Counsel's requested Attorneys' Fees and Expenses in the amount of $10,500,000.00.

5.   No fee request is reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, hours accumulated and reasonable cost incurred), which can be evaluated by Class Members and the Court to determine the reasonable nature (or not) of the request.

6.   The Notice is void of any description of a *cy pres* distribution. Some *cy pres* procedure needs to be articulated so that Class Members and the Court can intelligently comment, object or

approve the appropriateness of the *cy pres* procedure, recipient
and amount of the *cy pres* distribution. The description of *cy pres*
distribution can only be found in the Settlement Agreement. The
*cy pres* distribution and recipient should have a direct and
substantial nexus to the interests of absent class members and
thus properly provide for the 'next best distribution' to the class.
Whatever method is used to arrive at determining an appropriate
*cy pres* procedure and recipient can be a legitimate discussion
between informed parties and therefore appropriate. Allowing the
process to be determined solely by the Parties with court approval
is neither appropriate nor consistent with Class Action Policy.

7.    Attorneys' fees are disproportionate to the value of the Recovery
of the Class, as 30% is too high of an award. In addition, it
appears that Class Counsel has valued the 3 months free service
on its face and at full retail value. Some discount should applied
to this portion of the Settlement as not all members who choose
this will actually use it. Also, the cost of this option to the
Defendant is pennies on the dollar to the Defendant. Attorney
fees of 30% on these amounts is wholly inappropriate.


8.    There are no estimates or caps on the amount of costs and
expenses that Class Counsel intends to request to be paid or
reimbursed from the Settlement Fund. Not only should the costs
and expenses be estimated as closely as possible but that estimate
should be itemized in as much detail as possible. Also, a ceiling
needs to be articulated in order to promote efficiency in the claim
process. Finally, a final accounting should be submitted to the
Court for final approval. Furthermore, it is unclear from the
Notice who is paying for the cost of the settlement
administration.

9.    The language on page 10 of the Notice which seems to indicate
that any person wishing to speak at the Final Hearing must make
him/herself available for a deposition. It initially seems to be
directed at parties who intend to speak at the Fairness Hearing.
However, later in the paragraph it seem to morph into a
requirement for all Objectors. In any event it is, at best unclear.
Also, the mandating at this stage of the litigation for discovery
skirts the reviewing of the balancing requirements that a district
court must make, in its discretion, before allowing discovery on
an Objector. Accordingly, this requirement must be stricken from
the Notice.

10.   Objector also objects to the requirement that he must list all cases

in which he has objected in the last 5 years. There has been no showing of relevancy and therefore this requirement is also inappropriate and also must be stricken.

11.   The Objector hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## CONCLUSION

**WHEREFORE,** This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1.   Sustain these Objections;
2.   Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.
3.   Award an incentive fee to this Objector for his role in improving the Settlement, if applicable.

Respectfully submitted,

Patrick S. Sweeney, Pro Se
6666 Odana Road
Suite 116
Madison, WI 53719
310-339-0548
patrickshanesweeney@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2016, I caused to be filed the foregoing with the Clerk of the Court of the United States District Court for Eastern District of Virginia by sending this document via U.S. First Class Mail

delivery, to the address below, so that this document would be delivered within the timeframe described in the Legal Notice published in this case.  In addition, when the Clerk files this document in the docket for this case all parties in this case who use the CM/ECF filing system will be noticed. In addition, the undersigned has sent a copy via U.S. First Class Mail.

CLERK OF THE COURT
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINA
WALTER E. HOFFMAN
United States District Courthouse
600 Granby Street
Norfolk, VA 23510

Michael A. Caddell
 & Chapman
628 East 9th Street
Houston, TX 77007-1722


Thomas Demitrack
Jones Day
901 Lakeside Avenue
Cleveland, OH 44114

Patrick S. Sweeney



SWECHEY
6660 DONNA ROAD Ste 116
MADISON, WI 53719

MILWAUKEE WI 530
02 NOV 2016 PM 6 L

CLERK OF THE COURT
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
WALTER E. HOFFMAN COURTHOUSE
600 GRANBY STREET
NORFOLK VA 23510
235104604531

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

```
FILED by  PG  D.C.

DEC 2 9 2015

STEVEN M. LARIMORE
CLERK U. S DIST CT
S. D. of FLA. - MIAMI
```

ALLISON GAY, SANDAHL NELSON,　　　　)
MOLLY MARTIN, LORETTE KENNEY,　　　)
CLAUDIA MORALES, AND GENEVIEVE　)
GAMEZ, Individually and on Behalf of All　)
Others Similarly Situated,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
Plaintiffs,　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　　Case No.0:14—CV60604-KMM
v.　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
TOM'S OF MAINE, INC.,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
Defendant.　　　　　　　　　　　　　　　)

---

## OBJECTION OF PATRICK S. SWEENEY PROPOSED SETTLEMENT

NOW COMES, Pro Se Objector PATRICK S. SWEENEY, hereby files these objections to the proposed settlement in this matter.

## PROOF OF MEMBERSHIP IN CLASS

Upon information and belief Patrick S. Sweeney has reviewed the notice and believes that he is a member of the class as defined in that certain Notice of Class Action Settlement which is dated September 23, 2015, and is currently posted on the administrator's website. He intends to file a claim in this matter on or before the claim deadline. His address and telephone number are listed at the conclusion of this objection.

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does not intend to appear at the Final Approval

Hearing presently scheduled for 11:00 a.m. (EST) January 28, 2015, at the United States

Courthouse, U.S.D.C. for the Southern District of Florida, 400 North Miami Avenue, Miami,

Florida, 33128.

## I.

### Reason for Objecting to Settlement

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable and
adequate:

1.  Claims administration process fails to require reliable oversight,
    accountability, and reporting about whether the claims process actually
    delivers what was promised.

2.  Timeframes and deadlines benefit Defendants and Class Counsel, but not
    Class Members; No timeframe for completing administration of the
    monetary relief is set, so Class Members cannot know when payment would
    arrive.

3.  No amount of attorney fees is to be withheld to assure Class Counsel's
    continuing oversight and involvement in implementing settlement

4.  The fee calculation is unfair in that the percentage of the settlement amount
    is far too high.

5.  Fee request is not reasonable in the absence of documentation, including
    billing records, which can be evaluated by Class Members and the Court.

6.  The objector herein hereby adopts and joins in all other objections, if any,
    which are based on sufficient precedent and theories of equity and law in
    this case and hereby incorporates said objections by reference as if they
    were fully described herein.

## CONCLUSION

**WHEREFORE**, This Objector, for the foregoing reasons, respectfully requests that

the Court, upon proper hearing:

1.  Sustain these Objections;

2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3. Award an incentive fee to this Objector for his role in improving the Settlement, if applicable.

Dated:   December 22, 2015                    By:_____

Patrick S. Sweeney, Pro Se
2590 Richardson Street
Madison, WI 53711
Telephone: (310)-339-0548
Email Address:patrick@sweeneylegalgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2015, I caused to be filed, by placing this objection in the foregoing with the Clerk of the Court of the United States District Court for the Southern District of Florida.

I hereby further certify that on December 22, 2015 I served all parties as directed in the Notice of Settlement of Class Action dated September 23, 2015 for this Class Action via United States First Class Mail, to wit:

CLASS COUNSEL
James C. Shah, Esquire
Shepherd, Finkleman, Miller & Shah
35 East State Street
Media, PA 19063

DEFENSE COUNSEL
David A. Callahan, Esquire
Latham & Watkins LLP
330 North Wabash Street
Suite 2800
Chicago, IL 60611

PATRICK S. SWEENEY, PRO SE

3

2540 Richardson Street
Madison, Wisc.

53711

**USMS**
**INSPECTED**

**RECEIVED**

Clerk of the Court
United States District Court
Southern District of Florida
400 North Miami Ave.
Miami, Fr 33128

DEC 29
12 21

Patrick Sweeney
SBN 593486
750 South Dixie Highway
Boca Raton, FL 33432
Tel. 561-395-6000
Fax. 561-395-9093

**Attorney for Objector**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ALLISON GAY, SANDAHL NELSON, MOLLY MARTIN and GENEVIEVE GAMEZ, On Behalf of Themselves and All Others Similarly Situated <br><br> Plaintiffs, <br><br> vs. <br><br> TOM'S OF MAINE, INC., <br><br> Defendant. | Case No. 14-cv-60604-KMM <br><br> **CLASS ACTION** <br><br> **OBJECTION OF DAWN WEAVER TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR** <br><br> Date: January 28, 2016 <br> Time: 11:00 a.m. <br> Judge: Hon. K. Michael Moore <br><br> Action filed: March 7, 2014 <br> Trial date: None Set |

_____

Dawn Weaver objects to the proposed settlement. Ms. Weaver is a member of the class and her claim number is 164997. Ms. Weaver's address is 208 Via Morella, Encinitas California, 92024. Her phone number is (858) 829-3659 and her email is Weavdm@gmail.com.  Ms. Weaver has filed a claim, claim ID 164997

## I.    THE STANDARD FOR APPROVING A PROPOSED CLASS ACTION SETTLEMENT

A trial court must receive and independently consider information sufficient to assess the reasonableness of the settlement.  *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 130, 133 (2008).  In *Kullar*, the Court of Appeal vacated a trial court's approval of a class action settlement because the court was not "provided with basic information about the nature and magnitude of the

claims in question and the basis for concluding that the consideration being paid for the release of those claims represents a reasonable compromise." *Id.* at 133.  In *Clark v. American Residential Services LLC, et al*., 175 Cal.App.4th 785 (July 6, 2009), the Second Appellate District Court of Appeal reaffirmed that to evaluate the fairness of a settlement, the court should be provided sufficient information to make a determination as to the fairness of a settlement.

*Kullar* further explains that, despite a presumption of fairness for class action settlements negotiated at arm's length by counsel for the class, "'to protect the interests of absent class members, the court must independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interests of those whose claims will be extinguished.'" *Kullar, supra*, 168 Cal.App.4th at p. 130.

California courts have also held that the court has a duty, independent of any objection, to assure that the amount and mode of payment of attorneys' fees in a class action settlement are fair and proper, and may not act as a rubber stamp for the parties' agreement.  *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 96 Cal. Rptr. 3d 127 (2009). The Court should decline to grant final approval to this proposed class action settlement. Class counsel seek to reap over one million dollars in fees while keeping class members in the dark as to the existence of their so-called "clear-sailing" agreement. *In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935, 947 (9th Cir.2011).

According to the settlement proponents, ninety-seven to ninety-nine percent of Class members are excepted to take a pass on participation, less than half the weighted average claims filing rates for consumer settlements. The settling parties offer no suggestions to improve the expected claims rate through, for example, reconfiguration of notice or revamped administration procedures.

The settling parties ensnared class members with convoluted claims process and misleading settlement notice, ensuring the real beneficiary of this settlement is the liberal advocacy behemoth, "Consumer [sic] Union"[1] along with Class counsel. Consumers Union is not shy about weighing in on controversial political matters. However, this objection does not take issue with

---

[1] The correct name of the organization is "Consumers Union," not "Consumer Union." The incorrect spelling in the proposed settlement agreement confirms the *cy pres* beneficiary met little rigorous analysis by the settling parties.

Consumers Union right, guaranteed by the Constitution, to pursue whatever political or social policies it finds appropriate. By the same token, class members have Constitutional rights as well; they may not be compelled to fund political advocacy of any stripe. Put even more simply, Consumers Union free speech should not be underwritten by the class.

Seemingly arbitrary in nature or even an attempt to limit Class Member's rights, the claims period is to remain open until May 7, 2016. The final approval hearing occurs on January 28, 2016. If the claims period is to remain open until May 7, 2016, then why the rush? Given the existing time schedule order makes it virtually impossible for the Court to ascertain precise individual recoveries, let alone, assess accurate claims data or analyze how much class money is to be misdirected to political speech.

The Court has a choice. It can, as urged by the settling parties, close its eyes to reality, defer to settling counsel and reflexively adopt the unsupportable notion that this settlement provides a benefit to class members. Or it can, as required by Fed. R. Civ. P. 23, scrutinize the facts, closely inspect the terms of settlement, and demand

## II.   ARGUMENT

### A. Notice is Inadequate

Class Counsel's Notice, does not inform Class Members of either the nature of the legal rights they are releasing or the remedies available for violations of those legal rights.  Further, the Notice fails to disclose Consumers Union as the *cy pres* beneficiary. The Proposed Settlement Agreement ("P.S.A.") A substantive requirement of the Long Form Notice includes that it "explain the cope of the release." The Release merely states as to the release: "In return for these benefits, what am I giving up? If the Court approves the proposed settlement and you do not request to be excluded from the Class, you must release (give up) all claims that are subject to the Relase, and the case will be dismissed on the merits and with prejudice. **If you remain in the Class, you may not assert any of those claims in any other lawsuit or proceeding. This includes any other lawsuit or proceeding already in progress.**

The scope of the release is not discussed. The Notice provides, "The Claims Administrator's determination [on a claim] is final. Neither you nor Tom's can appeal or contest the

decision of the Claim Administrator." The P.S.A. does not preclude appeal. On the contrary, the Court expressly retains jurisdiction as to the implementation and enforcement of the terms of the Agreement.

The Settlement Website is inadequate, because it fails to provide information Class Members need to evaluate the Settlement. Class Counsel have not identified the operative Complaint or included their Motion for Final Approval. Identifying which Complaint is the Operative Complaint would inform Class Members about what the claims are and what they are releasing. Instead they can only speculate which is unacceptable.

A notice may not be misleading. The notice is misleading. It violates due process and Fed. R. Civ. Proc., Rule 23. *Molski v. Gleich* (9th Cir. 2003) 318 F.3d 937, 952 (Notice is not adequate if it misleads the class); *In re Motor Fuel Temperature Sales Practices Litig.,* 286 F.R.D. 488, 504 (D. Kan. 2012) (denying approval where *cy pres* beneficiaries were not designated).

B. **The Class Benefit is Minimal**

A Settlement Class Member is eligible to obtain up to or greater than $4.00 for each purchase of a Covered Product for up to seven (7) Covered Products. Covered Products include a variety of personal hygiene products, including, deodorant, soap, sunscreen, lip balm, etc. The P.S.A. offers token injunctive relief. If the total amount of timely, valid and approved eligible Claims submitted results in there being any remaining value in the Net Settlement Fund, it shall be used to increase the relief of up to one hundred percent.

C. **Attorneys' Fess and Named Class Awards are Inappropriate**

Class Counsel is seeking attorneys' fees of up to $1,035,000.00 and expenses not to exceed $50,000.00. The named plaintiffs are seeking an amount not to exceed $2,000.00 each. Both amounts are to be paid before the Class Members are to be paid and perhaps be paid even where the Class Members do not recover at all. The Settlement Fund is 4.5 million, after the requested attorneys' fees, expenses, administration costs, costs to send notices, costs to maintain the website, taxes, etc. the Settlement Fund could be be depleted down to next to nothing. This case has not been ongoing for even two years. Discovery has been minimal, if anything. The motion practice has been very minimal. The Notice does not state how the attorneys' fees are projected or what costs have occurred. To think that

Class Counsel and the named Class Members could be considered stewards for the Class Members where the awards are so disproportionate is hardly plausible.

**D.  *Cy Pres* Beneficiary is Consumers Union**

Any amount remaining after distributions in the Net Settlement Fund shall, subject to Court approval, be paid to Consumers Union. There is no way to know, at the time of final approval, precisely how much money, if any, Consumers Union shall receive.  Consumers Union has an untapped $150 million war chest, making it the least likely candidate to be selected if based on need alone. The related website of Consumers Union, ConsumerReport.org claims more paid subscribers than any other publication based website. However, most of its information is available only to paid subscribers. How class members fit into this subscription base is unknown. What benefit the class shall gain is also unknown. Consumers Union has used its resources to push for politically divisive issues; including endorsing the Affordable Care Act. It leadership is decidedly left. This Court should be hesitant to allow Class proceeds to be directed to political advocacy which is precisely what Consumers Union does.

Further, when possible monies recovered in class actions should go directly to the class members themselves. It is inappropriate for a settlement to pay out all or nearly all of the money in *cy pres* distributions when it is possible to distribute signification sums to the class members themselves. It is also, not appropriate, for the settling parties to attempt to direct *cy pres* distributions to personal favorite charities (such as one's alma mater) or political advocacy organizations that have no relationship to the issues addressed by the underlying lawsuit. Here, because the Notice is insufficient, the proposed settlement agreement is over 200 pages long any many class members will not be afforded an opportunity to object before the final hearing, most of the funds will go to Class Counsel and *cy pres* beneficiaries the P.S.A. is inappropriate.

**E.  Settlement class cannot be certified**

"Class action settlements are different from other settlements." *In re Dry Max Pampers Litig.,*724 F.3d 713 (6th Cir. 2013).[2] "[I]n class action settlements the district cannot rely on the

---

[2] "The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval. In contracts, class action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations. And this there is

adverbial process to protect the interests of the persons most affected by the litigation—namely, the class. Instead, the law relies upon the fiduciary obligations of the class representatives and, especially, class counsel, to protect those interests. And that means the courts must carefully scrutinize whether those fiduciary obligations have been met. *Id.* at 718.

Aside from trial manageability concerns, that burden is no lighter when the Court is confronted with a settlement only class certification. In fact, the specifications of rule Rule23(a) and (b)(3) are "designed to protect absentees by blocking unwarranted or overbroad class definition" and "demand to protect absentees by blocking unwarranted or overboard class definition" and "demand undiluted, even heightened, attention in the settlement context." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Rule 23(b)(3) requires the parties to demonstrate the superiority of the class action device for adjudication of class members' claims. Further, where "individual distributions to class members are not feasible" because class members "cannot be identified through reasonable effort," "individual damages would be if not impossible to calculate" and "individual distributions would be too small to be economically viable," certification is not appropriate.

No matter how slim the possibility of attaining, for example, statutory damages, that possibility is superior to releasing those claims for no or little compensation. See *Brown v. Wells Fargo & Co.,* No. 11-1362 (JRT/JJG), 2013 U.S. Dist. LEXIS 181262, at *16-*17 (D. Minn. Dec. 30, 2013) (concluding that superiority was not satisfied where individuals would be "entitled to between $100 and $1,000 dollars in statutory damages" in successful individual litigation, but only $55 as a class member).

## III.    WRITTEN OBJECTION REQUIREMENTS INAPPROPRIATE

The proposed requirements of objectors to include "the name and case number of all objections to class action settlements made by you in the past five (5) years" is inappropriate and harassing. There

---

always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Pampers*, 724 F.3d at 715. "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). "Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon*, 957 F.2d 697 (9th Cir. 1992).

is absolutely no basis in law or in policy of requiring such information. Therefore, Ms. Weaver objects to said proposed requirement.

**IV.     JOINDER IN OTHER OBJECTIONS**

Ms. Weaver joins in, adopts and incorporates by reference as though fully stated herein each objection by other class members which are not inconsistent with these objections.

**V.     CONCLUSIONS**

For the foregoing reasons and all others at oral argument, these objectors request that the court sustain their objections and grant the following relief:

- Upon proper hearing, sustain these Objections.
- Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.
- The Court should deny final approval to Settlement Agreement.

Respectfully Submitted,


/S/ Patrick Sweeney
Patrick Sweeney
Attorney for Objector Dawn Weaver

Objection of Dawn Weaver to Proposed Settlement and Notice of Intent to Appear

PATRICK S. SWEENEY, PRO SE
6666 Odana Road
Suite 116
Madison, WI 53719
Telephone: (310)-339-0548
Fax: (561)-395-9093
patrickshanesweeney@gmail.com



FILED
CLERK, U.S. DISTRICT COURT

JUN 2 7 2017

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

ENZO FORCELLATI and LISA
ROEMMICH, on Behalf of
Themselves and all Others Similarly
Situated,

      Plaintiffs,

v.

HYLAND'S, INC., STANDARD
HOMEOPATHIC LABORATORIES,
INC., and STANDARD HOMEOPATHIC
COMPANY,

      Defendants.

Case No. 2:12-CV-01983-ODW-MRW

---

## OBJECTION AND NOTICE OF INTENT NOT TO ATTEND FAIRNESS HEARING OF PATRICK S. SWEENEY, PRO SE

---

    NOW COMES, Pro Se Objector PATRICK S. SWEENEY on behalf of himself hereby files these objections to the proposed settlement in this matter.

## PROOF OF MEMBERSHIP IN CLASS

Patrick S. Sweeney, Pro Se, (herein referred to as "Objector" or as "Patrick") has reviewed that certain notice of settlement of class action lawsuit which is dated March 30, 2017 (herein referred to as the "Notice"). As a result he believes that he is a members of the class as defined in the Notice. He believes he purchased - Cold 'n Cough 4 Kids- from Walgreens in and around January 2009 in Madison, Wisconsin. Patrick has filed a timely Claim on June 24, 2017 via the settlement website claim process. Patrick's address, e-mail addresses and telephone numbers are listed at the conclusion of this objection.

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does NOT intend to appear at the Fairness Hearing presently scheduled for August 14, 2017 1:30 p.m. PDT at the Federal Courthouse located at the United States District Court for the Central District of California, U.S. Courthouse, Courtroom 5D, 5th Floor, 350 West 1st Street, Los Angeles, CA 90012.

## REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor adequate:

1.     Claims administration process fails to require reliable future oversight, accountability and reporting about whether the claims process actually delivers what was promised. The proposed settlement orders no counsel, not various class counsel attorneys nor any defense attorney (notwithstanding the large amount of attorney fees to be earned by the numerous law firms involved in this case) to

monitor the settlement process to its ultimate completion.

It would obviously be more prudent to withhold a portion of Class Counsel's fee until the entire distribution process is complete. Furthermore, it would also be judicious to require Class Counsel (and perhaps Defense Counsel as well) to report back to this Honorable Court with a final summary and accounting of the disbursement process (even if brief) in order to confirm that this matter has been successfully concluded and to allow this Honorable Court to "put its final stamp of approval" on the case.

2.   No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing the settlement. Objector hereby contends that the withholding of a reasonable sum of awarded attorney's fees would alleviate the concerns raised herein regarding Paragraphs No. 1 above.

3.   Attorney fees do not depend upon how much relief is actually paid to the Class Members. It appears that the proposed settlement will award class counsel its fee notwithstanding the amount of relief actually achieved by the Class. This practice would be considered inequitable at best and excessive at worse in many other areas of the law when awarding attorney fees.

4.   The fee request is not reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, hours accumulated and reasonable costs incurred), which can be evaluated by Class Members and the Court to determine the reasonable nature (or not) of the fee request. The fee request should require more than the mere summaries provided to the Court and Class Members.

5.     The Objectors hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

6.     Some *cy pres* procedure needs to be articulated so that Class Members and the Court can intelligently comment, object or approve the appropriateness of the *cy pres* procedure, recipient and amount of the *cy pres* distribution. The *cy pres* distribution and recipient should have a direct and substantial nexus to the interests of absent class members and thus properly provide for the 'next best distribution' to the Class. Whatever method is used to determine an appropriate *cy pres* procedure and recipient should be a legitimate discussion between informed parties. Allowing the process to be determined at a later date by an undefined process is not an appropriate method nor consistent with Class Action Policy. It also gives no due process for any Class Member who might object to the *cy pres* process and result.

7.     The Objector herein hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## CONCLUSION

**WHEREFORE**, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;

2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3. Award an incentive fee to this Objector for their role in improving the Settlement, if applicable.

Respectfully submitted by:

Patrick S. Sweeney, Pro Se
6666 Odana Road
Suite 116
Madison, WI 53719
310-339-0548
patrick@sweeneylegalgroup.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 26, 2017, I caused to be filed the foregoing with the Clerk of the Court of the United States District Court for the Central District of California via FedEx Next Day Delivery and to counsel by sending this document via U.S. First Class Mail to the addresses provided in the Notice. Objector states that when the Clerk receives the objection they will scan it into the CM/ECF, thus notify all parties who are registered with CM/ECF system. In addition, all counsel identified in the Notice have been sent this objection via electronic mail.

Patrick S. Sweeney, Pro Se

Docket and File

RECEIVED
DEC 28 2016
U.S.D.C.
WP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TZIVA RAPOPORT-HECHT,
MAGGIE TSAN, and ERICA
WILDSTEIN, individually and
on behalf of all others similarly
situated,

Plaintiffs,

v.

SEVENTH GENERATION, INC.,

Defendant.

No. 7:14-cv-09087-KMK

---

**OBJECTION OF PATRICK S. SWEENEY TO PROPOSED SETTLEMENT AND
NOTICE OF INTENT NOT TO APPEAR AT FAIRNESS HEARING**

---

NOW COMES, Pro Se Objector PATRICK S. SWEENEY, (hereinafter referred to as the "Objector"), and hereby files these objections to the proposed settlement in this matter.

### PROOF OF MEMBERSHIP IN THE CLASS

Objector has reviewed that certain notice of class action and proposed settlement that is not dated (the "Notice"). As a result, Objector believes that he is a member of the class, as it is defined in that Notice. The Objector has filed a claim in this matter before the claim deadline. The Objector's address, e-mail address and telephone number are listed at the conclusion of this objection.

### NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does NOT intend to appear at the Fairness Hearing presently scheduled for **January 26, 2017** at 2:00 PM at the United States District Court for the Southern District of New York, before the Honorable Kenneth

1

M. Karas, United States District Judge, in Courtroom 521, in the Hon. Charles L.

Brieant Jr. Federal Building and United States Courthouse, 300 Quarropas Street,

White Plains, New York, 10601.

## REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor adequate:

1. Claims administration process fails to require reliable future oversight, accountability and reporting about whether the claims process actually delivers what was promised. The proposed settlement orders no counsel, not various class counsel nor any defense attorney (notwithstanding the large amount of attorney fees to be earned by the numerous law firms involved in this case) to monitor the settlement process to its ultimate completion.

   It would obviously be more prudent to withhold a portion of Class Counsel's fee until the entire distribution process is complete. Furthermore, it would also be judicious to require Class Counsel (and perhaps Defense Counsel as well) to report back to this Honorable Court with a final summary and accounting of the disbursement process (even if brief) in order to confirm that this matter has been successfully concluded and to allow this Honorable Court to "put its final stamp of approval" on the case.

   Objector is aware that this is not the "usual" procedure in Class Action proceedings. Nonetheless, Objector submits the suggested process is an improvement to the present procedure which is the status quo in Class Action cases. Also nothing in the above proposed procedure violates the letter or spirit of the Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711–1715,(the "Act") Rule 23 F.R.C.P.(the "Rule") nor the body of case law developed (all three collectively referred to herein as "Class Action Policy"). Objector hereby urges this Honorable Court to adopt such a procedure as a "best practice standard "for Class Action settlement process.

2. No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing the settlement. Objector hereby contends that the withholding of a reasonable sum of awarded attorneys fees would elevate the concerns raised herein regarding Paragraphs No. 1.

3. Attorney fees do not depend upon how much relief is actually paid to the Class Members. It appears that the proposed settlement will award Class Counsel its fee notwithstanding the amount of relief.

4.  The fee calculation is unfair in that the percentage of the settlement amount is far too high. The Objector states that in the 54 Docket Entries, very few entries, were substantive in nature. Of the 54 Docket Entries most were procedural in nature. This is hardly the record of a case justifying Class Counsel's requested Attorneys' Fees and Costs in the amount of $1,500,000.00. Incredibly the requested fees represent approximately $27,777.00 per Docket Entry.

5.  The Objector hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## CONCLUSION

**WHEREFORE**, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1.  Sustain these Objections;

2.  Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3.  Award an incentive fee to this Objector for his role in improving the Settlement, if applicable.

Respectfully submitted,

Patrick S. Sweeney /s/

Patrick S. Sweeney, Pro Se
6666 Odana Road
Suite 116
Madison, WI  53719
310-339-0548
patrickshanessweeney@gmail.com

3

## CERTIFICATE OF SERVICE

I hereby certify that on December 26, 2016, I caused to be filed the foregoing with the Clerk, United States District Court for the Southern District of New York, by depositing this document in the kiosk for overnight delivery. When the Clerk files this document in the CM/ECF filing system all parties in this case who use the CM/ECF filing system will be noticed. In addition, all counsel listed in the Legal Notice were served by email at the e-mail address listed in their firm's website.

                                                 __Patrick S. Sweeney__   /s/
                                                 Patrick S. Sweeney, Pro Se



RECEIVED
DEC 2 0 2016
U.S.D.C.
WP

CLERK OF COURTS
U.S. DISTRICT COURT
SOUTHERN DIST. OF NEW YORK
BRIEANT JR. FEDERAL COURTHOUSE
300 QUARROPAS STREET
WHITE PLAINS, NY 10601



**FedEx** Express

USM WP
SDNY

**earthsmart**

FedEx carbon-neutral
envelope shipping

Case 7:14-cv-09087-KMK Document 55 Filed 12/28/16 Page 6 of 6

ORIGIN ID:LNRA  (310) 338-0548
PATRICK SWEENEY

6666 ODANA RD
SUITE 116
MADISON, WI 53719
UNITED STATES US

SHIP DATE: 27DEC16
ACTWGT: 0.10 LB
CAD: 6985462/SSFC1722

BILL CREDIT CARD

TO  CLERK OF COURT, US DIST.OF NEW YORK
    SOUTHERN DIST. OF NEW YORK
    BRIEANT JR FEDERAL COURTHOUSE
    300 QUARROPAS ST
    WHITE PLAINS NY 10601
(310) 338-0548        REF:
POST                     DEPT:



**FedEx**
Express

**E**

WED – 28 DEC 3:00P
STANDARD OVERNIGHT

TRK# 7851 5101 9272
0201

XE NESA

10601
NY-US  SWF

534  1  C
FE 635  16:00  9272
12:28

RECEIVED
DEC 2 8 2016
USDC SDNY WP



**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

DIVISION IN RE OPTICAL DISK )
DRIVE PRODUCTS ANTITRUST )
LITIGATION                    )          Case No.: 3:10md2143 RS (MDL 2143)

---

### OBJECTIONS OF PATRICK S. SWEENEY, PRO SE TO THE
### PROPOSED SETTLEMENT AND NOTICE OF INTENT NOT
### TO APPEAR AT FAIRNESS HEARING

---

NOW COMES, Pro Se Objector PATRICK S. SWEENEY and hereby files these objections to the proposed settlement in this matter.

### I.   PROOF OF MEMBERSHIP IN CLASS

Patrick S. Sweeney, Pro Se ("Objector") has reviewed the Notice of Class Action Settlement ("Notice") in this matter and believes he is a member of the class as defined in that Notice. He intends to file a timely claim when the claims period is open. His address and telephone number are listed at the conclusion of this objection.

### II.   NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does not intend to appear at the Fairness Hearing presently scheduled for 1:30 p.m. PDT on December 8, 2016, at the United States Courthouse, Courtroom 3-17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102.

### III. REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor adequate:

1.    Claims administration process fails to require reliable future oversight, accountability and reporting about whether the claims process actually delivers what was promised. The proposed settlement orders no counsel, not various class counsel nor any defense attorney (notwithstanding the large amount of attorney fees to be earned by the numerous law firms involved in this case) to monitor the settlement process to its ultimate completion.

It would obviously be more prudent to withhold a portion of Class Counsel's fee until the entire distribution process is complete. Furthermore, it would also be judicious to require Class Counsel (and perhaps Defense Counsel as well) to report back to this Honorable Court with a final summary and accounting of the disbursement process (even if brief) in order to confirm that this matter has been successfully concluded and to allow this Honorable Court to "put its final stamp of approval" on the case.

Objector is aware that this is not the "usual" procedure in Class Action proceedings. Nonetheless, Objector submits the suggested process is an improvement to the present procedure which is the status quo in Class Action cases. Also nothing in the above proposed procedure violates the letter or spirit of the Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711–1715,(the "Act")  Rule 23 F.R.C.P.(the "Rule") nor the body of case law developed (all three collectively referred to herein as "Class Action Policy"). Objector hereby urges this Honorable Court to adopt such a procedure as a "best practice standard "for Class Action settlements.

2.    The Notice is not adequate to inform a potential Class Member of the nature of the case. Further when using the MDL Case number as listed in the Notice almost nothing can be found on Pacer corresponding to that Case number.

3.    No amount of Attorney's Fees are to be withheld to assure Class Counsel's continuing oversight and involvement in implementing the settlement. Objector hereby contends that the withholding of a reasonable sum of awarded attorneys fees would elevate the concerns raised herein regarding Paragraphs Nos. 1 & 2 above.

4.    Attorney Fees do not depend upon how much relief is actually

paid to the Class Members. It appears that the proposed settlement will award Class Counsel its fee of $5.85 million dollars notwithstanding the amount of relief which is actually paid to the Class Members. This practice would be considered inequitable at best and excessive at worse in many other area of the law when awarding attorney fees.

5. The Attorney's Fee calculation is unfair in that the percentage of the settlement amount is far too high. After a review of the Docket it is impossible to decipher how much work Class Counsel did to achieve the result.

6. No fee request is reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, actual time entries, hours accumulated and reasonable costs incurred), which can be evaluated by Class Members and the Court to determine the reasonable nature (or not) of the request.

7. Some *cy pres* procedure needs to be articulated so that Class Members and the Court can intelligently comment, object or approve the appropriateness of the *cy pres* procedure, recipient and amount of the *cy pres* distribution. The *cy pres* distribution and recipient should have a direct and substantial nexus to the interests of absent class members and thus properly provide for the 'next best distribution' to the class. Whatever method is used to arrive at determining an appropriate *cy pres* procedure and recipient can be a legitimate discussion between informed parties and therefore appropriate. Allowing the process to have funds escheat to the state or federal government is not appropriate nor consistent with Class Action Policy.

8. There are no receipts supporting the requests for litigation costs and expenses that Class Counsel intends to request to be paid or reimbursed from the Settlement Fund. Not only should the costs and expenses be estimated as closely as possible but that estimate should be itemized in as much detail as possible. Finally, a final accounting should submitted to the Court for final approval. Furthermore, it is unclear from the Notice who is paying for the cost of the settlement administration- the Defendant or the Settlement Fund.

9. The Objector hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by

reference as if they were fully described herein.

## IV.    CONCLUSION

**WHEREFORE,** This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;

2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3. Award an incentive fee to this Objector for his role in improving the Settlement, if applicable.

Respectfully submitted,

Patrick S. Sweeney, Pro Se
6666 Odana Road
Suite 116
Madison, Wi 53719
310-339-0548
patrickshanesweeney@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2017, I caused to be filed the

foregoing with the Class Action Clerk, United States District Court for the

Northern District of California, United States Courthouse, Courtroom 3-17th

Floor, 450 Golden Gate Avenue, San Francisco, CA 94102 pursuant to the

instructions in the Notice.

Patrick S. Sweeney, Pro Se

FILED

2016 OCT 25  P 2: 52

SUSAN Y. SOONG
CLERK, US DISTRICT COURT
NO. DIST. OF CA.

Steven of
1466 Obanion Road
Madison, WI, 33714

Class Action Clerk
U.S.D.C. - Northern California
450 Golden Gate Avenue
San Francisco, CA  94102

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

MONICA BARBA, JONATHAN )
REISMAN, KAREN and RAYNA )
DEREUS, JODI and MINDI LEIT,)
and BARRIE and BRIAN SHAN- )
AHAN, on behalf of themselves )
and all others similarly situated, )
)                                    CASE NO. 13-21158-CIV-LENARD/GOODMAN
Plaintiffs, )
)
)
v. )
)
)
SHIRE U.S., INC., a New Jersey )
Corporation, SHIRE, LLC, )
a Kentucky Limited Liability )
Company, and DOES 1 through )
100, inclusive, )
)
Defendants. )
)

**OBJECTION OF PATRICK S. SWEENEY AND MINOR CHILD TO PROPOSED
SETTLEMENT AND NOTICE OF INTENT NOT TO APPEAR AT FAIRNESS
HEARING**

NOW COMES, Pro Se Objector PATRICK S. SWEENEY, INDIDIDUALLY

AND ON BEHALF OF HIS SON MKS (Patrick S. Sweeney is the legal guardian for his son

MKS), appearing in this matter PRO SE, (hereinafter referred collectively as the "Objector"),

and hereby files these objections to the proposed settlement in this matter.

## PROOF OF MEMBERSHIP IN THE CLASS

Upon information and belief the Objector has reviewed that certain notice of class

action and proposed settlement which is not dated (the "Notice"). As a result, Objector

believes that they are members of the class, as it is defined in that Notice. The Objector has

filed two claims in this matter before the claim deadline and those claim numbers are SBA-

40022166-7 and SBA-40021831-3. The Objector's address, e-mail address and telephone

number are listed at the conclusion of this objection.

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does NOT intend to appear at the Fairness

Hearing presently scheduled for November 9, 2016, at 2:30 a.m. EDT in Courtroom 12-1 at

the United States District Court for the Southern District of Florida, 400 North Miami

Avenue, Miami, FL 33128.

## REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor
adequate:

1.  Claims administration process fails to require reliable future oversight,
    accountability and reporting about whether the claims process actually
    delivers what was promised. The proposed settlement orders no counsel, not
    various class counsel nor any defense attorney (notwithstanding the large
    amount of attorney fees to be earned by the numerous law firms involved in
    this case) to monitor the settlement process to its ultimate completion.

    It would obviously be more prudent to withhold a portion of Class Counsel's
    fee until the entire distribution process is complete. Furthermore, it would
    also be judicious to require Class Counsel (and perhaps Defense Counsel as
    well) to report back to this Honorable Court with a final summary and
    accounting of the disbursement process (even if brief) in order to confirm
    that this matter has been successfully concluded and to allow this Honorable
    Court to "put its final stamp of approval" on the case.

    Objector is aware that this is not the "usual" procedure in Class Action
    proceedings. Nonetheless, Objector submits the suggested process is an
    improvement to the present procedure which is the status quo in Class
    Action cases. Also nothing in the above proposed procedure violates the
    letter or spirit of the Class Action Fairness Act of 2005, 28 U.S.C. Sections
    1332(d), 1453, and 1711–1715,(the "Act")  Rule 23 F.R.C.P.(the "Rule")
    nor the body of case law developed (all three collectively referred to herein
    as "Class Action Policy"). Objector hereby urges this Honorable Court to
    adopt such a procedure as a "best practice standard "for Class Action
    settlements.

