# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| DINO RIKOS, TRACEY BURNS, and | : | Case No. 1:11-cv-226 |
| LEO JARZEMBROWSKI, On behalf of | : | |
| themselves and all others similarly | : | Judge Timothy S. Black |
| situated, | : | |
|      Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| THE PROCTOR & GAMBLE | : | |
| COMPANY, | : | |
|      Defendant. | : | |

## ORDER GRANTING DEFENDANT'S MOTION
## FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Doc. 169);
## GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT AND REQUEST FOR AWARD OF
## ATTORNEYS' FEES AND EXPENSES (Doc. 170); and
## TERMINATING THIS CASE FROM THE DOCKET

This civil case is before the Court on the motion of Defendant, The Proctor &

Gamble Company, for final approval of class action settlement (Doc. 169), the motion of

Plaintiffs for final approval of class action settlement and request for award of attorneys'

fees and expenses (Doc. 170), and the oral arguments presented by counsel at the fairness

hearing on April 16, 2018.

## I.      BACKGROUND

### A. Litigation History.

This case concerns Defendant's labeling and advertising of Align, an over-the-

counter probiotic supplement. Align is promoted as helping to build and maintain a

healthy digestive system, restore natural digestive balance, and protect against occasional digestive upsets.  (Doc. 165 at ¶ 1).

Plaintiffs allege Align does not deliver the advertised benefits.  (Doc. 165 at ¶¶ 1-3).  On September 21, 2010, Plaintiff Dino Rikos filed a class action complaint challenging Align's labeling and advertising.  (Doc. 1).  On August 17, 2012, Plaintiff Rikos filed a Second Amended Class Action Complaint that added Tracey Burns and Leo Jarzembowski as named Plaintiffs and proposed Class Representatives.  (Doc. 85).  Plaintiffs alleged five single-state classes consisting of consumers who purchased Align in California, Florida, Illinois, New Hampshire, and North Carolina.

On January 13, 2014, Plaintiffs moved to certify five classes pursuant to Rules 23(a) and 23(b)(3) and to appoint Plaintiff Dino Rikos as Class Representative of the California and Illinois classes, Plaintiff Tracey Burns as Class Representative of Florida and North Carolina classes, and Plaintiff Leo Jarzembowski as Class Representative of a New Hampshire class.  (Docs. 108, 110).  On June 19, 2014, the Court granted Plaintiffs' motion for certification.  (Doc. 140).

Defendant appealed the certification order to the United States Court of Appeals for the Sixth Circuit, which affirmed this Court's order.  *See Rikos v. P&G*, 799 F.3d 497 (6th Cir. 2015).  Defendant petitioned the Supreme Court for *writ of certiorari*.  Plaintiffs opposed the petition, which the Supreme Court denied.  (Doc. 166-1 at ¶¶ 17-19).

The litigation in this case was contentious and extensive.  Counsel negotiated confidentiality and ESI protocols.  (Doc. 166-1 at ¶ 25).  Plaintiffs' counsel obtained, reviewed and analyzed approximately 752,341 pages of hard-copy and electronic

documents produced by Defendant and an additional 20,280 pages of documents produced in response to over 30 subpoenas served by Plaintiffs on third-parties. (*Id.* at ¶¶ 24, 27-31). The parties deposed 19 witnesses, including Defendant's scientists and marketing personnel, third-party scientists, and two of Defendant's primary scientific experts. (*Id.* at ¶¶ 30-32). Defendant deposed each of the named Plaintiffs. (*Id.* at ¶ 32). The parties exchanged 21 reports from 14 retained experts on issues relating to advertising, marketing, gastroenterology, microbiology, biostatistics, FDA regulations, and damages. (*Id.* at ¶¶ 22, 34-37).

**B. Mediation Efforts.**

The parties have participated in multiple mediations over the course of this lawsuit. On September 19, 2011, the parties participated in an all-day mediation with Mark D. Peterson of Farella Braun & Martel LLP. (Doc. 166-1 at ¶ 40). No settlement was reached.

The parties participated in a second mediation with mediator David P. Kamp in Cincinnati, Ohio. (Doc. 166-1 at ¶ 41). Following this mediation, Mr. Kamp met with the parties separately in Cincinnati and San Diego. (*Id.*)

On March 13, 2017, the parties participated in an all-day mediation in San Francisco, California, conducted by Antonino Piazza. (Doc. 166-1 at ¶ 42). Although no settlement was reached, the parties continued discussing settlement including with the assistance of Mr. Piazza. (*Id.*) The parties' settlement discussions occurred over telephone and electronic mail and were numerous, lengthy, and complex. (*Id.*) On May 1, 2017, the parties agreed to a settlement term sheet. (*Id.*) **The proposed attorneys'**

**fees and expenses were negotiated after the parties agreed on the principal terms of the settlement and with the assistance of the mediator**. (*Id.*). Over the course of the next four months, the parties negotiated all aspects of the settlement ("Settlement") and eventually executed the settlement agreement ("Settlement Agreement"). (*Id.* at ¶ 43). [1]

### C. The Settlement Agreement.

Under the Settlement Agreement, Defendant will pay up to about $30.3 million in settlement benefits, with a minimum of $20.3 million in benefits. (Doc. 170 at 18).

First, under the Settlement, Settlement Class Members may receive a Cash Refund of up to $49.26 for three purchases of Align. (Settlement Agreement, § IV(A)(2)). The Cash Refund amount represents 50% of Align's average retail price. (Doc. 170 at 20). Defendant will pay out up to $15 million in Cash Refunds. (Settlement Agreement, § IV(A)(2)).

Second, in addition to Cash Refunds, Defendant will contribute a minimum of $5 million and up to $10 million worth of Digestive Health Improvement Contributions ("DHIC"). (Doc. 170 at 21; Settlement Agreement, § IV(A)). **The DHIC are in addition to and do not reduce the $15 million available for Cash Refunds**. (Settlement Agreement, § IV(A)(1)(b)). The DHIC will be in the form of: (1) intellectual property and/or know-how; (2) research and/or education grant(s); and/or (3) product donations to research and/or educational institutions and/or programs working to improve digestive heath. (Settlement Agreement, § IV(A)(1)(a)). Defendant will have discretion

---

[1] The Settlement Agreement is filed at Doc. 166-2. All defined terms in the Settlement Agreement have the same meaning in this Order unless otherwise stated.

to select the recipients, and form, of the DHIC subject to prior review and approval by Class Counsel. (*Id.*)

Third, the Settlement Agreement provides injunctive relief by prohibiting Defendant from making the "clinically proven" five symptom relief claims contained on the Align packaging sold to consumers from approximately March 1, 2009 through October 31, 2009, absent new supporting clinical data and/or analysis or a change in product formula. (Settlement Agreement at § IV(B)(1)).

