BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (CA 149343)
LESLIE E. HURST (CA 178432)
THOMAS J. O'REARDON II (CA 247952)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

Attorneys for Plaintiffs and the Class

FARUKI IRELAND COX RHINEHART & DUSING PLL
D. JEFFREY IRELAND
ERIN E. RHINEHART
201 E. Fifth Street, Suite 1420
Cincinnati, OH 45202
Tel: 513/632-0310
513/632-0319 (fax)
djireland@ficlaw.com
erhinehart@ficlaw.com

Attorneys for Defendant

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| DINO RIKOS, TRACEY BURNS, and LEO JARZEMBROWSKI, On Behalf of Themselves, All Others Similarly Situated and the General Public, | Case No. 11-CV-00226-TSB |
| | <u>**CLASS ACTION**</u> |
| Plaintiffs, | |
| | **JOINT MOTION FOR APPEAL BOND** |
| v. | |
| THE PROCTER & GAMBLE COMPANY, | |
| Defendant. | Judge: Hon. Timothy S. Black<br>Courtroom: 815 |

Pursuant to Federal Rule of Appellate Procedure 7, Plaintiffs and Class Representatives Dino Rikos, Tracey Burns, and Leo Jarzembowski ("Plaintiffs") and Defendant The Procter & Gamble Company ("P&G") jointly move for an order requiring objector appellants Christopher Todd Cain and Arianna Gallagher (collectively, "Objector Appellants") to post an appeal bond. For the reasons demonstrated in the accompanying memorandum, as well as in the concurrently filed declarations of Class Counsel, Timothy G. Blood ("Blood Decl."), and H. Jacob Hack on behalf of the Settlement Administrator ("Hack Decl."), an appeal bond of $561,489.44, which is a conservative estimate of the fees, costs, and damages that will arise in connection with the appeals, is reasonable and appropriate.

Respectfully submitted,

Dated: August 16, 2018

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (CA 149343)
LESLIE E. HURST (CA 178432)
THOMAS J. O'REARDON II (CA 247952)

By:　　　　　*s/ Timothy G. Blood*
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

*Attorneys for Plaintiffs and the Class*

Dated: August 16, 2018

FARUKI IRELAND & COX P.L.L.
D. JEFFREY IRELAND
ERIN E. RHINEHART

By:　　　　　*s/ Erin E. Rhinehart*
ERIN E. RHINEHART

201 E. Fifth Street, Suite 1420
Cincinnati, OH 45202
Tel: 513/632-0310
513/632-0319 (fax)
djireland@ficlaw.com
erhinehart@ficlaw.com

*Attorneys for Defendant*

00137249

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................ 1

II.     BACKGROUND ......................................................................................... 2

III.    THE STANDARD FOR IMPOSING AN APPEAL BOND ......................... 4

IV.     AN APPEAL BOND IS APPROPRIATE ................................................... 4

        A.      Appellants Have the Ability to Post a Bond ................................... 4

        B.      A Significant Risk of Non-Payment Exists ..................................... 5

        C.      The Appeals Lack Merit ................................................................... 5

                1.      Cain Lacks Standing to Appeal ............................................. 6

                2.      The Appeals Are Frivolous on the Merits ............................. 7

        D.      The Objectors and Their Attorneys Have an Established Record of
                Engaging in Objector Blackmail ...................................................... 8

                1.      Objector Christopher Cain and His Attorney, Allen McDonald ............. 8

                2.      Objector Arianna Gallagher and Her Attorney, Simina Vourlis ........... 10

V.      THE REQUESTED BOND AMOUNT IS REASONABLE ......................... 11

        A.      The Bond Should Include $1,000 in Direct Costs ......................... 11

        B.      $71,500 in Incremental Settlement Administration Costs Should Be
                Included ........................................................................................... 12

        C.      $429,589.44 in Lost Interest Is Appropriate .................................. 13

        D.      $58,400 in Estimated Attorneys' Fees ........................................... 14

        E.      The Bond Should Secure Double the Costs the Sixth Circuit May Award ....... 16

VI.     CONCLUSION ......................................................................................... 16

00137249

**TABLE OF AUTHORITIES**

**Cases**

*Adsani v. Miller*,
   139 F.3d 67 (2d Cir. 1998) ........................................................................4, 16

*Allapatah Servs. v. Exxon Corp.*,
   No. 91-0986-CIV-GOLD/SIMONTON, 2006 U.S. Dist. LEXIS 88829
   (S.D. Fla. Apr. 7, 2006) ...........................................................................14

*Allen v. Allied Plant Maint. Co.*,
   881 F.2d 291 (6th Cir. 1989) ...................................................................5

*Allinder v. Inter-City Prods. Corp. (USA)*,
   152 F.3d 544 (6th Cir. 1998) ..................................................................16

*Am. Home Shield Corp. v. Ozur*,
   No. 16-cv-2400-SHL-tmp, 2017 U.S. Dist. LEXIS 81611
   (W.D. Tenn. Jan. 17, 2017) ...............................................................7, 15

*Barnes v. FleetBoston Fin. Corp.*,
   No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072
   (D. Mass. Aug. 22, 2006) ................................................................14, 16

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ...............................................................................8

*Brandewie v. Wal-Mart Stores, Inc.*,
   No. 1:14-CV-965, 2016 U.S. Dist. LEXIS 21115
   (N.D. Ohio Feb. 22, 2016) ...............................................................12, 14

*In re Broadcom Corp. Secs. Litig.*,
   No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 45656
   (C.D. Cal. Dec. 5, 2005) ...........................................................2, 12, 16

*Caffey v. Unum Life Ins. Co.*,
   302 F.3d 576 (6th Cir. 2002) .............................................................13, 14

*In re Cardizem CD Antitrust Litig.*,
   391 F.3d 812 (6th Cir. 2004) ..........................................................*passim*

*In re Checking Account Overdraft Litig.*,
   No. 1:09-MD-02036-JLK, 2012 U.S. Dist. LEXIS 18384
   (S.D. Fla. Feb.14, 2012) ..........................................................................2

*City of Livonia Emps. Ret. Sys. v. Wyeth*,
   No. 07 Civ. 10329 (RJS), 2013 U.S. Dist. LEXIS 113658
   (S.D.N.Y. Aug. 7, 2013) ..........................................................................6

*Cleveland Hair Clinic, Inc. v. Puig*,
   200 F.3d 1063 (7th Cir. 2000)..............................................................................5

*Dennings v. Clearwire Corp.*,
   928 F. Supp. 2d 1270 (W.D. Wash. 2013)......................................................12, 13

*In re Diet Drugs Prods. Liab. Litig.*,
   MDL No. 1203, 2000 U.S. Dist. LEXIS 16085 (E.D. Pa. Nov. 6, 2000)...........11

*Embry v. ACER Am. Corp.*,
   No. C 09-01808 JW, 2012 U.S. Dist. LEXIS 78068
   (N.D. Cal. June 5, 2012)......................................................................................5

*In re Enfamil Lipil Mktg.*,
   No. 11-MD-02222-COHN/SELTZER, 2012 U.S. Dist. LEXIS 49254
   (S.D. Fla. Apr. 9, 2012).......................................................................................9

*Farris v. Std. Fire Ins. Co.*,
   280 Fed. Appx. 486 (6th Cir. 2008)..................................................................14