2.   No timeframe for completing administration of the monetary relief is set, so Class Members cannot know when payment would arrive. Moreover the Settlement Administrator is not held to any specific timeframe to complete the settlement process.

3.   No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing the settlement. Objector hereby contends that the withholding of a reasonable sum of awarded attorneys fees would elevate the concerns raised herein regarding Paragraphs Nos. 1 & 2 above.

4.   Attorney fees do not depend upon how much relief is actually paid to the Class Members. It appears that the proposed settlement will award Class Counsel its fee notwithstanding the amount of relief. This practice would be considered inequitable at best and excessive at worse in many other area of the law when awarding attorney fees.

5.   The fee calculation is unfair in that the percentage of the settlement amount is far too high. The Objector states that in the 431 docket entries very few entries were substantive in nature. In fact, much of the Docket Entries were arguments of what a jury might see in the way of evidence. Although there was much maneuvering about a Summary Judgment no Order was ever issued regarding the Motion for Summary Judgment. Almost all of the remaining Docket Entries were procedural in nature. This is hardly the record of a case justifying Class Counsel's requested Attorneys' Fees in the amount of $5,162,500.00 plus unspecified amount of litigation costs and expenses. The fees represent approximately $12,000 per Docket Entry.

The request of class counsel for reimbursement of costs and expenses incurred in pursuing this lawsuit has no ceiling and no estimated amount was proffered. Without regard to costs and expenses the actual percentage of the monetary value of the amount of money left for the Class Members' distribution is difficult to assess. Assuming, however, the litigation costs and expenses are $1,000,000 the total amount left for the Class Members is actually $8,052,500.00. The settlement percentage when compared to this amount shows the attorney fees represent approximately 64% of the amount of money available to the Class Members.

6.   No fee request is reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, hours accumulated and reasonable cost incurred), which can be evaluated by Class Members and the Court to determine the reasonable nature (or not) of the request.

7.   Attorneys' fees are disproportionate to the value of the Recovery of the Class (See Paragraphs 3, 4. 5 and 6 above).

8.   There are no estimates or caps on the amount of costs and expenses that Class Counsel intends to request to be paid or reimbursed from the Settlement Fund. Not only should the costs and expenses be estimated as closely as possible but that estimate should be itemized in as much detail as

possible. Also, a ceiling needs to be articulated in order to promote efficiency in the claim process. Finally, a final accounting should submitted to the Court for final approval.

9.    The Objector hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## CONCLUSION

**WHEREFORE**, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;

2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3. Award an incentive fee to this Objector for his role in improving the Settlement, if applicable.

Respectfully submitted,

Patrick S. Sweeney /s/

Patrick S. Sweeney, Pro Se
6666 Odana Road
Suite 116
Madison, WI  53719
310-339-0548
patrickshanesweeney@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2016, I caused to be filed the foregoing with the Clerk, United States District Court for the Southern District of Florida, by sending this document via the CM/ECF filing system so that all parties in this case who use the CM/ECF filing system will be noticed.

Patrick S. Sweeney  /s/
Patrick S. Sweeney, Pro Se



**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

JAMES JENKINS, on behalf of
himself and all other similarly
situated individuals

    Plaintiff,

V.                                        Civil Action No. 3:15CV00443-MHL

EQUIFAX INFORAMTION
SERVICES, LLC,

    Defendant.

---

### OBJECTIONS OF PATRICK S. SWEENEY, PRO SE, TO THE PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT FAIRNESHEARING

---

## I.   PROOF OF MEMBERSHIP IN CLASS

Patrick S. Sweeney, Pro Se ("Objector") has reviewed the Notice of Class

Action Settlement ("Notice") in this matter and believes he is a member of the

class as defined in that Notice. He has not filed a timely claim AS NO CLAIM

IS REQUIRED TO BE FILED. His address and telephone number are listed at

the conclusion of this objection.

## II.   NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does not intend to appear at the Fairness

Hearing presently scheduled for October 28, 2016, at United States Courthouse

for the Eastern District of Virginia, 701 East Broad Street Richmond, VA 23219

## III.  <u>REASONS FOR OBJECTING TO THE SETTLEMENT</u>

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor adequate:

1.  Claims administration process fails to require reliable future oversight, accountability and reporting about whether the claims process actually delivers what was promised. The proposed settlement orders no counsel, not various class counsel attorneys nor any defense attorney (notwithstanding the large amount of attorney fees to be earned by the numerous law firms involved in this case) to monitor the settlement process to its ultimate completion. Seeing this is a case with no monetary benefit to the Class post suit supervision should be required as it is all the Class Member receive.

It would obviously be more prudent to withhold a portion of Class Counsel's fee until the entire credit monitoring process is complete. Furthermore, it would also be judicious to require Class Counsel (and perhaps Defense Counsel as well) to report back to this Honorable Court with a final summary and accounting of the credit monitoring process (even if brief) in order to confirm that this matter has been successfully concluded and to allow this Honorable Court to "put its final stamp of approval" on the case.

Objector is aware that this is not the "usual" procedure in Class Action proceedings.  Nonetheless, Objector submits the suggested process is an improvement to the present procedure which is the status quo in Class Action cases. Also nothing in the above proposed procedure violates the letter or spirit of the Class Action Fairness Act of 2005, 28 <u>U.S.C.</u> Sections 1332(d), 1453, and 1711–1715,(the "Act")  Rule 23 F.R.C.P.(the "Rule") nor the body of case law that has developed in the class action arena (all three collectively referred herein as "Class Action Policy") Objector hereby urges this Honorable Court to adopt such a procedure as a "best practice standard " for Class Action settlements.

2.  The Settlement Administrator's phone bank does not allow a

person to talk to a real person when looking for guidance with a claim.

The Notice period is far to short to allow sufficient notification to potential class members.

3. No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing the settlement. Objector hereby contends that the withholding of a reasonable sum of awarded attorney's fees would elevate the concerns raised herein regarding Paragraph No. 1 above.

4. Attorney fees do not depend upon how many members are discovered. It appears that the proposed settlement will award class counsel its fee notwithstanding the degree of relief actually achieved by the Class. This practice would be considered inequitable at best and excessive at worse in many other areas of the law when awarding attorney fees.

5. The fee calculation is unfair. The idea of Class Counsel receiving all the monetary benefit is a time honored "red flag" of an unjust settlement

6. This case has been litigated for only nine months before a settlement was announced. After a review of the Pacer Docket there appears to be only 51 docket entries. In addition, very few entries were substantive in nature. In fact, only the Plaintiff's Complaint, Plaintiff's Motion to Preliminary Approval of the Settlement, Motion for Class Certification and Award Attorney's Fees had any significant legal basis to its content. The remaining docket entries were procedural in nature. This Objector's review indicates that there were only 11 entries solely generated by Class Counsel. There was no Answer filed. No Motion to Dismiss brought by Defendant. No Motion for Summary Judgment by either party. There was no prolonged discovery disputes (it appears there was no extensive discovery at all!). There was no trial. There, of course were no post-trial motions. This is hardly the record of a case justifying Class Counsel's requested Attorneys' Fees and expenses in the amount of $2,800,000. Furthermore, Class Counsel's Memorandum of Law in Support of the Motion for Attorney's Fees appears to be a catalogue of cases whereby other lawyers were successful in obtaining excessive fee awards and not a compelling recitation of why the fees and costs

iii

are appropriate

7.      The fee request is not reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, hours accumulated and reasonable costs incurred), which can be evaluated by Class Members and the Court to determine the reasonable nature (or not) of the fee request.

8.      The Objector herein hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## CONCLUSION

**WHEREFORE,** This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1.  Sustain these Objections;

2.  Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3.  Award an incentive fee to this Objector for his role in improving the Settlement, if applicable.

Respectfully submitted by:

Patrick S. Sweeney, Pro Se
6666 Odana Road
Suite 116
Madison, WI 53711
310-339-0548
patrick@sweeneylegalgroup.com

iv

# **CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2016, I caused to be filed, per the instructions in the Notice published in this matter, the foregoing with the Clerk of Courts via U.S. First Class Mail. It is anticipated that the Clerk of the Court of the United States District Court for Eastern District of Virginia will file this document in the docket for this case all parties in this case who use the CM/ECF filing system will be noticed. In addition counsel as described in the notice will also be served visa U.S. First Class Mail.

v

SWEENY
6666 ODANA ROAD STe 116
MADISON, WI 53711

MILWAUKEE WI 530

30 SEP 2016 PM 5 L

CLERK OF COURT
UNITED STATES DISTRICT COURT
VIRGINIA EASTERN DISTRICT
701 EAST BROAD STREET
RICHMOND, VA 33219

23219-352899

FILED
CLERK, U.S. DISTRICT COURT

AUG 1 1 2016

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| STEVEN RUSSELL, | ) | CV ED 15-01143-RGK (SPx) |
| Plaintiff(s), | ) ) | OBJECTION TO CLASS SETTLEMENT |
| vs. | ) ) | |
| KOHL'S DEPARTMENT STORES, INC., et al., | ) ) ) | |
| Defendant(s). | ) ) | |

# THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

STEVEN RUSSELL, et al.)

      Plaintiff,        )

Vs.                 )        Case No. 5:15-cv-01143-
RSK-SP

 KOHL'S DEPARTMENT)

STORES, INC., et al.,    )

      Defendants.      )

---

## OBJECTIONS OF PATRICK S. SWEENEY, PRO SE TO THE PROPOSED SETTLEMENT AND NOTICE OF INTENT NOT TO APPEAR AT FAIRNESS HEARING

---

## I.   PROOF OF MEMBERSHIP IN CLASS

Patrick S. Sweeney, Pro Se ("Objector") has reviewed the Notice of Class Action Settlement ("Notice") in this matter and believes he is a member of the class as defined in that Notice. He has filed a timely claim. His address and telephone number are listed at the conclusion of this objection.

## II.  NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does NOT intend to appear at the Fairness Hearing presently scheduled for September 12, 2016 at 9:00 p.m.

i

PDT, at United States Courthouse, Courtroom 850, 255 East Temple, Los Angeles, California 90012.

### III.     INTRODUCTION

#### A. Summary of the Action and the Settlement

Plaintiffs allege claims that Kohl's Department Stores used false "regular" and "original" prices for its private and exclusive branded products. Plaintiffs further alleges that Kohl's Department Stores engaged in a scheme of false price comparison advertising starting June 11, 2011 through April 11, 2016. Plaintiff claims that Kohl's Department Stores' conduct violated various California laws that prohibit false advertising and unfair competition. Kohl's Department Stores denies that it has done anything wrong.  Class Members who file valid claims will receive a Kohl's Gift Card Credit paid from what is remaining of a $6,150,000 settlement fund after deducting the costs of administering the Settlement of up to $1,000,000, court-approved attorneys' fees of up to 25% of the Settlement Fund ($1,462,500 in fees and costs up to $75,000), and payments to the Class Representatives (up to $7,500 per Class Representative, for a total of $15,000). The amount of the Kohl's Gift Card Credit will be based on the amount of money left in the Settlement Fund after making the deductions listed above and the total number of valid claims filed

## B. The Standard for Approving a Proposed Class Action Settlement

The district court has a duty to ensure the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e) (2) Appellate courts accord considerable deference to the district court's "knowledge of the litigants and of the strengths and weaknesses of their contentions". . . . and recognize that the district court "is in the best position to evaluate whether the settlement constitutes a reasonable compromise." *Grant v. Bethlehem Steel Corp.v. Bethlehem Steel Corporation*, 823 F.2d 20, 23 (2d Cir. 1987). "Because class actions are rife with potential conflicts of interest between class counsel and Class Members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfashi v. Fleet Mortgage Corp.,* 356 F.3d 781, 785 (7th Cir. 2004).

"Careful scrutiny by the court is 'necessary to guard against settlements that may benefit the class representatives or their attorneys at the expense of the absent class members.'" *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983) (quoting *U.S. v. City of Miami*, 614 F.2d 1322, 1331 (5th Cir. 1980), modified on other grounds, 664 F.2d 435 (5th Cir. 1981) (*en banc*)). "[T]he district judge has a heavy duty to ensure that any settlement is 'fair, reasonable, and adequate' and that the fee awarded plaintiffs' counsel entirely appropriate." *Piambino v. Bailey*, 757 F.2d 1112, 1139 (11th Cir. 1985). This duty is "akin to the high duty of care

that the law requires of fiduciaries." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1320 (S.D. Fla. 2007) (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006))

Claiming a settlement is at "arm's length" without express collusion is not sufficient. Due to the defendants' indifference as to the allocation of funds between the class, the named representatives, and class counsel, it is enough that the settlement evinces "subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013). *Accord., Piambino*, 757 F.2d at 1143 (noting defendants are "uninterested in what portion of the total payment will go to the class and what percentage will go to the class attorney.") (quoting *Foster v. Boise-Cascade, Inc.*, 420 F. Supp. 674, 686 (S.D. Tex. 1976), aff'd 577 F.2d 335 (5th Cir. 1978)).

"In reviewing a proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable." Am. Law Institute, Principles of the Law of Aggregate Litig. § 3.05(c) (2010) ("ALI Principles"). "The burden of proving the fairness of the settlement is on the proponents." *Pampers*, 724 F.3d at 718 (compiling cases and authorities); see also *Holmes*, 706 F.2d at 1147.

A higher level of scrutiny is necessary when a settlement is proposed before class certification. *See In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786-807 (3d Cir. 1995) ("GM Trucks"). The Court should be mindful that "the class settlement process is

'more susceptible than adversarial adjudications to certain types of abuse.'" *Holmes*, 706 F.2d at 1147 (quoting *Pettway v. Am. Cast Iron Pipe Co.,* 576 F.2d 1157, 1169 (5th Cir. 1978)).

The six-factor test in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984), while often considered a guide to evaluation of class action settlements, is not exhaustive and does not provide an exclusive list of reasons to reject a settlement. *See Leverso v. Southtrust Bank,* 18 F.3d 1527, 1530-31 (11th Cir. 1994) (concluding the district court abused its discretion despite "thoroughly address[ing]" all six factors and concluding that each weighed in favor of approval). This Circuit requires that district courts "always consider the possibility that that an agreement reached by the class attorney is not in the best interest of the class," and beware of settlements that enrich class counsel more than the class. *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1215-16 (5th Cir. 1978). See also *Piambino*, 757 F.2d at 1140

Courts may refuse to approve a settlement if insufficient notice is provided to Class Members to protect their due process rights. Fed. R. Civ. Proc. 23(e)(1) specifies that "direct notice" of a proposed settlement must be provided "in a reasonable manner to all Class Members who would be bound by the proposal."

## IV.   ARGUMENT AND OBJECTIONS

### The Attorney's Fees Are Excessive.

The $1,462,500 in fees is excessive. Class Counsel claims this fee amount would amount to 25% of the monetary recovery. This statement is misleading. Despite Class Counsel's claims that the settlement offers

$6,150,000 in benefits to the Class, at this point, we have no information enabling us to determine the monetary benefit the Class will receive for the gift cards. Whatever it is- it is certainly not a 100% on the dollar. $1,462,500.00 in attorney fees will not be 25% of the Class Recovery.

By way of example; Assume Class Counsel is awarded their requested $1,462,0003 in fees and litigation costs are $75,000, Add to that the cost of administrating the settlement which is $ $1,000.000 and Class member awards are $15,000. The remaining amount for the Class will be $2,597,500 given in store gift cards and only $2 million of that is reclaimed. Then the $1,4625000.00  attorney fee is actually 73% of the actual money value (in the form of gift cards) received by the Class. That percent is almost obscene.

Moreover, the fee application must be delayed until the court reviews all actual claims data. Once all information is known the Court can make a more informed decision.

It is unfair to base fees on a theoretical fund, class counsel cite the Approval Order in the *Saccoccio* case, *supra* (noting "The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class."), and *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 676 (1980). Some courts awarding fees on a percentage-of- recovery basis have based the award on an entire fund, not just the fund claimed by the class. E.g., *Boeing v. Van Gemert*, 444 U.S. 572 (1980) and *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-

96 (11th Cir. 1999), cert. denied 530 U.S. 1223 (2000).

The rule enunciated in *Boeing* and in this Circuit's holding in *Waters* needs to be evaluated in light of recent changes to the Federal Rules of Civil Procedure and the enactment of the Class Action Fairness Act in 2005 (28 U.S.C. §1711 et seq.). In 2003 Congress amended Rule 23 with the creation of Rule 23(h). The new rules reflect a common-sense approach: attorneys' fees should be tied directly to what clients receive not potential benefits. The abuse of the application based on potential or possible benefits prompted legislative rejection of compensating lawyers on the face value of the settlement, regardless of the take-up rate of the benefits by class members.

Even before Rule 23(h), *Boeing* and *Waters* did not apply where "no money was paid into escrow or any other account" and each member of the class has no claim to a set piece of the "lump-sum judgment." *Strong v. BellSouth Telcoms.,* 137 F.3d 844, 852 (5th Cir. 1998); *Waters*, 190 F.3d at 1296 ("[U]nlike the case at bar, Strong never established a "common fund" from which money would be drawn. The parties here established that $ 40 million was the fund upon which the individual claimants' awards would be based.") As there is no real common fund established, even before Rule 23(h) *Boeing* and *Waters* would not have supported the approach adopted here.

Long before the adoption of Rule 23(h), courts deferred or staggered fees to account for success or failure of the claims process. E.g., *Duhaime v. John Hancock Mut. Life Ins.Co.*, 989 F. Supp. 375, 380 (D. Mass. 1997); *Bowling v. Pfizer, Inc.,* 922 F. Supp. 1261,1283-84

(S.D. Ohio 1996), *aff'd Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996).

Speculative, maximized estimates are not the appropriate measure of benefit. *Baby Prods.*, 708 F.3d at 179 n.13 ("[T]he actual benefit provided to the class is an important consideration when determining attorneys' fees.");; Federal Judicial Center, Manual for Complex Litigation § 21.71 (4th ed. 2004) ("In cases involving a claims procedure…, the court should not base the attorney fee award on the amount of money set aside to satisfy potential claims. Rather the fee should be based only on the benefits actually delivered.");; see also *Pampers*, 724 F.3d at 721 (rejecting settlement-value "assumptions…premised upon a fictive world").

Where claims rates are especially low, courts have often adjusted fees downwards. See, e.g., *Pearson v. Nbty, Inc.*, No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357, at *21-*27 (N.D. Ill. Jan. 3, 2014) (reducing 25% benchmark to 9.6% based on low claims rates); *Michel v. Wm Healthcare Solutions*, 2014 U.S. Dist. LEXIS 15606 (S.D. Ohio Feb. 7, 2014) (reducing from 33.3% request to 15% where claims rate was only 3.9%); *Tarlecki v. Bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 U.S. Dist. LEXIS 102531, at *12 (N.D. Cal. Nov. 3, 2009) (reducing fee request to less than 13%).

A fee award must be attuned to the result achieved for the class, to the money the settlement puts in class members' hands. See, e.g., *In re Baby Prods. Antitrust Litig.,* 708 F.3d 163, 179 (3d Cir. 2013); *cf.* 28 U.S.C. §1712(a). The Advisory Committee Notes explicitly state that:

"In a class action, the district court must ensure that the

amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility.

Courts discharging this responsibility have looked to a variety of factors. **One fundamental focus is the result actually achieved for class members, a basic consideration** in any case in which fees are sought on the basis of a benefit achieved for class members."

Notes of Advisory Committee on 2003 Amendments to Rule 23(h).

The notes advise courts to exercise caution in awarding fees, even to the extent of deferring the award of fees until class recovery can be determined:

> In many instances, the court may need to proceed with care in assessing the value conferred on class members. Settlement regimes that provide for future payments, for example, may not result in significant actual payments to class members. In this connection, the court may need to scrutinize the manner and operation of any applicable claims procedure. In some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known.

*Id.*; *accord Baby Prods.*, 708 F.3d at 179.

The continuing validity of *Boeing* and *Waters* is questionable. See, e.g., Samuel Isaacharoff, The Governance Problem in Aggregate Litigation, 81 FORDHAM L. REV. 3165, 3171-72 (2013) (describing *Boeing* as marking an "older line of cases" that eventually a more reasonable fee results from calculating a percentage of the actual recovery." *Wise v. Popoff*, 835 F. Supp. 977, 982 (E.D. Mich. 1993); *Waters*, 190 F.3d at 1296 (reciting the holding of *Strong v. BellSouth Telecomms.*, Inc., 137 F.3d 844 (5th Cir. 1998)).

The recent *Eubank v. Pella* is prescient. In that case, class counsel claimed the value of the settlement to the class was $90 million, but when

claims were accounted for the settlement value was more between $1.5 and $8.5 million. The trial court had accepted class counsel's representations about the aggregate value of the settlement, and awarded attorney's fees well in excess of the recovery achieved by the class. Justice Posner remarked:

> "Not only did the settlement agreement not quantify the benefits to the class members, but the judge approved it before the deadline for filing claims. He made no attempt to estimate how many claims were likely to be filed, though without such an estimate no responsible prediction of the value of the settlement to the members of the class could be made."

Eubank, at *6.

The court should be concerned as to the fairness of the fees requested where Counsel have not submitted lodestar information for the court's review. This Circuit may follow a percentage of the fund method in common fund cases, but where there is no "fund" the court should require substantiation of the attorney's work. The court should not just rubber stamp an award of $13.5 million in attorneys' fees based on Class Counsel's representations this represents only a small percentage of the benefits obtained for the class. Those benefits have yet to be determined.

The settlement under review in *Eubank v. Pella Corp.*, compensated class counsel and class representatives but left the compensation of the class unclear. In *Eubank*, Justice Posner highlighted the important role that objectors play in appealing inequitable settlements:

> "In this case, despite the presence of objectors, the district court approved a class action settlement that is inequitable— even scandalous. The case underscores the importance both of objectors (for they are the appellants in this case—without them there would have been no appellate challenge to the

x

settlement) and of intense judicial scrutiny of proposed class action settlements."

*Eubank*, at *3.

In *Eubank*, Justice Posner concluded: "Class counsel sold out the class."  The Court should keep the inherent conflict between the interests of class counsel and class members in mind in evaluating the Settlement. In *Eubank* Justice Posner concluded: "Class counsel sold out the class."  *Eubank*, at 8.

Accordingly the Court should keep the inherent conflict between the interests of class counsel and class members in mind in evaluating the Settlement.

## V.   JOINDER IN OTHER OBJECTIONS

Objector joins in and adopts other objections as though fully set forth here, and all other well-founded and meritorious objections

## VI.   CONCLUSIONS

For the foregoing reasons and all others to be presented at oral argument, these objectors request that the court sustain their objections and grant the following relief:

- Upon proper hearing, sustain these Objections.
- Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement
- Award any other relief to the Objector that the Court finds equitable.

Respectfully submitted
Dated: August 7 2016

Patrick Sweeney, Pro Se
2590 Richardson Street
Madison, Wisconsin 55711
Phone 424-488-4383
patrickshanesweeney@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2016, I caused to be filed, per the instructions in the Notice published in this matter, the foregoing with the Clerk of Courts via U.S. First Class Mail. It is anticipated that the Clerk of the Court of the United States District Court for Central District of California. Will file this document in the docket for this case all parties in this case who use the CM/ECF filing system will be noticed.



SUMEAKLY
2916 RICHARDSON ST.
MADISON, WI 53711

REC'V D

CLERK, U.S. DISTRICT COURT
AUG 1 1 2016
CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

USDC
CENTRAL DISTRICT OF CALIFORNIA
CLERK OF COURT
255 EAST TEMPLE STREET
LOS ANGELES, CA 90012

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**FILED**

MAY 3 1 2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

NICK PEARSON, FRANCISCO)
PADILLA, CECILIA LINARES,)
AUGUSTINA BLANCO,  )
ABEL GONZALEZ, and  )
RICHARD JENNINGS,  )
On Behalf of Themselves and )
All Others Similarly Situated, )
                             )
                             )
        Plaintiffs,  )
                             )
                             )
NBTY, INC., a Delaware  )
corporation; REXALL SUNDOWN,)
INC., a Florida corporation;) and )
TARGET CORPORATION,  )
a Minnesota Corporation,  )
                             )
        Defendants.  )

Case No.: 11 CV 07972
CLASS ACTION
Honorable Judge James B. Zagel

**OBJECTION OF PATRICK S. SWEENEY, PRO SE TO PROPOSED**
**SETTLEMENT AND NOTICE OF INTENT NOT TO APPEAR AT FAIRNESS**
**HEARING**

NOW COMES, Pro Se Objector PATRICK S. SWEENEY, hereby files these

objections to the proposed settlement in this matter.

## PROOF OF MEMBERSHIP IN THE CLASS

Upon information and belief Patrick S. Sweeney ("Objector") has reviewed that

certain notice of class action and proposed settlement which is not dated (the "Notice"). As a

result, he believes that he is a member of the class, as it is defined in that Notice. He intends

to file a claim this matter on or before September 28, 2016 (Claim deadline according to the

Notice). His address, e-mail address and telephone number are listed at the conclusion of this

objection.

1

# NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does NOT intend to appear at the Fairness

Hearing presently scheduled for June 30, 2016 at 9:30 a.m. CDT before Honorable Judge

James B. Zagel at the United States District Court for the Northern District of Illinois,

Eastern Division at Everett McKinley Dirksen Courthouse, 219 South Dearborn Street,

Chicago, IL 60604. In addition, pursuant to paragraph 8 of the Notice the Objector hereby

expressly request the Court to excuse me for not attending the Fairness hearing. In that this

request is a relatively unique requirement of an objection, Objector respectfully requests this

Honorable Court to notify the Objector at the address located at the conclusion of this

objection if his absence at the Settlement Hearing does not meet with Court approval.

# REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor
adequate:

1.  The Notice and claim process is needlessly incomplete as the Settlement
    Administrator's listed telephone number does not allow a person to speak to
    a real person to answer any specific questions a party might have. It merely
    mirrors, in a recording format, the information found on the Settlement
    Website. Further, the Notice states that the "covered products" list is located
    in attachment "A" to the Notice when in reality the Notice on the Website
    has NO Attachment "A". A party would have to log in to the website, go to
    court documents, review the list and click on the document described as
    "Product List". Then review the products list at that webpage. Moreover the
    Settlement Administrator is not held to any specific timeframe to complete
    the settlement process.

2.  Given these settlement administration shortcomings, the claims
    administration process fails to require reliable future oversight,
    accountability and reporting about whether the claims process actually
    delivers what was promised. The proposed settlement orders no counsel, not
    various class counsel nor any defense attorney (notwithstanding the large
    amount of attorney fees to be earned by the numerous law firms involved in
    this case) to monitor the settlement process to its ultimate completion. It
    would obviously be more prudent to withhold a portion of Class Counsel's
    fee until the entire distribution process is complete. Furthermore, it would
    also be judicious to require Class Counsel (and perhaps Defense Counsel as
    well) to report back to this Honorable Court with a final summary and

accounting of the disbursement process (even if brief) in order to confirm that this matter has been successfully concluded and to allow this Honorable Court to "put its final stamp of approval" on the case.

Objector is aware that this is not the "usual" procedure in Class Action proceedings. Nonetheless, Objector submits the suggested process is an improvement to the present procedure which is the status quo in Class Action cases. Also nothing in the above proposed procedure violates the letter or spirit of the Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711–1715,(the "Act") Rule 23 F.R.C.P.(the "Rule") nor the body of case law developed (all three collectively referred to herein as "Class Action Policy"). Objector hereby urges this Honorable Court to adopt such a procedure as a "best practice standard "for Class Action settlements.

3.   No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing the settlement. Objector hereby contends that the withholding of a reasonable sum of awarded attorneys fees would elevate the concerns raised herein regarding Paragraphs No. 2 above.

4.   Attorney fees do not depend upon how much relief is actually paid to the Class Members. It appears that the proposed settlement will award Class Counsel its fee notwithstanding the amount of relief. This practice would be considered inequitable at best and excessive at worse in many other area of the law when awarding attorney fees.

5.   The fee calculation is unfair in that the percentage of the attorney fee amount is far too high. The Objector states that in the 254 docket entries listed at Pacer very few entries were substantive in nature. The remaining docket entries were procedural in nature. This is hardly the record of a case justifying Class Counsel's requested Attorneys' Fees in the amount of $2,500,000.

6.   The Notice is inadequate in that no alleged violated statutes are referenced, no briefing schedule is included and that an Objector's only remedy is to write a letter/brief setting forth objections. At the very least, the Settlement should require the Defendants to admit or deny certain facts regardless of whether they admit to any specific violation of the Telephone Consumer Protection Act. These admissions, although not sufficient for any type of adjudication, are appropriate as a substantial penalty to the Defendant. Furthermore, identifying, articulating and admitting to the specific actions, will act as a deterrent to this Defendant and others who might contemplate committing the specified acts in the future.

7.   The Objector hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## CONCLUSION

**WHEREFORE**, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;

2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3. Award an incentive fee to this Objector for his role in improving the Settlement, if applicable.

Respectfully submitted,

Patrick S. Sweeney, Pro Se
2590 Richardson Street
Madison, WI 53711
310-339-0548
patrickshanesweeney@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 29, 2016, I caused to be filed the foregoing with the Clerk of the Court of the United States District Court for Northern District of Illinois (see below) by sending this document via U.S. First Class Mail so that this document would be postmarked within the timeframe described in the Notice published in this case. In addition, the undersigned has sent a copy via U.S. First Class Mail to the counsel as describe below in accordance with the Notice. Also, when the Clerk files this document in the docket for this case all parties in this case who use the CM/ECF filing system will be noticed.

Court:

Clerk of Court,
United States District Court
Northern District of Illinois
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, Illinois, 60604

Class Counsel:

Peter N. Freiberg
DENLEA & CARTON, LLP
2 Westchester Park Drive,
Suite 410
White Plains,
New York 10604

Rexall's Counsel:

Kara L. McCall
SIDLEY AUSTIN LLP
One S. Dearborn Street
Chicago, Illinois 60603

Signed by: _____
Patrick S. Sweeney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

LAURA EGGNATZ and KATRINA GARCIA,

individually, and on behalf of all others similarly situated,

Case No.: 12-21678-CIV

- LENARD/GOODMAN

*Plaintiffs,*

vs.

KASHI COMPANY, a California Corporation,

*Defendants.*

_____/

## OBJECTION OF PATRICK S. SWEENEY TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

NOW COMES, Pro Se Objector PATRICK S. SWEENEY, hereby files these objections to the proposed settlement in this matter (the "Objections").

### PROOF OF MEMBERSHIP IN CLASS

Upon information and belief Patrick S. Sweeney believes that he is a member of the class as defined in that certain Notice of Class Action Settlement which is undated. He intends to file a claim in this matter on or before January 19, 2016.   His address and telephone number are listed at the conclusion of this objection.

### NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does not intend to appear at the Fairness Hearing presently scheduled for January 27, 2016 at 2:30 p.m. EST before Honorable Joan A. Lenard

at the United States Courthouse, Courtroom 12-1, 400 North Miami Avenue, Miami, FL

33128.

## I.

Reason for Objecting to Settlement:

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable and adequate.

1. Claims administration process fails to require reliable oversight, accountability, and reporting about whether the claims process actually delivers what was promised.

2. Timeframes and deadlines benefit Defendants and Class Counsel, but not Class Members; No timeframe for completing administration of the Monetary Relief is set, so Class Members cannot know when payment would arrive.

3. No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing settlement.

4. Attorney fees do not depend upon how much relief is actually paid to the Class Members.

5. The fee calculation is unfair in that the percentage of the settlement amount is far too high. The Class may receive as little as $2,000,000.00 while the attorney's fees are fixed at $1,500,000.00. Therefore, the attorney fees are disproportionate to the value of the Recovery of the Class.

6. Fee request is not reasonable in the absence of documentation, including billing records, which can be evaluated by Class Members and the Court.

7. Notice is inadequate in that no alleged violated statutes are referenced, no briefing schedule is included and that an objector's only remedy is to write a letter setting forth Objections.

8. The Settlement Agreement lacks critical information which must be determined before final approval, such as where unclaimed funds will go.

The objector herein hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## II.

## <u>CONCLUSION</u>

**WHEREFORE**, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;

2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3. Award an incentive fee to this Objector for her role in improving the Settlement, if applicable.

Dated:   December 22, 2015,       By: _____

Patrick S. Sweeney, Pro Se
2590 Richardson Street
Madison, WI 53711
Telephone: (310-339-0548
Facsimile: (561)395-9093

Email:patrickshanesweeney@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2015, I filed the foregoing with the Clerk of the Court of the United States District Court for the Southern District of Florida and to Class Counsel and Defense Counsel at the addresses set forth below via U.S. First Class Mail.

By: _____

Patrick S. Sweeney, Pro Se
2590 Richardson Street
Madison, WI

Clerk of Courts
United States District Court
Southern District of Florida
400 North Miami Avenue
Miami, FL 33128

Class Counsel

Mark A. Milstein
Gillian L.Wade
Sara D. Avila

3

MILSTEIN ADELMAN, LLP
2800 Donald Douglas Loop North
Santa Monica, CA 90405

Defendant's Counsel
Dean K. Panos
JENNER & BLOCK, LLP
353 N. Clark Street
Chicago, Illinois 60654-2456

# UNITED STATES DISTRICT COURT
## SOUTHISN DISTRICT OF FLORIDA
## Case No. 1:15-cv-21264-COOKE/TORRES

FILED by _$\mathcal{PG}$_ D.C.

OCT 0 3 2017

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

JUSTIN MARK BOISE, individually
and on behalf of all othiss similarly
situated,

     Plaintiff,

v.

 ACE AMERICAN INSURANCE COMPANY,
and ACE USA, INC.,

     Defendant.

---

## OBJECTION OF PATRICK S. SWEENEY TO PROPOSED SETTLEMENT AND NOTICE OF INTENT NOT TO APPEAR

---

     NOW COMES, Pro Se Objector, Patrick S. Sweeney, Pro Se
and hereby files these objections to the proposed settlement in this matter.

## I.    PROOF OF MEMBERSHIP IN CLASS

    Upon information and belief Patrick S. Sweeney ("Objector") believes

he is a member of the class as defined in that certain Legal Notice of

Class Action Settlement which is not dated ( the "Notice"). Objector's

address and telephone number are listed at the conclusion of this objection.

## II.  NOTICE OF INTENT TO NOT APPEAR

Objector hereby gives notice that he does NOT intend to appear at the Fairness Hearing presently scheduled for October 4, 2017 at 10:00 a.m., at the Wilkie D. Ferguson Jr. United States Courthouse, 400 North Miami Avenue, Miami, Florida 33128.

## III.   OBJECTOR IS A CLASS MEMBER

After reviewing the Notice, the Objector states that he is a class member with standing to object to the Court's Order for Preliminary Approval of the Settlement by virtue of his multiple loans from BB&T during the class period.

## IV. OBJECTOR IS FILING OBJECTION OUT OF TIME

Objector is filing this objection "out of time "as he miscalculated the time to object under the terms of the Court's Preliminary Approval Order. Although, in hindsight, the Objector's calculation of when the

attorney fees request were to be filed was consistent with the dates expressed in the Preliminary Approval Order, the Objector missed a revising Order (Docket # 82).

The revising order changed the date of deadline for request of attorney fees from September 20, 2017 to August 3, 2017. It was Objector's intent to wait until the fee request was filed in order to determine if he had any basis to object to the fees (as Objector had no other issues with the preliminary approval order). However when Objector went to internet to review the attorney fee request he discovered that the attorney fee request deadline date was revised and the September 20, 2017 was changed to August 3, 2017. The revised deadline, by its very nature put the Objector's filing automatically "out of time".

Objector hereby contends that the Court's acceptance of the filing of this late objection causes no detrimental effect to Class Counsel (other than the obvious effect of determining this objection as timely).Objector hereby requests that this Court accept this out of time objection

Objector also hereby joins and adopts the objection of any other objector(s) to the extent it is not inconsistent with his own. He objects to any provision of the settlement that purports to limit the rights of objectors to object or to appeal an adverse ruling. Objection is made to any requirement or procedure to object that is not contained in the Notice and/or that is not satisfied here. Objector does not intend on attending the fairness hearing in person or through counsel and objects to the extent that requiring personal attendance at the fairness hearing would violate his due process rights and right to be heard on this objection.

## V.  REASONS FOR OBJECTING TO THE PROPOSED SETTLEMENT

### A. The requested Attorney Fees are Excessive

It is inadequate and unfair to award attorney fees in the amount of $ 2.9 million dollars (i.e. 30 percent of the settlement fund is set to be applied to attorneys' fees, leaving $6.86 million to be divided among class members).  30% is well beyond the typical fee percent granted in the 11th Circuit and  in similar TCPA cases.

**B. the Notice, Preliminary Approval Order and the "Revising Order" created confusion as to some of the deadlines established by the Court.**

As evidenced by Objector's confusion as to the date of the deadline for an attorney's fee application the three documents listed above were not clear as to when Class Counsel were required to file the request for fees. In addition, the circulation of notice of the revised Scheduling Order was woefully inadequate.

## VI.   CONCLUSION

**WHISEFORE**, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;

2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3. Award an incentive fee to this Objector for his role in improving the Settlement, if applicable.

Dated:   September 21, 2017          Respectfully submitted,

Patrick S. Sweeney, Pro Se
6666 Odana Road
Suite 116
Madison, WI 53719
Phone: 310-339-0548
Email:patrickshanesweeney@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2017, I caused to be filed the foregoing with the Clerk of the Court of the United States District Court for the Southern District by having the foregoing deposited in First Class, U. S. Mail. When the Clerk of Court scans this objection into the CM/ECF system all parties who are registered will receive a copy. In addition hard copies of this objection were mail to Counsel at the addresses listed below.