Fourth, Defendant agrees to pay all Notice and Claim Administration Expenses separate and apart from any other consideration paid under the Settlement. (Settlement Agreement, § VI(A)(1)).

Fifth, Class Counsel, on behalf of all Plaintiffs' Counsel, will apply for an award of Attorneys' Fees and Expenses not to exceed $4.5 million. (Settlement Agreement, § IX(A)). Defendant agrees not to oppose an application for these amounts (the "Clear Sailing" provision). (*Id.*)

Sixth, Class Counsel will apply for service awards of $2,500 each for the Class Representatives for their time invested in connection with this case. (Settlement Agreement, § IX(C)).

Finally, in consideration for the foregoing, the Settlement Class Members release Defendant from the following claims:

> [W]ith the exception of claims for personal injury, all claims, demands, actions, suits, and/or causes of action that have been brought or could have been brought, are currently pending or were pending, or are ever brought in the future, by any Settlement class Member against P&G or any Released Party,

in any forum in the United States and its territories, whether known or unknown, asserted or unasserted, under or pursuant to any statute, regulation, common law or equity, that relate in any way, directly or indirectly, to facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters related to or referenced in any claim raised (including, but not limited to, any claim that was raised against any Released Party) in this Action, including damages, costs, expenses, penalties, and attorneys' fees.

(Settlement Agreement, §§ II(A)(28), VIII).

### D. Class Notice Program.

The Settlement Agreement provides for notice primarily through print and digital publication. (Settlement Agreement, § VI(C)(1)). This is because Align was sold over-the-counter at retail stores and Defendant does not have contact information for Settlement Class Members. (*See* Doc. 166 at 24).

Specifically, notice was provided in the following print publications: *Cooking Light*, *Men's Health*, *People*, and *Woman's Day*. (Doc. 170-9 at ¶ 5). These particular print publications were chosen because of the likelihood they will reach probiotics consumers. (Doc. 166-5 at ¶ 20).

On January 10, 2018, a settlement website (www.AlignSettlement.com) was established. (Doc. 170-9 at ¶ 16). The website provides notice of the Settlement, the Settlement Agreement, answers to frequently asked questions, the Third Amended Class Action Complaint, the Order Preliminarily Approving Class Action Settlement, Plaintiffs' Motion for Preliminary Approval, and Claim Form Instructions. (*Id.*) The website also allows Settlement Class Members to submit a Claim Form online. (*Id.*)

Additionally, notice was provided via internet banner ads, sponsored advertising in the "Top Class Actions" website and newsletter, paid search efforts, and internet "lookalike" targeting efforts. (Doc. 170-9 at ¶¶ 12-15).

Under the Class Notice Program, notice reached more than 80% of Settlement Class Members, on average, 2.7 times. (Doc. 170-9 at ¶ 25). As of March 1, 2018, the Claims Administrator had not received any requests for exclusion. (Doc. 170-9 at ¶ 19). Five individuals filed written objections to the Settlement. (Docs. 171, 173, 174, 175).[2] The deadline for Settlement Class Members to submit or file a claim form is May 16, 2018; as of February 28, 2018, the Claims Administrator had processed 151,445 Claim Forms. (Doc. 170-9 at ¶ 21).

## II. ANALYSIS

### A. The Settlement Class is appropriate for Rule 23 certification.

Plaintiff's motion for final approval asks the Court to certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23. (Doc. 170 at 32-36). The Settlement Class is defined as:

> all persons who purchased within the United States and its territories P&G's Align, other than solely for purposes of resale, from March 1, 2009 to June 6, 2016. Excluded from the Settlement Class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely Request for Exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

(Settlement Agreement, § II(34)).

---

[2] The objections are not availing for the reasons asserted in Section (II)(D), *infra*.

The benefits of a settlement can be realized only through the final certification of a settlement class. *Wess v. Storey*, Case No. 2:08-cv-623, 2011 U.S. Dist. LEXIS 41050, at * 17 (S.D. Ohio Apr. 14, 2011). The Court maintains broad discretion in deciding whether to certify a class. *Id.*

The Settlement Class is substantially similar to the five single-state classes already certified by this Court and affirmed by the Sixth Circuit, with the exception that it is expanded to a nationwide class. Upon an additional consideration of the Rule 23 factors, the Court finds it appropriate to certify the Settlement Class for reasons similar to those stated in its previous certification order. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, Case No. 1:08-WP-65000 (MDL 2001), 2016 U.S. Dist. LEXIS 130467, at * 23 (N.D. Ohio Sept. 23, 2016) (certifying a nationwide class for settlement purposes because "[t]hat the settlement class is modestly broader than the certified litigation does not undermine the fundamental cohesion" among the class).

1. Numerosity.

Rule 23(a)(1) requires a plaintiff to demonstrate that "the class is so numerous that joinder of all members is impracticable." While no specific number of class members is required to maintain a class action, "[w]hen class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citation omitted).

The Settlement Class is substantial. Between 2009 and 2013, Defendant sold over 9.5 million packages of Align. (Doc. 140 at 16). The Court finds the size of the Settlement Class in this case easily satisfies the numerosity requirement.

2. <u>Commonality</u>.

Rule 23(a)(2) requires "questions of law or fact common to the class." This requirement is interdependent with the impracticability of joinder requirement. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1080. Together, these tests form the conceptual basis for class actions. *Id.* The Sixth Circuit has explained:

> The class-action was designed as an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. Class relief is particularly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class. In such cases, the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23.

*Id.* at 1076 (quoting *General Telephone v. Falcon*, 457 U.S. 147, 155 (1982)).

Here, the commonality requirement is easily met. Determining whether Align provides any digestive health benefit is a common question that will advance the litigation. *See Wiener v. Dannon Co.*, 255 F.R.D. 658, 667 (C.D. Cal. 2009) (proposed class members in a consumer protection claim regarding digestive health benefits of probiotics "clearly share common legal issues regarding [Defendant's] alleged deception and misrepresentations in its advertising and promotion of the Products"); *see also Fitzpatrick v. General Mills, Inc.*, 635 F.3d 687, 696 (S.D. Fla. 2010) ("Whether General Mills' claim that YoPlus aids in the promotion of digestive health is 'deceptive' is a mixed question of law and fact common to every class member").

3. Typicality.

Rule 23(a)(3) provides that "the claims or defenses of the representative parties [shall be] typical of the claims or defenses of the class." The typicality element is designed to assess "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if the named plaintiff's claims are based on the same legal theory. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082.