*Fleury v. Richemont N. Am., Inc.*,
   No. C-05-4525 EMC, 2008 U.S. Dist. LEXIS 88166
   (N.D. Cal. Oct. 21, 2008)....................................................................................5

*Florists' Mut. Ins. Co. v. Ludy Greenhouse Mfg. Corp.*,
   521 F. Supp. 2d 661 (S.D. Ohio 2007) ..............................................................14

*Gascho v. Global Fitness Holdings, LLC*,
   822 F.3d 269 (6th Cir. 2016)................................................................................5

*In re GE Co. Secs. Litig.*,
   998 F. Supp. 2d 145 (S.D.N.Y. 2014).................................................................12

*Gemelas v. Dannon Co.*,
   No. 1:08 CV 236, 2010 U.S. Dist. LEXIS 99503
   (N.D. Ohio Aug. 31, 2010) ........................................................................*passim*

*Heekin v. Anthem, Inc.*,
   No. 1:05-cv-01908-TWP-TAB, 2013 U.S. Dist. LEXIS 26700
   (S.D. Ind. Feb. 27, 2013).....................................................................................12

*Hill v. State St. Corp.*,
   794 F.3d 227 (1st Cir. 2015) ..................................................................................7

*Hill v. State St. Corp.*,
   No. 1:09-cv-12146-GAO, 2015 U.S. Dist. LEXIS 50161
   (D. Mass. Apr. 16, 2015) .......................................................................................8

*Huyer v. Van De Voorde*,
   847 F.3d 983 (8th Cir. 2017)..................................................................................6

Case No. 1:11-cv-00226-TSB

JOINT MOTION AND MEMORANDUM FOR APPEAL BOND

00137249

*In re Initial Pub. Offering Sec. Litig.*,
    721 F. Supp. 2d 210 (S.D.N.Y. 2010) ........................................................................4, 5

*In re Initial Pub. Offering Sec. Litig.*,
    728 F. Supp. 2d 289 (S.D.N.Y. 2010) ......................................................................10, 11

*In re Ins. Brokerage Antitrust Litig.*,
    No. 04-5184 (GEB), 2007 U.S. Dist. LEXIS 47659
    (D.N.J. June 29, 2007) ................................................................................................12

*Kaiser Aluminum & Chem. Corp. v. Bonjorno*,
    494 U.S. 827 (1990) ....................................................................................................14

*Knisley v. Network Assocs.*,
    312 F.3d 1123 (9th Cir. 2002) ......................................................................................7

*Martin v. Comm'r*,
    756 F.2d 38 (6th Cir. 1985) ........................................................................................14

*McDonough v. Toys 'R' Us, Inc.*,
    80 F. Supp. 3d 626 (E.D. Pa. 2015) .............................................................................7

*Miletak v. Allstate Ins. Co.*,
    No. C 06-03778 JW, 2012 U.S. Dist. LEXIS 125426
    (N.D. Cal. Aug. 27, 2012) ...........................................................................................12

*In re Munn*,
    891 F.2d 291 (6th Cir. 1989) ........................................................................................4

*Muransky v. Godiva Chocolatier, Inc.*,
    No. 15-cv-60716-CIV-DIMITROULEAS/SNOW, 2016 U.S. Dist. LEXIS
    126810 (S.D. Fla. Sept. 16, 2016) ...............................................................................9

*Ne. Ohio Coalition for the Homeless v. Husted*,
    831 F.3d 686 (6th Cir. 2016) ........................................................................................6

*Nelson v. Mead Johnson & Johnson Co.*,
    484 Fed. App'x 429 (11th Cir. 2012) ..........................................................................10

*In re Nutella Mktg. & Sales Practices Litig.*,
    No. 11-1086 (FLW), 2012 U.S. Dist. LEXIS 172006
    (D.N.J. Nov. 20, 2012), *aff'd*, 589 Fed. Appx. 53 (3d Cir. 2014) ..............................12

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MD-1952, 2017 U.S. Dist. LEXIS 135232
    (E.D. Mich. Aug. 23, 2017) ..........................................................................................9

*In re Packaged Ice Antitrust Litig.*,
    No. 17-2137, 2018 U.S. App. LEXIS 13882
    (6th Cir. May 24, 2018) .................................................................................................6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Packwood v. Senate Select Comm. on Ethics,*
    114 S. Ct. 1036 (1994) ..............................................................................7

*Pearson v. Target Corp.,*
    893 F.3d 980 (7th Cir. 2018) ...............................................................1, 13

*In re Polyurethane Foam Antitrust Litig.,*
    178 F. Supp. 3d 635 (N.D. Ohio 2016) .......................................*passim*

*Rodriguez v. Disner,*
    688 F.3d 645 (9th Cir. 2012) ..................................................................7

*Rougvie v. Ascena Retail Grp., Inc.,*
    No. 15-724, 2016 U.S. Dist. LEXIS 142404
    (E.D. Pa. Oct. 14, 2016) ......................................................................2, 8

*Rui He v. Rom,*
    No. 1:15-CV-1869, 2017 U.S. Dist. LEXIS 82185
    (N.D. Ohio May 30, 2017) ....................................................................14

*Schuh v. HCA Holdings, Inc.,*
    No. 3:11-01033, 2016 U.S. Dist. LEXIS 72954
    (M.D. Tenn. June 1, 2016) ..................................................................9, 15

*Sckolnick v. Harlow,*
    820 F.2d 13 (1st Cir. 1987) ..................................................................15

*Silverman v. Motorola Sols., Inc.,*
    739 F.3d 956 (7th Cir. 2013) ..................................................................6

*Smith v. Jefferson Cty. Bd. of Sch. Comm'rs,*
    641 F.3d 197 (6th Cir. 2011) ..................................................................6

*In re Target Corp. Customer Data Sec. Breach Litig.,*
    No. 14-2522, 2016 U.S. Dist. LEXIS 7070
    (D. Minn. Jan. 20, 2016) ......................................................................12

*In re Uponor, Inc.,*
    No. 11-MD-2247 ADM/JJK, 2012 U.S. Dist. LEXIS 130140
    (D. Minn. Sept. 11, 2012) ..................................................................4, 12

*Van Arnem Co. v. CIS Leasing Corp.,*
    No. 80-1258, 1982 U.S. App. LEXIS 12530
    (6th Cir. Jan. 5, 1982) ..........................................................................16

*Vergara v. Uber Techs., Inc.,*
    No. 15 C 6942, 2018 U.S. Dist. LEXIS 117355
    (N.D. Ill. Feb. 26, 2018) ........................................................................1

*Vollmer v. Selden,*
    350 F.3d 656 (7th Cir. 2003) ..................................................................1

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*,
   MDL 1735, 2010 U.S. Dist. LEXIS 21466 (D. Nev. Mar. 8, 2010) ............................ 10, 12

*Wilton Corp. v. Ashland Castings Corp.*,
   188 F.3d 670 (6th Cir. 1999) ........................................................................................ 6

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) .......................................................................... 7

*Zisumbo v. Ogden Reg'l Med. Ctr.*,
   No. 1:10-cv-73 TS, 2012 U.S. Dist. LEXIS 177537
   (D. Utah Dec. 13, 2012) ................................................................................................ 7

**Statutes and Rules**

28 U.S.C.
   § 1920 ....................................................................................................................... 3, 11
   § 1961 .......................................................................................................................... 13