Patrick S. Sweeney, Pro Se

Clerk of Court
United States District Court
Southern District of Florida
400 N. Miami Avenue,
Miami, FL 33128

W. Craft Hughes
Jarrett L. Ellzey
HUGHES ELLZEY, LLP
2700 Post Oak Blvd.,
Suite 1120 Galleria Tower
Houston, Texas 77056

Matthew D. Ingber
A. Parasharami
Mayer Brown LLP
999 K Street, N.W.
Washington, DC 20006-1101

US POSTAGE >> PITNEY BOWES

$ 000.67

ZIP 53703
02 4W
0000352187 SEP 22 20

USMS
INSPECTED

RECEIV

CLERK OF COURT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT FLORIDA
400 N. MIAMI AVENUE
MIAMI, FL 33128

SWEENEY
6665 ODANA RD.
SUITE 116
MADISON, WI 53719

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**Case No. 0:13-cv-60721 MORENO/GARBER**

IRA MARC FLADELL, SARAH CROUCH,
GREG OLSON, MARGARET
ZAWISTOWSKI, TILENA ALI, DANNY
LANE and BEVERLY LANE on behalf of
themselves and all others similarly situated,

      Plaintiffs,

v.

WELLS FARGO BANK, N.A.; WELLS
FARGO INSURANCE, INC.; ASSURANT,
INC.; AMERICAN SECURITY INSURANCE
COMPANY; VOYAGER INDEMNITY
INSURANCE COMPANY, STANDARD
GUARANTY INSURANCE CO.; QBE
SPECIALTY INSURANCE COMPANY; QBE
INSURANCE CORPORATION; QBE FIRST
INSURANCE AGENCY, INC.; QBE
FINANCIAL INSTITUTION RISK SERVICES,
INC.; and PRAETORIAN INSURANCE
COMPANY,

      Defendants.


**OBJECTION OF JAMES H. KIRBY IV TO PROPOSED SETTLEMENT AND
NOTICE OF INTENT TO APPEAR**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ………………………………………………………… 1

     A.     Summary of the Action and the Settlement ………………………… 1

     B.     The Standard for Approving a Proposed Class Action Settlement ………… 1

II.     ARGUMENT AND OBJECTIONS …………………………………… 3

    A. The Settlement Consideration is Unclear …………………………… 3

          *1.*     *The Value of the Settlement to Individual Class Members* ………… 3

          *2.*     *The Aggregate Value of the Settlement is Unclear* ………………… 5

          *3.*     *The Claims Process Appears Unduly Burdensome* ………………… 6

    B. The Attorney's Fees …………………………………………………. 8

III.    JOINDER IN OTHER OBJECTIONS ……………………………… 12

IV.    CONCLUSIONS …………………………………………………. 12

## TABLE OF AUTHORITIES

### CASES

*Bennett v. Behring Corp.*
737 F.2d 982, 986 (11th Cir. 1984) …………………………………………………… 2

*Boeing v. Van Gemert*
444 U.S. 572 (1980) ……………………………………………………… 8, 9, 10

*Bowling v. Pfizer, Inc.*
922 F. Supp. 1261, 1283-84 (S.D. Ohio 1996) ………………………………… 10

*Bowling v. Pfizer, Inc.*
102 F.3d 777 (6th Cir. 1996) ……………………………………………… 10

*Duhaime v. John Hancock Mut. Life Ins. Co.*
989 F. Supp. 375, 380 (D. Mass. 1997) …………………………………… 10

*Eubank v. Pella Corp.*
2014 WL 2444388, --- F.3d ---- (2014) …………………………… 7, 8, 10, 11, 12

*Figueroa v. Sharper Image Corp.*
517 F. Supp. 2d 1292, 1320 (S.D. Fla. 2007) ………………………………… 2

*Foster v. Boise-Cascade, Inc.*
420 F. Supp. 674, 686 (S.D. Tex. 1976), aff'd 577 F.2d 335 (5th Cir. 1978) …………… 2

*Grant v. Bethlehem Steel Corp. v. Bethlehem Steel Corporation*
823 F.2d 20, 23 (2d Cir. 1987) ……………………………………………… 1

*Holmes v. Cont'l Can Co.*
706 F.2d 1144, 1147 (11th Cir. 1983) …………………………………… 1, 2

*In re Baby Prods. Antitrust Litig.*
708 F.3d 163, 179 (3d Cir. 2013) ………………………………………… 9, 10

*In re Dry Max Pampers Litig.*
724 F.3d 713, 718 (6th Cir. 2013) ……………………………………… 2, 10

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*
55 F.3d 768, 786-807 (3d Cir. 1995) ………………………………………… 2

*Leverso v. Southtrust Bank*
18 F.3d 1527, 1530-31 (11th Cir. 1994) ……………………………………… 2

*Michel v. Wm Healthcare Solutions*
2014 U.S. Dist. LEXIS 15606 (S.D. Ohio Feb. 7, 2014) ………………………… 10

ii

*Mirfashi v. Fleet Mortgage Corp.*
356 F.3d 781, 785 (7th Cir. 2004) …………………………………………….. 1

*Pearson v. Nbty, Inc.*
No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357, at *21-*27 (N.D. Ill. Jan. 3, 2014) ……….10

*Pettway v. Am. Cast Iron Pipe Co.*
576 F.2d 1157, 1169 (5th Cir. 1978) ………………………………………… 2, 3

*Piambino v. Bailey*
757 F.2d 1112, 1139 (11th Cir. 1985) ………………………………………  2, 3

*Saccoccio v. JPMorgan Chase Bank, N.A.*
No. 13-cv-21107 (S.D. Fla.) …………………………………………………. 8

*Strong v. BellSouth Telcoms.*
137 F.3d 844, 852 (5th Cir. 1998) …………………………………………      10, 11

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*
463 F.3d 646, 652 (7th Cir. 2006) …………………………………………….  2

*Tarlecki v. Bebe Stores, Inc.*
No. C 05-1777 MHP, 2009 U.S. Dist. LEXIS 102531 (N.D. Cal. Nov. 3, 2009) ………. 10

*U.S. v. City of Miami*
614 F.2d 1322, 1331 (5th Cir. 1980) modified on other grounds,
664 F.2d 435 (5th Cir. 1981) (*en banc*) …………………………………….. 1

*Waters v. Int'l Precious Metals Corp.*
190 F.3d 1291, 1295-96 (11th Cir. 1999), cert. denied 530 U.S. 1223 (2000) …  8, 9, 10, 11

*Williams v. Wells Fargo Bank, N.A.*
No. 11-cv-21233-RNS (S.D Fla.) …………………………………………….  6

*Wise v. Popoff*
835 F. Supp. 977, 982 (E.D. Mich. 1993) ……………………………………… 11

## STATUTES AND OTHER AUTHORITY

15 U.S.C. § 40            …………………………………………………….. 5
18 U.S.C. § 1961–1968     …………………………………………………….. 5
28 U.S.C. §1711 et seq.   …………………………………………………….. 9
28 U.S.C. §1712(a)        …………………………………………………….. 9

Federal Rules of Civil Procedure
    23             …………………………………………………….. 9
    23(e)(1)       …………………………………………………….. 3
    23(e)(2)       …………………………………………………….. 1

23(h) .............................................................................................. 9, 11
Notes of Advisory Committee on 2003 Amendments to Rule 23(h) ................ 9
30(b)(6) ........................................................................................ 6


Am. Law Institute, Principles of the Law of Aggregate Litig.
§ 3.05(c) (2010) ("ALI Principles") ..................................................... 2

Federal Judicial Center, Manual for Complex Litigation
§ 21.71 (4th ed. 2004) ..................................................................... 10

The Governance Problem in Aggregate Litigation
Samuel Isaacharoff, 81 FORDHAM L. REV. 3165, 3171-72 (2013) ....................... 9

## I.     INTRODUCTION

Objector James H. Kirby, IV is a class member as documented in his declaration.

### A.  Summary of the Action and the Settlement

Plaintiffs allege Wells Fargo took out force-placed insurance in connection with residential mortgages, when a homeowner's policy lapsed or the bank decided the borrower didn't have enough coverage.  Plaintiffs alleged that Wells Fargo (and related entities) achieved a financial windfall by cutting deals with insurance companies and over-charging borrowers for the coverage.  The Settlement consolidates several actions and precedes certification.  Class Members will be compensated for a percentage of the amount they were charged for the insurance policies, either in cash if they paid the premiums, or as a credit if the amounts are still owed.  Class Counsel ask for fees and costs of $19 million.

### B.  The Standard for Approving a Proposed Class Action Settlement

The district court has a duty to ensure the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2)  Appellate courts accord considerable deference to the district court's "knowledge of the litigants and of the strengths and weaknesses of their contentions". . . . and recognize that the district court "is in the best position to evaluate whether the settlement constitutes a reasonable compromise." *Grant v. Bethlehem Steel Corp. v. Bethlehem Steel Corporation*, 823 F.2d 20, 23 (2d Cir. 1987).   "Because class actions are rife with potential conflicts of interest between class counsel and Class Members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfashi v. Fleet Mortgage Corp.,* 356 F.3d 781, 785 (7th Cir. 2004).

"Careful scrutiny by the court is 'necessary to guard against settlements that may benefit the class representatives or their attorneys at the expense of the absent class members.'" *Holmes v. Cont'l Can Co*., 706 F.2d 1144, 1147 (11th Cir. 1983) (quoting *U.S. v. City of Miami*, 614 F.2d 1322, 1331 (5th Cir. 1980), modified on other grounds, 664 F.2d 435 (5th Cir. 1981) (*en banc*)). "[T]he district judge has a heavy duty to ensure that any settlement is 'fair, reasonable, and adequate' and that the fee awarded plaintiffs' counsel is

entirely appropriate." *Piambino v. Bailey*, 757 F.2d 1112, 1139 (11th Cir. 1985). This duty is "akin to the high duty of care that the law requires of fiduciaries." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1320 (S.D. Fla. 2007) (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006))

Claiming a settlement is at "arm's length" without express collusion is not sufficient. Due to the defendants' indifference as to the allocation of funds between the class, the named representatives, and class counsel, it is enough that the settlement evinces "subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013). *Accord., Piambino*, 757 F.2d at 1143 (noting defendants are "uninterested in what portion of the total payment will go to the class and what percentage will go to the class attorney.") (quoting *Foster v. Boise-Cascade, Inc.*, 420 F. Supp. 674, 686 (S.D. Tex. 1976), aff'd 577 F.2d 335 (5th Cir. 1978)).

"In reviewing a proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable." Am. Law Institute, Principles of the Law of Aggregate Litig. § 3.05(c) (2010) ("ALI Principles"). "The burden of proving the fairness of the settlement is on the proponents." *Pampers*, 724 F.3d at 718 (compiling cases and authorities); see also *Holmes*, 706 F.2d at 1147.

A higher level of scrutiny is necessary when a settlement is proposed before class certification. *See In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786-807 (3d Cir. 1995) ("GM Trucks"). The Court should be mindful that "the class settlement process is 'more susceptible than adversarial adjudications to certain types of abuse.'" *Holmes*, 706 F.2d at 1147 (quoting *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1169 (5th Cir. 1978)).

The six-factor test in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984), while often considered a guide to evaluation of class action settlements, is not exhaustive and does not provide an exclusive list of reasons to reject a settlement. *See Leverso v. Southtrust Bank,* 18 F.3d 1527, 1530-31 (11th Cir. 1994) (concluding the district court abused its discretion despite "thoroughly address[ing]" all six factors and concluding that each weighed

2

in favor of approval). This Circuit requires that district courts "always consider the possibility that that an agreement reached by the class attorney is not in the best interest of the class," and beware of settlements that enrich class counsel more than the class. *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1215-16 (5th Cir. 1978).  See also *Piambino*, 757 F.2d at 1140 ("The district court should have rejected the settlement as unfair because it was accomplished at the expense of the minority members of the plaintiff-class, primarily to provide Lead Counsel an attorney's fee.").

Courts may refuse to approve a settlement if insufficient notice is provided to Class Members to protect their due process rights.  Fed. R. Civ. Proc. 23(e)(1) specifies that "direct notice" of a proposed settlement must be provided "in a reasonable manner to all Class Members who would be bound by the proposal."

## II.    ARGUMENT AND OBJECTIONS

### A.  The Settlement Consideration is Unclear

In describing the benefits of the Settlement, Class Counsel's Motion for Final Approval and Application for Attorneys' Fees states:

> "This settlement resolves claims of 1,340,157 American homeowners by making available just over $515 million in benefits. The monetary award will provide the settlement class more than $281 million in monetary relief, which constitutes 50% to 100% of the best-case scenario damages recoverable by the class had the parties proceeded to trial. The injunctive portion mandates an end to force-placed insurance practices which is valued at more than $234 million."

Dkt. 182, page 2.  These sweeping claims wither upon closer scrutiny.

#### 1.  *The Value of the Settlement to Individual Class Members*

Class Notice informs us that individual class members may receive either cash or a credit on an outstanding bill for 11% of the net premium charged for lender-purchased (or forced) insurance if applied prior to March 24, 2012, or 7% of the net premium charged after March 24, 2012, but before March 17, 2014 (the end of the Class Period).  For most states the class period stretches forward from January 1, 2008, but started earlier in a handful of other states, with the Ohio class period beginning the earliest, in 1998.  To qualify to receive either the cash or credit, the insurance premium must either have been paid or still be outstanding,

3

and cannot have been discharged through a foreclosure, settlement or bankruptcy.

11% of the premium (or 7% for the later period) is not a good result for individual class members. Although Class Counsel claim the aggregate consideration is 50% to 100% of damages recoverable at trial, review of the First Amended Complaint undermines their claim.

The First Amended Complaint alleges Mr. Fladell was billed several thousand dollars, frequently , for insurance premiums he did not owe, for the $191,000 mortgage he obtained on his home from World Savings Bank in January of 2007 (which eventually became part of Wells Fargo). He was billed for this forced insurance even though he maintained hazard and flood insurance as required by the mortgage contract at all times.

Beginning in October of 2007 Fladell received notices saying his insurance was insufficient, and eventually was charged $2,561.29 for force-placed insurance. After Mr. Fladell submitted proof he had the proper insurance, the force-placed policy was cancelled and the notices ceased – for a few months anyway. In late 2008, he received similar notices again. In December of 2009, Wells Fargo force-placed a hazard insurance policy with a $2,542.59 premium, which was backdated to August 2009 and covered a one-year period. Although Mr. Fladell had continued to maintain the flood insurance, in April 2009, he received notices from Wells Fargo indicating he did not have sufficient flood insurance as required by his mortgage. Again, in March of 2012, Mr. Fladell received a notice indicating a sixty-day flood insurance binder had been force-placed on his home. This force-placed policy was backdated to February 11, 2012, and covered the sixty-day period ending on April 11, 2012. The premium for this policy was $2,301.75. FAC, Dkt 147, ¶¶ 50 – 56.

Class Representative Sarah Crouch's experience was similar. She received several threatening notices frequently, and was billed even higher premiums, often retroactively for periods that had already passed -- including $4,671.61 in 2012. FAC, Dkt 147, ¶¶ 59-73. Both Mr. Fladell and Ms. Crouch had at least some of the charges reversed. So the first question becomes, what about those homeowners who were able – after much frustration and extensive correspondence – to have their charges reversed? These individuals should be compensated for the harassment and distress Wells Fargo's policies caused.

4

Class Counsel claim the 11% refund or credit class members will receive adequately compensates them for the excessive costs of the insurance premium; it is not. "Wells Fargo never disclosed that the premium's excessive price included costs for kickbacks and unearned commissions, or administrative costs performed by the vendor." FAC, Dkt 147, ¶ 57. In the Motion for Final Approval Class Counsel state that the illegal commissions charged was 11%. Dkt. 182, page 18. Not that the 11% constitutes full damages as the policies may not have been competitive with market pricing and there may have been additional undisclosed expense associated with these policies. These policies may also have been unnecessary, in which case the entire premium should fairly be calculated as damages.

The class information does not advise as to the statutory value of individual class members' claims. The allegations include breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, tortious interference with a business relationship, and violations of Florida's Deceptive and Unfair Trade Practices Act, the national Truth in Lending Act, the Bank Holding Company Act, and the federal RICO statute. Class members are not informed that certain violations of TILA may entitle them to statutory minimum damages, and that RICO violations may entitle them to treble damages. See 15 U.S.C. § 40; 18 U.S.C. § 1961–1968. Although the amount individual class members, or the class may obtain is speculative, class members should at least be informed as to these basic facts regarding the allegations and potential damages.

**2.  *The Aggregate Value of the Settlement is Unclear***

The aggregate settlement value is unknown. The Class Notice and Settlement Agreement provide general conclusory information about the monetary value of the Settlement. The Notice states "The total cash benefit available to Settlement Class Members exceeds $250 million." Notice, Page 5, Section 7). The phrasing here is careful -- "available to" the Class, does not mean the Class will get $250 million.

The large theoretical benefits mean nothing. Class Counsel claim the settlement will provide $281 million in monetary relief, this is wildly optimistic. This is a "claims-made" settlement, and the Class will only benefit to the extent Class Members can substantiate their

claims to the satisfaction of the Settlement Administrator.

Information provided by Wells Fargo indicates they really have little sense of how much is at stake even if all class members submitted valid claims.  The Final Approval Motion explains that Wells Fargo's systems do not differentiate among borrower payments made to an escrow account for taxes, insurance, or other escrows, so there is no easy way to determine how much individual class members may claim under the terms.[1]  Class Counsel have not done sufficient work to determine how much individual claims are worth.  The class has approximately 1,340,157 members.  Wells Fargo apparently provided 2,548,182 names and addresses of 2,548,182 potential class members to the settlement administrator; after de-duping and checking national change of address databases, the administrator mailed the notice packets to 1,340,157 class members.  See Declaration of Jennifer Keough, Garden City Group, Dkt. 182-2.  Although the Declaration includes information on the number of requests for exclusion received (76 valid exclusion requests had been received as of July 30; and 7 invalid exclusion requests), the Declaration is silent how many class members have submitted claims thus far.  This lack of information underscores the uncertainty as to the total benefit the Settlement will provide to the Class

### 3. *The Claims Process Appears Unduly Burdensome*

The uncertainty as to the amount the class will receive is exacerbated by what appears to be an onerous claims process.  Individuals who believe they are members of the Class can

---

[1] Specifically, the Motion for Final Approval States: "Discovery taken by Plaintiffs' counsel over the past two and a half years regarding the MSP system used by Wells Fargo has confirmed MSP's limited capabilities with regard to system-wide queries. In *Williams v. Wells Fargo Bank, N.A.,* No. 11-cv-21233-RNS (S.D Fla.), sworn testimony showed that "[w]ithout a borrower-by-borrower manual examination of each loan file, [the MSP system] cannot accurately determine the universe of borrowers who were 'charged' for lender placed insurance, those who 'paid' for lender placed insurance, those who still owe Wells Fargo Bank for lender placed insurance premiums, and those who may have entered into loan modification, short sale, refinance, or other agreements with Wells Fargo Bank." See *Williams*, (D.E. 307 Exhibit A at 2). Wells Fargo's Rule 30(b)(6) representative testified that the review could range from "maybe a few hours" to "four to five hours" per loan. *See Williams*, (D.E. 307 at Exhibit B at 46:16-19) (If the loan is still active and that information is readily available on our system, I would say review would take maybe a few hours. If it is an older loan that is no longer viewable on our system, then that review process would probably double up to probably four to five hours because we would be working off of paper to calculate those dollar amounts as well as retrieving archived documents in order to complete our review."). Accordingly, any manual review of 1,340,157 Wells Fargo borrower files (accounting for over 2.5 million insurance policies) would take a significant amount of time and manpower."  Dkt. 182, page 20.

not download a blank claim form from the settlement website; instead, they must submit personal identifying information and wait for this information to be processed. See *https://cert.tgcginc.com/wfi/pocdownload.php*.

The website implies that if you did not receive a claim form in the mail you cannot submit a claim form. The Claim Form page on the website includes this instruction regarding acquiring a claim form:

> If you received a Claim Form by mail and need another copy of a Claim Form to submit:
> - **Click here to download and view a Personalized Claim Form**
> Click here to review a copy of the Claim Form Instructions you received in the Notice Packet sent by mail.

This implies all class members received notices through the mail; notwithstanding the parties' best efforts to contact class members, this cannot possibly be true given the size of the class and the large number of foreclosures that occurred during the class period. The claims submission process also seems burdensome given it requires that regarding proof of identity, even extending to requiring signatures of a notary in certain instances. This is not typical in Class Action settlements, and indicates an attempt to burden, and limit valid claims. It cannot be stressed enough, in a claims made settlement, the defendant has a very strong interest in limiting the number of claims. This is not established that will be paid to the class; any moneys not paid to the Class will remain with the Defendant.

A burdensome claims process was one of the problematic features of the settlement recently overturned in *Eubank v. Pella Corp.,* 2014 WL 2444388, --- F.3d ---- (2014). There class counsel claimed the value of the settlement to the class was $90 million. When claims were accounted for, but the value of the settlement for the class was between $1.5 million and $8.5 million – a fraction of class counsel's representations to the court as to the settlement's value. As in many class action settlements, the claims rate in *Eubank* was extremely low. In part this was due to a difficult claims process. The court noted, "The settlement strews obstacles in the path of any owner of a defective Proline Series casement window [the product at issue in that case]." Among the "obstacles" the court discussed were confusing claim forms requiring claimants "submit a slew of arcane data" and "claim forms . . . so

7

complicated that Pella could reject many because the claimant had not filled out the form completely and correctly.  And that's assuming class members even attempt to file claims." *Eubank*, at *7-9.  The obstacles here are similar, and suggest that the court that the court should be skeptical about the total value of the Settlement to the Class.

Class Counsel rely heavily on this court's final approval of the settlement in *Saccoccio v. JPMorgan Chase Bank, N.A.*, No. 13-cv-21107 (S.D. Fla.).  That decision is on appeal and approval of the Settlement may be reversed.  As in *Saccoccio*, Class Counsel have not provided sufficient information to evaluate this Settlement.  Without knowing the number of valid claims submitted the court cannot make a determination about the fairness of the Settlement.  Class members must be provided with all material information, including the total value.  The court should defer approval and the award of attorneys' fees until after the claims submission deadline.

### B.  The Attorney's Fees

$19 million in fees is excessive.  Class Counsel claim this fee "would amount to only 6.8% of the monetary recovery and less than 3.7% of the overall benefits to the class, and is well within the parameters established by the Eleventh Circuit."  Dkt. 182, page 3.  This statement is misleading.  Despite Class Counsel's claims that the settlement offers over $515 million benefits to the class (including the value of the injunctive relief), at this point, we have no information enabling us to determine the monetary benefit the class will receive.  $19 million will not be between 3.7% and 6.8% of the class' total monetary recovery. $19 million will likely exceed class recovery and the fee application must be delayed until the court reviews all actual claims data.

It is unfair to base fees on a theoretical fund, class counsel cite the Approval Order in the *Saccoccio* case, *supra* (noting "The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class."), and *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 676 (1980).  Some courts awarding fees on a percentage-of-recovery basis have based the award on an entire fund, not just the fund claimed by the class. E.g., *Boeing v. Van Gemert*, 444 U.S. 572 (1980) and *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999), cert. denied 530 U.S. 1223 (2000). There is not

even a fund.

The rule enunciated in *Boeing* and in this Circuit's holding in *Waters* needs to be evaluated in light of recent changes to the Federal Rules of Civil Procedure and the enactment of the Class Action Fairness Act in 2005 (28 U.S.C. §1711 et seq.).  In 2003 Congress amended Rule 23 with the creation of Rule 23(h).   The new rules reflect a common-sense approach: attorneys' fees should be tied directly to what clients <u>receive</u> not potential benefits.

A fee award must be attuned to the result achieved for the class, to the money the settlement puts in class members' hands. See, e.g., *In re Baby Prods. Antitrust Litig.,* 708 F.3d 163, 179 (3d Cir. 2013); *cf.* 28 U.S.C. §1712(a). The Advisory Committee Notes explicitly state that:

> "In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility.
>
> Courts discharging this responsibility have looked to a variety of factors. **One fundamental focus is the result actually achieved for class members, a basic consideration** in any case in which fees are sought on the basis of a benefit achieved for class members."

Notes of Advisory Committee on 2003 Amendments to Rule 23(h).  The notes advise courts to exercise caution in awarding fees, even to the extent of deferring the award of fees until class recovery can be determined:

> In many instances, the court may need to proceed with care in assessing the value conferred on class members. Settlement regimes that provide for future payments, for example, may not result in significant actual payments to class members. In this connection, the court may need to scrutinize the manner and operation of any applicable claims procedure. In some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known.

*Id.*; *accord Baby Prods.*, 708 F.3d at 179.

The continuing validity of *Boeing* and *Waters* is questionable. See, e.g., Samuel Isaacharoff, The Governance Problem in Aggregate Litigation, 81 FORDHAM L. REV. 3165, 3171-72 (2013) (describing *Boeing* as marking an "older line of cases" that eventually

"prompted legislative rejection of compensating lawyers on the face value of the settlement, regardless of the take-up rate of the benefits by class members").

Even before Rule 23(h), *Boeing* and *Waters* did not apply where "no money was paid into escrow or any other account" and each member of the class has no claim to a set piece of the "lump-sum judgment." *Strong v. BellSouth Telcoms.,* 137 F.3d 844, 852 (5th Cir. 1998); *Waters*, 190 F.3d at 1296 ("[U]nlike the case at bar, Strong never established a "common fund" from which money would be drawn. The parties here established that $ 40 million was the fund upon which the individual claimants' awards would be based.") As there is no real common fund established, even before Rule 23(h) *Boeing* and *Waters* would not have supported the approach adopted here.

Long before the adoption of Rule 23(h), courts deferred or staggered fees to account for success or failure of the claims process. E.g., *Duhaime v. John Hancock Mut. Life Ins. Co*., 989 F. Supp. 375, 380 (D. Mass. 1997); *Bowling v. Pfizer, Inc.,* 922 F. Supp. 1261, 1283-84 (S.D. Ohio 1996), *aff'd Bowling v. Pfizer, Inc*., 102 F.3d 777 (6th Cir. 1996).

Speculative, maximized estimates are not the appropriate measure of benefit. *Baby Prods.*, 708 F.3d at 179 n.13 ("[T]he actual benefit provided to the class is an important consideration when determining attorneys' fees."); Federal Judicial Center, Manual for Complex Litigation § 21.71 (4th ed. 2004) ("In cases involving a claims procedure…, the court should not base the attorney fee award on the amount of money set aside to satisfy potential claims. Rather the fee should be based only on the benefits actually delivered."); see also *Pampers*, 724 F.3d at 721 (rejecting settlement-value "assumptions…premised upon a fictive world").

Where claims rates are especially low, courts have often adjusted fees downwards. See, e.g., *Pearson v. Nbty, Inc*., No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357, at *21-*27 (N.D. Ill. Jan. 3, 2014) (reducing 25% benchmark to 9.6% based on low claims rates); *Michel v. Wm Healthcare Solutions*, 2014 U.S. Dist. LEXIS 15606 (S.D. Ohio Feb. 7, 2014) (reducing from 33.3% request to 15% where claims rate was only 3.9%); *Tarlecki v. Bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 U.S. Dist. LEXIS 102531, at *12 (N.D. Cal. Nov. 3, 2009) (reducing fee request to less than 13%). Alternatively, a trial court can determine that

10

"a more reasonable fee results from calculating a percentage of the actual recovery." *Wise v. Popoff*, 835 F. Supp. 977, 982 (E.D. Mich. 1993); *Waters*, 190 F.3d at 1296 (reciting the holding of *Strong v. BellSouth Telecomms*., Inc., 137 F.3d 844 (5th Cir. 1998)).

The recent *Eubank v. Pella* is prescient. In that case, class counsel claimed the value of the settlement to the class was $90 million, but when claims were accounted for the settlement value was more between $1.5 and $8.5 million. The trial court had accepted class counsel's representations about the aggregate value of the settlement, and awarded attorney's fees well in excess of the recovery achieved by the class. Justice Posner remarked:

> "Not only did the settlement agreement not quantify the benefits to the class members, but the judge approved it before the deadline for filing claims. He made no attempt to estimate how many claims were likely to be filed, though without such an estimate no responsible prediction of the value of the settlement to the members of the class could be made."

*Eubank*, at *6. The court should be concerned as to the fairness of the fees requested where Counsel have not submitted lodestar information for the court's review. This Circuit may follow a percentage of the fund method in common fund cases, but where there is no "fund" the court should require substantiation of the attorney's work. The court should not just rubber stamp an award of $19 million in attorneys' fees based on Class Counsel's representations this represents only a small percentage of the benefits obtained for the class. Those benefits have yet to be determined.

The settlement under review in *Eubank v. Pella Corp.*, compensated class counsel and class representatives but left the compensation of the class unclear. In *Eubank*, Justice Posner highlighted the important role that objectors play in appealing inequitable settlements:

> "In this case, despite the presence of objectors, the district court approved a class action settlement that is inequitable—even scandalous. The case underscores the importance both of objectors (for they are the appellants in this case—without them there would have been no appellate challenge to the settlement) and of intense judicial scrutiny of proposed class action settlements."

*Eubank*, at *3.

11

In *Eubank*, Justice Posner concluded: "Class counsel sold out the class."  *Eubank*, at *10.  The Court should keep the inherent conflict between the interests of class counsel and class members in mind in evaluating the Settlement.

## III.   JOINDER IN OTHER OBJECTIONS

Objector joins in and adopts the Jabrani objection (Doc 190) as though fully set forth here, and all other well-founded and meritorious objections.

## IV.   CONCLUSIONS

For the foregoing reasons and all others to be presented at oral argument, these objectors request that the court sustain their objections and grant the following relief:

- Upon proper hearing, sustain these Objections.
- Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.

Dated: August 19, 2014                SWEENEY LEGAL GROUP, S.C.


By: /s/ Patrick Sweeney
        Patrick Sweeney (FL Bar No. 593486)
Sweeney Legal Group, S.C.
750 South Dixie Highway
Boca Raton, FL 33432
Phone: (561) 395-0000
Fax: (561) 395-9093
Email: Patrick@sweeneylegalgroup.com
Attorney for Objector James H. Kirby IV

12

## CERTIFICATE OF SERVICE

   I hereby certify that on August 19, 2014, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Southern District of Florida by using the USDC CM/ECF system.

   I certify that participants in the case who are registered CM/ECF users that service will be accomplished by the USDC CM/ECF system, including, but not limited to:

**CLASS COUNSEL**
Adam M. Moskowitz
Email: AMM@kttlaw.com

**COUNSEL FOR THE WELLS FARGO DEFENDANTS**
Michael J. Steiner
Email: mjs@severson.com

**COUNSEL FOR ASSURANT DEFENDANTS**
Frank G. Burt
Email: fburt@cfjblaw.com
Farrokh Jhabvala
Email: fjhabvala@cfjblaw.com

   I further certify that the following participant was served via U.S. Mail, postage prepaid:

**COUNSEL FOR QBE DEFENDANTS**
Robyn C. Quattrone
BuckleySandler LLP
1250 24th Street, NW, Suite 700
Washington, DC 20037

        /s/ Patrick Sweeney
       Patrick Sweeney

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**Case No. 0:13-cv-60721 MORENO/GARBER**

IRA MARC FLADELL, SARAH CROUCH,
GREG OLSON, MARGARET
ZAWISTOWSKI, TILENA ALI, DANNY
LANE and BEVERLY LANE on behalf of
themselves and all others similarly situated,

      Plaintiffs,

v.

WELLS FARGO BANK, N.A.; WELLS
FARGO INSURANCE, INC.; ASSURANT,
INC.; AMERICAN SECURITY INSURANCE
COMPANY; VOYAGER INDEMNITY
INSURANCE COMPANY, STANDARD
GUARANTY INSURANCE CO.; QBE
SPECIALTY INSURANCE COMPANY; QBE
INSURANCE CORPORATION; QBE FIRST
INSURANCE AGENCY, INC.; QBE
FINANCIAL INSTITUTION RISK SERVICES,
INC.; and PRAETORIAN INSURANCE
COMPANY,

      Defendants.

## DECLARATION OF JAMES H. KIRBY IV IN SUPPORT OF OBJECTION

I, James H. Kirby IV, declare as follows:

1. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. My permanent home of record for my USCG military service status is 630 Fairway Avenue NE, Fort Walton Beach, FL 32547. My current mailing address and residence is 306 Patlynn Dr, Fairhope, AL 36532. I can be reached through my attorney.

3. I am a Petty Officer (MST2) in the United States Coast Guard.

4. I a member of the Settlement Class because I was charged by Wells Fargo Home Mortgage for a lender-placed insurance ("LPI") policy issued by American Security Insurance Company ("ASIC") between the Class Period of September 2, 2006 and March 17, 2014.

5. My control number is 0269818738 and my claim number is 10479602.

6.  Attached as Exhibit A is a copy of the claim form sent to me.

7.  Attached as Exhibit B is a copy of the Wells Fargo Bank Hazard Insurance Policy, Policy No. ALR21 185257002 force-placed on my property.

8.  Attached as Exhibit C is a (redacted) copy of my driver's license.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

August 19, 2014

_____
James H. Kirby IV

# EXHIBIT A



WFI

**MUST BE UPLOADED OR POSTMARKED NO LATER THAN 60 DAYS AFTER THE FINAL SETTLEMENT DATE**

Fladell Settlement
c/o GCG
P.O. Box 10062
Dublin, Ohio 43017-6662
Toll-Free: 1-866-847-5874

Claim No: 7681646          Control No: 0376854553

JAMES KIRBY
630 FAIRWAY AVE NE
FORT WALTON BEACH, FL 32547
US

**REQUIRED ADDRESS INFORMATION OR CORRECTIONS**
If the pre-printed address to the left is incorrect or out of date, OR if there is no pre-printed data to the left, **YOU MUST** provide your current name and address here:

| | |
|---|---|
| Name: | JAMES H. KIRBY II |
| Address: | 306 PATLYNN DR. |
| City/State/ZIP: | FAIRHOPE, AL. 36532 |

## CLASS ACTION CLAIM FORM

PLEASE FULLY COMPLETE THIS CLAIM FORM AND SIGN IT BELOW.  INCOMPLETE CLAIM FORMS WILL BE DEEMED INVALID AND THE CLAIM MAY BE DENIED.

IF YOU ARE SUBMITTING CLAIMS WITH RESPECT TO MORE THAN ONE POLICY, A SEPARATE CLAIM FORM MUST BE SUBMITTED FOR EACH POLICY.

IF MORE THAN ONE PERSON IS NAMED AS AN ADDITIONAL INSURED OR INSURED ON THE POLICY(S), THEN ALL NAMED ADDITIONAL INSUREDS OR INSUREDS MUST COMPLETE AND SIGN THIS CLAIM FORM.

**TO BE COMPLETED BY YOU:**

1. Claimant's Name:
JAMES H KIRBY IV

2. Claimant's Address (if different from above):
306 PATLYNN DR
FAIRHOPE, AL 36532

3. State in which property securing loan is located:
FL

4. Claimant's Date of Birth:

5. Claimant's Home Telephone Number:

6. Claimant's Social Security Number (Last four digits only):

1. Co-Claimant's Name:

2. Co-Claimant's Address (if different from above):

3. State in which property securing loan is located:

4. Co-Claimant's Date of Birth:
   /    /

5. Co-Claimant's Home Telephone Number:
(          )          -

6. Co-Claimant's Social Security Number (Last four digits only):

CERTAIN CLAIMS ARE SUBJECT TO AUDIT AS DESCRIBED IN THE INSTRUCTIONS. CLAIMANTS ARE CAUTIONED TO NOT SUBMIT FRAUDULENT CLAIMS AS ALL CLAIMS ARE SUBJECT TO AUDIT BY THE SETTLEMENT ADMINISTRATOR.

| | |
|---|---|
| **QUESTION 1.** | HAVE YOU BEEN CHARGED BY WELLS FARGO FOR, AND <u>STILL OWE</u> AND <u>HAVE NOT PAID,</u> THE PREMIUM ON A HAZARD (INCLUDING WIND-ONLY), FLOOD, OR FLOOD GAP LENDER-PLACED INSURANCE POLICY COVERING YOUR RESIDENTIAL PROPERTY?<br><br>**X** Yes     No |
| **QUESTION 2.** | HAVE YOU BEEN CHARGED BY WELLS FARGO FOR <u>AND PAID</u> ALL OR A PORTION OF THE PREMIUM ON A HAZARD (INCLUDING WIND-ONLY), FLOOD, OR FLOOD GAP LENDER-PLACED INSURANCE POLICY COVERING YOUR RESIDENTIAL PROPERTY?<br><br>Yes     **X** No |

If you ONLY answered "Yes" to **Question 1** above, complete Section 1 below of this Claim Form **only** and follow the instructions to mail in the Claim Form.

If you ONLY answered "Yes" to the **Question 2** above, please complete Sections 1 & 2 below, sign the form, and provide **ONE** of the following:

(1)   The signature of a witness who is 18 or older, **OR**
(2)   A copy of a form of identification that contains a signature and photograph of the Claimant(s), **OR**
(3)   A copy of a Wells Fargo Mortgage Statement issued to Claimant(s), **OR**
(4)   A completed Notary verification which is provided with this CLAIM FORM.

<u>**YOU ONLY NEED TO PROVIDE ONE**</u>
<u>**OF THE ABOVE FORMS OF PROOF OF IDENTITY**</u>



## Section 1

(1)   During the time period described on the Instructions for this Claim Form, I was listed as an additional named insured or an insured under a lender-placed hazard (including wind-only), flood, or flood gap insurance policy issued by American Security Insurance Company, Voyager Indemnity Insurance Company,  Standard Guaranty Insurance Co., QBE Specialty Insurance Company, QBE Insurance Corporation, Praetorian Insurance Company or another insurance company,  insuring improvements to real property (an "LPI Policy");

(2)   I was charged an LPI Policy premium by Wells Fargo;

(3)   The cost of the LPI Policy was not cancelled out in full after issuance; and

(4)   Since the issuance of the LPI Policy, I have not filed a Petition under Chapter 7 of the United States Bankruptcy Code, and my indebtedness on my residence secured by my Deed of Trust or Mortgage has not been compromised or discharged in bankruptcy.

I hereby declare (or certify, verify, or state) under penalty of perjury that the information provided by me on this Claim Form is true and correct.