Here, Plaintiffs and the proposed class assert the same claims, premised on the same legal theories, arising from the same course of conduct—Defendant's representations about the digestive health benefits of Align. For each class member to recover under the claims at issue, each must prove the same elements as the named Plaintiffs. Accordingly the typicality element is satisfied.

4. Adequacy of Representation.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interest of the class." The Sixth Circuit has counseled that there are two criteria for determining this element: (1) the representatives must have common interests with the unnamed class members, and (2) it must appear that the representatives will vigorously prosecute the class action through qualified counsel. *See Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976) (citation omitted).

Here, Plaintiffs and the Class Members possess the same interest and suffered the same injury: each of them purchased Align and were subject to the same allegedly false advertising. Accordingly, Plaintiffs are adequate Class Representatives and satisfy the first prong of the adequacy requirement. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) ("Class representatives are adequate when it appears that they will vigorously prosecute the interest of the class through qualified counsel . . . which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members").

Further, Plaintiffs are represented by extremely qualified counsel with extensive experience prosecuting class actions. (*See* Doc. 166-1 at ¶¶ 45-46, Ex. 3). Accordingly, the second prong of the adequacy requirement is met. *See Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (noting the second prong of Rule 23(a)(4) looks "to determine whether class counsel are qualified, experienced and generally able to conduct the litigation").

5. Rule 23(b).

Not only must the four prerequisites of Rule 23(a) be met before a class can be certified, but "the party seeking certification must also demonstrate that it falls within at least *one* of the subcategories of Rule 23(b)." *In re Am. Med. Sys.*, 75 F.3d at 1079. Plaintiffs argue that they fall within Rule 23(b)(3), which states a class action may be maintained if:

> [T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A)   the class members' interest in individually controlling the prosecuting or defense of separate actions;
>
> (B)   the extent and nature of any litigation concerning the controversy already commenced by or against class members;
>
> (C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)   the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, common questions predominate over questions affecting only individual members. The predominating common issues shared by Plaintiffs and each class member are whether Defendant represented through its advertising and labeling that Align promotes digestive health and whether the advertising message is truthful or deceptive. The resolution of these questions does not rise or fall on the individualized conduct of class members but on Defendant's conduct and objective medical science about whether Align works.

Further, the Court finds that, given the difficulties that would be inherent in managing a class as large as the Settlement Class, certification is the most efficient, and the superior, means to adjudicate the claims at issue.

For the foregoing reasons, the Court **GRANTS** Plaintiffs' request for final certification of the Settlement Class.

**B. The Parties' Settlement is Fair and Reasonable.**

Before a district court approves a settlement, the Court must find that the settlement is "fair, reasonable, and adequate." *Johnson v. Midwest Logistics Sys., Ltd.*, Case No. 2:11-cv-1061, 2013 U.S. Dist. LEXIS 74201, at * 9 (S.D. Ohio May 24, 2013) (citation omitted). In the Sixth Circuit, district courts consider seven factors in determining whether a class settlement is fair, reasonable, and adequate: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). As set forth below, each of these factors weighs in favor of approving the parties' settlement.

    1. <u>The Risk of Fraud or Collusion</u>.

The evidence before the Court clearly reflects that the Settlement Agreement is the product of arms-length negotiations conducted by experienced counsel on both sides. <u>Nothing</u> before the Court suggests that the Settlement is the result of fraud or collusion.

The parties to this case have been anything but collusive; the Court has observed the parties engage in vigorous, hard-fought litigation over the course of more than seven years. *See Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ("Where the proposed settlement was preceded by a lengthy period of adversarial litigation involving substantial discovery, a court is likely to conclude that settlement negotiations occurred at arm's

length"); *In re Inter-Op Hip Prosthesis Liab Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001) ("when a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair").

Additionally, the fact that the parties agreed to resolve this case after participating in three mediations with three different mediators indicates that there is no collusion. *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 277 (6th Cir. 2016) (explaining the fact that the parties engaged in a "formal mediation session" weighed against the possibility of fraud or collusion); *Waggoner v. U.S. Bancorp*, Case No. 5:14-cv-1626, 2016 U.S. Dist. LEXIS 179843, at * 8 (N.D. Ohio Dec. 29, 2016) (finding no risk of fraud or collusion where the settlement was the result of, *inter alia*, "an involved mediation before an experienced mediator").

    2.  <u>The Complexity, Expense, and Likely Duration of the Litigation, and the Likelihood of Success on the Merits</u>.

The complexity, expense, and likely duration of this case weigh in favor of approving the Settlement Agreement. This case, which is already more than seven years old, has seen complex issues briefed in this Court, the Sixth Circuit Court of Appeals, and the United States Supreme Court.

Plaintiffs maintain an "unflagging" belief in the strength of their claims but admit they must balance this against the risks they perceive to be inherent in continuing to litigate. Specifically, Plaintiffs are concerned about language in the Sixth Circuit's opinion that suggests Plaintiffs will have to re-argue the issue of class-certification (or worse, lose on the merits) if Align is proven to work for <u>any</u> sub-population. *See Rikos*,

799 F.3d at 520. Plaintiffs also argue that a trial in this case would amount to a "battle of the experts" which presents the potential for jury confusion.

In light of these risks, Plaintiffs argue the Settlement will guarantee members of the Settlement Class a fair and reasonable recovery while eliminating the risk inherent in a lengthy, complex, and uncertain trail and appeal. (Doc. 170 at 31). The Court agrees.

### 3. The Amount of Discovery Engaged in By the Parties.

The Settlement was reached after the parties conducted substantial fact and expert discovery on all relevant issues. (*See* Doc. 166-1 at ¶¶ 22-38). Accordingly, the Court finds that the Settlement was the result of underlined informed negotiations by experienced counsel. *See Bronson v. Bd. of Educ. of City Sch. Dist. Of City of Cincinnati*, 604 F. Supp. 68, 73 (S.D. Ohio 1984) ("[W]hen significant discovery has been completed, the Court should defer to the judgment of experienced trial counsel who has evaluated the strength of his case").

### 4. The Opinions of Class Counsel and Class Representatives.

The Class Representatives approve the Settlement Agreement. (*See* Doc. 170-6 at ¶ 6; Doc. 170-7 at ¶ 6; Doc. 170-8 at ¶ 6). Class Counsel believe this settlement is fair, adequate and reasonable. (Doc. 166-1 at ¶ 39). This factor weighs in favor of approval. *See In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255, at * 55 (E.D. Mich. Feb. 22, 2011) ("Class counsel's judgment that settlement is in the best interest of the class is entitled to significant weight, and supports the fairness of the settlement") (internal quotations and citations omitted).