Cal. Civ. Code § 1780(e) ................................................................................................ 15

Fla. Stat.
   § 501.211 ..................................................................................................................... 15
   § 817.41(6) .................................................................................................................. 15
   § 501.2105 ................................................................................................................... 15

N.C. Gen. Stat. § 75-16.1 ............................................................................................... 15

New Hampshire Consumer Protection Act ..................................................................... 15

Ohio Deceptive Trade Practices Act ............................................................................... 15

Tennessee Consumer Protection Act ............................................................................... 14

815 ILCS 505/10a(c) ...................................................................................................... 15

Sup. Ct. R. 13 .................................................................................................................. 13

Fed. R. App. P.
   Rule 7 ................................................................................................................... *passim*
   Rule 38 ..................................................................................................................... 3, 16
   Rule 39 ............................................................................................................... 3, 11, 12
   Rule 52 .......................................................................................................................... 5

Case No. 1:11-cv-00226-TSB
JOINT MOTION AND MEMORANDUM FOR APPEAL BOND

00137249

## MEMORANDUM IN SUPPORT OF JOINT MOTION FOR APPEAL BOND

## I.    INTRODUCTION

Out of five objectors to this class action Settlement, only Christopher Cain and Arianna Gallagher (collectively, "Objector Appellants") remain. Each should be required to post an appeal bond, jointly and severally, in the amount of $561,489.44. As the Court found, "[t]he objections here are lodged by persons who make a living at doing it," and "[t]hey're not legitimate on their face." Doc. No. 178 (Final Approval Hearing Transcript) at PageID 8580:3-5.[1] The Court determined many of the arguments were "conclusory," without "any record evidence or legal authority," "not well-taken," and "expressly" rejected by Sixth Circuit authority. *Id*. Indeed, one of the Objector Appellants—Christopher Cain—lacks standing to appeal because he never filed a claim in the Settlement. *See* Hack Decl., ¶¶4-6. His appeal will likely be dismissed before the appellate court ever reaches the merits of his arguments.

The goal of these objections, and subsequent appeals, is to create leverage to settle for a fee; a tactic often described as "objector blackmail." *Pearson v. Target Corp.*, 893 F.3d 980, 982 (7th Cir. 2018); *Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003) ("In the context of intervening in a class action settlement, extortion would mean intervening not to increase the value of the settlement, but in order to get paid to go away."); *Vergara v. Uber Techs., Inc.*, No. 15 C 6942, 2018 U.S. Dist. LEXIS 117355, at *7 (N.D. Ill. Feb. 26, 2018) (characterizing professional objectors as engaging in "effectively a practice of objector blackmail").

When imposing an appeal bond on Cain and other serial objectors, another court described explained:

> We expect valid objections may increase the value of the class benefit. Unfortunately, too often the objectors are represented by lawyers who file objections to many class action settlements simply to be bought out at a higher premium than other class members. When this tactic fails, they file appeals challenging established legal issues hoping the delay may coerce the settling parties to pay them a premium from the Settlement Fund. When we view an appeal as a coercive tactic with little merit, we may grant a motion requiring the appealing objector to post a bond…

---

[1]    Unless stated otherwise, all "Ex." references are to documents attached to the concurrently filed Declaration of Timothy G. Blood.

*Rougvie v. Ascena Retail Grp., Inc.*, No. 15-724, 2016 U.S. Dist. LEXIS 142404, at *2-3 (E.D. Pa. Oct. 14, 2016). Put differently, a bond is appropriate to discourage Objector Appellants' vexatious conduct.

Appeal bonds are routinely imposed by district courts within the Sixth Circuit, and upheld by the Sixth Circuit, on serial objectors because of the waste and abuse they cause. *See In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 815-17 (6th Cir. 2004) (upholding $174,429 appeal bond against serial objector, and dismissing the underlying appeal because the objector failed to post the bond); *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 639, 646 (N.D. Ohio 2016) (imposing appeal bond of $145,463 against serial objectors); *Gemelas v. Dannon Co.*, No. 1:08 CV 236, 2010 U.S. Dist. LEXIS 99503, at *6-7 (N.D. Ohio Aug. 31, 2010) (imposing $275,000 appeal bond against serial objector). This practice is consistent with federal courts across the country. *See, e.g.*, *In re Broadcom Corp. Secs. Litig.*, No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 45656, at *18 (C.D. Cal. Dec. 5, 2005) (imposing $1,240,500 bond against serial objector); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2012 U.S. Dist. LEXIS 18384, at *45-47 (S.D. Fla. Feb.14, 2012) (ordering $616,338.00 bond because of the "highly detrimental impact" of professional objectors who "tie up the execution of this Settlement and further delay payment to the members of the Settlement Class").

A $561,489.44 bond is appropriate in this case.

## II.    BACKGROUND

On April 30, 2018, following briefing and a final fairness hearing, this Court entered an Order Granting Defendant's Motion for Final Approval of Class Action Settlement (Doc. No. 169); Granting Plaintiffs' Motion for Final Approval of Class Action Settlement and Request for Award of Attorneys' Fees and Expenses (Doc. No. 170); and Terminating This Case from the Docket. *See* Doc. No. 179 (the "Order"). Serial objectors Christopher Todd Cain and Arianna Gallagher then filed notices of appeal. *See* Doc. Nos. 185-186.

///

///

The Settlement requires P&G to pay Align purchasers up to $15 million in cash refunds, provide DHIC relief, and fund a robust class notice and administration program. The Settlement was achieved on the eve of trial after three mediations and seven years of hard-fought litigation. *See* Doc. No. 166-2 (Stipulation of Settlement) at §IV.A., PageID 6893-6896; Doc. No. 179 at 1-6, PageID 8585-8590. More than 305,000 claims were filed seeking in excess of $13.25 million in cash awards, exceeding the number of claims the Settlement Administrator originally estimated. *See* Hack Decl., ¶¶2-3. *See also* Doc. No. 177-26 at 1-5, PageID 8562-8566 (estimating 300,000 claims seeking $13 million).

Only five people objected to the Settlement; none were filed in good faith. Doc. No. 177 at 1, PageID 7415; Doc. No. 179 at 8, PageID 8592. Plaintiffs and P&G addressed each objection in their submissions in support of final approval. *See* Doc. Nos. 176, 177. None of the objectors appeared at the fairness hearing. After carefully considering each objection, the Court overruled them. Doc. No. 179 at 23-33, PageID 8607-8617.

On this record, it is improbable the Sixth Circuit will conclude the Court abused its discretion when approving the Settlement. In the meantime, the objections are preventing implementation of the Settlement, delaying payment of millions of dollars to Class Members, and increasing the costs of litigation and settlement administration. These provide compelling bases for an appeal bond.

The requested amount of $561,489.44 is a conservative estimate of the costs and damages that ultimately will be taxed to the Objector Appellants. It consists of the following estimated amounts: (a) $2,000 in appeal-related expenses taxable under 28 U.S.C. § 1920 and Fed. R. App. P. 39(e) (doubled under Fed. R. App. P. 38); (b) $71,500 in additional claims administration costs; (c) $429,589.44 in lost interest income that would have inured to the exclusive benefit of the Settlement Class, Class Representatives, and Plaintiffs' Counsel; and (d) Plaintiffs' attorneys' fees of $58,400.