Date: 07 / 31 / 2014
(Month / Day / Year)

(Signature of Claimant)                                           Last Four Digits of Social Security Number

(Signature of Co-Claimant)                                       Last Four Digits of Social Security Number

**Please MAIL THIS CLAIM FORM to the *Fladell Settlement*, c/o GCG, P.O. Box 10062, Dublin, Ohio 43017-6662**, with a postmark of no later than 60 days after the Final Settlement Date, or, if a private mail carrier is used, a label reflecting that the mail date is no later than 60 days after the Final Settlement Date.



## Section 2

### VERIFICATION OF IDENTITY OF CLAIMANT

For Claimants answering "Yes" to Question 2 above, in order to submit a valid Claim, they must in addition to making the affirmations set forth in Section 1 above, confirm their identity through one of the following methods:

(1)     The signature of a witness who is 18 or older representing and affirming that they have witnessed the Claimant execute the Claim Form, and this witness affirmation shall include the following: "I declare (or certify, verify, or state) under penalty of perjury that I witnessed the signing of this Claim Form by the Claimant and the foregoing is true and correct," or

(2)     Provide a copy of a form of identification that contains a signature and photograph of the Claimant(s), or

(3)     Provide a copy of a Wells Fargo Mortgage Statement issued to Claimant(s), or

(4)     Provide a completed notary verification that the Claimant executed the Claim Form making the required affirmations under oath in the presence of the notary, and bearing evidence of the notarial authority in compliance with the law of the state in which it is being executed (e.g., a seal, etc.).

## Option 1

### Witness Verification

I witnessed the Claimant execute the foregoing Claim Form, and affirm and declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct:

_____  Date: _____

(Signature of Witness)

_____

(Address of Witness)

Phone: ( _____ ) _____ - _____

EXHIBIT B

**WELLS FARGO | HOME MORTGAGE**

Wells Fargo Home Mortgage
Hazard Insurance Processing Center

JAMES H KIRBY IV
630 FAIRWAY AVE NE
FORT WALTON BEACH, FL 32547-1708

Notice date: 09/01/2012
Loan number:

## Action required -hazard insurance policy enclosed

| Insurance effective date: | Property address: |
|---|---|
| 06/07/2012 | 615 N 46TH AVE |
| | ST PETERSBURG, FL 33703 |

Enclosed is a hazard insurance policy we have obtained in accordance with the terms of your Mortgage (or Deed of Trust). **We have purchased this policy on your behalf because we did not receive proof of acceptable continuous insurance from you as previously requested in the recent notices we sent to you. Your structure/improvements are now insured by AMERICAN SECURITY INSURANCE COMPANY.** This policy covers your structure/improvements for direct loss or damage subject to the terms of the policy. It does not provide any coverage for personal property, nor does it protect you from liability against accidents that occur on your property. The annual premium is shown on the policy and will be charged to your escrow account. If you do not have an escrow account, one is being established for you. Your monthly mortgage payment will be increased to include the cost of this policy.

## For your information

In the mortgage documents you signed, you agreed to keep insurance on your structure/improvements at all times, in the form and the amounts we require. Failure to do so is a breach of those requirements. **We require that you maintain insurance that is equal to 100% of the estimated replacement cost to rebuild your home and other improvements on your property.**

You may cancel the insurance we obtained at any time by giving us proof of other acceptable coverage. When you provide proof of acceptable coverage, the policy we have obtained will be cancelled and you will be charged only for the days this policy was in force. Any unused premium will be refunded to your escrow account.

Wells Fargo Home Mortgage
is a division of Wells Fargo Bank, N.A.

2116H3-0512

Z22958

Case 0:13-cv-60721-FAM Document 197-3 Entered on FLSD Docket 08/19/2014 Page 3 of 4

008-0503

WELLS FARGO BANK, N.A.  708
INSURANCE CENTER
P O BOX 5708
SPRINGFIELD, OH  45501-5708

Master
018H13504173
ZIP 30339
US POSTAGE
$ 00.62⁴
09/05/2012
PRESORT FIRST CLASS



09/06/2012

JAMES H KIRBY IV
630 FAIRWAY AVE NE
FORT WALTON BEACH, FL  32547-1708

**Policy Enclosed**

6    HBP-G3B    32547

SFD    OWNER-OCCUPIED

| | AGENCY | | |
|---|---|---|---|
| Major | Sub | Minor | State |
| 08853 | 0009 | 0000 | FL |

**American Security Insurance Company**
PO BOX 50355, ATLANTA, GA 30302
770-763-1000
**RESIDENTIAL PROPERTY**
**ADDITIONAL INSURED ENDORSEMENT**

POLICY NUMBER: ALR21185257002

**ADDITIONAL INSURED** -Name and Address (Street No., City, State, Zip)

JAMES H KIRBY IV
630 FAIRWAY AVE NE
FORT WALTON BEACH, FL 32547-1708

**NAMED INSURED MORTGAGEE**-Name and Address

WELLS FARGO BANK, N.A. #708
ITS SUCCESSORS AND/OR ASSIGNS
PO BOX 5708
SPRINGFIELD, OH 45501-5708

LOAN NUMBER:

Coverage is provided where a premium or limit of liability is shown for the coverage, subject to all conditions of this policy.

| POLICY PERIOD ONE YEAR | COVERAGES | LIMITS OF LIABILITY | PREMIUM |
|---|---|---|---|
| EFFECTIVE DATE: 06/07/2012   EXPIRATION DATE: 06/07/2013 | Dwelling | $113,500 | $1,713.00 |
| EFFECTIVE TIME:   NOON ☐   12:01 A.M. ☒ | | | |
| DESCRIBED LOCATION (If different from mailing address above) | | | |
| 615 N 46TH AVE | | | |
| ST PETERSBURG, FL 33703 | | | |
| | | | |
| | CPIC ASSESSMENT | 0.01000 | $17.13 |
| | FHCF ASSESSMENT | 0.01300 | $22.27 |
| | | | |
| | | | |
| | ANNUAL PREMIUM AMOUNT | | $1,713.00 |
| | ANNUAL TOTAL CHARGED | | $1,752.40 |

Forms and endorsements which are made a part of this policy at time of issue:

MSP-RES-J(11-07),MSP-RES(8-88),MSP-RES-FL-SH(01/07),MSP-RES-FLAEND(08-10)

MSP-RC-WHH-END(9-06),MSP-RES-INF-END (09-06)

Subject to the terms and provisions of the Morgage Service Program, including but not limited to the Residential Property coverage form attached hereto, it is agreed that the insurance applies to the property described above and to any person shown as an Additional Insured with respect to such property, subject to the following additional provisions:

a. The above Named Insured Mortgagee is authorized to act for such Additional Insureds in all matters pertaining to this insurance including receipt of Notice of Cancellation, and return premium, if any.

b. The above Named Insured Mortgagee is authorized to advance all funds to be recovered from the Additional Insured for the insurance afforded.

c. Loss, if any, shall be adjusted with and payable to the above Named Insured Mortgagee, and the Additional Insureds as their interests may appear, either by a single instrument so worded or by separate instruments payable respectively to the Named Insured Mortgagee and the Additional Insured, at our option.

**Deductibles** - applies separately to each building or structure, per loss: $500 Occupied $1,000 Vacant or Unoccupied

A deductible of 2 % of the Coverage Amount or $2,000, whichever is greater, applies for loss caused by the perils of Windstorm or Hail.

A deductible of 2% of the Coverage Amount or $2,000, whichever is greater, applies for loss caused by the peril of Hurricane.

ALL OTHER INQUIRIES: 1-800-862-4098      CLAIMS INFORMATION ONLY: 1-800-326-2845

## "THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU"

Agency at

PMS-A FL 0906

Issue Date
09/01/2012

GE3981
04/24/07

EXHIBIT C



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | | |
|---|---|---|
| IN RE: LAWNMOWER ENGINE | ) | |
| HORSEPOWER MARKETING AND | ) | Case No. 2:08-MD-01999 |
| SALES PRACTICES LITIGATION | ) | |
| | ) | Judge Lynn Adelman |
| (This document relates to all cases.) | ) | |

### OBJECTIONS OF ROSALIE BORGARDTS, PAUL PALMER IRVING S. BERGRIN, CORY A. BUYE AND THOMAS BASIE TO SETTLEMENT AND NOTICE OF INTENT TO APPEAR

COME NOW, Rosalie Borgardts, Paul Palmer, Irving S. Bergrin, Cory A. Buye, and Thomas Basie[1] ("Objectors,") Class Members in this action, by and through their undersigned counsel, and hereby files these Objections to the Proposed Class Action Settlement, give notice of their counsel's intent to appear at the June 22, 2010, fairness hearing. In support of their objections, Objectors state as follows:

### I.

### SUMMARY OF OBJECTIONS

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable and adequate.

1. Claims administration process fails to require reliable oversight, accountability, and reporting about whether the claims process actually delivers what was promised.

2. Timeframes and deadlines benefit Defendants and Class Counsel, but not Class Members; No timeframe for completing administration of the Monetary Relief is

---

[1] Objectors names, addresses, telephone numbers, lawn mower brands, engine brands, engine model numbers and lawn mower identification numbers appear on the attached Exhibits A, B, C, D and E.

set, so Class Members cannot know when payment would arrive, but a cutoff date is set for Warranty Relief, so Class Members will know when they cannot receive relief.

3.     Attorney fees of nearly $36,000,000 would be paid before the Effective Date, regardless of when or whether Class Members receive relief.

4      No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing settlement.

5.     Attorney fees do not depend upon how much relief is actually paid to the Class Members.

6.     The fee calculation is unfair in that the percentage of the benefit is far too high.

7.     The claims process is cumbersome, unreasonable and designed to deprive Class Members of the relief which the Settlement Agreement purports to provide.

8.     $14,000,000 of the requested attorney fees relates to Warranty Relief, which is too difficult to quantify and has not been quantified and therefore cannot support this enormous fee.

9.     Any fee awarded prior to knowing the amount of relief actually paid to Class Members must be limited to lodestar calculation.

10.     Fee request is not reasonable in the absence of documentation, including billing records, which can be evaluated by Class Members and the Court.

11.     Fees must be set at the market rate, not by arbitrarily claiming a flat amount ($14,000,000) plus a percentage (33%).

12.     The Warranty Relief creates conflicts of interest among Class Members.

13.     The *cy pres* funds need to be used to benefit the silent class members.

## II.

## SUMMARY OF RELIEF

The relief consists of Monetary Relief and Warranty Relief, each delivered with a separate claims process, and Injunctive Relief. Monetary Relief consists of a Settlement Fund of $65,000,000 from which Class Members would receive payments of $35 or $75 after costs and fees are paid. If claims exceed the net fund, payments will be reduced pro rata. If claims are less, the Court will decide what do with the surplus. Although claims must be submitted by August 31, 2010, no mechanism exists to assure claims will be processed promptly and correctly. The Agreement also fails to provide for any public disclosure to the Court or Class Members about when and how claims administration is proceeding. Absent such essential safeguards, there is no way to know or incentive to assure, that Class Members actually receive what is promised.

Warranty Relief requires Class Members to apply for and obtain a certificate, and then bring the certificate to repair shop, all within a year of the Final Approval of the Settlement Agreement. The Agreement fails to require any oversight or reporting; thereby preventing anyone from knowing if the program works at all or is merely ignored. Warranty Relief is available to some Class Members, but not others, even though the cost of Warranty Relief will diminish the Settlement Fund, and thereby reduce the Monetary Relief available to all Class Members. Thus, Warranty Relief creates a conflict of interest among Class Members.

Likewise, the Injunctive Relief requires Defendants to follow certain testing and marketing practices for ten years, but the Agreement fails to require any oversight, reporting or enforcement mechanism.

The claim forms require information which is difficult to obtain, and the claims submission process is too cumbersome -- clearly designed to discourage participation and thereby minimize Defendants' costs for Warranty Relief.

Unused Settlement Fund money, if any, will be disbursed at the Court's choosing, rather than according to suitable *cy pres* relief agreed by the settling parties, thereby imposing an unfair and inappropriate burden upon the Court.

**III.**

**<u>SUMMARY OF ATTORNEY FEES PROVISIONS</u>**

The Notice provides, at page 7, that Class Counsel will see as much as third ($21,666,666) of the $65,000,000 fund, and additional $14,000,000. Class Counsel can receive their full $35,666,666 fee EVEN BEFORE the Settlement Agreement becomes effective. The enormous fee also is paid before their clients get paid without regard to how or when the claims process is administered, and without regard to how much actually is paid to the Class Members. Further, the percentage is outrageously high -- 54.87% of the Settlement Fund -- and it is linked to the wrong number. The fee in a case of this size should be closer to 20%, and should be linked to the amount actually paid to Class Members (not strangers, though *cy pres*). If the "take rate" (percentage of Class Members who submit valid, timely claims) is near the historically consistent and predictable rate, Class Counsel will reap far more than their clients.

The Settlement Agreement fails to require that some fees be withheld pending Court approval of a report by Class Counsel to the Court concerning distribution of relief. Such a provision is critical because it would acknowledge that a Settlement Administrator has control of implementing the settlement (after the administrator processes claims and

verifies eligibility). Such a monitoring requirement provides for accountability, and recognizes the possibility that minimal amounts of relief will be redeemed.

The $14,000,000 fee related to Warranty Relief is improper because the relief is a type of injunctive -- that is, non-cash -- relief which is too difficult to quantify, cannot be verified under the Settlement Agreement terms, and thus is not supported by amount (if any) of the benefit delivered. The case law is clear that courts must be highly skeptical of fee awards for relief value that is not quantified. As shown below, this approach has been abused with bizarre and unfair consequences.

The attorney fees are tied to the amount of payment extracted from Defendants, without regard to how much of that relief actually reaches Class Members. At the historic rate of claims filing, Class Counsel most likely will receive far more than their clients receive in Monetary Relief and Warranty Relief. Further, the Agreement omits any provision for establishing how much relief actually reaches Class Members -- which would enable comparison of that amount to the amount Class Counsel wishes to receive.

## IV.

## OBJECTIONS

The Proposed Class Action Settlement is inadequate, unfair and unreasonable for the following reasons.

### A. Claims Process Is Intended to Minimize Relief.

Class Member must obtain and complete and submit onerous claim forms. Defendants providing warranty benefits hope a frustrated Class Member will simply abandon the relief because the process is more confusing and troublesome than it's worth.

Steve Tilghman, a class action settlement administrator who has performed over 175 settlements, testified that the "vast majority of settlements that required filing a notice of claim" resulted in less than 10% of the class members sending in the claims form. *Sylvester, et al. v. Cigna Corp.*, 369 F.Supp.2d 34, 44 (D.Me. 2005). In *Sylvester*, the court said:

> Unfortunately, when this matter first came before the Court for preliminary approval in July, 2004, the Court was not independently aware (nor did any proponent of the settlement bring to the Court's attention) what the parties and the settlement administrator already knew – namely, that the 'claims made' settlements regularly yield response rates of 10% or less.

Id. at 52.

### B. <u>The requested amount of Attorneys fees cannot be approved.</u>

#### 1. <u>Value of settlement must affect amount of fees.</u>

Contingency fees should be payable according to the value of results actually received by Class Members. Regardless of the lodestar, or the amount of work, or the success in concluding complex litigation, or the theoretical gross amount of value, or the number of claims submitted, fees should be paid only according to the value which actually reaches Class Members' pockets. If Class Members cannot obtain significant quantifiable relief, either because the relief is too confusing, or the restrictions and qualifications are too onerous, their lawyers have not provided a valuable service to them. No matter how hard lawyers work, if they do not provide worthwhile relief to the Clients, they should not be paid in regard to those Class Members. If the relief is delivered, but is less than promised, then the fee should decline accordingly.[2] The purpose of the

---

[2]  In *In Re: Excess Value Insurance Coverage Litigation*, Case No. M-21-84-(MDL No. 1339)(S.D.N.Y. Nov. 2, 2005), Judge Richard M. Berman chose to wait for the coupon

settlement is to obtain value for the Class Members, as well as for the Defendants and Class Counsel.

Inasmuch as both the Monetary Relief and the Warranty payable to Class Members depends upon approval of valid claims, the proposed Agreement is a "claims-made" settlement. Certainly, Defendants are offering to pay $65,000,000 into a fund, and are offering extended warranties, but no one can possibly know how many claims will be approved and paid. So, the amount paid by Defendants is irrelevant to Class Members; the only "settlement fund" for Class Members is the relief which actually is paid to them.

Federal courts generally have followed the Federal Judicial Center guidelines and endeavored to accurately value claims-made settlements when awarding attorneys' fees. They do not simply use the amount made available to the class when calculating a percentage attorneys' fee, but they wait for the claims to come in and calculate the fee based upon the amount actually paid out to the class members. *See e.g.*, *In re Compact Disc Minimum Advertised Price Litig.*, 370 F.Supp.2d 320 (D. Me. 2005)(awarding attorneys' fees of 3% of value of redeemed coupons which was 30% of claimed lodestar). *See also*, *In re Excess Value Ins. Coverage Litig.*, 2005 U.S. Dist. LEXIS 45104 (SDNY 2006) at *28-33 (awarding class counsel fees in the amount of 50% of vouchers redeemed, which was 35% of lodestar).

> Recognizing that percentage of funds is the preferred method of assessing fees in a settlement like this, with lodestar analysis providing only a check, I can effectively gauge appropriate attorney fees only if I know the total value of the settlement. But although I am satisfied that the coupon settlement has value to the class, I am not confident of the redemption rate that has been projected and thus of the settlement's total value. Therefore, I have determined to delay award of

---

claim process to end so he could determine the actual benefits paid to the class before deciding the amount of attorney's fees to award.

attorney fees until experience shows how many vouchers are exercised and thus how valuable the settlement really is.

*In re Compact disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp.2d 184 189-190 (D. Me. 2003)(Hornby, D.J.).

The percentage of Settlement approach cannot be reasonably employed at this point because the Settlement's actual value to the Class is unclear and cannot accurately be assessed until the rate at which Class Members redeem UPS Vouchers is known …

*In re Excess value Ins. Coverage Litig.*, 2004 U.S. Dist. LEXIS 14822 (S.D.N.Y. 2004) at 58*.

The procedure urged by class counsel has been universally rejected by federal courts, and was termed a "fiction" and "pure fantasy: by the Northern District of California. In *Yeagley v. Wells Fargo & Co.*, 2008 U.S. Dist. LEXIS 5040 (N.D. al. 2008), the court confronted the task of valuing a settlement for the purpose of awarding attorney fees:

Class counsel contend that the Court must consider the amount Wells Fargo could have paid under the settlement in determining the common fund for the purpose of attorney's fees. They argue that under the Ninth Circuit's decision in *Williams v. MGM-Pathe Communications Co*., 129 F.3d 1026 (9th Cir. 1997), the court must find that since 3.8 million class members could have made a claim for a free tri-meged credit report, the value of the recovery, that is, the common fund, is at least $114 million … Williams does not require this court to adopt the fiction that the settlement is worth $114 million … Williams, in contrast, was a settlement of a securities-fraud class action for $4.5 million in cash … Class counsel's $114 million figure is pure fantasy. Counsel does not offer a shred of evidence that suggests that the parties reasonably believed that Wells Fargo would actually pay anything near that amount, and the Court finds that they did not … To award class counsel the same fee regardless of the claim participation rate, that is, regardless of the enthusiasm of the class for the benefits purportedly negotiated on their behalf, would reduce the incentive in future cases for class counsel to create a settlement which actually addresses the needs of the class. In this case, for example, the one percent claim rate demonstrates that the brochure did not effectively educate the claim members about the importance of credit reports and monitoring their credit … Common sense dictates that a reasonable fee in a class action settlement is a fee that takes into account the actual results obtained.

Id. at *20-28.  The court in *Yeagley* went on to award class counsel a fee of $325,000, or 25% of the value of claimed settlement benefits plus attorney fees, a figure that was approximately one-third of class counsel's claimed lodestar.[3]  *See also Managing Class Action Litigation: A Pocket Guide for Judges*, Federal Judicial Center 2005.

This Court must defer ruling on Class Counsel's attorney fees until all claims are paid, and the amount of relief awarded (Monetary and Warranty) can be calculated, to assure that fees are paid according to relief which actually is received by Class Members, not according to unsubstantiated speculation about how much relief might be received.

## 2.    <u>The Class Must be Protected</u>

A defendant is only concerned with the total amount being paid without regard to how much goes to the class and how much goes to the attorneys.  Every dollar paid to attorneys is unavailable to the class, thereby demonstrating a direct and inverse relationship between the amount of relief and the amount of attorney fee.  So the Court's fiduciary role is critical.  In this instance, wherein no evidence can be submitted about the value actually paid to Class Members until the claims process is complete, the Court should defer ruling on the fees until receiving evidence about the actual benefit received by Class Members.

Dozens of cases have confirmed and identified this fiduciary role.  For example:

> Before considering the proper methodology for awarding attorney's fees out of a common fund, the Court feels compelled to define its role in these proceedings.  When an attorney makes a claim for fees from a common fund, his interest is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class. *Rawlings v. Prudential-Bache Properties, Inc*., 9 F.3d

---

[3]  Darrell Palmer represented objector Rose A. Munoz in *Yeagley* and argued for a substantial fee reduction at the District Court's fairness hearing.

513, 516 (6th Cir. 1993). This divergence of interests requires a court to assume a fiduciary role when reviewing a fee application because there is often no one to argue for the interests of the class: class members with small individual stakes in the outcome will often fail to file objections because they lack the interest or resources to do so and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiffs and class counsel." *In Re Copley Pharmaceutical, Inc.* 1 F.Supp.2d 1407 (Wyoming 1998). (emphasis added.)

In *Wise v. Popoff,* et al. 835 F. Supp. 977 (E.D. Mich. 1993) the court describes the roles as follows:

An attorney's role changes once he files a fee petition. No longer a fiduciary for his client, he becomes nothing more complex than another claimant against the fund created for the client's benefit. The court must, in turn, become "the fiduciary for the fund's beneficiaries and must carefully monitor disbursement to the attorneys by scrutinizing the fee applications." *Skelton v. General Motors Corp.,* 860 F 2d 250, 253 (7th Cir. 1988), cert denied, 493 US 810, 110 S. Ct. 53, 107 L. Ed. 2d 22 (1989). A court should not "rubber stamp" fee applications. *In re Cincinnati Gas & Electric Co. Securities Litigation*, 643 F. Supp. 148, 152 (S.D. Ohio 1986).

The fact that the settling defendant may agree with the fee application is irrelevant to the Court's analysis because the defendant has little interest in the portion of the fund that Class Counsel is allowed to retain. This Court, therefore, must act as a fiduciary to the Class, carefully evaluating the basis for the fee amount. The Court should at least determine what the lodestar amount is (hours expended time hourly billing rate) and whether that bears a rational relationship to the fee requested. The Court must examine not only the amount of time expended, but by whom it was expended. That is, was it by a partner, an associate or a contract attorney, and were the rates reasonable for the locale?

A vivid and tragic example of what happens without supervision of a settlement administration appears in *Moody v. Sears, Roebuck and Co,* 2007

NCBC (Case no. 02 CVS 4892, New Hanover County Court North Carolina, *Order and Opinion*, May 7, 2007).  In that case, class counsel received a fee of $1,100,000.  Their clients, the class members, received only $2,402 in the national settlement.  The lawyers received 458 times more than their clients!  Attached as Exhibit F hereto is a May 3, 2005 letter from the North Carolina judge who uncovered this travesty to the Chicago judge who implemented it.  The letter, which is Appendix B to the Order, explains the sordid details including the observation that, "Under your order, Sears has no obligation to account to you for the results of the settlement administration."

The instant settlement cannot be approved without a mechanism for showing that it is working, has worked, and yielded sufficient benefit to justify whatever fee is awarded.

### 3. Warranty Relief cannot support a fee request.

In-kind compensation -- even when its value can be calculated -- is worth less than cash of the same nominal value because some percentage never will be used, resulting in no cost to the defendant.  *See In re Mexico Transfer Litig.*, 267 F. 3d 743, 748 (7th Cir. 2001). Therefore, the Court must carefully scrutinize the fee request associated with the Warranty Relief because it is merely a form of an in-kind payment which provides little value to the class members, yet is being used to generate large attorneys' fees.  *See Synfuel Technologies, Inc. v. DHL Express (USA) Inc.*, 463 F. 3d 646, 654 (7th Cir. 2006).   Although a warranty is different from the coupon in *In Re Mexico Transfer* or the pre-paid letter in *Synfuel Technolgoies*, it shares similarities with those items.  Just like those in-kind payments, a warranty most often expires before it is ever used (thereby

providing no value to the class member), it costs less to the Defendants than any stated

cash value, and forces Class Members to continue doing business with the Defendants.

The misleading uncertainty of the value of such non-cash, in-kind "relief" causes

courts to reject fee calculations based on such value, if any. In *Staton v. Boeing*, 327 F.3d

938, 973-74 (9th Cir. 2003), the court considered a fee request which exceeded the 25%

benchmark set in that circuit for common fund cases. Class counsel had estimated the

figure at 28% by adding various kinds of injunctive relief to the common fund. But the

court refused to accept the calculation, finding the fee was actually 38% of the common

fund. The court found that the true value of the injunctive relief was too speculative to be

considered with the settlement fund, and thus must be disregarded. *See also*, Alba Conte

& Herbert B. Newberg, *Newberg on Class Actions* § 14:6 n.9; Robert L. Rossi,

<u>Attorneys' Fees</u> § 7.9 (2003). At best the value of injunctive relief can be considered as a

relevant circumstance in considering fairness of a fee. *See*, *Vizcaino v. Microsoft Corp.,*

290 F.3d 1043, 1049 (9th Cir. 2002). Indeed, commentary related Rule 23(h), Federal

Rules of Civil Procedure, suggests that adding the value of injunctive relief to common

funds is limited to suits involving civil rights. *See* Advisory Committee Note, Rule

23(h).

Besides bloating the fee unfairly, the $14,000,000 request for fees related to

Warranty Relief diminishes the amount of Monetary Relief available for pro rata

distribution to Class members. The cost of Warranty Relief comes directly from the

Settlement Fund. Therefore, every dollar used to pay for these warranty "benefits"

reduces the amount available for the more valuable Monetary Relief available to all Class

Members. This "benefit," by its very nature, dilutes and cannibalizes the cash payment.

So, the Court should award attorney fees only according to the value of the amount of Warranty Relief which actually is received by Class Members.

C.     **Fees must be paid in installments.**

Class Counsel must be paid soon for the considerable amount of hard work already done. However Class Counsel should not be paid immediately when work remains to be done. To assure the Class, the Court, and the public that relief is being delivered accurately, completely and on time, fee payments must be staggered. The concept has worked well in many class actions to maintain the integrity of settlement administration.

Judge Fernando Gaitan reacted to a similar suggestion by objectors in *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, MDL 1559 (W.D. Mo. April 20, 2004), *aff'd on other grounds*, 922 F.3d 922 (8th Cir. 2005) ("the *Nextel* case,") when he directed the parties to respond to an objector's argument that fees must be staged, rather than paid in a lump sum. The settling parties responded by amending the proposed agreement to provide 75% upon final approval of the settlement, and 25% upon completion of all post-settlement obligations.

This common-sense concept has applied successfully in many other class actions. In *Richard Duhaime v. John Hancock Mutual Life Insurance Company, et al.*, 177 F.R.D. 54 (D.Mass 1997), the federal court withheld 40% of the contemplated fee for a year so the court could review the quality of representation provided by Lead Counsel and the results achieved for the class. Similarly, in *Ace Seat Cover Co., Inc., et al. v. The Pacific Life Insurance Company*, Case No. 97-CI-00648 (Kenton Cir. Ct. Ky., Nov. 19, 1998), the court ordered 20% of the fees withheld until completion of the settlement agreement.

In *In re: Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450 (D.N.J. 1997), *aff'd* re class certification and settlement but *vacated and remanded* re attorneys fees, 148 F.3d 283 (3rd Cir. 1998), the court ultimately ordered that 50% of the attorney's fees be withheld. In *In Re: PNC Financial Services Group, Inc. Securities Litigation*, Case No. 2:02-cv-00271-DSC (U.S.D.C. W.D. Pa. W.D. filed April 17, 2007), Judge Cercone ordered part of the class counsel's fee withheld at interest pending entry of an order of distribution, as had been suggested by an objector in that case.

At least 20% of the fee should be withheld pending completion of the claims-submission process. Then Class Counsel can report to the Court on the amount of relief actually paid to Class Members. Another 20% should be withheld pending distribution of all relief -- including the *cy pres* relief. By staggering the fees, Class Counsel can be paid for work that has been done. But Class Counsel cannot get the full benefit of the Settlement until their clients, the Class Members, get the full benefit of the Settlement. Basic, prudent business practices dictate that people should not be paid fully until the job is done completely.

**D.   Documentation supporting fee request must be fully disclosed in time to challenge it.**

The Notice says Class Counsel will seek fees of as much as one-third (plus interest) of the $65,000,000 Settlement Fund, which would be $21,666,666.67 as compensation for the Monetary Relief, and will seek another $14,000,000 for the value of the Warranty Relief. This potential $35,666,666.67 fees will be paid directly from Settlement Fund, depleting it by 54.87%.

Prior to the objections deadline, Class Members have no information regarding the amount of fees to be sought, or what evidence could support such a fee. Class

Members know only that Class Counsel has bargained for an agreement which would potentially allow them to consume 54.87% of the funds before they ever reach the hands of their intended beneficiaries.  Nearly $36,000,000, or anything near that figure, is unjust to the class and offends any sense of a fiduciary duty owed by the attorneys to the Class members.

Although the Settlement Agreement says fees must be considered separately from the settlement terms, that provision is naive at best and misleading at worst; Defendants care only about how much they pay, without regard to who receives payment.  Thus, the fairness of a settlement cannot be considered without considering the fairness of the attorney fee. And the fairness of the attorney fee cannot be considered until all Class Members have a chance to examine the fee request for fairness.  And Class Members cannot examine the fee request until the supporting documentation is made available. Therefore, the Settlement Agreement cannot be approved until Class Members are able to make a thorough evaluation of the documentation supporting a fee request.

**E.**     **Attorneys fees must be set at market rate.**

The Seventh Circuit repeatedly has held that, when deciding appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.  *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007), citing *In Re Synthroid Marketing Litigation*, 264 F.3d 712, 718 (7th Cir. 2001).  *See also Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005); Montgomery *v. Aetna Plywood, Inc.* 231 F.3d 399, 409 (7th Cir. 2000); Gaskill *v. Gordon*, 160 F.3d 361 (7th Cir. 1998). "The district court must estimate the terms of the contract that private plaintiffs would

have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Synthroid* at 718. To determine the market rate of legal services, the court should consider the risk of nonpayment a firm agrees to bear, the quality of its performance, the amount of work necessary to resolve the litigation, and the stakes of the case. *Id.*

In setting the market value of the legal services provided, this court should recognize that the overall size of the settlement and the amount of the fund awarded for attorneys' fees are intimately related and must be viewed together. This relationship is demonstrated in a classic study of class action fee awards that can be downloaded at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=456600#. Here, Professors Eisenberg and Miller performed a comprehensive study of class action fee awards and determined that the mean fee award in common fund cases is well below the widely-quoted one-third figure, constituting 21.9% of the recovery across all cases for a comprehensive data set of published cases.

The study found that a scaling effect exists: fees constitute a lower percent of the client's recovery as the client's recovery increases. Thus, for a case with a $65,000,000 fund, the appropriate fee cannot be 33% (not including the potential $14M fee for warranty benefits), which is too far above the 21.9% mean. This relationship is intuitive because, as the size of the fund increases, a smaller percentage of the fund is required to adequately compensate the attorneys' for the fair market value of their legal services. Simply because more money is at stake does not make the legal issue more difficult or increase the risk of loss. Therefore, the Court cannot allow Class Counsel to claim a fee by blindly comparing percentages of various class action lawsuits from around the

country. Instead, Class Counsel must demonstrate that their requested fee is comparable to what would have been bargained for in an arm's length transaction, taking into consideration the large value of the claims at stake. Several benchmarks can be used to ensure fees are not inflated and arbitrary, including actual agreements on fee contracts, data from large common-pool cases where fees were privately negotiated, and information on class-counsel auctions where judges have entertained bids from different attorneys seeking the right to represent a class. *Synthroid* at 719.

F.   **Any fee awarded prior to knowing the amount of relief actually paid to the class must be limited to lodestar.**

Until the claims data is known, any fee award must be limited to a lodestar calculation. Based on the very recent -- a few weeks ago -- United States Supreme Court case, *Perdue v. Kenny A. ex rel. Winn*, --- U.S. ---, 2010 WL 1558980, at *8 (April 21, 2010), the Court must be reluctant to award any multiplier unless the Court finds that the hourly rates are inadequate. This recent *Perdue* decision related to a statutory fee award under 42 U.S. Code Section 1988, but has been applied more generally to a class action settlement of the instant type. *See Shannon Van Horn et al. v. Nationwide Property & Casualty Ins. Co., et al.*, Case No. 1:08-605 (N.D. Ohio, 2010), Docket No. 308, p. 10:

> As the Supreme Court has recently cautioned, however, courts should hesitate to employ a multiplier, especially when the factors supporting a multiplier have already been considered in the underlying lodestar calculation. *Perdue v. Kenny A. ex rel. Winn*, --- U.S. ---, 2010 WL 1558980, at *8 (April 21, 2010). Although decided in the context of statutory fee shifting under 42 U.S.C. Section 1988, *Perdue* nevertheless provides persuasive caution that multipliers must be reserved for 'rare' and 'exceptional' circumstances. *Id.* Although this Court does not read *Perdue* to prohibit the use of multipliers in class actions, the case does suggest that enhancements are atypical and should not duplicate the same considerations affecting the lodestar rate.

**G.**     **The Cy Pres Fund Must Benefit the Silent Class Members**

The 7th Circuit has recognized the use of a Cy Pres fund is appropriate in a class action when it is likely that injured class members will not come forward and make their claim on a fund.  *Mace v. Van Ru Credit Corp.*, 109 F. 3d 338, 346 (7th Cir. 1997). Therefore, it is an appropriate remedy in a case like this where locating or identifying all of the class members would be prohibitively difficult or expensive.  *Id.*  The great majority of class members will most likely be unable to make any claims against the fund in this settlement because much of the information needed to fill out the form will no longer be in their possession.   This is especially true for class members who purchased older lawn mowers.  The *cy pres* distribution will be their only means of relief so the funds should be put to their next best use for the benefit of the class.  Many Federal Circuits and legal commentators echo this view.  *See eg.* 3 Herbert B. Newberg & Alba Conte, Newberg on Class Actions  § 10:17 (4th ed.2009); *In re Pharmaceutical Industry Average Wholesale* Price, 588 F.3d 24, 33-35 (1st Cir. 2009);  Masters *v. Wilhelmina Model Agency, Inc.*, 473 F. 3d 423, 436 (2nd Cir. 2007); *In re Ticket Com'n Antitrust Litigation*, 307 F. 3d 679, 282-83 (8th Cir. 2002);  *Democratic Committee of District of Columbia v. Washington Metropolitan Area Transit Commission*, 84 F. 3d 451,  455 (D.C. Cir. 1996); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990);  *Wilson v. Southwest Airlines, Inc.*  880 F.2d 807, 811 (5th Cir. 1989).

Class Counsel should not tax the judiciary system and leave the task of choosing the *cy pres* beneficiary up to the court.  Instead, in accordance with their obligation to represent their client's best interest, they should do their best to make sure the unclaimed funds are distributed for a purpose as near as possible to the legitimate objectives

underlying the lawsuit and the interests of class members.  This fund exists to compensate all of the class members, whether they make a claim or not.  Silent class members are just as important for the creation of this fund and have given up their rights against these companies in order to make this settlement available.  Therefore, to compensate the class members for the harm suffered, any unclaimed funds must go to the benefit of the class.

This Objector proposes that an appropriate *cy pres* distribution plan would be one that distributed the funds to organizations working protect consumers from unfair and misleading marketing practices.  Organizations such as the Better Business Bureau, Center for Science in the Public Interest, and Consumer Action are all examples of these organizations.  For example, the Better Business Bureau's mission statement is**:**

> BBB's mission is to be the leader in advancing marketplace trust. BBB accomplishes this mission by creating a community of trustworthy businesses, setting standards for marketplace trust, encouraging and supporting best practices, celebrating marketplace role models, and denouncing substandard marketplace behavior.

http://www.bbb.org/us/BBB-Mission/.  Providing funds to organizations such as these who rely on donations to function would greatly benefit the silent class members and would further the purpose of the underlying cause of action in this lawsuit.  Class Counsel is intimately familiar with the actions giving rise to this lawsuit and should be encouraged to either endorse the nominations made above or provide supplemental proposals for other or additional *cy pres* beneficiaries to make sure the funds are put to their clients' best use.  At the very least we would encourage the Court to set a future hearing date after all claims are paid and a final accounting reveals whether there are

funds available for *cy* pres distribution, in order to designate the *cy pres* recipients and create a record confirming why each recipient has been chosen.

### H.    Oversight Will Assure Relief is Delivered by Claims Administrator.

For the reasons described in the cases above, and to demonstrate the integrity of the Settlement administration, fees paid to the Claims Administrator must be staggered to show the Class, the Court and the public that the Agreement is being administered promptly, correctly and completely. A classic and poignant example of the need for oversight appeared in *Vaughn v. American Honda Motor Co., Inc.*, Case No. 0-04CV-421 (U.S.D.C. E.D. Tex. Marshall Division.)  Shortly before the fairness hearing, the administrator suddenly disclosed an error, having failed to give notice to 500,000 of the 6,000,000 class members.   On May 2, 2007, the court ordered the fairness hearing to be postponed from May 30, 2007 to August 21, 2007 to allow notice to be sent, and to renew the deadlines for opting out or filing objections.  Obviously, if the error had occurred after a settlement were approved, then the court, the class members, the public, and maybe even the class counsel, might never had known.  The result would be that the settlement would fail without a fundamental mechanism for accountability.