5. <u>The Reaction of Absent Class Members</u>.

The reaction of the class strongly supports approval. The deadline for Settlement Class Members to request to be excluded from the Settlement Class was March 17, 2018; as of March 1, 2018, the Claims Administrator had not received any requests for exclusion. (Doc. 170-9 at ¶ 19). The deadline for Settlement Class Members to submit or file a claim is May 16, 2018; as of February 28, 2018, the Claims Administrator had processed 151,445 claim forms. (*Id*. at ¶ 21). Five individuals filed written objections to the settlement, but as explained *infra*, their written objections are not well-taken.

Accordingly, the Court **GRANTS** Plaintiffs' and Defendant's motions for final approval of the Settlement Agreement.

**C. Fees, Expenses, and Contribution Awards.**

1. <u>Plaintiffs' Counsel are entitled to their requested fee</u>.

Plaintiffs' Counsel have requested an order approving the payment of $4,139,987.48 for attorneys' fees.[3]

District courts may award reasonable attorneys' fees and expenses from the settlement of a class action under Rules 54(d)(2) and 23(h). *See Lowther v. AK Steel Corp.*, Case No. 1:11-cv-877, 2012 U.S. Dist. LEXIS 181476, at * 2 (S.D. Ohio Dec. 21, 2012). When assessing the reasonableness of a fee petition, district courts engage in a two-part analysis. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007). First, the district court determines the method for calculating fees:

---

[3] Class Counsel makes the fee request "on behalf of themselves and the other Plaintiffs' Counsel." (Settlement Agreement, §IX(A)).

either the percentage of the fund approach or the lodestar approach. *Id.* (citation omitted). Second, the court must analyze the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). *Id.*

> a. *The Court Adopts the Percentage Approach*.

In the Sixth Circuit, district courts have the discretion to determine the appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, as well as the particular circumstances of the actual cases pending before the Court, using either the percentage or lodestar approach. *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d at 761. In the Southern District of Ohio, the preferred method is "to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Connectivity Sys. Inc. v. Nat'l City Bank,* Case No. 2:08-cv-1119, 2011 U.S. Dist. LEXIS 7829, at * 34 (S.D. Ohio Jan. 26, 2011) (citation omitted).

To determine the amount of the "fund" for purposes of this analysis, courts include all amounts benefitting the class, including those amounts typically born by the class, such as attorneys' fees and notice and administration costs. As the Sixth Circuit explained, when conducting a percentage of the fund analysis, "Attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs of administration)." *Gascho*, 822 F.3d at 282. To determine the amount of the benefit conferred, courts look to the total amount made available to the class, rather than the amount ultimately claimed by class members. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980).

Here, the Settlement will result in a total benefit to the class of at least $20.3 million: a minimum of $15 million in Cash Refunds and DHIC, more than $800,000 in notice and claims administration expenses (Doc. 170-9 at ¶ 23), up to $4.5 million in attorneys' fees and costs, and up to $7,500 for Plaintiffs' service awards. Plaintiffs' Counsels' requested fee of $4,139,987.48 is equal to 20.4% of the <u>minimum</u> value of the Settlement. The Court finds Plaintiffs' Counsels' request to be reasonable; it is well within the ranges of fees typically approved by Courts in the Sixth Circuit. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380-81 (S.D. Ohio 2006) ("Attorneys fees awards typically range from 20 to 50 percent of the common fund") (collecting cases); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 1029 (S.D. Ohio 2001) ("the range of reasonableness . . . has been designated as between twenty to fifty percent of the common fund"); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 217 (S.D. Ohio 1997), *rev'd on other grounds*, 24 Fed. Appx. 520 (6th Cir. 2001) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund").

b. *The* Ramey *factors.*

In reviewing the reasonableness of the requested fee award, the Sixth Circuit requires district courts to consider six factors, known as the *Ramey* factors: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey*, 508 F.2d at 1196.

Here, each of these factors weighs in favor of granting the requested fee. First, Plaintiffs' Counsels' work resulted in significant benefit to class members of at least $20.3 million. The Settlement provides tangible relief to Class Members now and eliminates the risk and uncertainty parties would otherwise incur if this litigation were to continue. The fact that there have been more than 150,000 claims, no opt-outs, and only a handful of objections demonstrates that Class Members recognize the substantial benefit of the Settlement. *See Hainey v. Parrott*, 617 F. Supp. 2d 668, 675 (S.D. Ohio 2007) ("a small number of objections, particularly in a class of this size, indicates that the settlement is fair, reasonable and adequate").

Second, there is a benefit to society in ensuring that small claimants may pool their claims and resources, and attorneys who take on class action cases enable this. *See Moore v. Aerotek, Inc.*, Case No. 2:15-cv-2701, 2:15-cv-1066, 2017 U.S. Dist. LEXIS 102621, at * 26 (S.D. Ohio June 30, 2017) (citation omitted). Here, Plaintiffs' Counsels' effort resulted in a tangible reward for the Class Members. Many of the Class Members would not have been able or willing to pursue their claim individually, and many would likely not even be aware they had a claim against Defendant. *Id.* Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *Id.* (citation omitted).

Third, despite the risks associated with prosecuting this case, Plaintiffs' Counsel litigated this matter on a wholly-contingent basis with no guarantee of recovery over a period of more than seven years. (Doc. 170 at 26; Doc. 170-1 at ¶ 4). Plaintiffs' Counsel retained experts at significant cost. (Doc. 170-1 at ¶ 18(g)). Plaintiffs' Counsel also

made substantial outlays to host a document review platform for this case, pursued over thirty subpoenas, and participated in nineteen depositions. This factor weighs in favor of granting the requested fee. *See Gentrup v. Renovo Servs.*, Case No. 1:07-cv-430, 2011 U.S. Dist. LEXIS 67887, at * 14 (S.D. Ohio June 24, 2011) (finding the fact that plaintiffs' counsel had made "significant investments of time and [had] advanced costs but [had] received no compensation in this matter" weighed in favor of granting the requested fee).

Fourth, a lodestar cross-check, while unnecessary, also supports Plaintiffs' Counsels' fee request. Under the lodestar calculation, the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Gascho*, 822 F.3d at 279 (citation omitted). The Court then has the discretion to enhance the lodestar with a separate multiplier than can serve as a means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved. *Id*. at 279, 280. Here, Plaintiffs' Counsel expended 9,357.80 total hours on this case which, at their customary billing rates, provides a cumulative lodestar of more than $4.68 million, more than the requested fee. (*See* Docs. 170-1 at ¶¶ 12, 21; 170-2 at ¶ 8; 170-3 at ¶ 9; 170-4 at ¶ 8; 170-5 at ¶ 10). Dividing the amount Plaintiffs' Counsel request ($4,139,987.48) by the lodestar results in a negative multiplier, which demonstrates that the fee sought is reasonable. *See Walls v. JP Morgan Chase Bank, N.A.*, Case No. 3:11-cv-673-DJH, 2016 U.S. Dist. LEXIS 142325, at * 18 (W.D. Ky. Oct. 13, 2016).