///

///

///

## III. THE STANDARD FOR IMPOSING AN APPEAL BOND

Appellate Rule 7 provides: "In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Rule 7 is designed to protect the rights of appellees against the risk of non-payment by an unsuccessful appellant. *Adsani v. Miller*, 139 F.3d 67, 75 (2d Cir. 1998); *see also In re Uponor, Inc.*, No. 11-MD-2247 ADM/JJK, 2012 U.S. Dist. LEXIS 130140, at *12-13 (D. Minn. Sept. 11, 2012) (An appeal bond is a "'guarantee that the appellee can recover from the appellant the damages caused by the delay incident to the appeal.'").[2] "Appeal bonds also serve to discourage frivolous appeals." *In re Polyurethane*, 178 F. Supp. 3d at 635 (citing *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002) ("[A]n appellant is less likely to bring a frivolous appeal if he is required to post a sizable bond ....". The authority to impose a bond and to determine its amount lies squarely within the district court's discretion. *In re Cardizem,* 391 F.3d at 818; *In re Munn*, 891 F.2d 291 (6th Cir. 1989); *see also* Fed. R. App. P. 7, 1979 advisory committee notes.

When determining whether a bond is appropriate, courts consider: "(1) the appellant's financial ability to post a bond; (2) the risk that the appellant would not pay appellee's costs if the appeal is unsuccessful, (3) the merits of the appeal, and (4) whether the appellant has shown any bad faith or vexatious conduct." *Gemelas*, 2010 U.S. Dist. LEXIS 99503, at *4. Each of these factors supports the bond requested here.

## IV. AN APPEAL BOND IS APPROPRIATE

### A. Appellants Have the Ability to Post a Bond

"'It is [the appellant's] burden to demonstrate that the bond would constitute a barrier to her appeal.'" *In re Polyurethane*, 178 F. Supp. 3d at 641-42. If Objector Appellants "'have not presented any evidence demonstrating that they lack the financial ability to post a bond …, [then] the Objectors' ability to do so is presumed.'" *Id.*; *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210, 213 (S.D.N.Y. 2010); *see also Adsani*, 139 F.3d at 79 ("without any

---

[2]  Here, as throughout, all citations and internal quotations are deemed omitted and all emphasis is deemed added unless otherwise stated.

showing of [appellant's] financial hardship," the imposition of a bond is "not an impermissible barrier to appeal").

The Objector Appellants will not be able to demonstrate they cannot afford a bond. Cain is a lawyer with a thriving legal practice, boasting on his firm's website of recovering over $13.4 million. *See* https://www.scottandcain.com/Case-Results.shtml. Arianna Gallagher and her husband own a home with substantial equity in San Diego with a value exceeding one million dollars. *See* Ex. A. Both are experienced objectors who are represented by counsel with long track records as serial objector counsel. For them, an appeal bond is an anticipated expense.

### B.     A Significant Risk of Non-Payment Exists

Absent an appeal bond, actions to collect costs after appeal will have to be instituted in two different states. Here, Gallagher resides in California and Cain in Tennessee. This fact weighs in favor of imposing a bond. *See Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 U.S. Dist. LEXIS 88166, at *22 (N.D. Cal. Oct. 21, 2008) (factor weighing in favor of imposing appeal bond); *In re Initial Pub. Offering*, 721 F. Supp. 2d at 213 (finding a "significant risk of non-payment" where "plaintiffs would need to institute collection actions in numerous jurisdictions to recover their costs."); *Embry v. ACER Am. Corp.*, No. C 09-01808 JW, 2012 U.S. Dist. LEXIS 78068, at *5 (N.D. Cal. June 5, 2012) (objector residing outside of Ninth Circuit weighed in favor of requiring a bond).

### C.     The Appeals Lack Merit

Courts consider whether the objections are likely to prevail on appeal. *In re Polyurethane*, 178 F. Supp. 3d at 638, 640. Objectors Appellants' chance of success can be measured by the deference this Court's decision will receive on appeal. *Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063, 1068 (7th Cir. 2000). The Sixth Circuit reviews approval of class action settlements and requests for attorneys' fees under an abuse of discretion standard. *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 276 (6th Cir. 2016). Subsidiary factual findings are entitled to even more deference. *See* Fed. R. Civ. P. 52(a); *Allen v. Allied Plant Maint. Co.*, 881 F.2d 291, 295 (6th Cir. 1989) ("findings of fact by a district judge

should not be reversed unless 'clearly erroneous.'"). And because this Settlement was achieved only after lengthy, hard-fought litigation involving multi-state certification and previous appellate review, "substantial deference" is appropriate. *See Ne. Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 702-03 n.3 (6th Cir. 2016) ("Substantial deference 'is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'").

The Objector Appellants are playing a game. They know the point of the appeals is to leverage a fee, and not to litigate points of law. *See Wilton Corp. v. Ashland Castings Corp.*, 188 F.3d 670, 677 (6th Cir. 1999) (an appeal is frivolous if an appellant's arguments "essentially had no reasonable expectation" of prevailing).

### 1. Cain Lacks Standing to Appeal

Cain lacks standing to appeal because he never filed a claim in the Settlement, and therefore will likely result in dismissal without reaching the merits. *See* Hack Decl., ¶¶5-8. To pursue his appeal, Cain must have Article III standing such that he suffered injury in fact that can be remedied by his requested relief. *Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 206 (6th Cir. 2011); *see also In re Packaged Ice Antitrust Litig.*, No. 17-2137, 2018 U.S. App. LEXIS 13882, at *12-13 n.8 (6th Cir. May 24, 2018) ("An objector who does not have an injury-in-fact lacks standing to appeal an aspect of a class-action settlement that does not adversely affect his own interests."). Cain declined to participate in the Settlement and therefore has no stake in it because a favorable outcome on appeal would not redress his purported injury. Under these circumstances, courts routinely conclude objectors lack standing. *See City of Livonia Emps. Ret. Sys. v. Wyeth*, No. 07 Civ. 10329 (RJS), 2013 U.S. Dist. LEXIS 113658, at *4-5 (S.D.N.Y. Aug. 7, 2013) (collecting cases, and holding that the "determination is self-evident" that a class member who fails to file a claim form lacks standing to challenge appropriation of settlement funds).[3]

---

[3]     *See also Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) (dismissing appeal of objector who did not file a claim because he "lacks any interest in the amount of fees, since he would not receive a penny from the fund even if counsel's take should be reduced to zero"); *Huyer v. Van De Voorde*, 847 F.3d 983, 987 (8th Cir. 2017) (dismissing

## 2. The Appeals Are Frivolous on the Merits

On the merits, both of the objections are frivolous, contradicted by the record, and run contrary to established law and precedent. Their recycled objections about calculating attorneys' fees, clear-sailing provisions, and *cy pres* distribution present no novel issues for the Sixth Circuit. This Court examined briefing from the parties and objectors, held oral argument, and issued a detailed and lengthy opinion expressly considering and rejecting Objector Appellants' respective arguments. *See* Doc. No. 179 at 23-26, PageID 8607-8610 (rejecting Gallagher's arguments), and 29-31, PageID 8613-8615 (rejecting Cain's arguments). It is very unlikely this Court's order overruling them will be overturned on appeal. *Packwood v. Senate Select Comm. on Ethics*, 114 S. Ct. 1036, 1037-38 (1994) (denied applicant's request for a stay pending appeal because it was unlikely to overturn the lower court's decision given the abuse of discretion standard).[4]