In the instant case, the Court must maintain jurisdiction, and at least minimal oversight, to assure that the Settlement is implemented as promised.  When the final report is delivered, the Court can order payment of the last attorney fee payment and can make the Defendants' release final.

### I.    Monitoring and Reporting are Essential.

To have any credibility, the Settlement must require reports to establish that it is performing as promised.  The reports must be delivered to the Court so they are available

to the public, including Class Members. Progress and results must be a condition of awarding benefits to the Defendant (the Release) and Class Counsel (attorney fees) because a Settlement that benefits only Defendant and Class Counsel, but not Class members, is not fair, reasonable or adequate. The reports need not be elaborate, but must show what efforts and results have occurred in distributing relief.

In the *Nextel* case, Judge Gaitan directed the parties to address the objectors' concerns about administration oversight and reporting. The parties submitted a joint response to the court's order, agreeing to modify their settlement agreement to resolve those issues. For instance, their settlement agreement was changed to provide:

> Further, Class Counsel shall file a report with the Court setting forth the results of the discovery regarding Defendants' provision of benefits to class members, together with supporting information showing its compliance with the Settlement Agreement, within fifteen (15) days following the completion of discovery. Once the Court is satisfied with Defendants' and Class Counsel's performance under the Settlement Agreement, the Court shall authorize and direct Defendants to pay the final twenty-five percent (25%) of the attorneys' fees due Class Counsel as set forth in Paragraph 13.

Upon approving the modified settlement, Judge Gaitan awarded attorneys fees to Class Counsel.[4]

### J.  Deadlines Must Benefit Class, not Just Defendants and Counsel.

The Settlement unfairly favors Defendant and Class Counsel, at the expense of Class Members, as demonstrated by the schedule specified in the Settlement Agreement. For instance, Monetary Relief claims must be submitted by August 31, 2010, or relief is

---

[4]  In the Nextel case, Judge Gaitan awarded to class counsel $2,500,000 (which is 1.2% of the class recovery) in response to a request for $3,500,000 (1.7% of the class recovery.) The remaining $1,000,000 was awarded to objectors who made contributions to improving the settlement.

forfeited. The deadline benefits prospective *cy pres* beneficiaries, but not the Class Members. Consider, also that Class Counsel would be paid long before any Class Member receives relief.

Conspicuously absent are the deadlines which would favor or benefit Class Members. For instance, there is no deadline for processing claims. The Administrator could spend weeks, months, or year, or ignore the claims entirely, and no one would know the difference. The fully paid Class Counsel will have no financial incentive to oversee how promptly the Administrator performs, or to report the progress to the Court. With no deadlines, and no incentives, the Class Members -- who allegedly were victimized by Defendants -- would be victimized again. No Settlement which leaves such a gaping and critical hole in the administrative process can be considered reasonable or adequate.

### K.    Adoption of All Other Objections

These Objectors adopt all bona fide objections filed by other Class Members in this case and incorporate them by reference as if they appeared in full herein.

### V.

### OBJECTORS' VALUE TO CLASS-ACTION PROCESS.

Generally speaking, class counsel and defense counsel, in their zeal to win approval of an agreement in a class action, often overlook or deny the importance of objectors to the class-action process. Indeed, in some cases, the class counsel and defense counsel may even denounce objectors' counsel as "serial objectors," or use some other pejorative epithet.[5]  However, settlements, such as this one, can be so complicated that only lawyers who have evaluated and participated in many class action lawsuits can

---

[5]  Such *ad hominem* attacks can be presumed to arise only in the absence of legitimate, persuasive and substantial responses to the merits of the objections.

provide insightful and useful analysis, thoughtful alternatives, and a context within which to identify flaws or oversights in a settlement. Objectors can assist a court in fulfilling its duty to examine the settlement as an independent and impartial neutral.

Thus, objectors provide great value to the class action process. Without resolving the issues described above, the Settlement could become a complete sham and no one would be the wiser. The judicial system would have failed Class Members by requiring no mechanism for assuring that the agreed relief ever is received by the persons who should benefit. The foregoing observations are submitted to improve the Settlement, and thereafter to guarantee it will work, and to show when and how well it is completed. These improvements are developed only now because objectors offer the last opportunity to preserve the adversary process which is necessary to test the fairness of a proposed settlement.

"It is desirable to have as broad a range of participants in the fairness hearing as possible because of the risk of collusion over attorneys' fees and the terms of settlement generally. . . . It is impossible for a class to select, retain or monitor its lawyers as an individual client would." *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412 (E.D. Wis. 2002). "Class counsel and defendants' counsel may reach a point where they are cooperating in an effort to consummate the settlement." *Id*. "Courts, too, are often inclined toward favoring the settlement, and the general atmosphere may become largely cooperative." Id.

"Thus, objectors serve as a highly useful vehicle for class members, for the court and for the public generally." *Great Neck*, 212 F.R.D. at 412. "From conflicting points of view come clearer thinking." *Id.* at 412-13. "Therefore, a lawyer for an objector who raises pertinent questions about the terms or effects, intended or unintended, of a proposed settlement renders an important service." *Id.* at 413.

"The law generally does not allow good Samaritans to claim a legally enforceable reward for their deeds." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 288 (7th Cir. 2002) (Posner, C.J.). "But when professionals render valuable albeit not bargained-for

services in circumstances in which high transaction costs prevent negotiation and voluntary agreement, the law does allow them to claim a reasonable professional fee from the recipient of their services."  Id.  "That is the situation of objectors to a class action settlement."  Id.

In other cases, objectors' counsel have been recognized where their efforts have augmented the common fund or otherwise improved a class action settlement.  *See, e.g., Bowling v. Pfizer, Inc.*, 922 F.Supp. 1261, 1285 (S.D. Ohio), *aff'd*, 102 F.3d 777 (6th Cir. 1996*); In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 257, 359-60 (N.D.Ga. 1993).  Indeed, even in cases where objectors appeared but the settlement terms were not altered, courts have recognized their value in that their presence improved the process and assisted the court in its scrutiny of the settlement.  *See County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1325-27 (2nd Cir. 1990); *Howes v. Atkins*, 668 F.Supp. 1021, 1027 (E.D.Ky. 1987);  *Frankenstein v. McCrory Corp.*, 425 F.Supp. 762, 767 (S.D.N.Y. 1977); *see also Domestic Air*, 148 F.R.D. at 359.  In *In Re: PNC Financial Services Group, Inc. Securities Litigation*, Case No. 2:02-cv-00271-DSC (U.S.D.C. W.D. Pa. W.D.), wherein Judge Cercone made a specific finding "in recognition of the benefit to the Class created by the objection and the time spent thereon by objector's Counsel . . ." and thereby awarded compensation to objector's counsel.

Accordingly, Objector wishes to reserve the right to apply for reasonable and appropriate compensation for the valuable and crucially important services which have been provided in assisting the Court with this complex matter, preserving the adversary process needed to test the proposed Settlement Agreement, identifying problems with the proposed Settlement Agreement, and presenting substantial and workable solutions.

Just as objectors' counsel should be encouraged to assist the class-action process, so should individual class members be encouraged to participate.  Accordingly, an incentive award is appropriate for Objector herein for her willingness to be a named party, promoting fairness, and contributing to the common welfare of the Class.

## VI.

## CONCLUSION

These Objectors hereby adopt, subscribe to and incorporate into these Objections all other well-taken, timely filed objections. Objectors also request an incentive award as a representative of Class Members in this litigation.

WHEREFORE, Objectors respectfully request that this Court:

        A.      Upon proper hearing, sustain these Objections;

        B.      Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

        C.      Award an incentive fees to Objectors for their service as a named representatives of Class Members in this litigation.

Dated: June 4, 2010                    Respectfully submitted,


                        /s/ Patrick Sweeney_____
                        Patrick Sweeney (WI Bar No. 1020435)
                        Sweeney & Sweeney, S.C.
                        440 Science Drive, Suite 101
                        Madison, WI 53711
                        Telephone: (608) 238-4444
                        Facsimile: (608) 238-8262
                        patrick@sweenlaw.com

                        Darrell Palmer  (CA Bar No. 125147)
                        Law Offices of Darrell Palmer
                        603 N. Highway 101, Suite A
                        Solana Beach, CA 92075
                        Telephone: (858) 792-5600
                        Facsimile: (858) 792-5655
                        darrell.palmer@palmerlegalteam.com

                        Kenneth E. Nelson (MO Bar No.31993)

Nelson Law Firm, P.C.
1100 Main Street #2900
Kansas City, MO 64105
Telephone: (816) 421-7225
Facsimile: (816) 831-6584
kennelson@mclaw.com

Edward F. Siegel (OH Bar No. 0012912)
27600 Chagrin Blvd. #340
Cleveland, OH 44122
Telephone: (216) 831-3424
Facsimile: (216) 831-6584
efsiegel@efs-law.com

Attorneys for Objectors Rosalie Borgardts,
Paul Palmer, Irving S. Bergrin, Cory A.
Buye, and Thomas Basie

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically filed. Notice

of this filing was sent to the following via the Court's electronic filing system and U.S.

Mail on this the 4th day of June 2010.

Vincent J. Esades
Heins Mills & Olson, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403
vesades@heinsmills.com

                                  /s/ Patrick Sweeney_____

**Exhibit A**

**<u>Lawn Mower Information for Rosalie Borgardts</u>**

Below is the information which is specified by Section 19 of the Notice:

Name:  Mrs. Rosalie Borgardts

Address: 6321 NW 78th Street, Kansas City, MO 64151

Telephone number   (816) 741-2946

Brand of lawnmower:  John Deere L20 Automatic

Lawnmower Identification number:  GXL120A096657

Brand of engine: Briggs & Stratton

Engine model and number: Intek 20 HP twin V and BG20252

**Exhibit B**

**Lawn Mower Information for Paul Palmer**

Below is the information which is specified by Section 19 of the Notice:

Name: Paul Palmer

Address: 301 7th Street, Nocona, TX 76255

Telephone number: (940) 235-7151

Brand of lawnmower:  Sears Craftman

Lawnmower Identification number:  102703 M 060839

Brand of engine:  Briggs & Stratton Walk-Behind

Engine model number:  6.75 Horsepower 917-378492

**Exhibit C**

**<u>Lawn Mower Information for Irving S. Bergrin</u>**

Below is the information which is specified by Section 19 of the Notice:

Name: Irving S. Bergrin

Address:  29849 Orangewood Drive, Beachwood, OH 44122-4717

Telephone number: (216) 292-6606

Brand of lawnmower:  *

Lawnmower Identification number:  *

Brand of engine:  *

Engine model number:  *


* Information to be provided later.

**Exhibit D**

**<u>Lawn Mower Information for Cory A. Buye</u>**

Below is the information which is specified by Section 19 of the Notice:

Name:  Cory A. Buye

Address:  3522 Field Crest Way, Madison, WI 53719

Telephone number:  (608) 845-2474

Brand of lawnmower:  Toro Recycler 22

Lawnmower Identification number:  SER 250144764 Model No. 20016

Brand of engine:  Tecumseh

Engine model number:  LV1925EA

**Exhibit E**

**<u>Lawn Mower Information for Thomas Basie</u>**

Below is the information which is specified by Section 19 of the Notice:

Name: Thomas Basie

Address:  6631 Indiana Avenue, Mayfield Heights, OH 44124

Telephone number:  (216) 276-5725

1. Brand of lawnmower:  21" Toro Power Drive Rear Bagger

Lawnmower Identification number:  20790 s/n 1014843

Brand of engine:  Toro

Engine model number:  TNT100 10061D SER 1020A

2. Brand of lawnmower:  21" Toro GTS 5 Key-Lectric

Lawnmower Identification number:  26624 SER 0005983

Brand of engine:  Toro

Engine model number:  VMK9 - 303946

# EXHIBIT F



# STATE OF NORTH CAROLINA

GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
NORTH CAROLINA BUSINESS COURT

May 3, 2005

The Honorable Julia M. Nowicki
Circuit Court of Cook County
Richard J. Daley Center
50 West Washington Street
Chicago, Illinois 60602

Attention: Room 2510

Re:   *Wrobel v. Sears, Roebuck and Co.*
      02 CH 23058 (Cook County Illinois)
      *Moody v. Sears, Roebuck and Co.*
      02 CVS 4892 (New Hanover County North Carolina)

Dear Judge Nowicki:

As a result of the notice plan and settlement in the above captioned action, the citizens of North Carolina will receive **$66** in cash and coupons, and the entire nationwide class will receive cash and coupons totaling **$2,402**.[1] The citizens of New Hanover County, where Mr. Moody brought suit on their behalf, will get **nothing** from the settlement. You will recall that plaintiffs' counsel were awarded **$1,100,000** in cash and coupons for obtaining this result. There were only 997 claims filed during the claim period[2] and only 317 of those claims were valid.[3] There were 189 claims eligible for a $10 cash payment and 128 claims eligible for a $4 coupon, producing the $2,402 total payout. I am writing to bring these numbers to your attention for a number of reasons.

First, Mr. Shipman, lead counsel for the class, challenged me to do so. In a hearing last week on motions to dismiss the North Carolina action in *Moody v. Sears*, he told me that I should not make any determination of whether the judgment in *Wrobel* was entitled to full faith and credit without bringing my concerns to your attention first. Yielding to his request, I am taking this opportunity to again express my concerns about this settlement. Mr. Shipman told me that

---

[1] See the attached Affidavit of Cindi A. R. Straup, an employee of the claims administrator. Inexplicably, no claims have actually been paid.

[2] Eighteen claims were filed after the deadline and will not be honored.

[3] Roughly two-thirds of these claims were for four-wheel drive vehicles which were ineligible under the settlement. Class members were not notified of that exclusion in the claim process, thus artificially inflating the claims numbers. Realistically only 317 valid claims were received.

he believed he had completely fulfilled his fiduciary duty to the class and was not required to notify you of the abysmal results of settlement administration or take any further action on behalf of the class he represents.[4] As far as he is concerned, this case is over. He is satisfied that he has earned his $1,100,000 fee by generating $2,402 for the class. Under your order, Sears has no obligation to account to you for the results of settlement administration.

Second, Mr. Shipman and Sears have gone to extremes to avoid notifying any court of the failure of the notice plan. Your order did not require them to file any accounting in Illinois. In North Carolina, Sears filed motions to dismiss and asked the court to hear them before obtaining any information about the settlement results. Mr. Shipman then went so far as to file a Petition for Writ of Mandamus in the North Carolina Court of Appeals, endorsed by Sears, to prevent me from having a hearing to find out the settlement results. When both attempts failed, Sears put the required information together in the attached affidavit, and Mr. Shipman said he would have given me the information voluntarily if I had only asked for it rather than ordering it be produced. I adjourned the hearing, and the information was then produced voluntarily by Sears. You can see from the affidavit why they fought so hard to keep the information secret.

Third, and most importantly, the result is simply unjust and the type of result Congress alluded to in providing for removal of some state class actions to federal court. The public will rightly be outraged at the result. The citizens of North Carolina where this litigation originated and on whose behalf it was originally filed will undoubtedly feel wronged by the legal system. As I indicated to you in my letter of November 5, 2004, it is my policy to make the results of all class actions public. This case is no exception. Sunshine is the best disinfectant. As judges, we have to protect the integrity and public perception of the judiciary. Results like this cause the public to lose faith in the bar and the judiciary unless they are corrected.

Fourth, and most seriously, it appears your approval may have been obtained by misrepresentations about the status of the claims as of the November 17, 2004 hearing. Mr. Shipman told you in no uncertain terms that there had been **1,900 claims** filed before the hearing. The attached affidavit shows that there could have been no more than **339 claims** filed before the hearing and that the number was likely less than that. Further, both parties and their counsel should have been aware that roughly two-thirds of those claims were invalid as four-wheel drive vehicles, thus reducing the number of valid claims in existence on the hearing date to around 100.[5] I cannot conceive of your having approved the settlement if you had been told there were only 100 valid claims. Sears' national counsel, Mr. Fanning, sat silent while Mr. Shipman made representations that both he and Mr. Fanning knew were not true. The following exchange took place at the hearing when you rightfully expressed your concern about the number of claims:

Excerpt (pp.32-34) from Condensed Version of Transcript of Hearing on November 17, 2004 before Judge Nowicki, Circuit Court of Cook County, Illinois, Chancery Division.

---

[4] I have deferred judgment on that issue pending your action.

[5] The affidavit indicates that there were only 339 claims filed for all of November. The affidavit also demonstrates that roughly two-thirds of all the claims were probably invalid as four-wheel drive vehicles. That information was plainly available from the claim form. Thus, Sears and Mr. Shipman knew or should have known before they made representations to you on November 17, 2004 that the number of valid claims was closer to 100 than 1900. They colluded to keep that information from you and lead you to base your approval on inflated, faulty claims information. The total claims, valid and invalid, for the entire period were only 997.

THE COURT: Okay. And when will we know how many claimants we have?

MR. SHIPMAN: Judge, the claim period runs through February of 2005, so I guess the literal answer to your question is that we will know in February of 2005.

THE COURT: *And of course, what happens if only 5 or 10 people respond?*

MR. SHIPMAN: Well, we know so far, Judge -- and again, it's summarized in our memorandum in support -- as of today, and again, people were only able to make claims starting with the end of the notice period, and the last notice ran October 24th, is that right?

MR. FANNING: Yes, that's right.

MR. SHIPMAN: *As of today, actually as of Friday, there were roughly 1,900 or so people that had already made claims with literally thousands more inquiries in terms of website, calls, et cetera, but there had already been 1,900 or so people that had already submitted claims, and the claim period has only been running roughly three weeks.*

THE COURT: But when's the last notice?

MR. SHIPMAN: October 24th was the last notice.

THE COURT: *Are you expecting a lot of people? I mean I would assume that the inquiries would be closer to the notice than they would be a date further away from the notice.*

MR. SHIPMAN: *Judge, I'm not sure with respect to this settlement that that is necessarily true simply because it's Sears, and Sears' reputation is such that everybody, you know, in a family shops at Sears, and when people make their claims, they'll ask their neighbors, they'll ask their friends, hey, did you hear about this Sears settlement? Here's the information by which you can make a claim, whether they tell their son, tell their mother or their father.[6]*

Now, it certainly statistically is so that a larger number of claims came closer to the period of time in which there's notice, but I think that because we have Sears in this particular case, that my not be the case.

THE COURT: *Well, what if come February we only have 2,000 people, 3,000 people, 5,000 people, so that you are short, what are we going to do?*

MR. SHIPMAN: *Well, I guess it depends on how your Honor defines short. Your Honor knows that it is rare that courts in the United States tie an award of fees to the number of people that have showed up because we can't control that.[7] That's obviously a function of notice, and we can't force people into claims, especially on the lodestar method, and again, we've analyzed this for you in our brief.*

When you're rewarding the lawyers for the time they've got in the case and not necessarily for the "benefit" conferred to class, we think that the analysis should be, I mean have we billed, have we accumulated $1.3 million in time, and again, as an officer of the court, we will confirm that we have in exchange for a

[6] I note here that only 4 claims, all invalid, were received from New Hanover County, thus indicating that not even Mr. Moody and Mr. Shipman called any friends or relatives to tell them about the settlement.

[7] Mr. Shipman is well aware of the fact that my court is one of the "rare" courts concerned about the number of claimants generated by the notice plan. Class counsel does have responsibility for insuring that the notice plan is effective.

payment of $1,050,000 in cash and $50,000 in coupons, *so I understand you Honor's concern, but that's not really going to affect us.*

Transcript of hearing before Judge Nowicki on November 17, 2004 (emphasis supplied).

I do not have access to the written materials submitted to you and therefore do not know if there is a written representation by Mr. Shipman or Sears with respect to the claims made as of November 17, 2004. I am relying on the transcript of the hearing and the attached affidavit for my information.

The total of 317 valid claims is "short" by any definition, and counsel knew there was a problem when they failed to provide the actual number of valid claims at the time of the hearing. It appears you asked the right questions and were given the wrong answers. If that is not the case, I would appreciate your clarifying the discrepancy for me and letting me know you had the right numbers and approved the fee nonetheless.

It is even clearer that counsel knew in December 2004 when they presented the final order to you that the representations they had made in November were untrue.[8] That would explain why they did not recite any information about the number of claims received as of that date in the order.[9]

Whether these undisputed facts support a finding that your approval and the settlement were obtained by fraud and collusion, thus voiding the settlement, is a matter for your consideration initially. I found them worth bringing to your attention. It was clear to me from the questions you asked at the hearing that you were concerned about the success of the notice plan and did not intend to award a huge fee if the class did not benefit from the settlement.

Alternatively, it is apparent that the notice plan failed. If, as Mr. Shipman argued in supporting his fee request, a normal claim rate should be 30 percent,[10] then an actual valid claim rate of 0.000211 should indicate that the notice plan was wholly inadequate. I believe Mr. Shipman's normal claim rate to be unsupported by any empirical evidence. I have searched in vain for years for an empirical study of claims rates in consumer class action cases. There is simply no information available to my knowledge. The fact that out of the entire nation only 997 total claims were filed during the claim period and only 317 valid claims were filed compared to the 250,000 to 500,000 claims he represented would likely be filed should be enough to set this settlement aside. It is hard to believe the "best practical notice" resulted in only 317 valid claims nationwide out of the 1,500,000 potential claimants suggested by counsel for Sears and Mr. Shipman. This notice plan came up "short" by 1,499, 683 claimants.

I doubt that the citizens of Illinois fared any better than those of North Carolina. When it came time to publicize the settlement in the twenty-five largest Sears automotive center markets, no publication took place in local papers in Illinois. It turns out that Wilmington and Raleigh, North Carolina must be bigger Sears automotive center markets than Chicago! Strangely, three

---

[8] By the end of December only 670 claims had been filed. Presumably, two-thirds of those were invalid.

[9] Your final order, which I assume counsel drafted for you, only reflected that there had been some 2,000 inquiries. It said nothing about claims made—a glaring, but clearly intentional omission.

[10] Mr. Fanning was not silent on this representation. He openly supported it by telling you about another Sears case involving a high redemption rate of coupons sent out in a settlement.

of the places where notices were put in the local newspapers were in New Jersey, where the residents were not eligible to receive benefits. Counsel neglected to tell you that there were 843 Sears automotive centers nationwide. They published local notices in only about 4% of the relevant market, specifically excluding Chicago (where two of the suits were filed) and including New Jersey (where the citizens had already been paid). You may want to inquire into the benefits received by the citizens of Illinois. They may be worse than the $66 recovery by the citizens of North Carolina. It is results like this which, if they go unredressed, provide fodder for those who would strip state courts of their jurisdiction over class actions.

I do not know what you will do with this information. I am sure you are not pleased to receive it. As Mr. Shipman requested, I will await your decision before dealing with the issues of full faith and credit before me. He obviously prefers your forum. Should you decide to void the settlement and put all parties back where they were before any settlement, I will resume administration of the North Carolina action. Please let me know what you decide to do.

Very truly yours,

Ben F. Tennille
Special Superior Court Judge
For Complex Business Cases

BFT/jeh
Enclosure

cc: Joshua Stein, Senior Deputy Attorney General
Consumer Protection Division
North Carolina Department of Justice

L. Thomas Lunsford II
North Carolina State Bar

Hon. Brenda A. Tucker
Clerk of Superior Court
New Hanover County

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

CHRISTINA MELITO, CHRISTOPHER
LEGG, ALISON PIERCE, and WALTER
WOOD, individually and on behalf of all
others similarly situated,

     Plaintiffs,                Case No. 1:14-cv-02440-VEC

v.

AMERICAN EAGLE OUTFITTERS,
INC., a Delaware corporation, AEO
MANAGEMENT CO., a Delaware
corporation, and EXPERIAN
MARKETING SOLUTIONS, INC.,

     Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6-5-17

---

**OBJECTIONS OF KERRY ANN SWEENEY, PRO SE AND PATRICK S.**
**SWEENEY PRO SE, ON BEHALF OF AND FOR EKS A MINOR**
**PERSON, TO THE PROPOSED SETTLEMENT**

---

     NOW COMES, Pro Se Objectors, KERRY ANN SWEENEY and

PATRICK S. SWEENEY, on behalf of and for EKS a minor person, and hereby

files these objections to the proposed settlement in this matter.

**PROOF OF MEMBERSHIP IN CLASS**

     Kerry Ann Sweeney, Pro Se and Patrick S. Sweeney, Pro Se on behalf of

and for EKS , a minor person (herein collectively referred to as "Objectors" or

individually as "Kerry Ann" or "Patrick" respectively) have reviewed that certain notice circulated in this case, which is not dated (herein referred to as the "Notice"). As a result the Objectors believe that they are members of the Class as defined in the Notice. They have filed timely Claims in this matter. The Objectors' address, e-mail addresses and telephone numbers are listed at the conclusion of this objection.

## NOTICE OF INTENT TO APPEAR

Objectors hereby give notice that they do **NOT** intend to appear at the Fairness Hearing presently scheduled for August 22, 2017 at 10:00 a.m. EST at the United States District Court for the Southern District of New York, Room 443, Thurgood Marshall Courthouse, 40 Foley Square, New York, N.Y. 10007.

## REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Objectors assert the Settlement Agreement is not fair, reasonable nor adequate:

1. Claims administration process fails to require reliable future oversight, accountability and reporting about whether the claims process actually delivers what was promised. The proposed settlement orders no counsel, not various class counsel attorneys nor any defense attorney (notwithstanding the large amount of attorney fees to be earned by the numerous law firms involved in this case) to monitor the settlement process to its ultimate completion.
2. It would obviously be more prudent to withhold a portion of Class Counsel's fee until the entire distribution process is complete. Furthermore, it would also be judicious to require Class Counsel

(and perhaps Defense Counsel as well) to report back to this Honorable Court with a final summary and accounting of the disbursement process (even if brief) in order to confirm that this matter has been successfully concluded and to allow this Honorable Court to "put its final stamp of approval" on the case.

3.   The Notice process is flawed as a copy of the Notice was not sent to the Objectors notwithstanding the Objectors having previously filed claims on the Settlement Website.

4.   No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing the settlement. Objectors hereby contend that the withholding of a reasonable sum of awarded attorney's fees would alleviate the concerns raised herein regarding Paragraphs No. 1 above.

5.   The fee calculation is unfair in that the percentage of the settlement amount is far too high (it is stated in the Notice that it is 33.333%, which is high, but if that percent is arrived at by using monies actually awarded class members the percentage is even higher). By way of example: if cost of administration were $500,000.00; incentive awards $30,000 and attorney fees and litigation expenses were $4,832,850 the net monies available for distribution to the Class would be $9,137,150.00. The attorney fees would then be 52.89% of the monies actually available to be awarded to the Class.

6.   The Objectors hereby also state that, of the all the 273 Docket Entries on PACER, very few entries were substantive in nature. On the contrary, most of the Docket Entries are procedural in nature. Also many of the docket entries were not submitted by the Plaintiff but rather by the defendant, the court and other third parties. Actually there are only 68 Docket Entries that the Objectors can attribute to the Plaintiffs. Under this assertion the cost per Docket Entries computes to an unfathomable amount of $71,071.00 per Docket Entry.

7.   The fee request is not reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, hours accumulated and reasonable costs incurred), which can be evaluated by the Class and the Court to determine the reasonable nature (or not) of the fee request.

8.   The Objectors hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## CONCLUSION

**WHEREFORE**, This Objectors, for the foregoing reasons, respectfully request that the Court, upon proper hearing:

1.  Sustain these Objections;

2.  Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3.  Award an incentive fee to this Objectors for their role in improving the Settlement, if applicable.

Respectfully submitted by:

_____
Patrick S. Sweeney, Pro Se, on behalf of,
and for EKS a minor person
6666 Odana Road
Suite 116
Madison, WI 53719
310-339-0548
patrickshanesweeney@gmail.com


_____
Kerry Ann Sweeney, Pro Se
c/o Patrick S. Sweeney, Pro Se,
6666 Odana Road
Suite 116
Madison, WI 53719
310-339-0548
patrickshanesweeney@gmail.com


## CERTIFICATE OF SERVICE


The undersigned hereby certifies that on May 24, 2017, I caused to be filed the
foregoing with the Clerk of the Court of the United States District Court for the
Southern District of New York and to counsel by sending this document via U.S.
First Class Mail Delivery at the addresses for the Clerk and counsel provided in
the Notice. Furthermore, when the Clerk receives the objection they will scan it
into the CM/ECF, thus notify all parties who are registered with CM/ECF system.

_____
Patrick S. Sweeney, Pro Se



# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

BYRON MCKNIGHT, JULIAN MENA,
TODD SCHREIBER, NATE COOLIDGE,
and ERNESTO MEJIA, individually and
on behalf of all others similarly situated,

Case No.: 3:14-cv-05615-JST

         Plaintiffs,

v.

UBER TECHNOLOGIES, INC., a Delaware
Corporation, RAISIER, LLC, a Delaware
Limited Liability Company,

         Defendants.



FILED

JAN 16 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA



## OBJECTION OF PATRICK S. SWEENEY PRO SE TO PROPOSED SETTLEMENT AND NOTICE OF INTENT NOT TO APPEAR

NOW COMES, Pro Se Objector, Patrick S. Sweeney, Pro Se and hereby

files these objections to the proposed settlement in this matter.

## I.   PROOF OF MEMBERSHIP IN CLASS

Upon information and belief Patrick S. Sweeney, Pro Se ("Objector")

believes he is a member of the class as defined in that certain Legal Notice of Class

Action Settlement which is not dated, ( the "Notice"). Objector's address and

telephone number are listed at the conclusion of this objection.

## II. NOTICE OF INTENT TO NOT APPEAR

Objector hereby gives notice that he does NOT intend to appear at the

Fairness Hearing presently scheduled for February 8, 2018 at 2:00 p.m., at the

United States District Court for the Northern District of California at the Phillip

Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue,

Court Room 9 (19th Floor), San Francisco, CA 94102.

## III.   OBJECTOR IS A CLASS MEMBER

After reviewing the Notice, the Objector states that he is a class member with

standing to object to the Court's Order for Preliminary Approval of the Settlement

by virtue of his Uber Account and his documentation which was submitted with his

claim and payment selection form filed with Settlement Administrator on January

3, 2018 on or about 4:00 p.m. CST. Objector's Payment Election Form

Conformation Number is JMYPLE6N.


## IV. REASONS FOR OBJECTING TO THE PROPOSED SETTLEMENT

### A.    Procedural History.

In that the Northern District's Procedural Guidance for Class Action

Settlements discourages a statement of procedural history in some motions before

the Court, Objector, in the spirit of that Rule, defers to the procedural history as

described in that certain Order Denying Motion for Preliminary Approval of Class

Action Settlement (by Judge Jon S. Tigar; filed on 8/30/2016 case 3:14-cv-05615-JST) and as updated recently by the Court's docket on PACER.

### B.      The Requested Attorney Fees are Excessive.

Plaintiff Class Counsel requests that the Court award a total of $8.125 million in attorney fees. The requested fees amount to 25% of the $32.5 million non-reversionary Settlement Fund and represents a 4.28 multiplier on the collective lodestar of $1,896,480.

Objector submits it is unfair to award attorney fees in the amount of $ 8.125 million dollars (i.e. 25 percent of the settlement fund).

### (i)      The Ninth Circuit Permits Court's Using the Percentage-of-the-Fund Method to Calculate an Award of Attorney Fees.

In common fund cases, the district court has discretion to employ either the lodestar method or the percentage-of-recovery method in determining reasonable attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Although courts may use either method, "the percentage method in common fund cases appears to be dominant." *In re Omnivision Techs., Inc.,* 559 F.Supp. 2d 1036, 1046 (N.D. Cal. 2008). That method "better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients,...". *In re Payment Card*

*Interchange Fee and Merchant Discount Antitrust Litig.*, 991 F.Supp.2d 437, 440 (E.D.N.Y. 2014).

Regardless of the chosen method, courts must award attorneys' fees based on an evaluation of "all of the circumstances of the case." Vizcaino, 290 F.3d at 1048. The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case. Courts cannot rationally apply any particular percentage—whether 13.6 percent, 25 percent or any other number—in the abstract, without reference to all the circumstances of the case." *Vizcaino v. Microsoft Corp.* 290 F.3d 1043, 1051 (Ninth Cir. 2002)

The Ninth Circuit has identified the following non-exhaustive factors as being relevant to that evaluation: (1) the results achieved for the class; (2) the skill required of counsel and the quality of the work; (3) the risk of the litigation; (4) the contingent nature of the fee and the financial burden on counsel; and (5) awards in similar cases. Id. at 1048-50.

(ii)   **Appellate Courts Encourage District Judges to Use the Lodestar Method to As a Cross-Check of the Percentage-of-Recovery Method**.

More and more, courts are conducting a "lodestar cross-check" to pressure test the propriety of the percentage against the time spent by counsel. Courts have

discretion to conduct a lodestar cross-check on a percentage fee. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, at 506 (2016). The Third Circuit has led the way by incorporating the lodestar cross-check as a routine part of evaluating a fee request. See *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("[I]t is sensible for a court to use a second method of fee approval to cross-check its initial fee calculation.").

The Ninth and Second Circuits have followed suit.  See *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011) ("[W]e have also encouraged courts to guard against an unreasonable result by crosschecking their calculations against a second method."); See also *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  When applying the lodestar cross-check, courts compute a fee amount under both percentage-of-the-fund and lodestar methods and evaluate the ratio of the percentage-based fee to the lodestar-based fee to confirm the reasonableness of the percentage-based fee. *Bluetooth* at 942-944.

The lodestar is calculated "by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* at 941.

**(iii).   A Court May Give an Upwards Adjustment to a Lodestar Calculation.**

A court may give an upwards adjustment to a lodestar (through a positive

multiplier) to reflect a host of "reasonableness" factors, *Kerr v. Screen Extras*

*Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). including: (1) the amount involved

and the results obtained, (2) the time and labor required, (3) the novelty and

difficulty of the questions involved, (4) the skill requisite to perform the legal

service properly, (5) the preclusion of other employment by the attorney due to

acceptance of the case, (6) the customary fee, (7) the experience, reputation, and

ability of the attorneys, and (8) awards in similar cases. *Id*. at 941-42. These are

referred to as the Kerr "reasonableness" factors. *Id*. Under the lodestar-multiplier

method, courts may adjust the raw lodestar amount based upon consideration of

many of the same factors considered in the percentage-of-fund analysis. *Id*.

**(iv.) Risk Multiplier to be Used.**

The Ninth Circuit usually uses multipliers "ranging from one to four [times]

are frequently awarded." Vizcaino, 290 F.3d at 1051 n.6.

Class Counsel submits that the 4.25 multiplier is within the range of

multipliers that the courts in the Ninth Circuit and elsewhere regularly approved.

However, many of the cases cited by Class Counsel are cases that are referred as

"megafund" cases. These are cases with huge settlement amounts.

Objector submits that Courts in these cases have the luxury of using large multipliers to justify attorney fee awards because the Megafund settlement amounts necessitate a large multiplier to rationalize a percentage fee which, by the way, was usually less than asserted 25% of the settlement amount.

For example, the *Vizcano* case cited had a common fund to be paid by Defendant Microsoft in the amount of $96,885,000. *Vizcaino v. Microsoft Corp.* 290 F.3d 1043, 1051 (Ninth Cir. 2002) (approving multiplier of 3.65). In the *Volkswagen* case cited by Class Counsel there was a judgment against Volkswagen in favor of the FTC in the amount of four billion, thirty-nine million, two hundred forty-six thousand, seven hundred seventy-three dollars ($4,039,246,773.00). *In re Volkswagen,* 2017 WL 1047834, at 1.

In the cited *High-Tech Emp. Antitrust Litig* case the total amount of settlement was of $425 million ($415 Million against Adobe Systems, Incorporated, Apple Inc., Google Inc., and Intel Corporation and $20 million secured earlier through settlements with Intuit, Inc., Lucasfilm Ltd., and Pixar)., *In re: High-Tech Emp. Antitrust Liti.,* No. 5:11-cv-03541, Dkt. 54 at *16 (N.D. Cal. Sept. 2, 2015).

In the *Gutierrez v. Wells Fargo Bank* case, the class action judgment was in the amount of $203 million dollars. *Gutierrez v. Wells Fargo N.A.*, No. C 07-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015). In the cited *Vranken v.*

*Atlantic Richfield Co.* case the total settlement fund was $76,723,213.26. *Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298-99 (N.D. Cal. 1995). The cited *Nasdaq Market-Makers Antitrust Litig.*, case had a settlement fund valued at nearly $1 billion dollars. I*n re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) ("In recent years multipliers of between 3 and 4.5 have become common"). (citations omitted). *Id.*

**(v). In this Case a Multiplier of 4.25 is Too High**

Objector contends the Ninth Circuit usually uses multipliers "ranging from one to four [times]." Vizcaino, at 1051 n.6. The Ninth Circuit has tallied dozens of class action lodestars and found that in 83% of cases surveyed, the lodestar was between 1.0 and 4.0 Id. ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.")

In *Rose v. Bank of America* this Court determines that a multiplier of 2.59 was appropriate (the same multiplier awarded in *Arthur v. Sallie Mae*, where many of the same attorneys were present, similar arguments were made, and similar results were achieved). *Rose v. Bank of America*, No.: 5:11-CV-02390-EJD United States District Court for the Northern District of California, San Jose Division, August 29, 2014  Docket # 59 , quoting *Arthur v. Sallie Mae, Inc.*  2012 WL 4075238 (W.D. Wash. Sept. 17, 2012).

In a study of class action cases, Professor Fitzpatrick review 444 class action settlements cases it should be noted that in 218 of these 444 settlements (49 percent), district courts said they, considered the lodestar calculation as a factor in assessing the reasonableness of the fee percentages awarded. In 204 of these settlements, the lodestar multiplier resulting from the fee award could be ascertained. The lodestar multiplier in these cases ranged from 0.07 to 10.3, with a mean of 1.65 and a median of 1.34. ("Although there is always the possibility that class counsel are optimistic with their timesheets when they submit them for lodestar consideration, these lodestar numbers—only one multiplier above 6.0, with the bulk of the range not much above 1.0—strike me as fairly parsimonious for the risk that goes into any piece of litigation and cast doubt on the notion that the percentage-of-the settlement method results in windfalls to class counsel.") Sub Journal of Empirical Legal Studies Volume 7, Issue 4, 811–846, December 2010, *An Empirical Study of Class Action Settlements and Their Fee Awards,* 1196 811, 846 Brian T. Fitzpatrick.