Fifth, this case involves numerous complex legal and factual issues and has included complex briefings in this Court, the Sixth Circuit, and the United States Supreme Court. The parties have engaged in 19 depositions, reviewed approximately 772,000 pages of electronic discovery, subpoenaed over 30 third-parties, and exchanged a total of 21 expert reports. (Doc. 170 at 47-48). This factor weighs in favor of approval.

Sixth, and finally, Plaintiffs and Defendant are represented by highly experienced counsel. All counsel are highly qualified and have substantial experience in federal courts and class action litigation. (*See* Docs. 166-4; 170-2 at 7-22; 170-3 at 6-8; 170-4 at 7-14).

For these reasons, the Court determines the fees requested are reasonable, and **GRANTS** Plaintiffs' Counsels' request for fees in the amount of $4,139,987.48.

2. Plaintiffs' Counsel are entitled to reimbursement of expenses.

Under the common fund doctrine, Plaintiffs' Counsel are entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003). Expense awards are customary when litigants have created a common settlement fund for the benefit of a class. *Id.* (quotation omitted).

Here, Plaintiffs' Counsel request $360,012.52 in expenses that have been incurred prosecuting this case. (Doc. 171 at ¶ 19). These expenses include filing fees, travel to depositions and hearings, expert costs, electronic discovery, deposition transcripts, videography and court reporter fees, mediator fees, research, postage, and telephone

charges. (*Id.*) Upon review, all of Plaintiffs' Counsels' expenses were reasonable and necessary in connection with litigating and resolving this case and are therefore reimbursable.

Accordingly, the Court **GRANTS** Plaintiffs' Counsels' request for $360,012.52 in expenses.

    3. <u>Class Representatives are entitled to Contribution Awards.</u>

Pursuant to the terms of the Settlement Agreement, the Class Representatives request contribution awards of $2,500 each for services rendered on behalf of the Class. Courts typically authorize contribution (or "incentive" awards) to class representatives for their often extensive involvement with a lawsuit. *See Estep v. Blackwell*, Case No. 1:06-cv-106, 2006 U.S. Dist. LEXIS 89360, at * 15 (S.D. Ohio Nov. 29, 2006) (citations omitted). Such compensation to named plaintiffs is typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case. *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997).

Here, the Class Representatives contributed their efforts by providing information and documents to their counsel, remaining informed and involved throughout the lengthy litigation, preparing for and attending their depositions, contacting and consulting their counsel concerning the litigation, reviewing pleadings and the Settlement Agreement, and were at all times willing to testify at trial. (Docs. 170-6 at ¶¶ 2-7; 170-7 at ¶¶ 2-7; 170-8 at ¶¶ 2-7). The Class Representatives also searched for and/or provided significant

documentation and information throughout the litigation, including by responding to requests for their personal and private medical information. *Id.*

Accordingly, the Court **GRANTS** Plaintiffs' request for contribution awards of $2,500 to each Class Representative.

**D.  The Written Objections are Overruled.**

A class action settlement that has been preliminarily approved is presumptively reasonable. *Bronson v. Board of Educ.*, 604 F. Supp. 68, 71 (S.D. Ohio 1984) (quoting *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)).  Consequently, one who files an objection to the settlement bears the "heavy burden" of demonstrating that settlement is unreasonable. *Id.*

Five individuals filed written objections to the Settlement; none of the objectors satisfy this "heavy burden."

1. Arianna Gallagher.

Ms. Gallagher objects to the Settlement.  (Doc. 171).  Ms. Gallagher argues that the Class Representatives and Class Counsel did not adequately protect the interests of the class because the Settlement "unfairly limits the amount of money that a class member can receive." (*Id.* at 2).  Ms. Gallagher argues that damages should not be "capped arbitrarily." (*Id.*)

This argument is not well-taken because class action settlements represent a compromise of disputed claims. *See In re Ford Motor Co. Spark Plug & Three Valve Engine Prods. Liab. Litig.*, Case No. 1:12-MD-2316, 2016 U.S. Dist. LEXIS 188074, at

* 15 (N.D. Ohio Oct. 14, 2014) (explaining that a class action settlement is a product of "compromise efforts by adversaries" and "[u]sually neither side will attain all its goals in such a settlement").  For the reasons set forth in Section (II)(B), *supra*, the Court finds the Settlement to be fair, reasonable and adequate.  The fact that the Settlement Class Members will not be compensated for all of their alleged damages does not change that conclusion.  *See In re Polyurethane Foam Antitrust Litig*., 168 F. Supp. 3d 985, 1001 (N.D. Ohio 2016) ("that the settlement could have been better . . . does not mean that the settlement presented [is] not fair, reasonable or adequate"); *In re Celexa & Lexapro Mktg. & Sales Practices Litig*., MDL No. 09-2067-NMG, 2014 U.S. Dist. LEXIS 125041, * 21 (D.C. Mass. Sept. 8, 2014) ("[a] settlement need not reimburse 100% of the estimated damages to class members in order to be fair").

Second, Ms. Gallagher argues that the DHIC is a *cy pres* distribution that does not benefit the class and should not be considered as part of the "value" of the settlement. (Doc. 171 at 2).

This argument is not well-taken.  Initially, the DHIC is <u>not</u> a *cy pres* award, which has been defined by the Sixth Circuit as the distribution of <u>unclaimed</u> portions of settlement funds to a charity that will advance the interests of the class.  *Gascho*, 822 F.3d at 278, n. 3; *see also Kritzer v. Safelite Solutions, LLC*, Case No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at * 31 (S.D. Ohio May 30, 2014) (referring to a *cy pres* award as "unclaimed funds that remain under the terms of the Settlement Agreement").