For Gallagher, her position has only worsened. Although much of her objection depends on the number of Settlement claims, she assumed a claims rate that was half of the anticipated claims to be submitted. *Compare* Doc. No. 13, Case No. 18-3521 at 9 (Gallagher states approximately 151,000 claims submitted at one point in time) *with* Doc. No. 177 (Final

appeal for lack of Article III standing where the objector "would not benefit from the changes she seeks"); *Hill v. State St. Corp.*, 794 F.3d 227, 231 (1st Cir. 2015) (same); *Rodriguez v. Disner*, 688 F.3d 645, 660 n.11 (9th Cir. 2012) ("[O]bjectors who do not participate in a settlement lack standing to challenge class counsel's … fee award because, without a stake in the common fund pot, a favorable outcome would not redress their injury."); *Knisley v. Network Assocs.*, 312 F.3d 1123, 1128 (9th Cir. 2002) ("lack of standing should be apparent" for an objector who failed to submit a claim); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 340 (S.D.N.Y. 2005) (objector "did not file a proof of claim and therefore does not have standing to bring her objections"); *McDonough v. Toys 'R' Us, Inc.*, 80 F. Supp. 3d 626, 938 n.12 (E.D. Pa. 2015) (objections would not be considered from persons who submitted deficient claim forms).

[4]    *See also In re Polyurethane*, 178 F. Supp. 3d at 641 ("None of the [objector's] opposition briefs cite controlling authority that would reverse any of this Court's conclusions" and this "weighs in favor of imposing bond."); *Am. Home Shield Corp. v. Ozur*, No. 16-cv-2400-SHL-tmp, 2017 U.S. Dist. LEXIS 81611, at *7 (W.D. Tenn. Jan. 17, 2017) (ordering appeal bond of $32,205, inclusive of attorneys' fees after finding that "[d]ue to the 'great deference' given to this Court's decision, it is unlikely that the Sixth Circuit will overturn it on appeal."); *Zisumbo v. Ogden Reg'l Med. Ctr.*, No. 1:10-cv-73 TS, 2012 U.S. Dist. LEXIS 177537, at *6-7 (D. Utah Dec. 13, 2012) ("dismissal was within the Court's discretion and is unlikely to be overturned on appeal when reviewed under the applicable abuse of discretion standard.").

Approval Reply) at 21, PageID 7435, Doc. No. 177-26 (Settlement Administrator
Declaration), ¶2, PageID 8562, and Doc. No. 178 (Final Approval Hearing Transcript) at 7,
PageID 8573 (projecting 300,000 claims for about $13 million in cash refunds). The claim
administrator's estimate turned out to be conservative. *See* Hack Decl., ¶3 (305,000 claims
submitted for $13.25 million in cash refunds). Gallagher's objection is also frivolous as a legal
matter. Citing *Gascho* and *Boeing Co. v. Van Gemert*, 444 U.S. 472, 477-78, 480, 482 (1980),
this Court properly held that the benefit to Class Members is the amount made available. *See*
Doc. No. 179 at 17, PageID 8601.[5]

### D.  The Objectors and Their Attorneys Have an Established Record of Engaging in Objector Blackmail

The Court should also consider whether the Objector Appellants have shown bad faith
or vexatious conduct. Here, Objector Appellants are recognized serial objectors who lodge
canned objections to obtain a payoff.

### 1.  Objector Christopher Cain and His Attorney, Allen McDonald

Christopher Cain frequently plays the role of both serial objector and serial objector
counsel. *See* Doc. No. 177-1, ¶9, PageID 7451; Doc. No. 177-16 (Ex. O, Part 1) and Doc.
No. 177-17 (Ex. O, Part 2) thereto (listing and attaching Cain's objections). This Court
previously found that "Mr. Cain has been recognized by multiple courts as a serial objector
who raises meritless arguments." Doc. No. 179 at 29, PageID 8613 (citing opinions). In at
least four cases, Cain or his clients have been ordered to pay appeal bonds. *See Hill v. State St.
Corp.*, No. 1:09-cv-12146-GAO, 2015 U.S. Dist. LEXIS 50161, at *10-13 (D. Mass. Apr. 16,
2015) (overruling Cain's objections, imposing a $75,300 appeal bond, and noting "Cain's
status as a serial objector supports the conclusion that a bond is appropriate"); *Rougvie*, 2016
U.S. Dist. LEXIS 142404, at *3 (imposing appeal bond on Cain and other serial objectors
noting their extortionate, "coercive tactic[s]"); *In re Netflix Privacy Litig.*, No. 5:11-cv-379

---

[5]  Vourlis lodged this same objection to the settlement in *Meta v. Target*. On August 7,
2018, citing *Gascho*, Judge Donald Nguyen rejected her objection as "not well taken" because
the court "may properly consider the value of the Settlement benefits made available to the
Class Members, and not just the amounts claimed." *See* Ex. C at 5-6 (August 7, 2018, final
approval order in *Meta v. Target Corp.*, No. 4:14-cv-00832-DCN (N.D. Ohio)).

(N.D. Cal.), Doc. Nos. 307 and 341 (ordering Cain's client to post appeal bond of $21,519 and denying Cain's *pro hac vice* motion finding "sufficient reason to question [his] ability to observe the duties and responsibilities" required); *Schuh v. HCA Holdings, Inc.*, No. 3:11-01033, 2016 U.S. Dist. LEXIS 72954, at *8 (M.D. Tenn. June 1, 2016) (ordering Cain's clients to post appeal bond of $80,000).

In this case, Cain is playing the role of the class member, represented by serial objector counsel Allen McDonald. On June 25, 2018, McDonald filed a notice of appearance on behalf of Cain before the Sixth Circuit. *See* Doc. No. 10 (Case No. 18-3512). McDonald has participated in at least 16 settlement objections. Blood Decl., ¶6 (listing McDonald's objections, including four cases where Cain and McDonald worked together). Cain and McDonald have previously worked together on objections. For example, Cain represented McDonald in objecting to the settlement in *Chambers v. Whirlpool Corp.* (N.D. Cal.). *See* Ex. D. On December 2, 2016, the district court in *Chambers* ordered that McDonald and Cain respond to discovery about their motives, intentions and prior settlement objections. *See* Ex. E. McDonald and Cain ignored the court's order. At the final approval hearing, the court found that McDonald had failed to comply with discovery obligations, struck his objections, and ordered him not to file any other papers in the case. *See* Ex. F.

The court *In re Enfamil Lipil Mktg.*, No. 11-MD-02222-COHN/SELTZER, 2012 U.S. Dist. LEXIS 49254, at *16 (S.D. Fla. Apr. 9, 2012), imposed an appeal bond against McDonald's client "agree[ing] with the parties that the representation of three previous objectors by the Lacy, Price & Wagner firm weighs in favor of requiring an appeal bond." The court was also troubled that "Pack's attorney, W. Allen McDonald, offered to withdraw her appeal in exchange for a payment of $150,000." *Id.* at *15. Another court found McDonald was a "professional objector[] who threaten[s] to delay resolution of class actions cases unless [he] receive[s] extra compensation." *Muransky v. Godiva Chocolatier, Inc.*, No. 15-cv-60716-CIV-DIMITROULEAS/SNOW, 2016 U.S. Dist. LEXIS 126810, at *9-10 (S.D. Fla. Sept. 16, 2016); *see also In re Packaged Ice Antitrust Litig.*, No. 08-MD-1952, 2017 U.S. Dist. LEXIS 135232, at *72 (E.D. Mich. Aug. 23, 2017) (the court described McDonald's "baseless

suggestion" of collusion "an affront to both the Court and to counsel"); *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x 429, 435 (11th Cir. 2012) (the Eleventh Circuit rejected McDonald's collusion argument as "wholly unfounded").