Notwithstanding this authority, Class Counsel, requests a fee of $8.125 million, which represents a multiplier of approximately 4.28 on the total lodestar of $1,896,480 incurred by Plaintiffs' counsel in this litigation. In support of it request Class Counsel asserts, *inter alia,* the requested fees are fair and reasonable because "Class Counsel were able to achieve an excellent Settlement that provides

monetary relief to all class members, as well as important injunctive relief." See

Motion for Attorney Fees. Objector does not contest this assertion. Nor does the

Objector disputes Class Counsel's assertion that the Ninth Circuit has used the 25

% as an appropriate percentage of the settlement in some cases. Objector also does

not challenge whether Class counsel's hourly rate is reasonable. Finally, Objector

does not claim the total hours expended (2,835 hours) were inappropriate.

Objector does asserts, however, that the lodestar cross-check does not

supports the fee request here. In reviewing the *Kerr* reasonableness standards

certain factors stand out. First, this case is not an extremely complex case. It is

merely a simple false advertising case. Second, there was almost no way Class

Counsel could lose this case. Although Class Counsel should be properly awarded

for discovery of the bad behavior by Uber, given that the "bad acts" were

undeniably committed, there was little question that the defendant was going to be

ultimately liable for their deeds.

Third, given Ubers estimated market capital to be in between $49 billion

dollars and $69 billion dollars (see USA TODAY published 8:57 p.m. ET Nov. 27,

2017, Updated 8:43 a.m. ET Nov. 28, 2017) there was little actual risk of non-

payment. In addition, this case was not an extensive litigated matter. Here there

were no substantial drawn out litigated discovery battles like in some other cases.

Likewise there was, no summary judgment motions, no trial and as of yet no

appeals. Objector also asserts that the case was not as sophisticated as many class action cases and certainly is not a megafund case.

Finally and notably, there is no specific justification for the additional million dollars in attorney fees requested by Class Counsel as a result of the first settlement being disapproved by this Court. If anything it should be Class Counsel and not the Class that should bear responsibly for the additional time to reach a settlement that the Court could approve.

Although 25% has been granted as attorney fee award in certain percentage of the settlement cases in the Ninth Circuit, here the lodestar cross check indicates that the multiplier used to cross check and justify the amount of the fee request, is higher than what is usually applied in the Ninth Circuit for cases with a similar settlement amounts.

With all of this stated Objector asserts that a more reasonable lodestar crosscheck multiplier is the one applied in *Vizcaino* (where the court approved a multiplier of 3.65). *Id.* at 1298.  Using the *Vizcaino* multiplier of 3.65 the Court here should award Class Counsel attorney fees in the amount of $6,922,152.

## VI.   CONCLUSION

**WHEREFORE**, This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;

2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3. Award an incentive fee to this Objector for his role in improving the Settlement, if applicable.

Dated:   January 3, 2018                    Respectfully submitted,

Patrick S. Sweeney, Pro Se
6666 Odana Road
Suite 116
Madison, WI 53719
Phone: 424-488-4383
Email:patrickshanesweeney@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2018, I caused to be filed the foregoing with the Class Action Clerk of the Court of the United States District Court for the

Northern District of California at the Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, by having the foregoing deposited in First Class, U. S. Mail. When the Clerk of Court scans this objection into the CM/ECF system all parties who are registered will receive a copy.

Patrick S. Sweeney, Pro Se

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

FILED

MAR 2 8 2016

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

EVA MARISOL DUNCAN,

   Plaintiff,

v.

                                 Case No. SA-14-CA-00912-FB

JPMORGAN CHASE BANK, N.

   § Defendant.

---

## OBJECTION OF DONALD GORS, PRO SE

---

NOW COMES, Objectors Donald Gors, PRO SE hereby files these objections to the proposed settlement in this matter.

## PROOF OF MEMBERSHIP IN CLASS

Upon information and belief Donald Gors, Pro Se  (herein referred to as "Objector) has reviewed the notice and believes that he is a member of the class as defined in that certain Notice of Class Action and Proposed Settlement which is not dated (herein referred to as the "Notice"). These representations are made under the penalty of perjury. Objector intends to file a Claim in this matter on or before midnight March 23, 2016. (Claim deadline according to the Notice). Objector's address, e-mail addresses and telephone numbers are listed at the conclusion of this objection.

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does **NOT** intend to appear at the Fairness Hearing presently scheduled for April 27, 2016 at 9:30 a.m. CST before Honorable John H. Wood at the United States Courthouse Building, 655 E. Cesar E. Chavez Blvd. San Antonio, Texas 78206.

## REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor adequate:

1. The fee calculation is unfair in that the percentage of the settlement amount is far too high (it is stated in the Notice that it is 33.33%). The Objector hereby states that, of the 33 docket entries on PACER, very few entries were substantive in nature. In fact, only the Plaintiff's Complaint, Defendant's Answer, Plaintiff's Motion for Preliminarily Approval of Settlement and Final Motion to Approve the Settlement and Award Attorney's Fees had any significant legal substance in its content (although the Motion to Approve Attorney's Fees did appear to have significant legal substance ). The remaining entries were mostly procedural in nature. This is hardly the

type of case justifying Plaintiff's Attorneys' Fees in the amount of

$2,913,000.00.

2.   It is also notable that the Settlement was reached in principal in

approximately 9 months and 15 days following the commencement of this

action. Furthermore, Class Counsel's Memorandum of Law in Support of

the Motion for Attorney's Fees appears to be a catalogue of cases whereby

other lawyers were successful in obtaining excessive fee awards and not a

compelling recitation of why the fees and costs are appropriate in this

specific case.

3.      The fee request is not reasonable in the absence of documentation,

including detailed billing records (including hourly rates of the

professionals, hours accumulated and reasonable costs incurred), which can

be evaluated by Class Members and the Court to determine the reasonable

nature (or not) of the fee request.  Attorneys' fees are disproportionate to the

value of the Recovery of the Class.

4.      The Objector herein hereby adopts and joins in all other objections

which are based on sufficient precedent and theories of equity and law in

this case and hereby incorporates said objections by reference as if they were

fully described herein.

## **CONCLUSION**

**WHEREFORE,** This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;

2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

3. Award an incentive fee to this Objector for their role in improving the Settlement, if applicable.

Respectfully submitted by:

_____

Donald Gors

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 23, 22, 2016, I caused to be filed the foregoing with the all counsel listed in Notice via email and further mailed to the Clerk of the Court of the United States District Court for the Western District of Texas by sending this document via U.S. First Class Mail Delivery.

Objector Donald Gors, Pro Se
c/o Pamela Sachtjen
2590 Richardson Street
Madison, WI  53711
310-339-0548
eb5venturesllc@gmail.com

## CERTIFICATE OF SERVICE

I certify that on March 23, 2016,  I mailed a copy of the foregoing via first class OR HIGHER

mail to the following addresses as required by the court settlement agreement:


Clerk of the Court
U.S. District Court for the
Western District of Texas
655 E. Cesar E. Chavez Blvd.
San Antonio, Texas 78206


Benjamin R. Bingham, Esq.
BINGHAM & LEA, P.C.
319 Maverick Street
San Antonio, Texas 78212


Noah A. Levine, Esq.
WILMER CUTLER
PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **EVA MARISOL DUNCAN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 5:14-cv-00912-FB-** |
| | § | **JWP** |
| **JPMORGAN CHASE BANK, N.A.,** | § | |
| | § | |
| **Defendant.** | § | **JURY TRIAL DEMANDED** |

**JOINT MOTION FOR APPROVAL OF
WITHDRAWAL OF OBJECTION OF DONALD GORS (DOC. 35)**

**TO THE HONORABLE MAGISTRATE JUDGE JOHN W. PRIMOMO:**

Now comes Class Representative Eva Marisol Duncan, by and through Class Counsel, together with objector Donald Gors, after consultation with his attorney Patrick Sweeney[1], and pursuant to <u>F.R.Civ.P.</u> 23(e)(5), and requests approval of the withdrawal of the Mr. Gors' Objection to the proposed settlement of this case, docketed filed at Doc. 35, and show:

1. The parties have satisfied themselves that Mr. Gors is not a class member of this class. Non-class members do not have standing to object to class action settlement. *In re Deepwater Horizon*, 739 F.3d 790, 809 (5th Cir. 2014).

2. Therefore, the parties agree that the objection should be withdrawn.

3. Concerning this withdrawal of objection, no money was sought, nor promised to or received by Mr. Gors nor his counsel.

---

[1] Mr. Sweeney is an attorney licensed and in good standing in the states of Wisconsin and Florida. He is not admitted to practice in this Court, and joins in this motion only to signify that he represents Mr. Gors and has counseled him about the withdrawal of his objections.

Wherefore, premises considered the parties request that the Court approve the withdrawal of the Donald Gors Objection docketed at #35. The parties pray for general relief.

Respectfully submitted,

RILEY & RILEY
Attorneys at Law
320 Lexington Avenue
San Antonio, Texas 78215
(210) 225-7236 Telephone
(210) 227-7907 Facsimile
charlesriley@rileylawfirm.com

By: ___/s/Charles Riley_____
       CHARLES RILEY
       State Bar No. 24039138
        Co-Class Counsel

___*Patrick Sweeney*_____
By Ben Bingham,
by permission granted April 9th, 2016
Patrick Sweeney
2590 Richardson Street
Madison WI 53711
310-339-0548
eb5venturesllc@gmail.com
(not admitted to practice in this Court)
Counsel for Donald Gors

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves e-mail notification of such filing to the following counsel of record on this _11th_ day of April, 2016, and a true and correct copy of the above and forgoing has therefore been served on the following counsel of record for the Defendant at the e-mail addresses listed hereunder:

Noah A. Levine
Alan E. Schoenfeld
Fiona Kaye
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich St.
New York, New York 10007
noah.levine@wilmerhale.com
alan.schoenfeld@wilmerhale.com
fiona.kaye@wilmerhale.com

Wm. Lance Lewis
Kenneth A. Hill
QUILLING, SELANDER, LOWNDS
WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
llewis@qslwm.com
kenhill@qslwm.com

In addition, the undersigned hereby certifies that the foregoing was served upon the objecting parties named hereinbelow via the methods indicated hereunder, on April 11, 2016:

Thomas L. Cox, Jr.
7129 Tabor Dr.
Dallas, TX 75231-5647
tcox009@yahoo.com
and regular mail

Shirley Morales
Patrick John Hollins
c/o T Michael Kennedy, LLC
735 Plaza Blvd.
Suite 200
Coppell, TX 75019
Via electronic mail and regular mail

Marilyn Paul
130 N. Garland Court
Chicago, IL  60602
Via electronic mail and regular mail

T. Johnson
54 W. Madison St.
Chicago, IL  60601
Via electronic mail and regular mail

R. Holstein
130 N. Garland Court
Chicago, IL  60602
Via electronic mail and regular mail

Amirali Jabrani
2038 Moondance Court
O'Fallon, Missouri  63368
Email: alijabrani24@gmail.com

Christopher T. Bandas
Bandas Law Firm, P.C.
500 N. Shoreline Blvd., Suite 1020
Corpus Christi, Texas 78471
Email:  cbandas@bandaslawfirm.com


  /s/ Charles Riley

Charles Riley
Co-Class Counsel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

| | |
|---|---|
| IN RE CHECKING ACCOUNT<br>OVERDRAFT LITIGATION | ) <br> ) <br> ) |
| THIS DOCUMENT RELATES TO:<br>FIRST TRANCHE ACTIONS | ) <br> ) <br> ) |
| *Tornes, et al. v. Bank of America, N.A.,*<br>S.D. Fla. Case No. 108-cv-23323-JLK | ) <br> ) <br> ) |
| *Yourke, et al. v. Bank of America, N.A.,*<br>S.D.Fla. Case No. 1:09-cv-21963-JLK<br>N.D.Cal. Case No. 3:09-2186 | ) <br> ) <br> ) <br> ) |

NOTICE OF OBJECTION OF CLASS MEMBERS MARTIN CARAPIA AND
FATIMA DOREGO AND NOTICE OF INTENT TO APPEAR

COME NOW, MARTIN CARAPIA and FATIMA DOREGO ("Objectors"), Class Members to this action, by and through their undersigned counsel, and hereby file these Objections to the Proposed Class Action Settlement, give notice of their counsel's intent to appear at the November 7, 2011, settlement hearing, and request award of an incentive fee for serving as unnamed class member objectors. Objectors″ address and class member status will be provided upon request by the Court and Class Counsel.

As an initial matter, these objectors applaud the settlement″s provision that class members need to do "nothing" in order to participate in any monetary benefits of the settlement.

Objectors raise the following issues with respect to the Proposed Settlement:

1.      There is no information given to the class (or apparently the Court), about the value of the settlement, thereby precluding an honest assessment of the fairness to the class under Rule 23.

2.      The request by class counsel for 30% of the common fund harms the class and is unreasonable in a mega-fund settlement such as this.

3.      The *cy pres* component is not adequately defined.

4.      The settlement, notice, and preliminary approval order contain terms regarding objections which are antithetical to the purposes of Rule 23 and 24 of the Federal Rules of Civil Procedure.

5.      There is no indication that the harm complained of will be remedied.

## I.

### NO INFORMATION IS PROVIDED ABOUT THE ESTIMATE OF THE HARM SUFFERED BY THE CLASS, PRECLUDING A FINDING OF REASONABLENESS

Rule 23 provides that a class action settlement must be "fair, adequate, and reasonable." While Defendants are theoretically parting with $410 million, there is no information as to why this amount is an adequate settlement fund for the class. Is the perceived harm greater than that, and if so, by how much? Class Counsel asserts that this amount represents between a nine and forty-five percent recovery for the class. (Mtn for Final Approval ("MFA"), Dkt. 1885, at 27.) This is a very large variable, one that must weigh heavily when assessing whether this settlement is truly valuable to the class. Is it nine percent, or is it forty-five percent? Given that Class Counsel states that they and their experts "performed detailed work necessary to determine the exact amount of each member's damages and the proper plan of allocation," they should be able to give the class, and the Court, better information about the "exact amount of each member's damages." The class is entitled to know that number, and the relationship it bears to the overall settlement amount.

Absent this information, it appears difficult, or impossible, to determine whether this figure is reasonable. This information is essential to a court's obligation in weighing the fairness of a settlement.

## II.

### THE REQUESTED ATTORNEYS' FEE OF THIRTY PERCENT OF THE COMMON FUND IS UNREASONABLE

These Objectors acknowledge that the Eleventh Circuit recognizes a "percentage of the fund" approach for awarding attorneys' fees in common fund cases. *Camden I Condominium Ass'n., Inc., v. Dunkle,* 946 F.2d 768 (11th Cir. 1991). *Dunkle* also recognizes

that "judges systematically award fees in the range of twenty to twenty-five percent of the fund," and that "twenty-five percent is the benchmark." *Id.* at 774-75. Class Counsel in this matter requests not twenty, or twenty-five, but thirty percent, of a $410 million fund, or $123,000,000. For a case in which the same issues were tried to verdict and resulted in a plaintiff's verdict (the *Wells Fargo* case), this amount seems especially high, compounded with the fact that the case has really only been litigated for less than three years (2008 to present). (MFA at 4) This prior *Wells Fargo* verdict also undermines Class Counsel's assertion that plaintiffs faced "major risks" in obtaining relief. (MFA at 25)

Because class members only recover a "pro rata" percentage of their losses, from funds remaining in the common fund after $123 million is deducted, and administrative fees, a further examination by the Court is necessary. A more reasonable percentage of twenty to twenty-five would be more appropriate for the effort and time expended, and the value provided to the class.

A reduced percentage would also be more in keeping with the Supreme Court's recent language in *Perdue v. Kenny A.,* 130 S.Ct. 1662 (2010), in which the court noted that "enhancements may be awarded in ,,rare" and ,,exceptional" circumstances." 130 S.Ct. at 1667. While this statement was made in a lodestar context rather than a percentage of the fund, these Objectors question whether Class Counsel has met its burden of an upward adjustment from the 25% benchmark for a "rare" or "exceptional" result, given that the issues have already been adjudicated favorably for plaintiffs and less than three years have been invested in the litigation. A lodestar cross-check for reasonableness, together with an analysis under the ubiquitous *Johnson* factors, may indicate that in fact, a twenty percent fee of $82 million may very well be fair, reasonable, and adequate compensation for the work performed on this matter, and may represent, in fact, a very generous multiplier. This information not having been presented to the class for perusal, however, these Objectors are left only to speculate as to the exact amount of generosity. These Objectors are left with a nagging question as to why Class Counsel has completely failed to divulge either hourly

3

rates, or even lodestar summaries, to justify and support its request for $123 million, which directly and negatively impacts the class. Every class member would benefit substantially if the percentage were reduced to the circuit benchmark or norm of twenty to twenty-five percent.

## III.

## THE *CY PRES* COMPONENT IS NOT ADEQUATELY DEFINED

Class Counsel, in accordance with its obligation to represent the clients" best interest, must do its best to make sure the unclaimed funds are distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit and the interests of class members. This fund exists to compensate all of the class members, whether they make a claim or not. Silent class members are just as important for the creation of this fund and have given up their rights against these companies in order to make this settlement available. Therefore, to compensate the class members for the harm suffered, any unclaimed funds must go to the benefit of the class.

The *cy pres* component of the settlement is addressed as follows: it will "benefit consumer financial literacy education, and educate and assist consumers with financial services issues through advisory and related services." Settlement at 32, ¶90. This leaves the ultimate recipient unidentified, when the purpose of *cy pres* is to benefit non-claimant class members. While these Objectors do not object to the proposed concept of the recipient, the Court cannot fairly ensure that the non-claimant class members are adequately represented until the recipients are identified. Nor can Class Counsel assert that such identification is premature. Class Counsel has already determined that there is currently a *cy pres* component, and that it will reduce the common fund by about twelve percent. The recipients of these funds must be identified by the parties at this point, before approval, so that the Court, and the class, has appropriate information to ensure the best representation of those absent class members. Identification of the recipients at this stage, rather than after approval is essential for a fair distribution to these silent class members, and in accordance with all

leading authorities.  *See, e.g.,*  3 Herbert B. Newberg & Alba Conte, Newberg on Class

Actions  § 10:17 (4th ed.2009); *In re Pharmaceutical Industry Average Wholesale* Price, 588

F.3d 24, 33-35 (1st Cir. 2009);  Masters *v. Wilhelmina Model Agency, Inc.*, 473 F. 3d 423,

436 (2nd Cir. 2007); *In re Ticket Com'n Antitrust Litigation*, 307 F. 3d 679, 282-83 (8th Cir.

2002);  *Democratic Committee of District of Columbia v. Washington Metropolitan Area*

*Transit Commission*, 84 F. 3d 451,  455 (D.C. Cir. 1996); *Six Mexican Workers v. Arizona*

*Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990);  *Wilson v. Southwest Airlines, Inc.*  880

F.2d 807, 811 (5th Cir. 1989).

## IV.

### THE SETTLEMENT, NOTICE, AND PRELIMINARY APPROVAL ORDER CONTAIN REQUIREMENTS FOR OBJECTORS WHICH RUN AFOUL OF RULE 23's OPTION TO OBJECT, AND FEDERAL RULES OF EVIDENCE 403 AND 404

The Settlement, Notice, and Preliminary Approval Order indicate that in order to make a valid objection, an objector must supply not just information about what the objector finds problematic, but also information about objections in other cases, and whether the objector's attorney has filed objections in other cases.

These Objectors have found no authority which prohibits the filing of multiple objections, either in statutes or case law.  The only requirement is that a class member has a problem with an objection.  Requesting information beyond that undermines a class member's rights under Rule 23, and impinges on evidentiary Rules 403 and 404, which prohibit character evidence as a basis for making a prejudicial ruling.

Every objection should be judged on its own merits.  If it is frivolous or unmeritorious, the Court has the option of overruling those objections on that basis.  If the objections have merit, they should be sustained, regardless of who made them.  For those reasons, the requirements of submitting information regarding unrelated cases and an objector's, or his attorney's, history of litigation is patently irrelevant to the merits of any particular objection.

/ / /

### A. Evidentiary Problems with the Requirements.

Federal Rules of Evidence 403 articulates that evidence which is otherwise relevant may not be admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. The committee notes to Rule 403 state that there are certain reasons that such information is not admissible as "[t]hese circumstances entail risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme. Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission. *Slough, Relevancy Unraveled*, 5 Kan. L. Rev. 1, 12-15 (1956); Trautman, *Logical or Legal Relevancy--A Conflict in Theory*, 5 Van. L. Rev. 385, 392 (1952); McCormick § 152, pp. 319-321." (1975 Committee Notes to Rule 403.)

Federal Rule of Evidence 404 prohibits the introduction of this information as well as it is impermissible evidence of the Objectors", or their attorney"s, character. Character evidence is rarely, if ever, admitted within the realm of civil trials. Committee notes to Rule 404 state "[t]he circumstantial use of character evidence is generally discouraged because it carries serious risks of prejudice, confusion and delay. See *Michelson v. United States*, 335 U.S. 469, 476 (1948)("The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice."). (2006 Committee Notes to Rule 404.) (*See Generally, U.S. v. DeMarco,* 407 F.Supp. 107 (C.D.Ca. 1975) where Judge did not permit testimony against credibility of opposing counsel.)(*See also U.S. v. Frederick*, 78 F.3d 1370 C.A.9 (Ariz. 1996) where Prosecutor's comment to jury about defendant's lawyer, which was made immediately after court had sustained two other objections on ground that comments were inappropriate, constituted serious misstep; in comment prosecutor implied to jury that government and court were allied, that they were allied against the defense, and that

6

government and court wanted jury to seek the truth by considering all the evidence, in contrast to defense attorney, who was asking jury not to see the truth.

In this case, information regarding these Objectors, their attorney, and any of their previous objections to Class Action settlements is not only irrelevant to this Court's decision at the upcoming fairness hearing but is proffered only in an effort to color the Court's perception of these persons and, thus, sway the Court's decision regarding these objections. This is improper and therefore the requirements in the order, settlement, and notice requiring this information should be struck.

Rule 23 specifically provides a means for objections.  To infer that an objection is less meritorious merely because its author has made one before is to undermine the very language of Rule 23.  In fact, it seems paradoxical that Class Counsel are to be congratulated for being "professional" class counsel, but yet the class members they are purportedly representing are to be prohibited from hiring an attorney to write a credible objection to counter such "professionalism."

One judge specifically rejected the idea that attorneys who file multiple objections are to be condemned:

> I have never understood the term "professional objector."  The lawyers that appear in front of me are professionals as well.  I would think that if I heard the term "unprofessional objector," I would be very much concerned.

This is from a class case entitled *Credit/Debit Card Tying Cases,* JCCP No. 4335, Superior Court of California, County of San Francisco, August 6, 2010, Hon. Richard A. Kramer presiding, at page 16.  In fact, the reason Congress included a right to object is because their right is essential to ensuring the fairness of the process, and that a court is possessed of all relevant information before approving the settlement:

> While the parties to a class action start out in an adversarial posture, once they reach the settlement stage, incentives have shifted and there is the danger of collusion. . . .  Class counsel, for instance, might settle claims for significantly less than they are worth, not because they think it is in the class's best interest, but instead because they are satisfied with the fees they will take away. [Citation.]  Intervenors counteract any inherent objectionable tendencies by reintroducing an adversarial relationship into the settlement process and thereby improving the changes that a claim will be settled for its fair value.

*Vollmer v. Selden,* 350 F.3d 656, 660 (7th Cir. 2003).  For these reasons, Class Counsel"s

attempt to discourage objectors by requiring information not germane to this particular cause

needs to be struck.

**V.**

## THE ALLEGED HARM WILL APPARENTLY CONTINUE LEADING TO ADDITIONAL QUESTIONS ABOUT THE FAIRNESS OF THE SETTLEMENT

The relief provided to the class is monetary, to compensate for past "harms" of

reordering large and small charges to accounts.  This appears reasonable.  There is no

indication in the settlement, however, that the practice will be discontinued, if even for a

short while.  There is no injunctive component to this resolution, causing this Objector to

wonder about the fairness of the settlement.  If a class member receives some compensation

for past "harms," but is subject to the exact same harm now and for the foreseeable future, the

fairness seems illusory.  Are the class members then free to file another suit in the future for

this same harm, although their claims for this time period have been released?

It seems that to truly be a fair and reasonable settlement, some injunctive component

must be incorporated.

WHEREFORE, These Objectors respectfully request that this Court:

A.  Upon proper hearing, sustain these Objections;

B.  Upon proper hearing, enter such Orders as are necessary and just to adjudicate

these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness

of the proposed settlement.

/ / /

/ / /

/ / /

C.  Award an incentive fee to these Objectors for their service as a named

representative of Class Members in this litigation.

DATED: October 3, 2011               By:  /s/ Patrick Sweeney_____
                                          Patrick Sweeney
                                     Florida Bar No. 593486
                                     Sweeney & Sweeney, S.C.
                                     440 Science Drive, Ste. 101
                                     Madison, WI 53711
                                     Phone: 608-238-4444
                                     Fax: 608-238-8262
                                     Email: Patrick@sweenlaw.com
                                     Attorney for Objectors Martin Carapia
                                     and Fatima Dorego

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2011, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Southern District of Florida Division by using the USDC CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the USDC CM/ECF system.

                                     By:  /s/ Patrick Sweeney_____
                                          Patrick Sweeney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

| | |
|---|---|
| IN RE CHECKING ACCOUNT OVERDRAFT LITIGATION | ) ) |
| | ) |
| THIS DOCUMENT RELATES TO: FIRST TRANCHE ACTIONS | ) ) |
| | ) |
| *Tornes, et al. v. Bank of America, N.A.,* S.D. Fla. Case No. 108-cv-23323-JLK | ) ) |
| | ) |
| *Yourke, et al. v. Bank of America, N.A.,* S.D.Fla. Case No. 1:09-cv-21963-JLK N.D.Cal. Case No. 3:09-2186 | ) ) ) |
| | ) |

NOTICE OF OBJECTION OF CLASS MEMBERS MARTIN CARAPIA AND
FATIMA DOREGO AND NOTICE OF INTENT TO APPEAR

COME NOW, MARTIN CARAPIA and FATIMA DOREGO ("Objectors"), Class Members to this action, by and through their undersigned counsel, and hereby file these Objections to the Proposed Class Action Settlement, give notice of their counsel's intent to appear at the November 7, 2011, settlement hearing, and request award of an incentive fee for serving as unnamed class member objectors. Objectors" address and class member status will be provided upon request by the Court and Class Counsel.

As an initial matter, these objectors applaud the settlement"s provision that class members need to do "nothing" in order to participate in any monetary benefits of the settlement.

Objectors raise the following issues with respect to the Proposed Settlement:

1.     There is no information given to the class (or apparently the Court), about the value of the settlement, thereby precluding an honest assessment of the fairness to the class under Rule 23.

2.     The request by class counsel for 30% of the common fund harms the class and is unreasonable in a mega-fund settlement such as this.

3.     The *cy pres* component is not adequately defined.

1

4.     The settlement, notice, and preliminary approval order contain terms regarding objections which are antithetical to the purposes of Rule 23 and 24 of the Federal Rules of Civil Procedure.

5.     There is no indication that the harm complained of will be remedied.

## I.

### NO INFORMATION IS PROVIDED ABOUT THE ESTIMATE OF THE HARM SUFFERED BY THE CLASS, PRECLUDING A FINDING OF REASONABLENESS

Rule 23 provides that a class action settlement must be "fair, adequate, and reasonable."  While Defendants are theoretically parting with $410 million, there is no information as to why this amount is an adequate settlement fund for the class.  Is the perceived harm greater than that, and if so, by how much?  Class Counsel asserts that this amount represents between a nine and forty-five percent recovery for the class.  (Mtn for Final Approval ("MFA"), Dkt. 1885, at 27.)  This is a very large variable, one that must weigh heavily when assessing whether this settlement is truly valuable to the class.  Is it nine percent, or is it forty-five percent?  Given that Class Counsel states that they and their experts "performed detailed work necessary to determine the exact amount of each member's damages and the proper plan of allocation," they should be able to give the class, and the Court, better information about the "exact amount of each member's damages."  The class is entitled to know that number, and the relationship it bears to the overall settlement amount.

Absent this information, it appears difficult, or impossible, to determine whether this figure is reasonable.  This information is essential to a court's obligation in weighing the fairness of a settlement.

## II.

### THE REQUESTED ATTORNEYS' FEE OF THIRTY PERCENT OF THE COMMON FUND IS UNREASONABLE

These Objectors acknowledge that the Eleventh Circuit recognizes a "percentage of the fund" approach for awarding attorneys' fees in common fund cases.  *Camden I Condominium Ass'n., Inc., v. Dunkle,* 946 F.2d 768 (11th Cir. 1991).  *Dunkle* also recognizes

that "judges systematically award fees in the range of twenty to twenty-five percent of the fund," and that "twenty-five percent is the benchmark." *Id.* at 774-75. Class Counsel in this matter requests not twenty, or twenty-five, but thirty percent, of a $410 million fund, or $123,000,000. For a case in which the same issues were tried to verdict and resulted in a plaintiff's verdict (the *Wells Fargo* case), this amount seems especially high, compounded with the fact that the case has really only been litigated for less than three years (2008 to present). (MFA at 4) This prior *Wells Fargo* verdict also undermines Class Counsel's assertion that plaintiffs faced "major risks" in obtaining relief. (MFA at 25)

Because class members only recover a "pro rata" percentage of their losses, from funds remaining in the common fund after $123 million is deducted, and administrative fees, a further examination by the Court is necessary. A more reasonable percentage of twenty to twenty-five would be more appropriate for the effort and time expended, and the value provided to the class.

A reduced percentage would also be more in keeping with the Supreme Court's recent language in *Perdue v. Kenny A.,* 130 S.Ct. 1662 (2010), in which the court noted that "enhancements may be awarded in „rare" and „exceptional" circumstances." 130 S.Ct. at 1667. While this statement was made in a lodestar context rather than a percentage of the fund, these Objectors question whether Class Counsel has met its burden of an upward adjustment from the 25% benchmark for a "rare" or "exceptional" result, given that the issues have already been adjudicated favorably for plaintiffs and less than three years have been invested in the litigation. A lodestar cross-check for reasonableness, together with an analysis under the ubiquitous *Johnson* factors, may indicate that in fact, a twenty percent fee of $82 million may very well be fair, reasonable, and adequate compensation for the work performed on this matter, and may represent, in fact, a very generous multiplier. This information not having been presented to the class for perusal, however, these Objectors are left only to speculate as to the exact amount of generosity. These Objectors are left with a nagging question as to why Class Counsel has completely failed to divulge either hourly

rates, or even lodestar summaries, to justify and support its request for $123 million, which directly and negatively impacts the class. Every class member would benefit substantially if the percentage were reduced to the circuit benchmark or norm of twenty to twenty-five percent.

III.

**THE *CY PRES* COMPONENT IS NOT ADEQUATELY DEFINED**

Class Counsel, in accordance with its obligation to represent the clients" best interest, must do its best to make sure the unclaimed funds are distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit and the interests of class members. This fund exists to compensate all of the class members, whether they make a claim or not. Silent class members are just as important for the creation of this fund and have given up their rights against these companies in order to make this settlement available. Therefore, to compensate the class members for the harm suffered, any unclaimed funds must go to the benefit of the class.

The *cy pres* component of the settlement is addressed as follows: it will "benefit consumer financial literacy education, and educate and assist consumers with financial services issues through advisory and related services." Settlement at 32, ¶90. This leaves the ultimate recipient unidentified, when the purpose of *cy pres* is to benefit non-claimant class members. While these Objectors do not object to the proposed concept of the recipient, the Court cannot fairly ensure that the non-claimant class members are adequately represented until the recipients are identified. Nor can Class Counsel assert that such identification is premature. Class Counsel has already determined that there is currently a *cy pres* component, and that it will reduce the common fund by about twelve percent. The recipients of these funds must be identified by the parties at this point, before approval, so that the Court, and the class, has appropriate information to ensure the best representation of those absent class members. Identification of the recipients at this stage, rather than after approval is essential for a fair distribution to these silent class members, and in accordance with all

4

leading authorities.  *See, e.g.,*  3 Herbert B. Newberg & Alba Conte, Newberg on Class Actions  § 10:17 (4th ed.2009); *In re Pharmaceutical Industry Average Wholesale* Price, 588 F.3d 24, 33-35 (1st Cir. 2009);  Masters *v. Wilhelmina Model Agency, Inc.*, 473 F. 3d 423, 436 (2nd Cir. 2007); *In re Ticket Com'n Antitrust Litigation*, 307 F. 3d 679, 282-83 (8th Cir. 2002);  *Democratic Committee of District of Columbia v. Washington Metropolitan Area Transit Commission*, 84 F. 3d 451,  455 (D.C. Cir. 1996); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990);  *Wilson v. Southwest Airlines, Inc.*  880 F.2d 807, 811 (5th Cir. 1989).

## IV.

### THE SETTLEMENT, NOTICE, AND PRELIMINARY APPROVAL ORDER CONTAIN REQUIREMENTS FOR OBJECTORS WHICH RUN AFOUL OF RULE 23's OPTION TO OBJECT, AND FEDERAL RULES OF EVIDENCE 403 AND 404

The Settlement, Notice, and Preliminary Approval Order indicate that in order to make a valid objection, an objector must supply not just information about what the objector finds problematic, but also information about objections in other cases, and whether the objector's attorney has filed objections in other cases.

These Objectors have found no authority which prohibits the filing of multiple objections, either in statutes or case law.  The only requirement is that a class member has a problem with an objection.  Requesting information beyond that undermines a class member's rights under Rule 23, and impinges on evidentiary Rules 403 and 404, which prohibit character evidence as a basis for making a prejudicial ruling.

Every objection should be judged on its own merits.  If it is frivolous or unmeritorious, the Court has the option of overruling those objections on that basis.  If the objections have merit, they should be sustained, regardless of who made them.  For those reasons, the requirements of submitting information regarding unrelated cases and an objector's, or his attorney's, history of litigation is patently irrelevant to the merits of any particular objection.

/ / /

## A. Evidentiary Problems with the Requirements.

Federal Rules of Evidence 403 articulates that evidence which is otherwise relevant may not be admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.  The committee notes to Rule 403 state that there are certain reasons that such information is not admissible as "[t]hese circumstances entail risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme. Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission. *Slough, Relevancy Unraveled*, 5 Kan. L. Rev. 1, 12-15 (1956); Trautman, *Logical or Legal Relevancy--A Conflict in Theory*, 5 Van. L. Rev. 385, 392 (1952); McCormick § 152, pp. 319-321."  (1975 Committee Notes to Rule 403.)

Federal Rule of Evidence 404 prohibits the introduction of this information as well as it is impermissible evidence of the Objectors", or their attorney"s, character.  Character evidence is rarely, if ever, admitted within the realm of civil trials.  Committee notes to Rule 404 state "[t]he circumstantial use of character evidence is generally discouraged because it carries serious risks of prejudice, confusion and delay. See *Michelson v. United States*, 335 U.S. 469, 476 (1948)("The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.").  (2006 Committee Notes to Rule 404.) (*See Generally, U.S. v. DeMarco*, 407 F.Supp. 107 (C.D.Ca. 1975) where Judge did not permit testimony against credibility of opposing counsel.)(*See also U.S. v. Frederick*, 78 F.3d 1370 C.A.9 (Ariz. 1996) where Prosecutor's comment to jury about defendant's lawyer, which was made immediately after court had sustained two other objections on ground that comments were inappropriate, constituted serious misstep; in comment prosecutor implied to jury that government and court were allied, that they were allied against the defense, and that

6

government and court wanted jury to seek the truth by considering all the evidence, in contrast to defense attorney, who was asking jury not to see the truth.

In this case, information regarding these Objectors, their attorney, and any of their previous objections to Class Action settlements is not only irrelevant to this Court"s decision at the upcoming fairness hearing but is proffered only in an effort to color the Court"s perception of these persons and, thus, sway the Court"s decision regarding these objections. This is improper and therefore the requirements in the order, settlement, and notice requiring this information should be struck.

Rule 23 specifically provides a means for objections. To infer that an objection is less meritorious merely because its author has made one before is to undermine the very language of Rule 23. In fact, it seems paradoxical that Class Counsel are to be congratulated for being "professional" class counsel, but yet the class members they are purportedly representing are to be prohibited from hiring an attorney to write a credible objection to counter such "professionalism."

One judge specifically rejected the idea that attorneys who file multiple objections are to be condemned:

> I have never understood the term "professional objector." The lawyers that appear in front of me are professionals as well. I would think that if I heard the term "unprofessional objector," I would be very much concerned.

This is from a class case entitled *Credit/Debit Card Tying Cases,* JCCP No. 4335, Superior Court of California, County of San Francisco, August 6, 2010, Hon. Richard A. Kramer presiding, at page 16. In fact, the reason Congress included a right to object is because their right is essential to ensuring the fairness of the process, and that a court is possessed of all relevant information before approving the settlement:

> While the parties to a class action start out in an adversarial posture, once they reach the settlement stage, incentives have shifted and there is the danger of collusion. . . . Class counsel, for instance, might settle claims for significantly less than they are worth, not because they think it is in the class"s best interest, but instead because they are satisfied with the fees they will take away. [Citation.] Intervenors counteract any inherent objectionable tendencies by reintroducing an adversarial relationship into the settlement process and thereby improving the changes that a claim will be settled for its fair value.

*Vollmer v. Selden,* 350 F.3d 656, 660 (7th Cir. 2003).  For these reasons, Class Counsel''s attempt to discourage objectors by requiring information not germane to this particular cause needs to be struck.