Contributions like the DHIC that are <u>separate and independent from</u>—and do not diminish—direct payments to class members are not *cy pres* awards.  *See In re Toyota*

*Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, Case
No. 8:10-ML 02151 JBS (FMOx), 2013 U.S. Dist. LEXIS 123298, at * 297 (C.D. Cal.
July 24, 2013) (explaining that a $30 million donation to a safety and education fund,
which was negotiated separately from cash funds for the settlement class, was not a *cy
pres* distribution because it "did not diminish the cash payments to the Class" and was
"simply one part of a multi-part settlement of complex litigation that the Court must
consider as a whole").  Where elimination of the distribution would not result in
additional cash payments to the class, the distribution is not *cy pres*.  *Id.*; *see also Turner
v. NFL*, 307 F.R.D. 351, 418 (E.D. Pa. 2015) (explaining that an education fund was not a
*cy pres* award because it "is a separate allocation distinct from" cash payments to class
members, "does not direct how <u>unclaimed</u> funds should be distributed," and
"[e]liminating the Education Fund would not result in Class Members receiving"
monetary awards) (emphasis added).

Here, the DHIC is separate and independent from the Cash Refunds and does not
diminish the amount available for Cash Refunds.  (Settlement Agreement, § IV(A)).
Eliminating the DHIC would not increase the Cash Refunds the Settlement Class may
receive.  *Id.*  Accordingly, the DHIC is not a *cy pres* distribution.  *In re Toyota Motor
Corp.*, 2013 U.S. Dist. LEXIS 123298, at * 297; *Turner*, 307 F.R.D. at 418.

In any event, even if the DHIC were a *cy pres* distribution, its value would be
properly included in the Settlement because it confers a benefit on all Settlement Class
members by addressing digestive health.  *See Portner v. Gillette Co.*, Case No. 6:12-cv-
803-Orl-31DAB, 2014 U.S. Dist. LEXIS 116616, at * 9 (M.D. Fla. Aug. 21, 2014) (in a

class action alleging that defendant's marketing of batteries violated consumer protection laws, court included defendant's "cy pres" in-kind donation of $6 million in batteries to charitable organizations in considering the value of the settlement because "it will have an indirect benefit to the Class"), *affirmed* 618 Fed. Appx. 624 (11th Cir. 2015).

Third, Ms. Gallagher argues that administration costs should not be included in the value of the Settlement for purposes of calculating the fee award. (Doc. 171 at 4). This argument is not well-taken; the Sixth Circuit has expressly stated that administration costs may be included as part of the benefit to the Settlement Class for purposes of calculating fees. *Gascho*, 822 F.3d at 282.

Finally, Ms. Gallagher asks the Court to "evaluate the settlement for any potential collusion between class counsel and defendant." (Doc. 171 at 4-5). As explained in Section (II)(B)(1), *supra*, the Court has carefully evaluated the terms of the Settlement Agreement and finds no indicia of collusion.

Accordingly, Ms. Gallagher's objection (Doc. 171) is **OVERRULED**.

2. Patrick Sweeney, Esq.

Mr. Sweeney, an attorney, objects to the Settlement on the grounds that Plaintiffs' Counsels' requested fee is excessive. (Doc. 173 at 1-10). Mr. Sweeney's objection is unavailing.

First, the Court notes that Mr. Sweeney is a frequent objector to class action settlements. Mr. Sweeney has filed, on behalf of himself or purported class members, objections to at least 42 class action settlements. (Doc. 177-1 at ¶ 2; Doc. 177-2). Other federal courts have taken note of Mr. Sweeney's litigious history while overruling his

objections. *See Roberts v. Electrolux Home Prods.*, Case No. SACV12-1644(VBKx), CV13-2339-CAS(VBKx), 2014 U.S. Dist. LEXIS 130163, at * 33-35 (C.D. Cal. Sept. 11, 2014) ("the fact that [Mr. Sweeney] is . . . a serial objector in class action matters raises additional issues as to the legitimacy of the objection"); *see also Larson v. Trader Joe's Co.*, Case No. 11-cv-5188, 2014 U.S. Dist. LEXIS 95538, at ** 22-23, n. 4 (N.D. Cal. July 11, 2014) (explaining that Mr. Sweeney "has a long history of representing objectors in class action proceedings").

Second, Mr. Sweeney's objection is procedurally deficient. The Court's Preliminary Approval Order required all objections include a statement, made under oath, that the objector is a Settlement Class Member. (Doc. 167 at 8). The Preliminary Approval Order made clear that failure to comply with the requirements for objections would result in waiver. (*Id.*) Mr. Sweeney's objection does not include a sworn statement that he is a member of the Settlement Class, and accordingly, he has waived his right to object. (*Id.*)

Third, Mr. Sweeney's objection fails on the merits. Mr. Sweeney argues that the Court should not consider the value of the DHIC when considering the benefit the Settlement Agreement confers on Settlement Class Members. (Doc. 173 at 3). This argument is not availing; the DHIC benefits the Settlement Class Members by addressing the issue of digestive health and its valuation is properly considered when evaluating the Settlement. *See Portner*, 2014 U.S. Dist. LEXIS 116616, at * 9.

Mr. Sweeney further argues, in conclusory fashion, that Plaintiffs' Counsels' fees are excessive. This argument is unavailing. Initially, Mr. Sweeney's objection to the fee

award is really no objection at all: Mr. Sweeney concedes he does not object to a fee in the amount of $4,250,000; Plaintiffs' Counsel request a fee of $4,139,987.48. In any event, Mr. Sweeney does not point to any record evidence or legal argument to support his position that the fee requested is excessive.

Accordingly, Mr. Sweeney's objection (Doc. 173 at 1-10) is **OVERRULED**.

3. <u>Pamela Sweeney</u>.

Mrs. Sweeney filed a one page objection, which is attached to the end of Mr. Sweeney's objection. (Doc. 173 at 12). Mrs. Sweeney's objection it not well-taken.

First, the Court notes that Mrs. Sweeney—like Mr. Sweeney—frequently objects to class action settlements. Mrs. Sweeney has objected to 18 settlements in just the past five years. (Doc. 177-1 at ¶ 6; Doc. 177-11). Courts have described her objections as frivolous and "too vague . . . to properly analyze." *See Edwards v. National Milk Producers Federation*, No. 11-cv-4766, slip op. at 6 (N.D. Cal. Sept. 13, 2017) (filed at Doc. 177-13); *Friedman, et al. v. Guthy-Renker, LLC, et al.*, Case No. 2:14-cv-06009-ODW(AGRx), slip op at 16 (C.D. Cal. Aug. 21, 2017) (filed at Doc. 177-14). In three cases, Mrs. Sweeney entered into settlement agreements under which she agreed to waive her objections. (Doc. 177-15 at 21:13-17).

Second, Mrs. Sweeney's objection—like Mr. Sweeney's objection—is procedurally deficient because it fails to include a sworn statement that Mrs. Sweeney is a member of the Settlement Class. Having failed to comply with the Court's requirement to prove Settlement Class Membership, Mrs. Sweeney has waived her objection. (*See* Doc. 167 at 8).