### 2.  Objector Arianna Gallagher and Her Attorney, Simina Vourlis

Arianna Gallagher's lawyer, Simina Vourlis also has a history of serial objecting. This is at least the sixth settlement Vourlis has objected to since November 2014. *See* Blood Decl., ¶3; Doc. No. 177-1, ¶13, PageID 7453 and Doc. No. 177-22 (Ex. T) thereto (listing and attaching Vourlis' objections). None of Vourlis' objections have been upheld. In four objections, Vourlis has represented purported class members who themselves are serial objectors. *See* Blood Decl., ¶3; Doc. No. 177-1, ¶14, PageID 7453-7454. In one case (*In re Ford Motor Co. Spark Plug Litig.*), class counsel pointed out that Vourlis' professional objector client did not even own one of the vehicles at issue. Blood Decl., ¶4. In her *Duke Energy* objection, Vourlis blindly copied and pasted from her objections in a case about Ford vehicles. That is, in the *Duke Energy* case about electricity rates she filed a frivolous objection that "the Release should be limited to all ***5.4L 3-valve engine vehicles*** in the Notice …." Blood Decl., ¶5 (emphasis added).

Meritless appeals like those filed by the Objector Appellants serve only to delay payment to all class members, without any ultimate benefit to the class. *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010). Under these circumstances, courts impose appeal bonds on serial objectors in the class action context. *See In re Cardizem*, 391 F.3d at 816-17 (upholding $174,429 appeal bond on serial objector). Accordingly, the $561,489.44 bond sought by the parties is appropriate. *See*, *e.g.*, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, MDL 1735, 2010 U.S. Dist. LEXIS 21466, at *18-19 (D. Nev. Mar. 8, 2010) (ordering each objector to post $500,000 bond).

///

///

///

///

**V.  THE REQUESTED BOND AMOUNT IS REASONABLE**

A bond in the amount of $561,489.44 is reasonable. Rule 7 costs include costs for photocopying, printing, binding, filing, and service as well as the sums awardable under the relevant substantive statute or other authority underlying the claims. *In re Cardizem*, 391 F.3d at 817. Here, the costs subject to bond awardable under the underlying statutes include projected attorney's fees and damages flowing from the delay caused by an appeal. Potential damages include lost interest on amounts award in the judgment and increased settlement administration expenses. *Id.*; *In re Polyurethane*, 178 F. Supp. 3d at 644-45 (citing *In re Cardizem*, 391 F.3d at 817, and others).

**A.  The Bond Should Include $1,000 in Direct Costs**

Under Rule 39(e), "'(1) the preparation and transmission of the record'" and "'(2) the reporter's transcript, if needed to determine the appeal'" are taxable. Under 28 U.S.C. § 1920, taxable costs include "'court reporter fees, printing and witness fees, copying fees, docket fees, and compensation of court appointed experts and interpreters.'" *In re Polyurethane*, 178 F. Supp. 3d at 642. Having litigated this matter for over seven years, through class certification, and to the eve of trial, the parties have built a substantial record. Accordingly, these appeals will entail significant recoverable costs. As Judge Zouhary noted, courts "regularly estimate taxable costs" at more than $20,000. *Id.* at 643.

Plaintiffs reasonably anticipate incurring at least $1,000 in direct costs in connection with the Objector Appellants' appeals. *See* Blood Decl., ¶9 (detailing costs that will be sought). This is a conservative estimate of the amount Plaintiffs will spend on such items as printing, photocopying, preparing and serving the appeal record, and the cost of necessary transcripts. Courts regularly include these taxable costs in objector appeals, but in amounts far exceeding the request here.[6]

---

[6]  *See also In re Polyurethane*, 178 F. Supp. 3d at 643 (appeal bond included $10,000 in Rule 39 and Section 1920 taxable costs); *In re Initial Pub. Offering*, 728 F. Supp. 2d at 295 (imposing a $25,000 appeal bond jointly and severally on objectors to cover Rule 39(e) costs); *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2000 U.S. Dist. LEXIS 16085, at *19 (E.D. Pa. Nov. 6, 2000) ("$25,000.00 is a reasonable estimate of Class Counsel's costs in defending these appeals. These costs include printing and producing copies of briefs,

**JOINT MOTION AND MEMORANDUM FOR APPEAL BOND**

**B.** **$71,500 in Incremental Settlement Administration Costs Should Be Included**

Incremental administrative costs, such as class action administration costs, may be included in the appeal bond amount. *In re Cardizem*, 391 F.3d at 815, 818 (bond properly included $123,429 for "incremental administration costs" because the appeal had "the practical effect of prejudicing the other injured parties by increasing transaction costs and delaying disbursement of settlement funds"); *Heekin v. Anthem, Inc*., No. 1:05-cv-01908-TWP-TAB, 2013 U.S. Dist. LEXIS 26700, at *5-6 (S.D. Ind. Feb. 27, 2013) ("the excess administrative costs created by the delay incident to the appeal, can be characterized as a 'cost of appeal' under Rule 7").[7]

---

appendices, records and court reporter transcripts."); *Brandewie v. Wal-Mart Stores, Inc*., No. 1:14-CV-965, 2016 U.S. Dist. LEXIS 21115, at *6 (N.D. Ohio Feb. 22, 2016) (ordering appeal bond of $38,000, which included $25,000 in appeal costs, against single objector finding appeal meritless); *Gemelas*, 2010 U.S. Dist. LEXIS 99503, at *3 ($25,000 in appeal costs against a serial objector); *In re Ins. Brokerage Antitrust Litig*., No. 04-5184 (GEB), 2007 U.S. Dist. LEXIS 47659, at *42-43 (D.N.J. June 29, 2007) (including $25,000 in Rule 39 and Section 1920 taxable costs, and rejecting objector's arguments the amount was excessive and that plaintiffs are required to submit affidavits with delineated costs).