**V.**

**THE ALLEGED HARM WILL APPARENTLY CONTINUE LEADING TO ADDITIONAL QUESTIONS ABOUT THE FAIRNESS OF THE SETTLEMENT**

The relief provided to the class is monetary, to compensate for past "harms" of reordering large and small charges to accounts.  This appears reasonable.  There is no indication in the settlement, however, that the practice will be discontinued, if even for a short while.  There is no injunctive component to this resolution, causing this Objector to wonder about the fairness of the settlement.  If a class member receives some compensation for past "harms," but is subject to the exact same harm now and for the foreseeable future, the fairness seems illusory.  Are the class members then free to file another suit in the future for this same harm, although their claims for this time period have been released?

It seems that to truly be a fair and reasonable settlement, some injunctive component must be incorporated.

WHEREFORE, These Objectors respectfully request that this Court:

A.  Upon proper hearing, sustain these Objections;

B.  Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

/ / /

/ / /

/ / /

8

C.  Award an incentive fee to these Objectors for their service as a named

representative of Class Members in this litigation.


DATED: October 3, 2011                    By:  /s/ Patrick Sweeney_____
                                               Patrick Sweeney
                                          Florida Bar No. 593486
                                          Sweeney & Sweeney, S.C.
                                          440 Science Drive, Ste. 101
                                          Madison, WI 53711
                                          Phone: 608-238-4444
                                          Fax: 608-238-8262
                                          Email: Patrick@sweenlaw.com
                                          Attorney for Objectors Martin Carapia
                                          and Fatima Dorego


**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2011, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Southern District of Florida Division by using the USDC CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the USDC CM/ECF system.

                                          By:  /s/ Patrick Sweeney_____
                                               Patrick Sweeney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

| | |
|---|---|
| IN RE CHECKING ACCOUNT<br>OVERDRAFT LITIGATION | )<br>) |
| | ) |
| MDL No. 2036 | ) |
| _____ | ) |
| | ) |
| THIS DOCUMENT RELATES TO:<br>FIFTH TRANCHE ACTIONS | )<br>) |
| | ) |
| *Dee v. Bank of the West*<br>N.D. Cal. Case No. 4:10-cv-02736<br>S.D. Fla. Case No. 1:10-cv-22985-JLK | )<br>)<br>) |
| | ) |
| *Orallo v. Bank of the West*<br>C.D. Cal. Case No. 2:10-cv-2469<br>S.D. Fla. Case No. 1:10-cv-22931-JLK | )<br>)<br>) |
| _____ | ) |

**NOTICE OF OBJECTION AND NOTICE OF INTENT TO APPEAR**

COMES NOW, RYAN PHILLIPS ("Objector"), Class Member to this action, by and through his undersigned counsel, and hereby files these Objections to the Proposed Class Action Settlement, gives notice of his counsel's intent to appear at the December 6, 2012, settlement hearing, and requests award of an incentive fee for serving as unnamed class member objector. All information (improperly) requested as a prerequisite of objecting is contained in the attached declarations of Ryan Phillips and Patrick Sweeney.

**I.   SETTLEMENT CLASSES REQUIRE HEIGHTENED SCRUTINY**

The proposed settlement is a "settlement only class," whereby Class Counsel seeks to certify a class for settlement purposes only. Many Circuits Courts recognize "the need for courts to be even more scrupulous than usual in approving settlements where no class has yet been formally certified." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*("G.M.C.")55 F.3d 768, 805 (3d Cir. 1995); *Mars Steel Corp. v. Continental Ill. Nat'l*

*Bank & Trust Co. of Chicago*, 834 F. 2d 677, 681 (7th Cir. 1987)("[W]hen class certification

is deferred, a more careful scrutiny of the fairness of the settlement is required.");

*Weinberger v. Kendrick*, 698 F. 2d 61, 73, (2d. Cir. 1982)("district judges who decide to

employ such a procedure are bound to scrutinize the fairness of the settlement agreement with

even more than the usual care... Accordingly, we will demand a clearer showing of a

settlement's fairness, reasonableness and adequacy and the propriety of the negotiations

leading to it in such cases…")  This is because "[p]rior to formal class certification, there is

an even greater potential for breach of fiduciary duty owed the class during settlement." *In re*

*Bluetooth Headset Prod. Liab. Litig.*, 654 F. 3d 935, 946 (9th Cir. 2011).  And "[w]ithout the

benefit of more extensive discovery, both sides may underestimate the strength of the

plaintiffs' claims." *G.M.* 55 F. 3d at 789.

Pre-class certification settlements demonstrate that class counsel in the interest of a

large fee have an "incentive to act earlier than their clients would deem optimal" in this

situation. *Id*. at 802.  This behavior is backed by many studies which have demonstrated that

pre-class certification classes result in a class member receiving substantially less than class

members in post-certified classes. See, e.g., The Federal Judicial Center, "An Empirical

Study Of Class Actions In Four Federal District Courts: Final Report to the Advisory

Committee on Civil Rules (Draft)" January 17, 1996.  As a result, "such agreements must

withstand an even higher level of scrutiny for evidence of collusion or other conflicts of

interest than is ordinarily required under Rule 23(e) before securing the court's approval as

fair." *In re Bluetooth* 654 F. 3f at 946 (citing *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011,

1026 (9th Cir. 1998).

## II.  CLASS COUNSEL'S FEE REQUEST IS EXCESSIVE

"For the sake of their own integrity, the integrity of the legal profession, and the

integrity of Rule 23, it is important that the courts should avoid awarding 'windfall fees' and

2

that they should likewise avoid every appearance of having done so." *Piambino v. Bailey*, 757 F.2d 1112, 1144 (11th Cir. 1985) (citing *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 469 (2d Cir. 1974) *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

      Class Counsel seeks 30%, or $5.4 million of the $18 million dollar settlement fund plus costs, an unreasonable request given the circumstances of this case.

      The Eleventh Circuit's factors for evaluating the reasonable percentage to award class-action counsel are:

> (1) the time and labor required;
> (2) the novelty and difficulty of the questions involved;
> (3) the skill requisite to perform the legal service properly;
> (4) the preclusion of other employment by the attorney due to acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances;
> (8) the amount involved and the results obtained;
> (9) the experience, reputation, and ability of the attorneys;
> (10) the "undesirability" of the case;
> (11) the nature and the length of the professional relationship with the client;
> (12) awards in similar cases.
>
> *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d 1330, 1359 (S.D. Fla. 2011)(citing *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 772 (11th Cir. 1991).)

      Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action. In most instances, there will also be additional factors unique to a particular case which will be relevant to the district court's consideration. *Id* at 775.

/ / /

/ / /

1.    <u>Time and Labor Required</u>

Through crafty authoring, Class Counsel's Joint Declaration stretches to the margin the toils they underwent for the sake of this lawsuit.  But conspicuously absent is any itemized description of the time Class Counsel actually expended on this lawsuit.  This absence is no mistake. Even viewing Class Counsel's account of the work completed through their rose colored lens – research, minimal discovery and negotiations – a fee award of $5.4 million would result in a windfall.

A fee award in a class action lawsuit should represent the market rate for legal services.  *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 52 (2d Cir. 2000.)  To arrive at a reasonable market rate, the Court *must* take into account the hours expended, otherwise class attorneys will receive exorbitant fee awards to the detriment of the class.  *See id.*

After all, the purpose of the class action device is to utilize economies of scale. "It is generally not 150 times more difficult to prepare, try and settle a $150 million case than it is to try a $1 million case." *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 486 (S.D.N.Y. 1998). "There is considerable merit to reducing the percentage as the size of the fund increases. In many instances the increase is merely a factor of the size of the class and has no direct relationship to the efforts of counsel." *Id.* See also *In re Infospace Inc.*, 330 F. Supp. 2d 1203, 1210 (W.D. Wash. 2004) ("There is nothing inherently reasonable about a 25 percent recovery, and the courts applying this method have failed to explain the basis for the idea that a benchmark fee of 25 percent is logical or reasonable."); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 129 (9th Cir.1994) ("WPPSSS") ("[T]here is no necessary correlation between any particular percentage and a reasonable fee.")

Clearly, the notion that as the size of the fund increases, the likelihood that a reasonable fee award decreases as a percentage of the fund decreases, is founded on the principal that less attorney time was expended.  To protect the Class against this excessive fee

request, more diligence is required of this Court before it may dismiss this settlement as fair, adequate and reasonable. *See In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 305 (3d Cir. 2005)( "it is "sensible" for district courts to "cross-check" the percentage fee award against the "lodestar" method."); *In re Bluetooth*, 654 F. 3d at 934-935(same); *In re Goldberger*, 209 F.3d at 50 (same); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.,* 669 F.3d 632, 644 n.42 (5th Cir. 2012) cert. denied, 12-66, 2012 WL 2921869 (U.S. Oct. 1, 2012) (noting that a cross check in the 5th circuit is even more searching than a typical lodestar cross-check in other circuits.) This is necessary to comply with 11th Circuit precedent and to discharge this Court's duties under Rule 23.

When checking the reasonableness of the fee against the percentage of the fund, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50(citing *In re Prudential Ins. Co. Am. Sales Litig.*, 148 F.3d 283, 342 (3d Cir.1998). "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case (as well as encouraged by the strictures of Rule 11)." *Id*.

Put differently, it need not be an exhaustive effort. But having absolutely no information, as is the case here, renders any purported *Camden* analysis incomplete if not impossible.

2.    The Novelty and Difficulty of the Questions Involved

Analyzing this factor in the context of this litigation, this weighs against the requested fee award. Regardless of how novel or difficult *it would have been* to litigate this case on the merits, it didn't happen. This case settled early on. There was no substantive motion work on the merits of this case. Not unlike all of the other plaintiffs' lawyers who raced to the courthouse to jump in on this action, Class Counsel drafted a complaint. All of the Defendant's calamitous defenses were never raised. Class Counsel never faced a vigorous

defense on class certification.  The difficulty of the questions, then, never manifested as a obstacle.

>    3.    The Preclusion of Other Work

There is no evidence proffered that this factor supports the $5.4 million in fees. Again, Class Counsel has not provided the court with information on the amount of time they actually expended.  Without facts that even hint the time commitment on this lawsuit precluded taking on other work, this factor weighs against the award.

>    4.    The Customary Fee

Class Counsel negotiated a clear sailing agreement, securing the right to an unopposed fee application of 30% of the fund.  Not surprisingly, they now seek to recover the entire 30%.  In the 11th Circuit, a 20% - 25% fee is generally deemed to be reasonable when a common fund is established.  *Faught v. Am. Home Shield Corp.,* 668 F.3d 1233, 1242 (11th Cir. 2011).  Class Counsel's requested fee falls outside of the range, subjecting it to the scrutiny of the *Johnson* twelve-factor analysis.  *Id.*  Of course, the *Johnson/Camden* analysis is incomplete without any evidence of the time expended on the litigation.  Anecdotal evidence suggests finding against such an award, because the reasonable time spent performing the described acts would result in a windfall to Class Counsel.  *Piambino*, 757 F.2d at 1144.

>    5.    Remaining Factors

Class Counsel chose not to address several of the remaining factors.  Their disregard for those factors indicates the lack of support they could draw from them.  The factor that leans toward supporting such a fee request, results achieved, is far outweighed by the dearth of support from the remaining factors.   Besides, Class Counsel's usurpation of much of the benefit by their enormous fee request minimizes this factor's force.

*/ / /*

## III.  CLASS COUNSEL IMPERMISSIBLY SEEKS DISCOVERY FROM UNNAMED CLASS MEMBERS

According to the Notice and Order Preliminarily Approving Class Action Settlement,

for an objection to be considered by the Court, the objection must also set forth:

a.      the name of MDL 2036;

b.      the objector's full name, address and telephone number;

c.      an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d.      al1 grounds for the objection, accompanied by any legal support for the objection known to the objector or his or her counsel;

e.      the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection and a copy of any orders or opinions related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

f.      the identity of  all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

g.      the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which counsel or the law firm has made such objection and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;

h.      any and all agreements that relate to the objection or the process of objecting - whether written or verbal - between objector or objector's counsel and any other person or entity;

i.      the identity of al1 counsel representing the objector who will appear at the Final Approval Hearing;

j.      list of a11 persons who will be called to testify at the Final Approval Hearing in support of the objection;

k.      a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

l.      the objector's signature (an attorney's signature is not sufficient).

This litany of requirements far exceeds the procedures drawn out by Rule 23, which states, "Any class member may object to the proposal if it requires court approval under this subdivision (e)." Class Counsel seeks to expand the requirements of Rule 23 and require any Class Member willing to object to submit to harassing, irrelevant and burdensome discovery.

## A.  Class Counsel Must Seek A Court Order Upon A Showing Of Good Cause Before Seeking Discovery From Silent Class Members

Discovery from an unnamed Class Member is not an absolute right.  *Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999, 1005 (7th Cir. 1971).  In fact, discovery from unnamed individual class members is not usually permitted. *See Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1556 (11th Cir. 1986); see also *On the House Syndication, Inc. v. Fed. Exp. Corp.,* 203 F.R.D. 452, 455 (S.D. Cal. 2001); see also  *In re Worlds of Wonder Sec. Litig.,* C-87-5491 SC (FSL), 1992 WL 330411 (N.D. Cal. July 9, 1992) ("absent class members are not parties and separate discovery of individual class members not representatives is ordinarily not permitted"); see also *McPhail v. First Command Fin. Planning, Inc.,* 251 F.R.D. 514, 517 (S.D. Cal. 2008)(citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985) ("[A]n absent class-action plaintiff is not required to do anything").

The party seeking the discovery must seek a court order from the trial judge who may only grant the discovery request that they have demonstrated a "particularized need to obtain information." *In re Carbon Dioxide Indus. Antitrust Litig.,* 155 F.R.D. 209, 212 (M.D. Fla. 1993)  The risk in authorizing discovery from unnamed class members is that compelling their participation in burdensome discovery proceedings will dissuade participation and reduce class size.  *Cox,* 768 F. 2d at 1556.  For this reason, the burden is on the party seeking discovery to prove its propriety. *Clark v. Universal Builders, Inc.,* 501 F.2d 324, 340 (7th Cir. 1974).  And, discovery should only be permitted in "special circumstances."  *Bruhl v. Price Waterhousecoopers Int'l*, 03-23044-CIV, 2010 WL 5090207 (S.D. Fla. Dec. 8, 2010).

Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement contains

no rational or explanation whatsoever of the requisite 'particularized need' for the disclosure

of the requested information.  There is no showing, and without it, these over burdensome

and harassing demands cannot be tacked on to the minimal objection standards in Rule 23.

Likewise, the Court made no findings to support such demands/discovery.

## B.  Class Counsel Seeks Discovery Of Irrelevant And Privileged Materials

Rule 26 provides, "Unless otherwise limited by court order, the scope of discovery is

as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant

to any party's claim or defense…" F.R.C.P. 26(b)(1).

Class Counsel's objector discovery is clearly intended to prepare an *ad hominem*

attack on Objector's counsel.  The information sought through Class Counsel's discovery

relates to objections in past cases and fee arrangements – all which is wholly irrelevant to the

claims in this lawsuit and contains privileged material.[1]  Whether counsel has "represented

objectors in other actions in the past" has no "bearing on the merits of objections."  *True v.*

*Honda*, 749 F. Supp. 2d 1052, 1079 (C.D. Cal. 2010.)    Further, this information does

nothing to assist the court in evaluating whether the settlement is fair, adequate and

reasonable.  Each Class Member's objection speaks for itself and stands alone on its merits.

Abusive requests for discovery of objectors "resembl[ing] a litigation offensive

designed to burden an entity that had the temerity to object to class counsel's settlement"

resulted in $100,000 sanctions on class counsel in In re Classmates.com. No. C09-45 (W.D.

Wash. Jun.15, 2012) (attached as Exhibit 1) ("It is not surprising that class counsel would

disagree with some objectors…. That is no license, however, to engage in the litigation

assault that class counsel chose here."). "Objectors, as much as class counsel, play an

important role in ensuring the fairness of a class action settlement." Id. Class counsel's

---

[1] California Business and Professions Code §6149

attempt to avoid the obligations of Rule 23(e)(5) by punishing everyone with the temerity to object cannot be approbated.

These Class Members ask the Court to look at the legal and factual issues at stake. Of what possible relevance is objector's relationship to their counsel? Rule 23(e)(5) permits *any* class member the right to object. There is no requirement that the chosen attorney must be to Class Counsel's liking. Whether Mr. Sweeney has objected, improved, or failed to improve past settlements or not does not make *this* settlement more or less fair. Nothing sought by Class Counsel's discovery will discredit the objections. By relevance standards, the discovery cannot be allowed. Subject to these objections, see the declarations of Ryan Phillips and Patrick Sweeney.

This court can rest assured class counsel has a plethora of materials assembled to attack any critic of their efforts, including objector's counsel here. This court will also have to decide if it wants to referee lawyer spats or focus on protecting the class. Either way, this objector make this pledge: if class counsel want to present a stipulation providing that this objection will never be settled without the oversight and approval of this court, this objector will agree. This objector believes the issues outlined above and class counsels' tactics, particularly the unreasonable objection prerequisites, present prime issues for the Circuit Court of Appeals.

## IV. JOINDER IN OTHER OBJECTIONS

This Objector adopts and joins all other well pled, bona fide objections filed by other class members in this case, and incorporates them by reference as if they appeared in full herein.

## V. CONCLUSION

WHEREFORE, This Objector respectfully requests that this Court:

A.  Upon proper hearing, sustain these Objections;

B.  Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

C.  Award an incentive fee to this Objector for his service as a named representative of the Class in this litigation.

Dated: November 6, 2012                SWEENEY LEGAL GROUP, S.C.


                                       By: /s/ Patrick Sweeney_____
                                              Patrick Sweeney (FL Bar No. 593486)
                                       Sweeney Legal Group, S.C.
                                       750 South Dixie Highway
                                       Boca Raton, FL 33432
                                       Phone: (561) 395-0000
                                       Fax: (561) 395-9093
                                       Email: Patrick@sweeneylegalgroup.com
                                       Attorney for Objector Ryan Phillips

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2012, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Southern District of Florida by using the USDC CM/ECF system.

I certify that the following participants in the case are registered CM/ECF users and that service will be accomplished by the USDC CM/ECF system:

**Class Counsel**
Michael Sobol
msobol@lchb.com
Lief Cabraser Hiemann & Bernstein, LLP

Jeffrey M. Ostrow
ostrow@kolawyers.com
Kopelowitz Ostrow P.A.

Robert C. Gilbert
rcg@grossmanroth.com
Grossman Roth, P.A.

**Counsel for Defendant**
Lisa M. Simonetti
lsimonetti@stroock.com
Stroock & Stroock & Lavan LLP


        /s/ Patrick Sweeney
        Patrick Sweeney

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

| | |
|---|---|
| **IN RE CHECKING ACCOUNT** | ) |
| **OVERDRAFT LITIGATION** | ) |
| | ) |
| **MDL No. 2036** | ) |
| _____ | ) |
| | ) |
| **THIS DOCUMENT RELATES TO:** | ) |
| **FIFTH TRANCHE ACTIONS** | ) |
| | ) |
| *Dee v. Bank of the West* | ) |
| N.D. Cal. Case No. 4:10-cv-02736 | ) |
| S.D. Fla. Case No. 1:10-cv-22985-JLK | ) |
| | ) |
| *Orallo v. Bank of the West* | ) |
| C.D. Cal. Case No. 2:10-cv-2469 | ) |
| S.D. Fla. Case No. 1:10-cv-22931-JLK | ) |
| _____ | ) |

**DECLARATION OF PATRICK S. SWEENEY**

I, PATRICK S. SWEENEY, declare as follows;

Below are listed the objection requirements with responses thereto:

     a.     the name of MDL 2036;

          In re Checking Account Overdraft Litigation

     b.     the objector's full name, address and telephone number;

          Ryan Phillips can be contacted through my office.

     c.     an explanation of the basis upon which the objector claims to be a Settlement Class Member;

          See Phillips declaration.

     d.     al1 grounds for the objection, accompanied by any legal support for the objection known to the objector or his or her counsel;

          See the objection.

*/ / /*

1

e.      the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection and a copy of any orders or opinions related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

See Phillips declaration.

f.      the identity of  all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

Patrick S. Sweeney

g.      the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which counsel or the law firm has made such objection and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;

Unknown but less than 10; you can look on Pacer for a complete list.

h.      any and all agreements that relate to the objection or the process of objecting - whether written or verbal - between objector or objector's counsel and any other person or entity;

Such agreements are privileged (CA Bus & Prof Code 6149)

i.      the identity of a11 counsel representing the objector who will appear at the Final Approval Hearing;

Patrick S. Sweeney or counsel making a subsequent appearance.

j.      list of a11 persons who will be called to testify at the Final Approval Hearing in support of the objection;

Class Counsel, the mediator, all experts who offer opinions regarding fairness or attorney fees;

k.      a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

Objector will appear through his attorney;

///

2

l.      the objector's signature (an attorney's signature is not sufficient). See Phillips declaration.

I declare under penalty of perjury under the laws of the State of Florida that the foregoing is true and correct.

November 6, 2012                          /s/ Patrick S. Sweeney____
                                          Patrick S. Sweeney, Declarant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE CHECKING ACCOUNT                    )
OVERDRAFT LITIGATION                      )
                                          )
MDL No. 2036                              )
                                          )
_____     )
                                          )
THIS DOCUMENT RELATES TO:                 )
FIFTH TRANCHE ACTIONS                     )
                                          )
Dee v. Bank of the West                   )
N.D. Cal. Case No. 4:10-cv-02736          )
S.D. Fla. Case No. 1:10-cv-22985-JLK      )
                                          )
Cirullo v. Bank of the West               )
C.D. Cal. Case No. 2:10-cv-2469           )
S.D. Fla. Case No. 1:10-cv-22931-JLK      )
_____     )

## DECLARATION OF RYAN PHILLIPS

1.      I, RYAN PHILLIPS ("Objector"), a Class Member to this action, hereby

authorize my attorney, Joseph Darrell Palmer, to file an objection on my behalf.

2.      I live in Truckee, CA; I do not want to publish my address or phone number in

a public document for personal security reasons. I can be reached through my attorney.

3.      I have been a Bank of the West customer for many years (accounting ending

in 5679). I had a debit card. I incurred overdraft charges because of the large to small posting

policy of the bank.

4.      I have never before objected to a class action settlement.

I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

November 5. 2012

Ryan Phillips, Declarant

1

# EXHIBIT 1

HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE CLASSMATES.COM
CONSOLIDATED LITIGATION

MASTER CASE NO. C09-45RAJ

ORDER

(APPLIES TO ALL ACTIONS)

## I. INTRODUCTION

The court issues this final order to dispose of a class action that will end in a settlement that delivers almost no individual benefit to 60 million people. This case began as an effort to compensate millions of users of the classmates.com website who received allegedly deceptive emails from Defendants (collectively "Classmates") in a campaign to induce users to pay for classmates.com memberships. The case will now end in a settlement that will wipe out the claims of 60 million classmates.com users for an average payment of less than five cents. The overwhelming majority of those 60 million users will receive nothing. About 700,000 of them submitted claims, and will receive less than four dollars each for their efforts. Collectively, Classmates will pay $2.5 million directly to class members, another $1.05 million that the court will split between class members and the lawyers ("class counsel") who negotiated the settlement, and more than $1 million in administration costs, to say nothing of the untold sum that Classmates will pay its own lawyers. If the purpose of class action litigation is to impose

ORDER – 1

1     hefty costs on corporations accused of wrongdoing, one could view this settlement as a

2     success. But class actions, as the lingo implies, are supposed to be about class members.

3     From their perspective, it is difficult to muster much enthusiasm for this settlement.

4         The long history of this case amply illustrates what many courts have observed:

5     the settlement of a class action presents an inherent conflict between the interests of the

6     class, the defendant's interest in minimizing the cost of the settlement, and class

7     counsel's interest in maximizing its compensation. *See*, *e.g.*, *In re Bluetooth Headset*

8     *Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *In re Mercury Interactive Corp.*

9     *Secs. Litig.*, 618 F.3d 988, 995 (9th Cir. 2010). No one attempted to litigate this case on

10    the merits; it has been, in essence, a long settlement negotiation between Classmates and

11    class counsel. If Classmates and class counsel had their way, this suit would have ended

12    in 2010 with a settlement that extinguished the claims of more than 50 million class

13    members, paid class counsel more than $1 million, and paid class members[1] less than

14    $60,000.

15         Although the current settlement is underwhelming, it is a dramatic improvement

16    over the 2010 version; and the credit for the improvement belongs primarily to the

17    hundreds of class members who objected to the first settlement and to later versions.

18    Objectors have the purest interest in looking out for the interest of the class, which makes

19    their involvement in evaluating a settlement essential. Class counsel have an obligation

20    to negotiate a settlement that is at least adequate, but this case is a powerful example of

21    the need to be wary of class counsel's inherent conflict of interest once settlement

22    negotiations begin. The court has an independent obligation to protect the interests of

23    class members, and this court has attempted to fulfill that obligation. But this court

24    (presumably like most courts) has hundreds of other cases to resolve. Especially in this

25    case, where there are tens of thousands of pages of documents in the record, the court is

26

27

[1] For simplicity, the court refers to the nearly 60 million classmates.com users whose interests are at issue as the "class," even though the court has never certified a class before today.

28    ORDER – 2

indebted to the objectors who helped the court as it scrutinized the various settlement proposals.

Now before the court are a final series of motions.  In a case that has too often been about lawyers rather than class members, it is perhaps fitting that most of the final motions present disputes between lawyers.  One motion seeks final approval of the most recent version of the settlement.  The court already explained, at a December 2011 hearing, that it will approve the settlement, and this order will formalize that ruling.  The court must devote the bulk of this order, however, to resolving class counsel's claim for attorney fees, three sets of claims for attorney fees from objectors, and a series of acrimonious disputes between class counsel and those objectors.

## II.  BACKGROUND

To put the present disputes in context, the court reviews the history of this litigation.  The court's prior orders present a more detailed examination of the events comprising this history.[2]

This case began in late 2008 in two different state courts.  Those cases came to this court in January 2009.  Much of 2009 was devoted not to resolving the claims of the class, but to deciding which group of attorneys could represent the class.  The court ultimately chose current class counsel, largely because it was the only group of lawyers who agreed to place any limit at all on the attorney fees it would request.  Class counsel's clients were Anthony Michaels and David Catapano, classmates.com users who hoped to serve as class representatives.

_____

[2] The court issued orders in March and July 2009 addressing class counsel's battle with another group of attorneys for the right to represent the class.  Dkt. ## 45, 51.  By January 2010, class counsel announced that it had reached a settlement with Classmates, which the court preliminarily approved in April 2010.  Dkt. # 76.  In August 2010, the court issued an order addressing not only recent developments in case law, but the overwhelmingly negative reaction of class members to the settlement.  Dkt. # 83.  The court rejected the parties' first settlement in a February 2010 order because the settlement was not fair, not reasonable, and not adequate.  Dkt. # 128.  The parties returned to settlement negotiations, and the court preliminarily approved a new settlement in a July 2011 order.  Dkt. # 156.

ORDER – 3

1    The court appointed class counsel at the end of July 2009.  By January 2010, class

2    counsel and Classmates informed the court that they had reached a settlement.

3    **A.    The First Settlement**

4           In April 2010, the court granted preliminary approval of the parties' initial

5    settlement, which divided Classmates' registered users into a main class of about more

6    than 50 million people and a subclass of 3 million people.  The chief distinguishing

7    characteristic of the subclass was that its members, unlike the rest of the main class, had

8    paid money for a Classmates membership, typically between $10 and $40.  To the main

9    class, Classmates offered only a $2 coupon to be used at its website.  To the subclass,

10   Classmates added an offer of a $3 cash payment.  Classmates agreed to pay up to $9.5

11   million to the subclass, a figure that class counsel touted even though it knew that

12   Classmates would never pay nearly that much.  Every member of the main class and

13   subclass would have released a broad range of claims against Classmates.

14          The reaction of class members disabused the court of its preliminary view that the

15   settlement was adequate.  By the end of August 2010, the court had received

16   communications from dozens of class members decrying the settlement.[3]  They objected

17   to the minuscule offer of compensation and the comparatively gargantuan award to class

18   counsel.  Coincidentally, the Ninth Circuit had just issued its decision in *Mercury*

19   *Interactive*, holding that both Fed. R. Civ. P. 23(h) and due process require that class

20   members have an opportunity to consider and object to class counsel's complete motion

21   for attorney fees, not merely a statement of the upper limit of those fees.  618 F.3d at

---

[3] After reviewing the first objections from class members, the court summarized their reactions:

> The overarching theme [of the initial objections] is that the settlement, to put it mildly, leaves something to be desired.  Class members contend that the compensation to them is too piddling, the compensation to class counsel too generous, and that Classmates itself seems, on balance, to benefit from the settlement.  Class members used colorful language, and many were exceedingly blunt about their disappointment in Classmates, class counsel, and this court.

Aug. 30, 2010 ord. (Dkt. # 83) at 2 n.2.

ORDER – 4

994-95.  On August 30, 2010, the court issued an order requiring class counsel and Classmates to address *Mercury Interactive*, to address the objections of class members, and to consider whether their settlement was appropriate for final approval.  That led to a September 24 hearing at which the court discovered that the objections of comparatively few class members were merely the tip of the proverbial iceberg.  The first settlement was a flop.  Of the 52 million people who received notice of the first settlement, fewer than 60,000 responded to it.  All told, Classmates would have paid just over $50,000 to extinguish the claims of more than 50 million people.

At the September 24 hearing, class counsel and Classmates agreed to modify the settlement and give class members notice of the modifications and of class counsel's attorney fee motion in accordance with *Mercury Interactive*.  They made only modest changes to the settlement.  Classmates agreed to make a $500,000 *cy pres* payment to a charity.  Class counsel agreed to reduce its fee request from $1.3 million to $1.05 million.  Class counsel did not propose any measure that would have delivered more compensation to class members.

With the new notice to class members came a flood of new objections.  In previous orders, the court has expressed its gratitude to the objectors, most of whom made objections without the assistance of an attorney.  The court reiterates its thanks to those class members.

It was at about this time that three groups of objectors entered the fray.  Christopher Langone, himself an attorney, initially filed a pro se objection on August 16, 2010.  (Dkt. # 84 at 24-27).  Mr. Langone's initial objection was not significantly different than the other objections the court received.  At about the same time, the court received an objection that California attorney Charles Chalmers filed on behalf of two California objectors.  Mr. Chalmers sought to represent the objectors in court without complying with this District's rules for *pro hac vice* admission.  The court declined to

ORDER – 5

1   make an exception to the *pro hac vice* rules. Mr. Chalmers unsuccessfully petitioned the

2   Ninth Circuit for mandamus relief. Putting aside his challenge to the application of *pro*

3   *hac vice* requirements, Mr. Chalmers' objection did not raise any novel criticism of the

4   first settlement. Objector Michael Krauss did not make his initial appearance until

5   November 18, 2010, after the court ordered new notice to class members. Attorneys at

6   the Center for Class Action Fairness ("CCAF"), an entity that has been active in

7   objecting to class action settlements across the nation, represented Mr. Krauss. His

8   objection provided new insight into the myriad defects in the first settlement, particularly

9   with respect to class counsel's conflicts of interest and the inadequacy of the proposed *cy*

10  *pres* payment. Mr. Krauss provided substantial legal authority for his positions, much of

11  which was helpful to the court.

12          The court held a hearing on final approval of the first settlement on December 16,

13  2010. The court commenced that hearing by informing Classmates and class counsel that

14  it was unlikely to approve the settlement, explaining its reasons. The remainder of the

15  hearing only served to ensure the rejection of the settlement. Among other things, class

16  counsel admitted that the $2 coupon, the sole form of compensation to more than 50

17  million class members,[4] was not intended to benefit class members. Instead, Classmates

18  designed it as a means to ensure that it could wipe out the potential claims of class

19  members who had never spent money at Classmates. Mr. Catapano and Mr. Michaels,

20  the putative class representatives, neither appeared at the final fairness hearing nor

21  submitted a declaration in support of the settlement. Mr. Krauss's counsel appeared at

22

23  [4] All versions of the settlement included a two-year injunction requiring Classmates to make
24  modifications and additional disclosures in its marketing emails to its customers. The court has
    repeatedly questioned whether that injunctive relief has any value, and declines to repeat its
25  discussion here. Class counsel has adhered persistently to its view that the injunction is valuable.
    Indeed, it contended at the December 2011 hearing that the injunction was worth $25 million,
26  based on undisclosed evidence from an undisclosed expert about the alleged linguistic value of
    the changes that the injunction requires. Class counsel has not convinced the court of the
    injunction's worth, and it has wisely refrained from claiming the alleged monetary value of the
27  injunction as an element of the relief it obtained for class members.

28  ORDER – 6

the final fairness hearing.  Among other things, he pointed out that the settlement made it unduly cumbersome for class members to opt out, object to the settlement, or make claims.  He also shared anecdotal evidence of class members' difficulties making claims and pointed out the inadequacy of the settlement's injunctive relief.  Mr. Langone appeared by telephone, again without an attorney.  His input was not helpful.  Neither Mr. Chalmers nor his clients participated.

## B.  The Second Settlement

Class counsel and Classmates went back to the drawing board.  They negotiated a new settlement, which they submitted for preliminary approval on March 25, 2011.  This time, the objectors were active even at the preliminary approval stage.  Mr. Langone obtained counsel, attempted to intervene in this litigation, then appealed the court's order denying intervention.  Mr. Chalmers submitted another brief objection on behalf of his clients, again declining to obtain *pro hac vice* admission.

The court preliminarily approved the new settlement on July 8, 2011.  In place of an empty agreement to pay $9.5 million, the new settlement guaranteed a distribution of at least $2.5 million to class members.  None of the $2.5 million would revert to Classmates in any circumstance.  *Cy pres* relief would be necessary only if class members who made claims did not cash the checks that Classmates sent to them.  The new settlement eliminated not only the Classmates coupons, but the distinction between class members who had paid for memberships and those who had not.  The court worked with the parties to create a class notice that permitted class members to participate online, whether they wished to make a claim, opt out of the class, or object to the settlement.  Class members could even receive payment online, if they chose.  Class counsel agreed not to increase its attorney fee request above the $1.05 million it had previously requested.  The court preliminarily approved the settlement, despite its concerns that if

ORDER – 7

1   the settlement succeeded in attracting claimants, those claimants would receive very little

2   money.

3          The new settlement succeeded in increasing class members' participation.  This

4   time, about 700,000 class members made claims.  Based on the original structure of the

5   settlement, each claimant would receive about $3.50.  In other words, the new settlement

6   succeeded in attracting more claimants, but it provided them barely more cash

7   compensation (per claimant) than the original settlement.  The parties also agreed, in light

8   of the Ninth Circuit's decision in *Bluetooth*, that if the court awarded less than $1.05

9   million to class counsel, Classmates would distribute the difference to claimants.  *See*

10  *Bluetooth*, 654 F.3d at 949 (requiring courts to closely scrutinize a "kicker arrangement"

11  in which the difference between class counsel's negotiated fee award and the court's

12  ultimate fee award reverts to the defendant).

13         At a December 2011 fairness hearing, the court stated that it would give final

14  approval to the new settlement.  The court noted its reservations, explaining that class

15  counsel's agreement to create a settlement class with as many as 60 million members

16  virtually ensured that no class member would receive significant compensation.  The

17  court explained, for example, that even if Classmates' corporate parent had decided to

18  fully drain its then-existing cash coffers, Classmates could have paid no more than $2 to

19  every class member.

20         Mr. Krauss and Mr. Chalmers submitted objections to the final settlement in

21  advance of the December 2011 hearing.  Mr. Krauss's counsel appeared at the final

22  fairness hearing.  He raised no objections to the settlement's relief to class members, but

23  he continued to object to the amount of fees that class counsel requested.  Mr. Langone

24  also appeared along with his counsel.  Not only did his counsel voice objections to the

25  settlement, he put Mr. Langone on the witness stand to offer his own objections.  For

26  reasons not apparent to the court, class counsel chose to cross-examine Mr. Langone

27

28  ORDER – 8

1   about a variety of irrelevant conduct.  At the request of Mr. Krauss and Mr. Langone, the

2   court granted them leave to submit a motion for attorney fees.  Mr. Chalmers did not

3   attempt to participate in the December 2011 hearing.

### III.   ANALYSIS

5   In the wake of the final fairness hearing, there are six pending motions: class

6   counsel's motion for final approval of the settlement (Dkt. # 176), class counsel's motion

7   for attorney fees and costs (Dkt. # 159), Mr. Langone's motion for attorney fees and a

8   participation award, Mr. Krauss's motion regarding attorney fees (Dkt. # 186), Mr.

9   Krauss's motion for sanctions against class counsel (Dkt. # 187), and Mr. Chalmers'

10  attempt to file a motion for attorney fees (Dkt. # 190).  The court addresses each in turn.

11  **A.      The Court Grants Final Approval of the Settlement.**

12  As it promised at the final fairness hearing, the court grants final approval of the

13  settlement.  The court grants approval despite the small benefit that this settlement

14  delivers to class members.  Because of the size of the settlement class, the court finds it

15  highly unlikely that another settlement or a resolution on the merits would provide

16  significantly superior relief to class members.  The court thus finds that the settlement is

17  "fair, reasonable, and adequate," if only barely.  Fed. R. Civ. P. 23(e)(2).

18  In reaching this finding, the court concludes that the settlement class meets the

19  prerequisites of Fed. R. Civ. P. 23(a), and that it meets the additional requirements of

20  Fed. R. Civ. P. 23(b)(3), as modified to reflect the resolution of this dispute by settlement

21  as opposed to litigation on the merits.

22  The court further concludes that the parties provided class members reasonable

23  notice of the settlement and of class counsel's request for attorney fees as well as an

24  opportunity to object to the settlement and the fee request.  Fed. R. Civ. P. 23(e)(1),

25  23(e)(4), 23(h)(1), 23(h)(4).

ORDER – 9

1    The court will enter a separate order formally certifying a settlement class and

2    granting approval of the parties' settlement.

3    **B.    The Court Awards Class Counsel Attorney Fees and Costs.**

4         In considering an attorney fee request from class counsel, the court has discretion

5    to determine the award as a percentage of the common fund that counsel created for class

6    members or to use the "lodestar" method to calculate an award based on the number of

7    hours that class counsel expended on the case multiplied by a reasonable hourly fee.