Third, Mrs. Sweeney's objection fails on the merits. Mrs. Sweeney states that she thinks "the attorney's [sic] for the class are getting too much money," however, she does not cite to any record evidence or legal authority in support of her conclusory argument. (Doc. 173 at 12).

Accordingly, Mrs. Sweeney's objection (Doc. 173 at 12) is **OVERRULED**.

4. <u>Christopher Cain, Esq</u>.

Mr. Cain filed a written objection to the Settlement. (Doc. 174). The Court notes that Mr. Cain has been recognized by multiple courts as a serial objector who raises meritless arguments. *See Hill v. State St. Corp.*, No. 1:09-cv-12146-GAO, slip op. at 4 (D. Mass. Apr. 16, 2015) (filed at Doc. 177-18) (referring to Mr. Cain as a "serial objector" who "recycles many of his arguments across various class actions"); *Mehigan v. Ascena Retail Group, Inc.*, No. 2:15-cv-724 –MAK, slip. op at 1 (E.D. Pa. Oct. 14, 2016) (filed at Doc. 177-20) (imposing an appeal bond on Mr. Cain and other serial objectors; reasoning "[w]hen we view an appeal [to a class action settlement] as a coercive tactic with little merit, we may grant a motion requiring the appealing objector to post a bond to cover the class' costs and demonstrated administrative expenses incurred on appeal").

In any event, Mr. Cain's objection fails on the merits. First, Mr. Cain argues that the Settlement cannot have any DHIC component until all Settlement Class Members have been fully compensated for their losses. This argument is not availing. Mr. Cain does not cite to any authority holding that distributions cannot be made to third parties until Settlement Class Members have been compensated for every dollar of alleged

damage.[4]  To the contrary, settlements that provide for payments to third parties that benefit Class Members have been upheld.  *See Marshall v. NFL*, 787 F.3d 502, 509-12 (8th Cir. 2015) (affirming approval of settlement that provided for the distribution of $42 million to "charitable organizations or health and welfare organizations for the benefit of class members"); *Lane v. Facebook*, 696 F.3d 811, 817 (9th Cir. 2012) (in a class action alleging that defendant improperly published its members private information, affirming approval of a settlement where the unnamed class members received no payments at all, but funds went to establishing a charitable foundation to fund organizations educating the public about online privacy).

Second, Mr. Cain argues that the DHIC is improper because the recipients of the DHIC were not identified or disclosed in the Settlement Agreement.  (Doc. 174 at 8-11).

---

[4] Mr. Cain's reliance on *In re Baby Prods. Antitrust Litig*, 708 F.3d 163 (3d Cir. 2013) in support of this argument fails as a matter of law, as the Third Circuit expressly held: "We . . . do not limit *cy pres* distributions to instances where all claimants have received 100% of their estimated damages."  *Id.* at 176.

In *Baby Products*, the Third Circuit held that, in order to properly determine whether a settlement that contains a *cy pres* distribution is fair to the entire class, the district court must be able to compare the benefit that will be distributed directly to the class with the *cy pres* distribution.  708 F.3d at 173-74.  The Third Circuit reversed the district court's approval of the parties' settlement agreement because the Court did not know the amount of compensation that would be distributed directly to the class, and, accordingly, lacked the factual basis to make the required comparison.  *Id.* at 174.

*In re Baby Products* is distinguishable from this case in two key respects.  First, the DHIC is not a *cy pres* distribution because it is separate from, and does not reduce, the Cash Refunds.  (*See* Section (II)(D)(1), *supra*).  Second, this Court has the factual basis to determine that the Settlement Agreement is fair and reasonable, as the evidence before the Court is that Defendant will pay approximately $13 million in cash awards to over 299,000 Settlement Class Members in addition to over $11 million in DHIC benefits. (Doc. 176-1 at ¶ 2).

This argument fails; there is no requirement that the ultimate recipients of the DHIC be disclosed prior to settlement approval. Courts have approved settlements that provide for payments to third parties for the <u>purpose</u> of benefitting the class members, even if the exact <u>identity</u> of those third parties have not been decided. *See Marshall*, 787 F.3d at 509-12 (explaining that the relevant question in determining whether a payment to a third party benefits class members is "for whom the money will be used, not whose name appears on the check").

Third, Mr. Cain argues that the Clear Sailing provision "compels" rejection of the Settlement and the fee award because there is no evidence as to what Defendant received in exchange for its agreement not to contest fees. (Doc. 174 at 11-13). This argument is not well-taken. The Sixth Circuit has expressly stated that clear sailing agreements do not, by themselves, demonstrate collusion. *See Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012) ("[s]imply put, not every 'clear sailing' provision demonstrates collusion"); *see also Gascho*, 822 F.3d at 291 ("[t]hough some courts have 'disfavored' clear sailing agreements . . . their inclusion absent more—as is the case here—does not show that the court abused its discretion in approving the settlement"). Here, the mere fact that Defendant agreed to not contest Plaintiffs' Counsels' fee request is insufficient to demonstrate collusion. *Id.*

Accordingly, Mr. Cain's objection (Doc. 174) is **OVERRULED**.

5. <u>Adam Brunet</u>.

Mr. Brunet filed a written objection to the Settlement. (Doc. 175). Mr. Brunet's objection is not well-taken.

Initially, Mr. Brunet's objection is untimely. The Court's Preliminary Approval Order required written objections to be filed and served "no later than thirty (30) days before the date first set for the Final Approval Hearing" (March 17, 2018). (Doc. 167). The Preliminary Approval Order expressly stated that objectors "must timely file" their objections and explained untimely objections would "not be considered." (*Id.* at 7-8). Mr. Brunet did not file his objection until March 22, 2018.

In any event, Mr. Brunet's objection fails on the merits. First, Mr. Brunet argues that there is a disparity between the class award and Plaintiffs' Counsels' requested fee. (Doc. 175 at 3-5). The Court does not agree. For the reasons explained in Section (II)(C)(1), Plaintiffs' Counsels' fee represents an appropriate percentage of the "common fund" (and is actually on the low end of percentages approved by courts in the Sixth Circuit).