[7] *See also In re Uponor*, 2012 U.S. Dist. LEXIS 130140, at *12-13 (collecting cases and including $20,000 in additional administrative costs); *In re Polyurethane*, 178 F. Supp. 3d at 644-45 (finding it "appropriate to add $15,000 to the bond for increased administrative costs"); *In re Wal-Mart*, 2010 U.S. Dist. LEXIS 21466, at *18 (ordering $500,000 appeal bond to cover "administrative costs and interests costs," and "other costs reasonably incurred under Rule 39"); *In re Nutella Mktg. & Sales Practices Litig*., No. 11-1086 (FLW), 2012 U.S. Dist. LEXIS 172006, at *7 (D.N.J. Nov. 20, 2012) (bond included $20,000 for one-year of incremental settlement administration expenses), *aff'd*, 589 Fed. Appx. 53, 61 (3d Cir. 2014); *Miletak v. Allstate Ins. Co.*, No. C 06-03778 JW, 2012 U.S. Dist. LEXIS 125426, at *6 (N.D. Cal. Aug. 27, 2012) (good cause supported inclusion of $50,000 in "administrative costs" incurred "to continue to service and respond to class members' needs pending the appeal"); *Dennings v. Clearwire Corp*., 928 F. Supp. 2d 1270, 1272 (W.D. Wash. 2013) ("courts have interpreted Rule 7 broadly to include increased expenses in settlement administration" and finding $39,150 in such costs were "reasonable"); *In re Target Corp. Customer Data Sec. Breach Litig*., No. 14-2522 (PAM/JJK), 2016 U.S. Dist. LEXIS 7070, at *4-6 (D. Minn. Jan. 20, 2016) (bond included $46,872 in incremental settlement administration costs); *In re Broadcom*, 2005 U.S. Dist. LEXIS 45656, at *9-12 (bond included $517,700 in costs "arising from delay and disruption of administering the Settlement," including costs for "updating addresses and other information needed to remain in contact with Class members, locating Class members … paying monthly fees for maintaining the website created to inform Class members, and providing phone support to answer inquiries from the Class members"); *In re GE Co. Secs. Litig.*, 998 F. Supp. 2d 145, 153 (S.D.N.Y. 2014) (appeal bond against one serial objector should include $49,000 in settlement administration expenses).

The median length of an appeal in the Sixth Circuit is 10.1 months, followed by a 90-day period for the Appellant Objectors to petition the Supreme Court for a writ of certiorari. *See* http://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2017.pdf; Supreme Court Rule 13. During that time, administrative work must be done to safeguard the rights of Class Members and allow for prompt distribution of settlement benefits once the appeals are resolved. Trained personnel will be staffed to respond to communications from Class Members. Hack Decl., ¶10. The IVR system will be updated to accurately reflect the status of the Settlement, the appeals and the claim review process. The Settlement Website will be maintained throughout the appeal process. *Id*. Claimant addresses and contact information will need to be updated to ensure appropriate distributions of Settlement funds when these appeals are ultimately withdrawn or resolved. *Id*. The claim administrator estimates the costs incurred during this 13-month period will be about $5,500 per month. *Id*., ¶11. Given the median time for resolution in Sixth Circuit, the incremental administrative costs total $71,500. *Id*.; *see also Dennings*, 928 F. Supp. 2d at 1272 (multiplying estimated monthly settlement administration expenses by the median length of a Ninth Circuit appeal is a "sound methodology").[8]

## C. $429,589.44 in Lost Interest Is Appropriate

P&G is not obligated to pay out the Cash Refunds, service awards, or attorneys' fees and expenses until all appellate rights are exhausted. *See* Doc. No. 166-2 (Stipulation of Settlement) at §§IV.A.2.d and IX.B-C., PageID 6895 and 6907. Therefore, these appeals deprive the Claimants, Class Representatives, and Plaintiffs' Counsel of interest that would otherwise accrue. "Under 28 U.S.C. § 1961, district courts are required to award post judgment interest." *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 586 (6th Cir. 2002). "[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the

---

[8] The appeal bonds in *Target* and *GE* were supported by settlement administrator declarations similar to the one provided here. *Compare* Exs. I (*Target*: anticipated monthly administration costs of $7,812.00), and J (*GE*: anticipated monthly administration costs of $7,000 – $12,000) *with* Hack Declaration. The fact that three different settlement administrators declared similar monthly costs for increased administration (*see id.*) is further evidence of the reasonableness of Plaintiffs' request.

payment by the defendant." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835-36 (1990). "[T]he postjudgment interest statute requires payment of postjudgment interest on an award of legal expenses, just as with any other award of damages." *Caffey*, 302 F.3d at 590; *see also Florists' Mut. Ins. Co. v. Ludy Greenhouse Mfg. Corp.*, 521 F. Supp. 2d 661, 692 (S.D. Ohio 2007) (same). Accordingly, district courts routinely include lost interest income in the appeal bond amount. *See Barnes v. FleetBoston Fin. Corp.*, No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072, at *8 (D. Mass. Aug. 22, 2006) (assuming the professional objector's appeal would take one year, and imposing an appeal bond included $643,750 in lost interest on a settlement of $12.5 million).[9]

Objector Appellants' appeals are preventing the distribution of over $17,750,000 to Claimants, Class Representatives, and Plaintiffs' Counsel. Given the median appeal time in the Sixth Circuit and the applicable post judgment interest rate, $429,589.44 in lost interest income should be included in the bond amount. *See* Blood Decl., ¶¶11-13; *see also Martin v. Comm'r*, 756 F.2d 38, 41 (6th Cir. 1985) (the Sixth Circuit "will not hesitate to award damages when the appeal is frivolous, or taken merely for purposes of delay, involving an issue or issues already 'clearly resolved.'").

**D.     $58,400 in Estimated Attorneys' Fees**

Projected attorneys' fees should be included where a fee-shifting provision exists in the underlying action. *In re Cardizem*, 391 F.3d at 817-18 (bond in Tennessee Consumer Protection Act case properly included attorneys' fees incurred on appeal).[10] While only one is

---

[9]      *See also In re Polyurethane*, 178 F. Supp. 3d at 644 (including $30,463 in lost interest income); *Allapattah Servs. v. Exxon Corp.*, No. 91-0986-CIV-GOLD/SIMONTON, 2006 U.S. Dist. LEXIS 88829, at *61 (S.D. Fla. Apr. 7, 2006) (objector should "post an appeal bond in an amount sufficient to cover the damages, costs and interest that the entire class will lose as a result of the appeal"); *Brandewie*, 2016 U.S. Dist. LEXIS 21115, at *6-7 (imposing an appeal bond in an amount that "will fairly account for the loss of use faced by class members due to an appeal").

[10]      *See also Gemelas*, 2010 U.S. Dist. LEXIS 99503, at *7 ("Where, as here, a fee-shifting statute provides the underlying cause of action, the amount of bond should include the attorneys' fees."); *Farris v. Std. Fire Ins. Co.*, 280 Fed. Appx. 486, 489 (6th Cir. 2008) ("the district court did not abuse its discretion in ordering prospective attorneys' fees to be included in the bond"); *Rui He v. Rom*, No. 1:15-CV-1869, 2017 U.S. Dist. LEXIS 82185, at *4 (N.D.

necessary, consumer protection statutes at issue from California, Illinois, Florida, North

Carolina, and New Hampshire each contain fee-shifting provisions. *See* Doc. No. 165 (Third

Amended Class Action Complaint alleging violations of Cal. Civ. Code § 1780(e) (Consumers

Legal Remedies Act); 815 ILCS 505/10a(c) (Illinois Consumer Fraud and Deceptive Business

Practice Act); Fla. Stat. §§ 501.211(2)-(3) and 501.2105 (Florida Deceptive and Unfair Trade

Practices Act); Fla. Stat. § 817.41(6) (Florida's misleading advertising prohibition);

N.H.R.S.A. 358-A:10(I) and 358-A:10-a(I) (New Hampshire Consumer Protection Act); and

N.C. Gen. Stat. § 75-16.1 (North Carolina's Unfair and Deceptive Trade Practices Act)). The

Florida and North Carolina laws at issue also award attorneys' fees as part of costs. Fla. Stat.