8    *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002).

9         Class counsel asks the court to focus on the lodestar method, contending that it

10   spent almost 4,000 hours litigating this case, and that those 4,000 hours were worth just

11   over $1.7 million at reasonable hourly rates. Class counsel has provided extensive

12   documentation of the time it spent on this litigation. Mr. Langone attacks what he

13   perceives as class counsel's "block billing," various unnecessary expenditures, excessive

14   hourly rates, and other alleged deficiencies. The court will not dwell on his objections. It

15   is no doubt true that the court could reduce class counsel's lodestar calculation, as it

16   could in virtually any case in which this many attorneys worked for this many years. But

17   class counsel seeks only about two-thirds of its lodestar amount, and has commendably

18   declined to raise its fee request from the settlement that the court rejected in December

19   2010 despite putting in an additional year of work negotiating the second settlement.

20   Rather than engage in a lengthy assessment of the propriety of class counsel's lodestar

21   calculation, the court will focus on what it views to be the more compelling objection: the

22   lodestar method in this case wholly overvalues class counsel's work in light of the

23   minimal success it achieved in this litigation. *See Bluetooth*, 654 F.3d at 942 ("Foremost

24   among [the factors bearing on the court's adjustment of the lodestar] is the benefit

25   obtained for the class.").

26

27   ORDER – 10

28

Giving undue weight to class counsel's lodestar calculation would only encourage work that did not benefit the class. Nearly four years of litigation have resulted in no litigation on the merits, two versions of an initial settlement that the court could not approve, and a second settlement that the court approves only begrudgingly. One of the reasons that class counsel spent so much time litigating this case is that it spent so much time either negotiating or defending settlements that were either inadequate or barely adequate. When class counsel sought attorney fees in conjunction with the initial settlement (one that would have paid more than 50 million class members only $52,000), it informed the court that it had "Obtained a Very Good Result for the Class." Dkt. # 93 at 4. A year later, after the court rejected that "Very Good Result," class counsel touted the second settlement as a "Very Good Result for the Class." Dkt. # 159 at 5. The record suggests that class counsel is quick to characterize any settlement as a "Very Good Result." Class counsel need not adopt the court's view of the value of a settlement, but class counsel cannot satisfy its duty to the class by ignoring the weaknesses in the settlements it negotiated. Time and again, class counsel declined to acknowledge the weaknesses of the settlements, and declined to acknowledge the virtual impossibility of obtaining meaningful relief for a class of nearly 60 million people. Class counsel admitted that the coupon it once touted as a benefit for more than 50 million class members was little more than a means for Classmates to extinguish their claims at no cost. The court does not doubt that class counsel expended thousands of hours. The court cannot ignore that class counsel expended thousands of hours to obtain minimally adequate results for the class. Courts commenting on the utility of class actions often note that only a lunatic or fanatic files a suit for $30, citing Judge Posner's pithy observation in *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). Would even a lunatic or fanatic pay attorneys more than $1 million to obtain a settlement worth less than $60,000? In December 2010, class counsel touted that arrangement as a

ORDER – 11

"Very Good Result for the Class." Now it touts the hours it expended to obtain that "Very Good Result" as justification for a fee award.

Eschewing the lodestar method, the court focuses on class counsel's fee request as a percentage of the common fund it ultimately created for class members. That common fund is at least $3.55 million, the sum of the $2.5 million settlement fund and the $1.05 million that will be allocated between class counsel and the class. Class counsel argues that the common fund should also include about $1.5 million in settlement administration costs that Classmates has paid or will pay, split among the cost of three rounds of notice for the settlements and the expected cost of paying class members in accordance with the most recent settlement. Because Classmates' payment of these costs relieves the class of the burden of these expenses, the court may consider them as part of the common fund. *Staton v. Boeing Co.*, 327 F.3d 938, 974-975 (9th Cir. 2003). The court cannot overlook, however, that those administration costs include two rounds of notice for an inadequate settlement. The court accordingly considers $1 million in settlement administration costs as part of the common fund, yielding a common fund of $4.55 million.

Class counsel's $1.05 million fee request is about 23% of the $4.55 million common fund. The oft-cited "benchmark" in the Ninth Circuit is 25%. *See*, *e.g.*, *Vizcaino*, 290 F.3d at 1047. The benchmark is merely a guideline, however, and any percentage-of-the-common-fund award must take into account all circumstances of the case. *Id.* at 1048. In this court's view, the most relevant circumstances are the minimally adequate settlement that class counsel ultimately negotiated, coupled with the amount of time expended pursuing a settlement that was not even minimally adequate. This merits an award below the 25% benchmark. When class counsel competed with another group of attorneys at the outset of this case for the right to represent the class, it won that battle in large part because it agreed to cap its attorney fees. It agreed to seek no more than twice its lodestar amount in any event, and it agreed that if it sought a percentage-of-

ORDER – 12

1   common-fund recovery, it would seek no more than 15% of the common fund if it

2   reached a settlement before it filed a class certification motion.  Jul. 29, 2009 ord. (Dkt.

3   # 51) at 2-3.  Predictably, counsel now focuses on its lodestar cap rather than its

4   percentage-of-common-fund cap.

5          After considering all of the circumstances of the case, the court awards class

6   counsel attorney fees of $900,000, or slightly less than 20% of the common fund it

7   created.  The court finds that this award properly compensates class counsel both for its

8   labor in both the pre-settlement and post-settlement phases in this litigation, and that it

9   also reflects that counsel should not benefit from its efforts to win approval of an

10  inadequate settlement.  *See Bluetooth*, 654 F.3d at 943 (noting that in a common fund

11  case, the court must "assure itself" that class counsel's fee award is "not unreasonably

12  excessive in light of the results achieved").

13         No one objects to class counsel's request for $33,610.77 in litigation costs.  The

14  court finds that class counsel provided adequate evidentiary support for its cost request

15  and that the request is reasonable.

16         The court will also grant a participation award of $1000 each to Mr. Catapano and

17  to Mr. Michaels.  Class counsel requested $2500 each on their behalf.  The court can

18  authorize incentive awards to class representatives.  *Staton*, 327 F.3d at 976.  It must

19  consider the size of the incentive award, how it compares to the overall recovery of the

20  class, and by what factor it exceeds the recovery of other class members.  *Id.* at 977-78.

21  The court must also consider the extent of the class representative's contribution to the

22  litigation, the benefit to the class from those contributions, the amount of time the class

23  representative spent on the litigation, and any danger of retaliation or other adverse

24  consequences the class representative faced as a result of her participation.  *Id.*  Here, the

25  class representatives request almost a thousand times more money than any other class

26  member.  Their declarations with respect to the second settlement consist essentially of

27
28  ORDER – 13

1    evidence that they provided information in discovery and communicated with class

2    counsel. As the court has noted, neither class representative submitted anything to the

3    court in conjunction with the first settlement. The court suspects they submitted

4    declarations in conjunction with the second settlement only because the court called

5    attention to their absence in February 2011 when it formally rejected the first settlement.

6          Considering all of the relevant circumstances, the court awards $1000 each to Mr.

7    Michaels and Mr. Catapano in recognition of their limited participation in this litigation.

8    **C.    The Court Declines to Award Mr. Langone Attorney Fees or a Participation**

9    **Award.**

10         Mr. Langone seeks nearly $180,000 in attorney fees as well as a $50,000 "service

11   award" for himself. The court can award attorney fees to objectors, provided that the

12   objectors prove that they "substantially enhanced the benefits under the settlement."

13   *Vizcaino*, 290 F.3d at 1052; *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963

14   (9th Cir. 2009) (remanding for reconsideration where district court failed to award

15   attorney fees to objector whose conduct increased settlement fund by $325,000). The

16   court is aware of no authority authorizing a "service award" to an objector. If there were

17   such authority, the court assumes that it would treat a participation award to an objector

18   similarly to a participation award to a class representative.

19         Mr. Langone and his counsel appear to be convinced that their efforts led to the

20   improvements in the settlement. They are mistaken. Mr. Langone offered no more

21   substantial criticism of the first settlement than did dozens of unrepresented class

22   members who objected to the settlement. When he appeared pro se (by telephone) at the

23   December 2010 hearing, he spent much of his time talking about a congressional report

24   with scant relevance to this case. The court intensified its scrutiny of the first settlement

25   because of the dozens of objections from unrepresented objectors, the indifference of

26   99.9% of the proposed settlement class, and the miniscule payment Classmates would

27

28   ORDER – 14

1    have made to the class.  The first settlement did not withstand the court's scrutiny.  Mr.

2    Langone has no better claim as the cause for that scrutiny than any other objector.

3          After the court rejected the first settlement, Mr. Langone obtained counsel, but did

4    more to slow this litigation than to improve results for class members.  Mr. Langone

5    attempted to intervene in this litigation, apparently convinced that he could force a better

6    settlement.  He offered some criticism of the second settlement, but that amounted to

7    little more than a slightly more lawyerly version of the same objections that numerous

8    class members submitted.  In some circumstances, a lawyer's insight, particularly where

9    the lawyer supports that insight with legal authority, can call the court's attention to areas

10   of concern it might not otherwise have recognized.[5]  But where a lawyer merely reiterates

11   the objections of unrepresented class members, or points out the routine or obvious, the

12   lawyer does not enhance the settlement, he merely adds his voice to the chorus.  Were the

13   court to reach a contrary decision, it would only encourage attorneys to file "me-too"

14   objections to class settlements in the hope of obtaining compensation.  The court

15   encourages objections, but it is not in the interest of the class to compensate an objector

16   unless his objection contributes significantly to obtaining a substantial benefit for the

17   class.  Mr. Langone's objections did not contribute significantly to obtaining any benefit

18   for the class.

19         Finally, the court observes that Mr. Langone's request for a $50,000 participation

20   award is egregious.  The court has already declined to award as little as $2,500 to Mr.

21   Michaels and Mr. Catapano, although they have had some involvement in this case from

22   its outset.  Mr. Langone overreaches wildly by requesting twenty times as much for his

23   participation.

---

24   [5] Mr. Langone repeatedly points out that he objected to a clause in one or both versions of the
25   settlement agreement that he believed represented an unlawful promise by class counsel not to
     represent objectors to the settlement.  The court has never shared Mr. Langone's concern about
26   that clause.  Class counsel modified the clause to clarify its meaning, although it was probably
     unnecessary to do so.  Class counsel has an obvious conflict of interest with any objector to the
27   settlement; it could not have represented an objector in any event.

28   ORDER – 15

**D.    The Court Does Not Award Mr. Krauss Attorney Fees, but Grants His Request to Reduce Class Counsel's Award as a Sanction.**

Unlike Mr. Langone's objection, Mr. Krauss's objection was useful as the court sorted through the many deficiencies in each settlement the parties proposed. Mr. Krauss identified pertinent legal authority for his positions, which simplified the court's review. More importantly, Mr. Krauss was relentless in his identification of the numerous ways in which the proposed settlements would have rewarded class counsel (and a *cy pres* charity) at the expense of class members. Mr. Krauss's objections significantly influenced the court's decision to reject the first settlement and to insist on improvements to the second. Class members benefitted as a result.

Under these circumstances, the court would be inclined to award attorney fees to Mr. Krauss. The court will not do so, however, because Mr. Krauss has withdrawn his request for attorney fees. The court now explains why.

Class counsel has consistently opposed the efforts of Mr. Krauss and Mr. Langone to influence the court's consideration of the settlement. Class counsel is entitled to disagree with objectors, of course, but the vehemence of class counsel's reaction to these two objectors is unfortunate. Mr. Krauss and Mr. Langone acted in what they perceived to be class members interests, and in many instances, they achieved much more success in that regard than class counsel. Class counsel has often treated their counsel not as people with divergent views on the value of the settlement, but rather as a threat to this litigation. Perhaps the most striking demonstration of that approach was class counsel's decision to interrogate Mr. Langone when he took the witness stand at the December 2011 hearing. Counsel's questions focused not on the strength or weakness of Mr. Langone's objection, but on Mr. Langone himself.

At the December 2011 hearing, the court granted Mr. Langone and Mr. Krauss permission to submit requests for attorney fees. It is not surprising that class counsel wished to scrutinize their requests. Indeed, their obligation to class members likely

ORDER – 16

1    requires as much.  Had class counsel chosen to conduct a reasonable inquiry to ensure

2    that the objector's fee requests were reasonable, the court could not fault them.  What

3    class counsel did in this case, however, was utterly inappropriate.

4          Before class counsel had even received Mr. Langone's and Mr. Krauss's fee

5    requests, it took the remarkable step of issuing subpoenas.  The court focuses on the

6    subpoenas class counsel issued to Mr. Krauss's counsel.  It served the first of those

7    subpoenas on CCAF, the entity that employs Mr. Krauss's counsel.  The subpoena

8    demanded exhaustive production of documents responsive to twenty document requests.

9    Class counsel sought verification of CCAF's not-for-profit status, its tax returns,

10   documentation of its stock ownership, verification of its funding sources, information on

11   its corporate structure, documents revealing its relationship with one of its donors, and

12   more.  The subpoena also contained requests seeking information directly relevant to the

13   work of CCAF's attorneys on this case, although those requests were vastly overbroad

14   and overreaching.  Class counsel directed a second subpoena to one of CCAF's donors,

15   repeating many of the same document requests, and inquiring further into the donor's

16   relationship with CCAF.

17         The subpoenas were legally invalid.  Both CCAF and its donor are domiciled in

18   Virginia.  Class counsel nonetheless issued the subpoenas from this court, in apparent

19   ignorance of the requirement that a subpoena issue from the court encompassing the

20   domicile of the subpoena's target.  Fed. R. Civ. P. 45(a)(2)(C).

21         Even had the subpoenas been valid, they were wholly improper.  The court has no

22   idea why class counsel believed it appropriate to conduct what amounted to a witch hunt,

23   seeking not merely documents with arguable relevance to Mr. Krauss's forthcoming fee

24   requests, but a host of documents designed clearly to root out CCAF's financial

25   circumstances and its relationship with one of its donors.  The subpoenas scarcely

26   resemble a reasonable inquiry into facts relevant to Mr. Krauss's fee requests; they

27

28   ORDER – 17

1  resemble a litigation offensive designed to burden an entity that had the temerity to object

2  to class counsel's settlement. If class counsel had legitimate concerns about any

3  objector's fee request, it could have approached either the objector's counsel or this court

4  to discuss appropriate discovery or another mode of inquiry. Instead, before class

5  counsel had even received any objector's fee request, it went on the offensive against Mr.

6  Krauss and Mr. Langone. The court takes a dim view of what amounts to little more than

7  bullying by class counsel.

8       Rather than respond to class counsel's invalid and improper subpoenas, Mr.

9  Krauss declined to make an attorney fee request. Instead, he asked the court to sanction

10 class counsel and to reduce its attorney fee award. He consented to have any sanction

11 deducted from class counsel's attorney fee award and thereby awarded to class members.

12      The court cannot permit class counsel's egregious attack on Mr. Krauss go by

13 without notice. Objectors, as much as class counsel, play an important role in ensuring

14 the fairness of a class action settlement. This case amply illustrates as much. In this

15 court's view, Mr. Krauss and his counsel did more to secure compensation for class

16 members than class counsel did. Class counsel performed the bulk of the labor necessary

17 to reach the settlement, but Mr. Krauss's counsel did a substantially better job of

18 attending to class members' interests. It is not surprising that class counsel would

19 disagree with some objectors, or even with Mr. Krauss. That is no license, however, to

20 engage in the litigation assault that class counsel chose here.[6] The court could simply

21 admonish class counsel, but the court does not believe that would suffice.

22      The court awards sanctions in the amount of $100,000 against class counsel. The

23 court reasons that it likely would have awarded Mr. Krauss's counsel at least that much,

24 had he requested attorney fees. An award of $100,000 would be just over 2% of the

25

26 [6] Class counsel urges the court to consider that it attempted to negotiate the subpoenas with Mr.
   Krauss's counsel. The court rejects the suggestion that counsel's willingness to negotiate a
27 facially invalid and disturbingly overbroad subpoena is mitigating evidence.

28 ORDER – 18

common fund in this case. While Mr. Krauss's counsel did not perform as much labor as class counsel, it achieved manifestly better results. If anything, a $100,000 award would have undercompensated CCAF. CCAF cited many cases in which objectors were rewarded more handsomely for similar results. *See, e.g.*, *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 273 F. Supp. 2d 563, 572 (D.N.J. 2002). The court remains uncertain as to why Mr. Krauss's counsel decided to forego a fee request in response to two facially invalid subpoenas, but the court will respect that choice. Class counsel declares that when it confronted CCAF with the subpoenas, one of its lawyers promised to use "hammer and tongs" to resist. Class counsel was the first to wield the hammer, however, and it can hardly complain if its attack provoked a defense. The court declines to use a hammer or tongs; it instead uses its power to impose sanctions. The court reduces class counsel's attorney fee award by $100,000. The court makes that reduction as a sanction, but it notes that it would have reduced class counsel's fees by at least that much to reflect conduct that was plainly not in the interests of the class.

**E. The Court Declines to Award Relief to Mr. Chalmers.**

Mr. Chalmers applied for attorney fees for his work from July to August 2010 on behalf of his clients. Again, Mr. Chalmers has not complied with the court's *pro hac vice* requirements. Mr. Chalmers' application for fees does not request any particular award. He notes that he spent 28 hours working for his clients, and that a $500 per hour rate would be reasonable. Mr. Chalmers apparently believes he is entitled to $14,000. The court finds that even if Mr. Chalmers had satisfied the *pro hac vice* requirements, the court would not award him attorney fees. The court does not find that Mr. Chalmers' work led to better results for class members.

**F. Class Members Need Not Receive Notice of Objectors' Attorney Fee Motions.**

Before concluding, the court observes that the parties have raised questions about whether *Mercury Interactive* requires that class members be given notice of an objector's

ORDER – 19

attorney fee request in the same manner that they must be given notice of class counsel's fee request. The court holds that it does not. The *Mercury Interactive* panel based its holding on Rule 23(h), which requires only that "for motions by class counsel" the court must direct notice to class members in a "reasonable manner." Fed. R. Civ. P. 23(h)(1). Nothing in the rule suggests that a similar requirement applies to a fee petition from an objector. Nothing in *Mercury Interactive* suggests that the court would require notice to class members of an objector's fee motion. Indeed, it is hard to imagine how a court could impose such a requirement without making the denouement of every class settlement an endless series of notices to class members about class counsel's request for fees, fees for objections to that request, fees for objections to the objections, and so on.

### IV. CONCLUSION

For the reasons stated above, the court orders as follows:

1) The court GRANTS class counsel's motion for final approval of this settlement. Dkt. # 176. The court will enter a separate order formally certifying a settlement class. The court directs the clerk to DISMISS this case. The court further directs the clerk to enter a judgment that contains, among other things, the two-year injunction to which Classmates has consented. No later than December 15, 2012, Classmates shall file a report from the class administrator on the status of the distribution of settlement funds to class members.

2) The court GRANTS class counsel's motion for attorney fees and other monetary relief (Dkt. # 159) as follows:

    a. The court awards class counsel attorney fees of $800,000.

    b. The court awards class counsel litigation costs of $33,610.77.

    c. The court awards a participation payment of $1000 each to Mr. Michaels and Mr. Catapano.

ORDER – 20

3) The court DENIES Mr. Langone's motion for attorney fees and a participation payment. Dkt. # 189.

4) The court TERMINATES Mr. Krauss's motion for attorney fees. Dkt. # 186.

5) The court GRANTS in part and DENIES in part Mr. Krauss's motion for sanctions against class counsel. Dkt. # 187. The court's $800,000 award to class counsel reflects the court's imposition of a $100,000 sanction.

6) Because Mr. Chalmers has failed to comply with this court's rules regarding *pro hac vice* admission, the court declines to consider his proposed motion for attorney fees. Dkt. # 190. Even if it had considered that motion, however, the court would have denied it for the reasons stated above.

7) Because the court has awarded class counsel only $800,000 of the $1.05 million it requested for attorney fees, and awarded Mr. Michaels and Mr. Catapano only $2,000 of the $5,000 they requested, Classmates must distribute an additional $253,000 to class members who made claims. The court orders Classmates (in conjunction with the settlement administrator) to ensure the distribution of $2.753 million to class members in accordance with the settlement agreement.

DATED this 15th day of June, 2012.

*Richard A Jones*
_____
The Honorable Richard A. Jones
United States District Court Judge

ORDER – 21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

| | |
|---|---|
| IN RE CHECKING ACCOUNT OVERDRAFT LITIGATION | ) ) ) |
| MDL No. 2036 | ) ) |
| ——————————————————— | ) |
| THIS DOCUMENT RELATES TO: FOURTH TRANCHE ACTIONS | ) ) ) |
| | ) |
| *Casayuran, et al. v. PNC Bank, N.A.* D.N.J. Case No. 2:09-5155 S.D. Fla. Case No. 10-cv-20496-JLK | ) ) ) ) |
| | ) |
| *Cowen, et al. v. PNC Bank, N.A.* S.D. Fla. Case No. 10-cv-21869-JLK | ) ) ) |
| | ) |
| *Hernandez, et al. v. PNC Bank, N.A.* S.D. Fla. Case No. 10-cv-21868-JLK | ) ) ) |
| ——————————————————— | ) |

FILED by _____ D.C.

APR 2 3 2013

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

**NOTICE OF OBJECTION OF CLASS MEMBERS RYAN WANTZ AND DAVID CURTIS AND NOTICE OF INTENT TO APPEAR**

Unnamed class members RYAN WANTZ and DAVID CURTIS ("Objectors") give notice of their intent to appear at the final approval hearing.  Their contact information is:

Ryan Wantz, 14010 Harrisville Rd, Mt Airy, MD 21771, PNC Acct ending in 1607 and

David Curtis, 9424 Gas House Pike, Frederick, MD 21701, PNC Acct ending in 8262

**I.**

**THE *CY PRES* COMPONENT IS NOT ADEQUATELY DEFINED**

Class counsel must make sure unclaimed funds are distributed for a purpose near to the legitimate objectives underlying the lawsuit and the interests of class members.  The settlement fund exists to compensate all of the class members, whether they make a claim or not.  Silent class members are just as important for the creation of this fund and have given up their rights against these companies to make this settlement available.

1

The *cy pres* component of the settlement is addressed as follows:  it will "benefit consumer financial literacy education, and educate and assist consumers with financial services issues through advisory and related services."  Settlement at 46, ¶118.  This leaves the ultimate recipients unidentified, when the purpose of *cy pres* is to benefit non-claimant class members.  The Court cannot fairly ensure that the non-claimant class members are adequately represented until the recipients are identified and there is no reason for them not to be identified before the final approval, so the court can make findings regarding the recipients' relation to the class.  Identification of the recipients at this stage, rather than after approval is essential for a fair distribution to these silent class members, and under all leading authorities.  *See, e.g.,*  3 Herbert B. Newberg & Alba Conte, Newberg on Class Actions  §  10:17 (4th ed.2009); *In re Pharmaceutical Industry Average Wholesale* Price, 588 F.3d 24, 33-35 (1st Cir. 2009);  *Masters v. Wilhelmina Model Agency, Inc.*, 473 F. 3d 423, 436 (2nd Cir. 2007); *In re Ticket Com'n Antitrust Litigation*, 307 F. 3d 679, 282-83 (8th Cir. 2002); *Democratic Committee of District of Columbia v. Washington Metropolitan Area Transit Commission*, 84 F. 3d 451,  455 (D.C. Cir. 1996); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990);  *Wilson v. Southwest Airlines, Inc.*  880 F.2d 807, 811 (5th Cir. 1989).

## II.

## THE FEE REQUEST IS UNREASONABLE

The Eleventh Circuit recognizes a "percentage of the fund" approach for awarding attorneys' fees in common fund cases.  *Camden I Condominium Ass'n, Inc., v. Dunkle,* 946 F.2d 768 (11th Cir. 1991).  *Dunkle* also recognizes that "judges systematically award fees in the range of twenty to twenty-five percent of the fund," and that "twenty-five percent is the benchmark."  *Id.* at 774-75.  Class Counsel requests thirty percent of a $90 million fund.  For a case in which the same issues were tried to verdict and resulted in a plaintiff's verdict (the

*Wells Fargo* case), this amount seems especially high, compounded with the case having really only been litigated for less than three years.  This prior *Wells Fargo* verdict also undermines Class Counsel's assertion that plaintiffs faced "major risks" in obtaining relief.

Because class members only recover a "pro rata" percentage of their losses, from funds remaining in the common fund attorney fees, costs and administrative fees, the court must closely guard class interests by awarding only a reasonable percentage of no more than twenty-five percent.

A reduced percentage would also be more in keeping with the Supreme Court's recent language in *Perdue v. Kenny A.,* 130 S.Ct. 1662 (2010), in which the court noted that "enhancements may be awarded in 'rare' and 'exceptional' circumstances."  130 S.Ct. at 1667.  While this statement was made in a lodestar context rather than a percentage of the fund, whether Class Counsel has met its burden of an upward adjustment is not an obvious conclusion.  A lodestar cross-check for reasonableness, with an analysis under the ubiquitous *Johnson* factors, may indicate that a twenty percent fee may well be fair, reasonable, and adequate compensation for the work performed on this matter.  Every class member would benefit if the percentage were reduced to the circuit benchmark or norm of twenty to twenty-five percent.

### III.

### THE OBJECTION REQUIREMENTS ARE IMPROPER

The Settlement, Notice, and Preliminary Approval Order indicate that to make a valid objection, an objector must supply not just information about what the objector finds problematic, but also information about objections in other cases, and whether the objector's attorney has filed objections in other cases.

No authority prohibits filing multiple objections.  The only requirement is that a class member has a problem with an objection.  Requesting information beyond that undermines a

class member's rights under Rule 23, and impinges on evidentiary Rules 403 and 404, which prohibit character evidence as a basis for making a prejudicial ruling.

Every objection should be judged on its own merits. If it is frivolous or unmeritorious, the Court may overrule those objections on that basis. If the objections have merit, they should be sustained, regardless of who made them. The requirements of submitting information regarding unrelated cases and an objector's, or his attorney's, history of litigation is patently irrelevant to the merits of any objection.

Federal Rules of Evidence 403 articulates that evidence otherwise relevant may not be admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. The committee notes to Rule 403 state there are certain reasons such information is not admissible as "[t]hese circumstances entail risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme. Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission. *Slough, Relevancy Unraveled*, 5 Kan. L. Rev. 1, 12-15 (1956); Trautman, *Logical or Legal Relevancy--A Conflict in Theory*, 5 Van. L. Rev. 385, 392 (1952); McCormick § 152, pp. 319-321." (1975 Committee Notes to Rule 403.)

Federal Rule of Evidence 404 prohibits introducing this information and it is impermissible evidence of the Objectors', or their attorney's, character. Character evidence is rarely, if ever, admitted within the realm of civil trials. Committee notes to Rule 404 state "[t]he circumstantial use of character evidence is generally discouraged because it carries serious risks of prejudice, confusion and delay. See *Michelson v. United States*, 335 U.S. 469, 476 (1948)("The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues,

unfair surprise and undue prejudice."). (2006 Committee Notes to Rule 404.) (*See Generally*, *U.S. v. DeMarco*, 407 F.Supp. 107 (C.D.Ca. 1975) where Judge did not permit testimony against credibility of opposing counsel.)(*See also U.S. v. Frederick*, 78 F.3d 1370 C.A.9 (Ariz. 1996) where Prosecutor's comment to jury about defendant's lawyer, which was made immediately after court had sustained two other objections on ground that comments were inappropriate, constituted serious misstep; in comment prosecutor implied to jury that government and court were allied, that they were allied against the defense, and that government and court wanted jury to seek the truth by considering all the evidence, in contrast to defense attorney, who was asking jury not to see the truth.

In this case, information regarding these Objectors, their attorney, and their previous objections to Class Action settlements is not only irrelevant to this Court's decision at the upcoming fairness hearing but is proffered only to color the Court's perception of these persons and sway the Court's decision regarding these objections. This is improper and therefore the requirements in the order, settlement, and notice requiring this information should be struck.

Rule 23 provides a means for objections. To infer an objection is less meritorious merely because its author has made one before would undermine Rule 23. It is paradoxical that Class Counsel are congratulated for being "professional" class counsel, but yet the class members they are purportedly representing are prohibited from hiring an attorney to write a credible objection to counter such "professionalism." The reason Congress included a right to object is because their right is essential to ensuring the fairness of the process, and that a court is possessed of all information before approving the settlement:

> While the parties to a class action start out in an adversarial posture, once they
> reach the settlement stage, incentives have shifted and there is the danger of
> collusion. . . . Class counsel, for instance, might settle claims for significantly
> less than they are worth, not because they think it is in the class's best interest,
> but instead because they are satisfied with the fees they will take away.
> [Citation.] Intervenors counteract any inherent objectionable tendencies by

reintroducing an adversarial relationship into the settlement process and
thereby improving the changes that a claim will be settled for its fair value.

*Vollmer v. Selden,* 350 F.3d 656, 660 (7th Cir. 2003).  Class Counsel's attempt to discourage

objectors by requiring information not germane to this cause cannot be enforced.

WHEREFORE, Objectors respectfully request this Court:

A.  Upon proper hearing, sustain these Objections;

B.  Upon proper hearing, enter such Orders as are necessary and just to adjudicate

these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness

of the proposed settlement.

DATED: April 11, 2013

By: _____
Patrick Sweeney
Florida Bar No. 593486
Sweeney & Sweeney, S.C.
440 Science Drive, Ste. 101
Madison, WI 53711
Phone: 608-238-4444
Fax: 608-238-8262
Email: Patrick@sweenlaw.com
Attorney for Objectors

**CERTIFICATE OF SERVICE**

I certify that on April 11, 2013, I served the foregoing document on the following via
U.S. Mail, postage prepaid:

Robert C. Gilbert
Grossman Roth PA
2525 Ponce de Leon Blvd, 11th Floor
Coral Gables, FL 33134

Philip N. Yannella
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia PA 19103

By: _____
Patrick Sweeney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

| | |
|---|---|
| IN RE CHECKING ACCOUNT OVERDRAFT LITIGATION | ) ) |
| | ) |
| MDL No. 2036 | ) |
| _____ | ) |
| | ) |
| THIS DOCUMENT RELATES TO: FOURTH TRANCHE ACTIONS | ) ) |
| | ) |
| *Waters, et al. v. U.S. Bank, N.A.* S.D. Fla. Case No. 1:09-cv-23034-JLK N.D. Cal. Case No.09-2071-JSW | ) ) ) |
| | ) |
| *Speers, et al. v. U.S. Bank, N.A.* S.D. Fla. Case No. 1:09-cv-23126-JLK D. Or. Case No. 3:09-cv-00409-HU | ) ) ) |
| | ) |
| *Brown v. U.S. Bank, N.A.* S.D. Fla. Case No. 1:10-24147-JLK E.D. Wash. Case No. 2:10-00356-RMP | ) ) ) |
| _____ | ) |

NOTICE OF OBJECTION AND INTENT TO APPEAR

Unnamed class members Pam Sweeney and Kerry Ann Sweeney give notice of their

intent to appear at the final approval hearing.  Their contact information is: Kerry Ann

Sweeney, 2002 Missouri # 15, San Diego, CA 92109, her US Bank account no. ended in

2319; Pam Sweeney 5763 Golden Terrace, Madison, WI., her US Bank Account no. ended in

2494.

## THE FEE REQUEST IS UNREASONABLE

The Eleventh Circuit recognizes a "percentage of the fund" approach for awarding

attorneys' fees in common fund cases.  *Camden I Condominium Ass'n., Inc., v. Dunkle,* 946

F.2d 768 (11th Cir. 1991).  *Dunkle* also recognizes that "judges systematically award fees in

the range of twenty to twenty-five percent of the fund," and that "twenty-five percent is the

benchmark." *Id.* at 774-75.  Class Counsel requests thirty percent of a $55 million fund.  For

a case in which the same issues were tried to verdict and resulted in a plaintiff's verdict (the

*Wells Fargo* case), this amount seems especially high, compounded with the case having

really only been litigated for less than three years.  This prior *Wells Fargo* verdict also

undermines Class Counsel's assertion that plaintiffs faced "major risks" in obtaining relief.

Because class members only recover a "pro rata" percentage of their losses, from

funds remaining in the common fund attorney fees, costs and administrative fees, the court

must closely guard class interests by awarding only a reasonable percentage of no more than

twenty-five percent.

A reduced percentage would also be more in keeping with the Supreme Court's recent

language in *Perdue v. Kenny A.,* 130 S.Ct. 1662 (2010), in which the court noted that

"enhancements may be awarded in 'rare' and 'exceptional' circumstances."  130 S.Ct. at

1667.  While this statement was made in a lodestar context rather than a percentage of the

fund, whether Class Counsel has met its burden of an upward adjustment is not an obvious

conclusion.  A lodestar cross-check for reasonableness, with an analysis under the ubiquitous

*Johnson* factors, may indicate that a twenty percent fee may well be fair, reasonable, and

adequate compensation for the work performed on this matter.  Every class member would

benefit if the percentage were reduced to the circuit benchmark or norm of twenty to twenty-

five percent.

## THE OBJECTION REQUIREMENTS ARE IMPROPER

The Settlement, Notice, and Preliminary Approval Order indicate that to make a valid

objection, an objector must supply not just information about what the objector finds

problematic, but also information about objections in other cases, and whether the objector's

attorney has filed objections in other cases.

2

No authority prohibits filing multiple objections.  The only requirement is that a class member has a problem with an objection.  Requesting information beyond that undermines a class member's rights under Rule 23, and impinges on evidentiary Rules 403 and 404, which prohibit character evidence as a basis for making a prejudicial ruling.

Every objection should be judged on its own merits.  If it is frivolous or unmeritorious, the Court may overrule those objections on that basis.  If the objections have merit, they should be sustained, regardless of who made them.  The requirements of submitting information regarding unrelated cases and an objector's, or his attorney's, history of litigation is patently irrelevant to the merits of any objection.

Federal Rules of Evidence 403 articulates that evidence otherwise relevant may not be admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.  The committee notes to Rule 403 state there are certain reasons such information is not admissible as "[t]hese circumstances entail risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme. Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission. *Slough, Relevancy Unraveled*, 5 Kan. L. Rev. 1, 12-15 (1956); Trautman, *Logical or Legal Relevancy--A Conflict in Theory*, 5 Van. L. Rev. 385, 392 (1952); McCormick § 152, pp. 319-321."  (1975 Committee Notes to Rule 403.)

Federal Rule of Evidence 404 prohibits introducing this information and it is impermissible evidence of the Objectors', or their attorney's, character.  Character evidence is rarely, if ever, admitted within the realm of civil trials.  Committee notes to Rule 404 state "[t]he circumstantial use of character evidence is generally discouraged because it carries serious risks of prejudice, confusion and delay. See *Michelson v. United States*, 335 U.S. 469,

3

476 (1948)("The overriding policy of excluding such evidence, despite its admitted probative

value, is the practical experience that its disallowance tends to prevent confusion of issues,

unfair surprise and undue prejudice.").  (2006 Committee Notes to Rule 404.) (*See Generally,*

*U.S. v. DeMarco,* 407 F.Supp. 107 (C.D.Ca. 1975) where Judge did not permit testimony

against credibility of opposing counsel.)(*See also U.S. v. Frederick*, 78 F.3d 1370 C.A.9

(Ariz. 1996) where Prosecutor's comment to jury about defendant's lawyer, which was made

immediately after court had sustained two other objections on ground that comments were

inappropriate, constituted serious misstep; in comment prosecutor implied to jury that

government and court were allied, that they were allied against the defense, and that

government and court wanted jury to seek the truth by considering all the evidence, in

contrast to defense attorney, who was asking jury not to see the truth.

In this case, information regarding these Objectors, their attorney, and their previous

objections to Class Action settlements is not only irrelevant to this Court's decision at the

upcoming fairness hearing but is proffered only to color the Court's perception of these

persons and sway the Court's decision regarding these objections.  This is improper and

therefore the requirements in the order, settlement, and notice requiring this information

should be struck.

Rule 23 provides a means for objections.  To infer an objection is less meritorious

merely because its author has made one before would undermine Rule 23.  It is paradoxical

that Class Counsel are congratulated for being "professional" class counsel, but yet the class

members they are purportedly representing are prohibited from hiring an attorney to write a

credible objection to counter such "professionalism."   The reason Congress included a right

to object is because their right is essential to ensuring the fairness of the process, and that a

court is possessed of all information before approving the settlement:

> While the parties to a class action start out in an adversarial posture, once they
> reach the settlement stage, incentives have shifted and there is the danger of

4

> collusion. . . . Class counsel, for instance, might settle claims for significantly less than they are worth, not because they think it is in the class's best interest, but instead because they are satisfied with the fees they will take away. [Citation.] Intervenors counteract any inherent objectionable tendencies by reintroducing an adversarial relationship into the settlement process and thereby improving the changes that a claim will be settled for its fair value.

*Vollmer v. Selden,* 350 F.3d 656, 660 (7th Cir. 2003). Class Counsel's attempt to discourage objectors by requiring information not germane to this cause cannot be enforced.

## ADOPTION AND JOINDER OF ALL OTHER OBJECTIONS

Sweeney objectors join in and adopt all objections and incorporate them by reference as if they appeared fully including Doc. 3693 and 3694.

WHEREFORE, Objectors respectfully request this Court:

A.      Upon proper hearing, sustain these Objections;

B.      Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

DATED: November 13, 2013              By: /s/ Patrick Sweeney
                                      Patrick Sweeney
                                      Florida Bar No. 593486
                                      Sweeney Legal Group, S.C.
                                      750 South Dixie Highway
                                      Boca Raton, FL 33432
                                      Phone: 561-395-0000
                                      Fax: 561-395-9093
                                      Email: patrick@sweeneylegalgroup.com
                                      Attorney for Objectors

## CERTIFICATE OF SERVICE

I certify that on November 13, 2013, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Southern District of Florida by using the USDC CM/ECF system.

I further certify that all registered CM/ECF users, service will be accomplished by the USDC CM/ECF system.

/s/ Patrick Sweeney