Second, Mr. Brunet argues that Plaintiffs' Counsels' fee motion violates the notice requirements of Rule 23(h) because it was not served on all Settlement Class Members or posted on the Settlement website. (Doc. 175 at 6-7). The Court does not agree. A fee motion satisfies Rule 23(h) if it is posted on the court's public docket prior to the objection deadline. *See In re High-Tech Emple. Antigrust Litig.*, Case No. 11-cv-02509-LHK, 2015 U.S. Dist. LEXIS 118052, at * 54 (N.D. Cal. Sept. 2, 2015). Rule 23(h) does not require the fee motion to be posted on the Settlement website. *Id.* ("the Court overrules the objection . . . that the class had inadequate notice . . . because the motions for attorney's fees were not posted on the lawsuit's website, even though the motions were all publicly filed, in a timely manner, on the case's public electronic docket");

*Vasco v. Power Home Remodeling Grp.*, *LLC*, Case No. 15-4623, 2016 U.S. Dist. LEXIS 141044, at ** 25-26 (E.D. Pa. Oct. 12, 2016). Here, the fee motion has been publicly available on the docket since it was filed on March 2, 2018, more than two weeks before objections were required to be filed.

Accordingly, Mr. Brunet's objection (Doc. 175) is **OVERRULED**.

## IV. CONCLUSION

Based upon the foregoing, Defendant's motion for final approval of class action settlement (Doc. 169) and Plaintiffs' motion for final approval of class action settlement and request for award of attorneys' fees and expenses (Doc. 170) are **GRANTED**.

Accordingly:

1. Pursuant to Federal Rule of Civil Procedure 23, for settlement purposes, the Court certifies the following Settlement Class:

   > All persons who purchased within the United States and its territories P&G's Align, other than solely for purposes of resale, from March 1, 2009 to June 6, 2016. Excluded from the Settlement Class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely Request for Exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

2. Pursuant to Federal Rule of Civil Procedure 23(c)(3), all such persons who satisfy the Settlement Class definition above, except those Settlement Class Members who timely and validly excluded themselves from the Settlement Class, are Settlement Class Members bound by this Judgment.

3. Pursuant to Federal Rule of Civil Procedure 23(a), the Court finds that the Plaintiffs, Dino Rikos, Tracey Burns, and Leo Jarzembowski, are members of the Settlement Class, their claims are typical of the Settlement Class, and they fairly and adequately protected the interests of the Settlement Class throughout these proceedings. Accordingly, the Court hereby appoints Dino Rikos,

Tracey Burns and Leo Jarzembowski as Class Representatives for the Settlement Class.

4. The Court finds that the Settlement Class meets all requirements of Federal Rules of Civil Procedure, Rule 23(a) and (b)(3) for certification of the class claims alleged in the Third Amended Class Action Complaint (Doc. 165), including: (a) numerosity; (b) commonality; (c) typicality; (d) adequacy of the Class Representatives and Class Counsel; (e) predominance of common questions of fact and law among the Settlement Class; and (f) superiority.

5. Having considered the factors set forth in Federal Rule of Civil Procedure 23(g)(1), the Court finds that Class Counsel have fairly and adequately represented the Settlement Class for purposes of entering into and implementing the Settlement, and thus, hereby appoints Class Counsel to represent the Settlement Class Members.

6. The Court directed that Class Notice be given to Settlement Class Members pursuant to the notice program proposed by the parties and approved by the Court. In accordance with the Court's Preliminary Approval Order and the Court-appointed notice program, the Settlement Administrator caused the Class Notice to be disseminated as ordered. The Class Notice advised Settlement Class Members of the terms of the Settlement Agreement; the Final Approval Hearing, and their right to appear at such hearing; their rights to remain in, or opt out of, the Settlement Class and to object to the Settlement Agreement; procedures for exercising such rights; and the binding effect of this Judgment, whether favorable or unfavorable, to the Settlement Class.

7. The distribution of the Class Notice constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. § 1715, and any other applicable law.

8. Pursuant to Federal Rule of Civil Procedure 23(e)(2), the Court finds after a hearing and based on all submissions of the parties and interested persons, the Settlement Agreement is fair, reasonable, and adequate. In reaching this conclusion, the Court considered the record in its entirety and heard the arguments of counsel for the parties and all other persons seeking to comment on the proposed Settlement Agreement. In addition, the Court has considered a number of factors, including: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the Class Members to the Settlement Agreement; (3) the stage of proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of Defendant to withstand a greater judgment; and (8) the

reasonableness of the Cash Refunds, injunctive relief, and Digestive Health Improvement Contributions in light of the best possible recovery.

9. The terms and provisions of the Settlement Agreement are the product of thorough, arms-length negotiations with the assistance of an experienced mediator. Approval of the Settlement Agreement will result in substantial savings of time, money and effort to the Court and the parties, and will further the interests of justice.

10. All Settlement Class Members who have not timely and validly filed opt-outs are thus Settlement Class Members who are bound by this Judgment and by the terms of the Settlement Agreement.

11. Nothing in the Settlement Agreement, this Judgment, or the fact of the settlement constitutes any admission by any of the parties of any liability, wrongdoing, or violation of law, damages or lack thereof, or of the validity or invalidity of any claim or defense asserted in the Action.

12. The Court has considered the submissions by the parties and all other relevant factors, including the results achieved and the efforts of Class Counsel in prosecuting the claims on behalf of the Settlement Class. Plaintiffs Dino Rikos, Tracey Burns and Leo Jarzembowski participated in the Action, acted to protect the Settlement Class, and assisted their counsel. The efforts of Class Counsel have produced the Settlement Agreement entered into good faith, and which provides a fair, reasonable, adequate, and certain result for the Settlement Class. Class Counsel have made application for an award of $4,139,987.48 in attorneys' fees and $360,012.52 in expenses incurred in the prosecution of the Action on behalf of themselves and the other Plaintiffs' counsel. The combined total of the award is $4,500,000, which the Court finds to be fair, reasonable, and adequate under the circumstances. The Court hereby awards $4,500,000 as attorneys' fees and expenses. Class Counsel shall be responsible for distributing and allocating the Attorneys' Fees and Expenses award to Plaintiffs' counsel in their sole discretion. Further, Plaintiffs Dino Rikos, Tracey Burns and Leo Jarzembowski are entitled to a fair, reasonable and justified service award of $2,500 each, to be paid by Defendant.

13. The Court hereby dismisses the Action with prejudice, and all Released Claims against each and all Released Persons, and without costs to any of the parties as against the others.

14. Without affecting the finality of this Judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this Judgment and the Settlement Agreement, and all matters ancillary thereto.

15. The Parties are hereby authorized without needing further approval from the Court, to agree to and adopt such modifications and expansions of the Settlement Agreement, including without limitation, the forms to be used in the claims process, which are consistent with this Judgment and do not limit the rights of the Settlement Class Members under the Settlement Agreement.

16. The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** on the docket of this Court.


**IT IS SO ORDERED.**

Date: _____4/30/18_____

_Timothy S. Black_
Timothy S. Black
United States District Judge