§ 817.41(6) ("Any person prevailing in a civil action for violation of this section shall be

awarded costs, including reasonable attorney's fees."); N.C. Gen. Stat. § 75-16.1 (permitting

attorneys' fees to the prevailing party, with "such attorney fee to be taxed as a part of the court

costs").

Additionally, where "an appeal is taken in bad faith, a district court may also exercise

its discretion to impose a bond amount for attorneys' fees likely to be incurred on appeal."

*Gemelas*, 2010 U.S. Dist. LEXIS 99503, at *4, *7-8 (Bond that included $250,000 for

attorneys' fees was appropriate where the objector routinely filed form objections to class

settlements because it was fees necessary "to prevent frivolous objectors from threatening to

hold up class distributions."); *In re Polyurethane*, 178 F. Supp. 3d at 644-45 (imposing

$90,000 for attorney fees as "necessary and appropriate" in appeal by serial objectors who

"have shown some degree of bad faith or vexatious conduct"); *Sckolnick v. Harlow*, 820 F.2d

13, 15 (1st Cir. 1987) (affirming the district court's imposition of a Rule 7 bond, which

---

Ohio May 30, 2017) (including projected attorneys' fees in the bond amount because an underlying statute, the Ohio Deceptive Trade Practices Act, contains a fee-shifting provision); *In re Polyurethane*, 178 F. Supp. 3d at 644 (same and citing fee-shifting provisions of Florida and Tennessee consumer laws); *Schuh v. HCA Holdings, Inc.*, No. 3:11-01033, 2016 U.S. Dist. LEXIS 72954, at *8 (M.D. Tenn. June 1, 2016) (including $75,000 in anticipated attorney's fees and citing a fee-shifting provision in the Securities Act of 1933); *Am. Home Shield Corp. v. Ozur*, No. 16-cv-2400-SHL-tmp, 2017 U.S. Dist. LEXIS 81611, at *8-9 (W.D. Tenn. Jan. 17, 2017) (citing the underlying employment contract at issue, which provided for attorneys' fees).

included attorney's fees where the district court determined the appeal from its ruling on objections would be frivolous); *Adsani*, 139 F.3d at 75, 79 (imposition of a cost bond with attorneys' fees is proper where the appeal is "objectively unreasonable").

Class Counsel estimates they will incur $58,400 in lodestar opposing the objectors' appeals. *See* Blood Decl., ¶14.

### E. The Bond Should Secure Double the Costs the Sixth Circuit May Award

"If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. App. P. 38. The Sixth Circuit has used its authority under Rule 38 to impose double costs for frivolous appeals or "unnecessarily wasting the time and resources of the court." *Van Arnem Co. v. CIS Leasing Corp.*, No. 80-1258, 1982 U.S. App. LEXIS 12530, at *1 (6th Cir. Jan. 5, 1982). While the Sixth Circuit will ultimately decide if the appeals are frivolous under Rule 38, this Court has the authority to require a bond reflecting the Sixth Circuit's likely finding that the appeals are frivolous. *In re Broadcom*, 2005 U.S. Dist. LEXIS 45656, at *14-15; *see also Allinder v. Inter-City Prods. Corp. (USA)*, 152 F.3d 544, 552 (6th Cir. 1998) ("[G]enerally 'an appeal is frivolous when the result is obvious or when the appellant's argument is wholly without merit.'"). As discussed above, the Objector Appellants' appeals are without merit, filed without reasonable expectation of altering the judgment, and done for purposes of delay and harassment. Accordingly, the Court should double the costs requested in Section V.A above, to $2,000. *In re Broadcom*, 2005 U.S. Dist. LEXIS 45656, at *17 (doubling appeal bond costs of $620,250 where objector's appeal was "unfounded"); *Barnes*, 2006 U.S. Dist. LEXIS 71072, at *2-3, *8 (doubling appeal bond costs in case involving professional objectors).

## VI. CONCLUSION

The relevant factors weigh heavily in favor of requiring the Objector Appellants to post a bond in this matter. Ordering the Objector Appellants to post a $561,489.44 bond will serve to protect the rights of Plaintiffs, Class Members, and Defendant, thereby effectuating the

purpose of Rule 7. The parties reserve the right to seek an increase in this amount if deemed

necessary. The parties respectfully request that such an order be entered.

Respectfully submitted,

Dated: August 16, 2018

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (CA 149343)
LESLIE E. HURST (CA 178432)
THOMAS J. O'REARDON II (CA 247952)

By:            *s/ Timothy G. Blood*

TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

*Attorneys for Plaintiffs and the Class*

FUTSCHER LAW PLLC
DAVID A. FUTSCHER
913 N. Oak Drive
Villa Hills, KY  41017
Tel: 859/912-2394
david@futscherlaw.com

NICHOLAS & TOMASEVIC, LLP
CRAIG M. NICHOLAS (178444)
ALEX M. TOMASEVIC (245598)
225 Broadway, 19th Floor
San Diego, CA  92101
Tel: 619/325-0492
619/325-0496 (fax)
cnicholas@nicholaslaw.org
atomasevic@nicholaslaw.org

MORGAN & MORGAN, P.A.
RACHEL L. SOFFIN
One Tampa City Center
201 N. Franklin St., 7th Floor
Tampa, FL  33602
Tel: 813/223-5505
813/223-5402 (fax)
rsoffin@forthepeople.com

O'BRIEN LAW FIRM, PC
EDWARD K. O'BRIEN
One Sundial Avenue, 5th Floor
Manchester, NH 03103
Tel: 603/668-0600
603/672-3815 (fax)
eobrien@ekoblaw.com

00137249

SAMUEL ISSACHAROFF
40 Washington Square South
New York, NY 10012
Tel: 212/998-6580
sil3@nyu.edu

BONNETT, FAIRBOURN, FRIEDMAN
&amp; BALINT, P.C.
ANDREW S. FRIEDMAN
ELAINE A. RYAN
PATRICIA N. SYVERSON (203111)
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Tel: 602/274-1100
602/798-5860 (fax)
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

*Additional Attorneys for Plaintiffs*

Dated: August 16, 2018

FARUKI IRELAND &amp; COX P.L.L.
D. JEFFREY IRELAND
ERIN E. RHINEHART

By:          *s/ Erin E. Rhinehart*
                 ERIN E. RHINEHART

201 E. Fifth Street
Suite 1420
Cincinnati, OH 45202
Telephone: 513/632-0310
513/632-0319 (fax)
djireland@ficlaw.com
erhinehart@ficlaw.com

WEIL, GOTSHAL &amp; MANGES LLP
DIANE SULLIVAN
ALLISON BROWN
17 Hulfish Street, Suite 201
Princeton, NJ 08542
Telephone: 609/986-1120
allison.brown@weil.com
diane.sullivan@weil.com

*Attorneys for Defendant*

00137249

# CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I hereby certify that I caused the foregoing to be served via overnight delivery on the non-CM/ECF participants following our ordinary business practices by placing same in a sealed envelope or package, and depositing into a regularly utilized drop box of the overnight delivery carrier for collection and next day delivery, addressed as follows:

| | |
|---|---|
| Christopher T. Cain<br>Scott & Cain<br>550 Main Street, Suite 601<br>Knoxville, TN 37902 | LACY, PRICE & WAGNER, P.C.<br>W. Allen McDonald<br>249 N. Peters Rd., Ste. 101<br>Knoxville, TN 37923 |

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed August 16, 2018.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com